ACCEPTED
01-15-00235-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 8:34:01 PM
CHRISTOPHER PRINI
CLERK

01-15-00235-CV

# Local Rule Notice of and Assignment
# of Related Case in Original Proceedings

As required by the Local Rules Relating to Assignment of Related Cases and Transfers of Related Cases between the First and Fourteenth Courts of Appeals, I certify that the following related appeal or original proceeding has been previously filed in either the First Court of Appeals:

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
3/13/2015 8:34:01 PM
CHRISTOPHER A. PRINE
Clerk

**Guillory v. Seaton, LLC d/b/a Staff Management**

**Appellate Case No. 01-14-00379-CV**

**Trial Case No. 2012-61407A, 113th District Court, Harris County, Texas**

Respectfully submitted,

 /s/  David N. Anderson
**DAVID N. ANDERSON**
TBN:  00797951
**THE ANDERSON LAW FIRM**
4309 Yoakum
Houston, TX  77006
(713) 521-6563 - Telephone
(888) 824-5624 – Fax
danderson@lodna.net

FILED IN
1st COURT OF APPEALS
HOUSTON, TX
MAR 13, 2015
CHRISTOPHER A. PRINE,
CLERK

01-15-00235-CV

No. _____

# IN THE COURT OF APPEALS
# FOR THE FIRST DISTRICT OF TEXAS

### *In re IWORKS PERSONNEL, INC.,*
### *LUIS TREVINO, AND HAYDEE GUTIERREZ,*

*Relators*

Original Proceeding on Petition for Writ of Mandamus
From the 113th District Court, Harris County, Texas
Honorable Michael Landrum, Judge Presiding, Respondent
Cause No. 2012-61407

## PETITION FOR WRIT OF MANDAMUS

**DAVID N. ANDERSON**
TBN: 00797951
**THE ANDERSON LAW FIRM**
4309 Yoakum
Houston, TX 77006
(713) 521-6563 - Telephone
(888) 824-5624 – Fax
danderson@lodna.net

ATTORNEY FOR DEFENDANTS
IWORKS PERSONNEL, INC.,
LUIS TREVINO, and
HAYDEE GUTIERREZ

ORAL ARGUMENT REQUESTED

## Identity of Parties and Counsel

| | |
|---|---|
| <u>Relators</u> | iWORKS Personnel, Inc., Luis Trevino, and Haydee Gutierrez |
| <u>Counsel for Relators</u> | David N. Anderson<br>Texas Bar No. 00797951<br>THE ANDERSON LAW FIRM<br>4309 Yoakum<br>Houston, TX 77006<br>(713) 521-6563 - Telephone<br>(888) 824-5624 – Fax<br>danderson@lodna.net |
| <u>Respondent</u> | The Honorable Michael Landrum<br>113th Judicial District Court<br>Harris County Civil Courthouse<br>201 Caroline, 10th Floor<br>Houston, TX 77002<br>(713) 368-6113 – Telephone |
| <u>Real Parties in Interest</u> | Mose Guillory and Mary Guillory |
| <u>Counsel forReal Party in Interest</u> | Bradford J. Gilde<br>Texas Bar No. 24045941<br>bjg@gildelawfirm.com<br>GILDE LAW FIRM<br>55 Waugh, Suite 850<br>Houston, TX 77007<br>(281) 973-2772 – Telephone<br>(281) 973-2771 – Fax |
| <u>Co-Defendant / Cross-Defendant</u> | Waste Management, Inc. |
| <u>Counsel for Co-Defendant / Cross-Defendant</u> | B. Lee Wertz, Jr.<br>Texas Bar No. 00797796<br>lwertz@munsch.com<br>MUNSCH, HARDT, KOPF, AND HARR, P.C<br>700 Milam Street, Suite 2700<br>Houston, Texas 77002-2806<br>(713) 222-1470– Telephone<br>(713) 222-1475– Fax |

# Table of Contents

Identity of Parties and Counsel ..........................................................................ii

Table of Contents .............................................................................................iii

Table of Authorities .......................................................................................... v

    Cases ......................................................................................................... v

    Statutes ..................................................................................................... vi

    Other Authorities ..................................................................................... vii

    Rules ........................................................................................................ vii

    Regulations .............................................................................................. vii

I. Statement of the Case.................................................................................... 2

III. Issue Presented .......................................................................................... 4

    Did the trial court abuse its discretion when it refused to dismiss claims
    over which it has no subject matter jurisdiction because the Division
    of Worker's Compensation has exclusive jurisdiction and Plaintiff has
    not exhausted his administrative remedies? .............................................. 4

IV. Statement of Facts....................................................................................... 4

V. Summary of Argument ................................................................................. 6

VI. Standard of Review..................................................................................... 7

VII. Argument ................................................................................................... 8

    A. The trial court does not have subject matter jurisdiction and any judgment
       it renders is void as a matter of law. ...................................................... 8

    B. The Act demonstrates the legislature's intent that the Act provide the
       exclusive remedy for on-the-job injuries. .............................................. 10

    C. Through its broad rule making and enforcement provisions, the Act
       empowers the DWC to resolve disputes, enforce compliance, and
       punish offenders. .................................................................................. 13

    D.    Real Party's failure to exhaust his administrative remedies under the
       Act precludes the trial court's exercise of jurisdiction over this matter. . 16

        1.  Real Party consciously chose to circumvent the Act in pursuit of
        common-law remedies for his work-place injury. ............................... 16

        2.  The laws embodied in the Act and the rules promulgated by the DWC
        mandate that iWORKS policy was in effect on the date that Real Party
        was injured at work. ........................................................................... 19

    E. The DWC has exclusive jurisdiction to determine coverage................... 28

F. The newly released *Crawford* opinion confirms the Court's prior findings that it is the intent of the legislature that the DWC have exclusive jurisdiction out of work-place injury claims and that even artful pleadings will not let Plaintiff's recast their claims outside of the purview of the Act. ................................................................................................... 34

VIII. Conclusion ........................................................................................ 37

IX. Prayer ................................................................................................. 39

Certificate of Service ............................................................................... 40

Verification and Certificate of Compliance .............................................. 41

Appendix .................................................................................................. 42

# Table of Authorities

## Cases

*Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988) ........ 10, 14

*Arranda v. Ins. Co. of North Amer.*, 748 S.W.2d 210 (Tex. 1988)................. 11, 16

*Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000) ............... 7, 9

Cain v. Bain, 709 S.W.2d 175 (Tex. 1986 ....................................................... 33

Carr v. Carroll Company, 646 S.W.2d 561 (Tex. App.-Dallas 1982, writ ref'd n.r.e.) ................................................................................................................ 32

*Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010) .............................................. 9

*Cash Am. Int'l., Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)........................... 17

*City of Houston v. Rhule,* 417 S.W.3d 440, 442 (Tex. 2014, *per curium*) . 9, 17, 18

*County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002) ...................... 7, 8

*Cunningham Lindsey Claims Mgmt. v. Snyder*, 291 S.W.3d 472, 477 (Tex.App.— Houston [14th Dist.] 2009, pet. denied) ...................................................... 18

*Dubai Petrol. Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000) ....................................... 9

*Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 453 (Tex., 2009)......... 20

*Gonzales v. Cigna Ins. Co. of Tex*, 924 S.W.2d 183, 184-87 (Tex.App.—San Antonio 1996, write denied) ......................................................................... 36

*Houston Gen. Ins. Co. v. Ass'n Cas. ins. Co.*, 977 S.W.3d 634, 636 (Tex.App.— Tyler 1998, no pet.) ..................................................................................... 31

*Houston Gen. Ins. Co. v. Association Cas. Ins. Co.*, 972 S.W.2d 634, 636 (Tex.App.—Tyler 1998, no pet.)................................................................... 36

*Huffman v. S. Underwriters,* 133 Tex. 354, 128 S.W.2d 4, 6 (1939).................. 20

*Hulshouser v. Texas Workers' Compensation Ins. Fund*, 139 S.W.3d 789, 792 (Tex. App.—Dallas 2004, no pet.)................................................................ 11

*In Re Crawford,* No. 14-0256 (Tex. February 27, 2015) (per curiam) ...... 11, 37-39

*In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004)........................................ 4

*In Re Liberty Ins. Corp.*, 321 S.W.3d 630 (Tex.App.—Houston [14th Dist.] 2010) (orig. proceeding) ...................................................................................... 10

*In Re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327 329 (Tex. 2009) ................. 4, 40

*In Re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex. 2009) (orig. proceeding) (*per curiam*)............................................................................ 4, 10

*In re Liberty Mutual Fire Ins. Co.,* 295 S.W.3d 327, 328 (Tex. 2009).................... 3

*In Re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 172 (Tex.App.—Houston [1st Dist] 2012) (orig. proceeding)................................................................ 15

*In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008) ........................ 11, 15, 22

*In Re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624 (Tex. 2007) ................................... 4

*In Re Tex. Mut. Ins. Co.* ................................................................................... 32

*In Re United Servs. Auto Ass'n*, 307 S.W.3d 299, 209 (Tex. 2010)..................... 9

*In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 306 (Tex.2010) ..................... 10

*Ins. Co. of Pa. v. Hartford Underwriters Ins. Co.*, 164 S.W.3d 747 (Tex.App.—Houston [14th Dist.] 2005, no pet.) .................................................................. 31

*Liberty Mut. Ins. Co. v. Adcock*, 412, S.W.3d 492, 495 (Tex. 2013) .................. 14

*Millers' Mut. Cas. Co. v. Hoover*, 235 S.W. 863, 864 (Tex. Comm'n App.1921, judgm't adopted) ........................................................................................ 22

*Morales v. Liberty Mut. Sinc. Co.,* 241 S.W.3d 514 (Tex. 2007) ...................... 31, 33

*Peek v. Equip. Serv. Co. of San Antonio,* 779 S.W.2d 802, 805 (Tex. 1989). ...... 8

*Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238 (Tex. 2012) ...... 20

*Richmond v. L. D. Brinkman & Co. (Texas) Inc.*, 36 S.W.3d 903 (Tex. App.-Dallas 2001, pet. denied) .................................................................................... 33

*Saenz v. Fidelity & Guaranty Insurance Underwriters* ...................................... 15

*Scwartz v. Ins. Co. of Pa.* ................................................................................ 7

*Southern Sur. Co. v. Inabnit*, 1 S.W.2d 412, 413-414 (Tex.Civ.App.-Eastland 1927, no writ) ........................................................................................... 22

*Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) 15

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). ...... 7

*Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004) ........ 7

*Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999) ........................... 7

*Tex. educ. Agency v. Cypress-Fairbanks I.S.D.*, 830 S.w.2d 88, 90 (Tex. 1992) 18

*Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 344 (Tex. 2012) ........... 16, 38, 39

*Tex. Worker's Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517 n.15 (Tex. 1995) 9

T*exas Workers' Compensation Insurance Fund v. DEL Industrial, Inc.*, 35 S.W.3d 591 (Tex. 2000) ....................................................................................... 32

*U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008) ............... 26

*Waco ISD v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000) ...................................... 10

**Statutes[1]**

§ 91.001, *et seq.* ............................................................................................... 29

§ 93.004 ........................................................................................................... 29

§§ 401.001 – 451.003 ......................................................................................... 1

§ 401.011 ......................................................................................................... 32

§ 401.012 ......................................................................................................... 32

§ 401.013 ......................................................................................................... 36

§ 402.001 ............................................................................................. 10, 21, 34

§ 402.00111 ...................................................................................................... 21

§ 402.00114 ...................................................................................................... 35

§ 402.00117 ...................................................................................................... 21

§ 402.061 ......................................................................................................... 21

§ 406.002 ......................................................................................................... 21

§ 406.008 ......................................................................................................... 26

---

[1] All cites are to the Texas Labor Code.

§ 406.031 ..................................................................................... 32
§ 406.032 ..................................................................................... 36
§ 406.033 ..................................................................................... 36
§ 408.001 ............................................................................... 10, 13
§ 409.004 ............................................................................... 18, 20
§ 409.005 ..................................................................................... 10
§ 409.021 ..................................................................................... 11
§ 410.165 ..................................................................................... 30
§ 410.205 ..................................................................................... 11
§ 410.301 ............................................................................... 31, 32
§ 414.002 ..................................................................................... 35
§ 415.001 ..................................................................................... 11
§ 415.002 ..................................................................................... 11
§ 415.008 ..................................................................................... 11
§ 415.021 ............................................................................... 11, 35
§ 415.031 ..................................................................................... 11
§ 415.034 ..................................................................................... 11

**Other Authorities**

*Appeals Panel No. 021771* (Division of Worker's Compensation, September 3, 2002) ......................................................................................... 29
*Appeals Panel No. 030660* (Division of Worker's Compensation, April 28, 2003) ............................................................................................. 29
*Appeals Panel No. 101718* (Division of Worker's Compensation, March 21, 2011) ............................................................................................. 30

**Rules**

Tex. Rule of Civ. P. 198.3 ............................................................... 24

**Regulations**

28 TEX. ADMIN. CODE § 43.10 ................................................... 26, 27
28 TEX. ADMIN. CODE § 110.1 ......................................................... 27

**No. _____**

**IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS**

*In re IWORKS PERSONNEL, INC.,
LUIS TREVINO, AND HAYDEE GUTIERREZ,*

*Relators*

Original Proceeding on Petition for Writ of Mandamus
From the 113th District Court, Harris County, Texas
Honorable Michael Landrum, Judge Presiding, Respondent
Cause No. 2012-61407

**PETITION FOR WRIT OF MANDAMUS**

**TO THE HONORABLE FIRST COURT OF APPEALS:**

This is a worker's compensation case. Through artful pleading Plaintiff has sought to recast this case as a non-subscriber case, a breach of contract case, a fraud case, a third-party beneficiary case, and so on. However, the Division of Worker's Compensation has exclusive jurisdiction over Plaintiff's claims, no matter how artfully plead, and the trial court lacks subject matter jurisdiction until Plaintiff has exhausted the administrative remedies provided by the Worker's Compensation Act[2] (the "Act").

---

[2] TEXAS LABOR CODE, Title V, Subtitle A ("Texas Workers' Compensation Act), §§ 401.001 – 451.003. Unless otherwise indicated, all code references in this petition refer to the Texas Labor Code.

1

This issue is of vital importance because the carefully balanced dispute resolution and enforcement procedures that the legislature built into the system are lost if a claimant can circumvent the Act by refusing to pursue his administrative remedies and simply recasting his claims as common-law or extra-statutory causes of action. This Court should exercise its mandamus jurisdiction in this case and order the trial court to dismiss Plaintiff's causes of action.

## I. Statement of the Case

*Nature of the case.* Relator, iWORKS Personnel, Inc. ("iWORKS") is a temporary staffing company who contracted with Defendant, Waste Management, Inc. ("WM") to provide temporary labor at its waste processing facility. Real Party, Mose Guillory ("Real Party"),[3] was a temporary worker assigned by iWORKS to work at WM's facility. Real Party was injured on August 5, 2012 while working at the WM facility. He subsequently sued iWORKS,[4] WM, Inc. ("WM"), and Seaton, LLC d/b/a Staff Management ("SM"),[5] a third party administrator of WM's temporary labor program.

---

[3] Real Party's wife, Mary Guillory, is a Plaintiff in this case. Plaintiffs' Fifth Amended Petition makes no express claims on her behalf, but it does seek damages for loss of consortium and loss of household services. Her claims are all derivative of Real Party's claims. As used in this petition, "Real Party" refers to both Mose Guillory and Mary Guillory.

[4] Plaintiff also sued iWORKS' CEO, Luis Trevino, and President, Haydee Gutierrez, in their individual capacities. They joined iWORKS in this petition. As used in this petition, "iWORKS" refers to both the company and the two individuals.

[5] The trial court granted SM's Rule 91a motion to dismiss. Plaintiff's appeal is currently pending before this Court (No. 01-14-00379-CV).

2

*Trial court.*  The Honorable Michael Landrum, 113th Judicial District Court of Harris County, Texas ("Respondent" or "trial court" herein).

*Proceedings in the trial court.*  Relators challenged the trial court's subject matter jurisdiction based upon the exclusive jurisdiction of the Texas Department of Insurance, Division of Worker's Compensation ("DWC") and Real Party's failure to exhaust the administrative remedies available under the Act before the DWC. Relators also challenged Real Party's causes of action based on traditional and no evidence motions for summary judgment, aside from the jurisdictional challenges. The trial court granted Relators' challenges to numerous of Real Party's causes of action, but denied Relators' jurisdictional challenges on the remaining claims and causes of action by Order dated February 20, 2015.[6]  It is from the trial court's assertion of jurisdiction over those remaining claims that Relators seek mandamus relief.

## II. Statement of Jurisdiction

This Court has jurisdiction pursuant to Tex. Gov't Code § 22.002(a). Mandamus relief is appropriate to correct a trial court's assertion of subject matter jurisdiction over a case that lies squarely within the exclusive jurisdiction of an administrative agency, here the DWC over the Texas workers'

---

[6] Tab 1

3

compensation system.[7] This erroneous assertion of jurisdiction is an abuse of discretion. Permitting the trial court to improperly assert jurisdiction results not only in hardship to Relators, but also interferes with the "legislatively mandated function and purpose" of the DWC, undermines the Legislature's intent to create a comprehensive scheme to govern workers' compensation claims in Texas,[8] and effectively abrogates the Act, leaving Relators with no adequate remedy by appeal.[9] This court can correct the trial court's assertion of subject matter jurisdiction here through a writ of mandamus because the underlying claims lie within the exclusive jurisdiction of the DWC.

## III. Issue Presented

**Did the trial court abuse its discretion when it refused to dismiss claims over which it has no subject matter jurisdiction because the Division of Worker's Compensation has exclusive jurisdiction and Plaintiff has not exhausted his administrative remedies?**

## IV. Statement of Facts

Real Party was severely injured on August 5, 2012 while in the course of his employment at Waste Management's waste reclamation facility in Houston, Texas. Real Party was a temporary worker recruited by IWORKS and assigned to operate a front-end loader at WM's facility. At some point WM reassigned Real

---

[7] *In re Liberty Mutual Fire Ins. Co.,* 295 S.W.3d 327, 328 (Tex. 2009), *citing In Re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624 (Tex. 2007); *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004).

[8] *Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 344 (Tex. 2012)

[9] *See In re Entergy*, 142 SW.3d at 321; *In Re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d at 328.

Party to operate a Harris Baler.[10]  Real Party was injured when he entered the baler to clear a jam without depowering the machine.  The baler activated and severed his right leg below the knee and half of his left foot.

This lawsuit arises from Real Party's attempt to recover damages for the injuries he sustained while employed at the WM facility. Throughout this suit Real Party has asserted various causes of action, some sounding in tort (negligence, gross negligence, negligence *per se*, negligent hiring, training, and supervision, common law fraud, fraud by non-disclosure, and negligent undertaking); some sounding in contract (breach of contract as third-party beneficiary to the iWORKS / WM service agreement and breach of contract as a third-party beneficiary of the WM / SMX agreement).  Real Party has also alleged numerous theories of vicarious liability (*respondeat superior*, joint enterprise, and partnership liability). Real Party's claims against iWORKS have been narrowed down to negligence, negligence *per se*, gross negligence, negligent hiring, training, and supervision, breach of contract, *respondeat superior*, partnership liability, and joint enterprise liability.[11]  Regardless of how artfully or inventively labeled or recast, all of

_____

[10] A Harris Baler is essentially a gigantic trash compactor which compacts sorted refuse into dense bales.  The material is fed into the baler via a conveyor belt which dumps the material into the compacting chamber.

[11] The trial court denied iWORKS' motion for summary judgment on all causes except for breach of contract, which it granted. However, the trial court declined to dismiss the same contract claims against Trevino and Gutierrez, even though they were neither parties nor signatories to the contract in their individual capacities. The trial court also dismissed Plaintiff's negligence claims against Trevino and Gutierrez, but left the gross negligence claims against them intact. Thus, while as a matter of law Trevino and Gutierrez are not negligent, they are still subject to liability on Plaintiff's gross negligence claims.  Likewise,

Plaintiff's claims flows directly from his on-the-job injury.

## V. Summary of Argument

Real Party's claims fall within the exclusive jurisdiction of the DWC, and therefore, the trial court is without subject matter jurisdiction to consider these claims until they have exhausted all administrative remedies provided for under the Act. Allowing a participant in the worker's compensation system to pursue such claims in a civil action is incompatible with the comprehensive administrative processes and other remedies in the Act.

Despite Real Party's attempts to avoid the Act by creatively pleading their complaints, the essence of their suit falls squarely under the purview of the DWC. To hold otherwise would allow claimants to easily avoid the exclusive jurisdiction of the Act by simply relabeling their claims as other common law or statutory theories, even though such claims are equally incompatible with the administrative processes and other remedies in the Act. This is precisely why the Texas Supreme Court has repeatedly emphasized the legislative intent that there be no alternative remedies available outside the Act.

---

they are also subject to same breach of contract liability that the trial court found their company, a party to the contract, not liable for as a matter of law. The trial court denied Relators' motion to reconsider these paradoxical results.

# VI. Standard of Review

This Court set forth the proper standard of review in in this matter in *Scwartz v. Ins. Co. of Pa.*[12]

> A plea to the jurisdiction contests a trial court's subject matter jurisdiction. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex.1999). Whether a court has subject matter jurisdiction is a matter of law. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004). Accordingly, we review a challenge to the trial court's subject matter jurisdiction *de novo. Id.* at 228.
>
> When reviewing a plea to the jurisdiction, we must look to the allegations in the pleadings, construe them in the plaintiff's favor, and consider the pleader's intent. *See County of Cameron v. Brown,* 80 S.W.3d 549, 555 (Tex. 2002). In doing so, we consider the facts alleged in the petition, and to the extent relevant to the jurisdictional issue, any evidence submitted by the parties to the trial court. *See Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000). The plaintiff bears the burden to allege facts affirmatively demonstrating the trial court's jurisdiction to hear a case. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex.1993). If a plaintiff pleads facts that affirmatively demonstrate an absence of jurisdiction and the jurisdictional defect is incurable, then the cause is properly dismissed. *Peek v. Equip. Serv. Co. of San Antonio,* 779 S.W.2d 802, 805 (Tex. 1989). However, when the plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Brown,* 80 S.W.3d at 555.

*Plaintiff's Fifth Amended Petition* pleads facts and cites exhibits that place this matter squarely within the exclusive jurisdiction of the DWC. The evidence considered by the trial court in relation iWORKS' plea to the jurisdiction also supports the DWC's exclusive jurisdiction.

---

[12] 274 S.W.3d 270, 273-74 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).

7

In support of this petition iWORKS has provided this Court with the following pleadings:

1) *Plaintiff's Fifth Amended Petition*;[13]
2) *iWORKS' Plea to the Jurisdiction*;[14]
3) *iWORKS' Supplemental Plea to the Jurisdiction*[15]; and
4) *Plaintiff's Response to iWORKS' Plea to the Jurisdiction*.[16]

All exhibits submitted with these pleadings and considered by the trial court are found in the Appendix.[17] No party offered sworn testimony at the oral hearing on this matter. Relators have ordered a transcript of the oral argument and will supplement the mandamus record as soon as the transcript is received from the court reporter.

## VII. Argument

### A. The trial court does not have subject matter jurisdiction and any judgment it renders is void as a matter of law.

The trial court erred when it exercised jurisdiction in this case because it does not have subject-matter jurisdiction over Plaintiff's claims related to his injury at work. Without subject-matter jurisdiction the trial court cannot render a valid judgment in this matter.[18] "Subject matter jurisdiction is 'essential to a court's

---

[13] Tab 2 (hereinafter "Petition").
[14] Tab 5
[15] Tab 12
[16] Tab 15 (hereinafter "Response")
[17] Real Party attached three exhibits totaling 561 pages to his *Response*. Real Party's exhibits are submitted to this Court in the same form as submitted to the trial court.
[18] *City of Houston v. Rhule,* 417 S.W.3d 440, 442 (Tex. 2014, *per curium*)

power to decide a case.'"[19]  Subject-matter jurisdiction cannot be waived, nor can it be given or taken away by consent.[20]  "A judgment rendered without subject matter jurisdiction cannot be considered final."[21]

Lack of subject-matter jurisdiction makes a judgment void, not just voidable.[22]  Lack of subject-matter jurisdiction is fundamental error and can be raised at any time.[23]  Lack of subject-matter jurisdiction can even be raised for the first time on appeal.  "Not only may a reviewing court assess jurisdiction for the first time on appeal, but all courts bear the affirmative obligation 'to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.'"[24]  Furthermore, the failure to grant a plea to the jurisdiction for failure to exhaust administrative remedies with the DWC is subject to this Court's mandamus review.[25]

---

[19] *Id. (*quoting *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000)).

[20] *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010).

[21] *Rhule,* 417 S.W.3d at 442 (citing *Dubai Petrol. Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000)).

[22] *In Re United Servs. Auto Ass'n*, 307 S.W.3d 299, 209 (Tex. 2010).

[23] *Tex. Worker's Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517 n.15 (Tex. 1995) (noting that a trial court can question its subject-matter jurisdiction even without a motion by either party).

[24] *Waco ISD v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000); see *Rhule,* 417 S.W.3d at 442 (quoting *In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 306 (Tex.2010)).

[25] See *In Re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328 (Tex. 2009) (orig. proceeding) (*per curiam*); *In Re Liberty Ins. Corp.*, 321 S.W.3d 630 (Tex.App.—Houston [14th Dist.] 2010) (orig. proceeding).

9

**B.** **The Act demonstrates the legislature's intent that the Act provide the exclusive remedy for on-the-job injuries.**

The Act provides a compensation system for "personal injuries sustained by an employee in the course and scope of his employment."[26] In exchange for prompt remuneration of benefits to the employee with no burden of proof as to negligence, the Act prevents employees from seeking common law remedies against the employer, agent or employee of the employer for on-the-job injuries.[27] The Act also limits employers' exposure to the uncertainties of litigation costs and awards.[28] Recovery under the Act is intended to be an injured employee's sole remedy for work-related injuries.[29]

The legislature empowered the DWC to administer and operate the workers' compensation system of Texas.[30] The system's processes are initiated by the worker reporting an occupational injury or disease to the employer, after which the employer must report the injury claim to the carrier.[31] Disputes regarding general compensability and extent of injury are addressed under

---

[26] *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988).

[27] *Id.;* see § 408.001(a); *Hulshouser v. Texas Workers' Compensation Ins. Fund*, 139 S.W.3d 789, 792 (Tex. App.—Dallas 2004, no pet.).

[28] *See Ruttiger*, 381 S.W.3d at 441, *citing In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008). [29] *Hulshouser*, 139 S.W.3d at 792.

[29] *In Re Crawford* at p. 9, No. 14-0256 (Tex. February 27, 2015) (per curiam) (a copy is attached to the Appendix at Tab 22).

[30] § 402.001(b).

[31] § 409.005(a).

Chapter 410 of the Texas Labor Code, while Chapter 413 controls disputes concerning specific medical benefits, including medical fees disputes and medical necessity disputes.   This matter falls under Chapter 410

Additional safeguards are built into the workers' compensation system to monitor compliance with the rules and regulations in Chapter 415, entitled "Administrative Violations," as well as provisions in Chapters 409 and 410.[32]  For example, these provisions allow fines of up to $25,000 per day, per violation for an insurer's conduct, including, for example:

a) making a false or misleading statement; [33]
b) failing to process claims reasonably;[34]
c) unreasonably disputing the reasonableness and necessity of health care;[35]
d) conspiring to commit an act that is a violation;[36] and
e) other conduct violating Commission rules.[37]

Any system participant can initiate an investigation by the DWC of possible administrative violations.[38]  Procedurally, administrative violations follow a path similar to Chapter 413 disputes.[39]

---

[32] *See generally* §415.001, *et seq.*; §409.021; §410.205.

[33] §415.008.

[34] §415.002(a)(11).

[35] §415.002(a)(19).

[36] §415.008.

[37] §415.008; §415.021.

[38] §415.031.

[39] §415.034-5.

In 1989 the Texas Legislature overhauled the worker's compensation system to address the system's deficiencies, to balance the interests and concerns of the worker and the employer (or insurance carrier), and to provide more efficient results for all parties. Prior to that time and up to this Court's opinion in *Ruttiger*, the shortcomings of the system necessitated this Court's acknowledgement of a common law cause of action for extra-contractual damages. In *Ruttiger*, this Court set out its analysis of the respective roles of the Legislature and this Court in relation to the Act and the worker's compensation system as a whole. Improvements to the pre-1989 system were cited to include the following:

1) reduction of the disparity of bargaining power between employees and insurance carriers;
2) removal of insurers' exclusive control over the processing of claims;
3) curtailment of insurers' ability to refuse or unreasonably deny payment of valid claims in an arbitrary manner;
4) provision of information to employees and free assistance before the DWC process through the ombudsman program; and
5) provision of multiple remedies and penalties to enforce the parties' rights and to regulate the parties' conduct, up to and including revocation of a carrier's right to do business in Texas "if on multiple occasions it fails to pay benefits promptly and as they accrue."[40] The Legislature provided injured workers with tools to which they did not previously have access. Carefully considering these improvements to the system, this Court held that common law causes of action outside the framework of the Act are no longer necessary when the Act covers the complained-of conduct or the remedy sought.[41]

---

[40] *Ruttiger*, 381 S.W.3d at 449-450.

[41] *Id.* at 444, 445, 451.

12

Recognizing the broad scope and encompassing remedies brought about by the 1998 revisions to the Act, the Texas Supreme Court held that "the Court should not alter the Act's comprehensive scheme." [42]

## C. Through its broad rule making and enforcement provisions, the Act empowers the DWC to resolve disputes, enforce compliance, and punish offenders.

The Act provides a compensation system for "personal injuries sustained by an employee in the course and scope of his employment." [43] In exchange for prompt remuneration of benefits to the employee with no burden of proof as to negligence, the Act prevents employees from seeking common law remedies against the employer, agent or employee of the employer for on-the-job injuries.[44] The Act also limits employers' exposure to the uncertainties of litigation costs and awards.[45] Recovery under the Act is intended to be an injured employee's sole remedy for work-related injuries.[29]

An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive

---

[42] *Liberty Mut. Ins. Co. v. Adcock*, 412, S.W.3d 492, 495 (Tex. 2013) (explaining that "the Legislature devised a comprehensive workers' compensation system, with specific benefits and procedures based on the public policy of the State of Texas. We concluded in *Ruttiger* that the Court should not alter the Act's comprehensive scheme, and we reaffirm that principle today.")

[43] *Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex. 1988).

[44] *Id.;* § 408.001(a); *Hulshouser v. Texas Workers' Compensation Ins. Fund*, 139 S.W.3d 789, 792 (Tex. App.—Dallas 2004, no pet.).

[45] *See Ruttiger*, 381 S.W.3d at 441, *citing In re Poly-Am., L.P.*, 262 S.W.3d 337, 349 (Tex. 2008).

means of remedying the problem to which the regulation is address."[46] "An agency has exclusive jurisdiction . . . when a pervasive regulatory scheme reflects legislative intent that an agency have the sole power to make the initial determination in the dispute."[47]  Exclusive jurisdiction is a question of law that turns on statutory interpretation.[48]  The Texas Supreme Court held in *Saenz v. Fidelity & Guaranty Insurance Underwriters* that "the Workers' Compensation Act vests the power to award compensation benefits solely in the [DWC]..., subject to judicial review."*[49]*

In *Tex. Mut. Ins. Co. v. Ruttiger*[50] the Texas Supreme Court discussed the significant changes the Legislature made to the Act in 1989.[51]  It noted that the "amendments included significant reforms, among which were changes in how to calculating benefits for injured workers, the amount of income benefits workers could recover, the dispute resolution process, the addition of an ombudsman program to provide assistance for injured workers who had disputes with insurers,

---

[46] *Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002)

[47] *In Re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 172 (Tex.App.—Houston [1st Dist.] 2012) (orig. proceeding)

[48] See *Rhule,* 417 S.W.3d at 442 (citing *Subaru,* 84 S.W.3d at 221).

[49] 925 S.W.2d 607, 612 (Tex. 1996)

[50] 381 S.W.3d 430 (Tex. 2012).

[51] The *Ruttiger* opinion addressed the viability of a common-law cause of action for breach of the duty of good faith and fair dealing against a worker's compensation carrier, a cause of action previously approved of by the Texas Supreme Court in *Arranda v. Ins. Co. of North Amer.*, 748 S.W.2d 210 (Tex. 1988). The *Ruttiger* court held that the 1989 amendments to the Act manifested the Legislatures' intent to vitiate the need for such a cause of action and expressly overruled *Arranda.  Id.*, 381 S.W.3d at 438-56.

14

and increasing sanctions for violations of the Act."[52]  The *Ruttiger* court stated that

"[t]he purpose of the Act is to provide employees with certainty that their medical

bills and lost wages will be covered if they are injured."  *Id.* at 441.

> To accomplish these purposes, the Act provides detailed notice and administrative dispute resolution proceedings that include specific deadlines and incorporate a "conveyor-belt" approach.  That is, once the administrative dispute resolution process is initiated, a dispute continues through the process until the dispute is resolved either by the parties or by a binding decision through the resolution procedures.

*Id.* at 441.

The *Ruttiger* opinion provides a lengthy description of "the detailed notice

and administrative dispute resolution proceedings" encompassed by the Act.[53]  In

describing the pervasiveness of the Act the *Ruttiger* court noted that the Act affords

the DWC significant power to enforce the Act against the various parties in the

worker's compensation system.  *Id.*  The *Ruttiger* court concluded:

> It is apparent that the Act prescribes detailed, WCD-supervised, time-compressed processes for carriers to handle claims and for dispute resolution.  It has multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements.[54]

The court recognized that allowing an employee to circumvent the act by asserting

common law causes of action would be "inconsistent with the Act's goals and

legislative intent exhibited in the act" and could also "result in rewarding an

---

[52] *Id.,* 381 S.W.2d at 433.

[53] *Id.* at 441-43.

[54] *Id.* at 443.

15

employee who is dilatory in utilizing the Act's detailed dispute resolution procedures, regardless of whether the delay was intentional or inadvertent, because whether and when the dispute resolution begins is by and large dependent on the employee." *Id.*

## D. Real Party's failure to exhaust his administrative remedies under the Act precludes the trial court's exercise of jurisdiction over this matter.

When an agency has exclusive jurisdiction a party must exhaust its administrative remedies before seeking recourse through judicial review.[55] "If an agency has exclusive jurisdiction... a party must first exhaust all administrative remedies before a trial court has subject matter jurisdiction."[56] "Absent exhaustion of administrative remedies, a trial court must dismiss the case."[57]

### 1. Real Party consciously chose to circumvent the Act in pursuit of common-law remedies for his work-place injury.

There is no question that Real Party not exhausted his administrative remedies through the DWC. He readily admits this.[58] Real Party claims that it is

---

[55] *Rhule*, 417 S.W.2d at 442 (citing *Cash Am. Int'l., Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)).

[56] *Cunningham Lindsey Claims Mgmt. v. Snyder*, 291 S.W.3d 472, 477 (Tex.App.— Houston [14th Dist.] 2009, pet. denied).

[57] *Rhule*, 417 S.W.2d at 442 (citing *Tex. educ. Agency v. Cypress-Fairbanks I.S.D.*, 830 S.w.2d 88, 90 (Tex. 1992).

[58] Tab 15, p. 18, ¶ 80. Real Party states:

In accordance with the Texas Labor Code Ch. 409, Plaintiffs did previously file their DWC 41 form on the 1-year anniversary of the injury in question. However, Plaintiffs did so solely to preserve their right to seek benefits in the event that this Court or the Court of Appeals later determined that iWorks Defendants and/or WM Defendants were workers' compensation subscribers. Plaintiffs are not seeking workers' compensation benefits from

16

justified in foregoing the Texas Workers' Compensation System because both iWORKS and WM are nonsubscribers.[59] However, an examination of the Plaintiff's allegations and the evidence submitted in connection with Relator's Plea to the Jurisdiction demonstrate that Relator was a subscriber the Act.

Real Party was injured on August 5, 2012.[60] On August 30, 2012 he executed a DWC-041 form[61] requesting compensation for a work-related injury.[62] On that form he stated that he was represented by Bradford J. Gilde ("Gilde").[63] Thus, fifteen days after his work-related injury (over 2 ½ years ago) Real Party was at a minimum aware of the potential availability of benefits under the Act. It is also fair to assume that his attorney knew (or had the ability to find out) how to obtain those benefits.

Nearly a year later on August 12, 2013, Gilde sent a letter to the DWC.[64] It was styled as a "Notice, Stay, and Preservation Letter." Although litigation was ongoing and both iWORKS and Waste Management were represented by

---

any provider, and are surely not attempting to get blood from the turnip that is iWorks Defendants' cancelled policy.

[59] Tab 2, *Petition*, p. 6, ¶¶ 19-20.

[60] *Id.* at p. 13, ¶ 36.

[61] "Employee's Claim for Compensation for a Work Related Injury or Occupational Disease."

[62] Tab 10.

[63] *Id.*

[64] Tab 14.

17

counsel,[65] neither Defendant was copied on this correspondence. Gilde attached two separate DWC-041 forms to the letter. One names iWORKS as Real Party's employer and the other names WM as his employer. Thus, as of the date of his letter to the DWC, Real Party's counsel had actual knowledge of two separate worker's compensation policies which would potentially provide benefits to his client. He consciously chose to forego pursuing his client's benefits under either one of the policies in lieu of proceeding with his claims in the trial court. [66]

Gilde's letter to the DWC states that it:

"is submitted: (1) as a <u>notice</u> of claim for compensation...as a <u>preservation</u> of right to file and seek a claim for compensation...and pursuant to Tex. Labor Code §409.004."[67]

The letter further states that "this letter...is not an election or denial of a claim for coverage."[68] Real Party cannot hedge his bets with the DWC while seeking a judicial remedy in the trial court without first exhausting his administrative

---

[65] At that time attorney Aric Garza was counsel for iWORKS.

[66] On information and belief, as of the filing of this petition Real Party has still not sought benefits under WM's worker's compensation policy even though the trial court dismissed his claims against WM pursuant to the "comp bar" defense.

*Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238 (Tex. 2012) held that for purposes of the Act a temporary staffing company and its client are both co-employers and that the client company cannot exclude or segregate temporary workers from its worker's compensation coverage. Simply put, the state of Texas wants all workers covered. Thus, a temporary staffing employee typically has two different worker's compensation policies which can cover him for on-the-job injuries. Which policy actually covers the worker is usually a matter of contract between the staffing company and its client.

[67] Tab 14 (emphasis in original).

[68] *Id.*

18

remedies. His failure to do so in this matter, despite knowing the administrative requirements set forth in the Act, deprives the trial court of subject-matter jurisdiction over his claims.

Gilde's letter to the DWC purports to reserve Real Party's right to seek relief from the DWC in the event he was unsuccessful in in the trial court. This approach turns the purpose of the entire worker's compensation system on its head. This letter demonstrates that Real Party was well aware of the requirements under the Texas Labor Code yet consciously chose to attempt to circumvent that process in hopes of a common law verdict. This is not the public policy of Texas. As the *Ruttiger* court observed, "the extra-statutory cause of action provides incentive for an injured worker to delay using the avenues for immediate relief that the Legislature painstakingly built into the law" and "distorts the balances struck in the Act and frustrates the Legislature's intent to have disputes resolved quickly and objectively."[69]

### 2. The laws embodied in the Act and the rules promulgated by the DWC mandate that iWORKS policy was in effect on the date that Real Party was injured at work.

iWORKS is a subscriber under the Act. iWORKS purchased a worker's compensation policy from Texas Mutual with the effective dates of 09/04/2011 through 09/04/2012.[70] That iWORKS actually purchased this policy is not disputed

---

[69] *Ruttiger*, 381 S.W.3d at 451.

[70] Tab 6.

by Real Party. Rather, Real Party argues that the policy was terminated prior to his August 5, 2012 injury.[71] To support this claim he cites to a Notice of Dismissal purportedly issued by Texas Mutual[72] and discovery responses from Texas Mutual and Lette Insurance Company, iWORKS' insurance agent who procured the policy.[73]

> But it has long been 'the settled policy of this State to construe liberally the provisions of the [Act] in order to effectuate the purposes for which it was enacted.' ***Coverage is a fundamental purpose of the Act.***[74]

Real Party's contentions and the evidence offered to support them do not comport with the statutory provisions provided for in the Act and only serve to thwart the fundamental purpose of the Act, coverage.

---

[71] Tab 15, p. 5-9, ¶¶ 28-39.

[72] *Id.*

[73] *Id.*

[74] *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 453 (Tex., 2009) (J. Hecht concurring) (emphasis added) (quoting *Huffman v. S. Underwriters,* 133 Tex. 354, 128 S.W.2d 4, 6 (1939) (quoted in *In re Poly-America, L.P.,* 262 S.W.3d 337, 350 (Tex. 2008)).

In support of his proposition that the Act has historically been interpreted by the courts as broadly as possible so as to find coverage, Justice Hecht cites Citing *Millers' Mut. Cas. Co. v. Hoover*, 235 S.W. 863, 864 (Tex. Comm'n App.1921, judgm't adopted) ("It has been thought, inasmuch as the [Act] is in derogation of the common law, that it should be given a strict construction, but the courts have very generally held that a spirit of liberality should characterize its interpretations, for the reason that it is to be classed as remedial legislation." (quotation omitted)); *Southern Sur. Co. v. Inabnit*, 1 S.W.2d 412, 413-414 (Tex.Civ.App.-Eastland 1927, no writ) ("The leading authorities ... agree that Workmen's Compensation Laws came into existence in response to a general acceptation of the broad economic theory that industrial accidents should properly be chargeable as a part of the overhead expenses of the industries. These laws are remedial in their nature, and should be liberally construed with the view of promoting their objects. The early tendency of our courts to construe them strictly because they were thought to be in derogation of common law has long since given place to a liberal rule of construction. The rule now prevailing prevents the restriction of the scope of the laws by exceptions and exact definitions not in harmony with their spirit.").

In 2005 the DWC was established as a division of the Texas Department Insurance, replacing the abolished Texas Workers' Compensation Commission.[75] The DWC is administered by the commissioner of workers' compensation who is appointed by the governor for a two-year term.[76] The Act gives the commissioner authority to "adopt rules as necessary for the implementation and enforcement of this sub-title [the Act]."[77] These rules are codified in the Texas Administrative Code.[78] The Labor Code and the Texas Administrative Code ("TAC") establish the statutory and regulatory provisions by which an employer can elect to submit to the Act by purchasing workers' compensation insurance and, more importantly in this case, the manner, effectiveness, and effect of the termination of workers' compensation insurance by a carrier.

Under the Act an employer "may elect to obtain worker's compensation insurance coverage" and is thereby "subject to this subtitle [the Act]."[79] It is undisputed that iWORKS elected to obtain workers' compensation insurance coverage and thereby subject itself to the Act. [80] iWORKS purchased a workers'

---

[75] §402.001(b).

[76] §402.00111; §402.00117.

[77] §402.061; §402.00111

[78] See generally Title 28 Tex. Admin. Code, Part II. ("Texas Department of Insurance, Division of Workers' Compensation").

[79] §406.002.

[80] Even Plaintiff's Petition states that "[a]s is clear, in addition to supplying client companies with leased employees or temporary workers, IWORKS DEFENDANTS also have the duty and responsibility to provide worker's compensation." Tab 2, p. 10, ¶ 24;

21

compensation policy from Texas Mutual effective 09/04/2011 through 09/04/2012.[81] Luis Trevino, owner of iWORKS, testified that iWORKS subscribed to worker's compensation insurance from its inception and that this is the normal course of business for a temporary staffing company.[82] Furthermore, the Service Agreement between iWORKS and WM required that iWORKS carry workers' compensation insurance.[83] It is not Real Party's contention that iWORKS was a non-subscriber, rather, he contends that the Texas Mutual policy was cancelled several weeks before his injury.[84] As is discussed below, this contention is unsupported by the Pleadings and the evidence.

In opposition to iWORKS' Plea to the Jurisdiction, Real Party relied upon four single-page documents[85] as well as discovery responses from Texas Mutual and Lette Insurance Company.[86] The primary document he relies upon is a "Notice of Termination."[87] However, this document has no probative value. There is no

---

but see Id., p. 6, ¶¶ 19-21 where Real Party makes the global allegation (without factual support) that both iWORKS and WM are non-subscribers.

[81] Tab 6.

[82] Tab 11; Trevino testified: "Since it has been in business iWORKS has continuously subscribed to Worker's Compensation insurance and has covered all of its temporary employees that it sends out on assignment. This is the standard course of business for a temporary staffing company."

[83] Tab 3.

[84] Tab 15, pp. 5-8, ¶¶ 25-32.

[85] Real Party attached 560 pages of documents to his response (Tabs 16-18).

[86] Tabs 16 and 17. For the sake of simplicity, Relator has separated the evidence specifically cited in Real Party's response and has combined it under Tab 19 in the Appendix.

[87] Tab 19 The same document was produced by both Texas Mutual and Lette Ins.

evidence that this Notice was ever sent to iWORKS. Luis Trevino testified that iWORKS never received notice of termination.[88] He stated:

> The first knowledge that iWORKS had of an alleged gap in its worker's compensation coverage was when Mose Guillory's attorney made that allegation during my deposition in this case. Although Guillory's attorney presented what appeared to be a notice of termination, I had no knowledge of such notice. During that alleged period of time we had never missed a premium payment, we had received no communication from our broker regarding any termination, we had received no denial of any claims, and we never had problems obtaining Certificates of Insurance.

The testimony is uncontroverted. The notice relied upon by Real Party purports to have been sent by certified mail which begs the question – where is the green card or the unclaimed envelope?

The only other evidence offered by Real Party is the self-serving discovery responses from Texas Mutual. Texas Mutual's canned response to almost all of the questions posed by Real Party (subject to objection) was:

> Texas Mutual insurance policy no. STA_0001244473 301 10904 ("The Policy") was issued to Preferred Staffing Company, LLC d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period of 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance's Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Worker's Compensation Act.[89]

---

[88] Tab 11.

[89] Tab 19.

23

Real Party also relies upon admissions submitted by Texas Mutual "admitting" that 1) the policy "was cancelled prior to August 5, 2012", and 2) that "iWORKS was a 'nonsubscriber,' under Texas law to your [Texas Mutual's] knowledge and definition of "nonsubscriber."[90] Notwithstanding the fact that these admissions are conclusory and lack any evidentiary foundation, these admissions have no evidentiary value as they cannot be used against iWORKS.[91]

What Texas Mutual's evidence does show is that iWORKS did indeed have a policy covering the date of Real Party's injury. What it does not show is any evidence that the policy was properly terminated pursuant to the Labor Code and the rules established by the DWC. Again, where is the green card? Where is the unclaimed envelope? It is not in any of the documents submitted by Real Party. Texas Mutual's testimony also supports the exclusive jurisdiction of the DWC when it claims that it has adhered to all of the requirements of the Act and the DWC rules appurtenant thereto. It is solely within the DWC's province to determine Texas Mutual's actual compliance and solely within the DWC's administrative power to punish and sanction Texas Mutual for violations of the Act and/or the DWC rules.

Real Party also referenced an August 24, 2012 letter written by Texas Mutual to show cancellation of the policy.[92] Again there is no evidence to show

---

[90] Tab 19.

[91] Tex. Rule of Civ. P. 198.3; see *U.S. Fid. & Guar. Co. v. Goudeau*, 272 S.W.3d 603, 610 (Tex. 2008).

[92] Tab 19.

24

that this was actually sent to iWORKS or that iWORKS ever received it. Nor is there any mention of termination in this letter. However, the very next document in Real Party's exhibit does show that iWORKS paid Texas Mutual just under $44,000.00 in premiums for that policy period.[93]

The only other document offered by Real Party in opposition to *iWORKS Plea to the Jurisdiction* is an "Appointment Confirmation" dated October 18, 2012[94] that Real Party offered as proof that iWORKS "was in direct contact with Texas Mutual during this cancellation period."[95] Notwithstanding the same issues of delivery and receipt, this letter makes no mention of termination even though it is dated over three months since the policy was supposed to have been cancelled. The very next two documents in Real Party's exhibit shows that on November 12, 2012 a copy of an "Incomplete Final Audit Notification" allegedly sent to iWORKS[96] was also faxed to Lette Insurance. What is interesting about this document is that it states

> To prevent cancellation of your current coverage, please contact the Premium Audit department promptly.[97]

---

[93] Tab 20.

[94] Tab 19.

[95] Tab 15, p. 9, ¶ 38.

[96] Tab 21; Again, Real Party provides no evidence that this letter was actually sent to or received by iWORKS.

[97] *Id.*

This begs the question, if iWORKS' coverage was terminated in July, 2012, how could its current coverage in November, 2012 be subject to cancellation? This court, looking at this evidence *de novo*, should find that the evidence submitted by Real Party to show the trial court's jurisdiction in this matter is of no probative effect at all. However, even had the trial court (or this Court) given any weight to the evidence submitted by Real Party, the laws of the Act and the Rules of the DWC still confer exclusive jurisdiction to the DWC.

The Act and the rules enacted by the DWC have very specific requirements governing the termination of a workers' compensation policy. The Act provides that an insurance company that terminates a policy "shall deliver notice of the cancellation... by certified mail or in person to the employer and the division" at least thirty days prior to the effective date of the cancellation.[98] If the insurance company does not give notice as required, then the policy is extended until proper notice is provided.[99]

Pursuant to the rule making authority given to it in the Act, the DWC has promulgated additional rules for the termination of a worker's compensation policy which are codified in the TAC.[100] Chapter 43 provides that "[r]ejection of the workers' compensation system [o]ccurs when a subscriber terminates coverage or

---

[98] §406.008.

[99] *Id.*

[100] See 28 TEX. ADMIN. CODE, Chapter 43.

26

fails or refuses to purchase a policy of workers' compensation insurance."[101] Thus, there is no allegation that iWORKS "rejected" the workers' compensation system.

Under the DWC's rules a carrier must give the employer written notice of termination at least thirty days before the effective date of termination.[102] Notice must be by certified mail; there is no provision for personal delivery.[103] The effective date of the termination under Chapter 43 is "the latest of the following dates: (A) on the 31st day after the carrier notifies the subscriber as provided in subsection (c) . . . ; (B) the day the carrier files notice of termination with the board . . .; or (C) the actual termination date recited on the notice."[104]

Chapter 110 provides substantially more protection for both the employer and the employee. It provides that:

> f) Cancellation or non-renewal of a workers' compensation insurance policy by an insurance company takes effect on ***the later* of**:
>
>> (1) the end of the workers' compensation insurance policy period; or
>>
>> (2) the date the division and the employer receive the notification from the insurance company of coverage cancellation or non-renewal and the later of:
>>
>>> (A) the date 30 days after receipt of the notice required by Labor Code, §406.008(a)(1);
>>>
>>> (B) the date 10 days after receipt of the notice required by Labor Code, §406.008(a)(2); or

---

[101] *Id.*, § 43.10(a)(2).

[102] *Id.*, § 43.10(c)(1-3)

[103] *Id.*

[104] *Id.*, § 43.10(d)(1)

        (C)     the effective date of the cancellation if later than the date in paragraph (1) or (2) of this subsection.[105]

The rules promulgated by the DWC and codified in the TAC reflect the driving intent of the State of Texas that its workers be covered.

How do these laws and regulations apply in this case? Under Rule 110.1, regardless of when or how or if iWORKS was provided with notice of cancellation by Texas Mutual, the effective date of termination would be at the end of the policy period on September 4, 2012. Under Rule 43.10 the effective date of termination would be on the 31st day after iWORKS received notice of cancellation from Texas Mutual through certified mail. Under Section 408.10, the termination date is extended until Texas Mutual provides notice of cancellation to iWORKS through either certified mail or personal delivery. Since iWORKS never received notice of cancellation through certified mail, under both Rule 43.10 and Section 408.10 the policy terminated under its own terms on September 4, 2012. Real Party was injured on August 5, 2012. Thus he falls under the coverage of iWORKS' workers' compensation policy.

---

[105] *Id.,* § 110.1(f) (emphasis added).

**E. The DWC has exclusive jurisdiction to determine coverage.**

The DWC routinely addresses the issues raised in this case through its administrative proceedings.[106] For example, in *Appeals Panel No. 030660*[107] (Division of Worker's Compensation, April 28, 2003) the DWC appeals panel addressed a temporary staffing situation and determined which employer was liable, the proper application of the Staff Leasing Services Act[108] ("SLSA"), and approved the use of the borrowed servant doctrine in determining liability.

In *Appeals Panel No. 021771* (Division of Worker's Compensation, September 3, 2002) the appeals panel addressed a matter factually similar to this case analyzing the interplay between the contractual obligations between a staffing

---

[106] See e.g. *Ins. Co. of Pa. v. Hartford Underwriters Ins. Co.*, 164 S.W.3d 747 (Tex.App.—Houston [14th Dist.] 2005, no pet.) ("Though we are not bound by the decisions [of the DWC], we find them instructive . . . . "); *Houston Gen. Ins. Co. v. Ass'n Cas. ins. Co.*, 977 S.W.3d 634, 636 (Tex.App.—Tyler 1998, no pet.) (noting that administrative decisions, while not binding, are entitled to substantial weight).

DWC Appeals Panel decisions are available on the Texas Department of Insurance website at http://www.tdi.texas.gov/appeals. Copies of the Appeals Panel decisions cited herein are found in the Appendix at Tab 22.

[107] Tab 22.

[108] TEX. LABOR CODE, Chapter 91 ("STAFF LEASING SERVICES"). The Texas Legislature amended Chapter 91 in 2013 renaming it "PROFESSIONAL EMPLOYMENT ORGANIZATIONS". This amendment supports iWORKS' opposition to Real Party's continuing assertion that iWORKS is a staff leasing company. Rather, iWORKS temporary employment service as set forth in Chapter 93 of the TEXAS LABOR CODE. Furthermore, effective September 1, 2013, TEX. LABOR CODE § 93.004(a) holds that a Certificate of Insurance "constitutes proof of workers' compensation insurance coverage for the temporary employment service and the client of the temporary employment service with respect to all employees of the temporary employment services assigned to the client." Subsection (a) further holds that "[t]he state or political subdivision of the state shall accept a certificate of insurance coverage described by this section as proof of worker's compensation coverage under Chapter 406."

29

company and its client company, the applicability of the SLSA, and the application of the borrowed servant doctrine to determine coverage. The appeals panel upheld the hearing officer's determination that the client company was responsible for the worker's injury rather than the staffing company. The panel held that:

> Texas courts have recognized that a general employee of one employer may become the borrowed servant of another employer. The determinative question then becomes which employer had the right of control of the details and manner in which the employee performed the necessary services. Carr v. Carroll Company, 646 S.W.2d 561 (Tex. App.-Dallas 1982, writ ref'd n.r.e.). We note that in Texas Workers' Compensation Insurance Fund v. DEL Industrial, Inc., 35 S.W.3d 591 (Tex. 2000), the court held that the Staff Services Leasing Act (SSLA), Texas Labor Code Chapter 91, supersedes the common law right-of-control test in determining employer status of leased employees for workers' compensation purposes. However, (Employer 2) was not licensed under the SSLA. The hearing officer determined that on the date of injury, (Employer 2) was a licensed provider of temporary common workers under Chapter 92 of the Texas Labor Code, entitled Temporary Common Worker Employers (TCWE). In Richmond v. L. D. Brinkman & Co. (Texas) Inc., 36 S.W.3d 903 (Tex. App.-Dallas 2001, pet. denied), the court determined that the common law right-of-control test is not superseded by Chapter 92 (TCWE) of the Texas Labor Code. The hearing officer is the sole judge of the weight and credibility of the evidence. Section 410.165(a). We conclude that the hearing officer did not err in applying the right-of-control test and in determining that at the time of the injury, the claimant was the borrowed servant of (Employer 1). The hearing officer's decision is supported by sufficient evidence and is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175 (Tex. 1986).

*Id.* at p. 1-2. The client company also argued that the staffing company should be responsible because the client company paid fees to the staffing company which went towards worker's compensation coverage for the temporary employees. The panel rejected these arguments. *Id.*

30

In *Appeals Panel No. 101718* (Division of Worker's Compensation, March 21, 2011) the appeals panel examined a complex claim involving a contractor, a subcontractor, a PEO, and a temporary staffing company. In finding that the employee did not suffer a compensable injury the panel had to address issues related to coverage (including whether or not the temporary staffing company's carrier properly terminated coverage), contractual duties between the parties, liability issues between three different worker's compensation insurance providers, employment status of the claimant, and other related issues.

The legal issues discussed above are all issues that are in play in this case. These are issues that the DWC routinely addresses through its administration of the Act. These are issues that fall squarely within the exclusive jurisdiction of the DWC. The trial court does not have subject-matter jurisdiction over these matters until all of the administrative remedies available through the Act have been exhausted in the same manner as demonstrated in the DWC opinions cited above.

In *Morales v. Liberty Mut. Sinc. Co.,*[109] the Texas Supreme Court addressed the issue of the relationship between compensability under the Texas Worker's Compensation Act ("the Act"), employee status, and subscriber status.[110] The

---

[109] 241 S.W.3d 514 (Tex. 2007).

[110] The *Morales* Court addressed these issues in the context of determining which standard of review set forth in the Act should apply to judicial review of a final decision from a DWC appeals panel. If the issues being appealed involve "compensability" then the standard of review is the "modified *de novo*" standard established by §410.301. Issues that do not address compensability are reviewed under a "substantial-evidence" standard.

Court held that issues of coverage such as the one in this case fall within the rubric

of the existence of a compensable injury which is properly resolved through the

Act. Morales was killed while repairing a roof on a motel.[111] His wife sought death-

benefits under the act claiming he was injured while in the course and scope of his

employment with three different employers.[112] Two of the employers were insured

under separate worker's compensation policies, and the third was a

nonsubscriber.[113] The court explained that:

> The existence of a compensable injury is the threshold requirement for payment of benefits under the Act. *See* TEX. LAB.CODE §§ 401.011(5), 406.031(a). And there are various elements that affect whether an injury is compensable, including the worker's employment status as an employee or independent contractor at the time of injury, whether the worker was injured in the course and scope of employment, who controlled the employee's work when the injury occurred, and whether a particular employer has an insurance policy in effect. *See id.* §§ 401.011(12), (18), 401.012(a).
> . . . .
>
> A dispute about any of these elements regards "compensability or eligibility for . . . benefits" and is subject to judicial review under section 410.301.[114]

In *In Re Tex. Mut. Ins. Co.*[115] the court addressed the DWC's exclusive

jurisdiction in the context of common law breach of contract claims and disputed

---

*Morales*, 241 at 516-17. The outcome of this question of compensability also effects venue and the appropriate scope of judicial review. *Id.*

[111] *Id.* at 515.

[112] *Id.*

[113] *Id.*

[114] *Id.* at 519.

[115] 157 S.W.3d 75 (Tex.App.—Austin 2004, orig. proceeding).

coverage. The Court held that the *Fodge* decision mandated that the claimant's breach-of-contract claim "is within the Commission's exclusive jurisdiction."[116] The Court also held that:

> We likewise reject [Claimant's] assertions that the Commission's exclusive jurisdiction over worker's compensation benefits claims does not extend to determining whether coverage existed at the time of [Claimant's] injury. The legislature has granted the Commission exclusive jurisdiction over claims for policy benefits. *Fodge*, 63 S.W.3d at 805. In adjudicating such claims, the Commission will necessarily have to interpret compensation policies and determine the period in which coverage existed. Indeed, it appears to routinely do so. See, e.g., *Gonzales v. Cigna Ins. Co. of Tex*, 924 S.W.2d 183, 184-87 (Tex.App.—San Antonio 1996, write denied); *Houston Gen. Ins. Co. v. Association Cas. Ins. Co.*, 972 S.W.2d 634, 636 (Tex.App.—Tyler 1998, no pet.).
>
> Moreover, [Claimant's] argument would imply that whenever the Commission, in the exercise of its exclusive jurisdiction, encounters a coverage issue that can be characterized as going to "policy formation," the agency must abate its proceedings pending judicial resolution of the "formation" issue. We doubt that the legislature, in conferring exclusive jurisdiction upon the Commission to determine compensation benefits claims, intended such an absurd result that seemingly turns traditional concepts of exclusive jurisdiction on their head.[117]

---

[116] *Id.* at 80.

[117] *Id.*

**F.** **The newly released *Crawford* opinion confirms the Court's prior findings that it is the intent of the legislature that the DWC have exclusive jurisdiction out of work-place injury claims and that even artful pleadings will not let Plaintiff's recast their claims outside of the purview of the Act.**

One week after the trial court denied iWORKS' plea, the Texas Supreme Court issued its opinion in *In Re Crawford & Co.*[118] The Supreme Court held that the DWC has exclusive jurisdiction over the Plaintiff's claims and that the Act provided the exclusive remedies, even over plaintiff's common law claims. The *Crawford* Court reversed the Amarillo Court of Appeals and dismissed the Plaintiff's district court claims.

The *Crawford* opinion both clarifies and expands the Supreme Court's holding in *Ruttiger*.[119] In *Crawford* the Plaintiff sued his employer's worker's compensation carrier alleging that it improperly denied him benefits from a 1998 injury. He argued that the carrier engaged in conduct that gave rise to liability independent from and unrelated to worker's compensation and, thus, did not fall under the exclusive jurisdiction of the DWC. The Supreme Court rejected this argument. The critical distinction between this case and *Crawford* is that the *Crawford* plaintiff had already invoked the DWC's jurisdiction, while the Real Party has refused to invoke the DWC's jurisdiction claiming that Relator is a non-

---

[118] No. 14-0256 (Tex. February 27, 2015) (per curiam) (a copy is attached to the Appendix at Tab 23).

[119] "We agree with Crawford that the court of appeals read *Ruttiger* too narrowly." *Crawford* at p. 7.

34

subscriber under the Texas Labor Code. However, the seminal messages from the Texas Supreme Court in *Crawford* are equally commanding in this case.

The first seminal message from *Crawford* is that it is the clearly established intent of the legislature "that the current Act with its definitions, detailed procedures, and dispute resolution processes" be the exclusive remedy for workplace injuries, and, moreover, that this "demonstrates legislative intent for there to be no alternative remedies."[120] The Court observed that:

> The Act designates the Department of Insurance as the administrative agency responsible "[for overseeing] the workers' compensation system of this state" and establishes the Division of Workers' Compensation within the Department to "administer and operate" that system. TEX. LAB. CODE § 402.001. It is the Division's duty to "(1) regulate and administer the business of workers' compensation in this state; and (2) ensure that [the Act] and other laws regarding workers' compensation are executed." *Id.* § 402.00114. The Division must monitor insurance carriers, employers, and others "for compliance with commissioner rules, this subtitle, and other laws relating to workers' compensation." *Id.* § 414.002(a). The Division or its commissioner may impose an array of sanctions against those who fail to comply, including a cease-and-desist order and administrative penalties up to $25,000 per day per occurrence. *Id.* § 415.021(a). As we explained in *Ruttiger*, the Act, as substantially revised in 1989, "prescribes detailed, [Division]supervised, time-compressed processes for carriers to handle claims and for dispute resolution" and "has multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements." 381 S.W.3d at 443[121].

---

[120] *Crawford* at p. 9 (quotes and citations omitted).

[121] *Crawford* at p. 4.

Thus, the broad scope and powerful enforcement provisions provided to the DWC by the 1989 revisions to the Act evince the legislature's unequivocal intent that the DWC be the forum for which work-place injuries are resolved.

The second seminal message from *Crawford* is that it is the substance of the claims and not the label of the cause of action asserted which determines the exclusively jurisdiction of the DWC.

> Whether the Act provides the exclusive process and remedies, therefore, does not depend on the label of the cause of action asserted. As we have often explained, claimants may not recast claims to avoid statutory requirements or to qualify for statutory protections. [citations omitted] Instead, in assessing whether a claim falls within the Division's exclusive jurisdiction, courts must look at the substance of the claim.[122]

Thus, Real Party's creative and questionable assertion of causes of action putatively beyond the scope of the Act are of no consequence. The substance of this claim is that Real Party was injured at work and is seeking damages for those injuries. The *Crawford* opinion and its predecessors hold that resolution of these claims falls under the exclusive jurisdiction of the DWC. Therefore, the trial court cannot exercise its jurisdiction in this matter until Real Party has exhausted his administrative remedies. If is fundamental error for it to do so.

The crux of Real Party's adamant disavowal of the DWC's exclusive jurisdiction is twofold. First is its contention that iWORKS is a non-subscriber. By making this assertion Real Party not only seeks access to the potentially much

---

[122] *Crawford* at p. 8.

36

greater recovery provided by common law remedies, but he also seeks the tactical advantage conferred by the Act which would strip away most if Relator's common-law affirmative defenses, particularly contributory negligence.[123] Second is the fact that Real Party tested positive for marijuana immediately following his work-place injury. The Act provides that an employee that tests positive for marijuana is presumed intoxicated and that the burden is on that employee to rebut that presumption.[124] The Act further provides that an employee is not entitled to benefits under the Act if the injury occurred while he was intoxicated.[125] Thus, Real Party has an incredibly strong incentive to avoid the DWC at all costs, both on the upside (potentially greater remedies) and on the downside (denial of benefits due to intoxication). "[P]arties cannot avoid exhaustion of administrative remedies because they fear they might not prevail." *In Re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327 329 (Tex. 2009).

## VIII.  Conclusion

This Court should grant Relator's request for mandamus relief and dismiss Real Party's claims. The trial court does not have subject matter jurisdiction.  The Legislature has made clear through the Act that the DWC has exclusive jurisdiction over Real Party's claims and that Real Party must exhaust all of his administrative

---

[123] § 406.033 (a).

[124] § 401.013(c).

[125] § 406.032(1)(A).

remedies as set forth in the Act. Real Party has intentionally tried to circumvent the act by recasting his work-place injury claims under various common law tort and contract claims. He has done this in the hope of obtaining more generous common law remedies and out of fear that he will not prevail in the administrative proceedings due to his presumed intoxication. Creative pleadings notwithstanding, Real Party's failure to exhaust his administrative remedies through the DWC precludes the trial court from exercising subject matter jurisdiction. The trial court erred by doing so.

Real Party's contention that Relator is a nonsubscriber also has no merit. It is not supported by the pleadings and the evidence offered to the trial court. Even if the trial court had taken Real Party's unsupported claims as true, the Labor Code and the Administrative Act both mandate as a matter of law that Relator's policy was in effect at the time of Real Party's on-the-job injury. The Texas Supreme Court has made abundantly clear from *Ruttiger* through *Crawford* that it is the public policy of the State of Texas that the Act be interpreted so as to provide coverage. Furthermore, in this matter the question of whether or not Texas Mutual properly terminated Relator's policy goes to compensability and is something that the DWC resolves on a regular basis. Thus, it has no impact on the DWC's exclusive jurisdiction and, rather, further compels such jurisdiction.

## IX. Prayer

Relator asks this Court to grant this petition for mandamus relief and dismiss Real Party's claims for lack of jurisdiction.

Respectfully submitted,

*/s/ David N. Anderson*

**DAVID N. ANDERSON**
TBN: 00797951
**THE ANDERSON LAW FIRM**
4309 Yoakum
Houston, TX 77006
(713) 521-6563 - Telephone
(888) 824-5624 – Fax
danderson@lodna.net

ATTORNEY FOR DEFENDANTS
IWORKS PERSONNEL, INC.,
LUIS TREVINO, and
HAYDEE GUTIERREZ

# Certificate of Service

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d), (e), and 52.7(c), I certify that on March 13, 2015 I have served this Petition for Writ of Mandamus on all other parties listed below through the Texas eFile system as follows:

The Honorable Michael Landrum
113th Judicial District Court
Harris County Civil Courthouse
201 Caroline, 10th Floor
Houston, TX  77002
***Respondent***

Bradford J. Gilde
Texas Bar No. 24045941
bjg@gildelawfirm.com
GILDE LAW FIRM
55 Waugh, Suite 850
Houston, TX 77007
***Counsel for Real Parties in Interest***
***Mose Guillory and Mary Guillory***

B. Lee Wertz, Jr.
Texas Bar No. 00797796
lwertz@munsch.com
MUNSCH, HARDT, KOPF, AND HARR, P.C
700 Milam Street, Suite 2700
Houston, Texas 77002-2806
***Counsel for Defendant, Waste Management, Inc.***

    /s/ David N. Anderson_____
David N. Anderson

# Verification and Certificate of Compliance

**BEFORE ME**, the undersigned authority, did personally appear David N. Anderson

who, having been duly sworn, did on his oath depose and say as follows:

1. My name is David Anderson. I am attorney for iWORKS Personnel, Inc., Luis Trevino, and Haydee Gutierrez, Defendants in Cause No. 2012-61407 in the 113th District Court for Harris County, Texas and Relator herein. As a result of the knowledge acquired in that position I have personal knowledge of the matters contained in this Verification and Certificate, and I am fully competent to testify to them.

2. I certify that I have reviewed Relators' Petition for Writ of Mandamus and concluded that every factual statement in this Brief is true and correct and is supported by competent evidence included in the Appendix to this Petition.

3. I further certify that the documents included in the Appendix to this Petition are true and correct copies.

4. I further certify that this document was produced on a computer using Microsoft Word 2013 and contains 9,013 words, as determined by the computer software's word-count function, excluding the sections of the documents listed in Texas Rule of Appellate Procedure 52.6.

   Further Affiant Sayeth Not.

_____
David N. Anderson

SUBSCRIBED and SWORN to before me the undersigned Notary Public on March 13, 2015.

JENNIFER ARMENDARIZ
Notary Public, State of Texas
My Commission Expires
April 26, 2017

_____
Notary Public, State of Texas

40

# Appendix

Tab 1 – Order denying iWORKS' Plea to the Jurisdiction

Tab 2 – *Plaintiff's Fifth Amended Petition*

Tab 3 – Master Service Agreement

Tab 4 – Hold Harmless Agreement

Tab 5 – *iWORKS' Plea to the Jurisdiction*

Tab 6 – iWORKS' WC Policy

Tab 7 – Waste Management's WC Policy

Tab 8 – Employer's First Report of Injury or Illness (DWC-001)

Tab 9 – Hold Harmless Agreement

Tab 10 – Employee's Claim for Compensation (DWC-041)

Tab 11 – Affidavit of Luis Trevino

Tab 12 – *iWORKS' Supplemental Plea to the Jurisdiction*

Tab 13 – Texas Mutual's Receipt of Claim

Tab 14 – Gilde's Correspondence to DWC and Employee's Notice of Claim

Tab 15 – *Plaintiffs' Response to iWORKS' Plea to the Jurisdiction*

Tab 16 – Texas Mutual Insurance Discovery Responses

Tab 17 – Lette Insurance Company Discovery Responses

Tab 18 – Master Service Agreement (incomplete copy of Tab 2)

Tab 19 – Documents cited in Plaintiff's Response

Tab 20 – Final Audit Statement

Tab 21 – Incomplete Final Audit Notification

Tab 22 – DWC Review Board Decisions

Tab 23 – *In Re Crawford*, No. 14-0256 (Tex. February 27, 2015) (per curiam)

Tab 24 – Texas Administrative Code Rule 43.10 and 110.1

Tab 25 – TEXAS LABOR CODE, Chapter 401

Tab 26 – TEXAS LABOR CODE, Chapter 402

Tab 27 – TEXAS LABOR CODE, Chapter 406

Tab 28 – TEXAS LABOR CODE, Chapter 408

Tab 29 – TEXAS LABOR CODE, Chapter 409

Tab 30 – TEXAS LABOR CODE, Chapter 410

Tab 31 – TEXAS LABOR CODE, Chapter 414

Tab 32 – TEXAS LABOR CODE, Chapter 415

# TAB 1

*F-1*
*PJURY*
*CAFX*

No 2012-61407

MOSE A GUILLORY      §      IN THE DISTRICT COURT
and MARY GUILLROY      §

     §
Plaintiffs      §

     §
vs      §

     §
IWORKS PERSONNEL, INC ,      §
WASTE MANAGEMENT, INC ,      §
WASTE MANAGEMENT OF TEXAS, INC , §
WM RECYCLE AMERICA, LLC,      §      OF HARRIS COUNTY, TEXAS
LUIS TREVINO,      §
HAYDEE GUTIERREZ, and      §
SMX, LLC      §

     §
Defendants      §      113TH JUDICIAL DISTRICT

FILED
Chris Daniel
District Clerk
Time _____
FEB 2 0 2015
By _____ Harris County, Texas
Deputy

## ORDER

On February 20, 2015, a hearing was held on iWORKS Personnel, Inc 's Plea to the Jurisdiction filed February 13, 2015 It is

Ordered that the said plea is denied

The Court, acting *sua sponte*, Orders the case removed from the Court's trial ready docket for the two week period beginning March 16, 2015 The case is re-set on the trial docket for the period beginning ___6 - 22___, 2015

The Court, acting *sua sponte*, Orders that the pre-trial deadlines in this case shall remain unaltered, save and except that the parties may file dispositive motions directed at the iWORKS subscriber status issue Such motions, if filed, must be heard on or before May 15, 2015

Signed February 20, 2015

_____
Michael Landrum, Judge

TAB 2

CAUSE NO. 2012-61407

| MOSE A. GUILLORY and | § | IN THE DISTRICT COURT |
| MARY GUILLORY, | § | |
| *Plaintiffs* | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| IWORKS PERSONNEL, INC.; | § | |
| WASTE MANAGEMENT, INC.; | § | |
| WASTE MANAGEMENT OF TEXAS, INC.; | § | |
| WM RECYCLE AMERICA, LLC; | § | |
| LUIS TREVINO; and | § | |
| HAYDEE GUTIERREZ. | § | |
| *Defendants.* | § | 113th JUDICIAL DISTRICT |

## PLAINTIFFS' FIFTH AMENDED PETITION & REQUESTS FOR DISCLOSURE

## I.     INTRODUCTION

*"Few problems in the law have given greater variety of application and conflict in results than the cases arising in the borderland between what is clearly an employer-employee relationship and what is clearly one of independent, entrepreneurial dealing."* See NLRB v. Hearst Publ'ns, Inc., 322 U.S. 111, 121 (1944) (quoting U.S. Supreme Court Justice Wiley Blount Rutledge).

1.     Plaintiffs MOSE A. GUILLORY and MARY GUILLORY (hereinafter collectively referred to as "PLAINTIFFS"), complain of the above-named Defendants', IWORKS PERSONNEL, INC.; LUIS TREVINO; and HAYDEE GUTIERREZ; (hereinafter collectively referred to as "IWORKS" or "IWORKS DEFENDANTS"); and WASTE MANAGEMENT, INC.; WASTE MANAGEMENT OF TEXAS, INC.; WM RECYCLE AMERICA, LLC (hereinafter collectively referred to as "WM" or "WM DEFENDANTS") incompetence, *inter alia*, which incompetence proximately caused Plaintiff Mose Guillory's injuries and PLAINTIFFS' damages – to wit: **IWORKS** was an incompetent employer/entity when it failed to subscribe to Texas Workers Compensation Insurance Coverage for Plaintiff Mose Guillory and was incompetent when it failed to train Plaintiff Mose Guillory.  **WM,** as confirmed by OSHA, was an equally incompetent employer/entity who

likewise failed to train Plaintiff Mose Guillory and was an incompetent employer/entity when it failed to ensure Texas Workers Compensation Insurance Coverage for Plaintiff Mose Guillory, by virtue of its Staff Leasing Agreement with **IWORKS**.

2.     U.S. Supreme Court Justice Wiley Blount Rutledge's "borderland" of liability is evidenced in the legal issues involved in this case that include **Contract Law**, **Employment Law**, and **Tort Law**. *Defendants architected this "borderland" of liability through their contractual agreements in an effort to skirt around employment obligations that ultimately resulted in the conduct that proximately caused PLAINTIFFS' injuries and damages.* That is, Defendants' contractual agreements were designed to obscure employment responsibility thereby setting the stage for work-related accidents without civil redress to the victims (Plaintiffs herein) and resulting in an economic windfall to the victimizer (Defendants herein).

3.     This is not a simple case of who has coverage – the holder of which entitles that party or all parties to a comp-bar defense. Rather and unfortunately, it is a complicated case. IWORKS Defendants would have this Court and our jury believe that it is not responsible for obtaining workers compensation coverage and not responsible for training its leased employees by virtue of a contract with WM Defendants – absolving IWORKS Defendants of any and all liability. WM Defendants would have this Court and our jury believe that its workers compensation coverage policy entitles it to a comp-bar defense – absolving WM Defendants of civil liability in the present action, so that WM Defendants can later deny workers compensation coverage by pointing to IWORKS Defendants' obligation to secure same by virtue of a contract with IWORKS Defendants in a subsequent action – absolving WM Defendants of any and all liability.

4.     Based on Defendants' incompetence, *inter alia*, PLAINTIFFS hereby bring this their latest live pleading and would respectfully show unto this honorable Court the following:

## II.    DISCOVERY CONTROL PLAN

5.     PLAINTIFFS intend to conduct discovery under **Level 3** of Texas Rule of Civil Procedure 190.4. Given the introduction of SEATON, L.L.C.'S (d/b/a STAFF MANAGEMENT), Defendants' dispositive motion practice, and other issues concerning discovery, PLAINTIFFS have requested discovery under Level 3 and have submitted to the Court Plaintiffs' Proposed Docket Control Order.

## III.    PARTIES

6.     **Plaintiff MOSE A. GUILLORY**, an individual, is a resident and citizen of Fort Bend County, Texas.

7.     **Plaintiff MARY GUILLORY**, an individual, is the wife of MOSE A. GUILLORY and is a resident and citizen of Fort Bend County, Texas.

8.     **Defendant IWORKS PERSONNEL, INC.** *purports* to be a Texas corporation organized and existing under the laws of the state of Texas, whose principal office is P.O. Box 100111, San Antonio, Bexar County, Texas 78201-1411.  Defendant IWORKS PERSONNEL, INC. has filed its Answer and appeared herein.

9.     **Defendant WASTE MANAGEMENT, INC.** is a Texas corporation organized and existing under the laws of the state of Texas, whose principal office is 1001 Fannin, Suite 4000, Houston, Harris County, Texas 77002.  Defendant WASTE MANAGEMENT, INC. has filed its Answer and appeared herein.

10.     **Defendant WASTE MANAGEMENT OF TEXAS, INC.** is a Texas corporation organized and existing under the laws of the state of Texas, whose principal office is 1001 Fannin, Suite 4000, Houston, Harris County, Texas 77002.  Defendant WASTE MANAGEMENT OF TEXAS, INC. has filed its Answer and appeared herein.

11.     **Defendant WM RECYCLE AMERICA, LLC** is a Texas corporation organized and existing under the laws of the state of Texas, whose principal office is 1001 Fannin, Suite 4000, Houston, Harris County, Texas 77002.  Defendant WM RECYCLE AMERICA, LLC has filed its Answer and appeared herein.

12. **Defendant LUIS TREVINO**, an individual, may be served with process at Defendant's usual place of abode, 217 Country Meadow Dr., Boerne, Kendall County, Texas 78006. Defendant LUIS TREVINO has filed his Answer and appeared herein.

13. **Defendant HAYDEE GUTIERREZ**, and individual, may be serve with process at Defendants' usual place of business, IWORKS PERSONNEL, INC., 6653 San Pedro Ave, San Antonio, Bexar County, Texas 78216. Defendant HAYDEE GUTIERREZ has filed her Answer and appeared herein.

## IV. JURISDICTION

14. This Court has jurisdiction over the lawsuit because the District Court's jurisdiction begins at $500 and has no upper limits. The amount in controversy in this case is within the jurisdictional limits of this court. In addition, this Court has jurisdiction over Defendants because Defendants purposefully availed themselves of the privileges and benefits of conducting business in Texas by engaging in business in the State of Texas. Finally, this Court has jurisdiction over Defendants because Defendants committed torts in whole or in part in Texas, which torts are the subject of this suit and which are set forth more fully below.

## V. VENUE

15. Venue is proper in Harris County, Texas under Texas Civil Practice & Remedies Code section 15.002 because all or a substantial part of the events or omissions giving rise to this suit occurred in Harris County, Texas. *See* TEX. CIV. PRAC. & REM. CODE §15.002(a)(1). That is, PLAINTIFFS' injuries and damages were caused by Defendants' actions and/or inactions that arose out of an incident that occurred at 4939 Gasmer Dr., Houston, Harris County, Texas 77035. Venue is proper in Harris County, Texas under Texas Civil Practice & Remedies Code section 15.002 because one or more defendant corporations maintain its principal office in Harris County, Texas. See Tex. Civ. Prac. & Rem. Code §15.002(a)(3). Finally, venue in Harris County, Texas is proper pursuant to §15.002 because the venue facts show the

convenience of the parties, witnesses, and in the interest of justice, Harris County, Texas is proper venue. Maintenance of this action in Harris County, Texas would not work an injustice to any party and the balanced interests of all parties predominate in favor of the action being brought within Harris County, Texas.

## VI. NO BASIS FOR REMOVAL

16. There is no basis for removal of this case to federal court. There is no federal question at issue pursuant to 28 U.S.C. §1441(b). There is no total diversity of citizenship pursuant to 28 U.S.C. §1441 and 28 U.S.C. §1332, because one or more of the Defendants is a citizen of the state of Texas. *See* 28 U.S.C. §1441(b), §1332(c). PLAINTIFFS are not asserting any claims against any Defendant whom was acting as/under any officer of the United States or any such agency thereof, or person acting under him, or for any act under color of such office, or against any Defendant during a time period when this facility was a federal enclave. Accordingly, there is no basis for removal of this case to federal court, and any attempt to do so by any Defendant will be met with an immediate motion to remand and a motion for sanctions.

## VII. EXHIBITS

17. PLAINTIFFS hereby incorporate by reference, as though set forth fully herein, the following attached exhibits – to wit:

- **EXHIBIT A: WM DEFENDANTS' Master Agreement**
- **EXHIBIT B: Heavy Equipment Operator Agreement**

18. PLAINTIFFS' exhibits are "written instruments" constituting, "in whole or in part," the claim sued upon, pursuant to TRCP 59.

## VIII.  IWORKS DEFENDANTS & WM DEFENDANTS ARE NON-SUBSCRIBER'S TO THE WORKERS' COMPENSATION ACT

19.     IWORKS DEFENDANTS did not maintain a workers' compensation insurance policy in accordance with the Workers' Compensation Act and/or did not maintain a workers' compensation insurance policy that covered MOSE GUILLORY at the time of the incident, which failure makes IWORKS DEFENDANTS a nonsubscriber.  TEXAS LABOR CODE §408.001(a).  Because IWORKS DEFENDANTS are nonsubscribers and their employee, PLAINTIFF MOSE GUILLORY, was injured on the job and by their negligence and/or gross negligence, the Workers' Compensation Act does not shield IWORKS DEFENDANTS from suit.  *See* TEX. LAB. CODE §§406.033, 408.001

20.     Upon information and belief, WM DEFENDANTS did not maintain a workers' compensation insurance policy in accordance with the Workers' Compensation Act, did not maintain a workers' compensation insurance policy that covered MOSE GUILLORY, and/or cannot claim "subscriber" status under Texas law at the time of the incident, which failure makes WM DEFENDANTS a nonsubscriber.  TEXAS LABOR CODE §408.001(a).  Because WM DEFENDANTS are nonsubscribers and their employee, PLAINTIFF MOSE GUILLORY, was injured on the job and by their negligence and/or gross negligence, the Workers' Compensation Act does not shield WM DEFENDANTS from suit.  *See* TEX. LAB. CODE §§406.033, 408.001.

21.     Additionally, by virtue of being nonsubscribers, ***IWORKS DEFENDANTS and WM DEFENDANTS are precluded from asserting the following defenses in answering, responding, or defending this lawsuit: (1) contributory negligence; (2) assumption of the risk; (3) negligence of a fellow employee; and (4) pre-injury waiver of liability***. *See* TEX. LAB. CODE §406.033(a), (e).

## IX.     FACTS

22.     **LEGAL ISSUES INVOLVED – BACKGROUND.**  The legal issues involved in this case include Contract Law, Employment Law, and Tort Law.  A brief historical analysis of the interplay of these legal

issues is important in understanding Defendants' motivation and Defendants' "borderland" of liability. Employment law looks at "Who is the Employee?" and "Who is the Employer?" – the latter of which is critical in assessing who is responsible for employment benefits under various federal and state employment laws (e.g. worker misclassification – where the misclassification or wrongful classification of an employee as a "contractor" would essentially deny an employee of most federal employment law benefits – collective bargaining for example [1]) [2]. Although seemingly simple, determining this "employment relationship" is often times difficult, under the law[3]. In determining this "employment relationship," employers have taken great strides in blurring the lines of the employment relationship in an effort to operate outside federal and state employment laws – to operate in the "borderland"[4] of liability. The objective is obvious – when the employment relationship is unclear, employment rights are unclear[5]; and, as a result, a financial windfall is reaped by the employer who blurred the lines[6]. This

---

[1] http://mynlrb.nlrb.gov/link/document.aspx/09031d4580022ea1

[2] *See* WHD News Release 11-1373-NAT, Labor Secretary, IRS Commissioner Sign Memorandum of Understanding to Improve Agencies' Coordination on Employee Misclassification Compliance and Education (Sept. 19, 2011). Deputy Secretary of Labor Seth Harris explained the significance of the problem of worker misclassification in his testimony before Congress:

> ***"Misclassification" seems to suggest a technical violation or a paperwork error. But "worker misclassification" actually describes workers being illegally deprived of labor and employment law protections, as well as public benefits programs like unemployment insurance and <u>workers' compensation</u> because such programs generally apply only to "employees" rather than workers in general. . . . Misclassification is no mere technical violation. <u>It is a serious threat to workers and the fair application of the laws Congress has enacted to assure workers have good, safe jobs</u>.***

*Leveling the Playing Field: Protecting Workers and Businesses Affected by Misclassification Before the S. Comm. On Health, Education, Labor and Pensions*, 111th Cong. (2010) (statement of Seth Harris, Deputy Sec'y of Labor).

[3] The Supreme Court, for example, has referred to the definition of an employee under the Americans with Disabilities Act as a "mere 'nominal definition,'" *Clackamas Gastroenterology Assocs. v. Wells*, 538 U.S. 440, 444 (2003), and has stated that the definition of an employee under the Employee Retirement Income Security Act is "completely circular and explains nothing," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992).

[4] *See NLRB v. Hearst Publ'ns, Inc.,* 322 U.S. 111, 121 (1944) (quoting U.S. Supreme Court Justice Wiley Blount Rutledge).

[5] *See* Mitchell H. Rubinstein, *Our Nation's Forgotten Workers: The Unprotected Volunteers*, 9 U. OF PA. J. LAB. & EMP. L. 147, 151 (2006) (citing *Seattle Opera v. NLRB*, 292 F.3d 757, 759 (D.C. Cir. 2002)) (holding that an individual was an employee under NLRA even though he was not paid the minimum wage and did not receive tax form W-2); *see also Hopkins v. Cornerstone Am*, 545 F.3d 338, 347 (5th Cir. 2008) (stating that it is not inconsistent to be considered an employee under the FLSA, but an independent contractor under other statutes); *City Cab Co. of Orlando*, 285 N.L.R.B. 1191, 1193 (1987) (holding that employee status determinations of other governmental agencies are not controlling, but should be given consideration by the NLRB); *see BWI Taxi Mgmt*, No. 5-RC-4836874, 2010 WL 4836874, at *9 n.15 (NLRB Reg. Dir. Sept. 16, 2010) (stating that the petitioner received a letter saying he was an independent contractor under the EEOC, but was considered an employee under the NLRA);

financial windfall and danger to the American worker has seen its greatest rise in the "contingent workforce" and in recent years – to wit:

- U.S. Labor Department reports that in 2013, the nation had more temp workers than ever before: ***2.7 million  temp workers in U.S.***[7].

- Since the recession ended in mid-2009, ***20% of job growth has been the temp sector***[8].

- ***Temp work is roaring back 10x faster than private-sector employment***[9].

- On average, ***temps earn 25% less*** than permanent workers.

- ***African Americans make up 11% of the overall workforce but 20% of the temp workforce***.

- ***U.S. Government does not keep statistics on injuries among temp workers***.

- Study shows that temp workers in construction and manufacturing were ***2x as likely to be injured*** as regular staff doing the same work[10].

- OSHA announced an initiative to get better information on temp-worker safety – stating: "***Employers, we think, do not have the same commitment to providing a safe workplace, to providing the proper training, to a worker who they may only be paying for a few weeks…  I mean, we've seen just ghastly situations.***[11]"

- Adding to the "Who is the Employer" confusion - ***33 states have statutes or regulations that address employee leasing and its effect on which entity is the actual employer***, while 17 states and the District of Columbia make such decisions by Court opinions.

---

*Seattle Opera*, 292 F.3d at 761–62 (holding individual was an employee even though he was treated as an independent contractor for tax purposes in that he did not receive a W-2 tax form).  *See also* Richard R. Carlson, *Why the Law Still Can't Tell an Employee When It Sees One and How It Ought to Stop Trying*, 22 BERKELEY J. EMP. & LAB. L. 295, 296 (2001) (describing statutory definitions of employee status as "baffling").

[6] It has been estimated that classifying individuals as independent contractors instead of as employees might result in a savings of twenty to forty percent of labor costs to the quasi-employer.  See Jenna Amato Moran, Note, *Independent Contractor or Employee? Misclassification of Workers and Its Effect on the State*, 28 BUFF. PUB. INT. L.J. 105, 121 (2010).

[7] See http://www.bls.gov/news.release/empsit.t17.htm

[8] *Id.*

[9] American Staffing Association

[10] http://www.ncbi.nlm.nih.gov/pubmed/19618410

[11] http://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=NEWS_RELEASES&p_id=23994   (quoting  David Michaels, OSHA Director).

- Recently, ***temp firms have successfully lobbied to change laws or regulatory interpretations in <u>31 states</u>, so that workers who lose their temp assignments and are out of work cannot get unemployment benefits***[12].

As is clear, the "contingent workforce" is larger than ever at 2.7 million temp workers, growing ten times faster than private sector employment, and is made up of minorities whom earn a quarter less, get injured twice as much, and are less likely to understand or be able to exercise their employment rights under the law. That is, cases like Plaintiffs' case are expected to rise with this horrific trend. Applying the above to the case at bar, it is no wonder the incident involving Plaintiff Mose Guillory happened necessitating this lawsuit.

23. **PLAINTIFFS.** Plaintiffs complain of Defendants IWORKS DEFENDANTS and WM DEFENDANTS, for their actions and inactions, both singularly, in combination, and/or collectively, for breaching their duties of safety, safety training, and workers' compensation coverage/compliance to and for the benefit of Plaintiff Mose Guillory, *inter alia*, which breaches proximately caused Plaintiffs' damages, as set forth more fully below.

24. **IWORKS DEFENDANTS.** Defendant IWORKS PERSONNEL, INC. is owned and operated by LUIS TREVINO and HAYDEE GUTIERREZ. IWORKS PERSONNEL, INC. is in the business of leasing employees for skilled jobs in many different industries, including but not limited to: "construction, manufacturing, warehousing, retail, events and hospitality, waste, recycling, transportation, and disaster relief." *See* http://www.iworkspersonnel.com. Regarding the type of services provided to its leased employees and to client companies, Defendant IWORKS PERSONNEL, INC. also states the following – to wit:

How does iWORKS PERSONNEL help solve your people issues?

\*\*\*

\* We offer free Basic PPE (Personal Protective Equipment)
\* Basic Safety Training (not site specific)

---

[12] http://www.workforcesecurity.doleta.gov/unemploy/pdf/uilawcompar/2013/nonmonetary.pdf

* WE PAY ALL PAYROLL TAXES and file them
* WE PAY ALL UNEMPLOYMENT TAXES and file them
* ***WE PROVIDE WORKERS COMPENSATION***
* WE PROVIDE 1 worker or hundreds, for the day or as long as you need them (minimum 4 hours)

*See* http://iworkspersonnel.com/clientsolution.aspx (emphasis added).  As is clear, in addition to supplying client companies with leased employees or temporary workers, IWORKS DEFENDANTS also have the duty and responsibility to provide worker's compensation.

25.    **WM DEFENDANTS.**  Defendants WASTE MANAGEMENT, INC., WASTE MANAGEMENT OF TEXAS, INC., and WM RECYCLE AMERICA, LLC are hereinafter sometimes referred to as "WASTE MANAGEMENT" or "WM DEFENDANTS."  Upon information and belief, WASTE MANAGEMENT, INC. is a holding company and WASTE MANAGEMENT OF TEXAS, INC. and WM RECYCLE AMERICA, LLC are its subsidiaries, which operate Defendants WASTE MANAGEMENT's Facility at 4939 Gasmer Dr., Houston, Harris County, Texas 77035 ("Facility") and which provide collection, transfer, recycling, and disposal services, under the direction and control of Defendant WASTE MANAGEMENT, INC.  WM DEFENDANTS claim the following about itself as a corporation(s) and about its safety policies – to wit:

> ***Waste Management is the largest environmental solutions provider in North America***, serving more than 20 million customers in the U.S., Canada and Puerto Rico….  ***As North America's largest residential recycler, we expect to manage more than 20 million tons every year by 2020, up from the*** <u>***more than 12 million tons we handled in 2012***</u>.

*See* http://www.wm.com/about/index.jsp (emphasis added).

> ***At Waste Management, safety is a core value and a cornerstone of operational excellence.*** This philosophy is embedded in the way we work, the decisions we make and the actions we take….  Our plan of action is called Mission to Zero (M2Z), which means ***zero tolerance for unsafe actions, unsafe decisions, unsafe conditions, unsafe equipment and unsafe attitudes.  <u>The cornerstone of M2Z is training</u>, which provides classroom and on-the-job site instruction in safety fundamentals for supervisors, drivers and helpers.*** Operations Rule Book, Driving Science Series videos and Electronic Observation Behavior Assessments are just a few of the tools available to our frontline managers to help them to develop our employees….  ***Waste Management sites continuously monitor and measure safety performance***….  Through established safety processes and procedures,

our goal of zero accidents and injuries is transformed into measurable results that have a positive impact on thousands of people.

*See* http://investors.wm.com/phoenix.zhtml?c=119743&p=irol-govhighlights ("Safety Policy" download) (emphasis added). As is clear, WM DEFENDANTS, combined, are a large corporation who, given its size and breadth, recognize their duty and responsibility to provide safety, training, and monitoring of safety and training.

26. **DEFENDANTS' Relationships.** At all times material hereto, DEFENDANTS entered into contractual agreements and relationships with one another for the performance of their duties, as it pertains to Plaintiff Mose Guillory, which contractual agreements were entered into prior to July 9, 2012. *See* **Exhibit A** (WM DEFENDANTS' Master Agreement with IWORKS DEFENDANTS) and **Exhibit B** (Heavy Equipment Operator Agreement between WM DEFENDANTS and IWORKS DEFENDANTS).

27. **Plaintiff Mose Guillory – Employed by IWORKS DEFENDANTS and Leased to WM DEFENDANTS.** On or about the morning of July 9, 2012, Plaintiff MOSE GUILLORY applied for a job at IWORKS's Houston, Texas office. Shortly after filling out an application at IWORKS's Houston, Texas office, PLAINTIFF MOSE GUILLORY received a call from IWORKS, wherein IWORKS informed PLAINTIFF MOSE GUILLORY that he was hired and that he was being assigned to WASTE MANAGEMENT at its facility located at 4939 Gasmer Dr., Houston, Harris County, Texas 77035 ("Facility" or "Gasmer MRF").

28. MOSE GUILLORY was leased to Gasmer MRF to perform tasks involving "a particular skill; . . . training in a particular occupation, craft, or trade; . . . or practical knowledge of the principles or processes of an art, science, craft, or trade." *See* Tex. Lab. Code §92.002(3)(a)-(c).

29. **Plaintiff Mose Guillory – Employed by WM DEFENDANTS.** At or around 12:00 pm on July 9, 2012, Plaintiff MOSE GUILLORY reported to the WASTE MANAGEMENT Facility where he was instructed to drive a front-end loader while a maintenance employee, Abraham Hernandez, observed. After a short demonstration, Abraham Hernandez was satisfied that PLAINTIFF MOSE GUILLORY had the requisite

skill to drive and operate the front-end loader at WASTE MANAGEMENT and instructed PLAINTIFF MOSE GUILLORY to report for work the next morning – July 10, 2012.

30.     For the first week of his employment, from roughly July 10, 2012—July 16, 2012, PLAINTIFF MOSE GUILLORY worked on the day shift at WASTE MANAGEMENT's Facility.  This shift was from approximately 5:00 a.m. until 4:30 p.m., approximately seven days per week.  During that time, PLAINTIFF MOSE GUILLORY'S primary job duty was to drive and operate a front-end loader.  Thereafter, approximately one or two weeks after starting work at WASTE MANAGEMENT's Facility, PLAINTIFF MOSE GUILLORY was re-scheduled to work the night shift from 4:30 p.m. until 5:00 a.m.

31.     Upon joining the night shift and sometime thereafter, PLAINTIFF MOSE GUILLORY was instructed to operate a Harris Centurion Baler.

32.     **Harris Baler.**  The product in question, a Harris Centurion Baler, is a piece of "heavy equipment" or industrial machinery used in recycling facilities primarily for baling metal, plastic, cardboard, or paper for transport.  The product is designed to operate in the following manner: the user stands on a platform in front of a control port and activates a conveyor belt that carries loose product (paper, plastic, metal, etc.) into the baler; then, the user engages the baler's hydraulic rams, which compresses the material loaded into compact, transportable bales.

33.     The Harris Baler is sold with a 25-minute training video that addresses safety and a 200-page "Operator/Service Manual" that must be read and understood before operation.  Before operating the Harris Centurion Baler, one must have received OSHA-mandated "Lockout-Tagout" ("LOTO") training. *See* 29 C.F.R. 1910.147. LOTO requires that hazardous power sources be "isolated and rendered inoperative" before any maintenance or servicing work is performed to prevent serious injury or death.

34.     **No Training on the Harris Baler.**  At no point was PLAINTIFF MOSE GUILLORY shown any training video detailing how to safely operate the Harris Baler.  At no point was PLAINTIFF MOSE

GUILLORY told about or given any operator's manual detailing how to safely operate the Harris Baler. At no point was PLAINTIFF MOSE GUILLORY given any training or exposed to any material whatsoever, whether in audio, video, written, electronic, or other format, detailing how to safely operate the Harris Baler. At no point was PLAINTIFF MOSE GUILLORY provided any OSHA-mandated "Lockout-Tagout" ("LOTO") training. *See* 29 C.F.R. 1910.147.

35. **No Training on the Harris Baler - Carlos.** Instead, the full extent of PLAINTIFF MOSE GUILLORY'S "training" (which Plaintiffs dispute) was observations from a coworker named Carlos. Carlos is a Hispanic man whose first language is Spanish. Carlos cannot fluently speak or understand English well. PLAINTIFF MOSE GUILLORY'S first language is English. PLAINTIFF MOSE GUILLORY cannot speak or understand Spanish. Regardless, Carlos demonstrated that, at certain times, the baler operator must disengage the baler, climb onto the conveyor, walk up to the top of the conveyor near the baler mouth, and use a pole to sweep product down onto the conveyor belt from various bins adjacent to the baler. Little more was provided to PLAINTIFF MOSE GUILLORY on how to safely operate the Harris Baler. And, at no time did Carlos ever instruct PLAINTIFF MOSE GUILLORY on proper OSHA Lockout/Tagout procedures.

36. **August 5, 2012 – Incident at Issue.** On August 5, 2012, PLAINTIFF MOSE GUILLORY reported for work on the night shift and began to operate the Harris Baler, as instructed. At that time, PLAINTIFF MOSE GUILLORY had only operated the Harris Baler approximately three to four times total. Sometime after beginning to operate the Harris Baler, PLAINTIFF MOSE GUILLORY disengaged the baler/conveyor and climbed onto the conveyor and then into the baler, as he had seen Carlos do before. Suddenly, and without warning, the Harris Baler turned on and the baler rams engaged. The baler rams severed PLAINTIFF MOSE GUILLORY'S right leg just below the knee and severed all toes and a portion of his left foot.

37.     **Plaintiff Mose Guillory – Hospitalized.**  PLAINTIFF MOSE GUILLORY was taken by ambulance to Memorial Hermann Hospital in the Houston Medical Center.   There, PLAINTIFF MOSE GUILLORY underwent multiple surgeries lasting several hours.  These surgeries were required to complete the full amputation of PLAINTIFF MOSE GUILLORY'S right leg below the knee as well as all toes and a portion of his left foot.  As a result of the aforementioned events, ***Plaintiff MOSE GUILLORY was hospitalized for roughly seventeen (17) days.***

38.     While in the hospital and while in ICU, PLAINTIFF MOSE GUILLORY was heavily medicated. During this time, he was approached by agents of IWORKS whom presented him with various papers, authorizations, and/or releases to obtain information without his informed consent.  In an incapacitated state, PLAINTIFF MOSE GUILLORY signed documents for IWORKS DEFENDANTS and/or WM DEFENDANTS.

39.     **IWORKS and WM DEFENDANTS' Cover-Up.**  Upon information and belief following the incident, IWORKS DEFENDANTS and WM DEFENDANTS took steps to cover up the incident including, among others, firing employees, which former employees have advised counsel for PLAINTIFFS that Defendant WASTE MANAGEMENT is and was taking steps to cover up the incident.

40.     iWorks did not think it was iWorks' obligation to train employees before sending them to Gasmer MRF.  iWorks claims it did not know WM DEFENDANTS were expecting it (IWORKS) to train.  WM DEFENDANTS did not know that iWorks was not training or qualifying employees it (IWORKS) was sending over.  Accordingly, WM DEFENDANTS did not train.  Instead, due to the break down in communications, Mose Guillory received zero training from either iWorks or WM DEFENDANTS.  In fact, the failure to train Mose Guillory on lock-out/tag-out ("LO/TO") and to ensure that he did not operate the Harris Baler without proper LO/TO training resulted in violations of OSHA regulations and hefty fines imposed on the site owner, WM DEFENDANTS.

41.     As further evidence of the communication ("conduit") breakdown, Plaintiffs offer the deposition testimony Defendant LUIS TREVINO, CEO and part owner of iWorks.  Mr. Trevino testified, *inter alia*, that Defendant iWorks "[does not] provide site-specific training."  Mr. Trevino then unequivocally stated the following:

> p. 69
> Q. You don't. So if -- if Waste Management or somebody at Gasmer had given y'all a DVD of site-specific training to provide to iWorks employees who are temporary laborers and going out there, then you wouldn't have done it?
> MR. GARZA: Objection, form.
> A. We never received one, nor would I have played it.

Next, LUIS TREVINO was asked about iWorks's obligation under the "Master Services Agreement" executed between iWorks and WM Defendants – to wit:

> p. 70
> **Q. "Contractor is obligated to ensure that Personnel supplied to Waste Management are fully qualified and trained for the jobs they are being supplied to perform and they have been given safety training that meets or exceeds the training Waste Management provides to its employees for the same or similar jobs."**
> Okay. So you're telling me that that is not something that you did with any of the workers that were sent to Waste Management.

> p. 71
> A. I don't know Waste Management policy and procedure. How could I train them on Waste Management policy or procedure, safety rules, machinery[?]
> Q. Okay. But if -- but if that information had been provided to you or provided to the folks in the field in Houston, then they should have done that, right?
> *A. It wasn't provided, and I would not have done it.*

42.    As further evidence of the communication ("Conduit") breakdown, Plaintiffs offer the deposition testimony Steve Hasley, former Recycling Director of WM DEFENDANTS. On the issue of training and safety, Steve Hasley directly contradicts the testimony of Luis Trevino – to wit:

p. 86

A.  Yes.

Q.  Okay.  Is there any document that identifies that this training topic, everything that's above Environmental Protection Orientation Training, was to be conducted by the temp agency?

*A.  I have not seen one.*

Q.  Okay.

*A.  That was supposedly in the contract.  But I've never seen the contract.  So I don't -- I can't say for sure.*

Q.  And what contract are you speaking of?

*A.  The contract that Staff Management had with the temp labor provider.*

Q.  Why would Waste Management allow someone else to perform this orientation training?

MS. SCHADLE:  Objection; form.

*A.  Well, it all -- it all depends on the site and what you got going.  If you got a lot of employees and you're bringing in a lot of employees, then it does relieve the burden off the -- the management at the site, the supervision to have to sit down for, you know, two hours to go through this DVD and discussion and all that kind of thing.  <u>And that's why it's done at some sites like that, why the temp labor provider does it.</u>*

Q.  (BY MR. GILDE) Can you identify all the sites in

p. 87

Texas where the temp laborer provider performs this training?

MS. SCHADLE:  Objection; form.

A.  I don't know all of them.  I know that they do it at Arlington and I know that they do it at -- at Brittmoore.

Q.  (BY MR. GILDE) At Brittmoore?

A.  Yes.

Q.  And also at Gasmer?

*<u>A.  I think -- yes, I think they do it at Gasmer, too.</u>*

Q.  Okay.  Anywhere else?

MS. SCHADLE:  Objection; form.

A.  Not that I can think of.  I don't know.  They may

be doing it. Where JG is at, any place JG is at, I think they're doing -- they do it for their temp employees.

Q. (BY MR. GILDE) Okay. And what is the basis for that opinion?

A. Because that's part of their service that they offer within their rate.

**Q. (BY MR. GILDE) Is there -- it's not going to be your testimony that it would be impossible to perform safety orientation training at the 4939 Gasmer Drive facility?**

MS. SCHADLE: Objection; form.

MR. GARZA: Same objection.

*A. It would not be impossible.*

**Q. (BY MR. GILDE) Okay. That's something Waste Management could do?**

MR. GARZA: Objection; form.

MS. SCHADLE: Objection; form.

*A. That's something that the plant site personnel could -- could do.*

**Q. (BY MR. GILDE) Okay. And in this case Waste Management chose not to do that, true?**

MR. GARZA: Objection; form.

MS. SCHADLE: Objection; form.

*A. Yeah. In this case the plant site was contracted*

p. 105

*through Staff Management for the temporary service provider to conduct this training.*

As is clear, WM DEFENDANTS didn't know what IWORKS DEFENDANTS were doing and vice versa with respect to training and safety. WM DEFENDANTS point the finger at IWORKS DEFENDANTS and IWORKS DEFENDANTS point the finger at WM DEFENDANTS.

43. **Defendants' Liability and Vicarious Liability.** Defendants' actions and/or inactions and breaches of duties to Plaintiffs were effectuated by Defendants' employees, agents, service providers, officers, directors, assigns, and/or individuals under the control or direction of Defendants. As such, Defendants, each of them, are responsible/liable for the following claims and causes of action detailed below and herein, which responsibility/liability includes but is not limited to: Aiding & Abetting;

Assisting & Participating; Concert of Action; *Respondeat Superior*; Nondelegable Duty; Partnership; and Joint Enterprise theories of liability.

44.     Due to Defendants' actions and/or inactions and breaches of duties to Plaintiffs, Plaintiffs bring the following claims and causes of action against Defendants – to wit

### X.     *RESPONDEAT SUPERIOR* (ALL DEFENDANTS )

45.     PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

46.     Plaintiff MOSE GUILLORY was injured and PLAINTIFFS have suffered damages, as a result of the torts detailed below.

47.     IWORKS DEFENDANTS and WM DEFENDANTS are employer-tortfeasors whom employed tortfeasor-employees that breached duties to PLAINTIFFS, which resulted in Plaintiff MOSE GUILLORY's injuries and PLAINTIFFS' damages, as detailed more fully below.

48.     DEFENDANTS' tortfeasor-employees committed torts while said tortfeasor-employees were acting within the scope of their employment.  That is, their acts were: (i) within the tortfeasor-employees' general authority; (ii) in furtherance of DEFENDANTS' business; and (iii) for the accomplishment of the object for which tortfeasor-employees were hired.

### XI.     PARTNERSHIP LIABILITY (IWORKS PERSONNEL, INC., LUIS TREVINO, and HAYDEE GUTIERREZ)

49.     PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

50.     IWORKS PERSONNEL, INC. appears to have been duly incorporated under the laws of the State of Texas on February 26, 2007.  However, IWORKS PERSONNEL, INC. has forfeited its corporate status numerous times pursuant to TEXAS TAX CODE § 171.309, the last of which occurred on or about May 16, 2012 and certainly no later than February 8, 2013.  At present, the Texas Secretary of State lists IWORKS

PERSONNEL, INC.'s corporate status as "forfeited existence," meaning it no longer exist as a *"de jure* corporation." Regardless, IWORKS PERSONNEL, INC. was not operating as a corporation under the laws of the State of Texas at the time of the incident at issue.

51. Defendants LUIS TREVINO and HAYDEE GUTIERREZ are personally liable for the debts and acts of each other and of IWORKS PERSONNEL, INC. because LUIS TREVINO and HAYDEE GUTIERREZ operated and continue to operate IWORKS PERSONNEL, INC. (d/b/a "Preferred Staffing, L.L.C.") as a partnership. Specifically, LUIS TREVINO and HAYDEE GUTIERREZ:

    a. Incorporated Preferred Staffing, L.L.C. under the laws of the State of Texas on or about July 18, 2005. However, upon information and belief, Preferred Staffing, L.L.C. forfeited its corporate status pursuant to TEXAS TAX CODE § 171.309 on or about July 24, 2009. At present, the Texas Secretary of State lists Preferred Staffing, L.L.C.'s corporate status as "forfeited existence";

    b. Incorporated IWORKS PERSONNEL, INC. under the laws of the State of Texas on or about February 26, 2007. However, upon information and belief, IWORKS PERSONNEL, INC. thereafter forfeited its corporate status on multiple occasions pursuant to TEXAS TAX CODE § 171.309. At present, the Texas Secretary of State lists IWORKS PERSONNEL, INC.'s corporate status as "forfeited existence";

    c. Shared or have the right to share profits of IWORKS PERSONNEL, INC. Upon information and belief, both LUIS TREVINO and HAYDEE GUTIERREZ intended that IWORKS PERSONNEL, INC. be operated as a corporation and believed this to be the case. LUIS TREVINO maintains 60% ownership of IWORKS PERSONNEL, INC. and HAYDEE GUTIERREZ maintains 40 % ownership;

    d. Expressed an intent to be partners in the business, as evidenced by their deposition testimony and exhibits attached thereto (i.e. Articles of Incorporation) to that effect;

    e. Participate and/or have the right to participate in control of the business. Specifically, LUIS TREVINO is Chief Executive Officer who allegedly oversees operations while HAYDEE GUTIERREZ is President and allegedly oversees marketing, sales, and client relations;

    f. Shared and/or agreed to share in the losses and liabilities of the business;

    g. Contributed and/or agreed to contribute money or property to the business;

    h. Co-owned property; and

    i. Shared or had a right to share gross returns and/or revenues of the business.

52. At the time of the events and incidents at issue herein, LUIS TREVINO and HAYDEE GUTIERREZ were committing various acts and omissions while in the ordinary course of business and with the authority of the partnership.

53. Specifically, the decisions made, policies enacted, contracts signed, and all other negligent acts or omissions committed by LUIS TREVINO and HAYDEE GUTIERREZ, were done so while LUIS TREVINO and HAYDEE GUTIERREZ were acting in the ordinary course of business and with the authority of the partnership, IWORKS PERSONNEL, INC. (d/b/a Preferred Staffing).

## XII.    JOINT-ENTERPRISE LIABILITY (IWORKS PERSONNEL, INC., LUIS TREVINO, and HAYDEE GUTIERREZ)

54. PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

55. At the time of the events and incidents at issue herein, LUIS TREVINO and HAYDEE GUTIERREZ were engaged in a joint enterprise. Defendants LUIS TREVINO and HAYDEE GUTIERREZ had an agreement, a common purpose, a community of pecuniary interest in that common purpose, and an equal right to direct and control various aspects of the enterprise (i.e. IWORKS PERSONNEL, INC.).

56. Thus, Defendants LUIS TREVINO and HAYDEE GUTIERREZ are personally liable for each other's acts and for the acts of employees of IWORKS PERSONNEL, INC. (d/b/a Preferred Staffing).

57. At the time of the decisions made, policies enacted, contracts signed, and all other negligent acts or omissions committed regarding the incident in question, LUIS TREVINO, HAYDEE GUTIERREZ, and other IWORKS PERSONNEL, INC. employees were acting within the scope of the enterprise.

## XIII.    COUNT 1: NEGLIGENCE (IWORKS DEFENDANTS and WM DEFENDANTS )

58. PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

59. IWORKS DEFENDANTS and WM DEFENDANTS are liable to PLAINTIFFS for negligence.

60. IWORKS DEFENDANTS and WM DEFENDANTS owed a legal duty to PLAINTIFFS in hiring, employing, training, and supervising PLAINTIFF MOSE GUILLORY, which duties include but are not limited the following duties and nondelegable duties – to wit:

   a. An employer has a nondelegable duty to provide a safe workplace for its employees;

   b. An employer has a nondelegable duty to provide rules and regulations for the safety of its employees;

   c. An employer has a nondelegable duty to furnish reasonably safe machinery or tools for its employees; and

   d. An employer has a nondelegable duty to select careful and competent employees.

   e. An employer has a duty to train its employees regarding hazards and safety.

   f. An employer has a duty to supervise its employees.

   g. An employer has the duty to act as a reasonably prudent employer in the same field and under the same circumstances.

61. Defendants breached their duty through their negligent employment, actions, and/or inactions, in the following non-exclusive ways:

   a. Failing to provide a reasonably safe workplace;

   b. Failing to establish rules and regulations for PLAINTIFF MOSE GUILLORY'S safety;

   c. Failing to warn PLAINTIFF MOSE GUILLORY of the hazards of his employment;

   d. Failing to train PLAINTIFF MOSE GUILLORY;

   e. Failing to train PLAINTIFF MOSE GUILLORY in the purpose and use of energy control procedures (i.e. "Lockout/Tagout" Procedures);

   f. Failing to certify and/or conduct periodic inspections of energy control procedures;

   g. Exposing PLAINTIFF MOSE GUILLORY to unknown hazards in the workplace;

   h. Failing to furnish reasonably safe machinery or instrumentalities;

   i. Failing to provide equipment with proper safety mechanisms;

j. Failing to provide equipment with proper guards to prevent employees from entering the machinery;

k. Failing to inspect equipment for defects, disabled safety mechanisms, lack of safety mechanisms, removed guards, or lack of guards;

l. Failing to repair unsafe equipment;

m. Failing to provide equipment with proper safety mechanisms in working order or which were adequate for PLAINTIFF MOSE GUILLORY to do his job;

n. Failing to supervise PLAINTIFF MOSE GUILLORY while he was operating the baler;

o. Failing to provide PLAINTIFF MOSE GUILLORY adequate help in the performance of work;

p. Failing to prevent an employee from causing an unreasonable risk of harm to PLAINTIFF MOSE GUILLORY;

q. Failing to keep PLAINTIFF MOSE GUILLORY in a position for which he was qualified and instead ordering PLAINTIFF MOSE GUILLORY to operate a machine he had not been trained to operate;

r. Failing to adequately train PLAINTIFF MOSE GUILLORY on how to safely operate the Harris Baler;

s. Failing to adopt proper policies and procedures regarding maintenance of the equipment that would require employees to fix disabled safety mechanisms and guards;

t. Failing to adopt proper policies and procedures for safely un-jamming or dislodging lodged product from the bins;

u. Failing to adopt proper policies and procedures for safely extracting additional product from the bins and/or the baler;

v. Failing to provide PLAINTIFF with safe equipment and/or safety equipment;

w. Failing to provide English-speaking employees to train and advise PLAINTIFF on how to safely operate the Harris Baler; and

x. Failure to identify, employee, contract-with, delegate, supervise, and manage competent vendor management and/or employee-leasing/employee-staffing companies in the performance of their duties.

62.    IWORKS DEFENDANTS' and WM DEFENDANTS' negligent acts directly and proximately caused injury to Plaintiff MOSE GUILLORY, which resulted in PLAINTIFFS' damages detailed below.

63. PLAINTIFFS seek unliquidated damages within the jurisdictional limits of this Court.

### XIV. COUNT 2: NEGLIGENT HIRING, TRAINING, SUPERVISION, and/or RETENTION (IWORKS DEFENDANTS and WM DEFENDANTS )

64. PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

65. IWORKS DEFENDANTS and WM DEFENDANTS are liable to PLAINTIFFS for negligent hiring, training, supervision, and/or retention.

66. Additionally, IWORKS DEFENDANTS and WM DEFENDANTS had a legal duty to hire, train, supervise, and/or retain competent employees. IWORKS DEFENDANTS and WM DEFENDANTS also had a legal duty to terminate incompetent employees.

67. IWORKS DEFENDANTS and WM DEFENDANTS breached their duties when IWORKS DEFENDANTS and WM DEFENDANTS negligently hired, trained, and supervised IWORKS DEFENDANTS' and WM DEFENDANTS' tortfeasor-employees whom breached duties to PLAINTIFFS, which resulted in Plaintiff MOSE GUILLORY injuries and PLAINTIFFS' damages, as detailed more fully below.

68. IWORKS DEFENDANTS and WM DEFENDANTS also breached their duties when Defendants terminated competent employees whom could have prevented the incident and/or negligently retained incompetent employees whom failed to prevent the incident, which resulted in Plaintiff MOSE GUILLORY injuries and PLAINTIFFS' damages, as detailed more fully below.

69. IWORKS DEFENDANTS' and WM DEFENDANTS' negligent acts directly and proximately caused injury to Plaintiff MOSE GUILLORY, which resulted in PLAINTIFFS' damages detailed below.

PLAINTIFFS seek unliquidated damages within the jurisdictional limits of this Court.

### XV. COUNT 3: NEGLIGENCE *PER SE* (IWORKS DEFENDANTS and WM DEFENDANTS)

70. PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

71.     IWORKS DEFENDANTS and WM DEFENDANTS are liable to PLAINTIFFS for negligence *per se*.

72.     Additionally, IWORKS DEFENDANTS' and WM DEFENDANTS' negligence violated various statutes, ordinances, and/or administrative regulations. Specifically, IWORKS DEFENDANTS and WM DEFENDANTS violated various statutes and provisions pertaining to the Occupational Safety & Health Administration ("OSHA") Act of 1970—to wit:

   a. **OSHA Regulation 1926.20(b)(3),** which provides that "[t]he use of any *machinery*, *tool*, material, or *equipment* that is not in compliance with any applicable requirement of 29 C.F.R. 1926 is prohibited. Such *machinery*, *tool*, material, or *equipment* **shall either be identified as unsafe by tagging or locking the controls to render them inoperable or *shall* be physically removed from its place of operation**." 29 C.F.R. 1926.20(b)(3).

   b. **OSHA Regulation 1926.20(b)(4),** which provides that the "***employer shall permit only those employees qualified by training or experience to operate equipment and machinery***". 29 C.F.R. 1926.20(c) (emphasis added).

   c. **OSHA Regulation 1926.21(b)(2),** which provides that the employer "***shall instruct each employee in the recognition and avoidance of unsafe conditions and the regulations applicable to his work environment***". 29 C.F.R. 1926.21(b)(2) (emphasis added).

   d. **OSHA Regulation 1910.145(f)(3),** which provides that "***[t]ags shall be used as a means to prevent accidental injury or illness to employees who are exposed to hazardous or potentially hazardous conditions, equipment, or operations which are out of the ordinary, unexpected, or not readily apparent***." 29 C.F.R. 1910.145(f)(3) (emphasis added).

   e. **OSHA Regulation 1910.147, *et seq.*,** which mandates the use of lockout and tagout procedures and provide that the employer "***shall establish a program consisting of energy control procedures, employee training and periodic inspections to ensure that before any employee performs any servicing or maintenance on a machine or equipment where the unexpected energizing, startup or release of stored energy could occur and cause injury, the machine or equipment shall be isolated from the energy source and rendered inoperative***." 29 C.F.R. 1910.147(c)(1) (emphasis added).

   f. **OSHA Regulation 1910.147(c)(7)(i)(B)**, which mandates that "***[e]ach affected employee shall be instructed in the purpose and use of the energy control procedure" so as to avoid exposing employees to unknown hazards***." *See* 29 C.F.R. 1910.147(c)(7)(i)(B).

   g. **OSHA Regulations 1910.147(c)(6), *et seq.*,** which mandate the following:

      i. The employer ***shall*** conduct a periodic inspection of the energy control procedure at least annually to ensure that the procedure and the requirements of this standard are being followed. **1910.147(c)(6)(i).**

ii. The periodic inspection **_shall_** be performed by an authorized employee other than the ones(s) utilizing the energy control procedure being inspected. **1910.147(c)(6)(i)(A).**

iii. The periodic inspection **_shall_** be conducted to correct any deviations or inadequacies identified. **1910.147(c)(6)(i)(B).**

iv. Where lockout is used for energy control, the periodic inspection **_shall_** include a review, between the inspector and each authorized employee, of that employee's responsibilities under the energy control procedure being inspected. **1910.147(c)(6)(i)(C).**

v. Where tagout is used for energy control, the periodic inspection **_shall_** include a review, between the inspector and each authorized and affected employee, of that employee's responsibilities under the energy control procedure being inspected, and the elements set forth in paragraph (c)(7)(ii) of this section. **1910.147(c)(6)(i)(D).**

vi. The employer **_shall_** certify that the periodic inspections have been performed. The certification shall identify the machine or equipment on which the energy control procedure was being utilized, the date of the inspection, the employees included in the inspection, and the person performing the inspection. **1910.147(c)(6)(ii).**

73. The aforementioned OSHA regulations are designed to protect a class of persons to which PLAINTIFF MOSE GUILLORY belongs (i.e. employees or persons working at a job site) against the type of on-the-job injury suffered by PLAINTIFF MOSE GUILLORY.

74. Each regulation is of the type that imposes tort liability.

75. IWORKS DEFENDANTS' and WM DEFENDANTS' violations of the above-mentioned regulations were without legal excuse.

76. IWORKS DEFENDANTS' and WM DEFENDANTS' breach of the duty imposed by the above-mentioned regulations proximately caused injury to Plaintiff MOSE GUILLORY, which resulted in PLAINTIFFS' damages detailed below.

77. PLAINTIFFS seek unliquidated damages within the jurisdictional limits of this Court.

### XVI. COUNT 4: GROSS NEGLIGENCE (IWORKS DEFENDANTS and WM DEFENDANTS)

78. PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

79.     ALL DEFENDANTS are liable to PLAINTIFFS for gross negligence.

80.     Defendants owed legal duties to PLAINTIFFS, as detailed in the Negligent-based counts *supra, inter alia*.

81.     Defendants breached their duties owed to PLAINTIFFS through Defendants' negligent activities, actions, and/or inactions, as detailed in the Negligence-based counts *supra, inter alia*.

82.     Defendants consciously and/or deliberately engaged in recklessness, oppression, willfulness, wantonness and/or malice through Defendants' actions and/or inactions, which entitles PLAINTIFFS to punitive and exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

83.     DEFENDANTS' grossly negligent acts and/or omissions directly and proximately caused injury to Plaintiff MOSE GUILLORY, which resulted in PLAINTIFFS' damages detailed below.

84.     Accordingly, Defendants should be held liable for punitive and exemplary damages to PLAINTIFFS.

85.     PLAINTIFFS also seek unliquidated damages within the jurisdictional limits of this court.

**XVII.   COUNT 5: BREACH OF CONTRACT (IWORKS DEFENDANTS AND WM DEFENDANTS)**

86.     PLAINTIFFS re-allege all of the allegations in the previous paragraphs, as though set forth fully herein.

87.     IWORKS DEFENDANTS and WM DEFENDANTS are liable to PLAINTIFFS for breach of contract.

88.     On September 22, 2010 and July 24, 2012, respectively, IWORKS DEFENDANTS and WM DEFENDANTS executed valid and enforceable written contracts. *See* **Exhibits A** and **B**.

89.     The contracts provided that IWORKS DEFENDANTS would lease employees to perform work for WM DEFENDANTS.  The contracts at issue also expressly or impliedly provided that WM DEFENDANTS and IWORKS DEFENDANTS would:

    a.   Provide a reasonably safe workplace;

    b.   Establish rules and regulations for worker safety;

c.  Warn workers of the hazards of his employment;

d.  Properly train workers;

e.  Ensure that workers had been properly trained before assigning them to a task;

f.  Certify and/or conduct periodic inspections of energy control procedures;

g.  Provide equipment with proper guards and safety mechanisms that were adequate and in working order;

h.  Supervise workers while they were performing tasks, including the operation of machinery;

i.  Ensure that workers had adequate help in the performance of work;

j.  Ensure that workers are assigned a task they are qualified and trained to perform;

k.  Ensure that workers are trained in the safe and proper operation of all heavy equipment operated in the worker's assigned task; and

l.  Identify, employ, contract-with, delegate, supervise, and manage competent vendor management and/or employee-leasing/employee-staffing companies in the performance of their duties.

90.  When entering into the contracts at issue, IWORKS DEFENDANTS and WM DEFENDANTS intended to secure a benefit for PLAINTIFF MOSE GUILLORY and entered into the contracts for the benefit of MOSE GUILLORY and his coworkers.  Thus, PLAINTIFF MOSE GUILLORY has standing to enforce the aforementioned contracts executed by IWORKS DEFENDANTS and WM DEFENDANTS because PLAINTIFF MOSE GUILLORY is a third-party beneficiary of those contracts.

91.  IWORKS DEFENDANTS and WM DEFENDANTS each breached the contracts at issue in the following non-exclusive ways:

a.  Failing to provide MOSE GUILLORY a reasonably safe workplace;

b.  Failing to establish rules and regulations for MOSE GUILLORY's safety;

c.  Failing to warn MOSE GUILLORY of the hazards of his employment;

d.  Failing to properly train MOSE GUILLORY;

e. Failing to ensure that MOSE GUILLORY had been properly trained before assigning him to a task;

f. Failing to certify and/or conduct periodic inspections of energy control procedures for MOSE GUILLORY's safety;

g. Failing to provide MOSE GUILLORY equipment with proper guards and safety mechanisms that were adequate and in working order;

h. Failing to supervise MOSE GUILLORY while he was performing tasks, including operating the Harris Centurion Baler;

i. Failing to ensure that MOSE GUILLORY had adequate help in the performance of his work;

j. Failing to ensure that MOSE GUILLORY was assigned to a task he qualified and trained to perform;

k. Failing to ensure that MOSE GUILLORY was trained in the safe and proper operation of all heavy equipment operated in MOSE GUILLORY's assigned task, including the Harris Centurion Baler; and

l. Failing to identify, employ, contract-with, delegate, supervise, and manage competent vendor management and/or employee-leasing/employee-staffing companies in the performance of their duties.

92. IWORKS DEFENDANTS and WM DEFENDANTS were unjustly enriched by IWORKS DEFENDANTS' and WM DEFENDANTS' breaches.

93. IWORKS DEFENDANTS' and WM DEFENDANTS' breaches proximately caused injury to Plaintiff MOSE GUILLORY, which resulted in PLAINTIFFS' damages detailed below.

94. PLAINTIFFS seek unliquidated damages within the jurisdictional limits of this Court.

95. PLAINTIFF MOSE GUILLORY is entitled to recover reasonable attorney fees under Texas Civil Practice & Remedies Code Chapter 38 because this suit is for breach of written contracts. PLAINTIFF MOSE GUILLORY retained counsel, who presented PLAINTIFF's claim to IWORKS DEFENDANTS and WM DEFENDANTS. DEFENDANTS did not tender the amount owed within 30 days of when the claim was presented.

## XVIII.  DAMAGES

96.    DEFENDANTS' activities, actions, and/or inactions, as detailed above, directly and/or proximately caused injury to PLAINTIFFS, which include the following:

   a.   Pain and suffering in the past and future

   b.   Mental anguish in the past and future.

   c.   Physical disfigurement in the past and future.

   d.   Physical impairment in the past and future.

   e.   Medical expenses in the past and future.

   f.   Loss of past earning capacity.

   g.   Loss of future earning capacity.

   h.   Loss of consortium in the past and future.

   i.   Loss of household services in the past and future.

   j.   Consequential and/or incidental damages.

   k.   Other unliquidated damages within the jurisdictional limits of this Court.

   l.   Exemplary damages under Texas Civil Practice & Remedies Code section 41.003(a).

   m.   Contract damages including but not limited to restitution and profit disgorgement.

   n.   Nominal damages.

   o.   Attorneys' fees, as permitted by law.

   p.   Pre-judgment interest and post-judgment interest. TEXAS FINANCE CODE §304.001, *et seq*., and any other applicable law.

## XIX.    JURY DEMAND

97.    PLAINTIFFS demand a jury trial and tender the appropriate fee with this petition.

## XX.   CONDITIONS PRECEDENT

98.   All conditions precedent to PLAINTIFFS' claims for relief have been performed or have occurred.

## XXI.   REQUEST FOR DISCLOSURE

99.   Under Texas Rule of Civil Procedure 194, PLAINTIFFS request that DEFENDANTS disclose the information or material described in Rule 194.2.

## XXII.   PRAYER

100.   WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS ask that Defendants be cited to appear and answer and, on final trial, that PLAINTIFFS be awarded a judgment against IWORKS PERSONNEL, INC., LUIS TREVINO, HAYDEE GUTIERREZ, and WM DEFENDANTS for PLAINTIFFS' damages and for all other relief to which PLAINTIFFS are entitled at law and in equity.

Respectfully submitted,

**GILDE LAW FIRM**

_____

BRADFORD J. GILDE
TSB#: 24045941
NICHOLAS A. HOMAN
TSB#: 24083194
55 Waugh Dr., Suite 850
Houston, TX 77007
281-973-2771 – facsimile
281-973-2772 – phone
bjg@gildelawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served to all counsel of record *__via TexFile__* on this 13th day of June, 2014.

_____

BRADFORD J. GILDE

TAB 3

# EXHIBIT

# A

**Waste Management National Services, Inc.**
**Master Agreement with**
**iWorks Personnel**

This Master Agreement ("Agreement") is entered into on the 22nd day of September, 2010, between Waste Management National Services, Inc., a Delaware Corporation with offices at 1001 Fannin Street, Houston Texas 77002; and iWorks Personnel, a Texas corporation with offices at 6921 Long Point Houston TX, 77055("Contractor").

1. **Attachments:** The attachments marked below are made part of this agreement and are incorporated herein by reference (collectively the "Agreement)

   a. **Exhibit "A" Rate and Mark-Up**

   b. **Exhibit "B" Drug & Background Screening Terms**

   c. **Exhibit "C" Temporary Service Worker Security/Confidentiality Agreement**

   d. **Exhibit "D" Supplier Diversity Program**

2. **Scope and Term:** Pursuant to the terms of this Agreement, Contractor will provide services as requested from time to time to various entities related to and affiliated with Waste Management National Services, Inc., including subsidiaries of Waste Management, Inc. (collectively "Waste Management"). This Agreement will remain in effect for an initial term expiring <u>December 31, 2010</u>. Thereafter, this Agreement shall automatically be renewed for successive renewal terms of one (1) year each unless terminated (i) pursuant to Section 11hereof; or (ii) by either party upon written notice to the other part at least ninety (90) days prior to the expiration of the initial term or any renewal term (the "Term"). The rates provided in Exhibit "A" shall remain in force for each renewal term unless Contractor notifies Waste Management in writing of its intent to modify its rate, in which case Contractor and Waste Management will promptly engage in negotiations for revisions to Exhibit "A". This Agreement does not guarantee any work to Contractor, nor is it a commitment to be a sole or exclusive supplier or customer by either party.

   **Contractor Responsibilities:** Contractor is in the business of supplying trained and qualified temporary labor ("Personnel") or ("Worker") to perform work as requested by Waste Management. Contractor is solely responsible for performing all hiring, firing, discipline, training and other responsibilities necessary to discharge its legal obligations as the employer of the Personnel supplied to Waste Management. Contractor and Personnel shall be independent contractors in respect of Waste Management, and shall not be employees of Waste Management. Contractor is solely responsible for all payments whatsoever required to be made to or in respect of its Personnel, including,

Page 1 of 13

WMRA 000022

without limitation, all wages, salaries and benefits (including health insurance and/or medical payments), all federal, state and local payroll taxes, and all Workers' Compensation insurance coverage and payments.

4. **Invoicing, Payment, & Rates:** Contractor shall be reimbursed by Waste Management's third party administrator, Staff Management ("Third Party Administrator"), at the rates set forth in Exhibit "A" and under the provisions set forth in the Staff Management Supplier Statement of Work (SSOW) on a weekly basis.

    a. <u>Rates Paid.</u>
   - i. <u>Base Pay.</u> Personnel will be paid an hourly wage by Contractor for all "regular hours" worked in any work week (the payment period begins and ends Sundays at 7:00 a.m.). Personnel will be paid at the rate determined in Exhibit "A". "Regular hours" is defined according to State law. In the state of Texas, for example, "regular hours" are those hours worked up to and including forty (40) hours in workweek. Hours worked in Texas in excess of 40 are considered overtime hours and subject to section 4.a.iii below.
   - ii. <u>Billing Rate.</u> The Third Party Administrator will pay for the provision of Personnel at an hourly rate as set forth in Exhibit "A".
   - iii. <u>Overtime.</u> Contractor will pay Personnel 1.5 times the Base Pay rate for all overtime hours worked in any workweek as required by State law. All overtime billing shall be in accordance with local and state laws.
   - iv. Personnel shall only be entitled to the compensation specified in Paragraphs 4.a.i thru 4.a.iii and shall not be eligible for or due any benefit or privilege which is enjoyed by an employee of Waste Management including, but not limited to, employee life and health insurance, pension and savings plans, vacation or holiday pay. Further, Personnel shall not accrue or earn any benefit service credit under any Waste Management retirement or savings plan as a result of the services performed hereunder.

    b. <u>Third Party Administrator Compensation:</u>
   - i. In consideration of Third Party Administrators' administrative services in relation to this Agreement, Contractor authorizes Third Party Administrator to deduct fees in the amount of four percent (4%) of Contractor's total billings excluding Contractor's expenses.

5. **Training:** Contractor is obligated to ensure that Personnel supplied to Waste Management are fully qualified and trained for the jobs they are being supplied to perform and that they have been given safety training that meets or exceeds the training Waste Management provides to its employees for the same or similar jobs. Contractor acknowledges and agrees that it is fully familiar with the minimum level of training required by this Agreement as communicated to Contractor by Company's Third Party Administrator. Contractor is required to document completion of all workers training and have each worker's signed acknowledgement that training has been completed. All training documents, certifications, and materials are subject to audit by Waste Management or its Third Party Administrator upon request.

WMRA 000023

6. **Drug & Background Screening:** Contractor is obligated to perform drug and background screening, including pre-employment screening, on all workers as set forth in Exhibit "B". Cost and compensation for drug and background screening will be set forth in Exhibit "B". All drug and background screening documentation are subject to audit by Waste Management or its Third Party Administrator upon request. Screening shall commence on the date(s) set forth in Exhibit B.

7. **Compliance with Laws:** In the performance of its obligations hereunder, Contractor agrees to comply with all applicable federal, state, provincial and local laws and ordinances and all lawful orders, rules and regulations of any constituted authority, including but not limited to, social security and income tax withholding laws, labor and employment, employment compensation laws, immigration laws (including I-9 records), transportation laws, environment, safety and health laws with respect to all Personal. I-9 records are subject to audit by Waste Management or its Third Party Administrator upon request.

8. **E-Verify:** In the performance of its obligations hereunder, Contractor shall verify the employment eligibility of all workers using the Department of Homeland Security E-Verify program. Prior to the effective date for compliance with any final rule requiring certain federal contractors and subcontractors to use E-Verify, Contractor shall ensure its compliance with the Federal Acquisition Regulation E-Verify clause (73 FR 67704), as applicable, and shall remain compliant with E-Verify requirements through the Term of the Agreement.

9. **Indemnity:** Contractor and Waste Management agree that they will hold harmless, defend (including reasonable attorney fees) and indemnify each other from and against any and all claims brought by or on behalf of their Personnel, employees, or Personnel or employees of their sub-contractors, against the other for injuries or damages to their employees and/or property in any way arising out of or related to any work by Contractor or its subcontractors under this Agreement howsoever arising, regardless of the fault of the party being indemnified, even if caused by the concurrent or sole fault of the party being indemnified, including claims of reckless or wanton fault on the part of the party being indemnified. Contractor will further hold harmless, defend and indemnify Waste Management from and against any claims, causes of action, investigations, administrative inquiries or other types of investigations, inquires or proceedings in any way related to alleged failure to follow or violations of any local, state or federal laws, regulations, or statutes related to the temporary labor and/or services provided by Contractor or its subcontractors hereunder. In the event a claim giving rise to indemnity is brought against the parties, the party entitled to indemnity shall promptly notify the indemnifying party of such claim. Waste Management reserves the right to reject and approve any counsel that Contractor, its subcontractors or any of their insurers propose to retain for the investigation and/or defense of Waste Management.

10. **Insurance:** Contractor agrees to maintain the following minimum insurance with solvent and qualified insurers acceptable to Waste Management:

   a. Workers Compensation and Employers Liability Insurance:

WMRA 000024

i. Coverage A: Statutory

ii. Coverage B: $5,000,000.00

iii. This policy will provide "Alternate Employer" coverage naming Waste Management.

b. Commercial General

i. Bodily Injury and Property Damage: $5,000,000.00 per occurrence

ii. Contractual liability coverage to cover the contractual obligations of Contractor to this Agreement, including the Subcontractor, indemnity and insurance requirements.

iii. Employees are to be included as insured with the "Fellow Employees" exclusions deleted.

c. Commercial Automobile Liability: $2,000,000 Combined Single Limit

d. Waste Management, including parent, affiliated and related companies shall be named as an Additional Insured on all policies except Workers' Compensation.

e. All policies in Section 9.a., b and c. above shall be endorsed to waive all rights of subrogation in favor of Waste Management, including parent, affiliated and related companies.

f. All policies in Section 9.a., b and c. above will be endorsed to acknowledge they are primary with respect to any other available coverage and/or self-insurance program of Waste Management, including parent, affiliated and related companies.

g. All deductibles will be for the sole account of Contractor.

h. Contractor shall provide a certified Certificate of Insurance no less than annually or the policy term, whichever is shorter, to Waste Management. All certificates shall provide that the policy shall not be cancelled or non-renewed, or the limits reduced, except on at least thirty (30) days notice to Waste Management.

i. Contractor may satisfy the minimum limits requirements of this Section 9 by any combination of primary liability and umbrella/excess liability.

11. **Subcontracts:** Contractor may subcontract its obligations under this Agreement only upon the prior written permission of Waste Management, which may be granted or withheld at Waste Management's discretion. If Contractor sub-contracts any or all of these responsibilities to another company or individual, Contractor shall be responsible that its sub-contractors fulfill all obligations of Contractor under this Agreement and further require that its sub-contractors enter into an agreement that at a minimum

WMRA 000025

provides directly to Waste Management the same commitment and protections that Contractor agrees to provide Waste Management in this Agreement, including the indemnity and insurance requirements of this Agreement.

12. **Termination:** Waste Management can terminate this Agreement *for cause* immediately if:

- Contractor seeks protection of Bankruptcy reorganization, files for liquidation, or is generally unable to pay its debts as they become due in the ordinary course of business, in such case Waste Management shall not be required to provide prior notice of termination; or

- Contractor fails to comply with any term of this Agreement and fails to remedy this failure within ten (10) days of receiving written or electronic notice of such failure.

Waste Management may terminate this Agreement *for convenience* by providing thirty (30) days prior written notice to the Contractor, and except for payment for services provided by Contractor prior to the effective date of termination, Waste Management shall have no further liability arising from the Agreement thereafter.

13. **Equal Opportunity**

It is agreed as a condition of this Agreement as follows:

a. In the performance of this Agreement, the Contractor and the Company shall not engage in any conduct or practice which violates law, order or regulation prohibiting discrimination against any person by reason of race, color, religion, national origin, sex, age, disability, or veteran's status or other protected group status as defined by applicable federal, state or local laws.

b. If this agreement is a contract subject to Executive Order 11246, the parties agree that the provisions of the Equal Opportunity Clauses at 41 CFR δ 60-1.4(a), 41 CFR δ 60-250.4 and 41 CFR δ 60-741.4 are hereby incorporated as terms and conditions of this Agreement.

c. If this Agreement is a contract subject to Executive Order 13201, the Agency agrees to comply with the provisions of 29 CFR Part 470

14. **Ethics/Compliance:**

It is agreed as a condition of this Agreement as follows:

a. If this agreement is a contract subject to Federal Acquisition Regulation Subpart 3.10, the parties agree that the provisions of the Guidance to all Government Contractors, along with the contractual requirements set forth in the clauses at 52.203-13, Contractor Code of Business Ethics and

WMRA 000026

Conduct, and 52.203-14, Display of Hotline Poster(s), are hereby incorporated as terms and conditions of this Agreement

15. **Confidentiality:** Contractor agrees to keep confidential and to cause Personnel to keep confidential, all trade secret, confidential or other proprietary information of Waste Management it might be given access to, including without limitation Personnel work product and computer access information, and to return all such material to Waste Management upon the conclusion of its services or termination of this Agreement. Contractor shall cause all Personnel and Workers to execute a Confidentiality Agreement in the form attached hereto as Exhibit "C" prior to commencing work.

16. **Supplier Diversity:** Contractor and Waste Management shall support the utilization and development of qualified minority-owned, women-owned and service disabled veteran-owned business enterprises ("M/W/VBEs"). Contractor shall institute and maintain in force during the term of this Agreement a Supplier Diversity Program as described in Exhibit "D" to this Agreement.

17. **Entire Agreement:** This Agreement (including any schedules and annexes hereto) constitutes the entire agreement and understanding between the parties and supersedes any prior agreement and understanding whether written or oral, relating to the subject matter of this Agreement. This Agreement may be supplemented or amended by the parties only if done in writing and signed by authorized representatives of both parties.

18. **Enforceability:** The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement.

19. **Governing Law:** This Agreement shall be governed, construed and enforced in accordance with the laws of the State of Texas, without regard to conflict of laws principles. In the event of any dispute arising under or in connection with this Agreement that cannot be settled by Informal negotiation, the Parties submit to the jurisdiction of the state and federal courts sitting in Harris County, Texas

**Waiver:** The waiver of a breach of any provision of this Agreement by either party shall not operate or be construed as a waiver of any subsequent breach by either party. No waiver shall be valid unless it is in writing and signed by an authorized officer of the party granting the waiver.

20. **Notice:**

Executed this ___22th___ day of ___September___, 2010 by duly authorized representatives of and for:

Waste Management National Services, Inc.

Ralph E. DeLong, Jr.
By:
Procurement Director
Title:

i Works Personnel
(Supplier Name)
Haydee Gutierrez
By:
President
Title:

Page 6 of 13

WMRA 000027

Supplier agrees to charge vendor manager the following mark-ups for contracted labor, with no fees or charges for additional or auxiliary services.

Formula for Rate/Mark-Up:

**Hourly Workers -**

Mark-Up: _____% of contractor's pay for straight time
OT Multiplier: 1._____ of contractor's pay for overtime
OT Formula: Base Pay x OT Multiplier (1.XX) x Straight Time Mark-up (XX%)

**Business Unit** = Waste Management Location Designator
**WC Codes** = Worker Compensation Codes

Please fill-out chart as applicable:

**Chart 1.1**

| Business Unit | WC Code | Mark-Up | OT Multiplier |
|---|---|---|---|
| EXAMPLE | | | |
| B00001 - Business Solutions | 8264 | 45% | 1.5 |
| 01832 - Houston Clay Road MRF | 8264 | 40% | 1.5 |
| 02897 - Gasmer Drive MRF | 8264 | 40% | 1.5 |
| 00011 - USA of Houston | 8264 | 40% | 1.5 |
| 02887 - San Antonio MRF | 8264 | 35% | 1.5 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

WMRA 000028

**Day Rate Workers –**

Mark-Up XX% of contractor's pay for straight time
Formula: Pay Rate x Mark-up (1.XX) = Day Rate

**Business Unit** = Waste Management Location Designator
**WC Codes** = Worker Compensation Codes

Please fill-out chart as applicable:

**Chart 1.2**

| Business Unit | WC Code | Pay Rate | Mark-Up | Day Rate |
|---|---|---|---|---|
| EXAMPLE | | | | |
| B00001 - Business Solutions | 8264 | $65.00 | 55% | $100.75 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

WMRA 000029

<u>**"Exhibit B"**</u>
**Drug & Background Screening Terms**

Effective no later than October 14, 2010, Contractor shall institute and maintain in force the following drug and background screening program, including pre-screening, for all Personnel placed at Waste Management. Contractor shall use the services of CARCO Group, Inc. Associates for all background screening, including pre-screening, and Pembrooke Occupational Health for all drug testing. The fees and costs of CARCO Group, Inc. and Pembrooke shall be borne by Waste Management. Procedures for ordering and scheduling screening and tests shall be provided to Contractor by Company's Third Party Administrator.

**Required of all Personnel prior to being placed at Waste Management:**

- Sex offender registry check
- Terrorist Database Search
- Employment eligibility verification through Department of Homeland Security e-Verify Basic Pilot Program or e-Verify Program as applicable

**Required of all Personnel working at the Corporate Office (including but not limited to administrative, clerical and information technology personnel), Scalehouse Operators, and all positions with direct responsibility for cash with limited supervision, to be completed prior to placement with Waste Management, and required of all other Personnel (other than Sorters) after working at Waste Management for 600 hours.**

- Background check (SSN trace, 3 year employment history verification, 7 year county and federal criminal history check, motor vehicle record and credit check as appropriate)
- Drug test

WMRA 000030

**Temporary Service Worker Security/Confidentiality Agreement**

THIS CONFIDENTIALITY AGREEMENT (the "Agreement") is made as of the ___ day of
_____, 20__, between Waste Management Information Technology Service, a division
of Waste Management, Inc. (together with its parents, affiliates and subsidiaries, hereafter the
"Company") and _____ ("you").

WHEREAS, in connection with the services to be performed by you for your Employer, _____
_____, you may have access to Confidential Information (as defined below)
belonging to the Company;

WHEREAS, by execution of this Agreement, in order to induce the Company to make the
Confidential Information and property available to you, you agree as follows:

1.      Company Property. All written materials, records, data, and other documents prepared or
possessed by you during performance of services in connection to the Company are the
Company's property. All memoranda, notes, records, files, correspondence, drawings, manuals,
models, specifications, computer programs, maps, and all other documents, data, or materials of
any type embodying such information, ideas, concepts, improvements, discoveries, and
inventions are the Company's property. Upon the cessation of services on behalf of the
Company, you shall return all of the Company's documents, data, or other Company property to
the Company.

2.      Confidential Information. You agree that you will not use the Confidential Information
for any purpose detrimental to the Company. You agree that you will not make disclosure of any
Confidential Information for any purpose other than providing services to the Company. You
further agree to preserve and protect the confidentiality of third party Confidential Information to
the same extent, and on the same basis, as the Company's Confidential Information.

Upon the cessation of services on behalf of the Company, you shall promptly return all
Confidential Information that you may then have in your possession. Notwithstanding the return
or destruction of Confidential Information, you will continue to be bound by your obligation of
confidentiality.

For purposes of this Agreement, "Confidential Information" means and includes the Company's
confidential and/or proprietary information and/or trade secrets that have been developed or used
and/or will be developed and that cannot be obtained readily by third parties from outside
sources. Confidential Information includes, by way of example and without limitation, the
following information regarding customers, employees, contractors, and the industry not
generally known to the public; strategies, methods, books, records, and documents; technical
information concerning products, equipment, services, and processes; procurement procedures
and pricing techniques; the names of and other information concerning customers, investors, and
business affiliates (such as contact name, service provided, pricing for that customer, type and
amount of services used, credit and financial data, and/or other information relating to the
Company's relationship with that customer); pricing strategies and price curves; positions, plans,

WMRA 000031

and strategies for expansion or acquisitions; budgets; customer lists; research; weather data; financial and sales data; trading methodologies and terms; evaluations, opinions, and interpretations of information and data; marketing and merchandising techniques; prospective customers' names and marks; grids and maps; electronic databases; models; specifications; computer programs; internal business records; contracts benefiting or obligating the Company; bids or proposals submitted to any third party; technologies and methods; training methods and training processes; organizational structure; personnel information, including salaries of personnel; payment amounts or rates paid to consultants or other service providers; and other such confidential or proprietary information. Information need not qualify as a trade secret to be protected as Confidential Information under this Agreement, and the authorized and controlled disclosure of Confidential Information to authorized parties by Company in the pursuit of its business will not cause the information to lose its protected status under this Agreement. You acknowledge that this Confidential Information constitutes a valuable, special, and unique asset used by the Company in its business to obtain a competitive advantage over its competitors. You further acknowledge that protection of such Confidential Information against unauthorized disclosure and use is of critical importance to the Company in maintaining its competitive position.

By executing this Agreement, you acknowledge that the business of the Company is highly competitive and that the Company has agreed to provide you, as needed for providing of services to the Company, access to Confidential Information relating to the business of the Company.

3.      Miscellaneous.

(a)      All modifications of, waivers of and amendments to this Agreement or any part hereof must be in writing signed on behalf of you and the Company.

(b)      No failure or delay by the Company in exercising any right, power, or privilege under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise of any right, power, or privilege hereunder.

(c)      In the event that any provision or portion of this Agreement is determined to be invalid or unenforceable for any reason, in whole or in part, the remaining provisions of this Agreement shall be unaffected thereby and shall remain in full force and effect to the fullest extent permitted by applicable law.

Agreed and Accepted:_____
                                          Name

                                          _____
                                          Print Name

                                          _____
                                          Date

WMRA 000032

## "Exhibit D"
### Supplier Diversity

### What Supplier Diversity Means

At Waste Management, we are working to create an environment where everyone has an opportunity to succeed. As part of our commitment, we are identifying and reaching out to minority, women and service-disabled veteran - owned businesses to work with us and add value to our supply chain.

Our program focuses on maintaining a balance between high levels of service, quality and competitive pricing, while assisting businesses that have been historically overlooked in the procurement process.

### Contract Requirement

Waste Management and Supplier shall support the utilization and development of qualified minority-owned, women-owned and service disabled veteran-owned business enterprises ("M/W/VBEs"). Supplier shall have processes to encourage the placement of, and shall make good faith efforts to place; ten percent (10%) of the total dollar amount of the Supplier's awarded Agreement related purchases of services and materials from M/W/VBEs. For purposes of this Agreement, Qualified Individuals include, but are not limited to, African-Americans, Latin Americans, Native Americans, Asian-Pacific Americans, Asian-Indian Americans, service-disabled veterans and women. For the purposes of this Agreement, to be a M/W/VBE, a business must be at least majority owned by a Qualified Individual or group of Qualified Individuals and its management and daily business operations must be controlled by one or more such Qualified Individuals.

### Certification

Waste Management does not have an internal diversity certification program, but rather recognizes various third-party public and private sector certifications. The organizations listed below, and their local affiliates, are those whose certifications Waste Management accepts. Other certifications may be accepted on a case-by-case basis after review at Waste Management's discretion. Those businesses not yet certified as a diverse business are encouraged to apply and to indicate interest in seeking certification.

National Minority Supplier Development Council (NMSDC)
1040 Ave. of the Americas, 2nd Floor, New York, NY 10018
www.nmsdcus.org
Phone: (212) 944-2430
Certifies minority-owned businesses
NMSDC has 39 affiliate offices located nationwide.

WMRA 000033

Women's Business Enterprise National Council (WBENC)
1710 H. Street, N.W., 7th Floor; Washington, D.C. 20006
www.wbenc.org
Phone: (202) 872-5515
Certifies women-owned businesses
WBENC has 12 affiliate offices located nationwide.

Association for Service Disabled Veterans (ASDV)
P.O. Box 20312; Stanford, CA 94305
www.asdv.org
Phone: (650) 961-3751
Certifies service-disabled veterans

## Registration and Reporting

During the Term of this Agreement, Supplier shall maintain a registration on Waste Management's Supplier Registration Website:

http://suppliers.wm.com/

Supplier may be required to submit monthly reports of spending with certified M/W/VBE suppliers of goods and services related to this Agreement through the 2nd Tier Portal of the Supplier Registration Website not more than fifteen (15) days after the end of each calendar month during the Term of this Agreement. The Website will send Supplier a reminder on the first (1st) day of each month and continue to send reminders until the reporting has been complete. Supplier is encouraged to also report spending with non-certified M/W/VBE suppliers (although such non-certified spending will not be counted toward Supplier's diversity spending goals), and to encourage such non-certified suppliers to seek certification. Waste Management may be able to assist in the certification process on request.

WMRA 000034

TAB 4

# EXHIBIT

# B



**iWORKS** INC
P E R S O N N E L
"Bridging Supply & Demand"

## AGREEMENT FOR THE OPERATION OF HEAVY EQUIPMENT

iWORKS PERSONNEL (herein "iWORKS PERSONNEL") and ___Waste Mgt___ (herein "Customer"), agree to the following:

WHEREAS, Customer has requested that iWORKS PERSONNEL furnish certain of its employees to perform various services, which may include the operation of heavy equipment, which is owned controlled, or otherwise operated by Customer in its business; and

WHEREAS, iWORKS PERSONNEL is unwilling to provide employees to perform such services except upon the terms and conditions hereof;

NOW, THEREFORE, the parties agree as follows:

1.   Customer acknowledges that iWORKS PERSONNEL is not responsible for and will not provide employees, which are licensed, certified, or trained in the operation of said equipment. Customer will be responsible for ensuring that employees supplied by iWORKS PERSONNEL are trained in the safe and proper operation of all heavy equipment operated in their assigned task.

2.   iWORKS PERSONNEL shall not be responsible for any damage, injury, or claims to customer, customer's equipment, or third parties caused by or related to the operation of said heavy equipment by iWORKS PERSONNEL employees. It is further agreed the Customer shall indemnify and save iWORKS PERSONNEL harmless from any claims and expenses (including the expense of litigation) for damages asserted by Customer, its employees, agents, or third parties, in connection with any such loss.

3.   The undersigned are expressly authorized to sign this Agreement for and on behalf of the Customer and iWORKS PERSONNEL.

Paul Way
Customer

Paul Way
Authorized Representative

7/24/2012
Date

iWORKS PERSONNEL

_____
Authorized Representative

7/24/12
Date

iWORKS PERSONNEL INC          Operation of Equipment Hold Harmless Agreement

TAB 5

**Case No. 201261407**

| MOSE A. GUILLORY AND MARY GUILLORY | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| | § | HARRIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| IWORKS PERSONNEL, INC, ET AL. | § | 113TH JUDICIAL DISTRICT |

**IWORKS PERSONNEL, INC.'S**
**PLEA TO THE JURISDICTION**

DEFENDANTS, iWORKS PERSONNEL, INC., LUIS TREVINO, and HAYDEE GUTIERREZ (hereinafter "IWORKS") file this *Plea to the Jurisdiction*. In support thereof it would show this honorable Court the following:

**I.**
**Introduction**

This is a worker's compensation case. IWORKS has prefaced almost every pleading it has filed with this assertion. This is because, to date, the great bulk of legal efforts expended in this case are the direct result of Plaintiffs' numerous and continued attempts to circumvent the Texas Labor Code in the face of well settled law and clear public policy dictating otherwise. For well over a year Plaintiff's counsel has had two separate worker's compensation policies which would provide him with worker's compensation coverage. See Exhibit A (iWORKS') and Exhibit B (Waste Management's). Nevertheless, Plaintiff has refused to file a claim on either policy even though he would begin receiving benefits within fifteen days and despite the fact that this is what is required by the Texas Labor Code.

iWORKS has consistently asserted that 1) it is a subscriber to worker's compensation insurance, and 2) that Waste Management is responsible for the worker's compensation coverage for Guillory because a) it executed a hold harmless agreement

related to Guillory's employment, and b) it is solely responsible for moving Guillory from the duties he was assigned to perform by iWORKS (operation of a front-end loader) and placing him in operation of a machine (the Harris Baler) without any notice to iWORKS, for failing to provide Guillory with the training and supervision necessary to operate the Harris Baler safely, and for controlling the scope, manner and details of Guillory's work in a negligent fashion. For these reasons, iWORKS did not initiate a worker's compensation claim related to Guillory's work-place injury. Moreover, to the best knowledge of iWORKS, Waste Management has not filed an *Employer's First Report of Injury or Illness* (Form DWC-001) with its worker's compensation carrier, Indemnity Insurance Company of North America ("IICNA").

In order to put this matter on the administrative path it should have been on from its inception, iWORKS has filed an *Employers First Report of Injury or Illness* (Claim # 1420000952677) with its worker's compensation carrier, Texas Mutual Insurance Company ("TMIC").[1]  See Exhibit C.  The compensability of Guillory's injury is now being determined by TMIC claims adjuster Patricia Westin.  It is very likely that Texas Mutual will seek some form of contribution from IICNA.  In the event of an adverse compensability finding iWORKS will instigate a Benefit Review Conference with the Texas Department of Insurance – Division of Worker's Compensation ("DWC")[2], the first step in exhausting the administrative remedies necessary to pursue judicial review.

---

[1] By filing a claim on its worker's compensation insurance, iWORKS does NOT waive or otherwise retreat from its position that Guillory's injury is the sole responsibility of Waste Management and/or Guillory and expressly reserves its rights to raise these issues in the administrative proceedings (if any) and any judicial review of any administrative determinations.

[2] In 2005, the Legislature abolished the Texas Workers' Compensation Commission and transferred its functions to the Texas Department of Insurance-Division of Worker's Compensation.  See Act of May 29, 2005, 70th Leg., R.A., ch. 265, § 8.001, 2005 Tex. Gen. Laws 469, 607-08.  For ease of reference Movant

The DWC has exclusive jurisdiction over this matter. Plaintiffs' have not exhausted their administrative remedies. Thus, this Court lacks subject-matter jurisdiction and should dismiss Plaintiffs' causes of action.

**II.**
**Evidence in Support of iWORKS' Plea to the Jurisdiction**

Exhibit A – iWORKS' Workers' Compensation Policy

Exhibit B – Waste Management's Workers' Compensation Policy.

Exhibit C – Employer's First Report of Injury or Illness (DWC-001) filed by

Exhibit D – Hold Harmless Agreement

Exhibit E – Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease (DWC-041) executed Guillory

Exhibit F – Affidavit of Luis Trevino

**III.**
**Factual Background**

IWORKS is a temporary staffing company based out of San Antonio, Texas. It provides temporary employees to companies throughout Texas for assignments as short as one day or as long as six months. IWORKS' duty is to recruit, screen, interview, and assign its employees to perform the type of work requested by its clients. The work is to be performed at its client's facilities and under its client's direct supervision. IWORKS also pays the employee's wages, pays, withholds and transmits payroll taxes, provides unemployment insurance and worker's compensation benefits, and handles any unemployment and worker's compensation claims for employees we assign to its clients. IWORKS is not licensed as a staff leasing agency and has never offered staff leasing

_____

will refer to any reference to the Division of Worker's Compensation or any of its predecessor agencies as "DWC."

3

services. Nor has it ever provided any PEO services. Its sole business is recruiting and assigning temporary workers as required by its clients. IWORKS provides no site specific training to the temporary workers that it provides to its clients. IWORKS does not supervise any of the work performed at its client's sites. IWORKS has no control over its client's facilities or equipment.

One of IWORKS' clients was Waste Management, Inc. ("Waste Management"). In July 2012, Waste Management contacted IWORKS' Houston branch requesting a temporary employee who was qualified to operate a front-end loader at Waste Management's Gasmer facility. The provision of heavy equipment operators is not an area in which IWORKS does a lot of business. Therefore, as a condition of procuring such employees for Waste Management, IWORKS and Waste Management agreed that IWORKS would locate temporary employees who had experience operating front-end loaders, but that it would be Waste Management's responsibility to ensure that employees supplied by IWORKS were trained in the safe and proper operation of all heavy equipment to be operated in their assigned task. IWORKS and Waste Management also agreed that Waste Management would be solely responsible for any damages related to the operation of the heavy machinery at the Waste Management facility by an IWORKS temporary employee, and that Waste Management would hold IWORKS harmless in the event there was a claim made against them related to the operation of heavy machinery by an IWORKS temporary employee. See Exhibit D.

Mose Guillory applied for temporary work with IWORKS and indicated that he had experience operating a front-end loader. IWORKS instructed him to report to Waste Management's Gasmer facility to be evaluated. Waste Management reported to

4

IWORKS that Guillory had sufficient skill and experience operating a front-end loader and Guillory began working at the Waste Management Gasmer facility. From that point forward IWORKS sole responsibility was to pay Guillory based upon the time sheets submitted by Guillory's Waste Management supervisors.

IWORKS did not control any aspect whatsoever of Guillory's work at the Waste Management facility; Waste Management had sole control over the manner and details of Guillory's work. IWORKS did not control or even participate in evaluating whether or not Guillory possessed sufficient skill to operate a front-end loader; Waste Management had sole control in determining whether or not Guillory possessed sufficient skill. IWORKS did not control any site-specific training for Guillory; Waste Management had sole control over any site-specific training that Guillory may have needed to perform his duties at Waste Management's Gasmer facility.

The following undisputed facts are alleged in *Plaintiff's Fifth Amended Original Petition*:

- Waste Management hired IWORKS to locate temporary employees to work at Waste Management's Gasmer facility. *Petition[3]*, p. 11, ¶26; *Petition*, Exhibit A

- As a condition of procuring such employees IWORKS and Waste Management executed an agreement which specified that Waste Management was solely responsible for ensuring that the candidates were sufficiently trained in the operation of the heavy machinery. *Id.*, p. 11, ¶26; *Petition*, Exhibit B

- On July 9, 2012 Guillory applied for a job at IWORKS. *Id.*, p. 11, ¶ 27.

- Guillory was assigned to operate a front-end loader at the Waste Management facility located at 4939 Gasmer Dr., Houston, Texas. *Id.*, p. 11, ¶ 29.

- iWORKS does not provide site specific training as that is the duty of the client company. *Id.*, p. 15, ¶ 41.

[3] Unless otherwise indicated, "*Petition*" refers to *Plaintiff's Fifth Amended Petition*.

- When Guillory reported to the Gasmer facility on July 9th he was required to demonstrate his proficiency in driving a front-end loader to a Waste Management employee. *Id.*

- Waste Management was responsible for determining whether or not Guillory had sufficient experience, training, and skill to operate a front-end loader at Waste Management's Gasmer facility. *Id.*, p. 11, ¶ 29, p. 14, ¶¶ 40-41.

- Waste Management employee Abraham Hernandez determined that Guillory was sufficiently skilled in operating a front-end loader and instructed him to report for work on July 10, 2012. *Id.*

- Guillory operated the front-end loader at the Gasmer facility on the day shift from roughly July 10, 2012 to July16, 2012. *Id.*, p. 12, ¶ 30.

- Soon thereafter Guillory moved to the night shift at the Gasmer facility. *Id.*

- While working on the night shift Waste Management instructed Guillory to operate a Harris Baler. *Id.*, ¶ 31.

- On August 5, 2012 Guillory reported for work on the night shift and began to operate the Harris Baler. *Petition*, p. 13, ¶ 36.

- During this shift Guillory climbed into the baler which engaged while he was in there, severing his right leg below the knee and severing a portion of his left foot. *Id.*

## IV.
## Arguments & Authorities

**A.    This Court does not have subject-matter jurisdiction.**

This Court does not have subject-matter jurisdiction over Plaintiffs' claims related to his injury at work. Without subject-matter jurisdiction this Court cannot render a valid judgment in this matter. *City of Houston v. Rhule,* 417 S.W.3d 440, 442 (Tex. 2014, *per curium*) ("Subject matter jurisdiction is 'essential to a court's power to decide a case'" quoting *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 553–54 (Tex.2000)). Subject-matter jurisdiction cannot be waived, nor can it be given or taken away by consent. *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010); see *Rhule,* 417 S.W.3d at 442 ("A judgment

rendered without subject matter jurisdiction cannot be considered final" citing *Dubai Petrol. Co. v. Kazi,* 12 S.W.3d 71, 76 (Tex.2000)).

Lack of subject-matter jurisdiction makes a judgment void, not just voidable. *In Re United Servs. Auto Ass'n*, 307 S.W.3d 299, 209 (Tex. 2010). Lack of subject-matter jurisdiction is fundamental error and can be raised at any time. *Tex. Worker's Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 517 n.15 (Tex. 1995) (noting that a trial court can question its subject-matter jurisdiction even without a motion by either party). Lack of subject-matter jurisdiction can even be raised for the first time on appeal. *Waco ISD v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000); see *Rhule,* 417 S.W.3d at 442 ("Not only may a reviewing court assess jurisdiction for the first time on appeal, but all courts bear the affirmative obligation 'to ascertain that subject matter jurisdiction exists regardless of whether the parties have questioned it.'" quoting *In re United Servs. Auto. Ass'n,* 307 S.W.3d 299, 306 (Tex.2010)). Furthermore, the failure to grant a plea to the jurisdiction for failure to exhaust administrative remedies with the DWC is subject to mandamus review. *In Re Liberty Mut. Fire Ins. Co.,* 295 S.W.3d 327, 328 (Tex. 2009) (orig. proceeding) (*per curiam*); *In Re Liberty Ins. Corp.*, 321 S.W.3d 630 (Tex.App.—Houston [14th Dist.] 2010) (orig. proceeding).

## B.    The Division of Workers' Compensation has exclusive jurisdiction.

This is a worker's compensation case and falls under the exclusive jurisdiction of the Texas Department of Insurance – Division of Worker's Compensation. As such, this court lacks subject-matter jurisdiction to adjudicate Plaintiffs' claims until Plaintiffs have exhausted their administrative remedies through the DWC.

7

An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is address." *Subaru of Am. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002); *In Re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 172 (Tex.App.—Houston [1st Dist] 2012) (orig. proceeding) ("An agency has exclusive jurisdiction . . . when a pervasive regulatory scheme reflects legislative intent that an agency have the sole power to make the initial determination in the dispute.") Exclusive jurisdiction is a question of law that turns on statutory interpretation. See *Rhule,* 417 S.W.3d at 442 (citing *Subaru,* 84 S.W.3d at 221. The Texas Supreme Court held in *Saenz v. Fidelity & Guaranty Insurance Underwriters[4]* that "the Workers' Compensation Act vests the power to award compensation benefits solely in the [DWC]. . ., subject to judicial review." *Saenz,* 925 S.W.2d at 612.

In *Tex. Mut. Ins. Co. v. Ruttiger[5]* the Texas Supreme Court discussed the significant changes the Legislature made to the Worker's Compensation Act[6] ("Act") in 1989[7]. It noted that the "amendments included significant reforms, among which were changes in how to calculating benefits for injured workers, the amount of income benefits workers could recover, the dispute resolution process, the addition of an ombudsman program to provide assistance for injured workers who had disputes with insurers, and increasing sanctions for violations of the Act." *Id.,* 381 S.W.2d at 433. The *Ruttiger* court

---

[4] 925 S.W.2d 607 (Tex. 1996)

[5] 381 S.W.3d 430 (Tex. 2012).

[6] Tex. Lab. Code §§ 401.001 – 506.002.

[7] The *Ruttiger* opinion addressed the viability of a common-law cause of action for breach of the duty of good faith and fair dealing against a worker's compensation carrier, a cause of action previously approved of by the Texas Supreme Court in *Arranda v. Ins. Co. of North Amer.*, 748 S.W.2d 210 (Tex. 1988). The *Ruttiger* court held that the 1989 amendments to the Act manifested the Legislatures' intent to vitiate the need for such a cause of action and expressly overruled *Arranda. Id.*, 381 S.W.3d at 438-56.

8

stated that "[t]he purpose of the Act is to provide employees with certainty that their medical bills and lost wages will be covered if they are injured." *Id.* at 441.

> To accomplish these purposes, the Act provides detailed notice and administrative dispute resolution proceedings that include specific deadlines and incorporate a "conveyor-belt" approach. That is, once the administrative dispute resolution process is initiated, a dispute continues through the process until the dispute is resolved either by the parties or by a binding decision through the resolution procedures.

*Id.* at 441.

The *Ruttiger* opinion provides a lengthy description of "the detailed notice and administrative dispute resolution proceedings" encompassed by the Act. *Id.* at 441-43. In describing the pervasiveness of the Act the *Ruttiger* court noted that the Act affords the DWC significant power to enforce the Act against the various parties in the worker's compensation system. *Id.* The *Ruttiger* court concluded:

> It is apparent that the Act prescribes detailed, WCD-supervised, time-compressed processes for carriers to handle claims and for dispute resolution. It has multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements.

*Id.* at 443. The court recognized that allowing an employee to circumvent the act by asserting common law causes of action would be "inconsistent with the Act's goals and legislative intent exhibited in the act" and could also "result in rewarding an employee who is dilatory in utilizing the Act's detailed dispute resolution procedures, regardless of whether the delay was intentional or inadvertent, because whether and when the dispute resolution begins is by and large dependent on the employee." *Id.*

The number of appellate decisions recognizing the DWC's exclusive jurisdiction over work-place injuries is voluminous. Both Houston Courts of Appeal have recognized the DWC's exclusive jurisdiction. The Fourteenth held that "[t]he Workers' Compensation

9

Act vests the Workers' Compensation Division with exclusive jurisdiction to determine a claimant's entitlement to medical benefits." *In Re Liberty Insurance Corporation*, 321 S.W.3d 630, 636 (Tex.App.—Houston [14th Dist.] 2010, orig. proceeding) (granting Relator's petition for mandamus relief and dismissing Plaintiff's case for lack of jurisdiction). Likewise, the First District held that "[t]he Worker's Compensation Act gives the DWC exclusive jurisdiction over certain workers' compensation disputes relating to entitlement to medical benefits, preauthorization of medical care and reimbursement of medical expenses." *In Re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 172 (Tex.App.— Houston [1st Dist.] 2012, orig. proceeding) (granting Relator's petition for mandamus).

## C. Plaintiff has not exhausted his administrative remedies.

When an agency has exclusive jurisdiction a party must exhaust its administrative remedies before seeking recourse through judicial review. *Rhule*, 417 S.W.2d at 442 (citing *Cash Am. Int'l., Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000); *Cunningham Lindsey Claims Mgmt. v. Snyder*, 291 S.W.3d 472, 477 (Tex.App.—Houston [14th Dist.] 2009, pet. denied) ("If an agency has exclusive jurisdiction. . . a party must first exhaust all administrative remedies before a trial court has subject matter jurisdiction."). "Absent exhaustion of administrative remedies, a trial court must dismiss the case." *Rhule*, 417 S.W.2d at 442 (citing *Tex. educ. Agency v. Cypress-Fairbanks I.S.D.*, 830 S.w.2d 88, 90 (Tex. 1992). There is no question that Guillory has not exhausted his administrative remedies through the DWC. The question before this court is, "Why?"

Guillory was injured on August 5, 2012. Approximately two weeks later, he executed a claim form requesting compensation for a work-related injury. See Exhibit E. On that form he stated that he was represented by Bradford J. Gilde. *Id.* Thus, fifteen

days after his work-related injury (over 2 ½ years ago) Guillory was at a minimum aware of the potential availability of worker's compensation benefits. It is also fair to assume that his legal representative knew (or had the ability to find out) how to obtain those benefits. As was stated above, for almost two years Guillory has had two separate worker's compensation policies by which he could have sought benefits. Yet he has made no effort to invoke his rights under either policy.

This court has found as a matter of law that Guillory's claims against Waste Management are barred by the "comp bar" defense, yet Guillory still refuses to file a claim on Waste Management's worker's compensation policy. The Texas Supreme Court held in *Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238 (Tex., 2012) that a company cannot segregate its temporary employees and permanent employees for purposes of coverage under its worker's compensation policy. The *Casados* court further noted that:

> [P]remiums are an issue between the employer and the insurer; they do not affect the employee's coverage. *Tex. Emp'rs' Ins. Ass'n v. Stanton*, 140 S.W.2d 337, 339–40 (Tex.Civ.App.-Amarillo 1940, writ. ref'd) ("[T]he failure to pay the premiums which may be due upon a policy is a matter of no importance as between the insurer and the employee but only concerns the insurer and the employer."). If Port Elevator's policy had set out certain premiums solely for temporary workers and Port Elevator had not paid those premiums, Casados would still have been covered under the policy and the failure to pay premiums would be an issue between Port Elevator and Texas Mutual. See *Coal Operators Cas. Co. v. Richardson*, 414 S.W.2d 735, 738 (Tex.Civ.App.—Beaumont 1967, writ ref'd n.r.e.) ("This [workers' compensation] protection to plaintiff was not lost because his employer failed to pay the proper premium to the insurance company.").

Id. at 243-44. Thus, Guillory is covered under Waste Management's worker's compensation policy as a matter of law. This may be another reason why Waste

11

Management has failed to invoke its rights under the Act. See discussion, *infra*, n. 8 (below).

The only plausible explanation for Guillory's failure to even try to claim his benefits under the Texas Workers' Compensation Act is that he and his counsel decided early in the course of this litigation to try and circumvent the worker's compensation system in an attempt to recover common law damages. Given the extreme nature of Guillory's injury it is understandable why he would prefer common law remedies. However, this approach flies in the face of long standing legal precedence and well-established public policy. As the *Ruttiger* court stated, "the extra-statutory cause of action provides incentive for an injured worker to delay using the avenues for immediate relief that the Legislature painstakingly built into the law" and "distorts the balances struck in the Act and frustrates the Legislature's intent to have disputes resolved quickly and objectively." *Ruttiger*, 381 S.W.3d at 451. That is what happened in this case.[8]

This is not a factually complicated matter; the basic underlying facts are, for the most part, undisputed. However, in his attempt to circumvent the worker's compensation system, Guillory has had to assert highly questionable causes of action and include parties that simply have no business being in this litigation. As a result this litigation has burgeoned into an unnecessarily complicated and contentious morass. It has even resulted in an award of substantial attorney fees being assessed against Guillory, himself. Nevertheless, Guillory continues down this untenable path fearing that any recognition by

---

[8] Fairness demands that the same inquiry be directed at both iWORKS and Waste Management: why didn't either one of them file a claim with their worker's compensation carrier? iWORKS' position is stated, *supra*, at p. 1-2. iWORKS' understanding of Waste Management's position is that the Hold Harmless Agreement is unenforceable and that iWORKS has a contractual duty to provide the worker's compensation coverage for Guillory. This question is now moot given that iWORKS has filed a claim with TMIC and has begun the administrative process required by the Act.

him of a viable worker's compensation claim will preclude him from his questionable attempt at recovering common law damages for his work-place injury. ***This is not how the State of Texas wants work-place injuries to be resolved***. "[P]arties cannot avoid exhaustion of administrative remedies because they fear they might not prevail." *In Re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327 329 (Tex. 2009).

The Corpus Christi Court of Appeals provides a concise description of the administrative process required to exhaust the DWC administrative remedies.

> The Texas Workers' Compensation Act provides a four-tiered system for the disposition of claims by the DWC. See TEX. LAB. CODE ANN. §§ 410.021–.308 (West 2006 & Supp. 2010). In the first tier, the parties participate in a "benefit review conference" conducted by a "benefit review officer." TEX. LAB. CODE ANN. §§ 410.021–.034 (West 2006 & Supp.2010). The conference, which is a "nonadversarial, informal dispute resolution proceeding," is designed to inform the parties regarding the procedures regarding a claim, discuss the facts and issues pertaining to the claim, and "mediate and resolve disputed issues by agreement of the parties." *Id.* § 410.021(3) (West 2006). "A dispute may be resolved either in whole or in part at a benefit review conference." *Id.* § 410.029(a) (West 2006). If the conference results in the resolution of disputed issues or in a settlement, the benefit review officer reduces the agreement to writing and the parties and the officer sign the agreement. *Id.* § 410.029(b) (West 2006). If the parties fail to resolve all parts of a dispute at the benefit review conference, the benefit review officer similarly prepares a written report that delineates the status of the case. *Id.* § 410.031 (West 2006).
>
> In the second tier, "[i]f issues remain unresolved after a benefit review conference," the parties may agree to arbitrate, and absent such an agreement, the parties may seek relief at a "contested case" hearing. Id. §§ 410.104, 410.151–.169 (West 2006). In the third tier, a party may seek review by an administrative appeals panel. Id. §§ 410.201–.208 (West 2006). Finally, in the fourth tier, a party that has exhausted its administrative remedies may seek judicial review. Id. §§ 410.251–.308 (West 2006).

*In Re New Hampshire Ins. Co.*, 360 S.W.3d 597 (Tex. App.—Corpus Christi 2011, pet. denied). This is the process that Guillory must exhaust. Only after Guillory has availed himself of these administrative remedies may he seek redress in this Court.

**D.     The DWC has exclusive jurisdiction to determine coverage in this matter.**

Guillory claims that both iWORKS and Waste Management are non-subscribers. See *Petition*, p. 6, ¶¶ 19-20. iWORKS contends that it had a worker's compensation policy in effect at the time of Guillory's injury. See Exhibit F.[9] By raising this coverage issue Plaintiff hopes to thwart the "worker's comp bar"[10] and avoid resolution of this matter through the DWC. However, this approach does not comport with Texas law. The DWC has both the exclusive authority and the administrative ability to resolve these issues.

The DWC routinely addresses these types of issues through its administrative proceedings. See e.g. *Ins. Co. of Pa. v. Hartford Underwriters Ins. Co.*, 164 S.W.3d 747 (Tex.App.—Houston [14th Dist.] 2005, no pet.) ("Though we are not bound by the decisions [of the DWC], we find them instructive . . . . "); *Houston Gen. Ins. Co. v. Ass'n Cas. ins. Co.*, 977 S.W.3d 634, 636 (Tex.App.—Tyler 1998, no pet.) (noting that administrative decisions, while not binding, are entitled to substantial weight).

In *Appeals Panel No. 030660*[11] (Division of Worker's Compensation, April 28, 2003) the DWC appeals panel addressed a temporary staffing situation and determined which employer was liable, the proper application of the Staff Leasing Services Act[12] ("SLSA"), and approved the use of the borrowed servant doctrine in determining liability.

---

[9] Exhibit F is the Affidavit of Luis Trevino which is incorporated by reference as if set forth in full herein.

[10] The Texas Workers' Compensation Act provides that the "exclusive remedy of an employee covered by workers' compensation insurance coverage" for a work-related injury is "recovery of workers' compensation benefits" as provided under the Act. TEX. LAB. CODE ANN. § 408.001(a).

[11] DWC Appeals Panel decisions are available on the Texas Department of Insurance website at http://www.tdi.texas.gov/appeals. Copies of the Appeals Panel decisions cited in this brief are attached hereto in an Appendix.

[12] TEX. LABOR CODE, Chapter 91 ("STAFF LEASING SERVICES"). The Texas Legislature amended Chapter 91 in 2013 renaming it "PROFESSIONAL EMPLOYMENT ORGANIZATIONS". This amendment supports iWORKS' opposition to Plaintiff's proposition that it is a staff leasing company. Rather, iWORKS temporary

14

In *Appeals Panel No. 021771* (Division of Worker's Compensation, September 3, 2002) the appeals panel addressed a matter factually similar to this case analyzing the interplay between the contractual obligations between a staffing company and its client company, the applicability of the SLSA, and the application of the borrowed servant doctrine to determine coverage. The appeals panel upheld the hearing officer's determination that the client company was responsible for the worker's injury rather than the staffing company. The panel held that:

> Texas courts have recognized that a general employee of one employer may become the borrowed servant of another employer. The determinative question then becomes which employer had the right of control of the details and manner in which the employee performed the necessary services. Carr v. Carroll Company, 646 S.W.2d 561 (Tex. App.-Dallas 1982, writ ref'd n.r.e.). We note that in Texas Workers' Compensation Insurance Fund v. DEL Industrial, Inc., 35 S.W.3d 591 (Tex. 2000), the court held that the Staff Services Leasing Act (SSLA), Texas Labor Code Chapter 91, supersedes the common law right-of-control test in determining employer status of leased employees for workers' compensation purposes. However, (Employer 2) was not licensed under the SSLA. The hearing officer determined that on the date of injury, (Employer 2) was a licensed provider of temporary common workers under Chapter 92 of the Texas Labor Code, entitled Temporary Common Worker Employers (TCWE). In Richmond v. L. D. Brinkman & Co. (Texas) Inc., 36 S.W.3d 903 (Tex. App.-Dallas 2001, pet. denied), the court determined that the common law right-of-control test is not superseded by Chapter 92 (TCWE) of the Texas Labor Code. The hearing officer is the sole judge of the weight and credibility of the evidence. Section 410.165(a). We conclude that the hearing officer did not err in applying the right-of-control test and in determining that at the time of the injury, the claimant was the borrowed servant of (Employer 1). The hearing officer's decision is supported by sufficient evidence and is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175 (Tex. 1986).

employment service as set forth in Chapter 93 of the TEXAS LABOR CODE. Furthermore, effective September 1, 2013, TEX. LABOR CODE § 93.004(a) holds that a Certificate of Insurance "constitutes proof of workers' compensation insurance coverage for the temporary employment service and the client of the temporary employment service with respect to all employees of the temporary employment services assigned to the client." Subsection (a) further holds that "[t]he state or political subdivision of the state shall accept a certificate of insurance coverage described by this section as proof of worker's compensation coverage under Chapter 406."

*Id.* at p. 1-2. The client company also argued that the staffing company should be responsible because the client company paid fees to the staffing company which went towards worker's compensation coverage for the temporary employees. The panel rejected these arguments. *Id.*

In *Appeals Panel No. 101718* (Division of Worker's Compensation, March 21, 2011) the appeals panel examined a complex claim involving a contractor, a subcontractor, a PEO, and a temporary staffing company. In finding that the employee did not suffer a compensable injury the panel had to address issues related to coverage (including whether or not the temporary staffing company's carrier properly terminated coverage), contractual duties between the parties, liability issues between three different worker's compensation insurance providers, employment status of the claimant, and other related issues.

The legal issues discussed above are all issues that are in play in this case. These are issues that the DWC routinely addresses through its administration of the Act. These are issues that fall squarely within the exclusive jurisdiction of the DWC. This court does not have subject-matter jurisdiction over these matters until all of the administrative remedies available through the Act have been exhausted.

In *Morales v. Liberty Mut. Sinc. Co.*[13], the Texas Supreme Court addressed the issue of the relationship between compensability under the Texas Worker's

_____

[13] 241 S.W.3d 514 (Tex. 2007).

Compensation Act ("the Act"), employee status, and subscriber status.[14] The Court held

that issues of coverage such as the one in this case fall within the rubric of the existence

of a compensable injury which is properly resolved through the Act. Morales was killed

while repairing a roof on a motel. *Id.* at 515. His wife sought death-benefits under the

act claiming he was injured while in the course and scope of his employment with three

different employers. *Id.* Two of the employers were insured under separate worker's

compensation policies, and the third was a nonsubscriber. *Id.*

> The existence of a compensable injury is the threshold requirement for payment of benefits under the Act. *See* TEX. LAB.CODE §§ 401.011(5), 406.031(a). And there are various elements that affect whether an injury is compensable, including the worker's employment status as an employee or independent contractor at the time of injury, whether the worker was injured in the course and scope of employment, who controlled the employee's work when the injury occurred, and whether a particular employer has an insurance policy in effect. *See id.* §§ 401.011(12), (18), 401.012(a).
>
> . . . .
>
> A dispute about any of these elements regards "compensability or eligibility for . . . benefits" and is subject to judicial review under section 410.301.

*Morales v. Liberty Mut. Ins. Co.,* 241 S.W.3d at 519. iWORKS has consistently claimed

that it has a worker's compensation policy and that Waste Management controlled the

Guillory's work when his injury occurred. These are issues within the purview of the Act

and over which the DWC has exclusive jurisdiction.

---

[14] The *Morales* Court addressed these issues in the context of determining which standard of review set forth in the Act should apply to judicial review of a final decision from a DWC appeals panel. If the issues being appealed involve "compensability" then the standard of review is the "modified *de novo*" standard established by §410.301. Issues that do not address compensability are reviewed under a "substantial-evidence" standard. *Morales*, 241 at 516-17. The outcome of this question of compensability also effects venue and the appropriate scope of judicial review. *Id.*

17

In *In Re Tex. Mut. Ins. Co.*[15] the court addressed the DWC's exclusive jurisdiction in the context of common law breach of contract claims and disputed coverage. The Court held that the *Fodge* decision mandated that the claimant's breach-of-contract claim "is within the Commission's exclusive jurisdiction." *Id.*, 157 S.W.3d at 80. The Court also held that:

> We likewise reject [Claimant's] assertions that the Commission's exclusive jurisdiction over worker's compensation benefits claims does not extend to determining whether coverage existed at the time of [Claimant's] injury. The legislature has granted the Commission exclusive jurisdiction over claims for policy benefits. *Fodge*, 63 S.W.3d at 805. In adjudicating such claims, the Commission will necessarily have to interpret compensation policies and determine the period in which coverage existed. Indeed, it appears to routinely do so. See, e.g., *Gonzales v. Cigna Ins. Co. of Tex*, 924 S.W.2d 183, 184-87 (Tex.App.—San Antonio 1996, write denied); *Houston Gen. Ins. Co. v. Association Cas. Ins. Co.*, 972 S.W.2d 634, 636 (Tex.App.—Tyler 1998, no pet.).
>
> Moreover, [Claimant's] argument would imply that whenever the Commission, in the exercise of its exclusive jurisdiction, encounters a coverage issue that can be characterized as going to "policy formation," the agency must abate its proceedings pending judicial resolution of the "formation" issue. We doubt that the legislature, in conferring exclusive jurisdiction upon the Commission to determine compensation benefits claims, intended such an absurd result that seemingly turns traditional concepts of exclusive jurisdiction on their head.

*Id.* at p.

Nor does iWORKS' delay in reporting Guillory's injury to its insurance carrier preclude it from invoking the administrative procedures of the Act. See *Hand v. SGS Control Servs., Inc.*, 409 S.W.3d 743, 749 (Tex.App.—Houston [1st Dist.] 2013). The court held that "[the employer] 'invoked" its workers' compensation insurance coverage when it initially obtained the coverage; it was not required to take an specific action to 'invoke'

---

[15] 157 S.W.3d 75 (Tex.App.—Austin 2004, orig. proceeding).

that coverage after [Plaintiff] was injured, and it did not forfeit its protections under the Workers' Compensation Act when it failed to notify its insurance carrier of Reagan's injury in a timely manner." Id.

## V.
## Conclusion

This is a workers' compensation case which should have been filed with the DWC over two years ago. For the various reasons discussed above, none of the parties were eager to do so. iWORKS' has relented and filed a claim with its worker's compensation carrier. This will start the administrative process necessary to exhaust the remedies provided by the DWC. However, until those remedies are fully exhausted this Court lacks subject-matter jurisdiction. Therefore, this Court must dismiss Plaintiffs' claims as a matter of law.

## VI.
## Prayer

Defendants iWORKS, Trevino, and Gutierrez pray that the Court grant the relief requested herein and for any and all other relief to which they are entitled in law or equity.

Respectfully submitted,

_____/s/_ David N. Anderson_____
David N. Anderson
TBN: 00797951
4309 Yoakum
Houston, TX 77006
(713) 521-6563 - Telephone
(866) 524-4294 – Fax
danderson@lodna.net

ATTORNEY FOR DEFENDANTS
IWORKS PERSONNEL, INC.,
LUIS TREVINO, and
HAYDEE GUTIERREZ

19

## NOTICE OF HEARING

The foregoing motion will be heard by the Court on Friday, February 20, 2015 at 9:00 a.m.

_/s/_ David N. Anderson_____
David N. Anderson

## CERTIFICATE OF SERVICE

I certify that on February 13, 2015 all parties were served a copy of the foregoing via eFILE in accordance with the Texas Rules of Civil Procedure, to whit:

| | |
|---|---|
| Bradford J. Gilde | Nicholas A. Homan |
| Texas Bar No. 24045941 | Texas Bar No. 24083194 |
| bjg@gildelawfirm.com | nah@gildelawfirm.com |

GILDE LAW FIRM
55 Waugh, Suite 850
Houston, TX 77007
(281) 973-2772 – phone
(281) 973-2771 –facsimile
**Attorneys for Plaintiffs**

| | |
|---|---|
| B. Lee Wertz, Jr. | Carrie Schadle |
| Texas Bar No. 00797796 | Texas Bar No. 24051618 |
| lee.wertz@harrisonbettis.com | carrie.schadle@harrisonbettis.com |

HARRISON, BETTIS, STAFF, MCFARLAND & WEEMS, L.L.P.
1415 Louisiana, 37th Floor
Houston, Texas  77002
(713) 843-7900 – phone
(713) 843-7901 – facsimile
**Attorneys for Defendant Waste Management, Inc., et al.**

/s/   David N. Anderson_____
David N. Anderson

## Case No. 201261407

| | | |
|---|---|---|
| MOSE A. GUILLORY AND MARY GUILLORY | § § § | IN THE DISTRICT COURT OF |
| | § | HARRIS COUNTY, TEXAS |
| V. | § § | |
| IWORKS PERSONNEL, INC, ET AL. | § | 113TH JUDICIAL DISTRICT |

### IWORKS PERSONNEL, INC.'S
### PLEA TO THE JURISDICTION

### Evidence in Support of iWORKS' Plea to the Jurisdiction

Exhibit A –   iWORKS' Workers' Compensation Policy

Exhibit B –   Waste Management's Workers' Compensation Policy.

Exhibit C –   Employer's First Report of Injury or Illness (DWC-001) filed by

Exhibit D –   Hold Harmless Agreement

Exhibit E –   Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease (DWC-041) executed Guillory

Exhibit F –   Affidavit of Luis Trevino

**TAB 6**



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

6210 E Highway 290
Austin, Texas 78723-1098

## INFORMATION PAGE

**ITEM 1**
**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**POLICY NUMBER**
STA-0001204473 20110904

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.

**PRODUCER**
18220

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

**ITEM 2**  The Policy Period is from: 9-04-2011   To: 9-04-2012   12:01 A.M. standard time at the insured's mailing address

**ITEM 3**
A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE

D. This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**
The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

| | | |
|---|---|---|
| TOTAL ESTIMATED STANDARD PREMIUM | $ | 18,335.00 |

```
WAIVER OF SUBROGATION . . . . . . . . . . . . . . . :              367.00
INCREASED EMPLOYERS LIABILITY LIMITS . . . . . . . . :              187.00
TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . :           18,889.00
PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) . :         5,667.00
PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ). :        18,417.00
WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ). . . :          5,157.00-
DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . :                 .00
ADMIRALTY/FELA OR L & H W . . . . . . . . . . . . . :                  .00
PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) . . . . . . :             2,761.00-
EXPENSE CONSTANT CHARGE . . . . . . . . . . . . . . :                150.00
```

| | | |
|---|---|---|
| TOTAL ESTIMATED ANNUAL PREMIUM | $ | 35,205.00 |

MINIMUM PREMIUM         250.00

DEPOSIT PREMIUM       11,618.00          Countersigned by *Ron Wright*

Issue Date:   8-16-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)



**DEFENDANT'S EXHIBIT**
**A**

# TAB 7



ISSUING COMPANY
INDEMNITY INS. C. OF NORTH AMERICA
NCCI CARRIER CODE
25437

# Workers' Compensation and Employers Liability Insurance Policy Information Page

| POLICY NUMBER | |
|---|---|
| Symbol: WLR | Number: C4 67 74 73 5 |

New ☐    Renewal ☒    Rewrite ☐

| PREVIOUS POLICY NO. | |
|---|---|
| Symbol: WLR | Number: C46469768 |

Individual ☐    Partnership ☐
Corporation ☒ ☐

**Item 1.**
**Named**
**Insured**

WASTE MANAGEMENT, INC.
1001 FANNIN STREET, SUITE 4000
HOUSTON     TX 77002

Inter/Intrastate ID No.: 910617249

Federal Employer ID No.: 731309529

Mailing
Address

Employer's ID No.:

PIIC CODE: 495311

For other named insured see Extension of Information Page – Schedule of Named Insured, WC 99 99 99 A
For other workplaces see Extension of Information Page – Schedule of Other Workplaces, WC 99 99 99 B

**Item 2.**   Policy period:   From   01-01-2012   To   01-01-2013   12:01 A.M., standard time at the named insured's mailing address.

**Item 3A.**   Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here:
AK,AL,AR,AZ,CO,CT,DC,DE,FL,GA,HI,IA,ID,IL,IN,KS,KY,LA,MD,ME,MI,MN,MO,MS,MT
NC,NE,NH,NJ,NM,NV,NY,OK,OR,PA,RI,SC,SD,TN,TX,UT,VA,VT,WV

**Item 3B.**   Employers Liability Insurance: Part Two of the policy applies to work in each state listed in Item 3A.
The limits of our liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident | $ 3,000,000 | each accident |
| Bodily Injury by Disease | $ 3,000,000 | policy limit |
| Bodily Injury by Disease | $ 3,000,000 | each employee |

**Item 3C.**   Other States Insurance:   Part Three of the policy applies to the states, if any, listed here:
ALL STATES EXCEPT
ND,OH,WA,WY,
AND STATES DESIGNATED IN ITEM 3.A

**Item 4.**   The premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.
SEE EXTENSION OF INFORMATION PAGE –CLASSIFICATIONS

If indicated here, interim adjustments of premium will be made:
☐ Semi-Annually   ☐ Quarterly   ☐ Monthly

Minimum Premium collected in
Total Estimated Premium
Deposit Premium

This policy includes these endorsements and schedules:
SEE SCHEDULE OF FORMS AND ENDORSEMENTS WC999999D

PRODUCER NAME AND MAILING ADDRESS
LOCKTON COMPANIES     LLC
5847 SAN FELIPE PLAZA
SUITE 320
HOUSTON     TX 77057

Target Risk No: S800064861

Fac. Reins.   ☐ Yes    ☒ No

PRODUCER CODE: 272474    20-3354970    NYU
COMMISSION: Percent:   .00    Amount: 0.00

MARKETING OFFICE:   NEW YORK BRANCH
ISSUE DATE:   01/12/2012

(Authorized Representative)

7497   WC 00 00 01A (06/03)     Copyright 1987 National Council on Compensation Insurance
COMPANY COPY



DEFENDANT'S
EXHIBIT
B

# TAB 8

# DAVID N. ANDERSON
## ATTORNEY AT LAW

February 5, 2015

Texas Mutual Insurance Company
PO Box 12029
Austin, TX  78711-209
*Via Facsimile @ (877) 404-7999*

RE:   Policy No. – STA 000 1204473 20110904
        Insured – iWORKS Personnel, Inc. d/b/a Preferred Staffing Company
        Claimant – Mose Guillory
        Date of Accident – August 5, 2012
        Agent:  Lette Insurance Agency

Dear Sir / Madame:

Please find attached iWORKS Personnel's *First Report of Injury or Illness* (Form DWC-001).  Good cause exists for delay in submitting this form.  Litigation related to Claimant's injury is currently pending in Harris County, Texas styled:   Case No. 2012-61407; *GUILLORY V. IWORKS PERSONNEL, INC. AND WASTE MANAGEMENT, INC.*; in the 113th District Court of Harris County, Texas.

Please direct any enquiries regarding this matter to my attention.

Most sincerely yours,

/s/

David N. Anderson,
Attorney for iWORKS Personnel, Inc.

cc:   Mose Guillory, Claimant
        c/o  Brad Gilde, Esq.
        The Gilde Law Firm
        *Via Facsimile @ (281) 973-2771*

        The Lette Insurance Agency
        *Via Facsimile @ (956) 542-8757*

        Waste Management, Inc.
        c/o Lee Wertz, Esq.
        HARRISON, BETTIS, STAFF, MCFARLAND & WEEMS, L.L.P.
        *Via Facsimile @ (713) 843-7901*

        iWORKS Personnel, Inc.

---

## THE ANDERSON LAW FIRM
### (A PROFESSIONAL CORPORATION)
4309 Yoakum • Houston, Texas 77006
(713) 521-6563 • Facsimile (866) 524-4294



DEFENDANT'S
EXHIBIT

C

Send the specified copies to your
Workers' Compensation Insurance Carrier
and the injured employee.

*Employers - Do not send this form to the
Texas Department of Insurance, Division of Workers' Compensation,
Unless the Division specifically requests a direct filling.

CLAIM # _____

CARRIER'S CLAIM # _____

# EMPLOYERS FIRST REPORT OF INJURY OR ILLNESS

| 1. Name (Last, First, M.I.) | | 2. Sex  F ☐  M ☑ | 15. Date of Injury (m-d-y) | 16. Time of Injury | 17. Date Lost Time Began (m-d-y) |
|---|---|---|---|---|---|
| Guillory, Mose | | | 08 - 05 - 2012 | am ☐  pm ☐ | 08 - 06 - 2012 |

| 3. Social Security Number | 4. Home Phone | 5. Date of Birth (m-d-y) | 18. Nature of Injury* | 19. Part of Body Injured or Exposed* |
|---|---|---|---|---|
| 438 - 21 - 6404 | (832) 423-4959 | 02 - 19 - 1962 | Amputation | Right Leg; Left toes |

| 6. Does the Employee Speak English?  If No, Specify Language | 20. How and Why Injury/Illness Occurred* |
|---|---|
| YES ☑  NO ☐ | See attached. |

| 7. Race  White ☐  Black ☑  Asian ☐ | 8. Ethnicity  Hispanic ☐  Native American ☐  Other ☑ | 21. Was employee doing his regular job?  YES ☐  NO ☑ | 22. Worksite Location of Injury (stairs, dock, etc.)*  Waste recovery facility |
|---|---|---|---|

| 9. Mailing Address   Street or P.O. Box | 23. Address Where Injury or Exposure Occurred Name of business if incident occurred on a business site |
|---|---|
| 1230 Gentle Bend | Waste Management, Inc. |

| City | State | Zip Code | County | Street or P.O. Box | | County |
|---|---|---|---|---|---|---|
| Missouri City | TX | 77489 | Harris | 4939 Gasmer | | Harris |

| 10. Marital Status  Married ☑  Widowed ☐  Separated ☐  Single ☐  Divorced ☐ | City | State | Zip Code  . |
|---|---|---|---|
| | Houston | TX | 77035 |

| 11. Number of Dependent Children | 12. Spouse's Name | 24. Cause of Injury(fall, tool, machine, etc.)* |
|---|---|---|
| 0 | Mary Guillory | Harris Baler |

| 13. Doctor's Name | 25. List Witnesses |
|---|---|
| Milar Kumar Sen, M.D. | Paul Ware (Waste Management); Abraham Hernandez (Waste Management) |

| 14. Doctor's Mailing Address (Street or P.O. Box) | 26. Return to work date/or expected (m-d-y) | 27. Did employee die? | 28. Supervisor's Name | 29. Date Reported (m-d-y) |
|---|---|---|---|---|
| 6410 Fannin Ste. 950 | | YES ☐  NO ☑ | | |

| City | State | Zip Code | | | | |
|---|---|---|---|---|---|---|
| Houston | TX | 77030 | 00 - 00 - 0000 | | Paul Ware | 08 - 05 - 2012 |

| 30. Date of Hire (m-d-y) | 31. Was employee hired or recruited in Texas? | 32. Length of Service in Current Position | 33. Length of Service in Occupation |
|---|---|---|---|
| 07 - 09 - 2012 | YES ☑  NO ☐ | Months 1   Years 0 | Months ___   Years 20 |

| 34. Employee Payroll Classification Code | 35. Occupation of Injured Worker |
|---|---|
| 1438 | Front End Loader Operator |

| 36. Rate of Pay at this Job | 37. Full Work Week is: | 38. Last Paycheck was: | 39. Is employee an Owner, Partner, or Corporate Officer? |
|---|---|---|---|
| $ 11 Hourly  $ 444 Weekly | 40 Hours  5 Days | $ 91.20 for 6 Hours  or ____ Days | YES ☐  NO ☑ |

| 40. Name and Title of Person Completing Form | 41. Name of Business |
|---|---|
| Luis Trevino, CEO | iWORKS Personnel, Inc. |

| 42. Business Mailing Address and Telephone Number  Street or P.O. Box | Telephone | 43. Business Location (If different from mailing address)  Number and Street |
|---|---|---|
| 5509 Blanco Road | ( 210 ) 541-0501 | |

| City | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|
| San Antonio | TX | 78216 | | | |

| 44. Federal Tax Identification Number | 45. Primary North American Industry Classification System Code (6 digit) | 46. Specific NAICS Code (6 digit) | 47. Texas Comptroller Taxpayer No. |
|---|---|---|---|
| 76-0797747 | 561320 | 561320 | 32026940489 |

| 48. Workers' Compensation Insurance Company | 49. Policy Number |
|---|---|
| Texas Mutual Insurance Company | STA-0001204473 20110904 |

| 50. Did you request accident prevention services in past 12 months? |
|---|
| YES ☐  NO ☑   If yes, did you receive them?  YES ☐  NO ☐ |

51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING)

X _____   Date _____



# TAB 9



## AGREEMENT FOR THE OPERATION OF HEAVY EQUIPMENT

iWORKS PERSONNEL (herein "iWORKS PERSONNEL') and ___Waste Mgt___ (herein "Customer"), agree to the following:

WHEREAS, Customer has requested that iWORKS PERSONNEL furnish certain of its employees to perform various services, which may include the operation of heavy equipment, which is owned controlled, or otherwise operated by Customer in its business; and

WHEREAS, iWORKS PERSONNEL is unwilling to provide employees to perform such services except upon the terms and conditions hereof;

NOW, THEREFORE, the parties agree as follows:

1. Customer acknowledges that iWORKS PERSONNEL is not responsible for and will not provide employees, which are licensed, certified, or trained in the operation of said equipment. Customer will be responsible for ensuring that employees supplied by iWORKS PERSONNEL are trained in the safe and proper operation of all heavy equipment operated in their assigned task.

2. iWORKS PERSONNEL shall not be responsible for any damage, injury, or claims to customer, customer's equipment, or third parties caused by or related to the operation of said heavy equipment by iWORKS PERSONNEL employees. It is further agreed the Customer shall indemnify and save iWORKS PERSONNEL harmless from any claims and expenses (including the expense of litigation) for damages asserted by Customer, its employees, agents, or third parties, in connection with any such loss.

3. The undersigned are expressly authorized to sign this Agreement for and on behalf of the Customer and iWORKS PERSONNEL.

_Paul Way_
Customer

_Paul Way_
Authorized Representative

_7/24/2012_
Date

iWORKS PERSONNEL

_____
Authorized Representative

_7/24/12_
Date

iWORKS PERSONNEL INC          Operation of Equipment Hold Harmless Agreement

DEFENDANT'S EXHIBIT D

# TAB 10



## Texas Department Of Insurance
Division of Workers' Compensation
Records Processing
7551 Metro Center Dr. Ste.100 • MS-94
Austin, TX 78744-1609
(800) 252-7031 (512) 804-4378 fax

| DWC Claim# |  |
|---|---|
| Carrier Claim# |  |

← Send the completed form to this address.

### Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease (DWC Form-041)

Claim for workers' compensation must be filed by the injured employee or by a person acting on the injured employee's behalf within one year of the date of injury or within one year from the date the injured employee knew or should have known the injury or disease may be work-related.

### I. INJURED EMPLOYEE INFORMATION

| Name (First, Middle, Last) Guillory, Mose Albert | Social Security Number 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 | Date of birth (mm/dd/yyyy) 2/19/1962 |
|---|---|---|

Address (street, city/town, state, zip code, county, country)
1230 Gentle Bend Dr., Missouri City, TX 77489, Fort Bend County, U.S.A

Phone Number (832)423-4959    E-Mail address n/a    Sex ☒Male ☐Female

Race / Ethnicity ☐White, not of Hispanic Origin ☒Black, not of Hispanic Origin ☐Hispanic ☐Asian or Pacific Islander

Do you speak English? ☒Yes ☐No    If no, specify language

Marital status ☒Married ☐Widowed ☐Separated ☐Single ☐Divorced

Do you have an attorney or other representation? ☒Yes ☐No    If yes, name of representative Bradford J. Gilde

Have you returned to work? ☐Yes ☒No    If returned to work, date returned (mm/dd/yyyy)    Work status ☐Regular ☐Restricted

Occupation at time of injury Front-End Loader Operator    Date of hire (mm/dd/yyyy) 7/9/12

Hired or recruited in Texas ☒Yes ☐No    Pre-tax wages (at the time of injury) $ 10.00 ☒Hourly ☐weekly ☐monthly

### II. INJURY INFORMATION

| I am reporting an ☒Injury or ☐occupational disease | Date of injury (mm/dd/yyyy) 8/5/12 | Time of injury 5:00pm |
|---|---|---|

First work day missed (mm/dd/yyyy) 8/6/12    Date injury was reported to the employer (mm/dd/yyyy) 8/5/12

Where did the injury occur? County Harris    State Texas    Country U.S.A.

If accident occurred outside of Texas, on what date did you leave Texas? (mm/dd/yyyy)

Witness(es) to the injury (list by name)

Describe cause of injury or occupational disease, including how it is work related On 8/5/12, Mr. Guillory was assigned to work at Waste Management. That day, Waste Mgmt. instructed Mr. Guillory to operate the Harris Baler. The product he was compacting got lodged so, as he was instructed, he climbed into the Baler to clear the jam. The machine turned on while he was inside, severing his right leg below the knee and severing all of the toes on his left foot.

Body part(s) affected by the injury Right leg was severed below the knee and all toes on left foot were severed.

If injury is the result of an occupational disease:
1. On what date was the employee last exposed to the cause of the occupational disease? (mm/dd/yyyy)
2. When did you first know occupational disease was work related? (mm/dd/yyyy)

### III. EMPLOYER INFORMATION (at the time of injury)

| Employer name iWorks Personnel Inc. | Employer address (street, city/town, state, zip code, county, country) 3609 West Ave, San Antonio, TX 78213, Bexar County, U.S.A. |
|---|---|
| Employer phone number (210) 541-0648 | Supervisor name Joe |

### IV. DOCTOR INFORMATION

| Name of treating doctor Milan Kumar Sen, M.D. | Phone number (713) 486-7500 |
|---|---|

Address (street, city/town, state, zip code) Memorial Hermann Hospital in the Texas Medical Center, 6410 Fannin St., Suite 950, Houston, TX 77030

Name of workers' compensation health care network, if any

8-30-12
Signature of injured employee or person filling out this form on behalf of injured employee    Date

MOSE GUILLORY
Printed name of injured employee or person filling out form on behalf of injured employee

DWC041 Rev. 0207

DEFENDANT'S EXHIBIT
E
1 of 1

TAB 11

Case No. 201261407

| MOSE A. GUILLORY AND MARY GUILLORY | § § § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | HARRIS COUNTY, TEXAS |
| V. | § | |
| | § | |
| IWORKS PERSONNEL, INC, ET AL. | § | 113TH JUDICIAL DISTRICT |

## Affidavit of Luis Trevino
### (Offered In Response to Plaintiffs' Motions for Summary Judgment)

STATE OF TEXAS §
HARRIS COUNTY §

Before me, the undersigned authority, on this day personally appeared Luis Trevino, who, being duly sworn, deposed as follows:

"My name is Luis Trevino. I am of sound mind, capable of making this affidavit and personally acquainted with the facts herein stated. I am the custodian of the records of iWORKS Personnel, Inc. ("iWORKS") which is a corporation duly incorporated and existing under the laws of the State of Texas. I am familiar with the books of said corporation.

The attached Worker's Compensation and Employer's Liability Insurance Policy Information Page issued by Texas Mutual Insurance Company (Exhibit A), is a true and correct copy of the policy issued to iWORKS Personnel, Inc. by Texas Mutual Insurance Company, and and such records are kept by iWORKS Personnel, Inc. in the regular course of business, and it is the regular course of business of iWORKS Personnel, Inc. for an employee or representative of the Plaintiff, with the knowledge of the act, event, condition or opinion, recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonably soon thereafter. The records attached hereto are the original or exact duplicates of the original.

iWORKS Personnel, Inc. ("iWORKS") is a temporary staffing company based out of San Antonio, Texas. We provide temporary employees to companies throughout Texas for assignments as short as one day or as long as six months. iWORKS' duty is to recruit, screen, interview, and assign its employees to perform the type of work requested by our clients. The work is to be performed at our client's facilities and under our client's direct supervision. iWORKS also pays the employee's wages, pays, withholds and transmits payroll taxes, provides unemployment insurance and worker's compensation benefits, and handles any unemployment and worker's compensation claims for employees we assign to our clients. iWORKS is not a staff leasing company or a PEO.

Since it has been in business iWORKS has continuously subscribed to Worker's Compensation insurance and has covered all of its temporary employees that it sends out on assignment. This is the standard course of business for a temporary staffing

DEFENDANT'S EXHIBIT

company. Unlike the larger staffing companies, small companies like iWORKS cannot deal directly with the insurance provider and is required to go through a broker. Our insurance broker has been the Lette Insurance Company out of Brownsville, Texas who obtained a policy for us through Texas Mutual Insurance. The standard procedure in setting iWORKS' Worker's Compensation premiums was through an annual audit in arrears based on the prior year's premiums, to be adjusted up or down in the subsequent year. We turn all of our audit materials over to our broker who then forwards all of the information needed for the audit to Texas Mutual.

The first knowledge that iWORKS had of an alleged gap in its worker's compensation coverage was when Mose Guillory's attorney made that allegation during my deposition in this case. Although Guillory's attorney presented what appeared to be a notice of termination, I had no knowledge of such notice. During that alleged period of time we had never missed a premium payment, we had received no communication from our broker regarding any termination, we had received no denial of any claims, and we never had problems obtaining Certificates of Insurance. Any termination notices issued by Texas Mutual were done in error, and it is my understanding that there has been no gap in our coverage, including the period when Mose Guillory has been injured. We have not filed a claim or notice on behalf of Mose Guillory with Texas Mutual because our agreement with Waste Management was that, for Mr. Guillory's duties, Waste Management's Worker's Compensation policy would be primary and Waste Management would indemnify iWORKS in the event there were any claims arising out of his employment with Waste Management. However, we have done nothing that would preclude Mose Guillory from seeking benefits under our Worker's Compensation policy. To my knowledge he has not made such an attempt.

Further Affiant Sayeth Not."

_____
Luis Trevino,
CEO of iWORKS Personnel, Inc.

Subscribed and sworn to before me this 12th day of June, 2014.

JILL P SMITH
My Commission Expires
November 16, 2017

_____
Notary Public, State of Texas

<span style="color:red">TAB 12</span>

**Case No. 201261407**

| | | |
|---|---|---|
| MOSE A. GUILLORY AND MARY GUILLORY | § § § | IN THE DISTRICT COURT OF |
| | § | HARRIS COUNTY, TEXAS |
| V. | § § | |
| IWORKS PERSONNEL, INC, ET AL. | § § | 113TH JUDICIAL DISTRICT |

**IWORKS PERSONNEL, INC.'S SUPPLEMENT TO
iWORKS' PLEA TO THE JURISDICTION**

DEFENDANTS, iWORKS PERSONNEL, INC., LUIS TREVINO, and HAYDEE GUTIERREZ (hereinafter "IWORKS") file this *Supplement to iWORKS' Plea to the Jurisdiction.* In support thereof it would show this honorable Court the following:

**I.**

iWORKS files this *Supplement to iWORKS' Plea to the Jurisdiction* in order to present to the Court additional evidence, recently obtained, which supports its *Plea to the Jurisdiction.*

**A. Exhibit G – Texas Mutual Claim**

Exhibit G is Texas Mutual Insurance Company's acknowledgement of a claim for Mose Guillory. This shows that there is a pending matter subject to the exclusive jurisdiction of the Texas Department of Insurance – Division of Workers' Compensation ("DWC"). Until this administrative process has run its course and Plaintiff has exhausted all of his administrative remedies, this Court lacks subject-matter-jurisdiction.

**B. Exhibit H – Correspondence from Gilde to the DWC**

Exhibit H is correspondence that was produced this week by Plaintiff's counsel. This is a letter from Brad Gilde to the DWC dated August 12, 2013. It is styled as a "Notice, Stay, and Preservation Letter." Although litigation was ongoing and both

iWORKS and Waste Management were represented by counsel,[1] neither Defendant was copied on this correspondence. Plaintiff attached two separate DWC-041 ("Employee's Claim for Compensation for a Work-Related Injury of Occupational Disease") forms to the letter. One names iWORKS as Plaintiff's employer and the other names Waste Management as his employer. Thus, Plaintiff's counsel recognized that Plaintiff had a claim for compensation under two separate worker's compensation policies and elected to forego pursuing those claims.

Gilde's letter to the DWC purports to reserve Plaintiff's right to seek relief from the DWC in the event he is unsuccessful in this Court. This approach turns the purpose of the entire worker's compensation system on its head. This letter demonstrates that Plaintiff was well aware of the requirements under the Texas Labor Code yet consciously chose to attempt to circumvent that process in hopes of a common law verdict. This is not the public policy of Texas.

This letter to the DWC admits that it "is submitted: (1) as a notice of claim for compensation . . . (3) as a preservation of right to file and seek a claim for compensation . . . and (5) pursuant to Tex. Labor Code §409.004." Ex. G (emphasis in original). The letter further states that ". . . this letter . . . is not an election or denial of a claim for coverage." *Id.* Plaintiff cannot hedge his bets with the administrative agency while improperly seeking a judicial remedy in this Court without first exhausting his administrative remedies. His failure to do so in this matter, despite knowing the administrative requirements set forth in the Texas Labor Code, deprives this Court of subject-matter jurisdiction over Plaintiff's claims.

**II.**

---

[1] At that time Aric Garza was counsel for iWORKS.

**Prayer**

Defendants iWORKS, Trevino, and Gutierrez pray that the Court grant the relief requested in their *Plea to the Jurisdiction* and for any and all other relief to which they are entitled in law or equity.

Respectfully submitted,

___/s/ David N. Anderson_____
David N. Anderson
TBN: 00797951
4309 Yoakum
Houston, TX 77006
(713) 521-6563 - Telephone
(866) 524-4294 – Fax
danderson@lodna.net

ATTORNEY FOR DEFENDANTS
IWORKS PERSONNEL, INC.,
LUIS TREVINO, and
HAYDEE GUTIERREZ

## CERTIFICATE OF SERVICE

I certify that on February 19, 2015 all parties were served a copy of the foregoing via eFILE in accordance with the Texas Rules of Civil Procedure as follows:

Bradford J. Gilde                    Nicholas A. Homan
Texas Bar No. 24045941               Texas Bar No. 24083194
bjg@gildelawfirm.com                 nah@gildelawfirm.com

GILDE LAW FIRM
55 Waugh, Suite 850
Houston, TX 77007
(281) 973-2772 – phone
(281) 973-2771 –facsimile
**Attorneys for Plaintiffs**

B. Lee Wertz, Jr.                    Carrie Schadle
Texas Bar No. 00797796               Texas Bar No. 24051618
lee.wertz@harrisonbettis.com         carrie.schadle@harrisonbettis.com

HARRISON, BETTIS, STAFF, MCFARLAND & WEEMS, L.L.P.
1415 Louisiana, 37th Floor
Houston, Texas  77002
(713) 843-7900 – phone
(713) 843-7901 – facsimile
**Attorneys for Defendant Waste Management, Inc., et al.**

                              /s/   David N. Anderson_____
                              David N. Anderson

# TAB 13



TexasMutual®
Insurance Company

Claim Number: 142-0000-952-677

Notification Date: 02/07/2014

## EMPLOYER'S FIRST REPORT OF INJURY

### INJURED EMPLOYEE

**Name:** MOSE GUILLORY
**SSN:** XXX-XX-6404
**Mailing Address:** 1230 GENTLE BEND DR
MISSOURI CITY TX 77489-4114

**County:** FORT BEND

**Physical Address:** 1230 GENTLE BEND DR
MISSOURI CITY TX 77489-4114

**County:** FORT BEND

**Home Phone:** (832)423-4959
**Date of Birth:** 02/19/1962
**Marital Status:** Married
**Gender:** Male          **Dependents:** 00
**Language:** English

### MEDICAL PROVIDER

**Name:** MILAR KUMAR SEN MD
**Tax ID:**
**Address:** 6410 FANNIN STE 950
HOUSTON TX 77030

**Phone:**                    **Fax:**

### ATTORNEY

**Represented by Attorney:**
**Name:**
**Phone:**

### BUSINESS/EMPLOYER

**Name:** PREFERRED STAFFING COMPANY LLC
**Address:**
PO BOX 100111
SAN ANTONIO TX 78201-1411

**Phone:** (956)459-5109  **Ext:**           **Fax:** (000)000-0000

**Policy Number:** 0001204473

**FEIN:** 760797747

**Location ID:**

### EMPLOYMENT

**Occupation:** FRONT END LOADER OPERATOR
**Hire Date:** 07/09/2012    **State:** TX
**Partner/Officer/Owner:**
**Date Lost Time Began:** 08/06/2012
**Return to Work Date:** 00/00/0000
**Last Paycheck was:** 91.21
**Wage:** 11.00
**Frequency:** Hourly

**Hours/Week:** 40.00       **Days/Week:** 5.00
**Period Start:** 00/00/0000  **Period End:** 00/00/0000
**Supervisor Name:** PAUL WARE
**Phone:**                  **Ext:**

### PREPARER OF REPORT

**Name:** LUIS TREVINO
**Phone:** (210)541-0501  **Ext:**        **Fax:**
**Email:**

### INJURY INFORMATION

**Date of Injury:** 08/05/2012    **Time:** 00:00
**Date Reported:** 08/05/2012
**Nature of Injury:** AMPUTATION

**Cause of Injury:** CAUGHT IN/UNDER OR BETWEEN NOC

**Part of Body:** MULTIPLE LOWER EXTREMITIES

**Fatality:** No

**Address Where Injury Occurred:**
4939 GASMER DR
HOUSTON TX 77035-5709

**County:** HARRIS
**Witnesses:**
**Name:** PAUL WARE
**Phone:**
**Name:** ABRAHAM HERNANDEZ
**Phone:**
**Name:**
**Phone:**

### How and Why the Injury/Illness Occurred

AMPUTATION RIGHT LOWER LEG; PARTIAL AMPUTATION LEFT FOOT; "HE ENCOUNTERED A JAM
OF THE PRODUCT COMING FROM A BIN THAT FEEDS ONTO THE CONVEYOR BELT...
...GUILLORY  LEFT THE OPERATOR'S STATION, AND PICKED UP A BROOM ON HIS WAY TO TH
E AREA WHERE THE BIN WAS LOCATED. HE THREW THE BROOM OVER THE METAL RAILS, THEN
REALIZED THAT THE CONVEYOR WAS STILL RUNNING, AND STOPPED THE CONVEYOR BELT. HE
WENT BACK TO THE AREA WHERE HE THREW THE BROOM OVER THE RAILS AND CLIMBED THE
RAILS AND WALKED ON THE CONVEYOR BELT TOWARDS THE BALER. HE CLIMED INTO THE
BALER IN AN ATTEMPT TO RETRIEVE THE BROOM. HE WAS UNSUCESSFUL, CLIMBING OUT AND



Continued

# TAB 14



55 WAUGH DRIVE • SUITE 850
Houston • Texas 77007
Toll Free 800-897-3106 • Facsimile 281-973-2771
Phone 281-973-2772 • Español 281-973-2773
www.GildeLawFirm.com

**GILDE**
LAW FIRM

BRADFORD J. GILDE
Attorney at Law
Licensed in TX, CA, & PA

bjg@gildelawfirm.com

August 2, 2013

***VIA FACSIMILE at (512) 804-4378:***
Texas Department of Insurance
Division of Workers' Compensation, Records Processing
7551 Metro Center Dr., Ste. 100, MS-94
Austin, TX 78744-1609
Fax (512) 804-4378

RE:    **Our Client:**    **Mose A. Guillory**
          **Date of Injury:**    **8/5/2012**

RE:    Mose A. Guillory—Tex. Labor Code §409.003, *et seq.* Notice, Stay, and Preservation Letter

RE:    **Cause No. 2012-61407;** *Mose A. Guillory, et al. v. iWorks Personnel, Inc., et al.;* **In the 113th District Court of Harris County, Texas.**

Dear Sir or Madam,

Please accept this letter, on behalf of our client, Mose A. Guillory, as satisfying any notice requirements under the Texas Labor Code § 409.003, *et seq.*

Also, please accept this letter as notice of an on-going civil suit styled as follows: **Cause No. 2012-61407;** *Mose A. Guillory, et al. v. iWorks Personnel, Inc., et al.;* In the 113th District Court of Harris County, Texas, which civil suit regards a work-related injury suffered by our client, Mose A. Guillory, on August 5, 2012. On that date, Mose Guillory was employed by iWorks Personnel, Inc., a Staff Leasing Company, and was performing work at a facility owned and operated by WM Recycle America, L.L.C. (a wholly owned subsidiary of Waste Management, Inc.) and located at 4939 Gasmer Dr., Houston, TX 77035.

The Defendants and potential employers in the above-referenced cause are as follows:

- **IWORKS PERSONNEL, INC.;**
- **WASTE MANAGEMENT, INC.;**
- **WASTE MANAGEMENT OF TEXAS, INC.; and**
- **WM RECYCLE AMERICA, LLC.**

Although still on-going, discovery in the above-referenced cause has identified Defendant-Employer **IWORKS PERSONNEL, INC.** as a non-subscriber under the Texas Workers Compensation Act, and, therefore, no claim for benefits can be made against this Defendant pursuant to Texas Labor Code § 409.003. In addition, Defendant-Employers **WASTE MANAGEMENT, INC.; WASTE MANAGEMENT OF TEXAS, INC.; and WM RECYCLE AMERICA, LLC** have denied "hiring" Mose A. Guillory; have denied and/or obscured whether Mose A. Guillory was an "employee" of Defendant-Employers at the time of injury; and have produced a "Worker's Compensation Policy" that obscures whether Defendant-

Employers were non-subscribers as to Mose A. Guillory, whether the facility in question was or was not a covered facility, whether Mose A. Guillory was or was not part of a covered work force, and whether a Defendant-Employer('s/s') status as a non-subscriber(s) prejudices/affects other Defendant-Employer(s) under SLSA. What's more, Defendant-Employers have failed to initiate a claim for compensation on behalf of Mose A. Guillory, despite their ability to do so pursuant to Texas Labor Code § 409.003 and despite their professed desire that any claim for compensation be covered pursuant to Texas Labor Code § 409.003 and a "Worker's Compensation Policy."

*Accordingly, there exists good faith and good cause to question the existence of a Texas Worker's Compensation Policy that covers our client, Mose A. Guillory, by Defendant-Employers, if any.*

*As such, this letter and attached DWC-41 Form filled out on behalf of Mose A Guillory is submitted: (1) as notice of a claim for compensation, (2) as a request for staying any limitation period regarding the filing of a claim for compensation, (3) as a preservation of right to file and seek a claim for compensation, (4) out of an abundance of caution, and (5) pursuant to Tex. Labor Code §409.004.* Tex. Labor Code §409.004 holds the following – to wit:

> Failure to file a claim for compensation with the division as required under Section 409.003 relieves the employer and the employer's insurance carrier of liability under this subtitle unless:
>
> (1) *good cause* exists for failure to file a claim in a timely manner; or
>
> (2) the employer or the employer's insurance carrier does not contest the claim.

*See* Tex. Labor Code §409.004 (emphasis added). That is, this letter and attached DWC-41 Form filled out on behalf of Mose A Guillory is not an election or a denial of a claim for coverage. Rather it is a notice, request for stay, and request for preservation of a claim for coverage and is proper pursuant to Tex. Labor Code §409.004, *et seq.* Please handle accordingly.

Thank you for your attention to this matter.

Respectfully,

Bradford J. Gilde

Enc:    Mose Guillory's DWC-41 Form



# Texas Department Of Insurance
Division of Workers' Compensation
Records Processing
7551 Metro Center Dr., Ste.100 • MS-94
Austin, TX 78744-1609
(800) 252-7031  (512) 804-4378 fax    www.tdi.state.tx.us

| DWC Claim# |
|---|
| Carrier Claim# |

← Send the completed form to this address.

## Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease (DWC Form-041)

Claim for workers' compensation must be filed by the injured employee or by a person acting on the injured employee's behalf within one year of the date of injury or within one year from the date the injured employee knew or should have known the injury or disease may be work-related.

### I. INJURED EMPLOYEE INFORMATION

| Name (First, Middle, Last) Guillory, Mose Albert | Social Security Number 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 | Date of birth (mm/dd/yyyy) 2/19/1962 |
|---|---|---|

Address (street, city/town, state, zip code, county, country)
1230 Gentle Bend Dr., Missouri City, TX 77489, Fort Bend County, U.S.A

| Phone Number (832)423-4959 | E-Mail address n/a | Sex [X]Male  [ ]Female |
|---|---|---|

Race / Ethnicity  [ ]White, not of Hispanic Origin  [X] Black, not of Hispanic Origin  [ ]Hispanic  [ ]Asian or Pacific Islander

Do you speak English? [X]Yes  [ ]No    If no, specify language

Marital status  [X]Married  [ ]Widowed  [ ]Separated  [ ]Single  [ ]Divorced

Do you have an attorney or other representation?  [X]Yes  [ ]No    If yes, name of representative Bradford J. Gilde

| Have you returned to work? [ ]Yes  [X]No | If returned to work, date returned (mm/dd/yyyy) | Work status [ ]Regular  [ ]Restricted |
|---|---|---|

| Occupation at time of injury Front-End Loader Operator | Date of hire (mm/dd/yyyy) 7/9/12 |
|---|---|

| Hired or recruited in Texas [X] Yes  [ ]No | Pre-tax wages (at the time of injury) $ 10.00 [X]hourly  [ ]weekly  [ ]monthly |
|---|---|

### II. INJURY INFORMATION

| I am reporting an [X]injury or [ ]occupational disease | Date of injury (mm/dd/yyyy) 8/5/12 | Time of injury 5:00pm |
|---|---|---|

| First work day missed (mm/dd/yyyy) 8/6/12 | Date injury was reported to the employer (mm/dd/yyyy) 8/5/12 |
|---|---|

| Where did the injury occur?  County Harris | State Texas | Country U.S.A. |
|---|---|---|

If accident occurred outside of Texas, on what date did you leave Texas? (mm/dd/yyyy)

Witness(es) to the injury (list by name)

Describe cause of injury or occupational disease, including how it is work related On 8/5/12, Mr. Guillory was assigned to work at Waste Management and was injured while operating a baler resulting in the amputation of right leg below the knee and amputation of half of the foot on left foot.

Body part(s) affected by the injury Right leg was severed below the knee and all toes on left foot were severed.

If injury is the result of an occupational disease:
1. On what date was the employee last exposed to the cause of the occupational disease? (mm/dd/yyyy)
2. When did you first know occupational disease was work related? (mm/dd/yyyy)

### III. EMPLOYER INFORMATION (at the time of injury)

| Employer name iWorks Personnel, Inc. | Employer address (street, city/town, state, zip code, county, country) 3609 West Ave, San Antonio, TX 78213, Bexar County, U.S.A. |
|---|---|
| Employer phone number (210) 541-0648 | Supervisor name  Joe Fanning |

### IV. DOCTOR INFORMATION

| Name of treating doctor Milan Kumar Sen, M.D. | Phone number (713) 486-7500 |
|---|---|

Address (street, city/town, state, zip code) Memorial Hermann Hospital in the Texas Medical Center, 6410 Fannin St., Suite 950, Houston, TX 77030

Name of workers' compensation health care network, if any

_____     8/2/2013
Signature of injured employee or person filling out this form on behalf of injured employee     Date

Bradford J. Gilde
Printed name of injured employee or person filling out form on behalf of injured employee



DWC041 Rev. 03/07

Page 1 of 1

GUILLORY 000523



# Texas Department Of Insurance

Division of Workers' Compensation
Records Processing
7551 Metro Center Dr. Ste.100 • MS-94
Austin, TX 78744-1609
(800) 252-7031  (512) 804-4378 fax   www.tdi.state.tx.us

| DWC Claim# |
|---|
| Carrier Claim# |

← Send the completed form to this address.

## Employee's Claim for Compensation for a Work-Related Injury or Occupational Disease (DWC Form-041)

Claim for workers' compensation must be filed by the injured employee or by a person acting on the injured employee's behalf within one year of the date of injury or within one year from the date the injured employee knew or should have known the injury or disease may be work-related.

### I. INJURED EMPLOYEE INFORMATION

| Name (First, Middle, Last) Guillory, Mose Albert | Social Security Number 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 | Date of birth (mm / dd / yyyy) 2/19/1962 |
|---|---|---|

Address (street, city/town, state, zip code, county, country)
1230 Gentle Bend Dr., Missouri City, TX 77489, Fort Bend County, U.S.A

| Phone Number (832)423-4959 | E-Mail address  n/a | Sex  [X]Male  [ ]Female |
|---|---|---|

Race / Ethnicity  [ ]White, not of Hispanic Origin  [X]Black, not of Hispanic Origin  [ ]Hispanic  [ ]Asian or Pacific Islander

Do you speak English? [X]Yes  [ ]No  If no, specify language

Marital status  [X]Married  [ ]Widowed  [ ]Separated  [ ]Single  [ ]Divorced

Do you have an attorney or other representation?  [X]Yes  [ ]No  If yes, name of representative Bradford J. Gilde

Have you returned to work?  [ ]Yes  [X]No  If returned to work, date returned (mm/dd/yyyy)  Work status [ ]Regular  [ ]Restricted

| Occupation at time of injury Front-End Loader Operator | Date of hire (mm / dd / yyyy) 7/9/12 |
|---|---|

Hired or recruited in Texas [X] Yes  [ ]No  Pre-tax wages (at the time of injury) $ 10.00  [X]hourly  [ ]weekly  [ ]monthly

### II. INJURY INFORMATION

| I am reporting an [X]injury or [ ]occupational disease | Date of injury (mm / dd / yyyy) 8/5/12 | Time of injury 5:00pm |
|---|---|---|

| First work day missed (mm / dd / yyyy) 8/6/12 | Date injury was reported to the employer (mm / dd / yyyy) 8/5/12 |
|---|---|

| Where did the injury occur?  County Harris | State Texas | Country U.S.A. |
|---|---|---|

If accident occurred outside of Texas, on what date did you leave Texas? (mm/dd/yyyy)

Witness(es) to the injury (list by name)

Describe cause of injury or occupational disease, including how it is work related On 8/5/12, Mr. Guillory was assigned to work at Waste Management and was injured while operating a baler resulting in the amputation of right leg below the knee and amputation of half of the foot on left foot.

Body part(s) affected by the injury  Right leg was severed below the knee and all toes on left foot were severed.

If injury is the result of an occupational disease:
1. On what date was the employee last exposed to the cause of the occupational disease? (mm / dd / yyyy)
2. When did you first know occupational disease was work related? (mm / dd / yyyy)

### III. EMPLOYER INFORMATION (at the time of injury)

| Employer name  WM Recycle, LLC | Employer address (street, city/town, state, zip code, county, country) 1001 Fannin St., #4000, Houston, TX 77002 |
|---|---|
| Employer phone number (713)394-2340 | Supervisor name  Joe Fanning |

### IV. DOCTOR INFORMATION

| Name of treating doctor Milan Kumar Sen, M.D. | Phone number (713) 486-7500 |
|---|---|

Address (street, city/town, state, zip code) Memorial Hermann Hospital in the Texas Medical Center, 6410 Fannin St., Suite 950, Houston, TX 77030

Name of workers' compensation health care network, if any

Signature of injured employee or person filling out this form on behalf of injured employee

Date 8/2/2013

Bradford J. Gilde
Printed name of injured employee or person filling out form on behalf of injured employee

GUILLORY 000524

TAB 15

CAUSE NO. 2012-61407

| | | |
|---|---|---|
| MOSE A. GUILLORY and MARY GUILLORY, | § | IN THE DISTRICT COURT |
| *Plaintiffs* | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| v. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| | § | |
| IWORKS PERSONNEL, INC.; *et al.* | § | |
| *Defendants* | § | 113th JUDICIAL DISTRICT |

## PLAINTIFFS' RESPONSE TO IWORKS DEFENDANTS' PLEA TO THE JURISDICTION

COME NOW, MOSE A. GUILLORY and MARY GUILLORY and file this **PLAINTIFFS' RESPONSE TO IWORKS DEFENDANTS' PLEA TO THE JURISDICTION** (hereinafter "Response") asking the Court to DENY iWorks Defendants' Plea to the Jurisdiction, and in support of same, Plaintiffs respectfully show this Court as follows:

> **"[A] negligence claim is outside the [Workers' Compensation] Commission's exclusive jurisdiction. The Commission's exclusive jurisdiction extends to claims for benefits under workers' compensation insurance policies."**

*In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 81 (Tex. App.—Austin 2004, pet. denied) (orig. proceeding) (citing Tex. Lab. Code Ann. § 408.001(a)).

> **The Commission's exclusive jurisdiction, however, does not extend to all cases that touch on workers' compensation issues. *The district courts decide disputes about whether the Act's exclusive remedy provision applies as a defense to an injured worker's personal injury suit.***

*AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d 30, 38-39 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (emphasis added) (citing *Garza v. Excel Logistics, Inc.*, 161 S.W.3d 473, 481 (Tex. 2005) (holding that company did not establish that it was covered by workers' compensation insurance for temporary employee's injury because, even if temporary worker agency was contractually obligated to

provide workers' compensation insurance that named company as insured, company produced no evidence of such policy); *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 149 (Tex. 2003)).

## I. INTRODUCTORY FACTS

1. iWorks Defendants' PTJ begins by claiming that "the great bulk of legal efforts expended in this case are the direct result of Plaintiffs' numerous and continued attempts to circumvent the Texas Labor Code in the face of well settled law and clear public policy dictating otherwise." This is but one of many brazenly false statements advanced by iWorks Defendants in their meritless Plea to the Jurisdiction.

2. Never mind the fact that iWorks Defendants have claimed to be workers' compensation subscribers for 2 ½ years but they have NEVER produced a valid workers' compensation policy or produced *proof* of a valid workers' compensation policy. In fact, iWorks Defendants claimed to be workers' compensation subscribers for 2 ½ years before taking any action to initiate a workers' compensation claim for Mose Guillory on an invalid, terminated policy.

3. Nonetheless, Plaintiffs can only hope that this Plea to the Jurisdiction is truly iWorks Defendants' last ditch effort in a desperate pattern of dilatory tactics designed to forestall the inevitable trial in this case—to wit:

4. On **August 21, 2014**, the Court signed a "Second Partial Summary Judgment" Order largely denying iWorks Defendants' summary judgment motions. The result of the summary judgment motion practice revealed that iWorks Defendants are Non-Subscribers.

5. **Immediately following the Court's denial of iWorks Defendants' summary judgment motions, iWorks Defendants took a number of actions – the effect of which delayed or were designed to delay the impending trial.**

6. **DILATORY ACTION #1:** On **September 2, 2014,** iWorks Defendants filed a Motion for Continuance seeking a 90-day trial continuance based on the health of counsel. On, September 29, 2014, the Court signed an order granting iWorks' Motion for Continuance and gave Counsel for iWorks Defendants a 168-day trial continuance.

7. **DILATORY ACTION #2:** On **November 3, 2014**, forty-two (42) days after Counsel for iWorks

Defendants' scheduled back surgery, iWorks Defendants' filed a Motion to Reconsider the NEMSJs and TMSJs ruled on in this Court's 2nd Partial Summary Judgment Order.

8.      On **December 4, 2014**, this Court signed an Order denying iWorks Defendants' Motion to Reconsider.

9.      **DILATORY ACTION #3:** On **December 8, 2014,** iWorks Defendants filed their Third Amended Answer and Cross-Claims against WM Defendants.  iWorks Defendants' cross-claims contain Declaratory Judgment and Breach of Contract claims against WM Defendants.

10.      **This lawsuit was filed on October 17, 2012, nearly 2 ½ years ago.**  Yet, iWorks Defendants participated fully in pre-trial activities for over 2 years before they decided to assert non-compulsory cross-claims *only 3 months before trial.*

11.      **DILATORY ACTION #4:** On **December 12, 2014,** the Court held an oral hearing on WM Defendants' Motion to Sever.  At that hearing, Counsel for iWorks orally represented that he intended to file a Motion to Abate trial until any alleged workers' compensation claim is resolved.

12.      On January 28, 2015, Waste Management, Inc. ("WM") filed a Traditional Motion for Summary Judgment against iWorks Personnel, Inc. and its newly asserted cross-claims.  WM Defendants' TMSJ is set for hearing on March 27, 2015.

13.      Plaintiffs and WM Defendants seem to be in some agreement that Plaintiffs' claims against iWorks Defendants ought to be tried separately from iWorks Defendants' cross-claims against WM Defendants.

14.      As such, on **February 9, 2015**, Plaintiffs filed their Partially Unopposed Motion for Separate Trials asking the Court to separate the trial of Plaintiffs' claims and iWorks Defendants' cross-claims, thereby avoiding any further delay of Plaintiffs' day in court.  Plaintiffs set their Motion for Separate Trials for hearing on **February 20, 2015.**

15.      **DILATORY ACTION #5:** Plaintiffs attempted to confer with Counsel Defendants regarding Plaintiffs' Motion for Separate Trials.  WM Defendants indicated they were "unopposed." Plaintiffs received no response from iWorks Defendants.

16. **DILATORY ACTION #6:** On **February 7, 2015,** iWorks Defendants served a letter and an *unsigned, undated*, DWC Form-001 (Notice of Injury). This was done in an attempt to create a doomed workers' compensation claim on an insurance policy that had been cancelled at time of the incident in question.

17. **DILATORY ACTION #7:** On **February 13, 2015,** iWorks Defendants filed their improper Plea to the Jurisdiction asking this Court to hold that a non-subscribing employer may invoke Division of Workers' Compensation (hereinafter "DWC") jurisdiction and gain dismissal simply by filing a claim on a workers' compensation policy that was ineffective and invalid on the injury date.

18. As is clear from the pattern of actions summarized above, iWorks Defendants' PTJ is but their latest attempt to have this Court delay Plaintiffs' day in Court and reward iWorks for being a non-subscribing company that, quoting CEO Luis Trevino, "JUST BLEW IT" and "DIDN'T DO ITS JOB." *See Deposition of Luis Trevino.*

## II. FACTS RELEVANT TO PLAINTIFFS' RESPONSE

19. On or about July 9, 2012, Plaintiff was hired by Defendant IWORKS PERSONNEL, INC. ("iWorks" or "IWORKS") and was assigned to work for the WM Defendants at a "Material Recovery Facility" located at 4939 Gasmer Drive, Houston Texas 77035 (hereinafter "Facility" or "Gasmer MRF").

20. On August 5, 2012, after working at the Gasmer MRF for approximately one month, Plaintiff Mose Guillory was catastrophically injured while operating a Harris Centurion Baler in the performance of his job for Defendants.

21. Prior to August 5, 2012, Plaintiff had not received any training, instruction, manuals or guidelines on how to properly and safely operate the baler. Moreover, as evidenced by the OSHA Citations issued to WM Defendants, Plaintiff Mose Guillory was never provided any training on proper Lock Out/Tag Out procedures.

22. On page 4 of their PTJ, iWorks Defendants readily admit: ***"IWORKS provides no site specific training to the temporary workers' that it provides to its clients."*** *See* iWorks PTJ at p. 4. However, the "Master Agreement" between iWorks Defendants and WM Defendants provided that iWorks was

*"obligated to ensure that Personnel supplied to Waste Management are fully qualified and trained for the jobs they are being supplied to perform and that they have been given safety training that meets or exceeds the training Waste Management provides its employees for the same or similar jobs."* See **EXHIBIT C** at p. 2.

23.     Therefore, on October 17, 2012, Plaintiffs filed their Original Petition against Defendant iWorks and WM Defendants.

24.     In its PTJ, iWorks Defendants claim that "Plaintiff's counsel has had two separate worker's compensation policies which would provide [Mose Guillory] with worker's compensation coverage." *See* iWorks PTJ at p. 1.  **THIS IS FALSE.**

25.     First, the "policy" iWorks Defendants are referring to, and which they attach as Exhibit A to their PTJ, is not a policy at all. Exhibit A to iWorks Defendants' PTJ is an "Information Page" and it references an insurance policy with Texas Mutual belonging to "Preferred Staffing Company, LLC." *See* iWorks PTJ, Exhibit A.  **In 2 ½ years of litigation, iWorks Defendants have NEVER produced a workers' compensation *policy* allegedly covering iWorks Personnel, Inc.**

26.     The Texas Mutual information page references policy number **"STA-0001204473 20110904."** *See* iWorks PTJ, Exhibit A.  Counsel for iWorks Defendants attempted to initiate a claim on this policy on our about February 5, 2015, as seen in Exhibit C to iWorks PTJ.

27.     However, on **October 31, 2013,** Plaintiffs executed a Deposition by Written Questions on 2 entities: Texas Mutual Insurance Co. and Lette Insurance Agency.  Texas Mutual is the carrier on iWorks Defendants' purported insurance policy and Lette Insurance is the agency through which iWorks Defendants attempted to procure same.

28.     Regarding iWorks Defendants' policy number **STA-0001204473 20110904**, Texas Mutual testified as follows:

> 18. Please fully identify and explain in detail any agreements or contracts for insurance ever existing between your company and **iWorks.** As part of this answer, explain the following: when such contracts began; the details of intended and actual coverage; the details of intended and actual exclusions; what specific entities were covered, if any; what specific employees were covered, if any; what specific workers compensation class codes were covered, if any; what specific job sites or locations were covered, if any; what specific activities were covered, if any; whether the identification of specific entities, employees, workers compensation class codes, job sites and locations, and/or activities were required for contracting/coverage; the amount or policy limits of such coverage, if any; and when such contracts or policies ended, expired, or were terminated, if ever. Please attach additional sheets of paper for your answer, if necessary.
>
> Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.
>
> Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

*See* **EXHIBIT A** at p. 6.

29.     Regarding iWorks Defendants ineffective policy, Texas Mutual further testified as follows:

> 27.     ADMIT or DENY that Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; explain how the contract was cancelled; and the effect of cancelation regarding coverage for Preferred Staffing or iWorks to your knowledge. Please attach additional sheets of paper for your answer, if necessary.
>
> Answer: Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

*See* **EXHIBIT A** at p. 10.

30.     **Finally, Texas Mutual confirmed that iWorks Defendants were non-subscribers on the date of the incident in question—to wit:**

29. ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, **iWorks was a "nonsubscriber,"** under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing or iWorks from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer: Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

*See* **EXHIBIT A** at pp. 10-11.

31. The foregoing testimony was sworn and is admissible under the Texas Rules of Evidence—to wit:

Witness(Custodian of Records)

I, Albert Santini, a Notary Public in the State of Texas do hereby certify that the foregoing answers of the witness were made by the said witness and sworn to and subscribed before me. The records attached hereto are exact duplicates of the original records.

SWORN AND SUBSCRIBED BEFORE ME on this the 31st day of *October*, 2013 to certify which witness my hand and seal of office.

Notary Public in and for the State of Texas

ALBERT SANTINI
Notary Public, State of Texas
My Commission Expires
January 28, 2017

*See* **EXHIBIT A** at p. 16.

32. In relevant part, Texas Mutual's **"NOTICE OF CANCELLATION"** of iWorks Defendants' purported workers' compensation insurance policy reads as follows:



Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

TYPE OF POLICY:
Workers' Compensation and
Employers Liability Coverage

POLICY NUMBER:
0001204473

POLICY PERIOD:
9-04-2011    to    9-04-2012

DATE OF NOTICE:
6-11-2012

CANCELLATION WILL TAKE EFFECT AT:
7-16-2012    12:01 A.M.
(DATE)    (HOUR-STANDARD TIME)

CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**EXHIBIT A**, Bates No. **TXM00318** (p. 340 of 418).

33.     When presented with this information at a summary judgment hearing, Your Honor inquired as to whether there was any evidence proving that iWorks Defendants had cured their violations and renewed their cancelled policy prior to Mose Guillory's incident on **August 5, 2012.**   The answer is "NO."   A deficiency letter dated **August 24, 2012** proves that iWorks Defendant had not revived their cancelled policy and were still non-subscribers on August 5, 2012.  *See* **EXHIBIT A**, Bates No. **TXM00355–360** (p. 377-418).

34.     In their PTJ, iWorks Defendants claim "[t]he only plausible explanation for Guillory's failure to even try to claim his benefits under the Texas Workers' Compensation Act is that he and his counsel decided early in the course of this litigation to try and circumvent the worker's compensation system in an attempt to recover common law damages." iWorks PTJ at p. 12.

35.     What truly happened is the following: Counsel for Plaintiffs attempted to confirm workers' compensation coverage for iWorks or Preferred Staffing through the Texas Department of Insurance website—there was no coverage.  Counsel for Plaintiffs then called the Texas Department of Insurance to confirm coverage for iWorks or Preferred Staffing—there was no coverage.

36.     Plaintiffs then filed this lawsuit and served Requests for Disclosures in October of 2012. However, Counsel for iWorks did not produce the cancelled policy information page until Luis Trevino's deposition in August of 2013. Thereafter, one brief phone call to the DWC casted serious doubt as to the effectiveness of the policy underlying iWorks's policy information page. At last, the foregoing deposition testimony from Texas Mutual and Lette Insurance put the final nail in the coffin regarding iWorks Defendants' status as non-subscribers.

37.     iWorks Defendants have been in possession of the foregoing testimony and documents since October of 2013. The Texas Mutual and Lette Insurance's responses to DWQ clearly disprove iWorks Defendants' untenable position that they are workers' compensation "subscribers." iWorks Defendants only attempt to disprove the foregoing comes in the form of Luis Trevino's Affidavit, attached as Exhibit F to iWorks PTJ.

38.     In his affidavit, Luis Trevino claims that Texas Mutual's cancellation of coverage was incorrect because he never received notice. The Notice of Cancellation above shows that it was sent via certified mail to iWorks Personnel, Inc.'s registered address. *See* **EXHIBIT A**, Bates No. **TXM00318** (p. 340 of 418). Lette Insurance's responses to DWQ prove that they were in receipt of the required Notices of Cancellation as iWorks Defendants' insurance agent. *See* **EXHIBIT B,** Bates No. **000008** (p. 48 of 138). Moreover, documents produced by Lette Insurance in response to DWQ prove that iWorks President Haydee Gutierrez was in direct contact with Texas Mutual during this cancellation period. *See* **EXHIBIT B**, Bates No. **000015** (p. 55 of 138).

39.     This all leads to one, indisputable conclusion:

**IWORKS DEFENDANTS ARE NON-SUBSCRIBERS AS TO MOSE GUILLORY.**

40.     Plaintiffs Mose and Mary Guillory have endured indescribable suffering and despair to reach this point in their case. The road has been hard fought, and their day in court is well earned. iWorks Defendants now seek to rob the Guillory's of their Constitutional Right to try their case to a jury by disingenuously filing a claim on a dead workers' compensation policy.

41. Texas Mutual confirms that iWorks Defendants were non-subscribers as to Mose Guillory, and there will never be workers' compensation benefits paid under policy number STA-0001204473 20110904. What's worse is that iWorks Defendants and their Counsel know the policy at issue was ineffective on the date of the incident in question and they know that the claim would be denied even before it was filed.

42. Because iWorks Defendants' PTJ is untimely, improper, and meritless, Plaintiffs ask this Court to DENY iWorks Defendants' PTJ.

### III. PLEA TO THE JURISDICTION STANDARD

43. Plaintiffs incorporate all preceding paragraphs by reference as though fully set forth herein.

44. When a defendant asks the court to dismiss for lack of subject-matter jurisdiction, the court must overrule the motion unless the pleadings and the parties' evidence clearly demonstrate that the court lacks jurisdiction. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000); *see, e.g.*, *State v. Sledge*, 36 S.W.3d 152, 155 (Tex. App.—Houston [1st Dist.] 2000, pet. denied) (trial court conducted hearing and received oral testimony, affidavits, exhibits, and stipulations).

45. In ruling on the motion, the court is required to construe the pleadings in the plaintiff's favor. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). ***The plea to the jurisdiction standard mirrors the summary-judgment procedure under TRCP 166a(c).*** *Mission Consol. ISD v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012).

46. **DEFENDANTS' BURDEN.** A defendant is entitled to summary judgment ONLY when he/she/it, as a matter of law, disproves one or more of the essential elements of each of the plaintiff's causes of action or pleads and conclusively establishes each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex. 1991) (emphasis added); *Peeler v. Hughes & Luce,* 868 S.W.2d 823, 827 (Tex. App.—Dallas 1993), *aff'd,* 909 S.W.2d 494 (Tex. 1995); *International Union UAW Local 119 v. Johnson Controls, Inc.*, 813 S.W.2d 558, 563 (Tex. App.—Dallas 1991, writ denied); *Traylor v. Unitedbank Orange,* 675 S.W.2d 802, 804 (Tex. App.—Beaumont 1984, writ ref'd n.r.e.).

47. **DEFENDANTS' BURDEN – CONT.** A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the summary judgment proof. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex. 1982) (emphasis added).

48. **DEFENDANTS' BURDEN – CONT.** When evaluating a Traditional Motion for Summary Judgment based on summary judgment evidence, the trial court MUST do the following:

   a. ***Assume ALL of the nonmovant's proof is true.*** *Limestone Prods. Distrib., Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002); *Shah v. Moss*, 67 S.W.3d 836, 842 (Tex. 2001); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548-49 (Tex. 1985) (emphasis added).

   b. ***Make EVERY reasonable inference in favor of the nonmovant.*** *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 549 (Tex. 1985) (emphasis added).

   c. ***Resolve ALL doubts about the existence of a genuine issue of material fact against the movant.*** *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *Johnson Cty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Nixon v. Mr. Prop. Mgmt.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

*See also Rhône-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Collins v. County of El Paso,* 954 S.W.2d 137, 145 (Tex. App.—El Paso 1997, pet. denied).

49. **DEFENDANTS' BURDEN – CONT.** Regarding the "Exclusive Remedy" defense, the defendant must (1) conclusively prove that it was the plaintiff's employer within the meaning of the TWCA, (2) conclusively prove that it subscribed to workers' compensation insurance as to the injured employee. *Western Steel Co. v. Altenburg*, 206 S.W.3d 121, 123 (Tex. 2006); *see also Port Elevator-Brownsville v. Casados*, 358 S.W.3d 238 (Tex. 2012).

50. **PLAINTIFFS' BURDEN.** When the movant does not meet its burden of proof, the burden does not shift to the nonmovant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979). A nonmovant in a traditional summary-judgment proceeding is not required to produce summary-judgment evidence until after the movant establishes it is entitled to summary judgment as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex. 1989) (emphasis added). After the movant has established conclusively as a

matter of law that movant is entitled to summary judgment, only then shall a nonmovant be responsible for producing summary judgment evidence to raise a fact issue in a response.

51.     **PLAINTIFFS' RESPONSE.**   Once the movant establishes that he is entitled to summary judgment, the burden shifts to the non-movant to show why summary judgment should be avoided in the non-movant's response.  *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex. 1989).  The response may be filed by mailing it on the day it is due, and it is timely filed even if it is reaches the court less than seven days before the hearing, as long as it is received by the clerk no more than ten days after the due date.  TRCP 5, 21a; *Geiselman v. Cramer Fin. Grp.,* 965 S.W.2d 532, 535 (Tex. App.—Houston [14th Dist.] 1997, no writ); *Clendennen v. Williams,* 898 S.W.2d 257, 259 (Tex. App.—Texarkana 1995, no writ).

52.     In TRCP 21a, the three-day rule does not require the non-movant to mail the response ten days before the hearing.  *Holmes v. Ottawa Truck, Inc.,* 960 S.W.2d 866, 869 (Tex. App.—El Paso 1997, pet. denied).  What's more, the trial court must render a summary judgment on the pleadings on file at the time of the hearing.  TRCP 166a(c); *Cluett v. Medical Prot. Co.,* 829 S.W.2d 822, 826-26 (Tex. App.—Dallas 1992, writ denied) (holding that a party may file an amended pleading after it files its motion or response).

53.     ***If the facts are disputed, the court cannot grant the plea to jurisdiction, and the issue must be resolved by the fact-finder at trial.***  *Mission Consol.,* 372 S.W.3d at 635; *University of Tex. v. Hayes,* 327 S.W.3d 113, 116 (Tex. 2010).

54.     **EVIDENCE.**  The trial court may consider evidence in ruling on a plea to the jurisdiction and must consider evidence when necessary to resolve the jurisdictional issue raised.  *Bland ISD v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000).  When jurisdiction involves the merits of the case, the trial court <u>must</u> review the evidence to determine whether there is a fact issue.  *Texas Dept. of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex. 2004).

**IV.     PLEA TO THE JURISDICTION – EVIDENCE ATTACHED**

- **EXHIBIT A:   DWQ Responses from Texas Mutual Insurance Company**

- **EXHIBIT B:   DWQ Responses from Lette Insurance Agency**

- **EXHIBIT C:** Pages from WM and iWorks "Master Agreement" (WMRA 000022–23)

## V.    ARGUMENT & AUTHORITIES

55.    Plaintiffs incorporate all preceding paragraphs by reference as though fully set forth herein.

56.    iWorks Defendants' PTJ is meritless and should be denied for a at least three reasons.  The bolded, centered case quotations above are enough for this Court to summarily deny iWork Defendants' baseless Plea to the Jurisdiction.  However, Plaintiffs provide additional reasons and support for this Court's denial of iWorks Defendants' PTJ, as specified below.

57.    First, the Court should deny iWorks Defendants' PTJ because the DWC does not have exclusive jurisdiction over an injured employee's suit for common-law damages.  iWorks Defendants' entire PTJ is based on one premise—that the Division of Workers' Compensation has exclusive jurisdiction over Plaintiffs' claims simply because iWorks Defendants filed a notice of injury against a workers' compensation policy that was invalid, ineffective, and terminated on the date of the injury.  However, as explained below, this argument is unavailing and this Court should deny iWorks Defendants' PTJ.

58.    Second, the Court should deny iWorks Defendants' PTJ because iWorks Defendants have failed to conclusively prove that they were workers' compensation subscribers at the time of the incident in question.  iWorks Defendants cannot invoke the jurisdiction of the DWC without proving that they have some, effective workers' compensation insurance coverage.  This Court should deny iWorks Defendants' PTJ because it seeks dismissal so that the DWC can determine whether there are benefits under a policy that was invalid, ineffective, and terminated long before the incident in question.

59.    Third, in the alternative, this Court should deny iWorks Defendants' PTJ because Plaintiffs' claims fall under the exceptions to exhaustion of administrative remedies.

     a.  *THE COURT SHOULD DENY IWORKS DEFENDANTS' PTJ BECAUSE THE DWC DOES NOT HAVE EXCLUSIVE JURISDICTION OVER AN INJURED EMPLOYEE'S SUIT FOR COMMON-LAW DAMAGES AGAINST HIS NON-SUBSCRIBING EMPLOYER.*

60.    **DISTRICT COURTS HAVE GENERAL JURISDICTION.** Trial courts are courts of general jurisdiction. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000).  Article V, Section 8 of the Texas Constitution provides that a district court has jurisdiction over "all actions, proceedings, and remedies,

except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." Tex. Const. art V, § 8.

61.     Absent a contrary showing, courts of general jurisdiction (i.e. Trial Courts) are presumed to have subject matter jurisdiction. *AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d 30, 37 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (citing *Dubai Petroleum Co.*, 12 S.W.3d at 75). There is no similar presumption that administrative agencies are authorized to resolve disputes. *Subaru of Am.*, 84 S.W.3d at 220.

62.     **DWC EXCLUSIVE JURISDICTION.**   Whether an agency has exclusive jurisdiction depends upon statutory interpretation, and is a question of law to be reviewed de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex. 2002).

63.     Multiple Texas courts have examined the DWC's exclusive jurisdiction and have universally held that it extends only to claims for benefits under workers' compensation insurance policies.  *See In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 78 (Tex. App.—Austin 2004, pet. denied); (DWC does not have exclusive jurisdiction over employee's negligence claim); *Nat'l Am. Ins. Co. v. Tex. Prop. & Cas. Ins. Guar. Ass'n for Paula Ins. Co.*, 2013 Tex. App. LEXIS 10865, 15 (Tex. App.—Austin 2013, no pet.) (DWC's exclusive jurisdiction does not extend to the right to reimbursement for a claim paid by a carrier.); *see also AMS Constr. Co.*, 357 S.W.3d at 39.

> The Commission's exclusive jurisdiction . . . does not extend to all cases that touch on workers' compensation issues. **The district courts decide disputes about whether the Act's exclusive remedy provision applies as a defense to an injured worker's personal injury suit."**

*AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d at 38-39.

64.     As such, the only civil claims the DWC has jurisdiction over are those involving claims for wrongful deprivation of workers' compensation benefits.  *AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d at 38; (citing *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d at 804 (holding that a claim for wrongful deprivation of workers' compensation benefits brought by an injured worker against an insurance carrier fall within the Commission's exclusive jurisdiction.); *In re Liberty Mut. Fire Ins. Co.*, 295 S.W.3d 327, 328

(Tex. 2009) (holding that trial court did not have jurisdiction to adjudicate injured worker's bad-faith suit against his workers' compensation carrier for denying medical benefits because Commission had exclusive jurisdiction to determine claimant's entitlement to medical benefits); *Henry v. Dillard Dept. Stores, Inc.*, 70 S.W.3d 808, 809 (Tex. 2002) (holding that trial court did not have jurisdiction to adjudicate injured worker's suit against self-insured employer for bad faith denial of reasonable and timely benefits); *Macias v. Schwedler*, 135 S.W.3d 826, 830 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that trial court did not have jurisdiction to adjudicate wrongful death action against workers' compensation carrier because the claims depended on determination that worker sustained compensable injury)).

65.     Moreover, iWorks Defendants cannot cite this Court to one Texas court opinion holding that the DWC has exclusive jurisdiction over common-law negligence claims like Plaintiffs or contractual indemnity claims like iWorks Defendants'. *See, e.g. In re Texas Mut. Ins. Co.*, 157 S.W.3d at 81.

66.     That is because Texas law is clear that the DWC does not have exclusive jurisdiction over common-law claims that are not seeking workers' compensation benefits:

> **"[A] negligence claim is outside the [Workers' Compensation] Commission's exclusive jurisdiction. The Commission's exclusive jurisdiction extends to claims for benefits under workers' compensation insurance policies."**

*In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 81 (Tex. App.—Austin 2004, pet. denied) (orig. proceeding) (citing Tex. Lab. Code Ann. § 408.001(a)).[1]

67.     In addition to common-law tort claims, "[c]ourts regularly preside over the hashing out of the contractual relationships between staff leasing companies, their client companies, and even on occasion their carriers." *AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d at 39.  For example, in *Tex. Workers' Compensation Fund v. Del Indus. Inc.*, the supreme court held that the workers leased from a staff leasing company to a client company were not the client company's employees for the purposes of

---

[1] The quote above was taken directly from a case that iWorks Defendants cited in their PTJ.  In fact, the quoted text is located only 4 paragraphs after an excerpt cited by iWorks Defendants in their PTJ.

computing the premiums for the client company's own workers' compensation insurance. 35 S.W.3d 591, 596 (Tex. 2000).

68. ***In re Texas Mut. Ins. Co.*, 157 S.W.3d 75 (Tex. App.—Austin 2004, pet. denied)**. In *In re Texas Mut.*, an employer brought two claims against Texas Mutual Insurance Company: (1) breach of the insurance contract by refusing to provide coverage during the disputed period; and in the alternative (2) negligence in causing the insured to have a coverage gap. 157 S.W.3d at 77.

69. Not long into its discussion of exclusive jurisdiction, the court in *In re Tex. Mut. Ins. Co.* explained that the Workers' Compensation Commission has exclusive jurisdiction over one thing—the award of workers' compensation benefits. 157 S.W.3d at 78. Specifically, the court said "[t]he [Texas Workers' Compensation] Act 'vests *the power to award compensation benefits* solely in the Workers' Compensation Commission (formerly the Industrial Accident Board), subject to judicial review." *Id.* (citing *American Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 803 (Tex. 2001) (emphasis added).

70. On the other hand, the DWC does *not* have exclusive jurisdiction over claims that do not seek an award of workers' compensation benefits. *Id.* at 81.

71. The Court in *In re Tex. Mut.* ultimately held that the DWC had exclusive jurisdiction over the plaintiff's breach of contract claims because they (1) presupposed "the existence of a workers' compensation insurance policy," and (2) "quite plainly [sought] benefits due under that policy." *Id.* at 80-81 (citing *Fodge*, 63, S.W.3d at 803).

72. By contrast, the plaintiff's negligence claim presupposed that no workers' compensation insurance policy was in effect at the time of the plaintiff's injuries. *Id.* at 81-82. Thus, the DWC did not have exclusive jurisdiction over the plaintiff's negligence claim. *Id.* Moreover, the Court swiftly rejected any attempts to characterize the plaintiff's "negligence damages claim" as one "seeking the specific workers' compensation benefits of which [plaintiffs] were negligently deprived." *Id.* at 81-82.

73. ***AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.*, 357 S.W.3d 30 (Tex. App.—Houston [1st Dist.] 2011, pet. denied)**. *AMS Constr. Co. v. K.H.K. Scaffolding Hous., Inc.* is factually analogous to the case at bar. There, a leased employee sued the client company for negligence and gross negligence after

sustaining work-related injuries. *Id.* at 35. The client company then asserted cross-claims against the staff leasing company regarding its failure to maintain workers' compensation insurance. The staff leasing company contended that the trial court lacked subject matter jurisdiction to enter a judgment against it on the client company's breach of contract claim because it loosely involved the issue of workers' compensation coverage. *Id.* at 37.

74. In denying the leasing company's plea to the jurisdiction, the Court held that "[t]his case does not involve a dispute about workers' compensation benefits from a carrier under an insurance policy." 357 S.W.3d at 39. Instead, the dispute was whether AMS was contractually obligated to obtain workers' compensation benefits for a leased employee from an insurance carrier, and the consequence of its failure to do so. *Id.*

75. The Court in *AMS Constr. Co.* denied the plea to the jurisdiction for the same reasons that this Court should deny iWorks Defendants' PTJ—to wit:

(1) "Neither AMS nor KHK was seeking workers' compensation benefits as a claimant or a subclaimant under an insurance policy." *= Neither iWorks nor WM are seeking workers' compensation benefits as a claimant or subclaimant under any policy;*

(2) "[The employee] sued KHK as a non-subscriber." *= Plaintiffs are suing iWorks as a non-subscriber;*

(3) "The insurance company that issued AMS's workers' compensation insurance policy denied him coverage." *= Texas Mutual has given sworn deposition testimony indicating that it will deny coverage on iWorks's terminated policy (see EXHIBIT A); and*

(4) "AMS never produced a policy that covers [plaintiff] or KHK." *= iWorks has never produced a workers' compensation policy that covers Mose Guillory or WM.*

*AMS Constr. Co.*, 357 S.W.3d at 39.

76. **APPLICATION.** Like in *In re Texas Mut. Ins. Co.*, this Court should deny iWorks PTJ because Plaintiff's personal injury claims do not seek an award of workers' compensation benefits. 157 S.W.3d at 81. To the contrary, much like the negligence claims asserted in *In re Tex. Mut.*, Plaintiffs' claims here presuppose that no workers' compensation insurance was in effect at the time of the Mose Guillory's injuries. *See id.* at 81-82.

77.     Further, as in *AMS Constr. Co.*, "[t]his case does not involve a dispute about workers' compensation benefits from a carrier under an insurance policy." 357 S.W.3d at 39.  Plaintiffs are not seeking workers' compensation insurance benefits from WM Defendants or iWorks Defendants.   Instead, Plaintiffs are seeking compensatory damages under common-law tort principles.

78.     On February 19, 2015, iWorks Defendants filed a supplement to their PTJ pointing out 2 immaterial facts: (1) that Texas Mutual created a claim number for iWorks Defendants' phantom workers' compensation claim on their non-existent policy; and (2) that Plaintiffs served a DWC 41 Notice of Injury Form on the one-year anniversary of Mose Guillory's injury.

79.     As to the first point, iWorks Defendants provide no argument or authority explaining how Texas Mutual's creation of a claim prejudices Plaintiff's right to sue his non-subscribing employer.  As to the second point, iWorks Defendants claim that "Plaintiff cannot hedge his bets with the administrative agency while improperly seeking a judicial remedy in this Court[.]" iWorks Supp. to PTJ at p. 2.

80.     First, iWorks Defendants provide no authority for this proposition—it is merely Counsel for iWorks's unfounded opinion.  In accordance with the Texas Labor Code Ch. 409, Plaintiffs did previously file their DWC 41 form on the 1-year anniversary of the injury in question.  However, Plaintiffs did so solely to preserve their right to seek benefits in the event that this Court or the Court of Appeals later determined that iWorks Defendants and/or WM Defendants were workers' compensation subscribers.  Plaintiffs are not seeking workers' compensation benefits from any provider, and are surely not attempting to get blood from the turnip that is iWorks Defendants' cancelled policy.

81.     Moreover, Plaintiffs' direct this Court to Footnote 1 on page 2 of iWorks Defendants' PTJ, which reads as follows:

> "By filing a claim on its worker's compensation insurance, iWORKS does NOT waive or otherwise retreat from its position that Guillory's injury is the sole responsibility of Waste Management and/or Guillory and expressly reserves its rights to raise these issues in the administrative proceedings (if any) and any judicial review of any administrative determinations."

iWorks PTJ, p. 1, n. 1.  That sounds an awful lot like hedging one's bets with the administrative agency while waiting for the judicial review to play out.  What's good for the goose is good for the gander.

82.    *AMS Constr. Co., In re Tex. Mut.,* and *Fodge* illustrate that the DWC's exclusive jurisdiction does not apply to Plaintiffs' claims here because Plaintiffs' claims have nothing to do with the payment of or claims for workers' compensation benefits.   Plaintiffs have never made a claim for workers' compensation benefits from any provider in this case.

83.    **Tex. Mut. Ins. Co. v. Ruttiger, 381 S.W.3d 430 (Tex. 2012)** and **Morales v. Liberty Mut. Sinc. Co., 241 S.W.3d 514 (Tex. 2007)** are inapposite and neither case aids iWorks Defendants with regard to their unsustainable argument.   *Ruttiger* and *Morales* are inapplicable here because the Texas Supreme Court merely confirmed that the DWC's exclusive jurisdiction and the requirement for exhausting administrative remedies only apply to claims for the payment or non-payment of workers' compensation benefits.  *Ruttiger*, 381 S.W.3d at 436-37; *Morales*, 241 S.W.3d at 519.

84.    Additionally, in its citation to *Ruttiger,* Counsel for iWorks is blatantly attempting to mislead the Court.   Counsel for iWorks cherry picks and manipulates the Court's holding as follows: "The court recognized that allowing an employee to circumvent the act by asserting common law causes of action would be 'inconsistent with the Act's goals and legislative intent'."  iWorks PTJ at p. 9.

85.    In the preceding sentence, the *Ruttiger* Court expressly stated that its holding did not apply to common-law claims—to wit:

> Permitting a workers' compensation claimant to additionally recover by simply **suing under general provisions of Insurance Code section 541.060** would be inconsistent with the structure and detailed processes of the Act.

*Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 443 (Tex. 2012).  Thus, the analysis in *Ruttiger* does not avail iWorks because it pertained to bad-faith insurance lawsuits over the denial of insurance benefits—not common-law personal injury claims.

86.    Many of the other cases cited by iWorks Defendants similarly disprove iWorks' PTJ on their face. iWorks Defendants cite *In re Liberty Ins. Corp.* for the proposition that "[t]he Workers' Compensation Act vests the Workers' Compensation Division with exclusive jurisdiction to determine a claimant's entitlement to medical benefits." 321 S.W.3d 630, 636 (Tex. App.—Houston 14th [Dist.] 2010, orig. proceeding).  iWorks Defendants also cite *In Re Mid-Century Ins. Co. of Tex.* for the proposition that "[t]he

Worker's Compensation Act gives the DWC exclusive jurisdiction over certain workers' compensation disputes relating to entitlement to medical benefits, preauthorization of medical care and reimbursement of medical expenses." *In Re Mid-Century Ins. Co. of Tex.*, 426 S.W.3d 169, 172 (Tex. App.—Houston [1st Dist.] 2012, orig. proceeding).

87.     These holdings are irrelevant because Plaintiffs are not suing iWorks Defendants for medical benefits under workers' compensation—Plaintiffs are suing for compensatory damages under tort law.

88.     iWorks Defendants also improperly cite and rely on *Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238 (Tex. 2012). There, it was undisputed that the employer had a valid workers' compensation policy, but the question was whether or not it covered temporary workers. *Id.* at 243.

89.     The Court held that "a client company is entitled to the exclusive remedy defense upon showing that it was the plaintiff's employer and that it was covered by a workers' compensation policy." *Id.* In *Casados*, the employer could assert the exclusive remedy defense against a temporary common worker even though its workers' compensation policy purported to exclude such workers and even though it never paid premiums to cover such workers. *Id.* at 243-244.

90.     iWorks Defendants are using that holding to argue that a company can cease paying premiums altogether, allow its workers' compensation policy to be cancelled, yet continue to reap the benefits of being a subscriber. Such an absurd result cannot be extrapolated from the opinion in *Casados*.

91.     Finally, the DWC Appeals Panel Decisions cited in iWorks' motion are inapposite. Those decisions resulted from contested case hearings regarding the payment or non-payment of workers' compensation insurance benefits. It bears repeating that Plaintiffs' claims are common-law tort claims—Negligence; Negligent Hiring, Training, Supervision, Retention; Negligence *Per Se*; and Gross Negligence. Thus, Plaintiffs' claims have NOTHING to do with entitlement, request, award, payment, or non-payment of workers' compensation benefits.

92.     Like the common-law claims in *AMS Constr. Co.*, the DWC lacks exclusive jurisdiction over Plaintiffs' claims and this Court should deny iWorks PTJ accordingly.

**b. THE COURT SHOULD DENY IWORKS DEFENDANTS' PTJ BECAUSE IWORKS DEFENDANTS HAVE FAILED TO CONCLUSIVELY PROVE THEY WERE WORKERS' COMPENSATION "SUBSCRIBERS".**

93.     In their PTJ, iWorks Defendants spend much time and effort apparently attempting to educate the Court on the administrative procedures followed within the workers' compensation claims process. *See* iWorks PTJ at pp. 8-11, 13. However, before launching into their gratuitous diatribe on administrative protocol, iWorks Defendants conveniently neglect to address the threshold issue—i.e. the existence of an active, applicable workers' compensation policy.

94.     If the case law makes anything clear, it is that the Court does not even reach the issue of the DWC's exclusive jurisdiction and the exhaustion administrative remedies if it determines that iWorks Defendants are "non-subscribers" as to Mose Guillory.

95.     The Court in *Port Elevator-Brownsville, L.L.C. v. Casados* begins and ends its analysis with this essential element—the existence of worker's compensation coverage. 358 S.W.3d 238 (Tex. 2012). In fact, the Texas Supreme Court's holding in *Casados* begins as follows: "Because Port Elevator had a workers' compensation policy[.]" *Id.* at 239.

96.     Moreover, the Texas Supreme Court has made it abundantly clear that the fundamental prerequisite for the exclusive-remedy defense is the existence of a valid, effective workers' compensation policy existing at the time of the incident in question. For example, the Court in *Casados* noted that "employer" under the Texas Workers' Compensation Act means "a person who makes a contract of hire, employs one or more employees, and **_has_** workers' compensation insurance coverage." *Casados*, 358 S.W.3d at 241 (emphasis added).

97.     One page later, the Court held that "each employer who **_subscribes_** to workers' compensation insurance may raise the exclusive-remedy provision as a bar to claims about the injury." *Casados*, 358 S.W.3d at 242 (emphasis added) (citing *Garza v. Excel Logistics, Inc.,* 161 S.W.3d 473, 475-76 (Tex. 2005) (stating that client company could assert exclusive-remedy defense to claims by temporary employee *if it*

*was covered by workers' compensation insurance*); *Wingfoot Enters. v. Alvarado,* 111 S.W.3d 134, 143 (Tex. 2003).

98.    It is important to note that the Court in *Casados* used the present tense form of the verbs **"has"** and **"subscribes"** instead of the past tense ("had," "subscribed") or the future tense ("will have," "will subscribe."). Thus, an employer's status as a workers' compensation "subscriber" has nothing to do with whether it maintained some workers' compensation policy in the past (as iWorks did here) or whether it plans to obtain workers' compensation in the future.

99.    If that were the case, every Texas business could obtain a workers' compensation policy, cancel it after one month, and still be considered a "subscriber" in perpetuity merely because it had workers' compensation coverage at some irrelevant point in the past. Such an illogical result was clearly not the intent of the Texas Legislature when fashioning the Workers' Compensation Act.

100.    Additionally, an employer's status as a "subscriber" has nothing to do with whether the employer intended to have coverage or whether it plans to obtain coverage in the future. Only the employer who "has" or "subscribes" to workers' compensation insurance may raise the exclusive-remedy provision as a bar to claims about the injury. *Casados*, 358 S.W.3d at 242. For iWorks Defendants to have had workers' compensation coverage in this case, they needed a valid workers' compensation policy that was effective on the date of the incident in question. As confirmed by the DWQ responses attached hereto as **EXHIBIT A** and **EXHIBIT B**, iWorks Defendants failed to meet this requirement.

101.    The Court in *Casados* also explained why the "Exclusive Remedy" provision is obviously inequitable if there is no valid workers' compensation policy covering the incident in question. The first, basic premise behind the Workers' Compensation Act is that Texas employers are permitted to choose whether or not to maintain workers' compensation insurance. *Casados*, 358 S.W.3d at 241. In response, employees of subscribing employers can choose whether to accept such coverage or opt out and retain their common-law rights. *Id.* (citing Tex. Lab. Code § 406.034; *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 552 (Tex. 2001)).

102. The Court in *Casados* goes on to explain the intention of the Texas Legislature and the rationale that justifies this law:

> **"The Legislature intended the TWCA to benefit both employees and employers. For employees, the TWCA allows them to recover workers' compensation benefits for injuries in the course and scope of employment without proving fault by the employer and without regard to their negligence . . . For employers, their liability to employees is limited."**

*Id.* at 241 (citing Tex. Lab. Code § 406.031).

103. It is clear that the rationale of the Texas Legislature and Texas Supreme Court assumes the existence of workers' compensation insurance coverage, and it must. Otherwise, what is the employee being forced to give up his common law rights for?

104. It cannot be argued that the Texas Legislature intended for this Court to dismiss Mose Guillory's claims against iWorks, only to have iWorks then hand him the same, expired, terminated policy information page and say: "Sorry, you don't get workers' compensation coverage because I DIDN'T DO MY JOB . . . I BLEW IT." That was not, and is not, the intent behind the workers' compensation act and this Court should not follow iWorks Defendants down this non-sensical path. *See Casados* at 241 (citing Tex. Lab. Code § 406.031).

### c. ALTERNATIVELY, THIS COURT SHOULD DENY IWORKS DEFENDANTS' PTJ BECAUSE PLAINTIFFS' CLAIMS FALL UNDER AN EXCEPTION TO THE RULE REGARDING EXHAUSTION OF REMEDIES.

105. Plaintiffs incorporate all preceding paragraphs by reference as though fully set forth herein.

106. In the unlikely event that this Court agrees with iWorks Defendants' argument, the Court should still deny iWorks Defendants' PTJ because Plaintiffs' claims fall within the recognized exceptions to exhaustion of remedies.

107. Texas courts have recognized four exceptions to the exhaustion requirement: (1) exhausting agency procedures would cause irreparable harm; (2) the agency cannot grant the requested relief, such as with constitutional claims; (3) the cause of action involves a pure question of law and the facts are undisputed; and (4) the agency has acted beyond its jurisdiction. *Tex. Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist.*, 830 S.W.2d 88, 90-91 (Tex. 1992); *Houston Fed. of Teachers v. Houston Indep. Sch. Dist.*,

730 S.W.2d 644, 646 (Tex. 1987); *Janik v. Lamar Consol. Indep. Sch. Dist.*, 961 S.W.2d 322, 324 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

108. Plaintiffs have already incurred the time and expense of litigating this lawsuit for nearly 2 ½ years. During that time, Mose and Mary Guillory have endured the tremendous hardship of Mr. Guillory's disabilities and his inability to work. Moreover, the 2-year statute of limitations on Plaintiffs' tort claims has run. As such, it would cause irreparable harm were this Court to force Plaintiffs to incur the additional time and expense of the administrative gauntlet only to have the DWC tell Plaintiffs what they already know—iWorks Defendants are non-subscribers.

109. The DWC cannot grant all of Plaintiffs' requested relief. The Texas Workers' Compensation Act places caps on the pecuniary benefits that may be awarded and does not provide for non-pecuniary damages such as pain and suffering, mental anguish, etc. These are damages that Plaintiffs are seeking and which the DWC cannot provide.

110. Based on the foregoing, this Court should deny iWorks PTJ because Plaintiffs' claims fall within recognized exceptions to the requirement for exhaustion of remedies.

## VI.    CONCLUSION

111. Plaintiffs incorporate all preceding paragraphs by reference as though fully set forth herein.

112. iWorks Defendants are asking this Court to take unprecedented action that directly contradicts binding precedent handed down from the 1st District Court of Appeals only 4 years ago. *See AMS Constr. Co.*, 357 S.W.3d at 39. In effect, iWorks Defendants are asking this Court to re-write the Texas Labor Code so as to extend the DWC's exclusive jurisdiction to common-law claims over which it has no jurisdiction.

113. More than that, iWorks Defendants are asking this Court to strip away its general jurisdiction to hear common-law tort claims. The only way such action is permitted is if iWorks Defendants conclusively prove their entitlement to the "Exclusive Remedy" defense. However, iWorks Defendants are not entitled to the "Exclusive Remedy" defense because iWorks Defendants are non-subscribers.

114. Because plaintiff's pleadings establish the court's jurisdiction, and defendant's factual allegations disputing jurisdiction are untrue, the court should retain plaintiff's suit on the court's docket.

## VII.   PRAYER

115.   For these reasons, Plaintiffs pray that this Court DENY iWorks Defendants Plea to the Jurisdiction and grant Plaintiffs such other and further relief to which they have shown themselves justly entitled.

Respectfully submitted,

**GILDE LAW FIRM**

_____
BRADFORD J. GILDE
TSB#: 24045941
NICHOLAS A. HOMAN
TSB#: 24083194
55 Waugh Dr., Ste. 800
Houston, TX 77007
281-973-2771 – facsimile
281-973-2772 – phone
bjg@gildelawfirm.com
nah@gildelawfirm.com

**MATTHEWS & ASSOCIATES**
DAVID P. MATTHEWS
2905 Sackett Street
Houston, TX 77098
713-522-5250 – phone
713-535-7136 – facsimile

**THE GALLAGHER LAW FIRM, LLP**
MIKE GALLAGHER
2905 Sackett Street
Houston, TX 77098
713-238-7705 – phone
713-222-0066 – facsimile
ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served to all counsel of record ***via facsimile and/or eTexFile*** on February 19, 2015.

Respectfully submitted,

Nicholas A. Homan

*PLAINTIFFS' RESPONSE TO IWORKS DEFENDANTS' PLEA TO THE JURISDICTION*                 25

TAB 16

# EXHIBIT A

STYLE OF
CASE :   **MOSE A. GUILLORY AND MARY GUILLORY**


    **VS.**
**IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.;**
**WASTE MANAGEMENT OF TEXAS, INC.; AND**
**WM RECYCLE AMERICA, LLC**

CASE NO. :   **2012-61407**

PERTAIN TO :   **Moses Guillory**


FROM :   **Texas Mutual Insurance Company**
**6210 East Highway 290**
**Austin, TX 78723**
**Any & All Records**

DELIVER TO :   **Bradford J. Gilde**
**Gilde Law Firm**
**55 Waugh Drive, Ste. 850**
**Houston, TX  77007**



**IN THE DISTRICT COURT OF**


**HARRIS COUNTY, TEXAS**


**113TH JUDICIAL DISTRICT**



Order No.  61017.002

No. 2012-61407

| | | |
|---|---|---|
| MOSE A. GUILLORY AND MARY GUILLORY | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| VS. | : | HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE | : | |
| MANAGEMENT, INC.; | | |
| WASTE MANAGEMENT OF TEXAS, INC.; AND | : | |
| WM RECYCLE AMERICA, LLC | : | 113TH JUDICIAL DISTRICT |

## NOTICE OF DELIVERY

RE: **Texas Mutual Insurance Company (Any & All Records)**

I, _Elizabeth Morales_, Notary Public in and for the State of Texas, hereby certify pursuant to the Rule 206, Texas Rules of Civil Procedure,

1. That this Deposition by Written Questions of the Custodian of Records for the above named is a true and exact duplicate of the records pertaining to **Moses Guillory**.

2. That the transcript is a true record of the testimony given by the witness;

3. That $ _308.00_ is the charge for the preparation of the completed Deposition by Written Questions and any copies of exhibits, charged to Attorney for **Plaintiff, Bradford J. Gilde, SBN # 24045941**;

4. That the deposition transcript was submitted on the _31st_ day of _October_, 20_13_, to the witness for examination, signature and return to the officer by a specified date;

5. That changes, if any made by the witness, in the transcript and otherwise are attached thereto or incorporated therein;

6. That the witness returned the transcript;

7. That the original deposition by Written Questions and a copy thereof, together with copies of all exhibits was delivered to the attorney or party who Noticed the first questions for safekeeping and use at trial;

8. That pursuant to information made a part of the records at the time said testimony was taken, the following includes all parties of record:

    **Aric J. Garza (Law Office of Aric J. Garza)**
    **B. Lee Wertz, Jr. (Harrison, Bettis, Staff, McFarland & Weems, L.L.P.)**
    **Mr. David N. Anderson (The Anderson Law Firm)**
    **Nicholas A. Homan (Gilde Law Firm)**

and
9. A copy of this Notice of Delivery was served on all parties shown herein.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE _13th_ day of _December_, 20_13_.

Stratos Legal Record Services, LP
4299 San Felipe, Ste. 350
Houston, TX 77027
713-375-0121   Fax 281-200-0830

_Elizabeth Morales_
Notary Public in and for the State of Texas



ELIZABETH MORALES
Notary Public, State of Texas
My Commission Expires
March 18, 2017

Order No. **61017.002**

No. 2012-61407

| MOSE A. GUILLORY AND MARY GUILLORY | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| VS. | : | HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; | : | |
| WASTE MANAGEMENT OF TEXAS, INC.; AND | : | |
| WM RECYCLE AMERICA, LLC | : | 113TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Defendant by and through their attorney(s) of record: Aric J. Garza (Law Office of Aric J. Garza), B. Lee Wertz, Jr. (Harrison, Bettis, Staff, McFarland & Weems, L.L.P.) and Mr. David N. Anderson (The Anderson Law Firm)
To other party/parties by and through their attorney(s) of record: Bradford J. Gilde (Gilde Law Firm)

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

Texas Mutual Insurance Company (Any & All Records)
6210 East Highway 290
Austin, TX 78723

before a Notary Public for    Stratos Legal Record Services, LP
4299 San Felipe, Ste. 350
Houston, TX 77027
713-375-0121   Fax 281-200-0830

or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:   **See attached Exhibit A**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

Bradford J. Gilde
Gilde Law Firm
55 Waugh Drive, Ste. 850
Houston, TX 77007
281-973-2772   Fax 281-973-2771
Attorney for Plaintiff
SBA # 24045941

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated: _October 14, 2013_     by _Bradford J. Gilde w/ht_

Order No. 61017

No. 2012-61407

| MOSE A. GUILLORY AND MARY GUILLORY | : | IN THE DISTRICT COURT OF |
|---|---|---|
| | : | |
| | : | |
| VS. | : | HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; | : | |
| WASTE MANAGEMENT OF TEXAS, INC.; AND | : | |
| WM RECYCLE AMERICA, LLC | : | 113TH JUDICIAL DISTRICT |

## ATTORNEYS OF RECORD:

Aric J. Garza
Law Office of Aric J. Garza
115 East Travis Street, Ste. 1039
San Antonio, TX 78205
210-225-2961   Fax: 210-225-2962

B. Lee Wertz, Jr.
Harrison, Bettis, Staff, McFarland & Weems, L.L.P.
Wedge International Tower
1415 Louisiana, 37th Floor
Houston, TX 77002
713-843-7900   Fax: 713-843-7901

Bradford J. Gilde
Gilde Law Firm
55 Waugh Drive, Ste. 850
Houston, TX 77007
281-973-2772   Fax: 281-973-2771

Mr. David N. Anderson
The Anderson Law Firm
4309 Yoakum Street
Houston, TX 77706
(713) 521-6563   Fax: (888) 824-5624

Order No. 61017

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice and written questions has been hand-delivered and/or mailed receipt requested, to the attorneys of record.

Dated: _October 14, 2013_

_Tracy Hall_

Stratos Legal Record Services, LP
4299 San Felipe, Ste. 350
Houston, TX 77027
713-375-0121 Fax 281-200-0830

## SUBPOENA DUCES TECUM

### Deposition Subpoena To Testify Or Produce Documents Or Things

**THE STATE OF TEXAS:**

To any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 Of Texas Rules of Civil Procedure. - GREETINGS -

You are hereby commanded to subpoena and summon the following witness(es): Custodian of Records

for: **Texas Mutual Insurance Company**
    **6210 East Highway 290**
    **Austin, TX 78723   512-322-3800**

to be and appear before a Notary Public of my designation for:

Stratos Legal Record Services, LP, 4299 San Felipe, Ste. 350, Houston,TX 77027  713-375-0121 or its designated agent, on the forthwith day of Instanter at the office of the custodian and there under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying

    **Any and all records as described on the attached Exhibit 'A'**

and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to: **See attached Exhibit A**

at any and all times whatsoever, then and there to give evidence at the instance of the **Plaintiff**, represented by **Bradford Gilde**, Attorney of Record, in that Certain Cause No. **2012-61407**, pending on the docket of the **District Court of the 113th Judicial District of Harris County**, Texas.

This Subpoena Duces Tecum is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

    **MOSE A. GUILLORY AND MARY GUILLORY**

    **VS.**
    **IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.;**
    **WASTE MANAGEMENT OF TEXAS, INC.; AND**
    **WM RECYCLE AMERICA, LLC**



TRACI DIONNE HALL
Notary Public, State of Texas
My Commission Expires
July 26, 2015

and there remain from day to day and time to time until discharged according to law.

**WITNESS MY HAND,** this 14th day of October, 2013.

        *Traci Dionne Hall*
        NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

### OFFICER'S RETURN

Came to hand this _____ day of _____, 20____, and executed this the _____ day of _____, 20____,

at _____:___ am / pm at _____ , _____ , TX; in the following manner:

By delivering to the witness _____ , a true copy hereof.

Returned this _____ day of _____, 20____.

                _____
                PROCESS SERVER

Order No. 61017.002

| | | |
|---|---|---|
| MOSE A. GUILLORY and MARY GUILLORY, | § § | IN THE DISTRICT COURT |
| *Plaintiffs* | § § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; WASTE MANAGEMENT OF TEXAS, INC; WM RECYCLE AMERICA, LLC; LUIS TREVINO; HAYDEE GUTIERREZ; and SMX, LLC (f/k/a SEATON CORP.) | § § § § § § § | |
| *Defendants* | § | 113th JUDICIAL DISTRICT |

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS AND SUBPOENA DUCES TECUM

**Person(s) to be Deposed – Custodian of Records and Person Most Knowledgeable For:**

TEXAS MUTUAL INSURANCE COMPANY (hereinafter "Texas Mutual", "You", or "Your company"), 6210 E. Highway 290, Austin, TX 78723-1098; and

LETTE INSURANCE AGENCY (hereinafter referred to "Lette Insurance Agency", "You", or "Your company"), 145 Boca Chica Blvd., Brownsville, TX 78520.

**Date for Deposition:**

Within twenty (20) days from service, per TRCP 199.2(b)(2), 200.1(b).

**Records Pertaining To – Subpoena Duces Tecum:**

1) TEXAS MUTUAL INSURANCE COMPANY (hereinafter "Texas Mutual");

2) LETTE INSURANCE AGENCY (hereinafter "Lette Insurance");

3) Policy Number: STA-0001204473 20110904;

4) PREFERRED STAFFING COMPANY, L.L.C. (d/b/a "IWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411;

5) IWORKS PERSONNEL, INC. (hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213;

1

6) MOSE ALBERT GUILLORY and MARY GUILLORY (hereinafter "Plaintiffs");

7) Defendants IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; WASTE MANAGEMENT OF TEXAS, INC; WM RECYCLE AMERICA, LLC; LUIS TREVINO; HAYDEE GUTIERREZ; and SMX, LLC (f/k/a SEATON CORP.) (hereinafter "Defendants");

8) The above-captioned cause.

## Types of Records to be Produced – Subpoena Duces Tecum:

Please produce any and all DOCUMENTS[1] (especially communications) by and between you and/or your company and Policy Number: STA-0001204473 20110904; Preferred Staffing; iWorks; Plaintiffs; and any regulatory or govenmental entities, which includes the employees, agents, or attorneys of same; AND any and all DOCUMENTS (especially communications) regarding WM RECYCLE AMERICA, LLC facility located at 4939 GASMER DR., HOUSTON, TX 77035 ("Facility"); Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between you and Preferred Staffing and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation.

---

[1] As used herein, the term "DOCUMENTS" shall be an all-inclusive term that shall be used in its broadest sense and is to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the following, whether printed, typewritten, recorded, filmed or reproduced by any mechanical process or written or produced by hand, and whether an original, master or copy, and whether or not claimed to be privileged from discovery, namely: any and all letters, telegrams, teletypes, correspondence, logs, routing and/or transmittal slips, contracts, agreements, instructions, warranties, notes, mortgages, deeds, recordings and/or transcripts thereof, memoranda of telephone and/or in-person conversations, and/or of meetings and/or conferences, minutes, studies, reports, records, analyses, inter-office communications, receipts, canceled checks, instruments, bank statements, worksheets, stocks, bonds and/or other securities and/or evidence of the same, money orders, books of account, journals, ledgers, invoices, specifications, manuals, books, periodicals, pamphlets, publications, raw and refined data, graphs, drawings, notes, advertisements, lists, working papers, transcripts, membership lists, worksheets, agreements, books, records, letters, accounts, notes, summaries, forecasts, appraisals, surveys, estimates, diaries, desk calendars, reports, communications (including intra-agency communications), correspondence, cablegrams, radiograms, facsimiles, printed electronic mail messages (e-mail), telegrams, telexes, memoranda, summaries, notes and records of telephone conversations, meetings and conferences, notes in reference to personal conversations or interviews, ledgers, invoices, contracts, notices, drafts of any document, business records, charts, plans, specifications, drawings, sketches, schedules, diaries, computer printouts, computer stored data, computer tapes or computer disks, microfilm, microfiche, photographs (digital and/or scanned), slides, negatives, motion pictures, video recordings, tape or other voice recordings and transcriptions thereof, data compilations from which information can be obtained or translated, magnetic tapes and/or discs, punch cards, computer printouts, drafts, proposals, submissions, recommendations, bills, and any other transcription and/or data recorded in readable and/or retrievable form, whether typed, handwritten, reproduced, magnetically recorded, coded, and/or in any other way made readable and/or retrievable, in your possession and/or under your control, or known by you to exist, without regard to whether such document was originally prepared by you. The term "DOCUMENT" includes, without limitation, the original, whether or not the original is in your actual or constructive possession, custody or control, and all file copies and other copies that are not identical to the original no matter how *(e.g.,* containing handwritten notations) or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.

2

1. Please state your full name - the person answering.

Answer: Jeff P. Lentz.

2. Please identify your employer and the business's address.

Answer: Texas Mutual Insurance Company, 6210 Highway 290 East, Austin, Texas 78723-1098.

3. What is the title of your position or job?

Answer: I am the Vice President of Underwriting.

4. Have you been served with a Subpoena Duces Tecum for the production of the DOCUMENTS described above?

Answer: Yes.

5. Do you understand the Subpoena Duces Tecum requires the release of *all* DOCUMENTS pertaining to the above named entities and related to above identified issues and is not limited to documents your office created?

Answer: I understand that the Subpoena Duces Tecum requires the release of all documents in accordance with the Texas Rules of Civil Procedure, the Texas Rules of Evidence and other applicable laws.

6. Please hand the original records or copies thereof as requested in the Subpoena Duces Tecum to the Notary Public taking your deposition, for attachment to this deposition. Have you done as requested? If not, why not?

Answer: I have complied. However, documents the company considers protected by the trade secret privilege (*i.e.*, underwriting price worksheets) have been withheld. Certain documents in the underwriting file contain personal information of individuals who are not parties to this lawsuit. Those documents have been withheld from production as well.

7. Were these DOCUMENTS made and kept in the regular course of business by your company?

Answer: Yes. Texas Mutual Insurance Company ("Texas Mutual") was formerly known as the Texas Workers' Compensation Insurance Fund (the "Fund") and documents responsive to this subpoena may be under this former name. Texas Mutual's underwriting files are mainly electronic and, broadly speaking, consist of three types of material. The first type of material is a set of data entries and notations made by Texas Mutual employees in Texas Mutual's computer files (herein after referred to as "Texas Mutual Data"). The second type of material, which exists in some but not all underwriting files, would be tangible things such as photographs or recordings. The third type of material is a set of electronic images, stored in Texas Mutual's computer files, of paper documents. These electronic images are exact duplicates of original paper documents. Some of the original paper documents were made by Texas Mutual employees in the regular course of business of Texas Mutual (herein after referred to as "Texas Mutual Records"). Other original paper documents were not made by Texas Mutual employees at all, and Texas Mutual has merely acquired either the original documents or copies thereof (herein after referred to as "Acquired Documents"). The electronic images of the Acquired Documents are exact duplicates of the Acquired Documents.

3

Texas Mutual has caused all of these various paper documents, regardless of their authors, to be optically scanned by electronic imaging equipment in the regular course of business and has caused the electronic images of all of these documents to be stored in Texas Mutual's computer files in the regular course of business. It was the regular course of business of Texas Mutual for an employee or representative of Texas Mutual, with knowledge of the act, event, opinion, or decision, recorded to make the Texas Mutual Data and Texas Mutual Records or to transmit information thereof to be included in the Texas Mutual Data and Texas Mutual Records; and the Texas Mutual Data and Texas Mutual Records were made at or near the time or reasonably soon thereafter.

8.     Are the DOCUMENTS of your company under your care, supervision, direction, custody, and/or control?

Answer:   The underwriting documents produced in response hereto are under my care, supervision, direction, custody and/or control.

9.     Was it in the regular course of your company for a person with knowledge of the acts or events to make the DOCUMENTS or to transmit information thereof to be included in such DOCUMENTS?

Answer:  Yes. Please see my response to question no. 7.

10. Were the DOCUMENTS made at or around the time of the acts or events described therein?

Answer:  Yes. Please see my response to question no. 7.

11.     Were the DOCUMENTS kept in the regular course of business by your company?

Answer:  Yes. Please see my response to question no. 7.

12.     Were the DOCUMENTS you have given to the Notary Public to be attached to this deposition kept as described above?

Answer:  Yes. Please see my response to question no. 7.

13.     Has it been suggested to you by anyone (whether lawyer, supervisor, or anyone else) that any part of the DOCUMENTS you have compiled pertaining to FACILITY; Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between your company and Preferred Staffing and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation be withheld or protected for any reason? Please give the name and address of the person who conveyed this information to you, the reason given for withholding, and when such event occurred. Please attach additional sheets of paper for your answer, if necessary.

Answer:   Yes. On October 22, 2013, Bryan W. Jones, a Staff Attorney with Texas Mutual Insurance Company, asserted the privileges referenced in response to question no. 6 pertaining to underwriting documents withheld from production. Mr. Jones also asserted the objections referenced in my responses to question nos. 17 through 41. His office address is: Texas Mutual Insurance Company, 6210 Highway 290 East, Austin, Texas 78723-1098.

4

14.	Are you aware of any DOCUMENTS pertaining to Facility; Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between your company and Preferred Staffing and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation that have been purged, revised, extracted, removed, or altered from the way said DOCUMENTS were originally created? If so, please explain. your knowledge of such occurrences. Please attach additional sheets of paper for your answer, if necessary.

Answer: Other than the documents withheld pursuant to my response to question no. 6, no.


15.	Since receiving this Direct Questions to be Propounded to the Witness and Subpoena Duces Tecum, have you or anyone in your company been in contact with any person from or connected to Preferred Staffing; iWorks; Waste Management; Luis Trevino; Haydee Gutierrez; and/or SMX, LLC (f/k/a SEATON CORP); or any person having any connection with the above-referenced litigation in any way? Please attach additional sheets of paper for your answer, if necessary.

Answer: No.

16.	If your answer to question 15 was "YES", explain in detail the form of the contact (e.g. in-person, phone call, email, letter, etc.); who initiated the contact by identifying the name, title, and employer; who received the contact by identifying the name, title, and employer; how long the contact took place; the substance of what was communicated in the contact; whether any recording or document was made of the contact; and why the contact took place. Please attach additional sheets of paper for your answer, if necessary.

Answer: Not applicable.

17.	Please fully identify and explain in detail any policies, agreements, or contracts for insurance (hereinafter referred to as "contracts") ever existing between your company and **Preferred Staffing.** As part of this answer, explain the following: when such contracts began; the details of intended and actual coverage; the details of intended and actual exclusions; what specific entities were covered, if any; what specific employees were covered, if any; what specific workers compensation class codes were covered, if any; what specific job sites or locations were covered, if any; what specific activities were covered, if any; whether the identification of specific entities, employees, workers compensation class codes, job sites and locations, and/or activities were required for contracting/coverage; the amount or policy limits of such coverage, if any; and when such contracts or policies ended, expired, or were terminated, if ever. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with

5

the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

18. Please fully identify and explain in detail any agreements or contracts for insurance ever existing between your company and **iWorks**. As part of this answer, explain the following: when such contracts began; the details of intended and actual coverage; the details of intended and actual exclusions; what specific entities were covered, if any; what specific employees were covered, if any; what specific workers compensation class codes were covered, if any; what specific job sites or locations were covered, if any; what specific activities were covered, if any; whether the identification of specific entities, employees, workers compensation class codes, job sites and locations, and/or activities were required for contracting/coverage; the amount or policy limits of such coverage, if any; and when such contracts or policies ended, expired, or were terminated, if ever. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

19. ADMIT or DENY that PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "iWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) is a distinct legal entity to your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by a "distinct legal entity." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

20. ADMIT or DENY that iWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) is a distinct legal entity to

6

your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by a "distinct legal entity." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

21. ADMIT or DENY that PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "IWORKS PERSONNEL")(hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) and IWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) are two separate and distinct legal entities from one another to your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by a "distinct legal entity." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

22. ADMIT or DENY that your company draws a coverage distinction between the two separately named legal entities PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "iWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) and iWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213). First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

7

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by a "draws a coverage distinction." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

23.     ADMIT or DENY that your company draws a coverage distinction between the two separately named legal entities PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "iWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) and iWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) such that a workers compensation policy covering employees of PREFERRED STAFFING COMPANY, L.L.C. *does NOT* include covering employees of iWORKS PERSONNEL, INC. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by a "draws a coverage distinction." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

24.     ADMIT or DENY that Policy Number: STA-0001204473 20110904 covered eligible employees of **Preferred Staffing** *ONLY* and not eligible employees of iWorks. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; identify what eligible employees were covered; how you would reject or deny coverage for an employee of iWorks; whether MOSE A. GUILLORY was covered; whether MOSE A. GUILLORY was covered on August 5, 2012; whether MOSE A. GUILLORY can make a claim for recovery of workers compensation benefits today; and if MOSE A. GUILLORY cannot make a claim for recovery of workers compensation benefits today, why not? Please attach additional sheets of paper for your answer, if necessary.

8

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by "covered eligible employees." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

25. ADMIT or DENY that Policy Number: STA-0001204473 20110904 covered eligible employees of iWorks *ONLY* and not eligible employees of Preferred Staffing. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; identify what eligible employees were covered; how you would reject or deny coverage for an employee of Preferred Staffing; whether MOSE A. GUILLORY was covered; whether MOSE A. GUILLORY was covered on August 5, 2012; whether MOSE A. GUILLORY can make a claim for recovely of workers compensation benefits today; and if MOSE A. GUILLORY cannot make a claim for recovery of workers compensation benefits today, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by "covered eligible employees." Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

26. ADMIT or DENY that Policy Number: STA-0001204473 20110904 covered eligible employees of *BOTH* **Preferred Staffing and iWorks.** First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; identify what eligible employees were covered; whether MOSE A. GUILLORY was covered; whether MOSE A. GUILLORY was covered on August 5, 2012; whether MOSE A. GUILLORY can make a claim for recovely of workers compensation benefits today; and if MOSE A. GUILLORY cannot make a claim for recovery of workers compensation benefits today, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by "covered eligible employees." Furthermore, Texas Mutual Insurance Company objects to the

9

foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

27.     ADMIT or DENY that Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; explain how the contract was cancelled; and the effect of cancelation regarding coverage for Preferred Staffing or iWorks to your knowledge. Please attach additional sheets of paper for your answer, if necessary.

Answer:  Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

28.     ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, **Preferred Staffing** was a **"nonsubscriber,"** under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer:  Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

29.     ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, **iWorks was a "nonsubscriber,"** under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing or iWorks from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer:  Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the

10

Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

30.     Please fully explain in detail and describe your company's roles, responsibilities, duties, and obligations as it pertains to the contracts or agreements for Workers' Compensation insurance, if any, with Preferred Staffing or iWorks. Please attach additional sheets of paper for your answer, if necessary.

Answer:   Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows:  Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012.  The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318).  Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

31.     Has your company fulfilled all of the aforementioned roles, responsibilities, duties, and obligations as it pertains to the contracts with Preferred Staffing or iWorks mentioned above? If "NO," please explain? Please attach additional sheets of paper for your answer, if necessary.

Answer:   Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows:  Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012.  The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318).  Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

32.     Explain and describe your company's usual or standard practice with respect to workers' compensation insurance policies issued by you to temporary common worker employers. As part of this answer, describe your usual or standard practice with respect to your roles, responsibilities, duties, obligations, extent of coverage, and exclusions from coverage as it pertains to your contract(s) with temporary common worker employers. Please attach additional sheets of paper for your answer, if necessary.

Answer:   Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

11

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

33.     Explain and describe your company's usual or standard practice with respect to workers' compensation insurance policies issued by you to Staff Leasing Services Act employers or employers of "leased" employees. As part of this answer, describe your usual or standard practice with respect to your roles, responsibilities, duties, obligations, extent of coverage, and exclusions from coverage as it pertains to your contract(s) with Staff Leasing Services Act employers or employers of "leased" employees. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

34.     Explain and describe, in detail, the process by which Preferred Staffing obtained or attempted to obtain any alleged insurance coverage from you or provided by you, including but not limited to Workers' Compensation, to cover labor performed in Texas, if any. This question seeks detail regarding the following-to wit:

> a. vetting, investigation, negotiation, and/or contracting for insurance,
> b. what specific action(s) took place,
> c. when such action(s) took place,
> d. who was involved,
> e. whether /how Texas Mutual or Lette Insurance was involved,
> f. whether /how Preferred Staffing was involved,
> g. whether/how iWorks was involved,
> h. what the parties' agreements and understandings were, and
> i. the ultimate results of same in terms of insurance coverage obtained.

Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

35.     Explain and describe, in detail, the process by which iWorks obtained or attempted to obtain any alleged insurance coverage from you or provided by you, including but not limited to Workers' Compensation, to cover labor performed in Texas, if any. This question seeks detail regarding the following-to wit:

> a: vetting, investigation, negotiation, and/or contracting for insurance,
> b. what specific action(s) took place,
> c. when such action(s) took place,
> d. who was involved,
> e. whether/how Texas Mutual or Lette Insurance was involved,
> f. whether/how Preferred Staffing was involved,
> g. whether /how iWorks was involved,
> h. what the parties' agreements and understandings were, and
> i. the ultimate results of same in terms of insurance coverage obtained.

Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

36.     Explain and describe, in detail, the inception, duration, and termination of Policy Number: STA-0001204473 20110904. As part of your answer, please describe the following-to wit:

> a.     The process by which any alleged insurance coverage was obtained for Policy Number: STA-0001204473 20110904;
> b.     The extent of any coverage and exclusions in Policy Number: STA-0001204473 20110904;
> c.     What entity or entities, if any, was covered by or under Policy Number: STA-0001204473 20110904 -list all by its/their legal name(s);

| d. | Preferred Staffing's obligations under Policy Number: STA-00012044 73 20110904 (including the payment of premiums and interest), if any; |
|---|---|
| e. | iWorks's obligations under Policy Number: STA-0001204473 20110904 (including the payment of premiums and interest), if any; |
| f. | Your company's obligations under Policy Number: STA-0001204473 20110904 (including the payment of premiums and interest), if any; |
| g. | The effect that non-compliance with the aforementioned obligations has or had on Policy Number: STA-0001204473 20110904; |
| h. | Whether and to what extent Preferred Staffing or iWorks failed to comply with their obligations under Policy Number: STA-0001204473 20110904; and |
| i. | Describe the ending, cessation, expiration, cancellation, or termination of Policy Number: STA-00012044 73 20110904, including when and why same occurred. |

Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

37. Explain and describe, in detail, the relationship, association, and/or interaction between Texas Mutual and Lette Insurance Agency. In your answer, specifically discuss the interaction and/or differences between Texas Mutual's role and Lette Insurance Agency's role regarding **Policy Number: STA·00012044 73 20110904.** Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

38. Explain your company's understanding as to whether Preferred Staffing was or is a Staff Leasing Services Act company, explain/describe the basis for such knowledge, and explain/describe your

company's roles, responsibilities, duties, and obligations regarding same, if any and if known by you. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

39.     Explain your company's understanding as to whether iWorks was or is a Staff Leasing Services Act company, explain/describe the basis for such knowledge, and explain/describe your company's roles, responsibilities, duties, and obligations regarding same, if any and if known by you. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

40.     Have you produced and attached to your answers any and all DOCUMENTS specifically requested and responsive to the questions asked herein? If not, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with

the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

41.    Have you answered all of the Questions herein fully, completely, truthfully, and based on all available information and DOCUMENTS? If not, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer:   Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows:   Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012.   The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318).  Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

_____
Witness (Custodian of Records)


I, Albert Santini, a Notary Public in the State of Texas do hereby certify that the foregoing answers of the witness were made by the said witness and sworn to and subscribed before me.  The records attached hereto are exact duplicates of the original records.

SWORN AND SUBSCRIBED BEFORE ME on this the 31ˢᵗ day of October, 2013 to certify which witness my hand and seal of office.

_____
Notary Public in and for the State of Texas

ALBERT SANTINI
Notary Public, State of Texas
My Commission Expires
January 28, 2017

16


**TexasMutual**® Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
(FAX) 1-512-224-2866

P.O. Box 12058
Austin, Texas 78711-2058
1-800-859-5995
(FAX) 1-800-359-0650

August 5, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Re: PREFERRED STAFFING COMPANY LLC
Q003021474

Dear Agent,

Thank you for your submission to the Start program. We are pleased to enclose your quote.

| | | | |
|---|---|---|---|
| Out of Network Premium: | $39,943.00 | Commission Rate: | 2.63% |
| In Network Premium: | $35,205.00 | Commission Rate: | 2.71% |

*Please do not deduct the commission when remitting payments.*

Premium payments must be made payable to Texas Mutual Insurance Company. Should you need to send payment by overnight mail, please use the above physical address. Otherwise, remit the payment to the following address by regular mail:

**Texas Mutual Insurance Company**
**Attn: Remittance Processing**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please make sure you return to us:

_____ 941, 941E, 942, or 943 reports and/or Texas Workforce Commission forms for the four most recent quarters.

__X__ Payment made payable to Texas Mutual Insurance Company.
(Premium paid should reflect the amount quoted. Any change to the quote must be authorized by the underwriter and a revised quote will be issued.)

_____ If premium is financed, include a copy of the finance agreement.

__X__ Policyholder's and agent's original signatures on the attached Start supplemental application and the ACORD 130 application.

__X__ Other: MAXIMUM EMPLOYERS LIABILITY LIMITS IN THE START PROGARM ARE 500/500/500

In the absence of binding authority, all of the above information must be received by 09-02-2011 in order to bind coverage. Failure to do so will result in coverage being bound 24 hours after receipt of the deposit premium and requested information, unless a future effective date has been requested. This quote is valid for 60 days from the effective date of the quote. After 60 days, the quote will be closed and a new submission will be required.

Should you have any questions, please do not hesitate to contact me.

Regards,

BERNADINE BARNO

Underwriting Department

STARTTHNK (ED. 05-01-11)          Agent Commission Letter

TXM00001

000001

**EMLNOTFY**

**Insured Name:**        PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** Q003021474

**Effective Date:**        20110904

**Notes:**

Serial Number:  000069336824
Letter Type:  DOCDIS
Date/Time:  2011-08-05T12:00:24.85-05:00
Email:  estela@letteinsuranceagency.com
Underwriter:
Recipient:
Insured Name:PREFERRED STAFFING COMPANY LLC


| Quote Number: | Q003021474 20110904 | Quote Issue Date | 8-05-2011 |
|---|---|---|---|
| Underwriter: | BERNADINE BARNO | | |
| Producer: | 18220 LETTE INS AGCY | | Quote generated in Austin, TX |
| | 145 BOCA CHICA BLVD | | |
| | BROWNSVILLE, TX 78520 | | |

Contact: ESTELA RODRIGUEZ  (956) 541-7252  FAX (956) 542-8757
Applicant: PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

| Fed ID: | 76-0797747 | | Entity: | LIMITED LIABILI |
|---|---|---|---|---|
| Sic Code: | 7363 | HELP SUPPLY SERVICES | Group: | |
| Best Hazard: | 06 | | | |
| Contact: | HAYDEE | | (956) 459-5109 | |
| Proposed Coverage Period: | 9-04-2011 | to | 9-04-2012 | |

### PREMIUM QUOTE SUMMARY – TEXAS ONLY

PART ONE: WORKERS' COMPENSATION INSURANCE

| CLASS | DESCRIPTION | RATE | PAYROLL | PREMIUM |
|---|---|---|---|---|
| | Detail list follows this sheet. | | | |
| | Estimated Standard Premium | | | 18,335.00 |

| | | Out-of-Network | In-Network |
|---|---|---|---|
| Prorate Factor | 1.0000 | | |
| WAIVER OF SUBROGATION . . . . . . . . . . . . . . . . . . : | | 367.00 | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS . . . . . . . . . . : | | 187.00 | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . . . : | | 18,889.00 | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) . : | | 5,667.00 | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ). : | | 18,417.00 | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ). . . : | | .00 | 5,157.00- |
| DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . . . : | | .00 | .00 |
| ADMIRALTY/FELA OR L & H W . . . . . . . . . . . . . . . . : | | .00 | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 7.40 ) .( 7.30 ) . . : | | 3,180.00- | 2,761.00- |
| EXPENSE CONSTANT CHARGE . . . . . . . . . . . . . . . . . : | | 150.00 | 150.00 |

| | | | Out-of-Network | In-Network |
|---|---|---|---|---|
| Total Payroll | 930,692.00 | Estimated Annual Premium | 39,943.00 | 35,205.00 |
| Audit Frequency: | QUARTERLY - 33% | Deposit Premium | 13,181.00 | 11,618.00 |
| | | Minimum Premium | 250.00 | 250.00 |

PART TWO: EMPLOYERS' LIABILITY INSURANCE

| | Standard | Admiralty/F.E.L.A. | | Offshore | |
|---|---|---|---|---|---|
| Bodily Injury By Accident | 500,000 | 0 | Each Accident | 0 | Upper |
| Bodily Injury By Disease | 500,000 | | Each Employee | 0 | Lower |
| Bodily Injury By Disease | 500,000 | 0 | Policy Limit | | |

### ENDORSEMENTS MADE PART OF THIS QUOTATION

See Schedule of Endorsements attached

---

#### NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is already included in workers compensation policies. Losses resulting from certified acts of terrorism would be partially reimbursed by the US government under a formula established by federal law. If the aggregate industry insured losses exceed $100,000,000 in a Program Year, the US Government will pay 85% of our insured losses that exceed our insurer deductible. Notwithstanding this, the US Government will not make any payment under the act for any portion of insured losses that exceed $100,000,000,000. The portion of your quoted premium that is attributable to coverage for acts of terrorism is $0 and does not include any charges for the portion of losses covered by the federal government under the act.

QTSHT1 (ED. 04-01-10)  Document ID: 2 057 729 6

INSURED'S COPY



| | | |
|---|---|---|
| Quote Number: | Q003021474 20110904 | Quote Issue Date: 8-05-2011 |

Applicant: PREFERRED STAFFING COMPANY LLC
Address: DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Proposed Coverage Period: 9-04-2011 to 9-04-2012

PART ONE: WORKERS' COMPENSATION INSURANCE (Continued):

| CLASS | DESCRIPTION | RATE | PAYROLL | PREMIUM |
|---|---|---|---|---|
| 2003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 12.71 | 26,230.00 | 3,334.00 |
| 5403 | CARPENTRY NOC & DRIVERS | 14.52 | 7,779.00 | 1,130.00 |
| 5506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | 14.87 | IF ANY | |
| 8810 | CLERICAL OFFICE EMPLOYEES NOC | .44 | 277,833.00 | 1,222.00 |
| 9014 | AIR CONDITIONING DUCT CLEANING SERVICE | 8.96 | 52,930.00 | 4,743.00 |
| 8044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 13.04 | 4,326.00 | 564.00 |
| 8803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | .27 | 253,232.00 | 684.00 |
| 8833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 2.01 | 42,272.00 | 850.00 |
| 8006 | GROCERY STORE-RETAIL | 7.61 | 56,196.00 | 4,277.00 |
| 8803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | .27 | 197,877.00 | 534.00 |
| 2881 | WOODENWARE MFG NOC & DRIVERS | 8.30 | 12,017.00 | 997.00 |
| | Estimated Standard Premium | | | 18,335.00 |

TXM00004

# TexasMutual®
Insurance Company

| | | |
|---|---|---|
| Quote Number: | Q003021474 20110904 | Quote Issue Date: 8-05-2011 |

Applicant: PREFERRED STAFFING COMPANY LLC
Address: DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Proposed Coverage Period:     9-04-2011     to     9-04-2012

## ENDORSEMENTS

| | |
|---|---|
| TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE |
| PC-2003 | POLICY CONDITIONS ENDORSEMENT |
| TM-MV-2001 | MUTUAL ENDORSEMENT FORM |
| TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG |
| TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT |
| WC00 00 00A | WORKERS COMPENSATION AND EMPLO |
| WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB |
| WC00 03 01 | ALTERNATE EMPLOYER |
| WC00 03 01 | ALTERNATE EMPLOYER |
| WC00 04 06 | PREMIUM DISCOUNT |
| WC42 03 01F | TEXAS AMENDATORY |
| WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL |
| WC42 04 03A | TEXAS EXPERIENCE MODIFICATION |
| WC42 04 07 | AUDIT PREMIUM ENDORSEMENT |
| WC42 04 08* | NETWORK DISCOUNT |
| WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER |

\* Endorsement applicable only for In-Network

QTSHT2 (ED. 11-94)     INSURED'S COPY

TXM00005



# Quote Invoice

| | |
|---|---|
| **Applicant:** | **PREFERRED STAFFING COMPANY LLC** |

| | | | | |
|---|---|---|---|---|
| Quote Number: | Q003021474 20110904 | 0000 | Quote Issued Date: | August 5, 2011 |
| Agent: | LETTE INS AGCY | | Underwriter: | BERNADINE BARNO |
| FEIN: | 76-0797747 | | Renewal Of: | 0001204473 |

The earliest effective date of coverage will be the date a complete submission and the proper deposit premium are received at Texas Mutual Insurance Company, unless a future effective date has been requested. This does not apply to Start policies.

Please return this form and your check payable to Texas Mutual Insurance Company for the amount of this quote to the address below.

Please help us more quickly process your payment by writing your quote number on your check.

Payment is due immediately upon receipt. Payment received does not guarantee coverage.

## Please check one option below to indicate policy choice

| Out-of-Network _____ | | In-Network _____ | |
|---|---|---|---|
| Estimated Annual Premium: | $39,943.00 | Estimated Annual Premium: | $35,205.00 |
| Deposit Premium: | $13,181.00 | Deposit Premium: | $11,618.00 |
| Payroll Reporting Mode: | QUARTERLY - 33% 3 | | |

PLEASE NOTE: This policy is not eligible for premium financing.

Please Remit Payment To:

Texas Mutual Insurance Company
P.O. Box 841843
Dallas, TX 75284-1843

Please do not use the above address for other correspondence.

QTINV (08-01-07)

Document ID: 2 057 729 6

INSURED'S COPY

TXM00006

000006



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

**DNE-1**

## DEDUCTIBLE NOTICE OF ELECTION

Texas law permits an employer to obtain workers' compensation insurance with a deductible. The insurance applies only to benefits payable under Texas workers' compensation law. When a deductible is elected, the policyholder is required to reimburse the insurance carrier for benefits payable under the law up to the deductible amount and a credit is applied to the policy. Premium credits are determined based on the deductible selected and the hazard group. The hazard group is determined by the classification that produces the largest amount of estimated Texas standard premium.

You are not required to choose a deductible. If you do choose one, your insurance company will pay the deductible amount for you, but you must reimburse the insurance company within 30 days after they send you notice that payment is due. If you fail to reimburse the insurance company, they may cancel the policy upon ten days written notice, and any resulting premium may be applied to the deductible amount owed.

If a deductible amount is desired, please indicate below.

☐ Yes, I want a deductible of (select only one):

1.  $_____ per accident

2.  $_____ annual aggregate

3.  $_____ /$_____ per accident\annual aggregate
applied to benefits payable under the Texas Workers' Compensation Law. I understand that the company will pay the deductible amount and seek reimbursement _____**Monthly**_____
                                                   (monthly, quarterly or other)

☐ No, I do not want a deductible applied to benefits payable under the Texas Workers' Compensation Law.

☐ Yes, I do want a deductible policy, but am unable to obtain one for the following reason: _____

_____

The deductible plans have been explained to me.

| | |
|---|---|
| _____ | _____ |
| Signature and Title | Date |
| _____ | _____ |
| Employer Name (print or type) | Address |
| **Texas Mutual Insurance Company** | **Q003021474** | **9-04-2011** |
| Insurance Company | Policy No. | Effective Date |

DNE-1 (ED. 09-29-06)                    Document ID: 2 057 729 6

TXM00007

000007

**Texas Mutual Insurance Company**

*HELPING BUILD A STRONGER TEXAS*

We are an insurance company, but many employers think of us more as a partner in workplace safety and effective claim management.

Our customer service philosophy is to provide personalized attention that *exceeds* your expectations. Consider what you will get for your premium dollar:

## A PARTNER IN LOSS PREVENTION

- On site safety surveys and recommendations by consultants who know your business
- Loss run reports that help you analyze loss trends
- Access to a library of safety videos, posters, and brochures, many available in Spanish
- Seminars on workplace safety and the return to work process
- Help with special issues, such as ergonomics, industrial hygiene, and OSHA compliance

## ZERO TOLERANCE FOR FRAUD

- Investigation of suspected claim fraud
- Coordination with prosecutors statewide to obtain convictions
- A proven track record of fraud convictions

## EFFECTIVE CLAIMS MANAGEMENT AND COST CONTROL

- Professionals on staff to handle all aspects of claim management and cost control:
    - A designated regional service team with expertise in your industry
    - Rehabilitation nurses and a provider relations team who work to get the right care for your injured workers
    - A catastrophic injury team to work with severely injured workers
    - A special unit that handles maritime claims (HSWCA, OCSLA, and Jones Act)
    - Specialists who audit medical bills
    - Subrogation specialists who recover millions from third parties responsible for injuries

## INFORMATION AT YOUR FINGERTIPS

- Toll-free numbers for claim reporting and general information
- An easy-to-use reference notebook with full instructions on coverage notices, injury reporting, and tips on cost control

**Competitive Quotes**     **Other States Coverage**     **Safety Groups**     **Deductibles**

TO THE AGENT OR BROKER: Our regional marketing teams are available to present more about these services to your clients and your staff.

Texas Mutual Services Information Page

QTINFO-110110

TXM00008

000008

# Texas Star Network Option From Texas Mutual

Eligible policyholders with locations in network service areas can take advantage of the *Texas Star Network$_{SM}$* option offered by Texas Mutual Insurance Company. Policyholders that elect this option enjoy the benefits of the network system's focus on helping injured employees return to work.

## Network benefits

### Quality of care

- Injured employees select their treating doctor from among the network's group of occupational health care providers. *Texas Star Network$_{SM}$* providers are focused on helping workers recover and return as productive members of the workforce.
- The *Texas Star Network$_{SM}$* medical case management program includes certified case managers who work with health care providers, injured workers and employers to identify and facilitate return-to-work opportunities.

### Financial benefits

- Texas Mutual Insurance Company offers an annual workers' comp health care network premium discount of 12 percent to most eligible new and current policyholders.
- The network's occupational focus should help improve productivity and reduce other costs associated with workplace accidents.

Employers must notify employees of network requirements for the network provisions to take effect. For more information on Texas Mutual Insurance Company and the *Texas Star Network$_{SM}$* option, including whether or not you are eligible for the network, contact your agent, or visit www.texasmutual.com.

Texas Star Network Information Page

Copyright 2007, Texas Mutual Insurance Company
QTINFO-PG2-110110

TXM00009

000009

Texas Mutual Insurance Company

08/05/2011



In an effort to help policyholders more effectively monitor their claims, *Texas Mutual®* is now offering automated claims notifications. These notifications are generated based on information configured by the individual policyholders.

As of 07/31/2011, this policyholder has **0** new claims alerts in their Claims Alert Notification Inbox.

## Claims Information

| | |
|---|---|
| **Policy Number** | 0001183688 |
| **Policy Period** | 09/13/2007 - 09/13/2008 |
| **Named Insured** | PREFERRED STAFFING LLC |
| **Policy Address** | PO BOX 100111 SAN ANTONIO, TX 78201-1411 |

Search Across All Claims

## Showing Claims 1 - 10 of 13

Action  Claim Detail*      *Claim selection is required.

| | Claim Number | Claimant Name | Status | Injury Date | Report Date | Total Paid | Outstanding | Total Incurred |
|---|---|---|---|---|---|---|---|---|
| ○ | 99H0000511370 | SALAZAR, CARLOS | CLOSED | 10/03/2007 | 11/08/2007 | $3,126.66 | $0.00 | $3,126.66 |
| ○ | 99H0000533517 | GONZALES, RAYMOND | CLOSED | 10/22/2007 | 10/22/2007 | $234.62 | $0.00 | $234.62 |
| ○ | 99H0000512306 | MORALES, MARIBEL | CLOSED | 11/25/2007 | 11/25/2007 | $0.00 | $0.00 | $0.00 |
| ○ | 99H0000516657 | CAN, VICENTE | CLOSED | 11/26/2007 | 11/26/2007 | $522.56 | $0.00 | $522.56 |
| ○ | 99H0000513836 | ARREOLA, SAUL | CLOSED | 12/07/2007 | 12/10/2007 | $35,254.46 | $0.00 | $35,254.46 |
| ○ | 99H0000514950 | SELVERA, EDVERT C. | CLOSED | 12/19/2007 | 12/19/2007 | $28,403.89 | $0.00 | $28,403.89 |
| ○ | 99H0000517592 | HERNANDEZ, NINFA | CLOSED | 12/30/2007 | 12/31/2007 | $488.11 | $0.00 | $488.11 |
| ○ | 99J0000518088 | RAMOS, LORENZO | CLOSED | 01/18/2008 | 01/18/2008 | $521.45 | $0.00 | $521.45 |
| ○ | 99J0000519116 | MEDINA, CARLOS G. | REOPEN | 02/05/2008 | 02/05/2008 | $37,509.98 | $278.46 | $37,788.44 |
| ○ | 99J0000522920 | MENDIOLA, DANIEL | CLOSED | 02/11/2008 | 02/11/2008 | $0.00 | $0.00 | $0.00 |
| **Totals for 09/13/2007 - 09/13/2008** | | | | | | **$160,651** | **$3,680** | **$164,330** |

<< < 1 2 > >>

Rows per page  10

Copyright © 2011 Texas Mutual Insurance Co.    All Rights Reserved    Terms of Use    Privacy    Contact Us

000010

**NOTEPAD**

**Insured Name:** PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** Q003021474

**Effective Date:** 20110904

**Notes:**

---
--UW: RUDY ALBA Time: 2011-07-28T17:39:08-05:00--

User Comments: account is in start...pending to discuss with start u/w

---
--UW: BERNADINE BARNO Time: 2011-08-02T10:07:34-05:00--

User Comments: Aug 2, 2011
9:42:47 AM: Rudy Alba/AUSTIN/THE_FUND: good morning bernadine
9:44:12 AM: Bernadine E. Barno/AUSTIN/THE_FUND: Good morning
9:45:11 AM: Rudy Alba/AUSTIN/THE_FUND: I have a start renewal that was in my inbox. Not sure why it didn't go to you. I pended it. It is Q3021474, I am going to forward the workpacket to you.

TXM00011



**Underwriting Services**
PO Box 12058
Austin, TX 78711-2058

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** August 05, 2011

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** Q003021474
PREFERRED STAFFING COMPANY LLC

**Email Address(es):**
estela@letteinsuranceagency.com

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 9    including this cover

TXM00012

000012



6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
(FAX) 1-512-224-2866

P.O. Box 12058
Austin, Texas 78711-2058
1-800-859-5995
(FAX) 1-800-359-0650

August 5, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

Re:  PREFERRED STAFFING COMPANY LLC
     Q003021474

Dear Agent,

Thank you for your submission to the Start program. We are pleased to enclose your quote.

| | | | |
|---|---|---|---|
| Out of Network Premium: | $39,943.00 | Commission Rate: | 2.63% |
| In Network Premium: | $35,205.00 | Commission Rate: | 2.71% |

*Please do not deduct the commission when remitting payments.*

Premium payments must be made payable to Texas Mutual Insurance Company. Should you need to send payment by overnight mail, please use the above physical address. Otherwise, remit the payment to the following address by regular mail:

**Texas Mutual Insurance Company**
**Attn: Remittance Processing**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please make sure you return to us:

_____  941, 941E, 942, or 943 reports and/or Texas Workforce Commission forms for the four most recent quarters.

__X__  Payment made payable to Texas Mutual Insurance Company.
(Premium paid should reflect the amount quoted. Any change to the quote must be authorized by the underwriter and a revised quote will be issued.)

_____  If premium is financed, include a copy of the finance agreement.

__X__  Policyholder's and agent's original signatures on the attached Start supplemental application and the ACORD 130 application.

__X__  Other:  MAXIMUM EMPLOYERS LIABILITY LIMITS IN THE START PROGARM ARE 500/500/500

In the absence of binding authority, all of the above information must be received by 09-02-2011 in order to bind coverage.  Failure to do so will result in coverage being bound 24 hours after receipt of the deposit premium and requested information, unless a future effective date has been requested.  This quote is valid for 60 days from the effective date of the quote. After 60 days, the quote will be closed and a new submission will be required.

Should you have any questions, please do not hesitate to contact me.

Regards,

BERNADINE BARNO

Underwriting Department

STARTTHNK (ED. 05-01-11)          Agent Commission Letter

TXM00013

000013

# TexasMutual®
## Insurance Company

| | | | |
|---|---|---|---|
| Quote Number: | Q003021474 20110904 | Quote Issue Date | 8-05-2011 |
| Underwriter: | BERNADINE BARNO | | |
| Producer: | 18220  LETTE INS AGCY | | Quote generated in Austin, TX |
| | 145 BOCA CHICA BLVD | | |
| | BROWNSVILLE, TX 78520 | | |

| | | |
|---|---|---|
| Contact: | ESTELA RODRIGUEZ | (956) 541-7252   FAX (956) 542-8757 |
| Applicant: | PREFERRED STAFFING COMPANY LLC | |
| | DBA: IWORKS PERSONNEL | |
| | PO BOX 100111 | |
| | SAN ANTONIO, TX 78201-1411 | |

| | | | | |
|---|---|---|---|---|
| Fed ID: | 76-0797747 | | Entity: | LIMITED LIABILI |
| Sic Code: | 7363 | HELP SUPPLY SERVICES | Group: | |
| Best Hazard: | 06 | | | |
| Contact: | HAYDEE | | (956) 459-5109 | |
| Proposed Coverage Period: | 9-04-2011 | to | 9-04-2012 | |

## PREMIUM QUOTE SUMMARY -- TEXAS ONLY

### PART ONE: WORKERS' COMPENSATION INSURANCE

| CLASS | DESCRIPTION | RATE | PAYROLL | PREMIUM |
|---|---|---|---|---|
| | Detail list follows this sheet. | | | |
| | Estimated Standard Premium | | | 18,335.00 |

| | | Out-of-Network | In-Network |
|---|---|---|---|
| Prorate Factor    1.0000 | | | |
| WAIVER OF SUBROGATION  . . . . . . . . . . . . . . . . . . . . . : | | 367.00 | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS  .. . . . . . . . . . . . : | | 187.00 | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . . . . . : | | 18,889.00 | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) . . : | | 5,667.00 | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ). . : | | 18,417.00 | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ). . . . : | | .00 | 5,157.00- |
| DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . . . . . . : | | .00 | .00 |
| ADMIRALTY/FELA OR L & H W  . . . . . . . . . . . . . . . . . . : | | .00 | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 7.40 ) .( 7.30 ) . . . : | | 3,180.00- | 2,761.00- |
| EXPENSE CONSTANT CHARGE  . . . . . . . . . . . . . . . . . . . : | | 150.00 | 150.00 |

| | | | Out-of-Network | In-Network |
|---|---|---|---|---|
| Total Payroll | 930,692.00 | Estimated Annual Premium | 39,943.00 | 35,205.00 |
| Audit Frequency: | QUARTERLY - 33% | Deposit Premium | 13,181.00 | 11,618.00 |
| | | Minimum Premium | 250.00 | 250.00 |

### PART TWO: EMPLOYERS' LIABILITY INSURANCE

| | Standard | Admiralty/F.E.L.A. | | Offshore | |
|---|---|---|---|---|---|
| Bodily Injury By Accident | 500,000 | 0 | Each Accident | 0 | Upper |
| Bodily Injury By Disease | 500,000 | | Each Employee | 0 | Lower |
| Bodily Injury By Disease | 500,000 | 0 | Policy Limit | | |

### ENDORSEMENTS MADE PART OF THIS QUOTATION

See Schedule of Endorsements attached

---

## NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is already included in workers compensation policies. Losses resulting from certified acts of terrorism would be partially reimbursed by the US government under a formula established by federal law. If the aggregate industry insured losses exceed $100,000,000 in a Program Year, the US Government will pay 85% of our insured losses that exceed our insurer deductible. Notwithstanding this, the US Government will not make any payment under the act for any portion of insured losses that exceed $100,000,000,000. The portion of your quoted premium that is attributable to coverage for acts of terrorism is $0 and does not include any charges for the portion of losses covered by the federal government under the act.

TXM00014

000014



# UNDERWRITING QUOTE SHEET

| | | | |
|---|---|---|---|
| Quote Number: | Q003021474 20110904 | Quote issue Date: | 8-05-2011 |

Applicant: PREFERRED STAFFING COMPANY LLC
Address: DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Proposed Coverage Period: 9-04-2011 to 9-04-2012

PART ONE: WORKERS' COMPENSATION INSURANCE (Continued):

| CLASS | DESCRIPTION | RATE | PAYROLL | PREMIUM |
|---|---|---|---|---|
| 2003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 12.71 | 26,230.00 | 3,334.00 |
| 5403 | CARPENTRY NOC & DRIVERS | 14.52 | 7,779.00 | 1,130.00 |
| 5506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | 14.87 | IF ANY | |
| 8810 | CLERICAL OFFICE EMPLOYEES NOC | .44 | 277,833.00 | 1,222.00 |
| 9014 | AIR CONDITIONING DUCT CLEANING SERVICE | 8.96 | 52,930.00 | 4,743.00 |
| 8044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 13.04 | 4,326.00 | 564.00 |
| 8803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | .27 | 253,232.00 | 684.00 |
| 8833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 2.01 | 42,272.00 | 850.00 |
| 8006 | GROCERY STORE-RETAIL | 7.61 | 56,196.00 | 4,277.00 |
| 8803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | .27 | 197,877.00 | 534.00 |
| 2881 | WOODENWARE MFG NOC & DRIVERS | 8.30 | 12,017.00 | 997.00 |
| | Estimated Standard Premium | | | 18,335.00 |

QTSHT5 (ED. 11-94)  INSURED'S COPY

TXM00015

000015

# TexasMutual®
#### Insurance Company

| | |
|---|---|
| Quote Number: | Q003021474 20110904 |

Quote Issue Date: **8-05-2011**

Applicant: PREFERRED STAFFING COMPANY LLC
Address: DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Proposed Coverage Period: **9-04-2011** to **9-04-2012**

### ENDORSEMENTS

| | |
|---|---|
| TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE |
| PC-2003 | POLICY CONDITIONS ENDORSEMENT |
| TM-MV-2001 | MUTUAL ENDORSEMENT FORM |
| TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG |
| TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT |
| WC00 00 00A | WORKERS COMPENSATION AND EMPLO |
| WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB |
| WC00 03 01 | ALTERNATE EMPLOYER |
| WC00 03 01 | ALTERNATE EMPLOYER |
| WC00 04 06 | PREMIUM DISCOUNT |
| WC42 03 01F | TEXAS AMENDATORY |
| WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL |
| WC42 04 03A | TEXAS EXPERIENCE MODIFICATION |
| WC42 04 07 | AUDIT PREMIUM ENDORSEMENT |
| WC42 04 08* | NETWORK DISCOUNT |
| WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER |

\* Endorsement applicable only for In-Network

QTSHT2 (ED. 11-94)                    INSURED'S COPY

TXM00016

000016



# Quote Invoice

| | |
|---|---|
| **Applicant:** | **PREFERRED STAFFING COMPANY LLC** |

| | | | | |
|---|---|---|---|---|
| Quote Number: | Q003021474 20110904 | 0000 | Quote Issued Date: | **August 5, 2011** |
| Agent: | LETTE INS AGCY | | Underwriter: | **BERNADINE BARNO** |
| FEIN: | 76-0797747 | | Renewal Of: | 0001204473 |

The earliest effective date of coverage will be the date a complete submission and the proper deposit premium are received at Texas Mutual Insurance Company, unless a future effective date has been requested. This does not apply to Start policies.

Please return this form and your check payable to Texas Mutual Insurance Company for the amount of this quote to the address below.

Please help us more quickly process your payment by writing your quote number on your check.

Payment is due immediately upon receipt. Payment received does not guarantee coverage.

## Please check one option below to indicate policy choice

| **Out-of-Network** _____ | **In-Network** _____ |
|---|---|
| Estimated Annual Premium: $39,943.00 | Estimated Annual Premium: $35,205.00 |
| Deposit Premium: $13,181.00 | Deposit Premium: $11,618.00 |
| Payroll Reporting Mode: QUARTERLY - 33% 3 | |

PLEASE NOTE: This policy is not eligible for premium financing.

Please Remit Payment To:

Texas Mutual Insurance Company
P.O. Box 841843
Dallas, TX 75284-1843

Please do not use the above address for other correspondence.

QTINV (08-01-07)

Document ID: 2 057 729 6

TXM00017

000017



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

**DNE-1**

## DEDUCTIBLE NOTICE OF ELECTION

Texas law permits an employer to obtain workers' compensation insurance with a deductible. The insurance applies only to benefits payable under Texas workers' compensation law. When a deductible is elected, the policyholder is required to reimburse the insurance carrier for benefits payable under the law up to the deductible amount and a credit is applied to the policy. Premium credits are determined based on the deductible selected and the hazard group. The hazard group is determined by the classification that produces the largest amount of estimated Texas standard premium.

You are not required to choose a deductible. If you do choose one, your insurance company will pay the deductible amount for you, but you must reimburse the insurance company within 30 days after they send you notice that payment is due. If you fail to reimburse the insurance company, they may cancel the policy upon ten days written notice, and any resulting premium may be applied to the deductible amount owed.

If a deductible amount is desired, please indicate below.

☐ Yes, I want a deductible of (select only one):

1. $_____ per accident

2. $_____ annual aggregate

3. $_____ /$_____ per accident\annual aggregate
applied to benefits payable under the Texas Workers' Compensation Law. I understand that the company will pay the deductible amount and seek reimbursement _____ **Monthly** _____
(monthly, quarterly or other)

☐ No, I do not want a deductible applied to benefits payable under the Texas Workers' Compensation Law.

☐ Yes, I do want a deductible policy, but am unable to obtain one for the following reason: _____

_____

The deductible plans have been explained to me.

_____          _____
Signature and Title                                                    Date

_____          _____
Employer Name (print or type)                                      Address

__Texas Mutual Insurance Company__          __Q003021474__          __9-04-2011__
Insurance Company                                     Policy No.                      Effective Date

DNE-1 (ED. 09-29-06)                                        Document ID: 2 057 729 6

TXM00018

000018

# Texas Mutual Insurance Company

## *HELPING BUILD A STRONGER TEXAS*

We are an insurance company, but many employers think of us more as a partner in workplace safety and effective claim management.

Our customer service philosophy is to provide personalized attention that *exceeds* your expectations. Consider what you will get for your premium dollar:

## A PARTNER IN LOSS PREVENTION

- On site safety surveys and recommendations by consultants who know your business
- Loss run reports that help you analyze loss trends
- Access to a library of safety videos, posters, and brochures, many available in Spanish
- Seminars on workplace safety and the return to work process
- Help with special issues, such as ergonomics, industrial hygiene, and OSHA compliance

## ZERO TOLERANCE FOR FRAUD

- Investigation of suspected claim fraud
- Coordination with prosecutors statewide to obtain convictions
- A proven track record of fraud convictions

## EFFECTIVE CLAIMS MANAGEMENT AND COST CONTROL

- Professionals on staff to handle all aspects of claim management and cost control:
    - A designated regional service team with expertise in your industry
    - Rehabilitation nurses and a provider relations team who work to get the right care for your injured workers
    - A catastrophic injury team to work with severely injured workers
    - A special unit that handles maritime claims (HSWCA, OCSLA, and Jones Act)
    - Specialists who audit medical bills
    - Subrogation specialists who recover millions from third parties responsible for injuries

## INFORMATION AT YOUR FINGERTIPS

- Toll-free numbers for claim reporting and general information
- An easy-to-use reference notebook with full instructions on coverage notices, injury reporting, and tips on cost control

**Competitive Quotes**     **Other States Coverage**     **Safety Groups**     **Deductibles**

TO THE AGENT OR BROKER: Our regional marketing teams are available to present more about these services to your clients and your staff.

Texas Mutual Services Information Page

TXM00019

000019

# Texas Star Network Option From Texas Mutual

Eligible policyholders with locations in network service areas can take advantage of the *Texas Star Network*$_{SM}$ option offered by Texas Mutual Insurance Company. Policyholders that elect this option enjoy the benefits of the network system's focus on helping injured employees return to work.

## Network benefits

*Quality of care*

- Injured employees select their treating doctor from among the network's group of occupational health care providers. *Texas Star Network*$_{SM}$ providers are focused on helping workers recover and return as productive members of the workforce.
- The *Texas Star Network*$_{SM}$ medical case management program includes certified case managers who work with health care providers, injured workers and employers to identify and facilitate return-to-work opportunities.

*Financial benefits*

- Texas Mutual Insurance Company offers an annual workers' comp health care network premium discount of 12 percent to most eligible new and current policyholders.
- The network's occupational focus should help improve productivity and reduce other costs associated with workplace accidents.

Employers must notify employees of network requirements for the network provisions to take effect. For more information on Texas Mutual Insurance Company and the *Texas Star Network*$_{SM}$ option, including whether or not you are eligible for the network, contact your agent, or visit www.texasmutual.com.

Texas Star Network Information Page

Copyright 2007, Texas Mutual Insurance Company
QTINFO-PG2-110110

TXM00020

000020

## Texas Mutual Insurance Company
## Start Renewal Review Checklist

Policy: Q003021474

Coverage Period: 09-04-2011 to 09-04-2012

Account Name: PREFERRED STAFFING COMPANY LLC

Version: 0000

FEIN: 760797747

Renewal Quote: 0001204473

Work Packet Type: RENEWAL

### History/ Background
Description of Operations: STAFFING AGENCY TEMPORARY

Number of Years in Start: 2

### Expiring Pricing:
Rate Tier: 1.50    Scheduled Rating: 1.70    Modifier: 1.40    SEIC: 0.00

### Loss Information - Last 5 Years

| Period | | Company | Written Premium | Exp Mod | # Claims | Paid to Date | Outstanding Reserve | Loss Ratio | # Of Claims Over 15,000 |
|---|---|---|---|---|---|---|---|---|---|
| 09/04/2010 | 09/04/2011 | TXW01 | 17029 | 1.40 | 5 | 76218. | 169995 | 1445.8 | 2 |
| 09/04/2009 | 09/04/2010 | TXW01 | 23408 | 1.40 | 1 | 679.40 | 0 | 2.90 | 0 |
| 07/05/2009 | 09/04/2009 | NCOV | 0 | 0.00 | 0 | 0.00 | 0 | 0.00 | 0 |
| 10/23/2008 | 07/05/2009 | PFUND | 41635 | 1.20 | 3 | 30534. | 0 | 73.33 | 0 |
| 09/13/2008 | 10/23/2008 | NCOV | 0 | 0.00 | 0 | 0.00 | 0 | 0.00 | 0 |

### Description of Claims over $15,000
10/11 $216285 MACHINE RAN OVER EMPLOYEES LEG - AMPUTATION
    $20,304 THORACIC/LUMBAR S/S, PAIN. HE TRIPPED OVER A STRING; FALLING FORWARD ARMS OUTSTRETCHED

08/09 $28129 fixing machine and cut thumb.
07/08 $35254 Slip/fall.
    $28403 Unloading sheetrock and caught arm.
    $$46,518 slip/fall in hole.
    $37,671 s/f on stairs while mopping
06/07 $29634 slip/fall off trailer.
    $24197 IE WAS HOLDING CABLE FROM CRANE AND PULLED TOO HARD. CABLE HIT IE'S MOUTH
05/06 $12,017 pallets fell on arm
No coverage for the following periods: 7-5-09 to 9-4-09, 9-13-08 to 10-23-08 & 9-1-07 to 9-13-07.

### Loss Prevention:
Date of Last Visit: 11/18/10    Rating: 3
# of Recs: 0    All Complied? YES    If not, explain below:

Met DWC criteria? YES    Date of DWC Inspection: 3/2/11    Passed? NO

Comments:

    no recs

### Outstanding Issues:
Money Owed? YES    Non Pro Audit? NO
Review Comments:

    Keep in Start - adverse loss experience for 4 of last 5 years - losses cannot be contained in the Voluntary program

Completed By: BERNADINE BARNO    Date: 8-5-2011

TXM00021

# Texas Mutual Insurance Company

EXPOSURE REPORT (POLICY) - SUMMARY

## PREFERRED STAFFING COMPANY LLC

Evaluated as of: 05/31/2011

Policy #: 0001204473

Effective Date: 09/04/2010

| Current Pricing: | Combined T&S: | 2.55 | Tier: | 1.50 | Sch Rating: | 1.70 |
|---|---|---|---|---|---|---|

### Annualized Payroll via INT

| Class & Cov | Hazard | At Policy Start Payroll | % of Total | 05/31/2011 Payroll | % of Total | % Change | Texas Mutual Class Rate | Average EMOD |
|---|---|---|---|---|---|---|---|---|
| 2003 - 11 | 03 | 12,830 | 2.4% | 26,230 | 2.8% | 104.4% | 12.89 | 1.40 |
| 2881 - 11 | 02 | 0 | 0.0% | 12,017 | 1.3% | 0.0% | 9.60 | 1.40 |
| 5220 - 11 | 03 | 0 | 0.0% | 4,461 | 0.5% | 0.0% | 10.26 | 1.40 |
| 5403 - 11 | 03 | 0 | 0.0% | 7,779 | 0.8% | 0.0% | 13.76 | 1.40 |
| 8006 - 11 | 02 | 11,281 | 2.1% | 56,196 | 6.0% | 398.2% | 8.13 | 1.40 |
| 8044 - 11 | 02 | 0 | 0.0% | 4,326 | 0.5% | 0.0% | 14.25 | 1.40 |
| 8803 - 11 | 03 | 138,496 | 26.0% | 451,110 | 48.2% | 225.7% | 0.30 | 1.40 |
| 8810 - 11 | 02 | 280,919 | 52.8% | 277,833 | 29.7% | -1.1% | 0.51 | 1.40 |
| 8833 - 11 | 02 | 62,215 | 11.7% | 42,272 | 4.5% | -32.1% | 2.22 | 1.40 |
| 9014 - 11 | 02 | 26,496 | 5.0% | 52,930 | 5.7% | 99.8% | 9.29 | 1.40 |
| | | 532,237 | 100.0% | 935,154 | 100.0% | 75.7% | | 1.40 |

| Average Class Rate: | | 1.55 | | 2.13 | | | | |
|---|---|---|---|---|---|---|---|---|

### Hazard Summary

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 02 | 380,911 | 71.6% | 445,574 | 47.6% | 17.0% | 2.13 | 1.40 |
| | 03 | 151,326 | 28.4% | 489,580 | 52.4% | 223.5% | 2.13 | 1.40 |
| | | 532,237 | 100.0% | 935,154 | 100.0% | 75.7% | 2.13 | 1.40 |

Only Includes "Rate Per $100" Payroll-bearing classes
"D" refers to a Disease Loading class
"Neg" refers to Negotiated Emod
Average Class Rates may not always tie due to rounded premiums

Page 1 of 1

TXM00022

000022

## On-line Quote Premium Payment Notification

An on-line quote payment has been received for the following:

Agent: **18220**                                    Agency Contact: **apardo**

Underwriter Name: **BBARN**                          Date: **08/08/2011**

Prior Policy: **0001204473**

Insured Name: **PREFERRED STAFFING COMPANY LLC**      Quote Number: **Q003021474**

Insured FEIN Number: **760797747**                   Version: **0**

---

Coverage Effective Date: **09/04/2011**

Network Designation: **In-Network**

Expected TX Payment Amount: **$11,618.00**

---

Other States Coverage: **N**

Other States Effective Date: **N/A**

Expected Other States Premium: **N/A**

---

Premium Financed?: **N**                             Installment Billing?: **N**

Total Expected Payment Amount: **$11,618.00**        Actual Paid: **$11,618.00**

TXM00023

000023

# Underwriting Request for Loss Prevention Services

Quote/Policy Number    Q003021474

Effective Date    20110904

FEIN    760797747

## Applicant Information

Applicant    PREFERRED STAFFING COMPANY LLC
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Applicant Contact    HAYDEE

Applicant Telephone    9564595109

Applicant E-Mail Address

Other TX Locations    YES

Purchase Group

Out of State Coverage    NO

Description of Operations

STAFFING AGENCY TEMPORARY

## Producer Information

Producer

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Producer Contact    ESTELA RODRIGUEZ

Producer Telephone    9565417252

Producer E-Mail Address

Producer Fax Number    9565428757

Producer Contact Required    NO

TXM00024

000024

# Underwriting Request for Loss Prevention Services

| | |
|---|---|
| Request Type | RENEWAL - 0001204473 |
| START Criteria | 1 |
| Preferred Delivery By | 08/25/2011 |
| SA Indicator | T |
| LP Visit Is For | |
| EAP | $39,943 |
| Manual Premium | $12,209 |
| Experience Modifier | N/A |
| Governing Class Code | 8803   - AUDITOR/ACCOUNTANT-TRAVELING |
| NAICS Code | 561320 - TEMPORARY HELP SERVICES |
| SIC Code | 7363 - HELP SUPPLY SERVICES |
| Hazard Group | C |

Loss History

| YEAR | AMOUNT | RATIO | CLAIMS |
|---|---|---|---|
| 2010 | 246,212 | 1445.84 | 6 |
| 2009 | 679 | 2.90 | 1 |
| 2009 | 0 | 0.00 | 0 |
| 2008 | 30,534 | 73.33 | 3 |
| TOTALS | $277,426 | 338.03 | 10 |

**Client Company Information**

Client Company Name

Street Address

City

Zip

Client Contact Name

Client Contact Number

PEO Contact Required

Client Description of Operations:

TXM00025

000025

# Underwriting Request for Loss Prevention Services

Comments/LP Concerns:
Maria,

'Full' Start account. Criteria #1 - 1.30 emod.  Thanks, Bernadine

Request Date/Time      08-11-2011 07:44

Underwriter          BERNADINE BARNO

Phone Extension      6106

TXM00026

000026

Date Created: 08/11/2011 12:50:56

Subject: PREFERRED STAFFING COMPANY LLC Q003021474
SendTo: estela@letteinsuranceagency.com
From: CN=Bernadine E. Barno/OU=AUSTIN/O=THE_FUND

Estela,

Please also forward ACORD 130 and Client List.

Thank you,

Bernadine E. Barno, Senior Underwriter
Phone: 1-800-859-5995, ext 6106
Direct Line: 512-505-6106
Fax: 1-800-359-0650
Email: bbarno@texasmutual.com
Submit applications to apps@texasmutual.com
Submit all other correspondence to underwriting@texasmutual.com

Scan Date: 08.11.2011 12:19:48 (-0400)
Queries to: prt_ar_004@texasmutual.com

Attachment: 20110811121948452.pdf

TXM00027

000027



---

**Name of Applicant**

---

Any employer seeking workers' compensation coverage in the *Texas Mutual*® Start Program must complete and submit this supplemental application along with the standard ACORD® application for workers' compensation insurance and other supplemental materials, as set forth below. The applications must include signatures of both the applicant and the agent. Submit to:

Texas Mutual Insurance Company, Start Program
6210 E. Highway 290
Austin, Texas 78723-1098
Fax: (800) 359-0650

The only employers eligible for insurance through the Start Program are those whose applications for insurance do not meet the underwriting standards for the *Texas Mutual*® voluntary market programs. It is in the applicant's best interest to exhaust all efforts to obtain insurance in the voluntary market before making application to the Start Program since coverage through the Start Program may result in higher premiums. Coverage through the Start Program is restricted to Texas employees.

A policy issued in the Start Program has limited employers liability coverage. The maximum limits of liability for that coverage are:

| | | |
|---|---|---|
| Bodily Injury by Accident: | $500,000 | Each Accident |
| Bodily Injury by Disease: | $500,000 | Each Employee |
| Bodily Injury by Disease: | $500,000 | Policy Limit |

To be considered for the Start Program, the application must be complete. A complete application must contain the following items. Please check each item to verify its inclusion, or write "none" if the item is not in existence.

- _____ ACORD® 130 and Start supplemental applications, signed by both the applicant and the agent.
- _____ Hard copy loss runs for most recent 4-year period valued within 120 days of the submission date.
- _____ Copies as filed of Federal Forms 941, 941E, 942, 943 or Texas Workforce Commission quarterly reports for the four most recent quarters. Texas Workforce Commission reports are required if the employer operates in multiple states.
- _____ The current experience modifier worksheet (if applicable) AND, if available, the two previous experience modifier worksheets. If the applicant is not experience rated, provide total premium and payroll for each of the last four years.
- _____ A copy of applicant's written safety program or the table of contents.
- _____ A cover letter describing any loss over $15,000.
- _____ If a deductible option is requested, copies of the most recent two years' financial statements either audited by an independent auditor or affirmed in writing by the applicant.

**PREMIUM PAYMENT**

The premium is due in the form of a cashier's check (or other approved guaranteed funds) or the applicant's check. If any portion of the premium is financed, a copy of the finance agreement must be furnished with the required down payment. A minimum deposit of 15% will be required. Deposit premium may not be transferred from one policy to another.

NOTE: Interim reporting is only available for accounts with fluctuating payrolls. Specific deposit requirements and reporting frequency will be indicated on the quote.

Version 2008 ALL OTHER VERSIONS ARE OBSOLETE.

TXM00028

000028

SUPPLEMENTAL INFORMATION (use additional pages if necessary)

1. Does the applicant, its owners, or its controlling management own, manage, or control any other business in Texas? Yes_____ No_____
   a. If yes, please explain. _____
   _____

   b. List all businesses that the applicant, its owners, or its controlling management commonly owned, managed, or controlled now or in the past 12 months and the federal tax identification numbers for these businesses. Attach a complete WC-RF1 for each business.
   _____     _____
   _____     _____

2. Does the applicant receive workers from or share workers with any business? Yes_____ No_____
   a. If yes, please explain. _____
   _____

   b. List all such businesses and their federal tax identification numbers. Attach a complete WC-RFI for each business.
   _____     _____
   _____     _____

3. Does the applicant share office space or any other business services with another business? Yes_____ No_____
   a. If yes, please explain. _____

   b. List all such businesses and their federal tax identification numbers. Attach a complete WC-RFI for each business.
   _____     _____
   _____     _____

4. Does the applicant have a commercial general liability or automobile insurance policy which covers another business on the same policy? Yes_____ No_____
   a. If yes, please explain. _____
   _____

   b. List all such businesses and their federal tax identification numbers. Attach a complete WC-RFI for each business and a copy of the declaration page for each policy.
   _____     _____
   _____     _____

5. Has the applicant or any business listed in items 1-4 above ever had any additional premium due for workers' compensation insurance coverage? Yes_____ No_____
   a. If yes, please explain and include the amount due, the carrier, and the date paid._____
   _____

6. Has the applicant or any business listed in items 1-4 filed bankruptcy in the past seven (7) years? Yes_____ No_____
   a. If yes, please attach a copy of the bankruptcy notice of filing and docket sheets.

7. Is applicant a corporation? Yes_____ No_____
   a. If yes, is the corporation in good standing with the Comptroller and the Secretary of State? Yes_____ No_____
      If no, please explain. _____
      _____

8. Employee leasing:
   a. Is the applicant in the employee leasing business?     Yes_____ No_____
      If yes, you must submit a completed *Professional Employer Organization Questionnaire* found on our website at www.texasmutual.com.

   b. Is the applicant in the business of providing
      temporary employees to other businesses?     Yes_____ No_____

TXM00029

000029

c.  Is the applicant using leased or temporary
    employees to perform part of its operations?        Yes____   No____
    If yes, please explain and provide a copy of the contract.

d.  Are any of the leased or temporary employees
    former employees of the applicant or former
    employees of any business listed in items 1-4?      Yes____   No____

9.  Is a Texas Railroad Commission filing required?       Yes____   No____      RRC____      LPG___

    Docket #:_____    Exact name as on permit:_____

10. Does the applicant subcontract the majority of its work to one entity? Yes____ No____
    a. If yes, please explain. _____

    b. List all such businesses and their federal tax identification numbers.
       _____          _____
       _____          _____

## APPLICANT'S AGREEMENT

In submitting this application, the applicant expressly agrees to the following:

1.  To pay as due all premiums owed to Texas Mutual Insurance Company. The applicant understands and agrees that the total estimated annual premium is subject to change because of rates, modifications, surcharges, and other charges approved by the Texas Department of Insurance.

2.  To provide, if Texas Mutual Insurance Company requires it, a personal guaranty of any additional premiums due on the insurance issued based on this application.

3.  To permit Texas Mutual Insurance Company to conduct any manner of credit check it deems advisable in connection with this application.

4.  That in the event of default on payment of any premiums due under any policy issued as a result of this application, all premiums due and unpaid shall, at the option of Texas Mutual Insurance Company, become payable at the *Texas Mutual* office in Austin, Texas.

5.  To pay prejudgment and post-judgment interest as provided by law and to pay attorney's fees incurred by Texas Mutual Insurance Company in connection with any efforts undertaken by Texas Mutual Insurance Company to collect premiums due under any policy issued as a result of this application.

6.  To pay proper premiums based on the correct classification codes for its business and employees and recognize that the classification codes on any application documents are estimates only.

7.  To pay premium at the proper rates on all labor involved in subcontracted work performed for the applicant in every instance unless a valid certificate of insurance is furnished during the policy term or unless the subcontractor qualifies as an independent contractor under the Workers' Compensation Act. Proper documentation of such coverage will be furnished to Texas Mutual Insurance Company within 10 days after the applicant contracts with the subcontractor.

8.  To maintain by employee and class of work accurate records of total remuneration earned by each employee in order that accurate audits of payroll records may be made by Texas Mutual Insurance Company and to make all records available for audit upon request by Texas Mutual Insurance Company.

9.  That Texas Mutual Insurance Company is authorized to have access to all the Texas Workforce Commission's employment information and records pertaining to the applicant and any businesses commonly owned or commonly controlled by the applicant, its owners, or controlling management, that may be under the control of the Texas Workforce Commission. The applicant hereby waives in favor of Texas Mutual Insurance Company any confidentiality of such information and records.

10. That, in any suit arising from premium or audit disputes, all events giving rise to such claim occurred in Travis County, Texas, and no substantial part of the events of such claim occurred in any other county; that maintenance of such an action in Travis County, Texas, does not work an injustice to the applicant, is in the interest of the parties, and transfer of the action would work an injustice to the parties; that the applicant will perform all its obligations hereunder and

TXM00030

000030

under any policy of insurance resulting from this application in Travis County, Texas; that Travis County, Texas, will be the legal venue for any suits arising from premium or audit disputes; and that the applicant will file any such suits in Travis County, Texas.

11. That the agent acts solely as the agent of the applicant and is not an agent of the Texas Mutual Insurance Company.

12. That no insurance coverage will be considered bound by Texas Mutual Insurance Company until the applicant has received a policy duly executed by Texas Mutual Insurance Company and such insurance shall become effective only from the date and time specified by the policy.

13. To comply with all Texas Mutual Insurance Company rules or the Texas Department of Insurance, Division of Workers' Compensation rules relating to the welfare, health, and safety of employees.

14. Within 30 days of the issuance of a policy, to implement action to comply with the non-delegable duties as outlined by the Texas Supreme Court, i.e., a written safety policy/program that is communicated to every employee, safety rules for the more hazardous operations with documentation of the communication of the rules, safety training/meetings on a regular, frequent schedule with documentation of subjects covered and employee attendance, internal inspection procedures with appropriate documentation, and selection/placement procedures that demonstrate ordinary care.

The applicant hereby represents and verifies that all statements and representations contained herein and in any supplemental documents are true and correct. Any material misrepresentation, omission, or failure to perform the agreements set forth above are grounds for rejection of the application or cancellation of any coverage which is issued in reliance on the application, and for other legal actions. If any one or more of the provisions of this contract shall be held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remaining provisions of the contract shall not in any way be affected or impaired.

| NAME OF APPLICANT (Please print) | NAME OF AGENT | DATE |
| --- | --- | --- |
| APPLICANT'S SIGNATURE | AGENT'S SIGNATURE* | TEXAS MUTUAL® PRODUCER CODE |
| TITLE (OWNER, PARTNER, OFFICER) | AGENT'S FEDERAL TAX I.D. NO. | AGENT'S LICENSE NUMBER |
| TELEPHONE NUMBER | AGENT'S TELEPHONE NUMBER | AGENT'S FAX NUMBER |

*The agent acknowledges that any return premium under the policy will be refunded directly to the policyholder or the premium finance company.

## ACORD® APPLICATION FORMS MUST BE ATTACHED TO THIS DOCUMENT

### KEY PHONE NUMBERS

MAIN NUMBER
1-800-859-5995

CLAIM REPORTING & INFORMATION
(800) TX-CLAIM (892-5246)



61200-001-9610
SUPSTA

TXM00031

000031

**TexasMutual®**
Insurance Company

AGENT: Please forward the Insured's copy
to them immediately.

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

MEFOLKER

# IMPORTANT REMINDER

Please use the following address for all deposits/annual premium payments, endorsements, final audits and financed premium.

**Texas Mutual Insurance Company**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please take time now to enter this information into your records.

NOTE: This address pertains ONLY to remittance payments and is not for use for other general correspondence to the Texas Mutual Insurance Company .

NOTE: This address is not to be used for overnight mail. These should be sent to our physical location. We would like to request all payments be sent in a timely manner so the above address may be utilized.

IMPREM (ED. 11-15-04)

TXM00033

000033



6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
1-800-859-5995

P.O. Box 12058
Austin, Texas 78711-2058
(512) 224-3800
1-800-859-5995

August 15, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Re:   PREFERRED STAFFING COMPANY LLC
      STA-0001204473 20110904

Thank you for placing this account with Texas Mutual Insurance Company. For your records we are enclosing:

- The policyholder's original copy of the policy

- Claims reporting information and forms.

- Your agency copy of the policy

We offer many online services for agents and policyholders at **texasmutual.com**. Our website allows you to submit applications online, manage your accounts with us, view your clients' claim information, create customized loss reports, and stay up-to-date with *Texas Mutual®* news and events.

As the state's leading provider of workers' compensation insurance, we strive to set the standard in Texas for service, communication, and ease of doing business. If you have any questions, please email us at **underwriting@texasmutual.com**, or call us at 1-800-859-5995.

Underwriting Department

COVAGENT — 05/12/04

TXM00034

000034



# Texas Mutual®
## Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098

**ITEM 1**

**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY

**PRODUCER**

**18220**

145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

POLICY NUMBER
STA-0001204473 20110904

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

**ITEM 2**    The Policy Period is from:    9-04-2011    To:    9-04-2012    12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A.   Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B.   Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A. The Limits of our Liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident | $   500,000 | Each Accident |
| Bodily Injury by Disease | $   500,000 | Each Employee |
| Bodily Injury by Disease | $   500,000 | Policy Limit |

C.   Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE

D.   This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**

The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM        :$     18,335.00

| | |
|---|---|
| WAIVER OF SUBROGATION . . . . . . . . . . . . . . . . . : | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS . . . . . . . . . . . : | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . . . . : | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) . : | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ). : | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ). . . : | 5,157.00- |
| DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . . . . : | .00 |
| ADMIRALTY/FELA OR L & H W . . . . . . . . . . . . . . . . : | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) . . . . . . . . : | 2,761.00- |
| EXPENSE CONSTANT CHARGE . . . . . . . . . . . . . . . . . : | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM       :$    35,205.00

| | |
|---|---|
| MINIMUM PREMIUM | 250.00 |
| DEPOSIT PREMIUM | 11,618.00 |

Countersigned by   *Ron Wright*

Issue Date:   8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

TXM00035

## IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your agent.

You may call the Texas Mutual Insurance Company toll-free telephone number for information or to make a complaint at:

### 1-800-859-5995

You may also write to:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

### PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

**Para obtener informacion o para someter una queja:**

Puede comunicarse con su agente.

Usted puede llamar al numero de telefono gratis del Texas Mutual Insurance Company para informacion o para someter una queja al:

### 1-800-859-5995

Usted tambien puede escribir a:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

### DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

### UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TXM00036



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE     2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4     ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 0000 | 12003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 0000 | 15403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 0000 | 15506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 0000 | 18810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 0000 | 19014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 0000 | 18044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 0000 | 18803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 0000 | 18833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 0000 | 18006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY                    MEFOLKER     8-15-2011

TXM00037

000037



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4        ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000018803 | | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000012881 | | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |
| | | | Subj to Experience Mod of 1.30 | | | |
| | | | Total Estimated Standard Premium | | | 18,335.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                            at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                          Endorsement No.
Premium $

WC000001A (ED. 7-11)

Authorized Representative

AGENT'S COPY                    MEFOLKER        8-15-2011

TXM00038

000038



EXTENSION OF INFORMATION PAGE

PAGE    4

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC | STA-0001204473 20110904 |
| DBA: IWORKS PERSONNEL | |
| PO BOX 100111 | ISSUE DATE |
| SAN ANTONIO, TX 78201-1411 | 8-15-2011 |

ITEM 4    ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|---|---|---|---|---|
| 42 | 9807 | INCREASED LIMITS 500/500/500 | .01 | 187.00 |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,761.00- |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,667.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,417.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,157.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 16,870.00 |
| | | Total Estimated Annual Premium | | 35,205.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)    AGENT'S COPY    MEFOLKER    8-15-2011

TXM00039

000039



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## LOCATIONS

EXTENSION OF INFORMATION PAGE

PAGE        5

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 1        **        L O C A T I O N S        **

| LOCATION NUMBER | ADDRESS |
|---|---|
| 00001 | PREFERRED STAFFING COMPANY LLC<br>5 BOCA CHICA BLVD STE 15B<br>BROWNSVILLE, TX 78520-7863<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011  EXPIRES: 9-04-2012 |
| 00002 | PREFERRED STAFFING COMPANY LLC<br>2501 BANDERA RD<br>SAN ANTONIO, TX 78238-1931<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011  EXPIRES: 9-04-2012 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company
Issued to        PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY            MEFOLKER        8-15-2011

TXM00040

000040



EXTENSION OF INFORMATION PAGE

PAGE        6

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00A | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wight_

Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          MEFOLKER     8-15-2011

TXM00041

000041



EXTENSION OF INFORMATION PAGE

PAGE    7

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D        ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904   of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
           DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

Ron Wright

**Authorized Representative**

WC000001A (ED. 7-11)       AGENT'S COPY      MEFOLKER   8-15-2011

TXM00042

000042



## LIMITED REIMBURSEMENT FOR TEXAS EMPLOYEES
## INJURED IN OTHER JURISDICTIONS

### IMPORTANT NOTICE!
### PLEASE READ THIS ENDORSEMENT CAREFULLY

This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§406.071-.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.

Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are **not** authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.

**Part Three Other States Insurance of the policy is deleted and replaced with the following:**

**I.  Limited Reimbursement Provision**

    **A.   How this endorsement applies**

This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.

1. Bodily injury must arise out of and in the course of the injured employee's temporary employment by you in a state other than Texas.

2. Bodily injury by accident must occur during the policy period.

3. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last injurious exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

4. The employee incurring bodily injury must be eligible for Texas workers' compensation benefits and must make a written election of workers' compensation benefits in the state in which the bodily injury occurred in lieu of Texas workers' compensation benefits. You must send us written notice of such election within 10 days of receiving notice yourself. Failure to provide such notice means any reimbursement will be made in accordance with the Texas Labor Code.

TM-LRC-2008

AGENT'S COPY

TXM00043

000043

### B. Reimbursement

1. We will reimburse you for the amount you have paid as workers' compensation benefits for employees, as defined above, under the workers' compensation law of any state listed in the schedule.

2. We will deduct from the benefits so reimbursed any amounts we have paid as Texas benefits to the employee for the same injury for which the other        jurisdiction's benefits are required.

3. Sections D through G of Part One of the policy will apply to reimbursement provided by this endorsement.  Sections A, B, C and H of Part One of the policy will not apply to reimbursement provided by this endorsement.

4. We will reimburse you for reasonable attorney's fees you have paid to defend the injury claim in another jurisdiction.

### II. Exclusions, Limitations and Conditions

The following conditions apply to the reimbursement afforded by this endorsement:

1. Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2. Reimbursement will be made in Texas.
3. Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
4. This endorsement provides reimbursement only in Texas and fully releases and indemnifies us and holds us harmless from any liability arising from your failure to obtain workers' compensation coverage in another jurisdiction.
5. The reimbursement provided by this endorsement excludes:
    a. bodily injury, including death, to an employee while employed in a jurisdiction where you have secured your obligation under the workers' compensation law by other insurance or by self-insurance;
    b. bodily injury, including death, to an employee while employed in a state where you affirmatively rejected the workers' compensation law; or
    c. fines or penalties arising out of your failure to comply with requirements of the workers' compensation law of any state.

### III. Premium

The premium basis and rates for work by Texas employees in jurisdictions other than Texas are the same as if the work had been done in Texas.

### IV. Schedule

Designated States:        All states of the United States of America except North Dakota, Ohio, Washington and Wyoming.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No.

_Ron Wright_

**Authorized Representative**

TM-LRC-2006



### TEXAS WORKERS' COMPENSATION AND EMPLOYERS LIABILITY POLICY

**TM-PC-2003**

The named insured ratifies and accepts the terms and conditions of the policy to which this endorsement is attached as well as the terms listed below.

1. Policies that are on an interim reporting basis may not be financed. Texas Mutual Insurance Company may cancel coverage if it determines that interim reports have been financed in violation of this prohibition.

2. The named insured certifies that the payroll established by classification codes in the application for coverage is a true and reasonable estimate for the period of coverage requested and will promptly report any material change in payroll exposures to Texas Mutual Insurance Company. Texas Mutual Insurance Company may adjust premium for the policy upon receipt of such information.

3. The named insured and its affiliates permit Texas Mutual Insurance Company access to all of their employment information and records filed with the Texas Workforce Commission, and hereby waive the confidentiality of such information and records.

4. All obligations of the named insured are performable in Travis County, Texas and said county will be the legal venue for any suit arising from this contract. Maintenance of an action in Travis County, Texas does not work an injustice to the named insured and is in the interest of the parties, and transfer of the action would work an injustice to the parties. Any suits must be filed in Travis County, Texas.

5. If the insured defaults on payment of any premiums due under any policy issued, then all premiums due and unpaid shall become due and payable at Texas Mutual Insurance Company's offices in Austin, Travis County, Texas.

6. All information supplied to Texas Mutual Insurance Company by the named insured or its agent in the application for insurance or otherwise is true and complete; nothing material regarding its operations has been omitted; and the named insured intended Texas Mutual Insurance Company to rely on such information in issuing this policy. The named insured assumed the duty of full disclosure of such information and that Texas Mutual Insurance Company has no duty to inquire further regarding such information. The named insured is not violating any provision of the Texas Workers' Compensation Act and is not subcontracting any work to a subcontractor with the intent to avoid liability as an employer.

7. The named insured will not cause any certificate of insurance to be issued for the purpose of satisfying the workers' compensation insurance requirements of any third party, including any governmental entity, unless the remuneration paid to the individual workers performing such work is disclosed to Texas Mutual Insurance Company and included in the premium calculation of the named insured. If the named insured causes a certificate of insurance to be issued for the purpose of allowing the employees of a person other than the named insured to perform work at any job site where workers' compensation is required, and such workers are not covered by workers' compensation insurance, such action by the named insured is a material breach of this insurance policy and constitutes fraud upon Texas Mutual Insurance Company.

8. The named insured has appointed the agent whose name appears on the application as its agent in fact and agrees that any representations made on its behalf by that agent are the representations of the named insured, unless there is an express written agreement between Texas Mutual Insurance Company and the agent that the agent acts on behalf of Texas Mutual Insurance Company.

9. Acceptance of this policy with all endorsements and tender of the deposit premium constitute the insured's agreement with all of the terms and conditions thereof, and the insured's acknowledgement of the obligation to pay all premiums due for the policy.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
    DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_
**Authorized Representative**

TM-PC-2003 (ED. 03/25/03)          AGENT'S COPY          MEFOLKER     8-15-2011

TXM00045

000045



## MUTUALS – MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of the Texas Mutual Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, 6210 E Highway 290, Austin, Texas, on the fourth Tuesday of June in each year, at 1:00 o'clock p.m. each year unless the Board of Directors of Texas Mutual Insurance Company specifies otherwise.

## MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distributions of dividends so fixed and determined.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL                    Endorsement No.

Premium $

_Ron Wright_

**Authorized Representative**

TM-MV-2001 (ED. 08/20/01)

AGENT'S COPY          MEFOLKER    8-15-2011

TXM00046

000046


## TEXAS TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.
b. The act is violent or dangerous to human life, property or infrastructure.
c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.
d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means, any loss resulting from an act of terrorism (including an act of war, in the case of workers' compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

TXM00047

000047

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charged for the coverage for Insured Losses under this policy is included in the amounts shown in Item 4 of the Information Page or in the Schedule in the Texas Terrorism Premium Endorsement. (TM-TPE-2008), attached to this policy.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA: DBA: IWORKS PERSONNEL

Premium:     $_____

Endorsement No.

_Ron Wright_

_____
Authorized Representative

TM-TRIPRA-2008

AGENT'S COPY     MEFOLKER     8-15-2011

TXM00048

000048



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

**TM-TPE-2008**

(Ed. 1-08)

## TEXAS TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of terrorism.

Your policy provides coverage for workers' compensation losses caused by acts of terrorism, including workers' compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of terrorism" is defined as:

    a.  Any act that is violent or dangerous to human life, property or infrastructure; and

    b.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers' compensation losses caused by an act of terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|-------|--------------------------|
| Texas | $0.00 |

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:      $_____

Endorsement No.

_Ron Wright_

Authorized Representative

TM-TPE-2008

AGENT'S COPY          MEFOLKER      8-15-2011

TXM00049

000049



In return to the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE – WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

AGENT'S COPY

TXM00050

000050

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO – EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this employers liability insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

TXM00051

000051

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356a), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Safety and Health Act (30 USC Sections 801-945), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member or the crew of any vessel;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations · issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

TXM00052

000052

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE – OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

### B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR – YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE – PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

TXM00053

000053

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

**F. Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

**G. Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

# PART SIX – CONDITIONS

**A. Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

**B. Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

**C. Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

**D. Cancellation**

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

**E. Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

TXM00054

000054

 **WORKERS' COMPENSATION AND EMPLOYERS**
**LIABILITY INSURANCE POLICY**

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| CF JORDAN | 77 CF JORDAN DR<br>EL PASO, TX 79912 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

WC000301 (ED. 1-94)

AGENT'S COPY          MEFOLKER          8-15-2011

**TXM00055**

000055



**TexasMutual** ®WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

Insurance Company

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

### Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| KCG INC<br>REW MATERIALS | VARIOUS LOCATIONS IN TEXAS<br>ANY, TX 99999 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                        at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

_____

**Authorized Representative**

WC000301 (ED. 1-94)

AGENT'S COPY                    MEFOLKER      8-15-2011

TXM00056

000056

 **TexasMutual**® Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 00 04 06**

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

#### Estimated Eligible Premium

| | | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|---|
| 1. | State | | | | |
| | TEXAS | 0.00 | 8.40 | 10.50 | 11.00 |

| 2. | Average percentage discount | 7.30 |
|---|---|---|

3.  Other Policies:

4.  If there are no entries in Items 1, 2, and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_
**Authorized Representative**

WC000406 (ED. 1-94)

AGENT'S COPY                    MEFOLKER        8-15-2011

TXM00057

000057


## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

### GENERAL SECTION

B.  **Who Is Insured** is amended to read:

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D.  **State** is amended to read:

State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE - WORKERS' COMPENSATION INSURANCE

E.  **Other Insurance** is amended by adding this sentence:

This section only applies if you have other insurance or are self-insured for the same loss.

F.  **Payments You Must Make**

This section is amended by deleting the words "workers' compensation" from number 4.

H.  **Statutory Provisions**

This section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

C.  **Exclusions**

Sections 2 and 3 are amended to add:

This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.

Section 6 is amended to read:

6.  Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D.  **We Will Defend**

This section is amended by deleting the last sentence.

TXM00058

000058

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:

6. Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. **Our Manuals** are amended by adding the sentence:

In this part, "our manuals" means manuals approved or prescribed by the State Board of Insurance.

C. **Remuneration**

Number 2 is amended to read:

2. All other persons engaged in work that would make us liable under Part One (Workers' Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers' compensation insurance.

E. **Final Premium**

Number 2 is amended to read:

2. If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

## PART SIX - CONDITIONS

A. **Inspection** is amended by adding this sentence:

Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be canceled by us.

C. **Transfer of Your Rights and Duties** is amended to read:

Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D. **Cancellation** is amended to read:

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.

3. Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal become effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew because of:

   a. Fraud in obtaining coverage;

   b. Misrepresentation of the amount of payroll for purposes of premium calculation;

   c. Failure to pay a premium when payment was due;

TXM00059

000059

d.  An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply within a reasonable period with recommendations designed to reduce a hazard that is under your control;

e.  A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.

4.  If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

Part Seven has been added as follows:

## PART SEVEN - OUR DUTY TO YOU FOR CLAIM NOTIFICATION

### A.  Claims Notification

We are required to notify you of any claim that is filed against your policy. Thereafter we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of an administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

**COMPLAINT NOTICE:** SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL                              Endorsement No.
Premium $

                                                   _Ron Wright_
                                                   **Authorized Representative**

WC 42 03 01 F (1 – 01 – 2000)              Page 3 of 3

AGENT'S COPY            MEFOLKER    8-15-2011
TXM00060

000060

 **TexasMutual®**
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 03 08**

## PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

The policy does not cover bodily injury to any person described in the Schedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons.

Schedule

LUIS TREVINO, PRESIDENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC420308 (ED. 1-97)

AGENT'S COPY       MEFOLKER    8-15-2011

TXM00061

000061



**TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY**

**WC 42 04 03 A**

## TEXAS EXPERIENCE RATING MODIFIER ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modifier, if any, which was not available when the policy was issued. We will issue an endorsement to show the proper factor when it is calculated.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                                          at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                    Endorsement No.
Premium $

*Ron Wright*

_____
Authorized Representative

WC420403A (ED. 3-97)

AGENT'S COPY                    MEFOLKER        8-15-2011

TXM00062

000062

 
## TEXAS – AUDIT PREMIUM AND
## RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

### PART FIVE - PREMIUM

D.  Premium Payments

You will pay all premium when due.  You will pay the premium even if part or all of a workers' compensation law is not valid.  The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                            at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the  Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC420407 (Ed. 3-23-2002)

AGENT'S COPY                    MEFOLKER        8-15-2011

TXM00063

000063



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

**WC42 04 08**

## TEXAS HEALTH CARE NETWORK ENDORSEMENT

This endorsement indicates that you have elected under this policy to provide workers' compensation health care services to your injured employees through a certified workers' compensation health care network that we have either established or contracted with, as provided in Chapter 1305 of the Texas Insurance Code and in Title 28, Chapter 10 of the Texas Administrative Code.

We will provide you with information concerning the use of our certified workers' compensation health care network(s) in our service area(s) and your rights and responsibilities as a participant in our network program. This includes information describing the service area(s) applicable to you and your injured employees as required in Rule VI K. of the *Texas Basic Manual of Rules, Classifications and Experience Rating Plan for Workers' Compensation and Employers' Liability Insurance*. In accordance with Chapter 1305 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code, we will also provide you with information that is required to be given to your employees, including an employee's notice of network requirements and an employee acknowledgement form.

Your premium may have been reduced because you have agreed to participate in our certified workers' compensation health care network. The amount of the premium reduction is shown on the Information Page of this policy. The reduction is estimated at the policy inception and adjusted at final audit of the policy. The reduction may be pro-rated if you elect to participate in a certified workers' compensation health care network during the policy year or if you terminate your participation in our certified workers' compensation health care network before the policy expires. The premium reduction you received may be forfeited if we determine that you have failed to provide the notice of network requirements and employee acknowledgement form to your employees in accordance with Chapter 1305.005(d) and 1305.451 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code.

Minimum premium policies are not eligible for this premium reduction.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No. _____

_Ron Wright_
_____
Authorized Representative

TM-MEDNET-2005A



## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

Schedule

1. (   )   Specific Waiver
           Name of person or organization

   ( X )   Blanket Waiver
           Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

2. Operations:   ALL TEXAS OPERATIONS

3. Premium

   The premium charge for this endorsement shall be ___2.00__ percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.

4. Advance Premium      INCLUDED, SEE INFORMATION PAGE.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                             Endorsement No.
Premium $

_____
Authorized Representative

WC420304A (ED. 1-01-2000)

AGENT'S COPY          MEFOLKER     8-15-2011

TXM00065

000065



MEFOLKER

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX  78201-1411

TXM00066

000066

## IMPORTANT REMINDER

Please use the following address for all deposits/annual premium payments, endorsements, final audits and financed premium.

**Texas Mutual Insurance Company**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please take time now to enter this information into your records.

NOTE: This address pertains ONLY to remittance payments and is not for use for other general correspondence to the Texas Mutual Insurance Company.

NOTE: This address is not to be used for overnight mail. These should be sent to our physical location. We would like to request all payments be sent in a timely manner so the above address may be utilized.

IMPREM (ED. 11-15-04)

TXM00067

000067



6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
1-800-859-5995

P.O. Box 12058
Austin, Texas 78711-2058
(512) 224-3800
1-800-859-5995

August 15, 2011

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX  78201-1411

Re:  Workers' Compensation Coverage
     STA-0001204473 20110904

Thank you for placing your account with Texas Mutual Insurance Company. For your convenience, we are enclosing a copy of your workers' compensation policy along with two claim-reporting forms you may use if one of your employees has a work-related accident.

You can also save time by reporting your injuries online at **texasmutual.com**. Our website also offers services that allow you to view your claim information, create your own customized loss reports, manage your workplace safety programs and stay up-to-date with *Texas Mutual*® news and events.

As the state's leading provider of workers' compensation insurance, we strive to set the standard in Texas for service, communication, and ease of doing business. If you have any questions, please email us at **information@texasmutual.com** or call us at 1-800-859-5995.


Underwriting Department

COVINSUR – 05/12/04

TXM00068

000068

# TEXAS STAR NETWORK®

## EMPLOYER INFORMATION FORM

**Welcome To Your Workers Compensation Health Care Provider Network  Program.**

Your insurance carrier has chosen the Texas Star Network®, a workers compensation health care network certified by the State of Texas, to offer a workers' compensation health care provider network program.  The necessary materials to implement the program are enclosed to help prepare you when an injury occurs.

**Components Of Program:**

- Preferred provider network
- Employee educational materials
- Toll-free first report of injury
- Utilization management (Pre-authorization)
- Telephonic and on-site case management (may include vocational services)
- Complaint process

**Employer Instructions:**

- Read the enclosed network educational materials and post the **"Notice of Network"**.
- Distribute network educational materials when initiating the program, within 3 days of   hiring an employee and at the time of injury.
- Document the method of delivery of educational materials, to whom the materials were delivered, the location of the delivery and the date delivered.
- Be sure that all employees sign the **Employee Acknowledgment** letter and maintain it in employee's personnel file. An employee who refuses to sign remains subject to network requirements.  Document a refusal to sign the acknowledgment in the employee's personnel file.
- Review the provider panel postings to ensure that the suggested medical providers are within the geographical service area of the worksite.  You may call the Texas Star Network® at (800) 381-8067 for additional doctors.
- When an injury occurs, report it immediately to your claims administrator.  If necessary, provide or arrange transportation of the injured employee to the network provider, or if appropriate, to the nearest emergency facility.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00069

000069

*Texas Star Network®*
*Texas Health Care*
*Provider Network*

*Employee Information Materials*

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00070

000070

To All Employees:

Your employer is committed to your health and safety at the workplace. Our first concern is to keep injuries from happening. If you are injured, we want to help you get better and return to work as soon as it is medically safe.

Your employer has chosen the Texas Star Network® as its workers' compensation health care network. It is a network built around occupational health care providers.

We will provide services through our network of medical providers and facilities. The Texas Star Network® specializes in treating injured workers and helping them return to work.

The network includes occupational health clinics and doctors who will provide you with medical treatment. Your doctor will also manage your return to work with your employer.

Under the program, you will receive:

- a primary treating doctor;
- other occupational health services and specialists;
- emergency health care services; and
- medical care if you are working or traveling outside of the geographic services area.

The Texas Star Network® has been built to provide you with timely and quality medical care. It is easy to access. It is here to provide you with quality medical care and assist you in returning to health and a productive life.

The enclosed materials will give you information to help you through your work related injury or illness.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00071

000071

*Dear Employee:*

Your employer has chosen the Texas Star Network® to manage the health care and treatment you may receive if you are injured. The Texas Star Network® is a certified workers compensation health care network. The State of Texas has approved this network to provide care for work related injuries. This program includes a network of health care providers who are trained in treating work related injuries. They are also trained in getting people back to work safely. The Texas Star Network® service area includes greater Dallas, greater Houston, Austin/San Antonio, Amarillo, Central Texas, North East Texas, El Paso, Lubbock, Midland, Rio Grande Valley, Texarkana, Nacogdoches, Central East Texas, Abilene, Victoria, Corpus Christi, Orange, Laredo, and Wichita Falls areas. These areas are shown on the enclosed map.

If you are injured at work, tell your supervisor or employer as soon as you can. The enclosed information will help you to seek care for your injury. Also, your employer will help with any questions about how to get treatment through the Texas Star Network®. You may also contact your workers' compensation insurer for any questions about your care and treatment for a work related injury. The Texas Star Network® and your employer have formed a team to provide timely health care for injured workers. The goal is to return you to work as soon as it is safe to do so.

### *Your Rights and Obligations...*

#### Choosing a Treating Doctor

If you are hurt at work and you live in the network service area, you must choose a treating doctor from the Texas Star Network®. This is required for you to receive coverage of the costs for the care of your work related injury. If at the time you are injured you belong to a health maintenance organization (HMO), you may choose your HMO primary care physician as your treating doctor. You must have chosen the doctor as your primary care doctor prior to your injury. We will approve the choice of your HMO doctor if he or she agrees to the terms of the network contract. The doctor must also agree to abide by applicable laws.

If you were injured on the job prior to September 1, 2005 and the carrier determines your injury is subject to the network, you will be advised to select a Treating Doctor from the list of participating providers in the Certified HCN. All injured workers subject to the network must live in a Certified HCN service area and must be notified, in writing, by the employer/carrier of the certified HCN requirements. You may also request a doctor you chose as your HMO primary care doctor before you were hurt. You must do this upon receipt of this notice.

If your treating doctor leaves the network we will tell you in writing. You will have the right to choose another treating doctor from the list of network doctors. If your doctor leaves the network and you have a life threatening or acute condition for which a disruption of care would be harmful to you, your doctor may request that you treat with him or her for an extra 90 days.

If you believe you live outside of the service area, you may request a service area review by calling your insurer. You should provide proof to support your belief. Within 7 days of receiving your request for review, the insurer will tell you its decision. If you do not agree with the final decision of the insurer you have the right to file a complaint with the Texas Department of Insurance. Your complaint must include your name, address, telephone number, a copy of the insurer's decision and any proof you sent to the insurer for review. A complaint form is available on the department's web site at www.tdi.state.tx.us. You may also ask for a form by writing to the HMO Division, Mail Code 103-6A, Texas Department of Insurance, P. O. Box 149104, Austin, Texas 78714-9104.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00072

000072

When waiting for the insurer to make a decision or the Texas Department of Insurance to review your complaint, you may choose to receive all health care from the network. You may be required to pay for health care services received out of the network if it is finally decided that you do live in the network's service area.

A provider listing is available at your worksite and through the network website, http://www.geoaccess.com/cvty/default.asp?company=1&client_id=TMIHCNE. It is updated every three months. It identifies providers who are taking new patients.

## Changing Doctors

It may happen that you become dissatisfied with your first choice of a treating doctor. You can select an alternate treating doctor from the list of network treating doctors in the service area where you live. We will not deny a choice of an alternate treating doctor. Before you can change treating doctors a second time, you must get permission from us.

## Referrals

You do not have to get a referral if you have an emergency health condition. All health care services that you request will be made available by the network on a timely basis, as required by your medical condition. This includes referrals. All health care services, including referrals, will be made available no more than 21 days after you make a request.

## Out-of-Network Approvals

Coventry's Network Administration Department must approve your treating doctor's out-of-network referrals (1305.006(3)) and all non-emergency, non-network providers (1305.451 (6)) before you visit those providers. If you need to request approval on a claim, please call Coventry's Network Administration Department at (888) 252-5075.

## Payment for Health Care

Network doctors have agreed to look to the insurer for payment for your health care. They will not look to you for payment. If you obtain health care from a doctor who is not in the network without prior approval from the Texas Star Network®, you may have to pay for the cost of that care. You may only access non-network health care providers and still be eligible for coverage of your medical costs if one of the following situations occurs.

- Emergency care is needed. You should go to the nearest hospital or emergency care facility.
- You do not live within the service area of the network.
- Your treating doctor refers you to an out of network provider or facility. This referral must be approved by the Texas Star Network®.
- You have chosen your HMO primary care doctor. Your doctor must agree to abide by the network contract and applicable laws.

## Complaints

You have the right to file a complaint with the Texas Star Network®. You may do this if you are dissatisfied with any aspect of network operations. This includes a complaint about your network doctor. It may also be a general complaint about the Texas Star Network®. Please read the enclosed Texas Star Network® Complaint Procedures, or call the Texas Star Network® Complaint Line at (800) 262-6122, to have your questions answered.

Texas Star Network®
Attention: Grievance Coordinator
3200 Highland Avenue

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00073

000073

Texas law does not permit the Texas Star Network® to retaliate against you if you file a complaint against the network. We also can not retaliate if you appeal the decision of the network. The law also does not permit us to retaliate against your treating doctor if he or she files a complaint against the network or appeals the decision of the network on your behalf. You also have the right file a complaint with the Texas Department of Insurance. The Texas Department of Insurance complaint form is available on the department's web site at www.tdi.state.tx.us or you may request a form by writing to the HMO Division, Mail Code 103-6A, Texas Department of Insurance, P. O. Box 149104, Austin, Texas 78714-9104.

*What to do if you are injured while on the job...*

If you are injured while on the job tell your employer as soon as possible. A list of network doctors in your service area is posted at your worksite. A complete list of doctors is also available. You will be given more instructions on how to get treatment through the Texas Star Network®. Or, you may contact us directly at the following address and/or toll-free telephone number:

**Texas Star Network®**
**720 Cool Springs Boulevard**
**Suite 300**
**Franklin, TN 37067**
**800/381-8067**

We will help you get an appointment with a network doctor.

*In case of an emergency...*

If you are injured and it is an emergency, you should seek treatment at the nearest emergency facility as soon as possible. This also applies if you are injured outside the service area. It also applies if you are injured after normal business hours.

After you receive emergency care, you may need ongoing care. You will need to select a network doctor from the list that your employer has given you. The doctor you choose will oversee the care you receive for your work related injury. Except for emergency care you must obtain all health care and specialist referrals through your treating doctor.

Emergency care does not need to be approved in advance. "Medical emergency" is defined by Texas law as a medical condition that comes up suddenly. There are acute symptoms that are severe enough that a reasonable person would believe that you need immediate care or you would be harmed. That harm would include your health or bodily functions being in danger or a loss of function of any body organ or part.

*Non-emergency care...*

Report your injury to your employer as soon as you can. Select a network treating doctor from the list given to you by your employer. Go to that doctor to be treated.

Treatment prescribed by your doctor may need to be approved in advance. You or your doctor are required to request approval from the insurer or the network for a specific treatment or services before the treatment or service is provided. You may continue to need treatment after the approved treatment is provided. For example, you may need to stay more days in the hospital than what was first approved. If so, the added treatment must be approved in advance.

© 2011 Texas Mutual Insurance Company
Revised June 2011

# Texas Star Network® Preauthorization List

This list is not intended to be comprehensive or all-inclusive; because health care is an ever-evolving science, procedures and treatments requiring prior approval will also evolve. Participating Treating Providers should therefore verify specific preauthorization requirements by referring to the updated list posted at www.texasmutual.com.

## Hospital/ASC

All non-emergency hospital or ASC (inpatient, outpatient, and observation) admissions including principle scheduled procedures and length of stay. Preauthorization request should include specific hardware, implantables, external delivery system, etc. to be utilized.

## Surgery/Procedures/Integral Devices

All non-emergency surgeries represented by AMA CPT codes 10010-69990 and/or G codes which represent a surgical procedure performed in a setting or place of service other than the doctor's office [POS 11]). Preauthorization request should include specified hardware, implantables, external delivery system, etc. to be utilized.

- All Botox Injections
- All spinal Injections (including but not limited to):
  - Epidural Steroid Injection
  - RFTC or Cryotherapy/Cryoablation
  - Sacral Iliac Joint Injection
  - Facet Injection
  - Medical Branch Block
- Trigger Point Injections (represented by AMA CPT 20553)
- Bone growth stimulators
- Discograms
- Implantable drug delivery system
- Investigational or experimental procedures or devices as determined by ODG or listed as an AMA Category III Code.
- Stimulator Devices (including, but not limited to):
  - *TENS units
  - *Interferential units
  - *Neuromuscular stimulators
  - *Dual units
  - *Spinal Cord Stimulator
  - *Peripheral nerve Stimulator
  - *Brain Stimulator

## Physical Medicine

- Cumulative Chiropractic Treatments (including manipulations and office visits) greater than 14 visits and/or greater than 10 weeks from date of injury
- Manipulations under Anesthesia (MUA)
- Cumulative Physical Therapy/Occupational Therapy greater than 14 visits and/or great than 10 weeks from date of injury
- Biofeedback

## Diagnostics

- All initial and Repeat MRI and CT scans
- Bone density scans
- Unless otherwise specified in this list, all repeat individual diagnostic studies (series) having a billed amount greater than $350.
- Surface Electromyography (EMG)

## Other

- Durable medical equipment (DME), Prosthetics and/or Orthotics, greater than $500.00 billed (purchase or accumulated rental or combination of rental/purchase
- Gym memberships

## Alternative Treatment (including, but not limited to):

- Acupuncture Outside ODG
- Acupressure
- Yoga

## Rehab Programs (including, but not limited to):

- Work Conditioning
- Work Hardening
- Chronic Pain Management Program
- Medical Rehabilitation
- Brain and Spinal Cord Rehabilitation
- Chemical Dependency Programs
- Weight loss programs

## Nursing Home (including, but not limited to):

- Skilled nursing facility, including skilled care within the same facility
- Convalescent care
- Residential care
- Assisted Living
- Group Homes

## Psychological testing and Psychotherapy (including but not limited to):

- Subsequent Evaluations
- Subsequent Tests or Testing
- All Therapy
- All Biofeedback

The number to call to request one of these treatments is (888) 252-5075. If a treatment or service request is denied, we will tell you in writing. This written notice will have information about your right to request a reconsideration or appeal of the denied treatment. It will also tell you about your right to request review by an Independent Review Organization through the Texas Department of Insurance.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00075

000075

# Employee Acknowledgment of Workers' Compensation Network

I have received information that tells me how to get health care under my employer's workers' compensation insurance.

If I am hurt on the job and live in a service area described in this information, I understand that:

1. I must choose a treating doctor from the list of doctors in the network. Or, I may ask my HMO primary care physician to agree to serve as my treating doctor. If I select my HMO primary care physician as my treating doctor, I will call Texas Mutual at (800) 859-5995 to notify them of my choice.
2. I must go to my treating doctor for all health care for my injury. If I need a specialist, my treating doctor will refer me. If I need emergency care, I may go anywhere.
3. The insurance carrier will pay the treating doctor and other network providers.
4. I might have to pay the bill if I get health care from someone other than a network doctor without network approval.
5. Knowingly making a false workers' compensation claim may lead to a criminal investigation that could result in criminal penalties such as fines and imprisonment.

_____        _____
Signature                                                                  Date

_____
Printed Name

I live at:     _____
                    Street Address

                    _____

                    _____        _____        _____
                    City                                          State              Zip Code

Name of Employer: _____

Name of Network: *Texas Star Network®*

**Network service areas are subject to change. Call (800) 381-8067 if you need a network treating provider.**

---

Please indicate whether this is the:
  ☐  Initial Employee Notification
  ☐  Injury Notification (Date of Injury: _____ / _____ / _____ )

---

**DO NOT RETURN THIS FORM TO TEXAS MUTUAL INSURANCE COMPANY UNLESS REQUESTED**

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00076

000076

# NETWORK NOTICE
## Texas Star Network®

*To All Employees:*

Your employer has chosen the Texas Star Network® to provide health care if you are injured at work. The Texas Star Network® is a certified workers' compensation health care network. This network includes medical providers that have been chosen to treat your work related injuries. They are easy to access and dedicated to giving you quality care. The following information will help you if you are injured at work.

- **If you are hurt at work and it is a life threatening emergency, you should go to the nearest emergency room. If you are injured at work after normal business hours or while working outside your service area, you should go to the nearest care facility.**

The following applies if you are hurt at work and it is not an emergency.

- Tell your employer as soon as you can.
- Choose a treating doctor from the Texas Star Network® service area where you live.
- If you are a member of a health maintenance organization (HMO) at the time you are injured, you have the right to choose your HMO primary care doctor as your treating doctor. To do this, you must have chosen the doctor as your primary care doctor before your work related injury occurred. Texas Star Network® will approve this choice if your HMO doctor agrees to abide by the terms of the network contract and comply with required laws.
- You must obtain all treatment and referrals for your injury from your treating doctor.
- Your treating doctor will be paid by your workers' compensation insurer and will not bill you for treatment.
- If you receive treatment for your injury from providers who are not in the Texas Star Network®, you may have to pay for that care.
- Information about the Texas Star Network® is available by calling toll free (800) 381-8067 or by writing to Texas Star Network®, 720 Cool Springs Boulevard, Suite 300, Franklin, TN 37067. A list of Texas Star Network® doctors is posted at the work site and is also available from your employer.
- You may be required to get certain treatments approved in advance. Treatment that requires this is listed in your network information materials. You may also request the list from your employer.
- If the doctor leaves the network and you have a life threatening condition or an acute condition you may continue to treat with a network doctor for 90 days. This must be requested by the doctor.

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00077

000077

# *Texas Star Network*® Service Area Map (as of February 2008)
## Network service areas are subject to change



*– A list of the counties in the network service area is contained on the next page –*

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00078

000078

# Texas Star Network® Service Area County List (as of February 2008)
## Network service areas are subject to change

| | | | | |
|---|---|---|---|---|
| ANDERSON | CRANE | HASKELL | MARION | SAN AUGUSTINE |
| ANDREWS | CROSBY | HAYS | MARTIN | SAN JACINTO |
| ANGELINA | DALLAM | HEMPHILL | MASON | SAN PATRICIO |
| ARANSAS | DALLAS | HENDERSON | MATAGORDA | SAN SABA |
| ARCHER | DAWSON | HIDALGO | MCCULLOCH | SCHLEICHER |
| ARMSTRONG | DEAF SMITH | HILL | MCLENNAN | SCURRY |
| ATASCOSA | DELTA | HOCKLEY | MCMULLEN | SHACKELFORD |
| AUSTIN | DENTON | HOOD | MEDINA | SHELBY |
| BAILEY | DEWITT | HOPKINS | MENARD | SHERMAN |
| BANDERA | DICKENS | HOUSTON | MIDLAND | SMITH |
| BASTROP | DONLEY | HOWARD | MILAM | SOMERVELL |
| BAYLOR | DUVAL | HUDSPETH | MILLS | STARR |
| BEE | EASTLAND | HUNT | MITCHELL | STEPHENS |
| BELL | ECTOR | HUTCHINSON | MONTAGUE | STERLING |
| BEXAR | EL PASO | IRION | MONTGOMERY | STONEWALL |
| BLANCO | ELLIS | JACK | MOORE | SWISHER |
| BORDEN | ERATH | JACKSON | MORRIS | TARRANT |
| BOSQUE | FALLS | JASPER | MOTLEY | TAYLOR |
| BOWIE | FANNIN | JEFFERSON | NACOGDOCHES | TERRY |
| BRAZORIA | FAYETTE | JIM HOGG | NAVARRO | THROCKMORTON |
| BRAZOS | FISHER | JIM WELLS | NEWTON | TITUS |
| BRISCOE | FLOYD | JOHNSON | NOLAN | TOM GREEN |
| BROOKS | FORT BEND | JONES | NUECES | TRAVIS |
| BROWN | FRANKLIN | KARNES | OCHILTREE | TRINITY |
| BURLESON | FREESTONE | KAUFMAN | OLDHAM | TYLER |
| BURNET | FRIO | KENDALL | ORANGE | UPSHUR |
| CALDWELL | GAINES | KENEDY | PALO PINTO | UPTON |
| CALHOUN | GALVESTON | KENT | PANOLA | UVALDE |
| CALLAHAN | GARZA | KERR | PARKER | VAN ZANDT |
| CAMERON | GILLESPIE | KIMBLE | PARMER | VICTORIA |
| CAMP | GLASSCOCK | KLEBERG | PECOS | WALKER |
| CARSON | GOLIAD | LAMAR | POLK | WALLER |
| CASS | GONZALES | LAMB | POTTER | WARD |
| CASTRO | GRAY | LAMPASAS | RAINS | WASHINGTON |
| CHAMBERS | GRAYSON | LAVACA | RANDALL | WEBB |
| CHEROKEE | GREGG | LEE | REAGAN | WHARTON |
| CLAY | GRIMES | LEON | REAL | WICHITA |
| COCHRAN | GUADALUPE | LIBERTY | RED RIVER | WILBARGER |
| COKE | HALE | LIMESTONE | REEVES | WILLACY |
| COLEMAN | HALL | LIPSCOMB | REFUGIO | WILLIAMSON |
| COLLIN | HAMILTON | LIVE OAK | ROBERTS | WILSON |
| COLORADO | HANSFORD | LLANO | ROBERTSON | WINKLER |
| COMAL | HARDIN | LOVING | ROCKWALL | WISE |
| COMANCHE | HARRIS | LUBBOCK | RUNNELS | WOOD |
| CONCHO | HARRISON | LYNN | RUSK | YOAKUM |
| COOKE | HARTLEY | MADISON | SABINE | YOUNG |
| CORYELL | | | | |

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00079

000079

Send the specified copies to your
Workers' Compensation Insurance Carrier
and the injured employee.

*Employers – Do not send this form to the
Texas Department of Insurance, Division of Workers' Compensation,
Unless the Division specifically requests a direct filing.

CLAIM # _____

CARRIER'S CLAIM # _____

# EMPLOYERS FIRST REPORT OF INJURY OR ILLNESS

| 1. Name (Last, First, M.I.) | 2. Sex  F ☐  M ☐ | 15. Date of Injury (m-d-y) | 16. Time of Injury  : am ☐ pm ☐ | 17. Date Lost Time Began (m-d-y) |
|---|---|---|---|---|
| 3. Social Security Number | 4. Home Phone  ( ) | 5. Date of Birth (m-d-y) | 18. Nature of Injury* | 19. Part of Body Injured or Exposed* |
| 6. Does the Employee Speak English?  If No, Specify Language  YES ☐  NO ☐ | | 20. How and Why Injury/Illness Occurred* | | |
| 7. Race  White ☐  Black ☐  Asian ☐ | 8. Ethnicity  Hispanic ☐  Native American ☐  Other ☐ | 21. Was employee doing his regular job?  YES ☐  NO ☐ | 22. Worksite Location of Injury (stairs, dock, etc.)* | |
| 9. Mailing Address  Street or P.O. Box  City    State    Zip Code    County | | 23. Address Where Injury or Exposure Occurred Name of business if incident occurred on a business site  Street or P.O. Box    County | | |
| 10. Marital Status  Married ☐  Widowed ☐  Separated ☐  Single ☐  Divorced ☐ | | City    State    Zip Code | | |
| 11. Number of Dependent Children | 12. Spouse's Name | 24. Cause of Injury(fall, tool, machine, etc.)* | | |
| 13. Doctor's Name | | 25. List Witnesses | | |
| 14. Doctor's Mailing Address (Street or P.O.Box)  City    State    Zip Code | | 26. Return to work date/or expected (m-d-y) | 27. Did employee die?  YES ☐  NO ☐ | 28. Supervisor's Name    29. Date Reported (m-d-y) |

| 30. Date of Hire (m-d-y) | 31. Was employee hired or recruited in Texas?  YES ☐  NO ☐ | 32. Length of Service in Current Position  Months ___ Years ___ | 33. Length of Service in Occupation  Months ___ Years ___ |
|---|---|---|---|
| 34. Employee Payroll Classification Code | | 35. Occupation of Injured Worker | |
| 36. Rate of Pay at this Job  $___Hourly  $___Weekly | 37. Full Work Week is:  ___ Hours  ___ Days | 38. Last Paycheck was:  $___ for ___ Hours or ___ Days | 39. Is employee an Owner, Partner, or Corporate Officer?  YES ☐  NO ☐ |

| 40. Name and Title of Person Completing Form | 41. Name of Business |
|---|---|
| 42. Business Mailing Address and Telephone Number  Street or P.O. Box    Telephone ( )  City    State    Zip Code | 43. Business Location (If different from mailing address)  Number and Street  City    State    Zip Code |

| 44. Federal Tax Identification Number | 45. Primary North American Industry Classification System Code:(6 digit) | 46. Specific NAICS Code (6 digit) | 47. Texas Comptroller Taxpayer No. |
|---|---|---|---|
| 48. Workers' Compensation Insurance Company | | 49. Policy Number | |

50. Did you request accident prevention services in past 12 months?

YES ☐  NO ☐    If yes, did you receive them?  YES ☐  NO ☐

51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING)

X _____    Date _____

TXM00080

000080



| CLAIM # | |
|---|---|
| Carrier # | |

## SUPPLEMENTAL REPORT OF INJURY

### Part I   EMPLOYER INFORMATION

| 1. Employer business name | 2. Employer phone # |
|---|---|

3. Employer mailing address

4. Insurance carrier name

5. Does the employer have return to work (RTW) opportunities available based on the injured worker's current capabilities?   yes ☐   no ☐
If so, identify contact person and phone # _____

6. Has the insurance carrier provided RTW coordination services within the past 12 months?   yes ☐   Date _____   no ☐

7. Has the employer requested RTW training from DWC or the insurance carrier?   yes ☐   no ☐

8. Has the insurance carrier provided accident prevention services in the past 12 months?   yes ☐   Date _____   no ☐

9. Has the employer requested accident prevention services from the insurance carrier?   yes ☐   no ☐

### Part II   REASON FOR FILING THIS REPORT (deadlines vary, see instructions)

10. ☐   a. The injured worker returned to work in either a full or limited capacity: File this report within 3 days.

☐   b. The injured worker is earning more or less than the pre-injury wage because of the injury: File within 10 days.

☐   c. The injured worker returned, then later had additional lost time or reduced wages as a result of the injury: File within 3 days.

☐   d. The injured worker resigned or was terminated from employment: File within 10 days.

### Part III   INJURED WORKER INFORMATION

| 11. Injured worker name | 12. SSN | 13. DOI |
|---|---|---|

14. Injured worker mailing address and phone #

| 15. First day of lost time or reduced wages for this injury (mm/dd/yyyy) | 16. First day of additional lost time or reduced wages (mm/dd/yyyy) |
|---|---|

17. Has the injured worker experienced 8 days (cumulative) of lost time or reduced wages as a result of the injury?   yes ☐   no ☐
If yes, the date of the 8th day (mm/dd/yyyy) _____

| 18. Date of most recent RTW _____<br><br>☐ Full duty, full pay<br><br>☐ Limited duty, full pay<br><br>☐ Limited duty, reduced pay | 19. Has the injured worker resigned, been terminated or died?   yes ☐   no ☐<br>date of resignation _____   date of termination _____   date of death _____<br>19a. Reason for resignation/termination<br><br>19b. Was the injured worker on limited duty when terminated?   yes ☐   no ☐ |
|---|---|
| 20. Hours the injured worker was working during the pay period of<br><br>_____ to _____ : _____ hours per week | 21. Weekly/hourly earnings for the pay period of _____<br>to _____ : $ _____ weekly   or   $ _____ |
| Indicated hours are:<br>☐ Increase from pre-injury<br>☐ Same as pre-injury<br>☐ Decrease from pre-injury | Indicated wages are:<br>☐ Increase from pre-injury wage<br>☐ Same a pre-injury wage<br>☐ Decrease from pre-injury wage |

**This form to be filed with:**   *The employer's insurance carrier and the injured worker in the timeframe as noted in Part II.*

22. To the best of my knowledge the information provided in this report is accurate and may be relied upon for evaluation of eligibility for benefits.

Submitted by: _____   ☐ Employer   ☐ Injured Worker *(If no longer working for the employer where injury occurred.)*

_____   _____
Signature and Title of person completing this form        Date

TXM00081

000081

 **LOSS PREVENTION SERVICES**

8-15-2011

Dear Policyholder:

According to an old adage, "an ounce of prevention is worth a pound of cure." This is especially true when the subject is workplace safety.

At Texas Mutual Insurance Company, we are committed to helping you make your workplace safer. Our experienced loss prevention professionals are ready to assist you, upon request, with the following accident prevention services (available at no additional charge):

- Surveys
- Loss sensitive recommendations
- Loss analysis and trending
- Help implementing safety training programs
- Industrial hygiene consultations
- Industrial health services
- Return-to-work coordination services

In addition to these services, we also offer many useful safety posters, handouts, brochures and videos. Most of these products are free (videos require return postage), and many are also available in Spanish. You may order any item by mail, and some are available online. Download handouts, training programs, and Microsoft PowerPoint® presentations using our safety resource catalog at **texasmutual.com**.

Although prevention is the best way to control costs associated with workplace injuries, your company also needs a plan for managing the effects of injuries when they occur. Having a return-to-work process in place is the most effective way to shorten injured employees' recovery time and return them to productive work as soon as medically reasonable. We can help you establish a return-to-work program, or you can go to **texasmutual.com** to download our free return-to-work tools.

Thank you for choosing Texas Mutual Insurance Company as your workers' compensation carrier. To request our loss prevention services, call **1-800-859-5995**.

Sincerely,

Loss Prevention Services

LPSERV (ED 11/01/06)

TXM00082

000082



# Privacy Notice

August 15, 2011

Dear Policyholder:

The management and staff of Texas Mutual Insurance Company (formerly the Texas Workers' Compensation Insurance Fund) are committed to maintaining the confidentiality of your non-public, personal information. We do not disclose any non-public, personal information about our customers to anyone, except as permitted by law. We do not sell any information about our customers to mailing list companies or mass marketing organizations.

**What information?**

As your current workers' compensation insurance carrier, we may collect non-public, personal information directly from you or your agent. We use this information only to serve your insurance needs, conduct company business, and fulfill legal and regulatory requirements. For example, we collect information from you or your agent, such as:

- your company name, address, and federal identification number;
- your payroll, assets, and employee class codes; and
- your loss runs (history of the number and severity of workplace injuries and illnesses).

We may obtain information from your transactions and other dealings with us such as payment history and premium balance. Also, depending on the nature of your transaction with us, we may collect information from third parties, including injured workers, health care providers, other insurance companies, government agencies, information clearinghouses, courts, and other public records.

**Confidentiality and Security Measures**

We treat your information as strictly confidential, and we maintain physical, electronic and procedural safeguards to protect your personal information. The *Texas Mutual*® employees who have access to our customers' non-public, personal information are those who need it for business purposes. We also instruct our employees on the importance of maintaining the confidentiality of our customers' information.

At Texas Mutual Insurance Company, we respect our current and former customers' privacy. We are proud of the strong relationships we have built over the years, and we value your business.

Sincerely,

Ron Wright
President

TM-PNL-2001

TXM00083

000083



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

6210 E Highway 290
Austin, Texas 78723-1098

## INFORMATION PAGE

| | |
|---|---|
| ITEM 1 | PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 |
| INSURED NAME AND ADDRESS | |

**POLICY NUMBER**
STA-0001204473 20110904

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

PRODUCER
18220

---

**ITEM 2** The Policy Period is from: 9-04-2011 To: 9-04-2012 12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | |
|---|---|---|
| Bodily Injury by Accident | $ 500,000 | Each Accident |
| Bodily Injury by Disease | $ 500,000 | Each Employee |
| Bodily Injury by Disease | $ 500,000 | Policy Limit |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE

D. This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**

The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM $ 18,335.00

| | |
|---|---|
| WAIVER OF SUBROGATION | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ) | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ) | 5,157.00- |
| DEDUCTIBLE PREMIUM | .00 |
| ADMIRALTY/FELA OR L & H W | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) | 2,761.00- |
| EXPENSE CONSTANT CHARGE | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM $ 35,205.00

MINIMUM PREMIUM 250.00

DEPOSIT PREMIUM 11,618.00 Countersigned by *Ron Wright*

Issue Date: 8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

TXM00084

000084

# IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your agent.

You may call the Texas Mutual Insurance Company toll-free telephone number for information or to make a complaint at:

### 1-800-859-5995

You may also write to:

> Texas Mutual Insurance Company
> 6210 E Highway 290
> Attn: Information Services Center
> Austin, Texas 78723-1098

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance at:

> P.O. Box 149104
> Austin, TX 78714-9104
> Fax # (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

**Para obtener informacion o para someter una queja:**

Puede comunicarse con su agente.

Usted puede llamar al numero de telefono gratis del Texas Mutual Insurance Company para informacion o para someter una queja al:

### 1-800-859-5995

Usted tambien puede escribir a:

> Texas Mutual Insurance Company
> 6210 E Highway 290
> Attn: Information Services Center
> Austin, Texas 78723-1098

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas a:

> P.O. Box 149104
> Austin, TX 78714-9104
> Fax # (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TXM00085

000085



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4          ** SCHEDULE OF OPERATIONS **
                   LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000 | 012003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 000 | 015403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 000 | 015506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 000 | 018810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 000 | 019014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 000 | 018044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 000 | 018803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 000 | 018833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 000 | 018006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                           at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to       PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY                    MEFOLKER      8-15-2011

TXM00086

000086


EXTENSION OF INFORMATION PAGE

PAGE      3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4     ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|------------------|----------|---------|
| 42 | 000 | 018803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000 | 012881 | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |
| | | | Subj to Experience Mod of  1.30 | | | |
| | | | Total Estimated Standard Premium | | | 18,335.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                      at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY                    MEFOLKER        8-15-2011

TXM00087

000087



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS - STATE

EXTENSION OF INFORMATION PAGE

PAGE      4

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC | STA-0001204473 20110904 |
| DBA: IWORKS PERSONNEL | |
| PO BOX 100111 | ISSUE DATE |
| SAN ANTONIO, TX 78201-1411 | 8-15-2011 |

ITEM 4      ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|---|---|---|---|---|
| 42 | 9807 | INCREASED LIMITS 500/500/500 | .01 | 187.00 |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,761.00- |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,667.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,417.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,157.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 16,870.00 |
| | | Total Estimated Annual Premium | | 35,205.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                              at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                              Endorsement No.

Premium $

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)            INSURED'S COPY            MEFOLKER      8-15-2011

TXM00088

000088

 **Texas Mutual®**
Insurance Company

EXTENSION OF INFORMATION PAGE

PAGE      5

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 1        **    LOCATIONS    **

| LOCATION NUMBER | ADDRESS |
|---|---|
| 00001 | PREFERRED STAFFING COMPANY LLC<br>5 BOCA CHICA BLVD STE 15B<br>BROWNSVILLE, TX 78520-7863<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011   EXPIRES: 9-04-2012 |
| 00002 | PREFERRED STAFFING COMPANY LLC<br>2501 BANDERA RD<br>SAN ANTONIO, TX 78238-1931<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011   EXPIRES: 9-04-2012 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                  at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY        MEFOLKER    8-15-2011

TXM00089

000089



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## ENDORSEMENT SCHEDULE

EXTENSION OF INFORMATION PAGE

PAGE          6

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00A | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                           at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904       of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          MEFOLKER     8-15-2011

TXM00090

000090



EXTENSION OF INFORMATION PAGE

PAGE    7

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D        ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on            at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
            DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_

**Authorized Representative**

WC000001A (ED. 7-11)        INSURED'S COPY        MEFOLKER    8-15-2011

TXM00091

000091



## LIMITED REIMBURSEMENT FOR TEXAS EMPLOYEES
## INJURED IN OTHER JURISDICTIONS

### IMPORTANT NOTICE!
### PLEASE READ THIS ENDORSEMENT CAREFULLY

This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§406.071-.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.

Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are **not** authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.

**Part Three Other States Insurance of the policy is deleted and replaced with the following:**

**I.  Limited Reimbursement Provision**

    **A.  How this endorsement applies**

This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.

    1.  Bodily injury must arise out of and in the course of the injured employee's temporary employment by you in a state other than Texas.

    2.  Bodily injury by accident must occur during the policy period.

    3.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last injurious exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

    4.  The employee incurring bodily injury must be eligible for Texas workers' compensation benefits and must make a written election of workers' compensation benefits in the state in which the bodily injury occurred in lieu of Texas workers' compensation benefits. You must send us written notice of such election within 10 days of receiving notice yourself. Failure to provide such notice means any reimbursement will be made in accordance with the Texas Labor Code.

TM-LRC-2008

INSURED'S COPY

TXM00092

000092

**B.  Reimbursement**

1.  We will reimburse you for the amount you have paid as workers' compensation benefits for employees, as defined above, under the workers' compensation law of any state listed in the schedule.

2.  We will deduct from the benefits so reimbursed any amounts we have paid as Texas benefits to the employee for the same injury for which the other    jurisdiction's benefits are required.

3.  Sections D through G of Part One of the policy will apply to reimbursement provided by this endorsement.  Sections A, B, C and H of Part One of the policy will not apply to reimbursement provided by this endorsement.

4.  We will reimburse you for reasonable attorney's fees you have paid to defend the injury claim in another jurisdiction.

**II.    Exclusions, Limitations and Conditions**

The following conditions apply to the reimbursement afforded by this endorsement:

1.  Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2.  Reimbursement will be made in Texas.
3.  Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
4.  This endorsement provides reimbursement only in Texas and fully releases and indemnifies us and holds us harmless from any liability arising from your failure to obtain workers' compensation coverage in another jurisdiction.
5.  The reimbursement provided by this endorsement excludes:
    a.  bodily injury, including death, to an employee while employed in a jurisdiction where you have secured your obligation under the workers' compensation law by other insurance or by self-insurance;
    b.  bodily injury, including death, to an employee while employed in a state where you affirmatively rejected the workers' compensation law; or
    c.  fines or penalties arising out of your failure to comply with requirements of the workers' compensation law of any state.

**III. Premium**

The premium basis and rates for work by Texas employees in jurisdictions other than Texas are the same as if the work had been done in Texas.

**IV. Schedule**

Designated States:    All states of the United States of America except North Dakota, Ohio, Washington and Wyoming.

"© 2006. National Council of Compensation Insurace, Inc.  All rights reserved.  Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No.

*Ron Wright*

**Authorized Representative**

TM-LRC-2006

INSURED'S COPY        MEFOLKER    8-15-2011

TXM00093

000093



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

TM-PC-2003

The named insured ratifies and accepts the terms and conditions of the policy to which this endorsement is attached as well as the terms listed below.

1. Policies that are on an interim reporting basis may not be financed. Texas Mutual Insurance Company may cancel coverage if it determines that interim reports have been financed in violation of this prohibition.

2. The named insured certifies that the payroll established by classification codes in the application for coverage is a true and reasonable estimate for the period of coverage requested and will promptly report any material change in payroll exposures to Texas Mutual Insurance Company. Texas Mutual Insurance Company may adjust premium for the policy upon receipt of such information.

3. The named insured and its affiliates permit Texas Mutual Insurance Company access to all of their employment information and records filed with the Texas Workforce Commission, and hereby waive the confidentiality of such information and records.

4. All obligations of the named insured are performable in Travis County, Texas and said county will be the legal venue for any suit arising from this contract. Maintenance of an action in Travis County, Texas does not work an injustice to the named insured and is in the interest of the parties, and transfer of the action would work an injustice to the parties. Any suits must be filed in Travis County, Texas.

5. If the insured defaults on payment of any premiums due under any policy issued, then all premiums due and unpaid shall become due and payable at Texas Mutual Insurance Company's offices in Austin, Travis County, Texas.

6. All information supplied to Texas Mutual Insurance Company by the named insured or its agent in the application for insurance or otherwise is true and complete; nothing material regarding its operations has been omitted; and the named insured intended Texas Mutual Insurance Company to rely on such information in issuing this policy. The named insured assumed the duty of full disclosure of such information and that Texas Mutual Insurance Company has no duty to inquire further regarding such information. The named insured is not violating any provision of the Texas Workers' Compensation Act and is not subcontracting any work to a subcontractor with the intent to avoid liability as an employer.

7. The named insured will not cause any certificate of insurance to be issued for the purpose of satisfying the workers' compensation insurance requirements of any third party, including any governmental entity, unless the remuneration paid to the individual workers performing such work is disclosed to Texas Mutual Insurance Company and included in the premium calculation of the named insured. If the named insured causes a certificate of insurance to be issued for the purpose of allowing the employees of a person other than the named insured to perform work at any job site where workers' compensation is required, and such workers are not covered by workers' compensation insurance, such action by the named insured is a material breach of this insurance policy and constitutes fraud upon Texas Mutual Insurance Company.

8. The named insured has appointed the agent whose name appears on the application as its agent in fact and agrees that any representations made on its behalf by that agent are the representations of the named insured, unless there is an express written agreement between Texas Mutual Insurance Company and the agent that the agent acts on behalf of Texas Mutual Insurance Company.

9. Acceptance of this policy with all endorsements and tender of the deposit premium constitute the insured's agreement with all of the terms and conditions thereof, and the insured's acknowledgement of the obligation to pay all premiums due for the policy.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
    DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

Ron Wight

Authorized Representative

TM-PC-2003 (ED. 03/25/03)          INSURED'S COPY          MEFOLKER     8-15-2011

TXM00094

000094



## MUTUALS – MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of the Texas Mutual Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, 6210 E Highway 290, Austin, Texas, on the fourth Tuesday of June in each year, at 1:00 o'clock p.m. each year unless the Board of Directors of Texas Mutual Insurance Company specifies otherwise.

## MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distributions of dividends so fixed and determined.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                      at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904     of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_
Authorized Representative

TM-MV-2001 (ED. 08/20/01)

INSURED'S COPY            MEFOLKER    8-15-2011

TXM00095

000095



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

## TM-TRIPRA-2008
(Ed. 1-08)

## TEXAS TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:
   a. The act is an act of terrorism.
   b. The act is violent or dangerous to human life, property or infrastructure.
   c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.
   d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means, any loss resulting from an act of terrorism (including an act of war, in the case of workers' compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

TM-TRIPRA-2008

INSURED'S COPY

TXM00096

000096

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charged for the coverage for Insured Losses under this policy is included in the amounts shown in Item 4 of the Information Page or in the Schedule in the Texas Terrorism Premium Endorsement. (TM-TPE-2008), attached to this policy.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904         of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No.

*Ron Wright*

_____

**Authorized Representative**

TM-TRIPRA-2008

INSURED'S COPY          MEFOLKER     8-15-2011

TXM00097

000097



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

## TM-TPE-2008
(Ed. 1-08)

### TEXAS TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of terrorism.

Your policy provides coverage for workers' compensation losses caused by acts of terrorism, including workers' compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of terrorism" is defined as:

    a. Any act that is violent or dangerous to human life, property or infrastructure; and

    b. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers' compensation losses caused by an act of terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|-------|--------------------------|
| Texas | $0.00 |

"© 2006, National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA: DBA: IWORKS PERSONNEL

Premium:    $_____

Endorsement No.

_Ron Wright_

——————————————————
Authorized Representative

TM-TPE-2008

INSURED'S COPY    MEFOLKER   8-15-2011

## TXM00098

000098



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

In return to the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE – WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

INSURED'S COPY

TXM00099

000099

**F. Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

**G. Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**H. Statutory Provisions**

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO – EMPLOYERS LIABILITY INSURANCE

**A. How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B. We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this employers liability insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

TXM00100

000100

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356a), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Safety and Health Act (30 USC Sections 801-945), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member or the crew of any vessel;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

TXM00101

000101

3.  We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

**H.  Recovery From Others**

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

**I.  Actions Against Us**

There will be no right of action against us under this insurance unless:

1.  You have complied with all the terms of this policy; and

2.  The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE – OTHER STATES INSURANCE

**A.  How This Insurance Applies**

1.  This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2.  If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3.  We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4.  If you have work on the effective date of this policy in any state not listed in Item 3.A of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

**B.  Notice**

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR – YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1.  Provide for immediate medical and other services required by the workers compensation law.

2.  Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3.  Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4.  Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5.  Do nothing after an injury occurs that would interfere with our right to recover from others.

6.  Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE – PREMIUM

**A.  Our Manuals**

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

**B.  Classifications**

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

**C.  Remuneration**

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1.  all your officers and employees engaged in work covered by this policy; and

2.  all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

TXM00102

000102

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

## PART SIX – CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

### E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

TXM00103

000103

 **WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| CF JORDAN | 77 CF JORDAN DR EL PASO, TX 79912 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

INSURED'S COPY      MEFOLKER   8-15-2011

TXM00104

000104

 **®WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| KCG INC<br>REW MATERIALS | VARIOUS LOCATIONS IN TEXAS<br>ANY, TX 99999 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on           at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

INSURED'S COPY      MEFOLKER    8-15-2011

TXM00105

000105



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

WC 00 04 06

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

Estimated Eligible Premium

| | | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|---|
| 1. | State | | | | |
| | TEXAS | 0.00 | 8.40 | 10.50 | 11.00 |
| 2. | Average percentage discount | 7.30 | | | |
| 3. | Other Policies: | | | | |

4. If there are no entries in Items 1, 2, and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                      at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_
Authorized Representative

WC000406 (ED. 1-94)

INSURED'S COPY          MEFOLKER      8-15-2011

TXM00106

000106

 
## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

### GENERAL SECTION

B. **Who Is Insured** is amended to read:

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D. **State** is amended to read:

State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE - WORKERS' COMPENSATION INSURANCE

E. **Other Insurance** is amended by adding this sentence:

This section only applies if you have other insurance or are self-insured for the same loss.

F. **Payments You Must Make**

This section is amended by deleting the words "workers' compensation" from number 4.

H. **Statutory Provisions**

This section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

C. **Exclusions**

Sections 2 and 3 are amended to add:

This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.

Section 6 is amended to read:

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D. **We Will Defend**

This section is amended by deleting the last sentence.

TXM00107

000107

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:

6.  Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A.  **Our Manuals** are amended by adding the sentence:

In this part, "our manuals" means manuals approved or prescribed by the State Board of Insurance.

C.  **Remuneration**

Number 2 is amended to read:

2.  All other persons engaged in work that would make us liable under Part One (Workers' Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers' compensation insurance.

E.  **Final Premium**

Number 2 is amended to read:

2.  If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

## PART SIX - CONDITIONS

A.  **Inspection** is amended by adding this sentence:

Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be canceled by us.

C.  **Transfer of Your Rights and Duties** is amended to read:

Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D.  **Cancellation** is amended to read:

1.  You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2.  We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.

3.  Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal become effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew because of:

    a.  Fraud in obtaining coverage;

    b.  Misrepresentation of the amount of payroll for purposes of premium calculation;

    c.  Failure to pay a premium when payment was due;

TXM00108

000108

d. An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply within a reasonable period with recommendations designed to reduce a hazard that is under your control;

e. A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.

4. If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

Part Seven has been added as follows:

### PART SEVEN - OUR DUTY TO YOU FOR CLAIM NOTIFICATION

A. **Claims Notification**

We are required to notify you of any claim that is filed against your policy. Thereafter we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of an administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

**COMPLAINT NOTICE:** SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                    Endorsement No.
Premium $

_Ron Wright_
_____
Authorized Representative

WC 42 03 01 F (1 - 01 - 2000)                    Page 3 of 3

INSURED'S COPY          MEFOLKER     8-15-2011

TXM00109

000109



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 03 08**

## PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

The policy does not cover bodily injury to any person described in the Schedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons.

Schedule

LUIS TREVINO, PRESIDENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                      at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL                            Endorsement No.
Premium $
                                                     _Ron Wright_
                                                     _____
                                                     Authorized Representative

WC420308 (ED. 1-97)

INSURED'S COPY          MEFOLKER     8-15-2011

TXM00110

000110



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

WC 42 04 03 A

## TEXAS EXPERIENCE RATING MODIFIER ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modifier, if any, which was not available when the policy was issued. We will issue an endorsement to show the proper factor when it is calculated.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                    at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_
**Authorized Representative**

WC420403A (ED. 3-97)

INSURED'S COPY          MEFOLKER        8-15-2011

TXM00111

000111

 **TEXAS WORKERS' COMPENSATION AND EMPLOYERS LIABILITY POLICY**

WC 42 04 07

## TEXAS – AUDIT PREMIUM AND RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

### PART FIVE - PREMIUM

D.    Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers' compensation law is not valid. The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                        at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904 of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC420407 (Ed. 3-23-2002)

INSURED'S COPY                    MEFOLKER        8-15-2011

TXM00112

000112


## TEXAS HEALTH CARE NETWORK ENDORSEMENT

This endorsement indicates that you have elected under this policy to provide workers' compensation health care services to your injured employees through a certified workers' compensation health care network that we have either established or contracted with, as provided in Chapter 1305 of the Texas Insurance Code and in Title 28, Chapter 10 of the Texas Administrative Code.

We will provide you with information concerning the use of our certified workers' compensation health care network(s) in our service area(s) and your rights and responsibilities as a participant in our network program. This includes information describing the service area(s) applicable to you and your injured employees as required in Rule VI K. of the *Texas Basic Manual of Rules, Classifications and Experience Rating Plan for Workers' Compensation and Employers' Liability Insurance.* In accordance with Chapter 1305 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code, we will also provide you with information that is required to be given to your employees, including an employee's notice of network requirements and an employee acknowledgement form.

Your premium may have been reduced because you have agreed to participate in our certified workers' compensation health care network. The amount of the premium reduction is shown on the Information Page of this policy. The reduction is estimated at the policy inception and adjusted at final audit of the policy. The reduction may be pro-rated if you elect to participate in a certified workers' compensation health care network during the policy year or if you terminate your participation in our certified workers' compensation health care network before the policy expires. The premium reduction you received may be forfeited if we determine that you have failed to provide the notice of network requirements and employee acknowledgement form to your employees in accordance with Chapter 1305.005(d) and 1305.451 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code.

Minimum premium policies are not eligible for this premium reduction.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:       $_____

Endorsement No.

_Ron Wright_

Authorized Representative

TM-MEDNET-2005A



**WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY**

**WC 42 03 04 A**

## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

Schedule

1. (   )   Specific Waiver
        Name of person or organization


    ( X )   Blanket Waiver
        Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.


2. Operations:   ALL TEXAS OPERATIONS


3. Premium

    The premium charge for this endorsement shall be ___2.00___ percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.


4. Advance Premium       INCLUDED, SEE INFORMATION PAGE.


This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                    Endorsement No.
Premium $

                                                            _Ron Wright_
                                                            —————————————————————
                                                            Authorized Representative

WC420304A (ED. 1-01-2000)

INSURED'S COPY            MEFOLKER    8-15-2011

TXM00114

000114

**NOTEPAD**

**Insured Name:**      PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** Q003021474

**Effective Date:**      20110904

**Notes:**

---

--UW: GLADYS RANGEL Time: 2011-08-10T14:58:17-05:00--

User Comments: Please review as this is a start account. Thank you.

---

--UW: BERNADINE BARNO Time: 2011-08-11T07:53:28-05:00--

User Comments: manually faxed agent for subj to apps - pend for receipt

TXM00115

000115

AGENT: Please forward the Insured's copy
to them immediately.

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

MEFOLKER

TexasMutual®
Insurance Company

TXM00116

000116

# IMPORTANT REMINDER

Please use the following address for all deposits/annual premium payments, endorsements, final audits and financed premium.

**Texas Mutual Insurance Company**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please take time now to enter this information into your records.

NOTE: This address pertains ONLY to remittance payments and is not for use for other general correspondence to the Texas Mutual Insurance Company .

NOTE: This address is not to be used for overnight mail. These should be sent to our physical location. We would like to request all payments be sent in a timely manner so the above address may be utilized.

IMPREM (ED. 11-15-04)

TXM00117

000117



**TexasMutual®**
Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
1-800-859-5995

P.O. Box 12058
Austin, Texas 78711-2058
(512) 224-3800
1-800-859-5995

August 15, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Re: PREFERRED STAFFING COMPANY LLC
STA-0001204473 20110904

Thank you for placing this account with Texas Mutual Insurance Company. For your records we are enclosing:

- The policyholder's original copy of the policy

- Claims reporting information and forms.

- Your agency copy of the policy

We offer many online services for agents and policyholders at **texasmutual.com**. Our website allows you to submit applications online, manage your accounts with us, view your clients' claim information, create customized loss reports, and stay up-to-date with *Texas Mutual®* news and events.

As the state's leading provider of workers' compensation insurance, we strive to set the standard in Texas for service, communication, and ease of doing business. If you have any questions, please email us at **underwriting@texasmutual.com**, or call us at 1-800-859-5995.

Underwriting Department

COVAGENT – 05/12/04

TXM00118

000118



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

6210 E Highway 290
Austin, Texas 78723-1098

## INFORMATION PAGE

**ITEM 1**

**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

**PRODUCER**

18220

POLICY NUMBER
STA-0001204473 20110904

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

**ITEM 2** The Policy Period is from: 9-04-2011 To: 9-04-2012 12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE

D. This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4** The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM :$ 18,335.00

```
WAIVER OF SUBROGATION  . . . . . . . . . . . . . . . . . :        367.00
INCREASED EMPLOYERS LIABILITY LIMITS  . . . . . . . . . :        187.00
TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . . :     18,889.00
PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) . :      5,667.00
PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ). :     18,417.00
WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ). . . :      5,157.00-
DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . . :           .00
ADMIRALTY/FELA OR L & H W  . . . . . . . . . . . . . . . :           .00
PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) . . . . . . . . :      2,761.00-
EXPENSE CONSTANT CHARGE  . . . . . . . . . . . . . . . . :        150.00
```

TOTAL ESTIMATED ANNUAL PREMIUM :$ 35,205.00

MINIMUM PREMIUM 250.00

DEPOSIT PREMIUM 11,618.00

Countersigned by *Ron Wright*

Issue Date: 8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

TXM00119

000119

# IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your agent.

You may call the Texas Mutual Insurance Company toll-free telephone number for information or to make a complaint at:

### 1-800-859-5995

You may also write to:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

**Para obtener informacion o para someter una queja:**

Puede comunicarse con su agente.

Usted puede llamar al numero de telefono gratis del Texas Mutual Insurance Company para informacion o para someter una queja al:

### 1-800-859-5995

Usted tambien puede escribir a:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TXM00120



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br><br>8-15-2011 |

ITEM 4      ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS:<br>TOTAL ESTIMATED<br>ANNUAL<br>REMUNERATION | RATE PER<br>$100 OF<br>REMUNERATION | ESTIMATED<br>ANNUAL<br>PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000 | 012003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 000 | 015403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 000 | 015506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 000 | 018810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 000 | 019014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 000 | 018044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 000 | 018803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 000 | 018833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 000 | 018006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                              at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY           MEFOLKER      8-15-2011

TXM00121

000121


Texas Mutual
Insurance Company

# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE   3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4    ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|---------------------------------------------------|-------------------------------|--------------------------|
| 42 | 000 | 018803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER- TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000 | 012881 | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |
| | | | Subj to Experience Mod of  1.30 | | | |
| | | | Total Estimated Standard Premium | | | 18,335.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                     at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY          MEFOLKER        8-15-2011

TXM00122

000122



PAGE    4      EXTENSION OF INFORMATION PAGE

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 4     ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 9807 | INCREASED LIMITS 500/500/500 | .01 | 187.00 |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,761.00- |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,667.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,417.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,157.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 16,870.00 |
| | | Total Estimated Annual Premium | | 35,205.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_

**Authorized Representative**

WC000001A (ED. 7-11)      AGENT'S COPY      MEFOLKER    8-15-2011

TXM00123

000123



EXTENSION OF INFORMATION PAGE

PAGE        5

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 1        **        L O C A T I O N S        **

| LOCATION NUMBER | ADDRESS |
|---|---|
| 00001 | PREFERRED STAFFING COMPANY LLC<br>5 BOCA CHICA BLVD STE 15B<br>BROWNSVILLE, TX 78520-7863<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011   EXPIRES: 9-04-2012 |
| 00002 | PREFERRED STAFFING COMPANY LLC<br>2501 BANDERA RD<br>SAN ANTONIO, TX 78238-1931<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011   EXPIRES: 9-04-2012 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to        PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)

AGENT'S COPY        MEFOLKER    8-15-2011

TXM00124

000124



EXTENSION OF INFORMATION PAGE

PAGE     6

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D        ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|---|---|---|---|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00A | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on               at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904   of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
          DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)        AGENT'S COPY       MEFOLKER    8-15-2011

TXM00125

000125



# TexasMutual® Insurance Company

EXTENSION OF INFORMATION PAGE

PAGE 7

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D           ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_

**Authorized Representative**

WC000001A (ED. 7-11)          AGENT'S COPY          MEFOLKER     8-15-2011

TXM00126

000126



### TEXAS WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## TM-LRC-2008

### LIMITED REIMBURSEMENT FOR TEXAS EMPLOYEES INJURED IN OTHER JURISDICTIONS

### IMPORTANT NOTICE!
### PLEASE READ THIS ENDORSEMENT CAREFULLY

This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§406.071-.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.

Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are **not** authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.

**Part Three Other States Insurance of the policy is deleted and replaced with the following:**

**I. Limited Reimbursement Provision**

    **A. How this endorsement applies**

This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.

    1. Bodily injury must arise out of and in the course of the injured employee's temporary employment by you in a state other than Texas.

    2. Bodily injury by accident must occur during the policy period.

    3. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last injurious exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

    4. The employee incurring bodily injury must be eligible for Texas workers' compensation benefits and must make a written election of workers' compensation benefits in the state in which the bodily injury occurred in lieu of Texas workers' compensation benefits. You must send us written notice of such election within 10 days of receiving notice yourself. Failure to provide such notice means any reimbursement will be made in accordance with the Texas Labor Code.

TM-LRC-2008

AGENT'S COPY

## TXM00127

000127

## B. Reimbursement

1. We will reimburse you for the amount you have paid as workers' compensation benefits for employees, as defined above, under the workers' compensation law of any state listed in the schedule.

2. We will deduct from the benefits so reimbursed any amounts we have paid as Texas benefits to the employee for the same injury for which the other jurisdiction's benefits are required.

3. Sections D through G of Part One of the policy will apply to reimbursement provided by this endorsement. Sections A, B, C and H of Part One of the policy will not apply to reimbursement provided by this endorsement.

4. We will reimburse you for reasonable attorney's fees you have paid to defend the injury claim in another jurisdiction.

## II. Exclusions, Limitations and Conditions

The following conditions apply to the reimbursement afforded by this endorsement:

1. Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2. Reimbursement will be made in Texas.
3. Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
4. This endorsement provides reimbursement only in Texas and fully releases and indemnifies us and holds us harmless from any liability arising from your failure to obtain workers' compensation coverage in another jurisdiction.
5. The reimbursement provided by this endorsement excludes:
   a. bodily injury, including death, to an employee while employed in a jurisdiction where you have secured your obligation under the workers' compensation law by other insurance or by self-insurance;
   b. bodily injury, including death, to an employee while employed in a state where you affirmatively rejected the workers' compensation law; or
   c. fines or penalties arising out of your failure to comply with requirements of the workers' compensation law of any state.

## III. Premium

The premium basis and rates for work by Texas employees in jurisdictions other than Texas are the same as if the work had been done in Texas.

## IV. Schedule

Designated States: All states of the United States of America except North Dakota, Ohio, Washington and Wyoming.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA:DBA: IWORKS PERSONNEL

Premium: $_____

Endorsement No.

_Ron Wright_

Authorized Representative

TM-LRC-2006

AGENT'S COPY     MEFOLKER     8-15-2011

TXM00128

000128



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

TM-PC-2003

**The named insured ratifies and accepts the terms and conditions of the policy to which this endorsement is attached as well as the terms listed below.**

1. Policies that are on an interim reporting basis may not be financed. Texas Mutual Insurance Company may cancel coverage if it determines that interim reports have been financed in violation of this prohibition.

2. The named insured certifies that the payroll established by classification codes in the application for coverage is a true and reasonable estimate for the period of coverage requested and will promptly report any material change in payroll exposures to Texas Mutual Insurance Company. Texas Mutual Insurance Company may adjust premium for the policy upon receipt of such information.

3. The named insured and its affiliates permit Texas Mutual Insurance Company access to all of their employment information and records filed with the Texas Workforce Commission, and hereby waive the confidentiality of such information and records.

4. All obligations of the named insured are performable in Travis County, Texas and said county will be the legal venue for any suit arising from this contract. Maintenance of an action in Travis County, Texas does not work an injustice to the named insured and is in the interest of the parties, and transfer of the action would work an injustice to the parties. Any suits must be filed in Travis County, Texas.

5. If the insured defaults on payment of any premiums due under any policy issued, then all premiums due and unpaid shall become due and payable at Texas Mutual Insurance Company's offices in Austin, Travis County, Texas.

6. All information supplied to Texas Mutual Insurance Company by the named insured or its agent in the application for insurance or otherwise is true and complete; nothing material regarding its operations has been omitted; and the named insured intended Texas Mutual Insurance Company to rely on such information in issuing this policy. The named insured assumed the duty of full disclosure of such information and that Texas Mutual Insurance Company has no duty to inquire further regarding such information. The named insured is not violating any provision of the Texas Workers' Compensation Act and is not subcontracting any work to a subcontractor with the intent to avoid liability as an employer.

7. The named insured will not cause any certificate of insurance to be issued for the purpose of satisfying the workers' compensation insurance requirements of any third party, including any governmental entity, unless the remuneration paid to the individual workers performing such work is disclosed to Texas Mutual Insurance Company and included in the premium calculation of the named insured. If the named insured causes a certificate of insurance to be issued for the purpose of allowing the employees of a person other than the named insured to perform work at any job site where workers' compensation is required, and such workers are not covered by workers' compensation insurance, such action by the named insured is a material breach of this insurance policy and constitutes fraud upon Texas Mutual Insurance Company.

8. The named insured has appointed the agent whose name appears on the application as its agent in fact and agrees that any representations made on its behalf by that agent are the representations of the named insured, unless there is an express written agreement between Texas Mutual Insurance Company and the agent that the agent acts on behalf of Texas Mutual Insurance Company.

9. Acceptance of this policy with all endorsements and tender of the deposit premium constitute the insured's agreement with all of the terms and conditions thereof, and the insured's acknowledgement of the obligation to pay all premiums due for the policy.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473  20110904     of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
      DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_
Authorized Representative

TXM00129

000129



## MUTUALS – MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of the Texas Mutual Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, 6210 E Highway 290, Austin, Texas, on the fourth Tuesday of June in each year, at 1:00 o'clock p.m. each year unless the Board of Directors of Texas Mutual Insurance Company specifies otherwise.

## MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distributions of dividends so fixed and determined.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.  STA–0001204473  20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL                                 Endorsement No.

Premium $

_Ron Wright_

Authorized Representative

TM-MV-2001 (ED. 08/20/01)

AGENT'S COPY          MEFOLKER     8-15-2011

TXM00130



## TEXAS TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

   a.  The act is an act of terrorism.

   b.  The act is violent or dangerous to human life, property or infrastructure.

   c.  The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

   d.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means, any loss resulting from an act of terrorism (including an act of war, in the case of workers' compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

TXM00131

000131

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**
1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.
2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.
3. The premium charged for the coverage for Insured Losses under this policy is included in the amounts shown in Item 4 of the Information Page or in the Schedule in the Texas Terrorism Premium Endorsement. (TM-TPE-2008), attached to this policy.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA–0001204473 20110904     of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:      $_____

Endorsement No.

_Ron Wright_

—————————————————————
Authorized Representative

TM-TRIPRA-2008

AGENT'S COPY          MEFOLKER     8-15-2011

TXM00132

000132



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

**TM-TPE-2008**

(Ed. 1-08)

## TEXAS TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of terrorism.

Your policy provides coverage for workers' compensation losses caused by acts of terrorism, including workers' compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of terrorism" is defined as:

   a.  Any act that is violent or dangerous to human life, property or infrastructure; and

   b.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers' compensation losses caused by an act of terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|-------|--------------------------|
| Texas | $0.00 |

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:       $_____

Endorsement No.

*Ron Wright*
_____
Authorized Representative

TM-TPE-2008

AGENT'S COPY        MEFOLKER    8-15-2011

TXM00133

000133


In return to the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE – WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

WC000000B (ED. 07/11)

1 of 5

AGENT'S COPY

TXM00134

000134

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO – EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this employers liability insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

WC000000B (ED. 07/11)

AGENT'S COPY

TXM00135

000135

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356a), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Safety and Health Act (30 USC Sections 801-945), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member or the crew of any vessel;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

TXM00136

000136

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE – OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

### B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR – YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE – PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

TXM00137

000137

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

**F. Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

**G. Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

# PART SIX – CONDITIONS

**A. Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

**B. Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

**C. Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

**D. Cancellation**

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

**E. Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

TXM00138

000138

**TexasMutual**®WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY
Insurance Company

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| CF JORDAN | 77 CF JORDAN DR EL PASO, TX 79912 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC000301 (ED. 1-94)

AGENT'S COPY          MEFOLKER     8-15-2011

TXM00139

000139

 **®WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY**

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

### Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| KCG INC<br>REW MATERIALS | VARIOUS LOCATIONS IN TEXAS<br>ANY, TX 99999 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                          at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

WC000301 (ED. 1-94)

AGENT'S COPY            MEFOLKER        8-15-2011

**TXM00140**

000140



## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

#### Estimated Eligible Premium

|   |  | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|------|-------|-------|-------|---------|
| 1. | State | | | | |
|   | TEXAS | 0.00 | 8.40 | 10.50 | 11.00 |

2. Average percentage discount        7.30

3. Other Policies:

4. If there are no entries in Items 1, 2, and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                        at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000406 (ED. 1-94)

AGENT'S COPY          MEFOLKER      8-15-2011

TXM00141

000141



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

WC 42 03 01 F

## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

### GENERAL SECTION

B.  **Who Is Insured** is amended to read:

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D.  **State** is amended to read:

State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE – WORKERS' COMPENSATION INSURANCE

E.  **Other Insurance** is amended by adding this sentence:

This section only applies if you have other insurance or are self-insured for the same loss.

F.  **Payments You Must Make**

This section is amended by deleting the words "workers' compensation" from number 4.

H.  **Statutory Provisions**

This section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO – EMPLOYERS LIABILITY INSURANCE

C.  **Exclusions**

Sections 2 and 3 are amended to add:

This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.

Section 6 is amended to read:

6.  Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D.  **We Will Defend**

This section is amended by deleting the last sentence.

TXM00142

000142

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:

6.   Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A.   **Our Manuals** are amended by adding the sentence:

In this part, "our manuals" means manuals approved or prescribed by the State Board of Insurance.

C.   **Remuneration**

Number 2 is amended to read:

2.   All other persons engaged in work that would make us liable under Part One (Workers' Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers' compensation insurance.

E.   **Final Premium**

Number 2 is amended to read:

2.   If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

## PART SIX - CONDITIONS

A.   **Inspection** is amended by adding this sentence:

Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be canceled by us.

C.   **Transfer of Your Rights and Duties** is amended to read:

Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D.   **Cancellation** is amended to read:

1.   You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2.   We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.

3.   Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal become effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew because of:

   a.   Fraud in obtaining coverage;

   b.   Misrepresentation of the amount of payroll for purposes of premium calculation;

   c.   Failure to pay a premium when payment was due;

TXM00143

000143

d. An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply within a reasonable period with recommendations designed to reduce a hazard that is under your control;

e. A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.

4. If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

Part Seven has been added as follows:

## PART SEVEN - OUR DUTY TO YOU FOR CLAIM NOTIFICATION

### A. Claims Notification

We are required to notify you of any claim that is filed against your policy. Thereafter we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of an administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

COMPLAINT NOTICE: SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473   20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:   IWORKS PERSONNEL                          Endorsement No.
Premium $

_Ron Wright_
_____
Authorized Representative

WC 42 03 01 F (1 - 01 - 2000)                Page 3 of 3

TXM00144

000144

 **TexasMutual®**
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 03 08**

### PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

The policy does not cover bodily injury to any person described in the Schedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons.

Schedule

LUIS TREVINO, PRESIDENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on             at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*
_____
**Authorized Representative**

WC420308 (ED. 1-97)

AGENT'S COPY       MEFOLKER    8-15-2011

**TXM00145**

000145



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

## WC 42 04 03 A

## TEXAS EXPERIENCE RATING MODIFIER ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modifier, if any, which was not available when the policy was issued. We will issue an endorsement to show the proper factor when it is calculated.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                  at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC420403A (ED. 3-97)

AGENT'S COPY         MEFOLKER    8-15-2011

TXM00146

000146



**TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY**

**WC 42 04 07**

## TEXAS – AUDIT PREMIUM AND
## RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

### PART FIVE - PREMIUM

D.    Premium Payments

You will pay all premium when due.  You will pay the premium even if part or all of a workers' compensation law is not valid.  The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

---

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                      at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

WC420407 (Ed. 3-23-2002)

AGENT'S COPY              MEFOLKER      8-15-2011

# TXM00147

000147



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

WC42 04 08

## TEXAS HEALTH CARE NETWORK ENDORSEMENT

This endorsement indicates that you have elected under this policy to provide workers' compensation health care services to your injured employees through a certified workers' compensation health care network that we have either established or contracted with, as provided in Chapter 1305 of the Texas Insurance Code and in Title 28, Chapter 10 of the Texas Administrative Code.

We will provide you with information concerning the use of our certified workers' compensation health care network(s) in our service area(s) and your rights and responsibilities as a participant in our network program. This includes information describing the service area(s) applicable to you and your injured employees as required in Rule VI K. of the *Texas Basic Manual of Rules, Classifications and Experience Rating Plan for Workers' Compensation and Employers' Liability Insurance*. In accordance with Chapter 1305 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code, we will also provide you with information that is required to be given to your employees, including an employee's notice of network requirements and an employee acknowledgement form.

Your premium may have been reduced because you have agreed to participate in our certified workers' compensation health care network. The amount of the premium reduction is shown on the Information Page of this policy. The reduction is estimated at the policy inception and adjusted at final audit of the policy. The reduction may be pro-rated if you elect to participate in a certified workers' compensation health care network during the policy year or if you terminate your participation in our certified workers' compensation health care network before the policy expires. The premium reduction you received may be forfeited if we determine that you have failed to provide the notice of network requirements and employee acknowledgement form to your employees in accordance with Chapter 1305.005(d) and 1305.451 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code.

Minimum premium policies are not eligible for this premium reduction.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:      $_____

Endorsement No.

_Ron Wright_
Authorized Representative

TM-MEDNET-2005A

AGENT'S COPY        MEFOLKER    8-15-2011

TXM00148

000148



## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

Schedule

1. (   )   Specific Waiver
            Name of person or organization


    ( X )  Blanket Waiver
            Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.


2. Operations:   ALL TEXAS OPERATIONS


3. Premium

    The premium charge for this endorsement shall be____2.00_ percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.


4. Advance Premium      INCLUDED, SEE INFORMATION PAGE.


This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                            Endorsement No.
Premium $

_____
Authorized Representative

WC420304A (ED. 1-01-2000)

AGENT'S COPY          MEFOLKER     8-15-2011

TXM00149

000149

TexasMutual®
Insurance Company

PREFERRED STAFFING COMPANY LLC
DBA; IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX   78201-1411

MEFOLKER

# *IMPORTANT REMINDER*

Please use the following address for all deposits/annual premium payments, endorsements, final audits and financed premium.

**Texas Mutual Insurance Company**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please take time now to enter this information into your records.

NOTE:  This address pertains ONLY to remittance payments and is not for use for other general correspondence to the Texas Mutual Insurance Company .

NOTE:  This address is not to be used for overnight mail.  These should be sent to our physical location.  We would like to request all payments be sent in a timely manner so the above address may be utilized.

IMPREM (ED. 11-15-04)

TXM00151

000151


**TexasMutual**®
Insurance Company

| | |
|---|---|
| 6210 E Highway 290 | P.O. Box 12058 |
| Austin, Texas 78723-1098 | Austin, Texas 78711-2058 |
| (512) 224-3800 | (512) 224-3800 |
| 1-800-859-5995 | 1-800-859-5995 |

August 15, 2011

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX  78201-1411

Re:  Workers' Compensation Coverage
     STA-0001204473 20110904

Thank you for placing your account with Texas Mutual Insurance Company. For your convenience, we are enclosing a copy of your workers' compensation policy along with two claim-reporting forms you may use if one of your employees has a work-related accident.

You can also save time by reporting your injuries online at **texasmutual.com**. Our website also offers services that allow you to view your claim information, create your own customized loss reports, manage your workplace safety programs and stay up-to-date with *Texas Mutual*® news and events.

As the state's leading provider of workers' compensation insurance, we strive to set the standard in Texas for service, communication, and ease of doing business. If you have any questions, please email us at **information@texasmutual.com** or call us at 1-800-859-5995.

Underwriting Department

COVINSUR — 05/12/04

TXM00152

000152

## TEXAS STAR NETWORK®

## EMPLOYER INFORMATION FORM

### Welcome To Your Workers Compensation Health Care Provider Network Program.

Your insurance carrier has chosen the Texas Star Network®, a workers compensation health care network certified by the State of Texas, to offer a workers' compensation health care provider network program. The necessary materials to implement the program are enclosed to help prepare you when an injury occurs.

### Components Of Program:

- Preferred provider network
- Employee educational materials
- Toll-free first report of injury
- Utilization management (Pre-authorization)
- Telephonic and on-site case management (may include vocational services)
- Complaint process

### Employer Instructions:

- Read the enclosed network educational materials and post the **"Notice of Network"**.
- Distribute network educational materials when initiating the program, within 3 days of hiring an employee and at the time of injury.
- Document the method of delivery of educational materials, to whom the materials were delivered, the location of the delivery and the date delivered.
- Be sure that all employees sign the **Employee Acknowledgment** letter and maintain it in employee's personnel file. An employee who refuses to sign remains subject to network requirements. Document a refusal to sign the acknowledgment in the employee's personnel file.
- Review the provider panel postings to ensure that the suggested medical providers are within the geographical service area of the worksite. You may call the Texas Star Network® at (800) 381-8067 for additional doctors.
- When an injury occurs, report it immediately to your claims administrator. If necessary, provide or arrange transportation of the injured employee to the network provider, or if appropriate, to the nearest emergency facility.

© 2011 Texas Mutual Insurance Company
Revised June 2011

*Texas Star Network®*
*Texas Health Care*
*Provider Network*

*Employee Information Materials*

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00154

000154

To All Employees:

Your employer is committed to your health and safety at the workplace. Our first concern is to keep injuries from happening. If you are injured, we want to help you get better and return to work as soon as it is medically safe.

Your employer has chosen the Texas Star Network® as its workers' compensation health care network. It is a network built around occupational health care providers.

We will provide services through our network of medical providers and facilities. The Texas Star Network® specializes in treating injured workers and helping them return to work.

The network includes occupational health clinics and doctors who will provide you with medical treatment. Your doctor will also manage your return to work with your employer.

Under the program, you will receive:

- a primary treating doctor;
- other occupational health services and specialists;
- emergency health care services; and
- medical care if you are working or traveling outside of the geographic services area.

The Texas Star Network® has been built to provide you with timely and quality medical care. It is easy to access. It is here to provide you with quality medical care and assist you in returning to health and a productive life.

The enclosed materials will give you information to help you through your work related injury or illness.

© 2011 Texas Mutual Insurance Company
Revised June 2011

*Dear Employee:*

Your employer has chosen the Texas Star Network® to manage the health care and treatment you may receive if you are injured. The Texas Star Network® is a certified workers' compensation health care network. The State of Texas has approved this network to provide care for work related injuries. This program includes a network of health care providers who are trained in treating work related injuries. They are also trained in getting people back to work safely. The Texas Star Network® service area includes greater Dallas, greater Houston, Austin/San Antonio, Amarillo, Central Texas, North East Texas, El Paso, Lubbock, Midland, Rio Grande Valley, Texarkana, Nacogdoches, Central East Texas, Abilene, Victoria, Corpus Christi, Orange, Laredo, and Wichita Falls areas. These areas are shown on the enclosed map.

If you are injured at work, tell your supervisor or employer as soon as you can. The enclosed information will help you to seek care for your injury. Also, your employer will help with any questions about how to get treatment through the Texas Star Network®. You may also contact your workers' compensation insurer for any questions about your care and treatment for a work related injury. The Texas Star Network® and your employer have formed a team to provide timely health care for injured workers. The goal is to return you to work as soon as it is safe to do so.

### *Your Rights and Obligations...*

#### Choosing a Treating Doctor

If you are hurt at work and you live in the network service area, you must choose a treating doctor from the Texas Star Network®. This is required for you to receive coverage of the costs for the care of your work related injury. If at the time you are injured you belong to a health maintenance organization (HMO), you may choose your HMO primary care physician as your treating doctor. You must have chosen the doctor as your primary care doctor prior to your injury. We will approve the choice of your HMO doctor if he or she agrees to the terms of the network contract. The doctor must also agree to abide by applicable laws.

If you were injured on the job prior to September 1, 2005 and the carrier determines your injury is subject to the network, you will be advised to select a Treating Doctor from the list of participating providers in the Certified HCN. All injured workers subject to the network must live in a Certified HCN service area and must be notified, in writing, by the employer/carrier of the certified HCN requirements. You may also request a doctor you chose as your HMO primary care doctor before you were hurt. You must do this upon receipt of this notice.

If your treating doctor leaves the network we will tell you in writing. You will have the right to choose another treating doctor from the list of network doctors. If your doctor leaves the network and you have a life threatening or acute condition for which a disruption of care would be harmful to you, your doctor may request that you treat with him or her for an extra 90 days.

If you believe you live outside of the service area, you may request a service area review by calling your insurer. You should provide proof to support your belief. Within 7 days of receiving your request for review, the insurer will tell you its decision. If you do not agree with the final decision of the insurer you have the right to file a complaint with the Texas Department of Insurance. Your complaint must include your name, address, telephone number, a copy of the insurer's decision and any proof you sent to the insurer for review. A complaint form is available on the department's web site at www.tdi.state.tx.us. You may also ask for a form by writing to the HMO Division, Mail Code 103-6A, Texas Department of Insurance, P. O. Box 149104, Austin, Texas 78714-9104.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00156

000156

When waiting for the insurer to make a decision or the Texas Department of Insurance to review your complaint, you may choose to receive all health care from the network. You may be required to pay for health care services received out of the network if it is finally decided that you do live in the network's service area.

A provider listing is available at your worksite and through the network website, http://www.geoaccess.com/cvty/default.asp?company=1&client_id=TMIHCNE. It is updated every three months. It identifies providers who are taking new patients.

Changing Doctors

It may happen that you become dissatisfied with your first choice of a treating doctor. You can select an alternate treating doctor from the list of network treating doctors in the service area where you live. We will not deny a choice of an alternate treating doctor. Before you can change treating doctors a second time, you must get permission from us.

Referrals

You do not have to get a referral if you have an emergency health condition. All health care services that you request will be made available by the network on a timely basis, as required by your medical condition. This includes referrals. All health care services, including referrals, will be made available no more than 21 days after you make a request.

Out-of-Network Approvals

Coventry's Network Administration Department must approve your treating doctor's out-of-network referrals (1305.006(3)) and all non-emergency, non-network providers (1305.451 (6)) before you visit those providers. If you need to request approval on a claim, please call Coventry's Network Administration Department at (888) 252-5075.

Payment for Health Care

Network doctors have agreed to look to the insurer for payment for your health care. They will not look to you for payment. If you obtain health care from a doctor who is not in the network without prior approval from the Texas Star Network®, you may have to pay for the cost of that care. You may only access non-network health care providers and still be eligible for coverage of your medical costs if one of the following situations occurs.

- Emergency care is needed. You should go to the nearest hospital or emergency care facility.
- You do not live within the service area of the network.
- Your treating doctor refers you to an out of network provider or facility. This referral must be approved by the Texas Star Network®.
- You have chosen your HMO primary care doctor. Your doctor must agree to abide by the network contract and applicable laws.

Complaints

You have the right to file a complaint with the Texas Star Network®. You may do this if you are dissatisfied with any aspect of network operations. This includes a complaint about your network doctor. It may also be a general complaint about the Texas Star Network®. Please read the enclosed Texas Star Network® Complaint Procedures, or call the Texas Star Network® Complaint Line at (800) 262-6122, to have your questions answered.

Texas Star Network®
Attention: Grievance Coordinator
3200 Highland Avenue

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00157

000157

Downers Grove, IL 60515
Grievance Coordinator – Fax Line (630) 737-2077
ComplaintsandGrievances@cvty.com

Texas law does not permit the Texas Star Network® to retaliate against you if you file a complaint against the network. We also can not retaliate if you appeal the decision of the network. The law also does not permit us to retaliate against your treating doctor if he or she files a complaint against the network or appeals the decision of the network on your behalf. You also have the right file a complaint with the Texas Department of Insurance. The Texas Department of Insurance complaint form is available on the department's web site at www.tdi.state.tx.us or you may request a form by writing to the HMO Division, Mail Code 103-6A, Texas Department of Insurance, P. O. Box 149104, Austin, Texas 78714-9104.

### *What to do if you are injured while on the job...*

If you are injured while on the job tell your employer as soon as possible. A list of network doctors in your service area is posted at your worksite. A complete list of doctors is also available. You will be given more instructions on how to get treatment through the Texas Star Network®. Or, you may contact us directly at the following address and/or toll-free telephone number:

**Texas Star Network®
720 Cool Springs Boulevard
Suite 300
Franklin, TN 37067
800/381-8067**

We will help you get an appointment with a network doctor.

### *In case of an emergency...*

If you are injured and it is an emergency, you should seek treatment at the nearest emergency facility as soon as possible. This also applies if you are injured outside the service area. It also applies if you are injured after normal business hours.

After you receive emergency care, you may need ongoing care. You will need to select a network doctor from the list that your employer has given you. The doctor you choose will oversee the care you receive for your work related injury. Except for emergency care you must obtain all health care and specialist referrals through your treating doctor.

Emergency care does not need to be approved in advance. "Medical emergency" is defined by Texas law as a medical condition that comes up suddenly. There are acute symptoms that are severe enough that a reasonable person would believe that you need immediate care or you would be harmed. That harm would include your health or bodily functions being in danger or a loss of function of any body organ or part.

### *Non-emergency care...*

**Report your injury to your employer as soon as you can. Select a network treating doctor from the list given to you by your employer. Go to that doctor to be treated.**

Treatment prescribed by your doctor may need to be approved in advance. You or your doctor are required to request approval from the insurer or the network for a specific treatment or services before the treatment or service is provided. You may continue to need treatment after the approved treatment is provided. For example, you may need to stay more days in the hospital than what was first approved. If so, the added treatment must be approved in advance.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00158

000158

# Texas Star Network® Preauthorization List

This list is not intended to be comprehensive or all-inclusive; because health care is an ever-evolving science, procedures and treatments requiring prior approval will also evolve. Participating Treating Providers should therefore verify specific preauthorization requirements by referring to the updated list posted at www.texasmutual.com.

## Hospital/ASC
All non-emergency hospital or ASC (inpatient, outpatient, and observation) admissions including principle scheduled procedures and length of stay. Preauthorization request should include specific hardware, implantables, external delivery system, etc. to be utilized.

## Surgery/Procedures/Integral Devices
All non-emergency surgeries represented by AMA CPT codes 10010-69990 and/or G codes which represent a surgical procedure performed in a setting or place of service other than the doctor's office [POS 11]). Preauthorization request should include specified hardware, implantables, external delivery system, etc. to be utilized.
- All Botox Injections
- All spinal Injections (including but not limited to):
  -Epidural Steroid Injection
  - RFTC or Cryotherapy/Cryoablation
  -Sacral Iliac Joint Injection
  -Facet Injection
  -Medical Branch Block
- Trigger Point Injections (represented by AMA CPT 20553)
- Bone growth stimulators
- Discograms
- Implantable drug delivery system
- Investigational or experimental procedures or devices as determined by ODG or listed as an AMA Category III Code.
- Stimulator Devices (including, but not limited to):
  *TENS units
  *Interferential units
  *Neuromuscular stimulators
  *Dual units
  *Spinal Cord Stimulator
  *Peripheral nerve Stimulator
  *Brain Stimulator

## Physical Medicine
- Cumulative Chiropractic Treatments (including manipulations and office visits) greater than 14 visits and/or greater than 10 weeks from date of injury
- Manipulations under Anesthesia (MUA)
- Cumulative Physical Therapy/Occupational Therapy greater than 14 visits and/or great than 10 weeks from date of injury
- Biofeedback

## Diagnostics
- All initial and Repeat MRI and CT scans
- Bone density scans
- Unless otherwise specified in this list, all repeat individual diagnostic studies (series) having a billed amount greater than $350.
- Surface Electromyography (EMG)

## Other
- Durable medical equipment (DME), Prosthetics and/or Orthotics, greater than $500.00 billed (purchase or accumulated rental or combination of rental/purchase
- Gym memberships

## Alternative Treatment (including, but not limited to):
- Acupuncture Outside ODG
- Acupressure
- Yoga

## Rehab Programs (including, but not limited to):
- Work Conditioning
- Work Hardening
- Chronic Pain Management Program
- Medical Rehabilitation
- Brain and Spinal Cord Rehabilitation
- Chemical Dependency Programs
- Weight loss programs

## Nursing Home (including, but not limited to):
- Skilled nursing facility, including skilled care within the same facility
- Convalescent care
- Residential care
- Assisted Living
- Group Homes

## Psychological testing and Psychotherapy (including but not limited to):
- Subsequent Evaluations
- Subsequent Tests or Testing
- All Therapy
- All Biofeedback

The number to call to request one of these treatments is (888) 252-5075. If a treatment or service request is denied, we will tell you in writing. This written notice will have information about your right to request a reconsideration or appeal of the denied treatment. It will also tell you about your right to request review by an Independent Review Organization through the Texas Department of Insurance.

© 2011 Texas Mutual Insurance Company
Revised June 2011

TXM00159

000159

# Employee Acknowledgment of Workers' Compensation Network

I have received information that tells me how to get health care under my employer's workers' compensation insurance.

If I am hurt on the job and live in a service area described in this information, I understand that:

1. I must choose a treating doctor from the list of doctors in the network. Or, I may ask my HMO primary care physician to agree to serve as my treating doctor. If I select my HMO primary care physician as my treating doctor, I will call Texas Mutual at (800) 859-5995 to notify them of my choice.
2. I must go to my treating doctor for all health care for my injury. If I need a specialist, my treating doctor will refer me. If I need emergency care, I may go anywhere.
3. The insurance carrier will pay the treating doctor and other network providers.
4. I might have to pay the bill if I get health care from someone other than a network doctor without network approval.
5. Knowingly making a false workers' compensation claim may lead to a criminal investigation that could result in criminal penalties such as fines and imprisonment.

_____           _____
Signature                                          Date

_____
Printed Name

I live at:     _____
               Street Address

               _____

               _____     _____     _____
               City                           State          Zip Code

Name of Employer: _____

Name of Network: *Texas Star Network®*

**Network service areas are subject to change. Call (800) 381-8067 if you need a network treating provider.**

| Please indicate whether this is the: |
| --- |
| ☐ Initial Employee Notification |
| ☐ Injury Notification (Date of Injury: _____ / ____ / ____ ) |

**DO NOT RETURN THIS FORM TO TEXAS MUTUAL INSURANCE COMPANY UNLESS REQUESTED**

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00160

000160

## NETWORK NOTICE
## Texas Star Network®

*To All Employees:*

Your employer has chosen the Texas Star Network® to provide health care if you are injured at work. The Texas Star Network® is a certified workers' compensation health care network. This network includes medical providers that have been chosen to treat your work related injuries. They are easy to access and dedicated to giving you quality care. The following information will help you if you are injured at work.

- **If you are hurt at work and it is a life threatening emergency, you should go to the nearest emergency room. If you are injured at work after normal business hours or while working outside your service area, you should go to the nearest care facility.**

The following applies if you are hurt at work and it is not an emergency.

- Tell your employer as soon as you can.
- Choose a treating doctor from the Texas Star Network® service area where you live.
- If you are a member of a health maintenance organization (HMO) at the time you are injured, you have the right to choose your HMO primary care doctor as your treating doctor. To do this, you must have chosen the doctor as your primary care doctor before your work related injury occurred. Texas Star Network® will approve this choice if your HMO doctor agrees to abide by the terms of the network contract and comply with required laws.
- You must obtain all treatment and referrals for your injury from your treating doctor.
- Your treating doctor will be paid by your workers' compensation insurer and will not bill you for treatment.
- If you receive treatment for your injury from providers who are not in the Texas Star Network®, you may have to pay for that care.
- Information about the Texas Star Network® is available by calling toll free (800) 381-8067 or by writing to Texas Star Network®, 720 Cool Springs Boulevard, Suite 300, Franklin, TN 37067. A list of Texas Star Network® doctors is posted at the work site and is also available from your employer.
- You may be required to get certain treatments approved in advance. Treatment that requires this is listed in your network information materials. You may also request the list from your employer.
- If the doctor leaves the network and you have a life threatening condition or an acute condition you may continue to treat with a network doctor for 90 days. This must be requested by the doctor.

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00161

000161

## *Texas Star Network*® Service Area Map (as of February 2008)
## Network service areas are subject to change



*— A list of the counties in the network service area is contained on the next page —*

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00162

000162

# Texas Star Network® Service Area County List (as of February 2008)
## Network service areas are subject to change

| | | | | |
|---|---|---|---|---|
| ANDERSON | CRANE | HASKELL | MARION | SAN AUGUSTINE |
| ANDREWS | CROSBY | HAYS | MARTIN | SAN JACINTO |
| ANGELINA | DALLAM | HEMPHILL | MASON | SAN PATRICIO |
| ARANSAS | DALLAS | HENDERSON | MATAGORDA | SAN SABA |
| ARCHER | DAWSON | HIDALGO | MCCULLOCH | SCHLEICHER |
| ARMSTRONG | DEAF SMITH | HILL | MCLENNAN | SCURRY |
| ATASCOSA | DELTA | HOCKLEY | MCMULLEN | SHACKELFORD |
| AUSTIN | DENTON | HOOD | MEDINA | SHELBY |
| BAILEY | DEWITT | HOPKINS | MENARD | SHERMAN |
| BANDERA | DICKENS | HOUSTON | MIDLAND | SMITH |
| BASTROP | DONLEY | HOWARD | MILAM | SOMERVELL |
| BAYLOR | DUVAL | HUDSPETH | MILLS | STARR |
| BEE | EASTLAND | HUNT | MITCHELL | STEPHENS |
| BELL | ECTOR | HUTCHINSON | MONTAGUE | STERLING |
| BEXAR | EL PASO | IRION | MONTGOMERY | STONEWALL |
| BLANCO | ELLIS | JACK | MOORE | SWISHER |
| BORDEN | ERATH | JACKSON | MORRIS | TARRANT |
| BOSQUE | FALLS | JASPER | MOTLEY | TAYLOR |
| BOWIE | FANNIN | JEFFERSON | NACOGDOCHES | TERRY |
| BRAZORIA | FAYETTE | JIM HOGG | NAVARRO | THROCKMORTON |
| BRAZOS | FISHER | JIM WELLS | NEWTON | TITUS |
| BRISCOE | FLOYD | JOHNSON | NOLAN | TOM GREEN |
| BROOKS | FORT BEND | JONES | NUECES | TRAVIS |
| BROWN | FRANKLIN | KARNES | OCHILTREE | TRINITY |
| BURLESON | FREESTONE | KAUFMAN | OLDHAM | TYLER |
| BURNET | FRIO | KENDALL | ORANGE | UPSHUR |
| CALDWELL | GAINES | KENEDY | PALO PINTO | UPTON |
| CALHOUN | GALVESTON | KENT | PANOLA | UVALDE |
| CALLAHAN | GARZA | KERR | PARKER | VAN ZANDT |
| CAMERON | GILLESPIE | KIMBLE | PARMER | VICTORIA |
| CAMP | GLASSCOCK | KLEBERG | PECOS | WALKER |
| CARSON | GOLIAD | LAMAR | POLK | WALLER |
| CASS | GONZALES | LAMB | POTTER | WARD |
| CASTRO | GRAY | LAMPASAS | RAINS | WASHINGTON |
| CHAMBERS | GRAYSON | LAVACA | RANDALL | WEBB |
| CHEROKEE | GREGG | LEE | REAGAN | WHARTON |
| CLAY | GRIMES | LEON | REAL | WICHITA |
| COCHRAN | GUADALUPE | LIBERTY | RED RIVER | WILBARGER |
| COKE | HALE | LIMESTONE | REEVES | WILLACY |
| COLEMAN | HALL | LIPSCOMB | REFUGIO | WILLIAMSON |
| COLLIN | HAMILTON | LIVE OAK | ROBERTS | WILSON |
| COLORADO | HANSFORD | LLANO | ROBERTSON | WINKLER |
| COMAL | HARDIN | LOVING | ROCKWALL | WISE |
| COMANCHE | HARRIS | LUBBOCK | RUNNELS | WOOD |
| CONCHO | HARRISON | LYNN | RUSK | YOAKUM |
| COOKE | HARTLEY | MADISON | SABINE | YOUNG |
| CORYELL | | | | |

©2011 Texas Mutual Insurance Company
Revised April 2011

TXM00163

000163

Send the specified copies to your
Workers' Compensation Insurance Carrier
and the injured employee.

*Employers - Do not send this form to the
Texas Department of Insurance, Division of Workers' Compensation,
Unless the Division specifically requests a direct filing.

CLAIM # _____

CARRIER'S CLAIM # _____

## EMPLOYERS FIRST REPORT OF INJURY OR ILLNESS

| 1. Name (Last, First, M.I.) | | 2. Sex  F ☐  M ☐ | 15. Date of Injury (m-d-y) | 16. Time of Injury  : am ☐ pm ☐ | 17. Date Lost Time Began (m-d-y) |
|---|---|---|---|---|---|

| 3. Social Security Number | 4. Home Phone ( ) | 5. Date of Birth (m-d-y) | 18. Nature of Injury* | 19. Part of Body Injured or Exposed* | |

**6. Does the Employee Speak English?    If No, Specify Language**
YES ☐    NO ☐

**20. How and Why Injury/Illness Occurred***

**7. Race**    White ☐    Black ☐    Asian ☐
**8. Ethnicity**    Hispanic ☐    Native American ☐    Other ☐

**21. Was employee doing his regular job?**    YES ☐    NO ☐
**22. Worksite Location of Injury (stairs, dock, etc.)***

**9. Mailing Address    Street or P.O. Box**

City    State    Zip Code    County

**23. Address Where Injury or Exposure Occurred Name of business if incident occurred on a business site**

Street or P.O. Box    County

City    State    Zip Code

**10. Marital Status**
Married ☐    Widowed ☐    Separated ☐    Single ☐    Divorced ☐

**11. Number of Dependent Children**    **12. Spouse's Name**

**24. Cause of Injury(fall, tool, machine, etc.)***

**13. Doctor's Name**

**25. List Witnesses**

**14. Doctor's Mailing Address (Street or P.O.Box)**

City    State    Zip Code

| 26. Return to work date/or expected (m-d-y) | 27. Did employee die?  YES ☐  NO ☐ | 28. Supervisor's Name | 29. Date Reported (m-d-y) |
|---|---|---|---|

| 30. Date of Hire (m-d-y) | 31. Was employee hired or recruited in Texas?  YES ☐  NO ☐ | 32. Length of Service in Current Position  Months ____ Years ____ | 33. Length of Service in Occupation  Months ____ Years ____ |
|---|---|---|---|

**34. Employee Payroll Classification Code**    **35. Occupation of Injured Worker**

| 36. Rate of Pay at this Job  $____ Hourly  $____ Weekly | 37. Full Work Week is:  ____ Hours  ____ Days | 38. Last Paycheck was:  $____ for ____ Hours or ____ Days | 39. Is employee an Owner, Partner, or Corporate Officer?  YES ☐  NO ☐ |
|---|---|---|---|

**40. Name and Title of Person Completing Form**    **41. Name of Business**

**42. Business Mailing Address and Telephone Number**
Street or P.O. Box    Telephone ( )
City    State    Zip Code

**43. Business Location (If different from mailing address)**
Number and Street
City    State    Zip Code

| 44. Federal Tax Identification Number | 45. Primary North American Industry Classification System Code.(6 digit) | 46. Specific NAICS Code (6 digit) | 47. Texas Comptroller Taxpayer No. |
|---|---|---|---|

**48. Workers' Compensation Insurance Company**    **49. Policy Number**

**50. Did you request accident prevention services in past 12 months?**
YES ☐    NO ☐    If yes, did you receive them?    YES ☐    NO ☐

**51. Signature and Title (READ INSTRUCTIONS ON INSTRUCTION SHEET BEFORE SIGNING)**
X _____    Date _____

TXM00164

000164



| CLAIM # | |
|---------|---|
| Carrier # | |

# SUPPLEMENTAL REPORT OF INJURY

## Part I    EMPLOYER INFORMATION

| 1. Employer business name | 2. Employer phone # |
|---|---|

| 3. Employer mailing address |
|---|

| 4. Insurance carrier name |
|---|

5. Does the employer have return to work (RTW) opportunities available based on the injured worker's current capabilities? yes ☐ no ☐
   If so, identify contact person and phone # _____

6. Has the insurance carrier provided RTW coordination services within the past 12 months?  yes ☐  Date _____ no ☐

7. Has the employer requested RTW training from DWC or the insurance carrier?   yes ☐  no ☐

8. Has the insurance carrier provided accident prevention services in the past 12 months?  yes ☐  Date _____ no ☐

9. Has the employer requested accident prevention services from the insurance carrier?  yes ☐  no ☐

## Part II    REASON FOR FILING THIS REPORT (deadlines vary, see instructions)

10. ☐   a.  The injured worker returned to work in either a full or limited capacity:  File this report within 3 days.

☐   b.  The injured worker is earning more or less than the pre-injury wage because of the injury:  File within 10 days.

☐   c.  The injured worker returned, then later had additional lost time or reduced wages as a result of the injury:  File within 3 days.

☐   d.  The injured worker resigned or was terminated from employment:  File within 10 days.

## Part III    INJURED WORKER INFORMATION

| 11. Injured worker name | 12. SSN | 13. DOI |
|---|---|---|

| 14. Injured worker mailing address and phone # |
|---|

| 15. First day of lost time or reduced wages for this injury (mm/dd/yyyy) | 16. First day of additional lost time or reduced wages (mm/dd/yyyy) |
|---|---|

17. Has the injured worker experienced 8 days (cumulative) of lost time or reduced wages as a result of the injury?   yes ☐ no ☐
    If yes, the date of the 8ᵗʰ day (mm/dd/yyyy) _____

| 18. Date of most recent RTW _____ | 19. Has the injured worker resigned, been terminated or died?   yes ☐ no ☐ |
|---|---|
| ☐ Full duty, full pay | date of resignation _____ date of termination _____ date of death _____ |
| ☐ Limited duty, full pay | 19a. Reason for resignation/termination |
| ☐ Limited duty, reduced pay | 19b. Was the injured worker on limited duty when terminated?   yes ☐ no ☐ |

| 20. Hours the injured worker was working during the pay period of _____ to _____ : _____ hours per week | 21. Weekly/hourly earnings for the pay period of _____ to _____ : $ _____ weekly  or  $ _____ |
|---|---|
| Indicated hours are: <br> ☐ Increase from pre-injury <br> ☐ Same as pre-injury <br> ☐ Decrease from pre-injury | Indicated wages are: <br> ☐ Increase from pre-injury wage <br> ☐ Same a pre-injury wage <br> ☐ Decrease from pre-injury wage |

**This form to be filed with:**   The employer's insurance carrier and the injured worker in the timeframe as noted in Part II.

22.  To the best of my knowledge the information provided in this report is accurate and may be relied upon for evaluation of eligibility for benefits.

Submitted by:          ☐ Employer          ☐ Injured Worker (If no longer working for the employer where injury occurred.)

_____          _____
Signature and Title of person completing this form                      Date



TXM00165

000165

 **LOSS PREVENTION SERVICES**

8-15-2011

Dear Policyholder:

According to an old adage, "an ounce of prevention is worth a pound of cure." This is especially true when the subject is workplace safety.

At Texas Mutual Insurance Company, we are committed to helping you make your workplace safer. Our experienced loss prevention professionals are ready to assist you, upon request, with the following accident prevention services (available at no additional charge):

- Surveys
- Loss sensitive recommendations
- Loss analysis and trending
- Help implementing safety training programs
- Industrial hygiene consultations
- Industrial health services
- Return-to-work coordination services

In addition to these services, we also offer many useful safety posters, handouts, brochures and videos. Most of these products are free (videos require return postage), and many are also available in Spanish. You may order any item by mail, and some are available online. Download handouts, training programs, and Microsoft PowerPoint® presentations using our safety resource catalog at **texasmutual.com**.

Although prevention is the best way to control costs associated with workplace injuries, your company also needs a plan for managing the effects of injuries when they occur. Having a return-to-work process in place is the most effective way to shorten injured employees' recovery time and return them to productive work as soon as medically reasonable. We can help you establish a return-to-work program, or you can go to **texasmutual.com** to download our free return-to-work tools.

Thank you for choosing Texas Mutual Insurance Company as your workers' compensation carrier. To request our loss prevention services, call **1-800-859-5995**.

Sincerely,

Loss Prevention Services

LPSERV (ED 11/01/06)

TXM00166

000166



# Privacy Notice

August 15, 2011

Dear Policyholder:

The management and staff of Texas Mutual Insurance Company (formerly the Texas Workers' Compensation Insurance Fund) are committed to maintaining the confidentiality of your non-public, personal information. We do not disclose any non-public, personal information about our customers to anyone, except as permitted by law. We do not sell any information about our customers to mailing list companies or mass marketing organizations.

**What information?**
As your current workers' compensation insurance carrier, we may collect non-public, personal information directly from you or your agent. We use this information only to serve your insurance needs, conduct company business, and fulfill legal and regulatory requirements. For example, we collect information from you or your agent, such as:

- your company name, address, and federal identification number;
- your payroll, assets, and employee class codes; and
- your loss runs (history of the number and severity of workplace injuries and illnesses).

We may obtain information from your transactions and other dealings with us such as payment history and premium balance. Also, depending on the nature of your transaction with us, we may collect information from third parties, including injured workers, health care providers, other insurance companies, government agencies, information clearinghouses, courts, and other public records.

**Confidentiality and Security Measures**
We treat your information as strictly confidential, and we maintain physical, electronic and procedural safeguards to protect your personal information. The *Texas Mutual*® employees who have access to our customers' non-public, personal information are those who need it for business purposes. We also instruct our employees on the importance of maintaining the confidentiality of our customers' information.

At Texas Mutual Insurance Company, we respect our current and former customers' privacy. We are proud of the strong relationships we have built over the years, and we value your business.

Sincerely,

Ron Wright
President

6210 E Highway 290, Austin, Texas 78723-1098
(512) 224-3800 | 1-800-859-5995 | (FAX) 1-800-359-0650 | www.texasmutual.com

TM-PNL-2001

TXM00167

000167



Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098

## INFORMATION PAGE

**ITEM 1**

**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

**PRODUCER**

18220

**ITEM 2**  The Policy Period is from:  9-04-2011  To:  9-04-2012  12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A.  Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B.  Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C.  Other States Insurance:  Part Three of the policy applies to the states, if any, listed here:  NONE

D.  This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**

The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM                :$     18,335.00

```
WAIVER OF SUBROGATION . . . . . . . . . . . . . . . . . . . :        367.00
INCREASED EMPLOYERS LIABILITY LIMITS  . . . . . . . . . . . :        187.00
TOTAL PREMIUM SUBJECT TO MODIFICATIONS . . . . . . . . . . :     18,889.00
PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) . :      5,667.00
PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ). :     18,417.00
WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ). . . :      5,157.00-
DEDUCTIBLE PREMIUM . . . . . . . . . . . . . . . . . . . . :           .00
ADMIRALTY/FELA OR L & H W . . . . . . . . . . . . . . . . . :           .00
PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) . . . . . . . . :      2,761.00-
EXPENSE CONSTANT CHARGE  . . . . . . . . . . . . . . . . . :        150.00
```

TOTAL ESTIMATED ANNUAL PREMIUM                :$     35,205.00

| | | |
|---|---|---|
| MINIMUM PREMIUM | 250.00 | |
| DEPOSIT PREMIUM | 11,618.00 | Countersigned by *Ron Wright* |

Issue Date:  8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

TXM00168

000168

## IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your agent.

You may call the Texas Mutual Insurance Company toll-free telephone number for information or to make a complaint at:

### 1-800-859-5995

You may also write to:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance at:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

### PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

### ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

**Para obtener informacion o para someter una queja:**

Puede comunicarse con su agente.

Usted puede llamar al numero de telefono gratis del Texas Mutual Insurance Company para informacion o para someter una queja al:

### 1-800-859-5995

Usted tambien puede escribir a:

Texas Mutual Insurance Company
6210 E Highway 290
Attn: Information Services Center
Austin, Texas 78723-1098

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas a:

P.O. Box 149104
Austin, TX 78714-9104
Fax # (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

### DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

### UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

TXM00169



PAGE 2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br>8-15-2011 |

ITEM 4 ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS:<br>TOTAL ESTIMATED<br>ANNUAL<br>REMUNERATION | RATE PER<br>$100 OF<br>REMUNERATION | ESTIMATED<br>ANNUAL<br>PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000012003 | | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 000015403 | | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 000015506 | | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 000018810 | | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 000019014 | | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 000018044 | | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 000018803 | | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 000018833 | | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 000018006 | | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY    MEFOLKER    8-15-2011



EXTENSION OF INFORMATION PAGE

PAGE      3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4      ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|---------------------------------------------------|-------------------------------|--------------------------|
| 42 | 000 | 018803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000 | 012881 | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |

Subj to Experience Mod of  1.30

Total Estimated Standard Premium                                                       18,335.00

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.      STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY                          MEFOLKER      8-15-2011

TXM00171

000171


PAGE     4                    EXTENSION OF INFORMATION PAGE

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 4        ** SCHEDULE OF OPERATIONS **
                 STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 9807 | INCREASED LIMITS 500/500/500 | .01 | 187.00 |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,761.00- |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,667.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,417.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,157.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 16,870.00 |
| | | Total Estimated Annual Premium | | 35,205.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                              at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          MEFOLKER     8-15-2011

TXM00172

000172



EXTENSION OF INFORMATION PAGE

PAGE        5

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 1        **        L O C A T I O N S        **

| LOCATION NUMBER | ADDRESS |
|---|---|
| 00001 | PREFERRED STAFFING COMPANY LLC<br>5 BOCA CHICA BLVD STE 15B<br>BROWNSVILLE, TX 78520-7863<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011   EXPIRES: 9-04-2012 |
| 00002 | PREFERRED STAFFING COMPANY LLC<br>2501 BANDERA RD<br>SAN ANTONIO, TX 78238-1931<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011   EXPIRES: 9-04-2012 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                              at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company
Issued to        PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY              MEFOLKER    8-15-2011

TXM00173

000173



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## ENDORSEMENT SCHEDULE

EXTENSION OF INFORMATION PAGE

PAGE     6

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D         **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00A | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                              at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

Ron Wright

_____
Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          MEFOLKER     8-15-2011

TXM00174

000174



EXTENSION OF INFORMATION PAGE
PAGE        7

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D              **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
            DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)                INSURED'S COPY            MEFOLKER      8-15-2011

TXM00175

000175



## TEXAS WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### TM-LRC-2008

## LIMITED REIMBURSEMENT FOR TEXAS EMPLOYEES INJURED IN OTHER JURISDICTIONS

### IMPORTANT NOTICE!
### PLEASE READ THIS ENDORSEMENT CAREFULLY

This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§406.071-.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.

Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are **not** authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with requirements of the workers' compensation laws of any jurisdiction other than Texas.

**Part Three Other States Insurance of the policy is deleted and replaced with the following:**

### I. Limited Reimbursement Provision

#### A. How this endorsement applies

This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.

1.  Bodily injury must arise out of and in the course of the injured employee's temporary employment by you in a state other than Texas.

2.  Bodily injury by accident must occur during the policy period.

3.  Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last injurious exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

4.  The employee incurring bodily injury must be eligible for Texas workers' compensation benefits and must make a written election of workers' compensation benefits in the state in which the bodily injury occurred in lieu of Texas workers' compensation benefits. You must send us written notice of such election within 10 days of receiving notice yourself. Failure to provide such notice means any reimbursement will be made in accordance with the Texas Labor Code.

TM-LRC-2008

INSURED'S COPY

TXM00176

000176

## B. Reimbursement

1. We will reimburse you for the amount you have paid as workers' compensation benefits for employees, as defined above, under the workers' compensation law of any state listed in the schedule.

2. We will deduct from the benefits so reimbursed any amounts we have paid as Texas benefits to the employee for the same injury for which the other jurisdiction's benefits are required.

3. Sections D through G of Part One of the policy will apply to reimbursement provided by this endorsement. Sections A, B, C and H of Part One of the policy will not apply to reimbursement provided by this endorsement.

4. We will reimburse you for reasonable attorney's fees you have paid to defend the injury claim in another jurisdiction.

## II. Exclusions, Limitations and Conditions

The following conditions apply to the reimbursement afforded by this endorsement:

1. Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2. Reimbursement will be made in Texas.
3. Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
4. This endorsement provides reimbursement only in Texas and fully releases and indemnifies us and holds us harmless from any liability arising from your failure to obtain workers' compensation coverage in another jurisdiction.
5. The reimbursement provided by this endorsement excludes:
   a. bodily injury, including death, to an employee while employed in a jurisdiction where you have secured your obligation under the workers' compensation law by other insurance or by self-insurance;
   b. bodily injury, including death, to an employee while employed in a state where you affirmatively rejected the workers' compensation law; or
   c. fines or penalties arising out of your failure to comply with requirements of the workers' compensation law of any state.

## III. Premium

The premium basis and rates for work by Texas employees in jurisdictions other than Texas are the same as if the work had been done in Texas.

## IV. Schedule

Designated States:    All states of the United States of America except North Dakota, Ohio, Washington and Wyoming.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No.

*Ron Wright*

**Authorized Representative**

TM-LRC-2006

INSURED'S COPY        MEFOLKER    8-15-2011

TXM00177

000177



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

TM-PC-2003

**The named insured ratifies and accepts the terms and conditions of the policy to which this endorsement is attached as well as the terms listed below.**

1. Policies that are on an interim reporting basis may not be financed. Texas Mutual Insurance Company may cancel coverage if it determines that interim reports have been financed in violation of this prohibition.

2. The named insured certifies that the payroll established by classification codes in the application for coverage is a true and reasonable estimate for the period of coverage requested and will promptly report any material change in payroll exposures to Texas Mutual Insurance Company. Texas Mutual Insurance Company may adjust premium for the policy upon receipt of such information.

3. The named insured and its affiliates permit Texas Mutual Insurance Company access to all of their employment information and records filed with the Texas Workforce Commission, and hereby waive the confidentiality of such information and records.

4. All obligations of the named insured are performable in Travis County, Texas and said county will be the legal venue for any suit arising from this contract. Maintenance of an action in Travis County, Texas does not work an injustice to the named insured and is in the interest of the parties, and transfer of the action would work an injustice to the parties. Any suits must be filed in Travis County, Texas.

5. If the insured defaults on payment of any premiums due under any policy issued, then all premiums due and unpaid shall become due and payable at Texas Mutual Insurance Company's offices in Austin, Travis County, Texas.

6. All information supplied to Texas Mutual Insurance Company by the named insured or its agent in the application for insurance or otherwise is true and complete; nothing material regarding its operations has been omitted; and the named insured intended Texas Mutual Insurance Company to rely on such information in issuing this policy. The named insured assumed the duty of full disclosure of such information and that Texas Mutual Insurance Company has no duty to inquire further regarding such information. The named insured is not violating any provision of the Texas Workers' Compensation Act and is not subcontracting any work to a subcontractor with the intent to avoid liability as an employer.

7. The named insured will not cause any certificate of insurance to be issued for the purpose of satisfying the workers' compensation insurance requirements of any third party, including any governmental entity, unless the remuneration paid to the individual workers performing such work is disclosed to Texas Mutual Insurance Company and included in the premium calculation of the named insured. If the named insured causes a certificate of insurance to be issued for the purpose of allowing the employees of a person other than the named insured to perform work at any job site where workers' compensation is required, and such workers are not covered by workers' compensation insurance, such action by the named insured is a material breach of this insurance policy and constitutes fraud upon Texas Mutual Insurance Company.

8. The named insured has appointed the agent whose name appears on the application as its agent in fact and agrees that any representations made on its behalf by that agent are the representations of the named insured, unless there is an express written agreement between Texas Mutual Insurance Company and the agent that the agent acts on behalf of Texas Mutual Insurance Company.

9. Acceptance of this policy with all endorsements and tender of the deposit premium constitute the insured's agreement with all of the terms and conditions thereof, and the insured's acknowledgement of the obligation to pay all premiums due for the policy.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No. STA–0001204473  20110904        of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
      DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

TM-PC-2003 (ED. 03/25/03)          INSURED'S COPY          MEFOLKER   8-15-2011

TXM00178

000178



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

**TM-MV-2001**

## MUTUALS — MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of the Texas Mutual Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, 6210 E Highway 290, Austin, Texas, on the fourth Tuesday of June in each year, at 1:00 o'clock p.m. each year unless the Board of Directors of Texas Mutual Insurance Company specifies otherwise.

## MUTUALS — PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distributions of dividends so fixed and determined.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                          at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

TM-MV-2001 (ED. 08/20/01)

INSURED'S COPY              MEFOLKER      8-15-2011

TXM00179

000179



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

## TM-TRIPRA-2008
(Ed. 1-08)

## TEXAS TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

### Definitions

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.

b. The act is violent or dangerous to human life, property or infrastructure.

c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.

d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means, any loss resulting from an act of terrorism (including an act of war, in the case of workers' compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

TM-TRIPRA-2008

INSURED'S COPY

TXM00180

000180

**Limitation of Liability**

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

**Policyholder Disclosure Notice**

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charged for the coverage for Insured Losses under this policy is included in the amounts shown in Item 4 of the Information Page or in the Schedule in the Texas Terrorism Premium Endorsement. (TM-TPE-2008), attached to this policy.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No.

_Ron Wright_
**Authorized Representative**

TM-TRIPRA-2008



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

## TM-TPE-2008
(Ed. 1-08)

### TEXAS TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of terrorism.

Your policy provides coverage for workers' compensation losses caused by acts of terrorism, including workers' compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of terrorism" is defined as:

    a.  Any act that is violent or dangerous to human life, property or infrastructure; and

    b.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers' compensation losses caused by an act of terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|-------|--------------------------|
| Texas | $0.00 |

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:DBA: IWORKS PERSONNEL

Premium:    $_____

Endorsement No. _____

*Ron Wright*
_____
Authorized Representative

TM-TPE-2008

INSURED'S COPY      MEFOLKER    8-15-2011

TXM00182

000182



In return to the payment of the premium and subject to all terms of this policy, we agree with you as follows:

## GENERAL SECTION

### A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

### B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

### C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

### D. State

State means any state of the United States of America, and the District of Columbia.

### E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

## PART ONE – WORKERS COMPENSATION INSURANCE

### A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

### B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

### C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

### D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

### E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

INSURED'S COPY

TXM00183

000183

### F. Payments You Must Make

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1. of your serious and willful misconduct;

2. you knowingly employ an employee in violation of law;

3. you fail to comply with a health or safety law or regulation; or

4. you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

### G. Recovery From Others

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

### H. Statutory Provisions

These statements apply where they are required by law.

1. As between an injured worker and us, we have notice of the injury when you have notice.

2. Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3. We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4. Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5. This insurance conforms to the parts of the workers compensation law that apply to:

   a. benefits payable by this insurance;

   b. special taxes, payments into security or other special funds, and assessments payable by us under that law.

6. Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

## PART TWO – EMPLOYERS LIABILITY INSURANCE

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. The bodily injury must arise out of and in the course of the injured employee's employment by you.

2. The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3. Bodily injury by accident must occur during the policy period.

4. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5. If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this employers liability insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1. For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2. For care and loss of services; and

3. For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4. Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

INSURED'S COPY

TXM00184

000184

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356a), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Safety and Health Act (30 USC Sections 801-945), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member or the crew of any vessel;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

TXM00185

000185

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

### H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

### I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

## PART THREE – OTHER STATES INSURANCE

### A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

### B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

## PART FOUR – YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE – PREMIUM

### A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

### B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

### C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

TXM00186

000186

**D. Premium Payments**

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

**E. Final Premium**

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

**F. Records**

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

**G. Audit**

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

# PART SIX – CONDITIONS

**A. Inspection**

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

**B. Long Term Policy**

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

**C. Transfer of Your Rights and Duties**

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

**D. Cancellation**

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

**E. Sole Representative**

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

INSURED'S COPY

TXM00187

000187



**TexasMutual** ®WORKERS' COMPENSATION AND EMPLOYERS
Insurance Company
LIABILITY INSURANCE POLICY

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| CF JORDAN | 77 CF JORDAN DR<br>EL PASO, TX 79912 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                    at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

WC000301 (ED. 1-94)

INSURED'S COPY          MEFOLKER     8-15-2011

TXM00188

000188



**Texas Mutual** ®WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

Insurance Company

# WC 00 03 01

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| KCG INC<br>REW MATERIALS | VARIOUS LOCATIONS IN TEXAS<br>ANY, TX 99999 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                        at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

INSURED'S COPY                    MEFOLKER        8-15-2011

TXM00189

000189



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 00 04 06**

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

### Schedule

#### Estimated Eligible Premium

| | | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|---|
| 1. | State | | | | |
| | TEXAS | 0.00 | 8.40 | 10.50 | 11.00 |

2. Average percentage discount     7.30

3. Other Policies:

4. If there are no entries in Items 1, 2, and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on               at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*
_____
**Authorized Representative**

WC000406 (ED. 1-94)

INSURED'S COPY        MEFOLKER     8-15-2011

TXM00190

000190

 
## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

### GENERAL SECTION

B. **Who Is Insured** is amended to read:

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D. **State** is amended to read:

State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE - WORKERS' COMPENSATION INSURANCE

E. **Other Insurance** is amended by adding this sentence:

This section only applies if you have other insurance or are self-insured for the same loss.

F. **Payments You Must Make**

This section is amended by deleting the words "workers' compensation" from number 4.

H. **Statutory Provisions**

This section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

C. **Exclusions**

Sections 2 and 3 are amended to add:

This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.

Section 6 is amended to read:

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D. **We Will Defend**

This section is amended by deleting the last sentence.

WC 42 03 01 F  (1 – 01 – 2000)

TXM00191

000191

# PART FOUR - YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:

6. Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

# PART FIVE - PREMIUM

A. **Our Manuals** are amended by adding the sentence:

In this part, "our manuals" means manuals approved or prescribed by the State Board of Insurance.

C. **Remuneration**

Number 2 is amended to read:

2. All other persons engaged in work that would make us liable under Part One (Workers' Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers' compensation insurance.

E. **Final Premium**

Number 2 is amended to read:

2. If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

# PART SIX - CONDITIONS

A. **Inspection** is amended by adding this sentence:

Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be canceled by us.

C. **Transfer of Your Rights and Duties** is amended to read:

Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D. **Cancellation** is amended to read:

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.

3. Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal become effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew because of:

   a. Fraud in obtaining coverage;

   b. Misrepresentation of the amount of payroll for purposes of premium calculation;

   c. Failure to pay a premium when payment was due;

TXM00192

000192

d. An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply within a reasonable period with recommendations designed to reduce a hazard that is under your control;

e. A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.

4. If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

Part Seven has been added as follows:

## PART SEVEN - OUR DUTY TO YOU FOR CLAIM NOTIFICATION

A. **Claims Notification**

We are required to notify you of any claim that is filed against your policy. Thereafter we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of an administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

**COMPLAINT NOTICE:** SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC 42 03 01 F (1 – 01 – 2000)                    Page 3 of 3

TXM00193

000193

 **TexasMutual**®
Insurance Company

**WORKERS' COMPENSATION AND EMPLOYERS**
**LIABILITY INSURANCE POLICY**

**WC 42 03 08**

## PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

The policy does not cover bodily injury to any person described in the Schedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons.

Schedule

LUIS TREVINO, PRESIDENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

WC420308 (ED. 1-97)

INSURED'S COPY         MEFOLKER    8-15-2011

TXM00194

000194



## TEXAS EXPERIENCE RATING MODIFIER ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modifier, if any, which was not available when the policy was issued. We will issue an endorsement to show the proper factor when it is calculated.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC420403A (ED. 3-97)

INSURED'S COPY          MEFOLKER      8-15-2011

TXM00195

000195

 TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

WC 42 04 07

### TEXAS – AUDIT PREMIUM AND
### RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

### PART FIVE - PREMIUM

D.     Premium Payments

You will pay all premium when due.  You will pay the premium even if part or all of a workers' compensation law is not valid.  The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                   at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC420407 (Ed. 3-23-2002)

INSURED'S COPY                    MEFOLKER      8-15-2011

TXM00196

000196



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

WC42 04 08

## TEXAS HEALTH CARE NETWORK ENDORSEMENT

This endorsement indicates that you have elected under this policy to provide workers' compensation health care services to your injured employees through a certified workers' compensation health care network that we have either established or contracted with, as provided in Chapter 1305 of the Texas Insurance Code and in Title 28, Chapter 10 of the Texas Administrative Code.

We will provide you with information concerning the use of our certified workers' compensation health care network(s) in our service area(s) and your rights and responsibilities as a participant in our network program. This includes information describing the service area(s) applicable to you and your injured employees as required in Rule VI K. of the *Texas Basic Manual of Rules, Classifications and Experience Rating Plan for Workers' Compensation and Employers' Liability Insurance.* In accordance with Chapter 1305 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code, we will also provide you with information that is required to be given to your employees, including an employee's notice of network requirements and an employee acknowledgement form.

Your premium may have been reduced because you have agreed to participate in our certified workers' compensation health care network. The amount of the premium reduction is shown on the Information Page of this policy. The reduction is estimated at the policy inception and adjusted at final audit of the policy. The reduction may be pro-rated if you elect to participate in a certified workers' compensation health care network during the policy year or if you terminate your participation in our certified workers' compensation health care network before the policy expires. The premium reduction you received may be forfeited if we determine that you have failed to provide the notice of network requirements and employee acknowledgement form to your employees in accordance with Chapter 1305.005(d) and 1305.451 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code.

Minimum premium policies are not eligible for this premium reduction.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:DBA:  IWORKS PERSONNEL

Premium:      $_____

Endorsement No.

*Ron Wright*

Authorized Representative

TM-MEDNET-2005A



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 03 04 A**

## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

Schedule

1. (   )   Specific Waiver
         Name of person or organization

   ( X )   Blanket Waiver
         Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.

2. Operations:   ALL TEXAS OPERATIONS

3. Premium

   The premium charge for this endorsement shall be ___2.00___ percent   of   the   premium   developed   on   payroll   in connection with work performed for the above person(s) or organization(s) arising out of the operations described.

4. Advance Premium      INCLUDED, SEE INFORMATION PAGE.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL                              Endorsement No.
Premium $

_____
                                                   Authorized Representative

WC420304A (ED. 1-01-2000)

INSURED'S COPY          MEFOLKER     8-15-2011

TXM00198

000198

## Policy Issuance Checklist

| Quote:   Q003021474 | Renewal of:   0001204473 |
|---|---|
| **Coverage Period:** 09-04-2011 to 09-04-2012 | |
| **Named Insured:** PREFERRED STAFFING COMPANY LLC | |
| **DBA:** IWORKS PERSONNEL | |
| **TAM ID:** | |

### Texas Issuance Instructions

Not Applicable: ☐

| Effective/Expiration Date: | Eff Date:<br>20110904 | Exp Date:<br>20120904 |
|---|---|---|

**Quote Version #:** 0000

| Network Option: | ☒ In Network | ☐ Out of Network | TEAP 35205 |
|---|---|---|---|

| Agency/Direct Bill: | ☒ Direct Bill | ☐ Agency Bill |
|---|---|---|

| Changes:<br>☒ None | |
|---|---|

| Comments: | PTS,<br>PLEASE RETURN WP TO BERNADINE TO PEND FOR APPS. THXS, BB |
|---|---|

### Out Of State Issuance Instructions

Not Applicable: ☒

| Effective/Expiration Date: | Eff Date: | Exp Date: |
|---|---|---|

| Changes:<br>☒ None | |
|---|---|

| Comments: | |
|---|---|

| Working Underwriter: | BERNADINE BARNO |
|---|---|
| Completed By: | BERNADINE BARNO |
| Date: | 8-11-2011 |

TXM00199

000199

## Facsimile Transmission



**Underwriting Services**
PO Box 12058
Austin, TX 78711-2058

**Phone:** (800) 859-5995
**Fax:**    (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:**   August 15, 2011

**To:**    LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:**    0001204473
         PREFERRED STAFFING COMPANY LLC

**Comments:**

**From:**  Texas Mutual Insurance Company
         (800) 859-5995

Pages: 84  including this cover

TXM00200

000200

2011-08-16-00176

| TRANSMITTED/STORED.: AUG. 11. 2011  1:04PM FILE MODE OPTION | ADDRESS | | RESULT | PAGE |
|---|---|---|---|---|
| 8544 MEMORY TX | 63 : | 9565428757 | OK | 2/2 |

```
REASON FOR ERROR
E-1)  HANG UP OR LINE FAIL          E-2)  BUSY
E-3)  NO ANSWER                     E-4)  NO FACSIMILE CONNECTION
E-5)  MAIL SIZE OVER
```

DROP



TexasMutual®
Insurance Company

## Temp Employee Data Worksheet & Client List

Policyholder's name: *Preffered Staffing*   Policy/quote no. *Q0030214714*

**Instructions:** In order to help us maintain the accuracy of our policy data, please complete this form and return it as soon as possible. Thank you for your assistance.

## TEMPORARY SERVICE BRANCH OFFICES
Please complete one row for each branch office. Number of employees should be permanent staff located in that branch office.

| Physical address (no P.O. boxes) | City | State & ZIP Code | Building height (no. Of stories) | No. Of employees by location | No. Of work Shifts | Max no. Of employees per shift |
|---|---|---|---|---|---|---|
| 1. | | | | | | |
| 2. | | | | | | |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |

8/11/11

TXM00201

000201

# ACORD WORKERS COMPENSATION APPLICATION

CSR: NL

DATE (MM/DD/YYYY): 8/12/2011

| AGENCY NAME AND ADDRESS | COMPANY: TEXAS MUTUAL INS. COMPANY |
|---|---|
| LETTE INSURANCE AGENCY<br>145 BOCA CHICA Suite B<br>BROWNSVILLE, TX 78520-7876 | UNDERWRITER: |
| | APPLICANT NAME: PREFERRED STAFFING LLC |

| OFFICE PHONE: | MOBILE PHONE: |
|---|---|

| MAILING ADDRESS (including ZIP + 4 or Canadian Postal Code)<br>IWORKS PERSONNEL<br>P.O.BOX 100111<br>SAN ANTONIO, TX 78201 | YRS IN BUS:<br>SIC:<br>NAICS: |
|---|---|

PRODUCER NAME:

CS REPRESENTATIVE NAME: NORA LARA

WEBSITE ADDRESS:

OFFICE PHONE (A/C, No, Ext) 956-541-7252

E-MAIL ADDRESS: haydeegutierrez@iworkspersonnel.com

MOBILE PHONE:

FAX (A/C, No): 956-542-8757

| | SOLE PROPRIETOR | | CORPORATION | ☒ LLC | | TRUST |
|---|---|---|---|---|---|---|
| | PARTNERSHIP | | SUBCHAPTER "S" CORP | JOINT VENTURE | | OTHER |

E-MAIL ADDRESS:

CREDIT BUREAU NAME:

ID NUMBER:

CODE:     SUB CODE:

FEDERAL EMPLOYER ID NUMBER: 76-0797747    NCCI RISK ID NUMBER

OTHER RATING BUREAU ID OR STATE EMPLOYER REGISTRATION NUMBER

AGENCY CUSTOMER ID: PREFST1

## STATUS OF SUBMISSION

- QUOTE   ☒ ISSUE POLICY
- BOUND (Give date and/or attach copy)
- ASSIGNED RISK (Attach ACORD 133)

## BILLING/AUDIT INFORMATION

**BILLING PLAN**
- AGENCY BILL
- ☒ DIRECT BILL

**PAYMENT PLAN**
- ANNUAL
- SEMI-ANNUAL
- ✓ QUARTERLY   % DOWN:

**AUDIT**
- AT EXPIRATION
- SEMI-ANNUAL
- ✓ QUARTERLY
- MONTHLY

## LOCATIONS

| LOC # | STREET, CITY, COUNTY, STATE, ZIP CODE |
|---|---|
| 1. | 8609 W. Avenue, San Antonio TX 78213 |

## POLICY INFORMATION

| PROPOSED EFF DATE | PROPOSED EXP DATE | NORMAL ANNIVERSARY RATING DATE | | RETRO PLAN |
|---|---|---|---|---|
| 09/04/10 | 09/04/11 | | PARTICIPATING | |
| | | | NON-PARTICIPATING | |

| PART 1 - WORKERS COMPENSATION (States) | PART 2 - EMPLOYER'S LIABILITY | PART 3 - OTHER STATES INS | DEDUCTIBLES | AMOUNT/% | OTHER COVERAGES | |
|---|---|---|---|---|---|---|
| | $ 1,000,000 EACH ACCIDENT | | MEDICAL | | U.S.L. & H. | MANAGED CARE OPTION |
| | $ 1,000,000 DISEASE-POLICY LIMIT | | INDEMNITY | | VOLUNTARY COMP | |
| | $ 1,000,000 DISEASE-EACH EMPLOYEE | | | | FOREIGN COV | |

DIVIDEND PLAN/SAFETY GROUP    ADDITIONAL COMPANY INFORMATION

SPECIFY ADDITIONAL COVERAGES / ENDORSEMENTS

## TOTAL ESTIMATED ANNUAL PREMIUM - ALL STATES

| TOTAL ESTIMATED ANNUAL PREMIUM ALL STATES | TOTAL MINIMUM PREMIUM ALL STATES | TOTAL DEPOSIT PREMIUM ALL STATES |
|---|---|---|
| $ | $ | $ |

## CONTACT INFORMATION

| TYPE | NAME | OFFICE PHONE | MOBILE PHONE | E-MAIL |
|---|---|---|---|---|
| INSPECTION | Hydie Gutierez | 956- 459-5109 | Same. | |
| ACCTNG RECORD | | | | |
| CLAIMS INFO | | | | |

## INDIVIDUALS INCLUDED/EXCLUDED

PARTNERS, OFFICERS, RELATIVES ( Must be employed by business operations) TO BE INCLUDED OR EXCLUDED (Remuneration/Payroll to be included must be part of rating information section.)

| STATE | LOC # | NAME | DATE OF BIRTH | TITLE/ RELATIONSHIP | OWNER-SHIP % | DUTIES | INC/EXC | CLASS CODE | REMUNERATION/PAYROLL |
|---|---|---|---|---|---|---|---|---|---|
| TX | 1 | Luis Trevino | - | Owner | 100 | owner/President | EXC | | |

ACORD 130 (2007/11)     Page 1 of 4     © 1980-2007 ACORD CORPORATION. All rights reserved.

The ACORD name and logo are registered marks of ACORD

TXM00202

000202

## GENERAL INFORMATION (continued)

| EXPLAIN ALL "YES" RESPONSES | | YES | NO |
|---|---|---|---|
| 13. ANY EMPLOYEES WITH PHYSICAL HANDICAPS? | | ☐ | ☑ |
| 14. DO EMPLOYEES TRAVEL OUT OF STATE? (If "YES", indicate state(s) of travel and frequency) | | ☐ | ☑ |
| 15. ARE ATHLETIC TEAMS SPONSORED? | | ☐ | ☑ |
| 16. ARE PHYSICALS REQUIRED AFTER OFFERS OF EMPLOYMENT ARE MADE? | | ☐ | ☑ |
| 17. ANY OTHER INSURANCE WITH THIS INSURER? | | ☐ | ☑ |
| 18. ANY PRIOR COVERAGE DECLINED/ CANCELLED/NON-RENEWED IN THE LAST THREE (3) YEARS? (Not applicable in MO) | | ☐ | ☑ |
| 19. ARE EMPLOYEE HEALTH PLANS PROVIDED? | | ☐ | ☑ |
| 20. DO ANY EMPLOYEES PERFORM WORK FOR OTHER BUSINESSES OR SUBSIDIARIES? | | ☐ | ☑ |
| 21. DO YOU LEASE EMPLOYEES TO OR FROM OTHER EMPLOYERS? | | ☐ | ☑ |
| 22. DO ANY EMPLOYEES PREDOMINANTLY WORK AT HOME? If "YES", # of Employees: _____ | | ☐ | ☑ |
| 23. ANY TAX LIENS OR BANKRUPTCY WITHIN THE LAST FIVE (5) YEARS? (If "YES", please specify) | | ☐ | ☑ |
| 24. ANY UNDISPUTED AND UNPAID WORKERS COMPENSATION PREMIUM DUE FROM YOU OR ANY COMMONLY MANAGED OR OWNED ENTERPRISES? IF YES, EXPLAIN INCLUDING ENTITY NAME(S) AND POLICY NUMBER(S). | | ☐ | ☑ |

### REMARKS (Attach additional sheets if more space is required)

APPLICABLE IN TENNESSEE AND VERMONT: IT IS A CRIME TO KNOWINGLY PROVIDE FALSE, INCOMPLETE OR MISLEADING INFORMATION TO ANY PARTY TO A WORKERS COMPENSATION TRANSACTION FOR THE PURPOSE OF COMMITTING FRAUD. PENALTIES INCLUDE IMPRISONMENT, FINES AND DENIAL OF INSURANCE BENEFITS.

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY OR ANOTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION, OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS THE PERSON TO CRIMINAL AND [NY: SUBSTANTIAL] CIVIL PENALTIES. (Not applicable in CO, FL, HI, MA, NE, OH, OK, OR, TN or VT; in DC, LA, ME, VA and WA, insurance benefits may also be denied)

| APPLICANT'S SIGNATURE (Must be Officer, Owner or Partner) | DATE 8-23-2011 | PRODUCER'S SIGNATURE James T. Selle | NATIONAL PRODUCER NUMBER |
|---|---|---|---|

ACORD 130 (2007/11)          Page 4 of 4

TXM00203

000203

## STATE RATING WORKSHEET

FOR MULTIPLE STATES, ATTACH AN ADDITIONAL PAGE 2 OF THIS FORM

RATING INFORMATION - STATE:

| LOC # | CLASS CODE | DESCR CODE | CATEGORIES, DUTIES, CLASSIFICATIONS | # EMPLOYEES FULL TIME | # EMPLOYEES PART TIME | SIC | NAICS | ESTIMATED ANNUAL REMUNERATION/ PAYROLL | RATE | ESTIMATED ANNUAL MANUAL PREMIUM |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 2003 | | Bakery + Drivers, Route Supervisors. | | | | | 26,230 | 12.71 | 3,334.00 |
| | 5403 | | Carpentry NOC + Drivers | | | | | 7,779. | 14.52 | 1,130.00 |
| | 5506 | | Street or Road Constr. - All | | | | | IFANY | 14.87 | |
| | 8810 | | Clerical Office Empl NOC | | | | | 277,883.06 | .44 | 1,222.00 |
| | 9014 | | Air Conditioning Duct Cleaning Serv. | | | | | 52,930. | 8.96 | 4,743.00 |
| | 8044 | | Store; Furniture; All others | | | | | 4,326. | 13.04 | 564.00 |
| | 8803 | | Office or Factory Cost Systematizer, Acct or Auditor | | | | | 253,232 | .27 | 684.00 |
| | 8833 | | Hospital Professional Employees | | | | | 42,272. | 2.01 | 850.00 |
| | 8006 | | Grocery Store all | | | | | 56,196 | 7.61 | 4,277.00 |
| | 8803 | | Auditor, Accountant not Factory Cost or Office Traveling | | | | | 197,877.00 | .27 | 534.00 |
| | 2881 | | Wooden ware MFG NOC + Driver | | | | | 12,017 | 8.30 | 997.00 |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

### PREMIUM

| STATE: | FACTOR | FACTORED PREMIUM | | FACTOR | FACTORED PREMIUM |
|---|---|---|---|---|---|
| TOTAL | | $ 18,335.00 | | | $ |
| INCREASED LIMITS | | $ 182.00 | SCHEDULE RATING | 1.75 | $ 18,417.00 |
| DEDUCTIBLE | | $ 0-00 | CCPAP | | $ |
| | | $ | STANDARD PREMIUM | | $ |
| EXPERIENCE OR MERIT MODIFICATION | 1.30 | $ 5,667.00 | PREMIUM DISCOUNT | 7.30 | $ 2,761.00 |
| TN Network | .12 | $ 5,157.00 - | EXPENSE CONSTANT | N/A | $ 150.00 |
| ASSIGNED RISK SURCHARGE | | $ | TAXES / ASSESSMENTS | N/A | $ |
| ARAP | | $ | | | $ |
| TOTAL ESTIMATED ANNUAL PREMIUM $ 351,205.00 | | | MINIMUM PREMIUM $ 11,668.00 | DEPOSIT PREMIUM $ 11,668.00 . | |

### REMARKS

TXM00204

000204

## PRIOR CARRIER INFORMATION/LOSS HISTORY

| YEAR | CARRIER & POLICY NUMBER | ANNUAL PREMIUM | MOD | # CLAIMS | AMOUNT PAID | RESERVE |
|---|---|---|---|---|---|---|
| 10/11 | CO: Texas Mutual<br>POL #: STA-0001204473 | 16,905 | 1.40 | | | |
| | CO:<br>POL #: | | | | | |
| | CO:<br>POL #: | | | | | |
| | CO:<br>POL #: | | | | | |
| | CO:<br>POL #: | | | | | |

PROVIDE INFORMATION FOR THE PAST 5 YEARS AND USE THE REMARKS SECTION FOR LOSS DETAILS　　　LOSS RUN ATTACHED

## NATURE OF BUSINESS/DESCRIPTION OF OPERATIONS

GIVE COMMENTS AND DESCRIPTIONS OF BUSINESS, OPERATIONS AND PRODUCTS: MANUFACTURING - RAW MATERIALS, PROCESSES, PRODUCT, EQUIPMENT; CONTRACTOR - TYPE OF WORK, SUB-CONTRACTS; MERCANTILE - MERCHANDISE, CUSTOMERS, DELIVERIES; SERVICE - TYPE, LOCATION; FARM - ACREAGE, ANIMALS, MACHINERY, SUB-CONTRACTS.

## GENERAL INFORMATION

EXPLAIN ALL "YES" RESPONSES

| | YES | NO |
|---|---|---|
| 1. DOES APPLICANT OWN, OPERATE OR LEASE AIRCRAFT/WATERCRAFT? | ☐ | ☑ |
| 2. DO/HAVE PAST, PRESENT OR DISCONTINUED OPERATIONS INVOLVE(D) STORING, TREATING, DISCHARGING, APPLYING, DISPOSING, OR TRANSPORTING OF HAZARDOUS MATERIAL? (e.g. landfills, wastes, fuel tanks, etc) | ☐ | ☑ |
| 3. ANY WORK PERFORMED UNDERGROUND OR ABOVE 15 FEET? | ☐ | ☑ |
| 4. ANY WORK PERFORMED ON BARGES, VESSELS, DOCKS, BRIDGE OVER WATER? | ☐ | ☑ |
| 5. IS APPLICANT ENGAGED IN ANY OTHER TYPE OF BUSINESS? | ☐ | ☑ |
| 6. ARE SUB-CONTRACTORS USED? (If "YES", give % of work subcontracted) | ☐ | ☑ |
| 7. ANY WORK SUBLET WITHOUT CERTIFICATES OF INSURANCE? (If "YES", payroll for this work must be included in the State Rating Worksheet on Page 2) | ☐ | ☑ |
| 8. IS A WRITTEN SAFETY PROGRAM IN OPERATION? | ☑ | ☐ |
| 9. ANY GROUP TRANSPORTATION PROVIDED? | ☑ | ☐ |
| 10. ANY EMPLOYEES UNDER 16 OR OVER 60 YEARS OF AGE? | ☐ | ☑ |
| 11. ANY SEASONAL EMPLOYEES? | ☐ | ☑ |
| 12. IS THERE ANY VOLUNTEER OR DONATED LABOR? (If "YES", please specify) | ☐ | ☑ |

ACORD 130 (2007/11)　　　　　　　　　Page 3 of 4

TXM00205

000205



**TexasMutual®**
Insurance Company

## Temp Employee Data Worksheet & Client List

Policyholder's name: *Preffered Staffing*    Policy/quote no. *Q00300/474*

**Instructions:** In order to help us maintain the accuracy of our policy data, please complete this form and return it as soon as possible. Thank you for your assistance.

### TEMPORARY SERVICE BRANCH OFFICES

Please complete one row for each branch office. Number of employees should be permanent staff located in that branch office.

| Physical address (no P.O. boxes) | City | State & ZIP Code | Building height (no. Of stories) | No. Of employees by location | No. Of work Shifts | Max no. Of employees per shift |
|---|---|---|---|---|---|---|
| 1. 3609 West Ave | SA | 78213 | 1 | 10 | 1 | 10 |
| 2. | Brownsvlle | 78521 | 1 | 5 | 1 | 5 |
| 3. | | | | | | |
| 4. | | | | | | |
| 5. | | | | | | |
| 6. | | | | | | |
| 7. | | | | | | |
| 8. | | | | | | |
| 9. | | | | | | |
| 10. | | | | | | |

8/11/11

TXM00206

000206

Date Created: 08/25/2011 09:27:06

Subject:     Fw: preferred staffing
SendTo:      CN=P&TS Imaging/OU=AUSTIN/O=THE_FUND@THE_FUND
From:        CN=Rudy Alba/OU=AUSTIN/O=THE_FUND

Thank you,
Rudy Alba - Underwriting
Texas Mutual Insurance Company
ralba@texasmutual.com
1-800-859-5995 x-6127
email Applications to: apps@texasmutual.com
email Correspondence and Endorsements to: underwriting@texasmutual.com

----- Forwarded by Rudy Alba/AUSTIN/THE_FUND on 08/25/2011 09 27 AM -----

From: "estela rodriguez" <estela@letteinsuranceagency.com>

To: "'Rudy Alba'" <ralba@texasmutual.com>

Date  08/24/2011 03:40 PM

Subject: preferred staffing

Please send these documents to the appropriate underwriter

Thanks

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX 78520

956-541-7252 Phone

956-542-8757 Fax

No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1392 / Virus Database: 1520/3854 - Release Date: 08/24/11

Attachment: Document (128).pdf

TXM00207

000207



---

| |
|---|
| **Name of Applicant** |

Any employer seeking workers' compensation coverage in the *Texas Mutual®* Start Program must complete and submit this supplemental application along with the standard ACORD® application for workers' compensation insurance and other supplemental materials, as set forth below. The applications must include signatures of both the applicant and the agent. Submit to:

Texas Mutual Insurance Company, Start Program
6210 E. Highway 290
Austin, Texas 78723-1098
Fax: (800) 359-0650

The only employers eligible for insurance through the Start Program are those whose applications for insurance do not meet the underwriting standards for the *Texas Mutual®* voluntary market programs. It is in the applicant's best interest to exhaust all efforts to obtain insurance in the voluntary market before making application to the Start Program since coverage through the Start Program may result in higher premiums. Coverage through the Start Program is restricted to Texas employees.

A policy issued in the Start Program has limited employers liability coverage. The maximum limits of liability for that coverage are:

| | | |
|---|---|---|
| Bodily Injury by Accident: | $500,000 | Each Accident |
| Bodily Injury by Disease: | $500,000 | Each Employee |
| Bodily Injury by Disease: | $500,000 | Policy Limit |

To be considered for the Start Program, the application must be complete. A complete application must contain the following items. Please check each item to verify its inclusion, or write "none" if the item is not in existence.

_____ ACORD® 130 and Start supplemental applications, signed by both the applicant and the agent.

_____ Hard copy loss runs for most recent 4-year period valued within 120 days of the submission date.

_____ Copies as filed of Federal Forms 941, 941E, 942, 943 or Texas Workforce Commission quarterly reports for the four most recent quarters. Texas Workforce Commission reports are required if the employer operates in multiple states.

_____ The current experience modifier worksheet (if applicable) AND, if available, the two previous experience modifier worksheets. If the applicant is not experience rated, provide total premium and payroll for each of the last four years.

_____ A copy of applicant's written safety program or the table of contents.

_____ A cover letter describing any loss over $15,000.

_____ If a deductible option is requested, copies of the most recent two years' financial statements either audited by an independent auditor or affirmed in writing by the applicant.

**PREMIUM PAYMENT**

The premium is due in the form of a cashier's check (or other approved guaranteed funds) or the applicant's check. If any portion of the premium is financed, a copy of the finance agreement must be furnished with the required down payment. A minimum deposit of 15% will be required. Deposit premium may not be transferred from one policy to another.

NOTE: Interim reporting is only available for accounts with fluctuating payrolls. Specific deposit requirements and reporting frequency will be indicated on the quote.

Version 2008 ALL OTHER VERSIONS ARE OBSOLETE.

TXM00208

000208

SUPPLEMENTAL INFORMATION (use additional pages if necessary)

1. Does the applicant, its owners, or its controlling management own, manage, or control any other business in Texas?
   Yes____ No ✓
   a. If yes, please explain. _____

   _____

   b. List all businesses that the applicant, its owners, or its controlling management commonly owned, managed, or controlled now or in the past 12 months and the federal tax identification numbers for these businesses. Attach a complete WC-RF1 for each business.

   _____    _____

   _____    _____

2. Does the applicant receive workers from or share workers with any business? Yes____ No ✓
   a. If yes, please explain. _____

   b. List all such businesses and their federal tax identification numbers. Attach a complete WC-RFI for each business.

   _____    _____

3. Does the applicant share office space or any other business services with another business? Yes____ No ✓
   a. If yes, please explain. _____

   b. List all such businesses and their federal tax identification numbers. Attach a complete WC-RFI for each business.

   _____    _____

   _____    _____

4. Does the applicant have a commercial general liability or automobile insurance policy which covers another business on the same policy? Yes ✓ No____
   a. If yes, please explain. _____

   b. List all such businesses and their federal tax identification numbers. Attach a complete WC-RFI for each business and a copy of the declaration page for each policy.

   _____    _____

   _____    _____

5. Has the applicant or any business listed in items 1-4 above ever had any additional premium due for workers' compensation insurance coverage? Yes____ No ✓
   a. If yes, please explain and include the amount due, the carrier, and the date paid. _____

6. Has the applicant or any business listed in items 1-4 filed bankruptcy in the past seven (7) years? Yes____ No ✓
   a. If yes, please attach a copy of the bankruptcy notice of filing and docket sheets.

7. Is applicant a corporation? Yes ✓ No____
   a. If yes, is the corporation in good standing with the Comptroller and the Secretary of State? Yes____ No____
   If no, please explain. _____

   _____

8. Employee leasing:
   a. Is the applicant in the employee leasing business?    Yes____ No ✓
   If yes, you must submit a completed *Professional Employer Organization Questionnaire* found on our website at www.texasmutual.com.

   b. Is the applicant in the business of providing
   temporary employees to other businesses?    Yes ✓ No____

TXM00209

000209

c. Is the applicant using leased or temporary
employees to perform part of its operations?     Yes_____  No__✓__
If yes, please explain and provide a copy of the contract.

d. Are any of the leased or temporary employees
former employees of the applicant or former
employees of any business listed in items 1-4?     Yes_____  No__✓__

9. Is a Texas Railroad Commission filing required?     Yes_____  No__✓__     RRC_____     LPG_____

Docket #:_____  Exact name as on permit:_____

10. Does the applicant subcontract the majority of its work to one entity? Yes_____  No__✓__
a. If yes, please explain. _____

b. List all such businesses and their federal tax identification numbers.
_____     _____
_____     _____

## APPLICANT'S AGREEMENT

In submitting this application, the applicant expressly agrees to the following:

1. To pay as due all premiums owed to Texas Mutual Insurance Company. The applicant understands and agrees that the total estimated annual premium is subject to change because of rates, modifications, surcharges, and other charges approved by the Texas Department of Insurance.

2. To provide, if Texas Mutual Insurance Company requires it, a personal guaranty of any additional premiums due on the insurance issued based on this application.

3. To permit Texas Mutual Insurance Company to conduct any manner of credit check it deems advisable in connection with this application.

4. That in the event of default on payment of any premiums due under any policy issued as a result of this application, all premiums due and unpaid shall, at the option of Texas Mutual Insurance Company, become payable at the *Texas Mutual* office in Austin, Texas.

5. To pay prejudgment and post-judgment interest as provided by law and to pay attorney's fees incurred by Texas Mutual Insurance Company in connection with any efforts undertaken by Texas Mutual Insurance Company to collect premiums due under any policy issued as a result of this application.

6. To pay proper premiums based on the correct classification codes for its business and employees and recognize that the classification codes on any application documents are estimates only.

7. To pay premium at the proper rates on all labor involved in subcontracted work performed for the applicant in every instance unless a valid certificate of insurance is furnished during the policy term or unless the subcontractor qualifies as an independent contractor under the Workers' Compensation Act. Proper documentation of such coverage will be furnished to Texas Mutual Insurance Company within 10 days after the applicant contracts with the subcontractor.

8. To maintain by employee and class of work accurate records of total remuneration earned by each employee in order that accurate audits of payroll records may be made by Texas Mutual Insurance Company and to make all records available for audit upon request by Texas Mutual Insurance Company.

9. That Texas Mutual Insurance Company is authorized to have access to all the Texas Workforce Commission's employment information and records pertaining to the applicant and any businesses commonly owned or commonly controlled by the applicant, its owners, or controlling management, that may be under the control of the Texas Workforce Commission. The applicant hereby waives in favor of Texas Mutual Insurance Company any confidentiality of such information and records.

10. That, in any suit arising from premium or audit disputes, all events giving rise to such claim occurred in Travis County, Texas, and no substantial part of the events of such claim occurred in any other county; that maintenance of such an action in Travis County, Texas, does not work an injustice to the applicant, is in the interest of the parties, and transfer of the action would work an injustice to the parties; that the applicant will perform all its obligations hereunder and

TXM00210

000210

under any policy of insurance resulting from this application in Travis County, Texas; that Travis County, Texas, will be the legal venue for any suits arising from premium or audit disputes; and that the applicant will file any such suits in Travis County, Texas.

11. That the agent acts solely as the agent of the applicant and is not an agent of the Texas Mutual Insurance Company.

12. That no insurance coverage will be considered bound by Texas Mutual Insurance Company until the applicant has received a policy duly executed by Texas Mutual Insurance Company and such insurance shall become effective only from the date and time specified by the policy.

13. To comply with all Texas Mutual Insurance Company rules or the Texas Department of Insurance, Division of Workers' Compensation rules relating to the welfare, health, and safety of employees.

14. Within 30 days of the issuance of a policy, to implement action to comply with the non-delegable duties as outlined by the Texas Supreme Court, i.e., a written safety policy/program that is communicated to every employee, safety rules for the more hazardous operations with documentation of the communication of the rules, safety training/meetings on a regular, frequent schedule with documentation of subjects covered and employee attendance, internal inspection procedures with appropriate documentation, and selection/placement procedures that demonstrate ordinary care.

The applicant hereby represents and verifies that all statements and representations contained herein and in any supplemental documents are true and correct. Any material misrepresentation, omission, or failure to perform the agreements set forth above are grounds for rejection of the application or cancellation of any coverage which is issued in reliance on the application, and for other legal actions. If any one or more of the provisions of this contract shall be held to be invalid, illegal, or unenforceable, the validity, legality, or enforceability of the remaining provisions of the contract shall not in any way be affected or impaired.

Luis Trevino

| | | |
|---|---|---|
| NAME OF APPLICANT (Please print) | NAME OF AGENT | DATE |
| APPLICANT'S SIGNATURE | AGENT'S SIGNATURE* | TEXAS MUTUAL® PRODUCER CODE |
| CEO | | |
| TITLE (OWNER, PARTNER, OFFICER) | AGENT'S FEDERAL TAX I.D. NO. | AGENT'S LICENSE NUMBER |
| 2105410501 | | |
| TELEPHONE NUMBER | AGENT'S TELEPHONE NUMBER | AGENT'S FAX NUMBER |

*The agent acknowledges that any return premium under the policy will be refunded directly to the policyholder or the premium finance company.

## ACORD® APPLICATION FORMS MUST BE ATTACHED TO THIS DOCUMENT

### KEY PHONE NUMBERS

MAIN NUMBER
1-800-859-5995

CLAIM REPORTING & INFORMATION
(800) TX-CLAIM (892-5246)

TexasMutual®
Insurance Company

61200-001-5510
SUPSIA

TXM00211

000211

**NOTEPAD**

**Insured Name:**          PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**          20110904

**Notes:**

----

--UW: MARY FOLKERTS Time: 2011-08-15T14:50:47-05:00--

User Comments: iI have issued this policy and per your request am sending you this  for subj to info//mef

----

--UW: BERNADINE BARNO Time: 2011-08-29T09:21:41-05:00--

User Comments:  rec'd subj to

TXM00212

Date Created: 08/31/2011 10:50:37

Subject:     Fw: PREFERRED STAFFING STA-0001204473-20110904
SendTo:     CN=P&TS Imaging/OU=AUSTIN/O=THE_FUND@THE_FUND
From:     CN=Rudy Alba/OU=AUSTIN/O=THE_FUND

Thank you,
Rudy Alba - Underwriting
Texas Mutual Insurance Company
ralba@texasmutual.com
1-800-859-5995 x-6127
email Applications to: apps@texasmutual.com
email Correspondence and Endorsements to: underwriting@texasmutual.com

----- Forwarded by Rudy Alba/AUSTIN/THE_FUND on 08/31/2011 10:50 AM -----

From: "estela rodriguez" <estela@letteinsuranceagency.com>

To: "Rudy Alba'" <ralba@texasmutual.com>

Date: 08/31/2011 10:48 AM

Subject: PREFERRED STAFFING STA-0001204473-20110904

AMENDING LIABILITY LIMITS TO READ $1,000,000 IN LIEU OF $500,000

Thanks

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX 78520

956-541-7252 Phone

956-542-8757 Fax

No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1392 / Virus Database: 1520/3868 - Release Date: 08/30/11

TXM00213

000213

Subject:   Fw: Renewal APP Start - 0001204473 - Preferred Staffing Company dba Iworks Personnel
SendTo:    CN=Drops/O=THE_FUND@THE_FUND
From:      CN=Bernadine E. Barno/OU=AUSTIN/O=THE_FUND

Thank you,

Bernadine E. Barno, Senior Underwriter
Phone: 1-800-859-5995, ext 6106
Direct Line: 512-505-6106
Fax: 1-800-359-0650
Email: bbarno@texasmutual.com
Submit applications to apps@texasmutual.com
Submit all other correspondence to underwriting@texasmutual.com

----- Forwarded by Bernadine E. Barno/AUSTIN/THE_FUND on 09/07/2011 09:46 AM -----

From: Maria I. Grant/AUSTIN/THE_FUND

To: Jose Barrera/AUSTIN/THE_FUND@THE_FUND

Cc: Bob J. Box/HOUSTON/THE_FUND@THE_FUND, Angela I. Gardner/AUSTIN/THE_FUND@THE_FUND, Stacy R. Rose/AUSTIN/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND

Date  09/06/2011 02:14 PM

Subject:  Renewal APP Start - 0001204473 - Preferred Staffing Company dba Iworks Personnel

Hi Jake,

I have assigned a 30-day request to you for a **RENEWAL** APP Start request for #0001204473 - Preferred Staffing Company. You will receive an e-mail from TIBCO stating that this request has been assigned to you.

The "Letter 2" is being sent, indicating that the policyholder was in the Start program in the previous policy year. You conducted a Full APP Start survey for this account in February of 2010.

The PH's effective date is 9/4/11. The due date for the PID is October 6, 2011. Their SIC Code is 7363 -- help supply services. A survey visit for Texas Mutual is required and only an approval letter is required for TDI/DWC.

I have attached a sample approval letter you can use for your letter and a short checklist. **On the checklist below, please use ONLY the SECOND tab for Renewal Starts.**

Remember to complete your letter within 30 days and then send copies to Donna Carr at TDI and to me. Marty Lucas has retired. **Please do not re-submit DWC101 or 102 forms**, as this is a renewal only and requires only an approval letter to DWC.

From the checklist, as a reminder:

| |
|---|
| Complete Approval letter and verify each of the 7 APP components are still in place. When naming your visit in OSA, name the visit "Ren Sta" for Renewal Start. |
| Send approval letter copy to Donna Carr via e-mail to: donna.carr@tdi.state.tx.us |
| Send copy of approval letter to Admin Specialist, who will then send to Imaging |

[attachment "LPC Checklist for STARTs.xls" deleted by Bernadine E. Barno/AUSTIN/THE_FUND] [attachment "Sample Approval Letter.doc" deleted by Bernadine E. Barno/AUSTIN/THE_FUND]

TXM00214

000214

Thanks!

Maria Ines Grant
Administrative Specialist
Loss Prevention Services @ Texas Mutual Insurance Co.
512-224-2974 (direct)

TXM00215

000215



September 6, 2011

Preferred Staffing Company LLC
P.O. Box 100111
San Antonio, TX 78201-1411

Re:  Accident Prevention Plan Requirements
     Policy Number:       STA0001204473
     Policy Effective Date: 9/4/11

Dear Policyholder:

As you know, your business is required by Texas law to document your occupational injury and illness prevention efforts. That is because you have coverage in our *Start Program* and have a loss history that meets criteria outlined in Article 5.76-3 section 10 of the Texas Insurance Code.

Because you have already completed the basic requirements of developing and implementing an accident prevention plan, the Texas Department of Insurance, Division of Workers' Compensation (DWC) requires a re-inspection of your workplace(s) to verify that you are completing your accident prevention plan requirements. This re-inspection must be completed within 30 days of your policy's effective date or within 30 days after you receive this letter, whichever is later. The re-inspection will document the status of your seven accident prevention plan components and note any new uncontrolled hazards.

Between 90 and 180 days after submission of this documentation, a DWC safety inspector will inspect your workplace to verify you are following the safety procedures in your plan. DWC is required by HB 1090 to charge a fee to inspect your workplace. For information about the fee call DWC at (512) 440-5665.

DWC rule 165.7(d) states that if they determine that you have not implemented your accident prevention plan, you may cancel your workers' compensation insurance policy. If you elect to cancel your insurance policy, you must cancel it within 30 days of the receipt of the DWC safety inspector's noncompliance letter. If you do not cancel your policy, Texas Mutual® may cancel it for failure to implement the accident prevention plan. If Texas Mutual® does not cancel your policy, and you do not cancel it, DWC may assess a Class B administrative penalty of up to $5,000 per day for each violation of the accident prevention plan.

One of our loss prevention consultants will call you soon to answer any questions you may have about inspection requirements. We will continue to help you provide a safe

TXM00216

000216

and healthy workplace, and will help you with any safety related filings required by DWC.

Please call our Information Services Center at 1-800-859-599, if you need more information.

Sincerely,

Loss Prevention Services

cc:     Bernadine Barno
cc:     Donna Carr - Texas Dept. of Insurance, Division of Workers' Compensation
cc:     Underwriting File

TXM00217

000217



LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

REF: STA-0001204473
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
User ID:

    GXRANGEL

ENDTCOV (11-15-2004)

TXM00218

000218



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

The Employers Liability Limits are amended to:
$1,000,000 each accident
$1,000,000 each employee
$1,000,000 policy limits

This endorsement reflects a net annual premium change of . :          347.00

### THIS POLICY IS SUBJECT TO FINAL AUDIT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          September 4, 2011          at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904          of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $          115.00

Endorsement No.          1

*Ron Wright*

Authorized Representative

WC990301 (ED. 1-94)

AGENT'S COPY          GXRANGEL   10-03-2011

TXM00219

000219



EXTENSION OF INFORMATION PAGE

PAGE 2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br><br>10-03-2011 |

ITEM 4    ** S C H E D U L E  O F  O P E R A T I O N S **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS:<br>TOTAL ESTIMATED<br>ANNUAL<br>REMUNERATION | RATE PER<br>$100 OF<br>REMUNERATION | ESTIMATED<br>ANNUAL<br>PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 0000 | 12003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 0000 | 15403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 0000 | 15506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 0000 | 18810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 0000 | 19014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 0000 | 18044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 0000 | 18803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 0000 | 18833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 0000 | 18006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    September 4, 2011    at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $     115.00

Endorsement No.    1

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY      GXRANGEL    10-03-2011

TXM00220

000220



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

10-03-2011

ITEM 4    ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000 | 018803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER- TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000 | 012881 | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |

Subj to Experience Mod of  1.30

Total Estimated Standard Premium                                                   18,335.00

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    September 4, 2011    at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $        115.00

Endorsement No.    1

Ron Wright

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY              GXRANGEL    10-03-2011

TXM00221

000221



EXTENSION OF INFORMATION PAGE

PAGE     4

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
10-03-2011

ITEM 4     ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9812 | INCREASED LIMITS 1000/1000/1000 | .02 | 374.00 |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,723.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,599.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,208.00- |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,788.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 17,217.00 |
| | | Total Estimated Annual Premium | | 35,552.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     September 4, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $          115.00

Endorsement No.          1

_Ron Wright_
Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          GXRANGEL     10-03-2011

TXM00222

000222



TEXAS MUTUAL INSURANCE COMPANY
CORPORATE HEADQUARTERS
AUSTIN, TEXAS   1-800-859-5995
www.texasmutual.com

INVOICE DATE  10/03/2011
INVOICE NUMBER  20182739
POLICY NUMBER  0001204473
PAGE   01  OF  01

| POLICYHOLDER NAME AND ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | LETTE INS AGCY<br>145 BOCA CHICA BLVD<br>BROWNSVILLE, TX 78520 |

| TRANS DATE | ORIGINAL INVOICE NUMBER | ORIGINAL AMOUNT DUE | TRANSACTION DESCRIPTION | OPEN AMOUNT DUE | DUE DATE |
|---|---|---|---|---|---|
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2011 | | | | | |
| 10/03/2011 | 20182739 | 115.00 | AMEND EMPLOYERS LIAB. LIMITS | 115.00 | 10/18/2011 |

POLICY YEAR TOTAL        $115.00

AMOUNT DUE ON ACCOUNT        $115.00

Payments not received by their due dates may result in cancellation of your current coverage.

---

Detach and return this portion with your payment.  Please make checks payable to Texas Mutual Insurance Company at the address below.
Payments not received by their due dates may result in cancellation of your current coverage.

TEXAS MUTUAL INSURANCE COMPANY
P.O. BOX 841843
DALLAS, TX 75284-1843
1-800-859-5995

INVOICE DATE  10/03/2011
INVOICE NUMBER  20182739
POLICY NUMBER  0001204473

AMOUNT DUE ON ACCOUNT        $115.00

AMOUNT ENCLOSED: _____

Please write your policy number on your check for prompt handling.
THANK YOU FOR YOUR BUSINESS!

BRSINVC

TXM00223

000223



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: GXRANGEL

ENDTINS (06/09/99)

**
   **
**

TXM00224

000224



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

The Employers Liability Limits are amended to:
$1,000,000 each accident
$1,000,000 each employee
$1,000,000 policy limits

This endorsement reflects a net annual premium change of . :      347.00

THIS POLICY IS SUBJECT TO FINAL AUDIT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      September 4, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $      115.00

Endorsement No.      1

_Ron Wright_

Authorized Representative

WC990301 (ED. 1-94)

INSURED'S COPY            GXRANGEL    10-03-2011

TXM00225



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

10-03-2011

ITEM 4    ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 0000 | 12003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 0000 | 15403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 0000 | 15506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 0000 | 18810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 0000 | 19014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 0000 | 18044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 0000 | 18803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 0000 | 18833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 0000 | 18006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    September 4, 2011    at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $    115.00

Endorsement No.    1    **
**
**

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY

GXRANGEL    10-03-2011

TXM00226

000226



EXTENSION OF INFORMATION PAGE

PAGE     3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

10-03-2011

ITEM 4     ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|----------------------------------------------------|-------------------------------|--------------------------|
| 42 | 000 | 018803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000 | 012881 | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |
| | | | Subj to Experience Mod of   1.30 | | | |
| | | | Total Estimated Standard Premium | | | 18,335.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     September 4, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $          115.00

Endorsement No.     1     **
**
**

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)

INSURED'S COPY

GXRANGEL     10-03-2011

TXM00227

000227



EXTENSION OF INFORMATION PAGE

PAGE     4

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
10-03-2011

ITEM 4      ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9812 | INCREASED LIMITS 1000/1000/1000 | .02 | 374.00 |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,723.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,599.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,208.00- |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,788.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 17,217.00 |
| | | Total Estimated Annual Premium | | 35,552.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     September 4, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $     115.00

Endorsement No.     1     **
**
**

*Ron Wright*
Authorized Representative

WC000001A (ED. 7-11)     INSURED'S COPY     GXRANGEL     10-03-2011

TXM00228

000228



TEXAS MUTUAL INSURANCE COMPANY
CORPORATE HEADQUARTERS
AUSTIN, TEXAS  1-800-859-5995
www.texasmutual.com

INVOICE DATE  10/03/2011
INVOICE NUMBER  20182739
POLICY NUMBER  0001204473
PAGE  01  OF  01

**POLICYHOLDER NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**AGENT NAME AND ADDRESS**

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| TRANS DATE | ORIGINAL INVOICE NUMBER | ORIGINAL AMOUNT DUE | TRANSACTION DESCRIPTION | OPEN AMOUNT DUE | DUE DATE |
|---|---|---|---|---|---|
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2011 | | | | | |
| 10/03/2011 | 20182739 | 115.00 | AMEND EMPLOYERS LIAB. LIMITS | 115.00 | 10/18/2011 |
| | | | POLICY YEAR TOTAL | $115.00 | |
| | | | AMOUNT DUE ON ACCOUNT | $115.00 | |

Payments not received by their due dates may result in cancellation of your current coverage.

---

Detach and return this portion with your payment.  Please make checks payable to Texas Mutual Insurance Company at the address below.
Payments not received by their due dates may result in cancellation of your current coverage.

TEXAS MUTUAL INSURANCE COMPANY
P.O. BOX 841843
DALLAS, TX 75284-1843
1-800-859-5995

INVOICE DATE  10/03/2011
INVOICE NUMBER  20182739
POLICY NUMBER  0001204473

AMOUNT DUE ON ACCOUNT        $115.00

AMOUNT ENCLOSED: _____

**Please write your policy number on your check for prompt handling.**
THANK YOU FOR YOUR BUSINESS!

BRSINVC

TXM00229

000229

## Endorsement Checklist

| Policy Number: 0001204473 | Renewed By: |
|---|---|
| Policy Period: 09-04-2011 to 09-04-2012 | |
| Named Insured: PREFERRED STAFFING COMPANY LLC | |
| DBA: IWORKS PERSONNEL | |
| TAM ID: | |

| Texas Endorsement Instructions | | |
|---|---|---|
| Not Applicable: ☐ | | |
| Endorsement Effective Date: | Eff Date: 20110904 | ☐ Multiple Dates |
| Bill Premium: | ☒ Yes | ☐ Subject To Audit |
| ADD: ☐ | | |
| AMEND: ☒ | PTS: please endt the policy to amend the EL Limits to 1,000/1,000/1,000. Thanks, Joe | |
| DELETE: ☐ | | |
| Comments: | | |
| Update Renewal Quote: | ☒ Yes | ☐ No |

| Out Of State Issuance Instructions | | |
|---|---|---|
| Not Applicable: ☒ | | |
| Effective/Expiration Date: | Eff Date: | ☐ Multiple Dates |
| ADD: ☐ | | |
| AMEND: ☐ | | |
| DELETE: ☐ | | |
| Comments: | | |
| Update Renewal Quote: | ☐ Yes | ☐ No |

| Completed By: | JOE RODRIGUEZ |
|---|---|
| Date: | 9-27-2011 |

TXM00230

000230



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: GXRANGEL

ENDTINS (06/09/99)



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

The Employers Liability Limits are amended to:
$1,000,000 each accident
$1,000,000 each employee
$1,000,000 policy limits

This endorsement reflects a net annual premium change of . :      347.00

THIS POLICY IS SUBJECT TO FINAL AUDIT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on         September 4, 2011         at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                          Endorsement No.         1
Premium $         115.00

_Ron Wright_
**Authorized Representative**

WC990301 (ED. 1-94)

INSURED'S COPY          GXRANGEL   10-03-2011

TXM00232

000232



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE        2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

10-03-2011

ITEM 4        ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 0000 | 12003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 0000 | 15403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 0000 | 15506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 0000 | 18810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 0000 | 19014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 0000 | 18044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 0000 | 18803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 0000 | 18833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 0000 | 18006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        September 4, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to        PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $            115.00

Endorsement No.        1

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY

GXRANGEL        10-03-2011

TXM00233

000233



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

10-03-2011

ITEM 4        ** SCHEDULE OF OPERATIONS **
                 LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|---------------------------------------------------|-------------------------------|--------------------------|
| 42 | 000018803 | | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000012881 | | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |
| | | | Subj to Experience Mod of  1.30 | | | |
| | | | Total Estimated Standard Premium | | | 18,335.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        September 4, 2011            at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $            115.00

Endorsement No.        1

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

INSURED'S COPY                        GXRANGEL        10-03-2011

TXM00234

000234



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS - STATE

EXTENSION OF INFORMATION PAGE

PAGE      4

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

10-03-2011

ITEM 4      ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9812 | INCREASED LIMITS 1000/1000/1000 | .02 | 374.00 |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,723.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,599.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,208.00- |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,788.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 17,217.00 |
| | | Total Estimated Annual Premium | | 35,552.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      September 4, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $          115.00

Endorsement No.      1

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          GXRANGEL      10-03-2011

TXM00235

000235



TEXAS MUTUAL INSURANCE COMPANY
CORPORATE HEADQUARTERS
AUSTIN, TEXAS  1-800-859-5995
www.texasmutual.com

INVOICE DATE 10/03/2011
INVOICE NUMBER 20182739
POLICY NUMBER 0001204473
PAGE  01 OF 01

| POLICYHOLDER NAME AND ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | LETTE INS AGCY<br>145 BOCA CHICA BLVD<br>BROWNSVILLE, TX 78520 |

| TRANS DATE | ORIGINAL INVOICE NUMBER | ORIGINAL AMOUNT DUE | TRANSACTION DESCRIPTION | OPEN AMOUNT DUE | DUE DATE |
|---|---|---|---|---|---|
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2011 | | | | | |
| 10/03/2011 | 20182739 | 115.00 | AMEND EMPLOYERS LIAB. LIMITS | 115.00 | 10/18/2011 |
| | | | POLICY YEAR TOTAL | $115.00 | |
| | | | AMOUNT DUE ON ACCOUNT | $115.00 | |

Payments not received by their due dates may result in cancellation of your current coverage.

---

Detach and return this portion with your payment.  Please make checks payable to Texas Mutual Insurance Company at the address below.
Payments not received by their due dates may result in cancellation of your current coverage.

TEXAS MUTUAL INSURANCE COMPANY
P.O. BOX 841843
DALLAS, TX 75284-1843
1-800-859-5995

INVOICE DATE 10/03/2011
INVOICE NUMBER 20182739
POLICY NUMBER 0001204473

AMOUNT DUE ON ACCOUNT     $115.00

AMOUNT ENCLOSED: _____

Please write your policy number on your check for prompt handling.
THANK YOU FOR YOUR BUSINESS!

BRSINVC

TXM00236

000236

**NOTEPAD**

**Insured Name:**          PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**         20110904

**Notes:**

---

--UW: REBECCA URIAS Time: 2011-09-08T15:44:11-05:00--

User Comments: Please review endt req to amend limits.

TXM00237

000237

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** October 03, 2011

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 7 including this cover

TXM00238

000238

# Texas Mutual Insurance Company
## Loss Prevention Survey Report

| | |
|---|---|
| Policyholder Name: | PREFERRED STAFFING CO |
| Policy Number: | 0001204473 |
| Premium: | $18,335.00 |
| Effective Date: | 09-04-2011 |
| Phone Number: | 956-459-5109 |
| Contact Name: | HAYDEE GUTIERREZ |
| Email: | haydeegutierrez@preferredstaffingtx.com |
| MailingAddress: | PO BOX 100111 |
| | SAN ANTONIO, TX 78201 |
| Locations Surveyed: | 5 BOCA CHICA BLVD STE 15B BROWNSVILLE,TX 78520; |
| Next Service Visit: | |
| SIC Code: | 7363-HELP SUPPLY SERVICES |
| LP Consultant: | jabarrer -ARO |

## A. *Underwriting Notes:*

Met with policy holder 10/2011.

There have been no significant changes in the policy holders over all operations.

Again their operations are primarily in the San Antonio area of Texas however, the owner is from Brownsville so I am assigned this account. It is sometimes hard to coordinate this visit as the owner is typically in San Antonio and only comes to Brownsville every couple of weeks.

## B. *Description of Operations and Processes:*

Policyholder is a temporary employment company that has a location in Brownsville and San Antonio, Texas. Radius of operation is 250 miles.
Policyholder provides temp services for janitorial, clerical, production and catering personnel. Their work is only performed in Brownsville and San Antonio, Texas. Temps are loaned out up to 90 days and then the customer can elect to hire the employee on a permanent basis.

Temps performing clerical duties for the policyholderÆs client will work with office equipment such as computers, fax machines, printers, etc. Temps working at warehouses will place items in boxes or repackage damaged boxes.

Production work will require temps to work on assembly lines, QC items, label items as they travel or come off conveyors.

Janitorial employees will vacuum carpets, dust and mop floors. Catering entails employees helping to wait on customers at catering events. No employees with the exception of janitorial employees operate any machinery. Janitorial employees may operate buffers and vacuums cleaners.

Policyholder will also provide forklift operators for clients. She will ensure they are trained by local forklift companies before allowing them to work at a clientÆs location. Her client will then verify employee is qualified to operate a forklift.

There are 4 employees working in their San Antonio office and 1 working at their Brownsville, Texas location. Employees handle the sales and administrative portion of the business. They operate computers, fax machines, telephones, etc. The company does not have any weight lifting restrictions as they brief employees to seek help if items are too heavy.

The company owns a 1999 van. The van is used in San Antonio to pickup supplies and on occasion transports employees to and from the clientÆs locations. Not own any vehicles. The sales employee will use their own vehicle to visit clients. MVRs are performed on all drivers including the sales employee. DriversÆ safety training is conducted periodically. Maintenance on their van is performed by a local garage/dealership and a cursory inspection is made on the sales employeesÆ vehicle.

TXM00239

000239

**Additional Site Visit:**

Address:

Contact:

**Description of jobsite/location:**

| Exposures and Safety Process | Yes | No | Comments |
|---|---|---|---|
| Are site operations and exposures similar to those at the main location? | | | |
| Is the company safety process effectively implemented away from main location? | | | |

**C.  *Hiring Process/ EmployeeData:***

| Hiring/Selection Process | Yes | No | Comments |
|---|---|---|---|
| Written job descriptions developed/used? | | X | |
| Application process used? | X | | Written application packet used for all potential new hires. |
| Reference/background checks completed | X | | MVR for those employees driving criminal checks also |
| Substance abuse testing completed? | X | | Pre-employment, random and post accident drug tests for some clients. |
| Pre-employment medical evaluations completed? | X | | Some clients require medical evaluations |
| Are union employees utilized? | | X | |

| Orientation and Training | Adequate | Inadequate | Comments |
|---|---|---|---|
| Policyholder orientation and training process | X | | Employees are trained on lifting, forklift operation, Bloodborne pathogen program, hazard communication program, housekeeping, working with hot contai |

TXM00240

000240

| Employment Totals | #FT | #PT | Comments |
|---|---|---|---|
| Administrative | 5 | | |
| Sales | 1 | | |
| Other - See Comments | 60 | | Temp employees |
| Total # of Employees | 66 | | |

| | Percent | Comments |
|---|---|---|
| **Turnover** | 40 | Temps become full time employees for the client or they look for permanent work elsewhere |

| Temporary or Leased | Yes | No | Comments |
|---|---|---|---|
| Temp/leased employees? | | X | |
| Subcontractors used? | | X | |
| COI or DWC agreement on file? | | X | |
| Interchange of labor with any other entity? | | X | |

### D. Loss Analysis:

| | Current Policy | 1st Previous Policy Year | 2nd Previous Policy Year | 3rd Previous Policy Year |
|---|---|---|---|---|
| Number of Claims | 0 | 7 | 1 | 0 |
| Incurred Loss $ | $0.00 | $257,737.0 | $679.00 | $0.00 |
| Loss Ratio (%) | 0 | 1513 | 2 | 0 |

| Significant Accident Types | Number of claims for current plus 3 prior | Dollars Loss Incurred |
|---|---|---|
| Struck By | 3 | $217,017.00 |
| Fall/Slip or Trip | 4 | $41,392.00 |
| Struck Against | 1 | $4.00 |

Date:  2010-10-30

Fatality? N

Incurred Loss Dollars: $216,285.00

TXM00241

000241

**Describe the cause of accident:** The employee was assigned to spot for the equipment operator as he maneuvered the milling machine down the street. The employee was standing in an intersection directing traffic with a stop/slow paddle in order to have the milling machine go through the intersection. The machine was making a left turn, the employee did not see the machine coming his way, and the operator could not see him from the position of the turn which resulted in the crushing of his right foot.

**Give a detailed description of corrective action taken:** As a result of this incident the policy holder stopped supplying temp services to areas out side of their normal service area as well as to this particular client in general. They instructed employees not to attempt to conduct job tasks outside their area of expertise and/or skill level and to report it to the owner immediately so she could handle it with the client. Specialized training will be conducted in needed to perform job tasks for the client.

**Is corrective action adequate?** Y

### E. *Exposures and Controls:*

**Exposure :** Struck-by

**Scope :** Employees are exposed to bugs/insects, being struck-by forklift operators, buffers, vacuum cleaners, by materials/equipment while being lifted/stored and being struck-by other employees while performing their tasks.

**Controls :** Employees are provided insect repellent, pest control visits quarterly, briefed to pay attention to the task at hand so materials/equipment do not strike them while being used as well as when lifting materials. They are also briefed to be aware of the forklifts so they are not struck by them.

**Conclusion :** Adequately Controlled


**Exposure :** Strains

**Scope :** Employees are exposed to lifting janitorial equipment/supplies, items at warehouses, production locations, at catering events and in offices

**Controls :** Employees are trained on how to lift properly, to position their body so they do not have to twist/pull/reach so much, provide carts to carry supplies/food and to seek help if items/tools are too heavy to lift by themselves. The company does not have any weight lifting restrictions as they brief employees to seek help if items are too heavy.

**Conclusion :** Adequately Controlled


**Exposure :** Burns

**Scope :** Employees are exposed to working with hot cooking pans and hot food during catering events.

**Controls :** Employees are briefed to use pot holders or kitchen mittens while getting food from the serving lines so they
can feed their customers.

**Conclusion :** Adequately Controlled


**Exposure :** falls/slips/trips

**Scope :** Employees may have to use stepstools, work around stored materials/equipment, in the breakroom where spills can occur, uneven surfaces depending on catering event, in break areas, in the bathrooms and walk around office equipment/supplies.

**Controls :** Employees are trained to maintain good housekeeping procedures throughout their work areas, to be aware
of their surroundings, clean-up spills, post 'wet' floor signs and use handrails if walking on stairs.

**Conclusion :** Adequately Controlled

TXM00242

000242

## F. *Safety Program:*

| Safety Program | | | | |
|---|---|---|---|---|
| **Adequate** | | | **Safety Program Components** | **Comments** |
| Yes | No | N/A | | |
| X | | | Is Policy Statement adequate? | Located in APP |
| X | | | Is New Employee Orientation adequate? | |
| X | | | Is Safety Meetings/Training adequate? | Monthly provided by PH employees also attend client company safety meetings and trainings as needed. |
| X | | | Trend Analysis - Benchmarking/Annual Program Evaluation and update. Is Key Performance Indicators adequate? | |
| X | | | Is Self Inspections : Method of performing corrective actions adequate? | Inspect work sites before taking on new clients and monthly after that depending on how long employees are on client site. |
| X | | | Is Incident/Accident investigation adequate? | I formal investigation process is used for all incidents as well as work with client company to correct any problems that may have caused incident. |
| X | | | Is Safety Rules adequate? | Are provided to employees at time of hire. |
| X | | | Is Recordkeeping, OSHA Logs adequate? | All logs and required documentation is being conducted. |
| X | | | Is Return to Work : Formal or Informal adequate? | |
| X | | | Is Alcohol/substance abuse program adequate? | Pre-employment, random and post accident drug tests by some clients. |
| X | | | Is Fleet Safety Program adequate? | |
| X | | | Is Hazard Communication adequate? | |
| X | | | Is Lockout/Tagout adequate? | |
| X | | | Is Respiratory Protection adequate? | |

TXM00243

000243

| | | | | | |
|---|---|---|---|---|---|
| X | | | | Is Fall Protection Program adequate? | |
| X | | | | Is Bloodborne Pathogens : First Responders adequate? | |
| X | | | | Is Forklift Operations/Training adequate? | Conducted prior to sending employees to new job locations |
| X | | | | Is Trenching Program adequate? | |
| X | | | | Is Scaffolding Program adequate? | |
| X | | | | Is Emergency Action/Evacuation Plan adequate? | |
| X | | | | Is Confine Space Entry : Permit Confined Space Entry adequate? | |
| X | | | | Is Overhead Crane Use/annual inspections adequate? | |
| X | | | | Is Heavy Equipment adequate? | |
| X | | | | Is Hearing Conservation adequate? | |
| X | | | | Is First Aid/CPR adequate? | |
| X | | | | Is Safety Incentives adequate? | |
| X | | | | Is Disciplinary Procedures : all levels adequate? | 3 step process is in place. |
| X | | | | Is PPE Hazard Assessment adequate? | PPE provided and type of PPE varies depending on client requirements |
| | | X | | Is Special Programs adequate? | |

TXM00244

000244

## G. _Management and Organization's Effectiveness:_

The owner knows and understands the importance of safety and controlling losses. She has responded to any and all suggestions and recommendations for improving on the safety program. She does not hesitate to contact the loss prevention consultant anytime she has a question or concern about a particular situation. She has implemented the safety program as it was given to her and over the last year made revisions and changes as she felt were needed to fit her operations.

**Conclusion:** Good

## H. _Rating:_

| Policyholder Rating | Justification |
|---|---|
| 3 | A written safety program has been created and implemented as per the START requirements. New employee orientation, regular training, inspections, accident reporting/investigation, record keeping, etcà are all being conducted. They have had one significantly large loss that was the result of an employee being struck by a piece of heavy equipment. However, the company this individual was working for is no longer a client of the policy holder due to their accident record and lack of attention to safety. The Owner shows a commitment to safety correcting obvious control weaknesses and recognizes the need for further improvement. |

## I. _Recommendations:_

**Open Recommendations:** None

**New Recommendations:** None

## J. _Next Service:_

| Yes | No | Number of Hours | General Goals |
|---|---|---|---|
|  | X |  |  |

TXM00245

000245


**TexasMutual**®
Insurance Company

10/14/2011

HAYDEE GUTIERREZ
PREFERRED STAFFING COMPANY LLC
PO BOX 100111
SAN ANTONIO, TX 78201
haydeegutierrez@iworkspersonnel.com

Policy Number:      0001204473
Location Visited:   5 BOCA CHICA BLVD STE 15B BROWNSVILLE, TX 78520
Effective Date:     09/04/2011
Next Service Visit: None

RE:  Accident Prevention Plan Approval - Policy Number:  STA 0001204473

Dear HAYDEE:

This letter confirms the consultation and hazard survey that was conducted on October 04, 2011. The purpose of this visit was to evaluate your current accident prevention plan and to identify existing and potential hazards that could cause employee injuries and illnesses in the workplace.

Texas Mutual Insurance Company must approve all pre-existing accident prevention plans as a requirement for workers' compensation insurance coverage in the Start Program. Prior approval by the Texas Department of Insurance – Division of Workers' Compensation (DWC) or past insurance carrier is not grounds for automatic approval by the Texas Mutual Insurance Company's Loss Prevention Division. However, after reviewing your current accident prevention program approval has been granted.

Approval is based on the following aspects of your current accident prevention program:

MANAGEMENT COMPONENT

This component encompasses all aspects required including stating their objective, commitment of management, and stating the responsibilities of all employees. A signed copy of the APP has been posted on the bulletin board with the other posters. And a singed copy is also located in the front of the APP.

ANALYSIS COMPONENT

An analysis was completed in October 2011 that covered the current plus 3 prior policy years with struck by, slip/trip/falls and strike against trends identified. Trends are conducted by the policy holder at least on a quarterly basis January, April and July or more frequently if you feel the need.

RECORDKEEPING COMPONENT

The records required as listed in this component of your APP are mostly contained in the other Components, and are complete.

TXM00246

000246

## SAFETY AND HEALTH EDUCATION AND TRAINING COMPONENT

There are signed new employee orientation forms in your APP binder that covers those hired over the past year. Since you are a Temp-employment agency you are continually hiring new employees. Each new employee receives an orientation based on specific hazards associated with their work location assignment as well as general company rules and policies. The signed acknowledgement forms covering the drug policy are maintained in the employees' personnel files. You are in the process of revising/updating the NEO process and have requested assistance in creating a checklist that can be used as addition documentation.

In addition to the above records, there are safety-meeting reports for the first, second and third quarters of 2011. Training is conducted on a continuous basis typically weekly at each job location by the client and monthly by the policy holder. Records and documentation can be obtained from the client by the policy holder related to trainings/meetings conducted that policy holder employees attended.

## SAFETY AUDIT/INSPECTION COMPONENT

There are documented work site inspections conducted at each location at least monthly. However, a site visit and visual observation of work practices and conditions are conducted weekly with on the spot corrective actions conducted. You will also conduct a work site evaluation prior to placing employees at a new client's location. If you do not approve of the site, hazards associated with the site and/or clients control strategies for the hazards then employees will not be placed on that site.

## ACCIDENT INVESTIGATION COMPONENT

There have been seven (7) injuries reported since the last DWC visit. The first report of injury, DWC 1, Supervisors Accident Investigation form and the OSHA 300 Log were properly filled out to reflect these injuries.

## PERIODIC REVIEW AND REVISION COMPONENT

The Review and Revision was completed in June 2011 with no changes indicated at that time. However, you are currently revising your NEO process. The next review is due in January 2011.

*Loss Analysis:*

|  | Current policy | 1st previous policy year | 2nd previous policy year | 3rd previous policy year |
|---|---|---|---|---|
| Number of claims | 0 | 7 | 1 | 0 |

| Significant accident types | Number of claims for current plus 3 prior years | *Dollars Loss Incurred* |
|---|---|---|
| Struck By | 3 | $217,017 |
| Fall/Slip or Trip | 4 | $41,392 |
| Struck Against | 1 | $4 |

A review of injury claims incurred by your company and an analysis of your company's operation revealed slip/trip/falls, struck bys, strike against, caught in/under/between, strain injuries, eye injuries,

TXM00247

000247

and burns/scalds are the most common and severe types of work related incidents. The use of proper engineering and administrative controls, as well as proper training/certification (i.e. STFs, musculoskeletal strains, welding/cutting safety, back injury prevention, work zone safety, equipment operations safety, heat related injury prevention, PPE, etc.) and the proper use of personal protective equipment may help control the frequency and severity of these injuries.

We discussed the incident that occurred on 10/30/2010 involving an employee being run over during a street construction project in El Paso.

The client company had been hired to conduct some street repairs and had requested Temp-employee help from your company to assist with the project. The employee was assigned to monitor/spot for the equipment operator as he maneuvered the machine down the street. The employee was standing in the middle of an intersection directing traffic with a stop/slow paddle in order to have the milling machine go through the intersection. The milling machine was attempting to make a left turn, the employee did not see the machine coming his way, and the operator could not see him from the position of the turn which resulted in the crushing of his right foot. As a result of this incident you have discontinued servicing this client.

You also informed me that you do not normally provided employees to clients in areas outside of your normal service areas (San Antonio, RGV) because you are unable to visit the jobsites and monitor employee activity, so this practice will no longer be conducted. You have also instructed your employees to inform you of work activities that they are not familiar with, have not been properly trained on and were not hired for, are being asked of them by clients.

As a result of our meeting and discussions there are no recommendations being submitted for your consideration. All recommendations issued during previous visits have been addressed and completed.

### Future Service:

An inspector from the Division of Workers' Compensation will contact you in 90 to 180 days to schedule a mandatory follow-up inspection to evaluate your continuing implementation of the accident prevention plan. This inspection is required by state law.

A member of the Texas Mutual Insurance Company's Loss Prevention Department or a Fee Company Representative may be contacting you periodically during the policy year to continue reviewing your safety program, and to assist you in your future loss prevention efforts. Please do not hesitate to contact me directly if you have any questions, or if I can be of further assistance to your loss prevention activities.

**Failure of your company to fully implement your Accident Prevention Program is a basis for termination of your workers' compensation insurance coverage by the Texas Mutual Insurance Company and may result in administrative penalties from the Division of Workers' Compensation.**

Thank you for the courtesies extended to me at the time of my survey. It is always a pleasure to provide loss control services to clients of Texas Mutual Insurance Company.

Respectfully submitted,


Jake Barrera
Loss Prevention Consultant

TXM00248

000248

Texas Mutual Insurance Company

cc:     Donna Carr
        Workers' Health & Safety Division MS-26
        Texas Department of Insurance - Division of Workers' Compensation
        7551 Metro Center Drive Ste 100
        Austin, TX 78744-1609

cc:     Underwriting Department

cc:     LETTE INS AGCY
        145 BOCA CHICA BLVD
        BROWNSVILLE, TX 78520

6210 East Highway 290, Austin, Texas 78723-1098
512.224.3800 | 800.859.5995 | www.texasmutual.com

TXM00249

000249

Subject:    Fw: IWORKS PERSSONEL & PREFERRED STAFFING STA-0001204473
SendTo:     CN=P&TS Imaging/OU=AUSTIN/O=THE_FUND@THE_FUND
From:       CN=Rudy Alba/OU=AUSTIN/O=THE_FUND

---

Thank you,
Rudy Alba - Underwriting
Texas Mutual Insurance Company
ralba@texasmutual.com
1-800-859-5995 x-6127
email Applications to: apps@texasmutual.com
email Correspondence and Endorsements to: underwriting@texasmutual.com

----- Forwarded by Rudy Alba/AUSTIN/THE_FUND on 10/25/2011 12:59 PM -----

From: "estela rodriguez" <estela@letteinsuranceagency.com>

To: "Rudy Alba'" <ralba@texasmutual.com>

Date: 10/24/2011 05:24 PM

Subject: IWORKS PERSSONEL & PREFERRED STAFFING STA-0001204473

---

Please endorse policy to add Hardin Construction Company LLC as additional insured with a 30 day Notice

Harding Construction Company LLC, Wereldhave USA-SAN ANTONIO,LP (OWNER0 & OWNERS REPRESENTAIVE IS NAMED AS ADDITIONAL INSURED OR AGENCYS OF THE ADDITIONAL INSURED OR ANY OTHER PARTY'S NEGLIGENCE

JOB: 640409 JOB NAME EILAN PODIUMS, HOTEL & CENTRAL PLANT

THIS INSURANCE IS PRIMARY & NON-CONTRIBUTORY, PER PROJECT.

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX 78520

956-541-7252 Phone

956-542-8757 Fax

---

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.1831 / Virus Database: 2092/4571 - Release Date: 10/24/11

TXM00250

000250

# COVER PAGE

Date: 10/25/2011 14:13
NO. OF PAGE: 2 (include this page)

## To:

| | |
|---|---|
| Name: | TEXAS MUTUAL INSURANCE |
| Department: | UNDERWRITING DEPT |
| Company: | WC |

## From:

| | |
|---|---|
| Name: | ESTELA RODRIGUEZ |
| TEL & FAX: | (TEL)956-542-8711 (FAX)1-956-542-8757 |
| E-Mail: | estela@letteinsuranceagenecy.com |
| Department: | COMMERCIAL DEPT |
| Company: | LETTE INSURANCE AGENCY |

## Comment:

Waiver of Subrogation Endorsement and    Additional Insured Endorsement on  30 day notice of cancellatioN
Please process this endorsement as soon as possible.

Thanks you,
Estela Rodriguez

TXM00251

000251



**TexasMutual®**
Insurance Company

6210 East Highway 290
Austin, TX 78723-1098
(800) 859-5995
FAX (800) 359-0650

## AGENT'S REQUEST FOR ENDORSEMENT

Name of Insured: Preferred Staffing LLC   Policy Number: STA-0001204473
Name of Agency: Lette Insurance Agency   Policy Term From: 9/4/11   To: 9/4/12
Contact: Estela Rodriguez   Effective Date of Change: _____
Telephone: 956-541-2252   Time: _____
Address: 145 Boca Chica Blvd, Brownsville TX 28520
Agent Signature: _Maude P. Lette_   Date: 10/25/11

Please check any endorsements that need to be added, deleted, or changed for the above policy, and briefly describe the specifics of the change.

☐ Amend Experience Modifier (Please include latest experience modifier worksheet.) _____

☐ Amend Employer's Limits of Liability _____

☐ Amend Payroll and/or Class Codes _____

☑ Add a Blanket or Specific Waiver of Subrogation (If specific, provide class code & payroll.) _____
Waiver of Subrogation + ADDITIONAL Insured
30 day NOC for Harding Construction Company LLC

☐ Request a Notice of Material Change _____

☐ Amend or add a Named Insured (include WC-RFI) _____

☐ Add, change, or delete a location (Please provide complete physical address, number of employees, and any applicable payroll for location additions.) _____

☐ Request a LHW, OCS or Maritime Endorsement (Please provide supplemental application(s).) _____

☐ Other Endorsements _____

Return this application to:   Texas Mutual Insurance Company
6210 East Highway 290
Austin, TX 78723-1098
(800) 859-5995

64000-006-0108-PC   rev. 09/08

The Insurance is primary & Non-Contributory, Per Project
Harding Construction Company LLC, Worldhare USA-San Antonio, LP
(owner + owners Representatives is NAMED as ADDITIONAL
Insured or Agency's of the ADDITIONAL Insured or ANY
parties Negligence   Job: 640409 Job Name: EILAN Podiums
Hotel & Central Plant

TXM00252

000252

Date Created: 11/01/2011 16:37:44

From: estela@letteinsuranceagency.com
SendTo: <underwriting@texasmutual.com>
Subject: STA0001204473

Please add 30 day notice for Hardin Construction LLC. Address 3301 Windy Ridge ParkwaySuite400Atlanta, GA30339. If this endorsement is able to be done today please email to me as soon as possible.

Thank you,

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX78520

956-541-7252 Phone

956-542-8757 Fax

TXM00253

000253

From:        estela@letteinsuranceagency.com
SendTo:      <underwriting@texasmutual.com>
Subject:     PREFERRED STAFFING STA0001204473

Good Afternoon this is Melissa, Estela is out of the office and I was wondering if you were able to help me get some information for the customer. They are requesting the experience modification anniversary date and a current final experience rating worksheet. If you could please help me locate these I would greatly appreciate it.

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX 78520

956-541-7252 Phone

956-542-8737 Fax

TXM00254

000254

## Facsimile Transmission - Additional Information



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** November 04, 2011

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

### Comments:

This correspondence is to the 10/25/11 request to have the policy endorsed. First, you request a waiver of subrogation in favor of Harding Construction. The policy has a blanket waiver that's applicable. Second, you ask for additional insured and since this is not a combinable entity, per majority ownership, I assume you need another endorsement that confirms who will cover injuries to employees. If so, the closest we get to the GL's additional insured is the alternate employer endorsement. Let me know if it is ok to endorse the policy with this endorsement. Finally, you added some wording on the request. I'm not sure what the intent was, but the wording on the endorsement will not be revised. The 30 day notice of cancellation will be added in favor of Harding Construction. Can you provide me the address? Please submit your response to the Underwriting address at Underwriting@TexasMutual.com. I put a stop to a cancel notice set to go out on the policy due to non-productive audit. I bought you some time. Will you please communicate with the insured and ask for their open communication with audit to resolve this matter? Call me if you have questions.

**From:** JOE RODRIGUEZ

TXM00255

000255

**FAX TRANSMISSION FAILURE**

Status:          0     (2 = Success, 0 = Failure)
Transtime:       11/04/11 13:43:47
Serial Number:   000072832436
Underwriter:     UNDCVRV2
Company:       LETTE INS AGCY
Contact:         ESTELA RODRIGUEZ
Fax Number:     9565428757
Duration:        260
Pages Sent:     00/01

TXM00256

000256



LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

REF: STA-0001204473
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
User ID:

     GXRANGEL

ENDTCOV (11-15-2004)

TXM00257

000257



**TexasMutual**®
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

```
Added WC420601 (Texas Material Change Endorsement) in favor
of:
HARDIN CONSTRUCTION LLC
```

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    November 1, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $       0.00

Endorsement No.     2

_Ron Wright_

Authorized Representative

WC990301 (ED. 1-94)

AGENT'S COPY      GXRANGEL    11-07-2011

TXM00258

000258



# WORKERS' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

## ENDORSEMENT SCHEDULE

EXTENSION OF INFORMATION PAGE
PAGE        2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D          **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        November 1, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.        2

_Ron Wright_
Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          GXRANGEL        11-07-2011

TXM00259

000259



EXTENSION OF INFORMATION PAGE
PAGE      3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      November 1, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $           0.00

Endorsement No.      2

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          GXRANGEL      11-07-2011

TXM00260

000260



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 06 01**

### TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:     30

2. Notice will be mailed to:

            HARDIN CONSTRUCTION LLC
            3301 WINDY RIDGE PARKWAY SUITE 400
            ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     November 1, 2011          at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $            0.00

Endorsement No.        2

*Ron Wright*

Authorized Representative

WC420601 (ED. 1-94)

AGENT'S COPY          GXRANGEL    11-07-2011

TXM00261

000261


Insurance Company

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: GXRANGEL

\*\*
   \*\*
\*\*

TXM00262

 **TexasMutual**®
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

```
Added WC420601 (Texas Material Change Endorsement) in favor
of:
HARDIN CONSTRUCTION LLC
```

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     November 1, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904     of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                          Endorsement No.       2
Premium $        0.00

_Ron Wright_
_____
Authorized Representative

WC990301 (ED. 1-94)

INSURED'S COPY          GXRANGEL   11-07-2011

TXM00263

000263



EXTENSION OF INFORMATION PAGE

PAGE    2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC | STA-0001204473 20110904 |
| DBA: IWORKS PERSONNEL | |
| PO BOX 100111 | ISSUE DATE |
| SAN ANTONIO, TX 78201-1411 | 11-07-2011 |

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|---|---|---|---|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on       November 1, 2011       at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.    2      **

*Ron Wright*
                                                    **

**Authorized Representative**

WC000001A (ED. 7-11)          INSURED'S COPY          GXRANGEL     11-07-2011

TXM00264

000264



EXTENSION OF INFORMATION PAGE

PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    November 1, 2011    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $         0.00

Endorsement No.    2    **
                              **
                              **

_Ron Wright_

**Authorized Representative**

WC000001A (ED. 7-11)        INSURED'S COPY        GXRANGEL    11-07-2011

TXM00265

000265



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 06 01**

## TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:        30

2. Notice will be mailed to:

HARDIN CONSTRUCTION LLC
3301 WINDY RIDGE PARKWAY SUITE 400
ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        November 1, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $            0.00

Endorsement No.        2

_Ron Wright_

Authorized Representative

**

**

**

WC420601 (ED. 1-94)

INSURED'S COPY            GXRANGEL    11-07-2011

TXM00266

000266



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

**User ID:** GXRANGEL

ENDTINS (06/09/99)

TXM00267

000267



**WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC420601 (Texas Material Change Endorsement) in favor of:
HARDIN CONSTRUCTION LLC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     November 1, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL             Endorsement No.     2
Premium $          0.00

_Ron Wright_
**Authorized Representative**

WC990301 (ED. 1-94)

INSURED'S COPY             GXRANGEL    11-07-2011

TXM00268

000268



EXTENSION OF INFORMATION PAGE
PAGE    2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    November 1, 2011    at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
            DBA: IWORKS PERSONNEL

Premium $         0.00

Endorsement No.    2

_Ron Wight_

Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          GXRANGEL    11-07-2011

TXM00269

000269



EXTENSION OF INFORMATION PAGE
PAGE        3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D            ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        November 1, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $            0.00

Endorsement No.      2

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)         INSURED'S COPY         GXRANGEL      11-07-2011

TXM00270

000270

 **TexasMutual®**
InsuranceCompany

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 06 01**

## TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:     30

2. Notice will be mailed to:

   HARDIN CONSTRUCTION LLC
   3301 WINDY RIDGE PARKWAY SUITE 400
   ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     November 1, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $          0.00

Endorsement No.        2

*Ron Wright*

Authorized Representative

WC420601 (ED. 1-94)

INSURED'S COPY          GXRANGEL     11-07-2011

**TXM00271**

000271

Facsimile Transmission



**Underwriting Services**
PO Box 12058
Austin, TX 78711-2058

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** November 07, 2011

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

<u>Comments:</u>

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 6    including this cover

TXM00272

000272

# COVER PAGE

Date: 11/09/2011 10:23
NO. OF PAGE: 6 (include this page)

To:

| | |
|---|---|
| Name: | JOE RODRIGUEZ |
| Company: | TEXAS MUTUAL INS CO |

From:

| | |
|---|---|
| Name: | ESTELA RODRIGUEZ |
| TEL & FAX: | (TEL)956-542-8711<br>(FAX)1-956-542-8757 |
| E-Mail: | estela@letteinsuranceagenecy.com |
| Department: | COMMERCIAL DEPT |
| Company: | LETTE INSURANCE AGENCY |

Comment:

please see attached agreement for the endorsement certificate

TXM00273

000273

RECEIVED NOV 0 9 2011

Facsimile Transmission - Additional Information

Texas Mutual®

**Underwriting Services**
PO Box 12058
Austin, TX 78711-2058

Phone: (800) 859-5995
Fax:     (800) 359-0650
Email:  underwriting@texasmutual.com

Date:   November 04, 2011

To:      LETTE INS AGCY              RE:    0001204473
ATTN:  ESTELA RODRIGUEZ                    PREFERRED STAFFING COMPANY LLC

Fax Number(s):
9565428757

**Comments:**

This correspondence is to the 10/25/11 request to have the policy endorsed. First, you request a waiver
of subrogation in favor of Harding Construction. The policy has a blanket waiver that's applicable.
Second, you ask for additional insured and since this is not a combinable entity, per majority ownership, I
assume you need another endorsement that confirms who will cover injuries to employees. If so, the
closest we get to the GL's additional insured is the alternate employer endorsement. Let me know if it is
ok to endorse the policy with this endorsement. Finally, you added some wording on the request. I'm not
sure what the intent was, but the wording on the endorsement will not be revised. The 30 day notice of
cancellation will be added in favor of Harding Construction. Can you provide me the address? Please
submit your response to the Underwriting address at Underwriting@TexasMutual.com. I put a stop to a
cancel notice set to go out on the policy due to non-productive audit. I bought you some time. Will you
please communicate with the insured and ask for their open communication with audit to resolve this
matter? Call me if you have questions.

*Hardin Construction Company LLC*
*is Named as an additional insured*
*as per written contract; This Insured is*
*Primary & Non-Contributory*
*SEE attached Contract*

From:  JOE RODRIGUEZ        *Hardin Construction Company, LLC*
*3301 Windy Ridge Parkway Suite 400*
*Atlanta GA, 30339*

TXM00274

000274

## SUBCONTRACT

### ATTACHMENT "A"

### SUBCONTRACTOR'S INSURANCE REQUIREMENTS

**SUBCONTRACTOR:**

**PROJECT:**

---

Contractor upon request. Anytime Subcontractor employs such workers, Subcontractor represents and warrants that: (1) Subcontractor has complete control and direction of such workers for all Work under this Subcontract (2) that the direct employer of such workers has no authority over such control or direction, and (3) Subcontractor has the exclusive right to discharge such workers from the Work.

**LIMITS:** The limits required above for Subcontractor's **Commercial General Liability, Commercial Automobile Liability,** and **Employer's Liability** may be satisfied by a combination of underlying (primary), umbrella and/or excess policies. However, the designation of any insurance as an "umbrella policy" or "excess policy" shall not be controlling as to priority of coverage, and Subcontractor agrees that the total limits of insurance required by Contractor shall be primary in all respects to insurance acquired by the Contractor, if any. If Subcontractor maintains such insurance in limits or combination of limits greater than that required by this Attachment "A", Contractor shall, as an Additional Insured, be entitled to the full limits of such policies.

.4   **Professional Liability:** ( ☐ ) **Required**
If required, Professional Liability with a minimum limit of $1,000,000 per claim and $1,000,000 aggregate covering claims arising out of the performance of professional engineering, architecture, or other professional services under the Subcontract and caused by errors, omissions, or negligent acts for which Subcontractor is liable. Such insurance shall be maintained in force by Subcontractor for a minimum extended reporting period of; (a) three (3) years after final completion and Owner's acceptance of the Project, or (b) for such longer period as may be required by the Subcontract Documents. Subcontractor shall require the same limits from any design professional or engineer engaged by Subcontractor on this Project.

.5   **Environmental/Pollution Liability:** ( ☐ ) **Required**
If required, Environmental/Pollution Liability with a minimum limit of $1,000,000 per claim and $1,000,000 aggregate covering claims arising out of the release, discharge or use of pollutants or hazardous materials, and including the development of microbial matter (fungae) for which Subcontractor is liable. Such insurance shall be maintained in force by Subcontractor for a minimum extended reporting period of; (a) three (3) years after the date of completion and Owner's acceptance of the Project, or (b) for such longer period as may be required by the Subcontract Documents.

.6   **Owner's and Contractor's Protective Liability ("OCP"):** ( ☐ ) **Required**
If required by this Attachment A, or provided to satisfy a condition of the Subcontract, the OCP policy shall have a minimum policy limit of no less than the Subcontract Price or $1,000,000, whichever is greater. The OCP policy shall name Contractor for primary liability coverage except it shall be amended to provide excess coverage over Subcontractor's Commercial General and Umbrella Liability policies as well as waive any rights of subrogation against Owner and other parties designated by Contractor. [The OCP policy shall name Contractor as the insured, be amended to provide excess coverage over Subcontractor's Commercial General and Umbrella/Excess Liability policies, and waive any rights of subrogation against Owner and other parties designated by Contractor.] The Original of or binder for the OCP policy, shall be provided to Contractor prior to the start of Subcontractor's Work and shall be effective on or before the date Subcontractor's Work commences. [The Original of, or binder for, the OCP policy shall be effective on or before the date of, and be provided to Contractor prior to, the start of Subcontractor's Work.]

.7   **Builder's Risk Insurance:** Subcontractor shall determine for itself the adequacy of Builder's Risk or Installation Risk coverage as it relates to Subcontractor's Work, including its materials and equipment, prior to commencement of Subcontractor's Work. Upon written request, Contractor will provide Subcontractor with a copy of the Builder's Risk insurance policy if procured by Contractor or, if procured by Owner, Contractor will provide Subcontractor Builder's Risk insurance policy information provided by Owner to Contractor. Subcontractor shall be responsible for the amount of any deductible, or loss or damage to the Work caused by Subcontractor, to the extent not reimbursed by applicable Builder's Risk insurance.

.8   **Other Insurance:** Subcontractor shall maintain separate insurance, be responsible for, and waives and releases claims against Contractor relating to loss or damage to rented, leased or owned equipment, temporary facilities, or other personal property of Subcontractor or its lower tier subcontractors, or any of their employees.

2.0   **CERTIFICATES OF INSURANCE.** No later than fifteen (15) days after the execution of this Subcontract or five (5) days prior to the start of Subcontractor's Work, whichever is earlier, Subcontractor shall provide Contractor a Certificate(s) of Insurance for all coverage and limits required by this Agreement. Subcontractor shall provide Contractor an original of any OCP policy. **EACH POLICY SHALL BE ENDORSED TO PROVIDE NO LESS THAN THIRTY (30) DAYS PRIOR WRITTEN NOTICE TO THE CERTIFICATE HOLDER OF CANCELLATION OR NON-RENEWAL. A COPY OF EACH REQUIRED ENDORSEMENT SHALL BE ATTACHED TO THE CERTIFICATE(S).**

3.0   **SUBCONTRACTING TO OTHERS.** If permitted under Paragraph 5.11 of the Subcontract, Subcontractor shall require and secure similar insurance from its subcontractors of every tier.

4.0   **REPORTS OF ACCIDENT AND INJURY.** In accordance with Subparagraph 5.8.4 of the Subcontract, Subcontractor shall immediately advise Contractor in writing of the facts and details of every accident involving personal injury or property damage arising out of or related to Subcontractor's Work.

5.0   **DEDUCTIBLES OR SELF INSURED RETENTIONS (SIR).** Subcontractor shall be responsible for payment of all deductibles or SIR applicable to Subcontractor's insurance coverage. Unless expressly agreed to in writing by Contractor, all required insurance coverage shall be without any deductible or self-insured retention greater than $25,000 per occurrence. If Contractor determines a larger deductible or self-insured retention the exists without Contractor's express written consent, Contractor may withhold payment otherwise due Subcontractor, in amount of such deductible or self insured retention, until the expiration of all contractual warranties required under the Subcontract. In the event Contractor makes a claim against any of Subcontractor's insurance required by this Attachment "A" or otherwise provided under the Subcontract Documents, Contractor may withhold from any payment otherwise due Subcontractor an amount to reasonably protect Contractor from such claim, until such claim is released or satisfied.

6.0   **WAIVER OF SUBROGATION.** Subcontractor shall obtain a written waiver of subrogation in favor of Contractor from its insurers for all policies described above.

Subcontractor Initials _____        13        Contractor Initials _____
Revision date 10/01/2011                                            Date Issued 11/9/2011

TXM00275

000275

## SUBCONTRACT

### ATTACHMENT "A"

### SUBCONTRACTOR'S INSURANCE REQUIREMENTS

SUBCONTRACTOR:

PROJECT:

---

1.0 **SUBCONTRACTOR'S INSURANCE AND MINIMUM LIMITS OF LIABILITY.** Subcontractor shall at a minimum, and irrespective of any other terms of the Subcontract Agreement ("Subcontract"), provide and maintain in force and at Subcontractor's sole expense the insurance required by this Attachment "A" concurrent with Subcontractor's obligations under the terms of the Subcontract. Such insurance shall be with a company or companies lawfully authorized to do business in the jurisdiction in which the Project is located and shall have a minimum rating of A- by A.M. Best Company, or the equivalent rating by another rating authority acceptable to Contractor ("Insurer(s)").

.1 **Commercial General Liability:** A Commercial General Liability policy on an occurrence based form with the following minimum program limits and coverage:

Limits:

| | | | |
|---|---|---|---|
| $ 1,000,000 | Per Occurrence* | $5,000 | Medical Expense per person |
| $ 1,000,000 | Personal and Advertising Injury | $ 2,000,000 | General Aggregate |
| $ 100,000 | Fire Damage | $ 1,000,000 | Products/Completed Operations-per Occurrence and Aggregate |

*The Per Occurrence limit shall at all times be equal to the minimum amount identified above, or the Subcontract Price as may be adjusted by Subcontract Change Order, whichever is greater.

Coverage shall include:
1. Contractual Liability insuring the obligations assumed by Subcontractor under the Subcontract.
2. Explosion, Collapse and Underground (XCU).
3. Per Project General Aggregate (Form # CG 25 03).
4. Additional Insureds on all policies including all Primary Liability and Excess/Umbrella as may be provided:
    a. Owner and its designees identified in the Owner/Contractor Agreement; Contractor; and all of the affiliates, parents, subsidiaries, officials, directors, employees, successors, assigns, representatives and volunteers of each of them, shall be named as Additional Insureds on all Subcontractor's policies, including Operations and Products/Completed Operations.
    b. Additional Insured coverage shall be provided on either: (i) Form # CG 20 10 11 85, covering Operations and Products/Completed Operations of Subcontractor; or (ii) Form # CG 20 10 (later editions), covering Ongoing Operations and amended to include Products/Completed Operations; or (iii) Form # CG 20 10 covering ongoing operations and Form # CG 20 37 10 01 covering Additional Insured Completed Operations; or (iv) equivalent form(s) acceptable to Contractor.
    c. If any of the foregoing Forms contain a blanket Additional Insured endorsement or provision, the policy shall be endorsed to provide Contractor notice of termination of coverage for the Project. Notice shall be sent to 3301 Windy Ridge Parkway, Suite 400, Atlanta, GA, 30339, Attn Risk Management.
5. Products/Completed Operations coverage shall be maintained for a minimum period of three (3) years after final completion and Owner's acceptance of the Project.
6. Cross Liability (Separation of Insureds).

No policy shall contain exclusions or have gaps in coverage that restrict or limit its ability to respond. For example, exclusions for residential construction, mold and\or pollution (unless provided by a separate policy), construction defects, or inability to name the parties identified in 1.1.4. a. as additional insureds for Products/Completed Operations coverage. Subcontractor and its Insurer(s) acknowledge that they have read the foregoing and warrant that their policy(ies) do(es) not contain such exclusions or gaps in coverage. Should the insurer(s) selected by Subcontractor fail or refuse to assume the defense of any claim that could or should be covered by the insurance required above, Subcontractor and its surety shall be liable to Contractor for all damages, fees and costs (including attorneys' fees) incurred in defending the claim, paying any settlement or judgment and/or pursuing the Insurer(s) for coverage.

By requiring insurance herein, Contractor does not represent that coverage and limits will necessarily be adequate to protect Subcontractor, and such coverage and limits shall not be deemed as a limitation on Subcontractor's liability under the indemnities granted Contractor or any other party.

.2 **Commercial Automobile Liability:** A Commercial Automobile Liability policy including coverage for death, bodily injury and property damage arising from Owned, Hired and Non-Owned Vehicles operated on or off the Project site with limits of:

$1,000,000 Combined Single Limit

.3 **Workers' Compensation:** Regardless of the number of Subcontractor's employees, Subcontractor shall provide and maintain Workers' Compensation insurance covering Subcontractor and all workers. Such insurance shall provide all statutory benefits required by the state in which the Project is located and/or any other governmental or legal authority having jurisdiction, and include **Employer's Liability** with limits of:

$1,000,000 Each Accident    $1,000,000 Disease Policy Limit    $1,000,000 Each Employee

Such insurance shall include an Alternate Employer Endorsement naming Contractor as the Alternate Employer.

If at any time Subcontractor has workers not on Subcontractor's direct payroll, (e.g. leased employees, contract workers, or other workers that could be classified as a "borrowed servant") not covered by Subcontractor's Workers Compensation insurance then, in addition to and not in lieu of Subcontractor's Workers' Compensation insurance, Subcontractor shall cause all such workers or their employers (e.g. lower tier subcontractors, employee leasing companies, labor brokers) to provide and maintain separate Workers' Compensation coverage for such employees with Employer's Liability in the above limits, and with an Alternate Employer Endorsement naming Subcontractor as the Alternate Employer. Subcontractor shall maintain evidence of this coverage through Certificates of Insurance, and Subcontractor shall provide copies of such certificates of insurance to

Subcontractor Initials _____      12      Contractor Initials _____
Revision date 10/01/2011                            Date Issued 11/9/2011

TXM00276

000276

## SUBCONTRACT

## ATTACHMENT "A"

### SUBCONTRACTOR'S INSURANCE REQUIREMENTS

SUBCONTRACTOR:

PROJECT:

7.0 **PRIMARY AND NON-CONTRIBUTORY.** Subcontractor stipulates and shall provide written confirmation from its insurer(s) that the insurance described above is primary and non-contributory.

8.0 If Subcontractor fails to fulfill the foregoing obligations, Contractor may: (1) terminate Subcontractor for default, or (2) purchase such insurance coverage at Subcontractor's expense.

9.0 **NON-WAIVER.** Subcontractor agrees that all documentation required herein shall be provided in a timely manner. However, Subcontractor's failure to provide the required documentation or Contractor's failure to request the required documentation shall not be construed as a waiver of any insurance requirements provided above. In addition, if Subcontractor submits any documentation to Contractor that does not conform to the insurance requirements herein provided, the acceptance or retention of the non-conforming documentation by the Contractor shall not operate as an estoppel or waiver of the insurance requirements specified by Contractor.

Subcontractor Initials _____
Revision date 10/01/2011

14

Contractor Initials _____
Date Issued 11/9/2011

TXM00277

000277

## GENERAL CONDITIONS OF SUBCONTRACT AGREEMENT

1. **General Agreement.** Subcontractor agrees to furnish and pay for all labor, materials, equipment, supervision and all other costs necessary for the proper execution of the Subcontractor's Work described on the reverse side hereof.

2. **Performance Time.** Subcontractor's performance shall be in accordance with the provisions on the reverse side hereof. Time is of the essence of this Subcontract. Subcontractor shall cooperate with Contractor and other Subcontractors so as to coordinate the schedule and performance of all Work to ensure minimum interference with one another and avoid delay in the work.

3. **Subcontract Price and Payments.** Contractor agrees to pay Subcontractor for the performance of Subcontractor's Work the amount shown on the reverse side hereof. On or before the date specified on the reverse side hereof, Subcontractor may request progress payment for Subcontractor's Work performed and in place to date by delivering the request to the project address on the reverse side hereof. Requests for payment for any of Subcontractor's Work performed on a time and materials basis must be supported by time cards signed daily by Contractor's Superintendent and identifying location and Work furnished. All requests for payment by Subcontractor shall be accompanied by a Monthly Request for Payment Affidavit and Release of Lien in form and content satisfactory to Contractor.

   Unless otherwise stipulated in the provisions set forth on the reverse side hereof, Contractor shall include the Subcontractor's request for payment in Contractor's next Application for Payment to the Owner and within seven (7) days after receipt of monies in payment for Subcontractor's request for payment, and only in the event of receipt of such monies, Contractor shall pay the same over to the Subcontractor. Unless claim for increase in subcontract price or for extension of time or for damages is made to the Contractor in writing within ten (10) days of the event upon which such a claim is based, such claim shall be denied.

4. **Final Payments.** Final payment is due upon satisfaction of all of the following conditions:

   (a)   When Subcontractor's Work is complete and performed in accordance with this Subcontract;

   (b)   When Subcontractor has supported its final request for payment with appropriate guarantees, warranties, affidavits, waivers and other documents required by this Subcontract and has furnished evidence satisfactory to Contractor that all payrolls, material invoices and other indebtedness connected with the doing of the Subcontractor's Work have been satisfied;

   (c)   When appropriate certification and final approval thereof have been received from the Architect and Owner; and

   (d)   When full payment is received by the Contractor from the Owner for Work performed hereunder by the Subcontractor.

   Subcontractor agrees and understands that Contractor may set off against the amount of final payment the amount of any liquidated or unliquidated claims, whether arising under this Subcontract or otherwise, that Contractor may have against the Subcontractor.

5. **Arbitration.** Any decision by the Owner relating to the Contractor's performance, which is binding upon the Contractor, shall also be binding upon the Subcontractor insofar as it relates to this Subcontract. Except as heretofore provided in this Article, all claims, disputes, and other matters in controversy arising out of or related to this Subcontract or the performance or breach thereof, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. No action may be initiated in any court of law or equity related to any claim or dispute unless the same has first been submitted to arbitration under the provisions hereof. No claim, dispute, or other matter in controversy shall interfere with the progress of the Work, and the Subcontractor shall proceed with its Work despite the existence of, and without awaiting the resolution of, any such dispute. Any award rendered by the Arbitrator(s) shall be final and binding.

6. **Indemnification.** To the fullest extent permitted by law, Subcontractor shall indemnify and hold harmless Owner, Architect, Contractor (including its affiliates, parents and subsidiaries) and all of their agents, officers, directors and employees from and against all claims, damages, loss and expenses, including but not limited to attorneys' fees, arising out of or resulting from the performance of Subcontractor's Work provided that any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than direct damage to Subcontractor's Work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of Subcontractor or anyone directly or indirectly employed by Subcontractor or anyone for whose acts Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder. Included in the Subcontract price is the sum of Fifty ($50.00) dollars as specific consideration for the above indemnity obligations.

7. **Job Conditions.** Contractor requires that the entire project be a clean and safe job. Subcontractor shall exercise due care in the performance of this Subcontract to provide for the safety of persons and property, including work of others, and to protect them from damage, injury, and loss, and is liable to Contractor for any failure to do so. Subcontractor shall, at its own expense, conform to the basic safety policy of Contractor and shall comply in every respect with all applicable Federal, State or local safety rules, standards, regulations and record keeping requirements. Subcontractor shall also keep the job clean on a daily basis, remove all debris from the site, and keep all material and equipment stored in a neat and orderly manner.

   Subcontractor and any of its subcontractors or suppliers shall be responsible for compliance with all applicable Federal, State or local environmental protection laws, requirements, codes, rules and regulations. In addition, Subcontractor and any of its subcontractors or suppliers shall, whenever possible, not use, provide or incorporate in the work any products or materials that are considered hazardous wastes or substances under any Federal, State or local laws, requirements, codes, rules or regulations and shall be responsible for the clean-up of such material.

   Subcontractor shall use only qualified workmen, shall be responsible for assuring that all material and equipment satisfy the requirements of this Subcontract, shall provide competent supervision, and shall employ and use no material or equipment which shall disrupt the doing of the Work by the Contractor or by a Subcontractor and shall, promptly upon receipt of notice from Contractor of any disruption, take such steps as Contractor may reasonably request to eliminate the same. Contractor is an Equal Employment Opportunity Employer, complying with Title VII of the Civil Rights Act of 1964. Subcontractor undertakes not to discriminate against any employee or applicant for employment because of race, creed, color, sex or national origin.

   Subcontractor must report to Contractor's Superintendent on a daily basis the number of workmen Subcontractor has on the job, a description of the Work performed and any accident and/or personal injury occurring relative to Subcontractor's Work on forms provided by the Contractor.

   Subcontractor agrees to have a written policy prohibiting its employees, subcontractors or agents (hereinafter referred to as "person(s)") who enter Contractor's jobsite, property or other workplace from (1) using, possessing, selling, purchasing, distributing or transporting drugs, controlled substances or unauthorized alcohol on Contractor's jobsite, property or other workplace, and (2) reporting to work or being at work on Contractor's jobsite, property or other workplace with measurable levels of illegal drugs, controlled substances, alcohol or intoxicants present in the body which may adversely affect the person's ability to perform his/her job safely and efficiently. Subcontractor agrees to require any person(s) involved in an accident or incident on Contractor's jobsite, property or other workplace which results in or could have resulted in personal injury or property damage to: (1) submit to a drug and/or alcohol test conducted by a NIDA approved laboratory at Subcontractor's expense within two (2) hours of an accident or incident or Contractor's request, or (2) immediately remove the person(s) from Contractor's jobsite, property or other workplace. Subcontractor agrees that any person(s) who tests positive for drugs or alcohol or refuses to submit to a drug and/or alcohol test shall be prohibited from returning to Contractor's jobsite, property or other workplace and shall be disciplined in accordance with Subcontractor's policies. Subcontractor acknowledges and agrees to notify its employees, suppliers or subcontractors that all persons entering Contractor's jobsite, property or other workplace are subject to search of their person or property by Contractor and that anyone refusing to submit to a search is subject to removal from Contractor's jobsite, property or other workplace.

8. **General Provisions.** Subcontractor agrees to the following general provisions:

   (a)   Subcontractor may not let, assign, or transfer this Subcontract without prior written consent from the Contractor.

   (b)   Subcontractor hereby guarantees to Contractor all of the Subcontractor's Work against all defects of materials and workmanship for a period of one (1) year from the date of final acceptance of the Contractor's Work by the Owner or for such longer period as the contract documents may require.

   (c)   Subcontractor shall comply with all Federal, State, and local laws, ordinances, rules and regulations relating to Subcontractor's Work, shall secure, at its own expense, all necessary licenses or permits to carry on the Work, and be responsible for and correct any violations thereof.

   (d)   Subcontractor agrees to turn Work over to the Owner and Contractor in good condition and free and clear of all claims, liens and encumbrances growing out of the performance of this Work. If a claim of lien for labor or materials is filed in connection with Subcontractor's Work by a party other than the Contractor or Subcontractor, Subcontractor shall cause the same to be immediately bonded or discharged, and upon failure to do so within seven (7) days, Contractor shall have the right to satisfy the lien. The Subcontractor shall be responsible for all costs incurred by Contractor (including, without limitation, attorney's fees and court costs) in connection with enforcing the terms of this paragraph.

   (e)   In the event the Contractor's machinery or equipment is used by the Subcontractor, such machinery or equipment shall be considered to be under the sole custody and control of the Subcontractor during each period of use. If any person(s) employed by or acting as agent of the Contractor or Owner should be used to operate the machinery or equipment, such person(s) shall be deemed during such period of use to be an employee(s) of the Subcontractor and shall not be deemed an employee(s) or agent of the Contractor or Owner.

   (f)   This Subcontract shall be governed by the laws of the State of Georgia.

9. **Termination.** This Subcontract shall be terminated upon written notice under the following conditions. If the Subcontractor violates any provision of the Subcontract, enters into bankruptcy or receivership, refuses or fails to supply adequate properly skilled workmen or materials to comply with job time schedules, fails to make prompt payment for materials or labor or if Subcontractor disregards laws, ordinances, rules, etc., then Contractor may provide Subcontractor with Notice to Cure. If Subcontractor fails to cure the default within three (3) days, then Contractor may terminate Subcontractor. Contractor may, at its sole option take possession of all materials, tools and equipment and utilize same to complete the work. All cost of completing Subcontractor's work will be deducted from the unpaid balance of the Subcontract and any remainder will be paid to the Subcontractor. In the event the actual cost of completion exceeds the unpaid Subcontract balance, then Subcontractor shall promptly pay such difference to the Contractor.

10. **Insurance.** Subcontractor shall provide and maintain at all times during the performance of this Subcontract the insurance specified in Attachment "A".

TXM00278

000278



**TexasMutual**®
Insurance Company

6210 E Highway 290      Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

<u>VIA CERTIFIED MAIL</u>
7011 1570 0002 1371 8514

| TYPE OF POLICY: |
| --- |
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
| --- |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 to | 9-04-2012 |

| DATE OF NOTICE: |
| --- |
| 11-15-2011 |

| CANCELLATION WILL TAKE EFFECT AT: | |
| --- | --- |
| 12-20-2011 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

## REASON FOR CANCELLATION
NON-COMPLIANCE - PREMIUM AUDIT

## CANCELLATION TERMS
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 956 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

TXM00279

000279

**FAX SENT SUCCESSFULLY**

| | |
|---|---|
| Status: | 2 |
| Transtime: | 11/16/11 05:11:48 |
| Serial Number: | 000073232896 |
| Underwriter: | UNDCVR |
| Company: | LETTE INS AGCY |
| Contact: | LETTE INS AGCY |
| Fax Number: | 9565428757 |
| Duration: | 41 |
| Pages Sent: | 02/02 |

TXM00280

000280

# Loss Prevention Review Checklist

| | |
|---|---|
| **Policy:** 0001204473 | |
| **Coverage Period:** 09-04-2011 to 09-04-2012 | |
| **Named Insured:** | PREFERRED STAFFING COMPANY LLC |
| **DBA:** | IWORKS PERSONNEL |
| **TAM ID:** | |
| **Date of Visit:** | 20111001 |

☒ Reviewed without any issues.

| | |
|---|---|
| **Comments:** | |
| **CompletedBy:** | JOE RODRIGUEZ |
| **Date:** | 11-16-2011 |

TXM00281

000281

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** November 16, 2011

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 2   including this cover

TXM00282

000282



LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

REF: STA-0001204473
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
User ID:

     LMFAVORS

ENDTCOV (11-15-2004)

TXM00283

000283



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

### GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC420601 (Texas Material Change Endorsement) in favor
of:

HARDIN CONSTRUCTION COMPANY LLC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      October 26, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                              Endorsement No.       3
Premium $           0.00

_Ron Wright_

Authorized Representative

WC990301 (ED. 1-94)

AGENT'S COPY          LMFAVORS    11-18-2011

TXM00284

000284



EXTENSION OF INFORMATION PAGE

PAGE  2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-18-2011

ITEM 3D          **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on       October 26, 2011       at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904       of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $           0.00

Endorsement No.     3

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          LMFAVORS     11-18-2011

TXM00285

000285



EXTENSION OF INFORMATION PAGE

PAGE    3

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC | STA-0001204473  20110904 |
| DBA: IWORKS PERSONNEL | |
| PO BOX 100111 | ISSUE DATE |
| SAN ANTONIO, TX 78201-1411 | 11-18-2011 |

ITEM 3D            ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|---|---|---|---|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        October 26, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC
               DBA: IWORKS PERSONNEL

Premium $           0.00

Endorsement No.      3

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)              AGENT'S COPY              LMFAVORS      11-18-2011

TXM00286

000286



## TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:      30

2. Notice will be mailed to:

> HARDIN CONSTRUCTION COMPANY LLC
> 3301 WINDY RIDGE PARKWAY STE 400
> ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      October 26, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $      0.00

Endorsement No.      3

_Ron Wright_

**Authorized Representative**

WC420601 (ED. 1-94)

AGENT'S COPY      LMFAVORS   11-18-2011

TXM00287

000287



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: LMFAVORS

ENDTINS (06/09/99)

**

**

**

TXM00288

000288

 **Insurance Company**

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC420601 (Texas Material Change Endorsement) in favor
of:

HARDIN CONSTRUCTION COMPANY LLC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          October 26, 2011          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904          of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                  Endorsement No.          3
Premium $          0.00

*Ron Wright*
_____
Authorized Representative

WC990301 (ED. 1-94)

INSURED'S COPY          LMFAVORS   11-18-2011

TXM00289

000289



EXTENSION OF INFORMATION PAGE

PAGE      2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-18-2011

ITEM 3D      ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      October 26, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC
            DBA: IWORKS PERSONNEL

Premium $      0.00

Endorsement No.    3     **

*Ron Wright*

       Authorized Representative

WC000001A (ED. 7-11)      INSURED'S COPY      LMFAVORS    11-18-2011

TXM00290

000290



EXTENSION OF INFORMATION PAGE

PAGE        3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-18-2011

ITEM 3D       **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        October 26, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
              DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.      3      **

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)        INSURED'S COPY        LMFAVORS    11-18-2011

TXM00291

000291

 **TexasMutual**®
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 06 01**

## TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:        30

2. Notice will be mailed to:

HARDIN CONSTRUCTION COMPANY LLC
3301 WINDY RIDGE PARKWAY STE 400
ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        October 26, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $            0.00

Endorsement No.        3

*Ron Wright*

**Authorized Representative**

WC420601 (ED. 1-94)

INSURED'S COPY            LMFAVORS    11-18-2011

TXM00292

000292

## Endorsement Checklist

| Policy Number: 0001204473 | Renewed By: |
|---|---|
| Policy Period: 09-04-2011 to 09-04-2012 | |
| Named Insured: PREFERRED STAFFING COMPANY LLC | |
| DBA: IWORKS PERSONNEL | |
| TAM ID: | |

### Texas Endorsement Instructions

Not Applicable: ☐

| Endorsement Effective Date: | Eff Date: 20111026 | ☐ Multiple Dates |
|---|---|---|
| Bill Premium: | ☒ Yes | ☐ Subject To Audit |
| ADD: ☒ | PTS: please endt the policy to add the 30 day notice in favor of Hardin Construction Company, LLC. Thanks, Joe | |
| AMEND: ☐ | | |
| DELETE: ☐ | | |
| Comments: | | |
| Update Renewal Quote: | ☐ Yes | ☒ No |

### Out Of State Issuance Instructions

Not Applicable: ☒

| Effective/Expiration Date: | Eff Date: | ☐ Multiple Dates |
|---|---|---|
| ADD: ☐ | | |
| AMEND: ☐ | | |
| DELETE: ☐ | | |
| Comments: | | |
| Update Renewal Quote: | ☐ Yes | ☐ No |

| Completed By: | JOE RODRIGUEZ |
|---|---|
| Date: | 11-16-2011 |

TXM00293

000293



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: LMFAVORS

ENDTINS (06/09/99)

TXM00294

000294



WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC420601 (Texas Material Change Endorsement) in favor
of:

HARDIN CONSTRUCTION COMPANY LLC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     October 26, 2011     at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.          3

*Ron Wright*

Authorized Representative

WC990301 (ED. 1-94)

INSURED'S COPY          LMFAVORS    11-18-2011

TXM00295

000295



EXTENSION OF INFORMATION PAGE

PAGE      2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-18-2011

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      October 26, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.      3

_Ron Wright_

Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          LMFAVORS      11-18-2011

TXM00296

000296



EXTENSION OF INFORMATION PAGE
PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-18-2011

ITEM 3D        ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    October 26, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $        0.00

Endorsement No.    3

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)        INSURED'S COPY        LMFAVORS    11-18-2011

TXM00297

000297

 **Texas Mutual** ®
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 06 01**

## TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:      30

2. Notice will be mailed to:

HARDIN CONSTRUCTION COMPANY LLC
3301 WINDY RIDGE PARKWAY STE 400
ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      October 26, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $            0.00

Endorsement No.      3

*Ron Wright*

**Authorized Representative**

WC420601 (ED. 1-94)

INSURED'S COPY            LMFAVORS   11-18-2011

TXM00298

000298

**NOTEPAD**

**Insured Name:**          PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**          20110904

**Notes:**

---

--UW: LISA M FAVORS Time: 2011-11-17T13:10:42-06:00--

User Comments:  Sent email requesting flag be lifted in order to process endorsement

---

--UW: LISA M FAVORS Time: 2011-11-17T16:07:55-06:00--

User Comments:  Flags lifted for endorsement, recd message

Policy 0001204473 90411 in use for Payroll Entry by WASOIA01 at workstation

flag put back on and pending until policy available

---

--UW: LISA M FAVORS Time: 2011-11-18T16:26:57-06:00--

User Comments:  endorsement complete

TXM00299

000299

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** November 18, 2011

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 6 including this cover

TXM00300

000300


**TexasMutual**
Insurance Company

**REINSTATEMENT NOTICE**

6210 E Highway 290    Austin, Texas 78723-1098
1-800-859-5995

Insured name and address:

    PREFERRED STAFFING COMPANY LLC
    IWORKS PERSONNEL
    PO BOX 100111
    SAN ANTONIO, TX 78201-1411

Provider name and address:

    LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

| TYPE OF POLICY: |
| --- |
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
| --- |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 to | 9-04-2012 |

| DATE OF NOTICE: |
| --- |
| 11-30-2011 |

| REINSTATEMENT WILL TAKE EFFECT AT: | |
| --- | --- |
| 12-20-2011 (DATE) | 12:01 A.M. (HOUR-STANDARD TIME) |

---

**REINSTATEMENT**

Please disregard the Notice of Cancellation previously sent to you. Your policy has been reinstated on the date and time shown above.

---

AGENT FAX: 956 542 8757
UCSEOD

PANOREIN (ED. 6/11)

**TXM00301**

000301



**TexasMutual**®
Insurance Company

6210 E Highway 290     Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

VIA CERTIFIED MAIL
7011 1570 0000 3106 1779

| TYPE OF POLICY: |
| --- |
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
| --- |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 to | 9-04-2012 |

| DATE OF NOTICE: |
| --- |
| 12-30-2011 |

| CANCELLATION WILL TAKE EFFECT AT: | |
| --- | --- |
| 2-06-2012 (DATE) | 12:01 A.M. (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**REASON FOR CANCELLATION**
INTERIM AUDIT NON-REPORTING/NON-PAYMENT

**CANCELLATION TERMS**
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 956 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

TXM00302

000302

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** December 31, 2011

**To:** LETTE INS AGCY          **RE:** 0001204473
**ATTN:** ESTELA RODRIGUEZ          PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 2   including this cover

TXM00303

000303

**FAX TRANSMISSION FAILURE**

Status:              0       (2 = Success, 0 = Failure)
Transtime:           12/31/11 05:16:53
Serial Number:       000074809844
Underwriter:         UNDCVR
Company:             LETTE INS AGCY
Contact:             LETTE INS AGCY
Fax Number:          9565428757
Duration:            164
Pages Sent:          00/02

TXM00304

000304

**FAX SENT SUCCESSFULLY**

| | |
|---|---|
| Status: | 2 |
| Transtime: | 12/31/11 05:16:53 |
| Serial Number: | 000074809844 |
| Underwriter: | UNDCVR |
| Company: | LETTE INS AGCY |
| Contact: | LETTE INS AGCY |
| Fax Number: | 9565428757 |
| Duration: | 203 |
| Pages Sent: | 02/02 |

TXM00305

000305

 **Texas Mutual**®
Insurance Company

6210 E Highway 290     Austin, Texas 78723-1098
1-800-859-5995

# REINSTATEMENT NOTICE

Insured name and address:

    PREFERRED STAFFING COMPANY LLC
    IWORKS PERSONNEL
    PO BOX 100111
    SAN ANTONIO, TX 78201-1411

Provider name and address:

    LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

| TYPE OF POLICY: |
| --- |
| Workers' Compensation and Employers Liability Coverage |
| POLICY NUMBER: |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 | 9-04-2012 |
| to | |

| DATE OF NOTICE: |
| --- |
| 1-05-2012 |

| REINSTATEMENT WILL TAKE EFFECT AT: | |
| --- | --- |
| 2-06-2012 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

## REINSTATEMENT

Please disregard the Notice of Cancellation previously sent to you. Your policy has been reinstated on the date and time shown above.

AGENT FAX: 956 542 8757
UCSEOD

PANOREIN (ED. 6/11)

TXM00306

000306



6210 E Highway 290
Austin, Texas 78723-1098
(FAX) 1-800-359-0650
1-800-859-5995

P.O. Box 12058
Austin, Texas 78711-2058
(FAX) 1-800-359-0650
1-800-859-5995

January 5, 2012

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

RE: STA-0001204473 20110904

## IMPORTANT NOTICE

Dear Policyholder:

Thank you for your recent premium payment. We have reinstated your workers' compensation insurance policy with no lapse in coverage. Your coverage had been cancelled because we had not received your premium payment by the required due date.

To avoid a lapse in coverage in the future, please be sure to send your premium payments on time. Remember, we must *receive* your payment by the due date and postmark dates do not count as the date received.

We reserve the right to cancel a policyholder's coverage at any time for late payment, without reinstating it under the policy's original terms.

Thank you for your cooperation in this matter.

CC: LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Strike1-121202

TXM00307

000307

# TexasMutual®
### Insurance Company

6210 E Highway 290     Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**VIA CERTIFIED MAIL**
7011 1570 0000 3106 1779

| TYPE OF POLICY: |
| --- |
| **Workers' Compensation and Employers Liability Coverage** |
| POLICY NUMBER: |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 | 9-04-2012 |

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| DATE OF NOTICE: |
| --- |
| 12-30-2011 |

| CANCELLATION WILL TAKE EFFECT AT. | |
| --- | --- |
| 2-06-2012 (DATE) | 12:01 A.M. (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

## REASON FOR CANCELLATION
INTERIM AUDIT NON-REPORTING/NON-PAYMENT

## CANCELLATION TERMS
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

UCSEOD

PNTC-CANCL- (ED. 06-11)

**INSURED'S COPY**

TXM00308

000308

TXM00309

2012-03-21-00117



**Texas**Mutual®
Insurance Company

6210 East Highway 290
Austin, Texas 78723-1098



CERTIFIED MAIL™

7011 1570 0000 3106 1779



NIXIE        782   DE 1        00 03/10/12

RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD

BC: 787781098        *0710-03992-03-44

7820121811 7810


PRINTED WITH WATER BASED INK


SUSTAINABLE
FORESTRY
INITIATIVE
Certified Sourcing
www.sfiprogram.org
SFI-01013

Please
Recycle
This
Envelope


www.texasmutual.com

**Texas**Mutual
Insurance Company

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS. FOLD AT DOTTED LINE




**Texas Department of Insurance**
Division of Workers' Compensation
7551 Metro Center Drive, Suite 100, MS-27 • Austin, Texas 78744-1645
512-804-4000 telephone • 512-804-4001 fax • www.tdi.state.tx.us

April 24, 2012

# 0001204473

Haydee Gutierrez
President
Preferred Staffing Company
PO Box 100111
San Antonio, TX 78201

RE: Report of Inspection

File No. HB6211-02

Dear Ms. Gutierrez:

On April 4, 2012, Kevin Candy, Senior Safety Inspector for the Texas Department of Insurance, Division of Workers' Compensation, conducted a follow-up inspection of Preferred Staffing Company. The purpose of this inspection was to evaluate the compliance with, and the effectiveness of, the Accident Prevention Plan (APP) required under Title 10, Subtitle E, §2054.507 of the Texas Insurance Code. The inspection was conducted at the employer's office at 3609 West Avenue, San Antonio, TX 78213. The inspection included an opening conference with Haydee Gutierrez, a review of the documentation associated with implementing the plan, a walk-through inspection to visually verify compliance with the plan through elimination of hazardous conditions and unsafe practices, and a closing conference to discuss findings.

**Nature of Business:** Preferred Staffing Company, a temporary employment company that provides temporary personnel for janitorial, warehouse, clerical, production and catering jobs has been in business for about 5 years. Preferred Staffing maintains offices in Houston, Austin, Brownsville and San Antonio. Temporary assignments are for up to 90 days after which time the customer can elect to hire the temporary employee on a permanent basis. While the number of personnel varies at any given time, currently there are about 150 full and part time employees. The company has two vans to run errands and for internal use only. The company provides some training to their personnel to acquaint them with Preferred Staffing's safety rules, as well as some basic safety issues such as safe lifting techniques and accident reporting. More intensive training is provided by the client companies. Inspections of the client companies are conducted by Preferred Staffing the day before and the day after an employee begins work.

Specific comments on compliance, effectiveness and implementation of the plan follow.

**Management Component:** The policy statement is signed by Haydee Gutierrez the Owner and President of Preferred Staffing Company. Haydee maintains all for the development, implementation, and enforcement of the accident prevention plan. No safety committee is currently being used due to the limited number of full-time employees working at the offices.

Recommendation: None

**Analysis Component:** Each branch manager is responsible for completing the analysis at their location. The analysis is conducted on a quarterly basis and includes injuries, job safety analysis, and inspection reports. The last analysis was completed in September 2011. No injuries have occurred to employees at the San Antonio location since at least 2010. All records before 2010 are currently packed in preparation to move the office.

Recommendation: None

**Recordkeeping Component:** Each branch manager is responsible for keeping the records of injuries, trainings, inspections, and accident reports. Recent records were available for review with long term records packed in preparation for the office move.

Recommendation: None

**Education and Training Component:** Each branch manager is responsible for providing and tracking training for the employees of their branch. Office employees attend trainings in January and July while all other employees attend training on a monthly basis.

Recommendation: None

**Audit/Inspection Component:** Branch managers are responsible for ensuring that inspections are conducted at the assigned intervals. Staffing offices are inspected in January and July, while all other sites receive a monthly inspection. Inspection records are maintained at the branch offices.

Recommendation: None

**Accident Investigation Component:** All accidents, incidents, or near misses are investigated by the branch manager or supervisor within 24 hours. The branch manager and supervisors can use the form provided by Texas Mutual Insurance Company to complete investigations. All corrective actions are implemented and followed up by the branch manager.

Recommendation: None

**Review of Program and Procedures Component:** The branch manager will review and make any needed changes during the month of January. Each branch manager is responsible for communicating and implementing any accident prevention plan changes.

Recommendation: None

**Walk-thru Inspection:** A walkthrough inspection was completed of the San Antonio facility. The offices of Preferred Staffing Company were split into two areas. One area housed the administration offices, while the other area is where the employees go to get their assignments and paychecks. The offices are located in an older shopping center. The housekeeping was well maintained and everything was neat and orderly. The landlord will be preparing the store next door to the two offices to be the new office for the Preferred Staffing San Antonio location. The following hazardous condition was identified:

1. The electrical box for the administrative office was blocked by the refrigerator. Breakers could still be accessed but the required 36" of clearance is not maintained.

TXM00311

000311

2012-04-24-00276

Recommended Action: Move the refrigerator to new location as soon as one can be safely created.

Your insurance company, Texas Mutual Insurance Company, requests that you reply to the address indicated below with action taken on the recommendations made in this report.

Professional Source: Jake Barrera

Texas Mutual Insurance Company

6210 East Highway 290

Austin, Texas 78723-1098

Based on the results of the inspection, Preferred Staffing Company has complied with the requirements of the program. Continued effort to keep the Accident Prevention Program effective should result in a safer and healthier workplace, a reduced number of accidents, and a more effective and efficient operation.

Sincerely,

Kevin Candy
Senior Safety Inspector
Workplace Safety
Texas Department of Insurance
Division of Workers' Compensation
7551 Metro Center Dr., Ste. 100 (MS-27)
Austin, TX 78744

c:          Loss Control Manager, Texas Mutual Insurance Company

            Professional Source: Jake Barrera

TXM00312

# WORKERS COMPENSATION EXPERIENCE RATING

**NCCI** Risk Name: PREFERRED STAFFING LLC

Risk ID: 421023034

Rating Effective Date: 09/04/2012          Production Date: 04/27/2012          State: TEXAS

| State | Wt | SRP | Exp Excess Losses | Expected Losses | Exp Prim Losses | Act Exc Losses | Ballast | Act Inc Losses | Act Prim Losses |
|-------|----|----|-------------------|-----------------|-----------------|----------------|---------|----------------|-----------------|
| TX | .08 | 0 | 4,899 | 6,500 | 1,601 | 188,447 | 7,500 | 216,679 | 28,232 |

| (A)(B) Wt | (C) Exp Excess Losses (D - E) | (D) Expected Losses | (E) Exp Prim Losses | (F) Act Exc Losses (H - I) | (G) Ballast | (H) Act Inc Losses | (I) Act Prim Losses |
|-----------|-------------------------------|---------------------|---------------------|----------------------------|-------------|--------------------|---------------------|
| .08 | 4,899 | 6,500 | 1,601 | 188,447 | 7,500 | 216,679 | 28,232 |

|  | Primary Losses | Stabilizing Value | Ratable Excess | Totals |
|--|----------------|-------------------|----------------|--------|
| Actual | (I) 28,232 | C * (1 - A) + G  12,007 | (A) * (F)  15,076 | (J) 55,315 |
| Expected | (E) 1,601 | C * (1 - A) + G  12,007 | (A) * (C)  392 | (K) 14,000 |

|  | ARAP | FLARAP | SARAP | MAARAP | Exp Mod |
|--|------|--------|-------|--------|---------|
| Factors |  |  |  |  | (J) / (K)  1.25 |

MODIFIER MAY BE CAPPED IF TOTAL EXPECTED LOSSES ARE $15,000 OR LESS

Carrier: 29939 - 000    Policy: 0001204473          Eff-Date: 09/04/2011    Exp-Date: 09/04/2012

Copyright 1993-2012. All rights reserved. This experience modification factor is comprised of compilations and information which are the proprietary and exclusive property of the National Council on Compensation Insurance, Inc. (NCCI). No further use, dissemination, sale, transfer, assignment or disposition of this experience rating modification factor or any part thereof may be used without the written consent of NCCI. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever including but not limited to the accuracy of any information, product or service furnished hereunder and, as to NCCI, recipient of this experience rating modification factor subscribes to and utilizes the information service "as is".

TXM00313

000313

# WORKERS COMPENSATION EXPERIENCE RATING

**NCCI**    Risk Name: PREFERRED STAFFING LLC        Risk ID: 421023034

Rating Effective Date: 09/04/2012     Production Date: 04/27/2012     State: TEXAS

**42-TEXAS**      Firm ID:      Firm Name: PREFERRED STAFFING LLC

Carrier: 29939     Policy No. 0001195658     Eff Date: 10/23/2008     Exp Date: 07/05/2009

| Code | ELR | D-Ratio | Payroll | Expected Losses | Exp Prim Losses | Claim Data | IJ | OF | Act Inc Losses | Act Prim Losses |
|------|-----|---------|---------|-----------------|-----------------|------------|----|----|----------------|-----------------|
| 1701 | 2.15 | .23 | 4,856 | 104 | 24 | 99K0569725 | 4 | F | 27,781 | 5,000 |
| 3681 | .52 | .25 | 9,760 | 51 | 13 | 99K0557583 | 5 | F | 2,061 | 2,061 |
| 8008 | .64 | .25 | 2,040 | 13 | 3 | | | | | |
| 8810 | .07 | .24 | 158,113 | 111 | 27 | | | | | |
| 9014 | 1.40 | .25 | 123,868 | 1,734 | 434 | | | | | |
| 9080 | .54 | .25 | 43,153 | 233 | 58 | | | | | |
| Policy Total: | | | 341,790 | Subject Premium: | 16,292 | Total Act Inc Losses: | | | 29,842 | |

**42-TEXAS**      Firm ID:      Firm Name: PREFERRED STAFFING LLC

Carrier: 29939     Policy No. 0001204473     Eff Date: 09/04/2009     Exp Date: 09/04/2010

| Code | ELR | D-Ratio | Payroll | Expected Losses | Exp Prim Losses | Claim Data | IJ | OF | Act Inc Losses | Act Prim Losses |
|------|-----|---------|---------|-----------------|-----------------|------------|----|----|----------------|-----------------|
| 2003 | 1.92 | .24 | 1,898 | 36 | 9 | 99L0604422 | 6 | F | 590 | 590 |
| 2003 | 1.92 | .24 | 7,593 | 146 | 35 | | | | | |
| 2881 | 1.31 | .25 | 3,226 | 42 | 11 | | | | | |
| 5190 | 1.29 | .23 | 680 | 9 | 2 | | | | | |
| 5190 | 1.29 | .23 | 2,720 | 35 | 8 | | | | | |
| 5220 | 1.43 | .25 | 5,250 | 75 | 19 | | | | | |
| 5220 | 1.43 | .25 | 21,000 | 300 | 75 | | | | | |
| 8033 | 1.10 | .25 | 2,711 | 30 | 8 | | | | | |
| 8033 | 1.10 | .25 | 10,844 | 119 | 30 | | | | | |
| 8810 | .07 | .24 | 97,141 | 68 | 16 | | | | | |
| 8810 | .07 | .24 | 388,565 | 272 | 65 | | | | | |
| 8833 | .32 | .24 | 10,824 | 35 | 8 | | | | | |
| 8833 | .32 | .24 | 43,298 | 139 | 33 | | | | | |
| 9014 | 1.40 | .25 | 5,274 | 74 | 19 | | | | | |
| 9014 | 1.40 | .25 | 21,096 | 295 | 74 | | | | | |
| Policy Total: | | | 622,120 | Subject Premium: | 11,624 | Total Act Inc Losses: | | | 590 | |

Copyright 1993-2012, All rights reserved. This experience modification factor is comprised of compilations and information which are the proprietary and exclusive property of the National Council on Compensation Insurance, Inc. (NCCI). No further use, dissemination, sale, transfer, assignment or disposition of this experience rating modification factor or any part thereof may be used without the written consent of NCCI. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever including but not limited to the accuracy of any information, product or service furnished hereunder and, as to NCCI, recipient of this experience rating modification factor subscribes to and utilizes the information service "as is".

\* Total by Policy Year of all cases $2000 or less.    D Disease Loss      X Ex-Medical Coverage      U USL&HW
C Catastrophic Loss      E Employers Liability Loss      # Limited Loss

TXM00314

000314

# WORKERS COMPENSATION EXPERIENCE RATING

**NCCI** Risk Name: PREFERRED STAFFING LLC

Risk ID: 421023034

Rating Effective Date: 09/04/2012        Production Date: 04/27/2012        State: TEXAS

**42-TEXAS**        Firm ID:        Firm Name: PREFERRED STAFFING LLC

Carrier: 29939        Policy No. 0001204473        Eff Date: 09/04/2010        Exp Date: 09/04/2011

| Code | ELR | D-Ratio | Payroll | Expected Losses | Exp Prim Losses | Claim Data | IJ | OF | Act Inc Losses | Act Prim Losses |
|------|-----|---------|---------|-----------------|-----------------|------------|----|----|----------------|-----------------|
| 2003 | 1.92 | .24 | 54,325 | 1,043 | 250 | 99L0630187 | 4 | O | 18,743 | 5,000 |
| 2881 | 1.31 | .25 | 8,889 | 116 | 29 | 99L0626254 | 4 | O | 211,285 # | 5,000 |
| 8006 | 1.19 | .25 | 41,570 | 495 | 124 | 99M0635655 | 5 | F | 4,124 | 4,124 |
| 8803 | .04 | .23 | 333,699 | 133 | 31 | 99M0667338 | 5 | O | 54,923 | 5,000 |
| 8810 | .07 | .24 | 205,520 | 144 | 35 | NO. 2 | 6 | * | 1,457 | 1,457 |
| 8833 | .32 | .24 | 31,271 | 100 | 24 | | | | | |
| 9014 | 1.40 | .25 | 39,154 | 548 | 137 | | | | | |
| **Policy Total:** | | | 714,428 | Subject Premium: 17,615 | | Total Act Inc Losses: | | | 290,532 | |

Copyright 1993-2012. All rights reserved. This experience modification factor is comprised of compilations and information which are the proprietary and exclusive property of the National Council on Compensation Insurance, Inc. (NCCI). No further use, dissemination, sale, transfer, assignment or disposition of this experience rating modification factor or any part thereof may be used without the written consent of NCCI. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever including but not limited to the accuracy of any information, product or service furnished hereunder and, as to NCCI, recipient of this experience rating modification factor subscribes to and utilizes the information service "as is".

* Total by Policy Year of all cases $2000 or less        D Disease Loss        X Ex-Medical Coverage        U USL&HW
C Catastrophic Loss        E Employers Liability Loss        # Limited Loss

TXM00315

000315

**FAX SENT SUCCESSFULLY**

| | |
|---|---|
| Status: | 2 |
| Transtime: | 05/11/12 13:59:26 |
| Serial Number: | 000080230334 |
| Underwriter: | UNDCVR |
| Company: | LETTE INS AGCY |
| Contact: | LETTE INS AGCY |
| Fax Number: | 9565428757 |
| Duration: | 86 |
| Pages Sent: | 04/04 |

TXM00316

000316

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** May 11, 2012

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 4   including this cover

TXM00317

000317


## TexasMutual®
### Insurance Company

6210 E Highway 290      Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| TYPE OF POLICY | |
|---|---|
| Workers' Compensation and Employers Liability Coverage | |
| POLICY NUMBER | |
| 0001204473 | |
| POLICY PERIOD | |
| 9-04-2011 to | 9-04-2012 |
| DATE OF NOTICE | |
| 6-11-2012 | |

**CANCELLATION WILL TAKE EFFECT AT:**

| 7-16-2012 | 12:01 A.M. |
|---|---|
| (DATE) | (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

## REASON FOR CANCELLATION
NON-COMPLIANCE - PREMIUM AUDIT

## CANCELLATION TERMS
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 956 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

TXM00318

000318

From: estela@letteinsuranceagency.com
SendTo: <underwriting@texasmutual.com>
Subject: STA0001204473 PREFERRED STAFFING LLC

---

Add endorsement

Alternative employers to their policy in favor of

Pioneer Contract Service

8090 Kempwood

Houston TX77055

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX78520

956-541-7252 Phone

956-542-8757 Fax

TXM00319

000319

No virus found in this message.

Checked by AVG - www.avg.com

Version: 2012.0.1913 / Virus Database: 2433/5062 - Release Date: 06/11/12

TXM00320

000320

**FAX SENT SUCCESSFULLY**

| | |
|---|---|
| Status: | 2 |
| Transtime: | 06/12/12 05:12:35 |
| Serial Number: | 000081411461 |
| Underwriter: | UNDCVR |
| Company: | LETTE INS AGCY |
| Contact: | LETTE INS AGCY |
| Fax Number: | 9565428757 |
| Duration: | 41 |
| Pages Sent: | 02/02 |

TXM00321

000321

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** June 12, 2012

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 2    including this cover

TXM00322

000322

Date Created: 06/11/2012 07:27:12

Subject: Fw: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

SendTo: Drops//

From:    Bernadine E. Barno/AUSTIN/THE_FUND

Thank you,

Bernadine E. Barno, Senior Underwriter
Phone: 1-800-859-5995, ext 6106
Direct Line: 512-505-6106
Fax: 1-800-359-0650
Email: bbarno@texasmutual.com
Submit applications to apps@texasmutual.com
Submit all other correspondence to underwriting@texasmutual.com

----- Forwarded by Bernadine E. Barno/AUSTIN/THE_FUND on 06/11/2012 07:27 AM -----

From: Michael Vela/AUSTIN/THE_FUND

To: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND

Cc: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND, Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND

Date: 06/07/2012 03:27 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

Policy 0001204473 Eff 9/04/2010

Insured PREFERRED STAFFING COMPANY LLC

All, this audit was completed as non productive today and will be invoice and mailed to the insured on 6-8-2012.

TXM00323

000323

Thanks

Mike

Martin M. Bali---06/07/2012 03:13:41 PM---I spoke to Mike just a few minutes ago. He is going to change it to close as NON-PRO. Thanks.

From: Martin M. Bali/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND

Cc: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND, Michael Vela/AUSTIN/THE_FUND@THE_FUND

Date: 06/07/2012 03:13 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

---

I spoke to Mike just a few minutes ago. He is going to change it to close as NON-PRO.

Thanks.

Martin M. Bali
Manager – Premium Audit
6210 East Highway 290, Austin TX 78723
512-224-3927 800-859-5995 Fax 512-224-2881
www.texasmutual.com
mbali@texasmutual.com

Frank D. Elmen---06/06/2012 07:49:33 PM---Jamie, The audit was processed in December as incomplete, but was changed to closed even for books a

From: Frank D. Elmen/DALLAS/THE_FUND

To: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND

Cc: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND, Michael Vela/AUSTIN/THE_FUND@THE_FUND

TXM00324

000324

Date: 06/06/2012 07:49 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

Jamie,

The audit was processed in December as incomplete, but was changed to closed even for books and records, which unfortunately gave them additional coverage.

I don't know how to revert it back to incomplete. It will have to be handled in corporate and maybe whatever was done in December can be done to change it back to incomplete.

Since this is an ARO account, I will defer to Martin and Mike.

Frank

Jamie M. Gage---06/04/2012 02:48:59 PM---Good afternoon, Frank and Martin: The 09/04/10-11 FIN Audit processed Closed Even Pending Review o

From: Jamie M. Gage/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND, Martin M. Bali/AUSTIN/THE_FUND@THE_FUND

Cc: Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND

Date: 06/04/2012 02:48 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

Good afternoon, Frank and Martin:

The 09/04/10-11 FIN Audit processed Closed Even Pending Review of Books & Records since Isaias was unable to secure a client list and employee break down to test client companies.

In an effort to secure the missing documentation, I contacted and spoke with Haydee Gutierrez, owner, 02/01/12, and provided my contact information. Ms. Gutierrez advised she would forward the outstanding documents to me as soon as

TXM00325

000325

possible. I left a v/m message for Ms. Gutierrez 02/29/12 asking her to contact me in regards to the outstanding documents. I sent Ms. Gutierrez an email 04/11/12 and

attempted to contact her by phone 05/11/12. I've made numerous attempts to contact Ms. Gutierrez to resolve the audit; however, she is not responding. Can we change the audit status to non-compliant/incomplete. I've discussed the account with Underwriter Bernadine Barno.

Thank you. -Jamie

Frank D. Elmen---05/14/2012 01:01:12 PM---Jamie, We aren't going to be able to perform the audit on the 10/11 period or the current period and

From: Frank D. Elmen/DALLAS/THE_FUND

To: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND

Cc: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND, Review Unit Special Accounts/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND, Connie X. Davis/AUSTIN/THE_FUND@THE_FUND

Date: 05/14/2012 01:01 PM

Subject: Re: FIN Audit recommendation for SAA

---

Jamie,

We aren't going to be able to perform the audit on the 10/11 period or the current period and really need to get off this account.

Claims were heavy for the 10/11 period.

Bernadine,

This is a non-compliant account.

Frank

Jamie M. Gage---05/14/2012 12:49:33 PM---Hi Frank. Unfortunately, I can't provide that kind of assurance. Haydee Gutierrez, President and a

TXM00326

000326

From: Jamie M. Gage/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND

Cc: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND, Review Unit Special Accounts/THE_FUND@THE_FUND

Date: 05/14/2012 12:49 PM

Subject: Re: FIN Audit recommendation for SAA

---

Hi Frank. Unfortunately, I can't provide that kind of assurance. Haydee Gutierrez, President and audit contact, is difficult to reach for Loss Prevention, Claims Department and Audit. I've tried several times to reach her in an effort to resolve the 10/11 final audit. On the 10/11 final audit, Isaias wrote that he requested a special accounts auditor to conduct the audit due to the size of records and SID issues. He was waiting on a client list and employee breakdown for each client so that the client companies could be tested; however, Ms. Gutierrez never forwarded that documentation. I'm okay with the audit being assigned to Isaias, and I will accompany Isaias. Thank you. -Jamie

Jamie M. Gage
Investigator II
Special Investigations Department
Texas Mutual Insurance Company
6210 East Highway 290
Austin, TX 78723
512/505-6018

Frank D. Elmen---05/14/2012 12:24:15 PM---Jamie, I'm surprised the 11/12 period was not canceled.

From: Frank D. Elmen/DALLAS/THE_FUND

To: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND

Cc: Review Unit Special Accounts/THE_FUND@THE_FUND, Martin M. Bali/AUSTIN/THE_FUND@THE_FUND

Date: 05/14/2012 12:24 PM

Subject: Re: FIN Audit recommendation for SAA

TXM00327

000327

Jamie,

I'm surprised the 11/12 period was not canceled.

Because this account is located in Brownsville and there is no assurance they will be cooperative, I have reservations about pre-assigning the FIN to a SAA. It is problematic to have my SAA schedule and travel down for a non-compliant audit; either nonproductive or incomplete. We have Isaias there locally to handle this for us. However, if SID can provide assurance it won't be a wasted trip to the Valley, I will consider a SAA at expiration. The 09/10 audit was closed for books and records and I will rely on SID to provide assurance all records will be available. If assurance can't be given, we need to let Isaias handle, especially if both periods are to be audited.

Frank

Jamie M. Gage---05/11/2012 03:12:28 PM---Good afternoon, Frank. I'd like to recommend a 09/04/11-12 FIN Audit of Preferred Staffing Company

From: Jamie M. Gage/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND

Cc: Review Unit Special Accounts/THE_FUND@THE_FUND

Date: 05/11/2012 03:12 PM

Subject: FIN Audit recommendation for SAA

Good afternoon, Frank. I'd like to recommend a 09/04/11-12 FIN Audit of Preferred Staffing Company LLC DBA: IWorks Personnel, STA-0001204473 to be conducted by a SAA. Please see the attached SID Summary of Concerns. Isaias Bazan could not complete the 09/04/10-11 FIN Audit due to the insured failing to provide all of the requested documentation. Thank you, Frank. -Jamie

[attachment "SID Summary of Concerns for 090411 FIN.doc" deleted by Frank D. Elmen/DALLAS/THE_FUND]

Jamie M. Gage
Investigator II
Special Investigations Department

TXM00328

000328

Texas Mutual Insurance Company
6210 East Highway 290
Austin, TX 78723
512/505-6018

TXM00329

000329

Date Created: 06/11/2012 07:26:27

Subject: Fw: FIN Audit recommendation for SAA: Preferred Staffing Company
LLC, STA-0001204473

SendTo: Drops//

From: Bernadine E. Barno/AUSTIN/THE_FUND

---

Thank you,

Bernadine E. Barno, Senior Underwriter
Phone: 1-800-859-5995, ext 6106
Direct Line: 512-505-6106
Fax: 1-800-359-0650
Email: bbarno@texasmutual.com
Submit applications to apps@texasmutual.com
Submit all other correspondence to underwriting@texasmutual.com

----- Forwarded by Bernadine E. Barno/AUSTIN/THE_FUND on 06/11/2012 07:26
AM -----

From: Martin M. Bali/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND

Cc: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND, Bernadine E.
Barno/AUSTIN/THE_FUND@THE_FUND, Michael
Vela/AUSTIN/THE_FUND@THE_FUND

Date: 06/07/2012 03:13 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC,
STA-0001204473

---

I spoke to Mike just a few minutes ago. He is going to change it to close as NON-
PRO.

Thanks.

Martin M. Bali
Manager - Premium Audit

TXM00330

000330

6210 East Highway 290, Austin TX 78723
512-224-3927 800-859-5995 Fax 512-224-2881
www.texasmutual.com
mbali@texasmutual.com

Frank D. Elmen---06/06/2012 07:49:33 PM---Jamie, The audit was processed in December as incomplete, but was changed to closed even for books a

From: Frank D. Elmen/DALLAS/THE_FUND

To: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND

Cc: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND, Michael Vela/AUSTIN/THE_FUND@THE_FUND

Date: 06/06/2012 07:49 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

---

Jamie,

The audit was processed in December as incomplete, but was changed to closed even for books and records, which unfortunately gave them additional coverage.

I don't know how to revert it back to incomplete. It will have to be handled in corporate and maybe whatever was done in December can be done to change it back to incomplete.

Since this is an ARO account, I will defer to Martin and Mike.

Frank

Jamie M. Gage---06/04/2012 02:48:59 PM---Good afternoon, Frank and Martin: The 09/04/10-11 FIN Audit processed Closed Even Pending Review o

From: Jamie M. Gage/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND, Martin M. Bali/AUSTIN/THE_FUND@THE_FUND

Cc: Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND

TXM00331

000331

Date: 06/04/2012 02:48 PM

Subject: Re: FIN Audit recommendation for SAA: Preferred Staffing Company LLC, STA-0001204473

Good afternoon, Frank and Martin:

The 09/04/10-11 FIN Audit processed Closed Even Pending Review of Books & Records since Isaias was unable to secure a client list and employee break down to test client companies.

In an effort to secure the missing documentation, I contacted and spoke with Haydee Gutierrez, owner, 02/01/12, and provided my contact information. Ms. Gutierrez advised she would forward the outstanding documents to me as soon as possible. I left a v/m message for Ms. Gutierrez 02/29/12 asking her to contact me in regards to the outstanding documents. I sent Ms. Gutierrez an email 04/11/12 and attempted to contact her by phone 05/11/12. I've made numerous attempts to contact Ms. Gutierrez to resolve the audit; however, she is not responding. Can we change the audit status to non-compliant/incomplete. I've discussed the account with Underwriter Bernadine Barno.

Thank you. -Jamie

Frank D. Elmen---05/14/2012 01:01:12 PM---Jamie, We aren't going to be able to perform the audit on the 10/11 period or the current period and

From: Frank D. Elmen/DALLAS/THE_FUND

To: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND

Cc: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND, Review Unit Special Accounts/THE_FUND@THE_FUND, Bernadine E. Barno/AUSTIN/THE_FUND@THE_FUND, Connie X. Davis/AUSTIN/THE_FUND@THE_FUND

Date: 05/14/2012 01:01 PM

Subject: Re: FIN Audit recommendation for SAA

Jamie,

TXM00332

000332

We aren't going to be able to perform the audit on the 10/11 period or the current period and really need to get off this account.

Claims were heavy for the 10/11 period.

Bernadine,

This is a non-compliant account.

Frank

Jamie M. Gage---05/14/2012 12:49:33 PM---Hi Frank. Unfortunately, I can't provide that kind of assurance. Haydee Gutierrez, President and a

From: Jamie M. Gage/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND

Cc: Martin M. Bali/AUSTIN/THE_FUND@THE_FUND, Review Unit Special Accounts/THE_FUND@THE_FUND

Date: 05/14/2012 12:49 PM

Subject: Re: FIN Audit recommendation for SAA

---

Hi Frank. Unfortunately, I can't provide that kind of assurance. Haydee Gutierrez, President and audit contact, is difficult to reach for Loss Prevention, Claims Department and Audit. I've tried several times to reach her in an effort to resolve the 10/11 final audit. On the 10/11 final audit, Isaias wrote that he requested a special accounts auditor to conduct the audit due to the size of records and SID issues. He was waiting on a client list and employee breakdown for each client so that the client companies could be tested; however, Ms. Gutierrez never forwarded that documentation. I'm okay with the audit being assigned to Isaias, and I will accompany Isaias. Thank you. -Jamie

Jamie M. Gage
Investigator II
Special Investigations Department
Texas Mutual Insurance Company
6210 East Highway 290
Austin, TX 78723
512/505-6018

TXM00333

000333

Frank D. Elmen---05/14/2012 12:24:15 PM---Jamie, I'm surprised the 11/12 period was not canceled.

From: Frank D. Elmen/DALLAS/THE_FUND

To: Jamie M. Gage/AUSTIN/THE_FUND@THE_FUND

Cc: Review Unit Special Accounts/THE_FUND@THE_FUND, Martin M. Bali/AUSTIN/THE_FUND@THE_FUND

Date: 05/14/2012 12:24 PM

Subject: Re: FIN Audit recommendation for SAA

---

Jamie,

I'm surprised the 11/12 period was not canceled.

Because this account is located in Brownsville and there is no assurance they will be cooperative, I have reservations about pre-assigning the FIN to a SAA. It is problematic to have my SAA schedule and travel down for a non-compliant audit; either nonproductive or incomplete. We have Isaias there locally to handle this for us. However, if SID can provide assurance it won't be a wasted trip to the Valley, I will consider a SAA at expiration. The 09/10 audit was closed for books and records and I will rely on SID to provide assurance all records will be available. If assurance can't be given, we need to let Isaias handle, especially if both periods are to be audited.

Frank

Jamie M. Gage---05/11/2012 03:12:28 PM---Good afternoon, Frank. I'd like to recommend a 09/04/11-12 FIN Audit of Preferred Staffing Company

From: Jamie M. Gage/AUSTIN/THE_FUND

To: Frank D. Elmen/DALLAS/THE_FUND@THE_FUND

Cc: Review Unit Special Accounts/THE_FUND@THE_FUND

Date: 05/11/2012 03:12 PM

Subject: FIN Audit recommendation for SAA

---

TXM00334

000334

Good afternoon, Frank. I'd like to recommend a 09/04/11-12 FIN Audit of Preferred Staffing Company LLC DBA: IWorks Personnel, STA-0001204473 to be conducted by a SAA. Please see the attached SID Summary of Concerns. Isaias Bazan could not complete the 09/04/10-11 FIN Audit due to the insured failing to provide all of the requested documentation. Thank you, Frank. -Jamie

[attachment "SID Summary of Concerns for 090411 FIN.doc" deleted by Frank D. Elmen/DALLAS/THE_FUND]

Jamie M. Gage
Investigator II
Special Investigations Department
Texas Mutual Insurance Company
6210 East Highway 290
Austin, TX 78723
512/505-6018

TXM00335

000335



LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

REF: STA-0001204473
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
User ID:

     MEFOLKER

ENDTCOV (11-15-2004)

TXM00336

000336



**WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC000301 (Alternate Employer Endorsement) in favor of:
PIONEER CONTRACT SERVICES INC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    June 12, 2012    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL                                    Endorsement No.    4

Premium $         0.00

_Ron Wright_
_____
Authorized Representative

WC990301 (ED. 1-94)

AGENT'S COPY          MEFOLKER    7-09-2012

TXM00337

000337



EXTENSION OF INFORMATION PAGE

PAGE   2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
7-09-2012

ITEM 3D        **   ENDORSEMENT SCHEDULE   **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    June 12, 2012    at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904   of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $     0.00

Endorsement No.   4

*Ron Wright*

_____
Authorized Representative

WC000001A (ED. 7-11)      AGENT'S COPY      MEFOLKER   7-09-2012

TXM00338

000338



EXTENSION OF INFORMATION PAGE

PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
7-09-2012

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      June 12, 2012                at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Endorsement No.    4

Premium $          0.00

_Ron Wright_
Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          MEFOLKER      7-09-2012

TXM00339

000339

 
## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

### Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| PIONEER CONTRACT SERVICES INC | 8090 KEMPWOOD DR HOUSTON, TX 77055-1003 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      June 12, 2012          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $              0.00

Endorsement No.       4

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

TXM00340

000340



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: MEFOLKER

ENDTINS (06/09/99)

\*\*
  \*\*
\*\*

TXM00341

000341



## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC000301 (Alternate Employer Endorsement) in favor of:
PIONEER CONTRACT SERVICES INC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          June 12, 2012          at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904          of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL                                    Endorsement No.        4

Premium $          0.00

*Ron Wright*

**Authorized Representative**

WC990301 (ED. 1-94)

INSURED'S COPY          MEFOLKER     7-09-2012

TXM00342

000342



EXTENSION OF INFORMATION PAGE
PAGE    2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
7-09-2012

ITEM 3D              ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        June 12, 2012          at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $            0.00

Endorsement No.      4        **
                                        **
Ron Wright                              **
Authorized Representative

WC000001A (ED. 7-11)          INSURED'S COPY          MEFOLKER      7-09-2012

TXM00343

000343



EXTENSION OF INFORMATION PAGE
PAGE     3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
7-09-2012

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|---|---|---|---|
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     June 12, 2012     at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.     4     **

*Ron Wright*
Authorized Representative          **

WC000001A (ED. 7-11)          INSURED'S COPY          MEFOLKER     7-09-2012

TXM00344

000344

 **®WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY**

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

### Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| PIONEER CONTRACT SERVICES INC | 8090 KEMPWOOD DR HOUSTON, TX 77055-1003 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on     June 12, 2012          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.     4

*Ron Wright*

**Authorized Representative**

WC000301 (ED. 1-94)

INSURED'S COPY          MEFOLKER     7-09-2012

TXM00345

000345

## Endorsement Checklist

| Policy Number: 0001204473 | Renewed By: Q003104553 |
|---|---|
| Policy Period: 09-04-2011 to 09-04-2012 | |
| Named Insured: PREFERRED STAFFING COMPANY LLC | |
| DBA: IWORKS PERSONNEL | |
| TAM ID: | |

### Texas Endorsement Instructions

Not Applicable: ☐

| Endorsement Effective Date: | Eff Date:<br>20120612 | ☐ Multiple Dates |
|---|---|---|
| Bill Premium: | ☒ Yes | ☐ Subject To Audit |
| ADD: ☒ | WC00 03 01 - ALTERNATE EMPLOYER endt for Pioneer Contract per email attached. Thxs, BB | |
| AMEND: ☐ | | |
| DELETE: ☐ | | |
| Comments: | | |
| Update Renewal Quote: | ☐ Yes | ☒ No |

### Out Of State Issuance Instructions

Not Applicable: ☒

| Effective/Expiration Date: | Eff Date: | ☐ Multiple Dates |
|---|---|---|
| ADD: ☐ | | |
| AMEND: ☐ | | |
| DELETE: ☐ | | |
| Comments: | | |
| Update Renewal Quote: | ☐ Yes | ☐ No |

| Completed By: | BERNADINE BARNO |
|---|---|
| Date: | 6-29-2012 |

TXM00346

000346



PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

REF: STA-0001204473

User ID: MEFOLKER

ENDTINS (06/09/99)

TXM00347

000347

 **TexasMutual**® 
Insurance Company

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC000301 (Alternate Employer Endorsement) in favor of:
PIONEER CONTRACT SERVICES INC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on June 12, 2012 at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $ 0.00

Endorsement No. 4

*Ron Wright*

Authorized Representative

WC990301 (ED. 1-94)

INSURED'S COPY        MEFOLKER    7-09-2012

TXM00348

000348



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## ENDORSEMENT SCHEDULE

EXTENSION OF INFORMATION PAGE

PAGE    2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
7-09-2012

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on          June 12, 2012          at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.     4

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)          INSURED'S COPY          MEFOLKER     7-09-2012

TXM00349

000349



EXTENSION OF INFORMATION PAGE

PAGE        3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
7-09-2012

ITEM 3D          ** ENDORSEMENT SCHEDULE **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        June 12, 2012         at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY LLC
              DBA: IWORKS PERSONNEL

Premium $           0.00

Endorsement No.        4

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)           INSURED'S COPY           MEFOLKER        7-09-2012

TXM00350

000350



## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| PIONEER CONTRACT SERVICES INC | 8090 KEMPWOOD DR HOUSTON, TX 77055-1003 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on June 12, 2012 at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $ 0.00

Endorsement No. 4

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

INSURED'S COPY     MEFOLKER   7-09-2012

TXM00351

000351

**NOTEPAD**

**Insured Name:**      PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**      20110904

**Notes:**

--UW: MARY E FOLKERTS Time: 2012-07-06T15:37:07-05:00--

User Comments:  pend for a day sid flag needs to be removed///mef

TXM00352

Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** July 09, 2012

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

<u>**Comments:**</u>

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 6   including this cover

TXM00353

000353

image

**Insured Name:**          PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**          20110904

**Notes:**

--User: vlklein Date Time: 2012-08-21T11:27:51.336-05:00--

CPBR

TXM00354

000354



6210 E Highway 290
Austin, Texas 78723-1098
1-512-224-7194
1-800-859-5995

P.O. Box 841843
Dallas, TX 75284-1843
1-512-224-7194
1-800-859-5995

August 24, 2012

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

RE: POLICY NUMBER  STA-0001204473 20110904
     FINAL AUDIT INVOICE

Dear policyholder:

Enclosed you will find a copy of your FINAL AUDIT STATEMENT for the policy term referenced above. Please take a moment to review your final audit statement.

IF PAYMENT IS DUE, A CONSOLIDATED INVOICE HAS BEEN ENCLOSED. In that event, please detach and return the bottom portion of your invoice with your payment. Checks must be made payable to Texas Mutual Insurance Company and should include your policy number as noted above. Our payment mailing address is:

    Texas Mutual Insurance Company
    P.O. Box 841843
    Dallas, TX 75284-1843

**Please remit payment for any amounts due by the due date reflected on your invoice.**

If you need additional information or if we can be of further assistance, please contact the Premium Audit Department at 1-800-859-5995. We appreciate your business and prompt attention to this matter.


Sincerely,


Premium Audit Department


cc:  LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520


FACOVR (ED. 10-26-06)

TXM00355

000355



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

| Statement Date | 8-24-2012 |
|---|---|

**INSURED NAME AND ADDRESS**
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**PRODUCER NAME AND ADDRESS**
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| 00001 | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 40,492 | 12.71 | 5,147.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 15,246 | 7.61 | 1,160.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 253,467 | 0.27 | 684.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 98,433 | 0.27 | 266.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 1,452,700 | 0.44 | 6,392.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 68,694 | 8.96 | 6,155.00 |
| | | Period Total | 1,961,536 | | 22,698.00 |
| | | Location Total | 1,961,536 | | 22,698.00 |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 454.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 463.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,085.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 23,025.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,447.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,546.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

| | | |
|---|---|---|
| Total Earned Premium | | 43,862.00 |
| Previously Billed | 43,976.00 | |
| Cash Collected | | 43,861.00- |
| Additional Premium | | 1.00 |

FASTMT (ED. 12-08-03)

1 of 2

VLKLEIN
TXM00356

000356



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

| Statement Date | 8-24-2012 |
|---|---|

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|

FINAL AUDIT: CLOSED EVEN: PENDING
REVIEW OF BOOKS & RECORDS

VLKLEIN
TXM00357

000357



6210 E Highway 290
Austin, Texas 78723-1098
1-512-224-7194
1-800-859-5995

P.O. Box 841843
Dallas, TX 75284-1843
1-512-224-7194
1-800-859-5995

August 24, 2012

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

RE: POLICY NUMBER  STA-0001204473 20110904
    FINAL AUDIT INVOICE

Dear policyholder:

Enclosed you will find a copy of your FINAL AUDIT STATEMENT for the policy term referenced above.  Please take a moment to review your final audit statement.

IF PAYMENT IS DUE, A CONSOLIDATED INVOICE HAS BEEN ENCLOSED.  In that event, please detach and return the bottom portion of your invoice with your payment.  Checks must be made payable to Texas Mutual Insurance Company and should include your policy number as noted above.  Our payment mailing address is:

    Texas Mutual Insurance Company
    P.O. Box 841843
    Dallas, TX 75284-1843

**Please remit payment for any amounts due by the due date reflected on your invoice.**

If you need additional information or if we can be of further assistance, please contact the Premium Audit Department at 1-800-859-5995.  We appreciate your business and prompt attention to this matter.

Sincerely,

Premium Audit Department

CC:  LETTE INS AGCY
     145 BOCA CHICA BLVD
     BROWNSVILLE, TX 78520

FACOVR (ED. 10-26-06)

TXM00358

000358



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|
| Statement Date | 8-24-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| 00001 | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 40,492 | 12.71 | 5,147.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 15,246 | 7.61 | 1,160.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 253,467 | 0.27 | 684.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 98,433 | 0.27 | 266.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 1,452,700 | 0.44 | 6,392.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 68,694 | 8.96 | 6,155.00 |
| | | Period Total | 1,961,536 | | 22,698.00 |
| | | Location Total | 1,961,536 | | 22,698.00 |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 454.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 463.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,085.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 23,025.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,447.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,546.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

| | | |
|---|---|---|
| Total Earned Premium | | 43,862.00 |
| Previously Billed | 43,976.00 | |
| Cash Collected | | 43,861.00- |
| Additional Premium | | 1.00 |

FASTMT (ED. 12-06-03)

VLKLEIN
TXM00359

000359



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

Statement Date  8-24-2012

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|

FINAL AUDIT: CLOSED EVEN; PENDING
REVIEW OF BOOKS & RECORDS

VLKLEIN
TXM00360

000360

**NOTEPAD**

**Insured Name:**          PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**         20110904

**Notes:**

---------------------------------

--UW: MARY FOLKERTS Time: 2012-09-12T09:39:44-05:00--

User Comments: Per my conversation with B Barno I am sending these docs to audit so the J Gage in SID can collect..Thank you Mary Ellen

---------------------------------

--UW: VICTORIA D ESTRADA Time: 2012-09-12T14:17:49-05:00--

User Comments:  Intiated work item for Review 2

TXM00361

000361

# Interim Posting Receipt

| | | | | |
|---|---|---|---|---|
| **Policy Number** | 0001204473 | | **Audit Period** | 03/01/2012 - 05/31/2012 |
| **Effective Date** | 09/04/2011 - 09/04/2012 | | **Due Date** | 06/15/2012 |
| **Bill Period** | 3 | | **Document ID** | 2 643 893 8 |

**1  PREFERRED STAFFING COMPANY LLC**

| Class Code | Sub Class | Class Description | Reported Payroll | Rate | Posted Premium |
|---|---|---|---|---|---|
| 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 13,254 | 12.71 | 1,685 |
| 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 15,326 | 8.3 | 1,272 |
| 5403 | 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238 |
| 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | 0 | 14.87 | 0 |
| 8006 | 004 | GROCERY STORE-RETAIL | 0 | 7.61 | 0 |
| 8044 | 002 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 8,454 | 13.04 | 1,102 |
| 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 75,210 | 0.27 | 203 |
| 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 43,652 | 0.27 | 118 |
| 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 35,682 | 0.44 | 157 |
| 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 0 | 2.01 | 0 |
| 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERVICE | 0 | 8.96 | 0 |
| | | **Location Sub-totals** | 193,220 | | 4,775 |
| **\*\*\*\*** | Location Total | | | | 4,775 |

## INVOICE

| Class Code | State Level Premium Adjustment Description | Factor | | Posted Premium |
|---|---|---|---|---|
| **\*\*\*\*** | Sub-total Earned Premium | | | 4,775 |
| 0930 | WAIVER OF SUBROGATION | (2.00%) | 1.0200 | 4,871 |
| 9812 | INCREASED LIMITS 1000/1000/1000 | (2.00%) | 1.0200 | 4,968 |
| 9898 | EXPERIENCE MOD | (30.00%) | 1.3000 | 6,458 |
| 9887 | SCHEDULE RATE MODIFIER | (75.00%) | 1.7500 | 11,302 |
| 9874 | HEALTH CARE NETWORK DISCOUNT | (-12.00%) | 0.8800 | 9,946 |
| 0063 | PREMIUM DISCOUNT | (-7.30%) | 0.9270 | 9,220 |

| | |
|---|---|
| **Current Period Total** | 9,220.00 |
| **Balance From Prior Report** | 0.00 |
| **Outstanding Report Balance** | 9,220.00 |
| **Less Payment Received** | 9,220.00 |
| **Balance Due** | 0.00 |

| RETURN TO INTERIM REPORTING PERIODS | PRINT TO MAIL PAYMENT |
|---|---|

Copyright © 2012 Texas Mutual Insurance Co.    All Rights Reserved    Terms of Use    Privacy    Contact Us

TXM00362

000362

From:      estela@letteinsuranceagency.com

SendTo:    <underwriting@texasmutual.com>

Subject:    FW: Workforce Quarterly Reports STA0001204473

---

Please see attached

---

**From:** Haydee Gutierrez [mailto:HaydeeGutierrez@iworkspersonnel.com]

**Sent:** Wednesday, September 12, 2012 1:00 PM

**To:** 'estela rodriguez'

**Cc:** Haydee Gutierrez

**Subject:** Workforce Quarterly Reports

Hi Estela,

Here are the Quarterly Reports for 4thy Quarter 2010 & 1,2,3 Quarter of 2011.

Let me know when you receive this.

Sincerely,

Haydee Gutierrez

TXM00363

000363

President iWORKS PERSONNEL INC.

haydeegutierrez@iworkspersonnel.com

c (956) 459-5109

office (210)541-0501

*Partnering with Today's & Tomorrow's Leaders...One positive experience at a time!*

*CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents which may accompany it, contain information from iWORKS PERSONNEL INC., which is intended only for the use of the individual or entity to which it is addressed, and which may contain information that is privileged, confidential and/or otherwise exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, any disclosure, dissemination, distribution, copying or other use of this communication or its substances is prohibited.*

Attachment: Iworks Personnel_20120912_112417.pdf

TXM00364

000364

From:         estela@letteinsuranceagency.com
SendTo:       <underwriting@texasmutual.com>
Subject:      FW: Interim REporting

---

See attached

Thanks

---

**From:** Haydee Gutierrez [mailto:HaydeeGutierrez@iworkspersonnel.com]

**Sent:** Friday, June 29, 2012 9:04 AM

**To:** 'estela rodriguez'

**Subject:** Interim REporting

Just so you can have it.

Sincerely,

Haydee Gutierrez

President iWORKS PERSONNEL INC.

haydeegutierrez@iworkspersonnel.com

c (956) 459-5109

TXM00365

000365

office (210)541-0501

*Partnering with Today's & Tomorrow's Leaders...One positive experience at a time!*

*CONFIDENTIALITY NOTICE: This e-mail transmission, and any documents which may accompany it, contain information from iWORKS PERSONNEL INC., which is intended only for the use of the individual or entity to which it is addressed. and which may contain information that is privileged, confidential and/or otherwise exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, any disclosure, dissemination, distribution, copying or other use of this communication or its substances is prohibited.*

Attachment: Worker's Comp Interim Reporting.pdf

TXM00366

000366

CONFIDENTIAL
FILE COPY

# Texas Workforce Commission's Unemployment Tax Services Employer's Quarterly Report - Filed on February 14, 2011

As of September 12, 2012 11:51 AM
The amounts displayed may be different than those submitted when the report was filed, due to transactions that were applied later.
Close this window

## Wage Report - Period Oct Nov Dec 2010

TWC Tax Account Number:
11-165277-5
Employer:
LUIS TREVINO
PREFERRED STAFFING
PO BOX 100111
SAN ANTONIO, TX 78201-1411
Report Due Date:
Jan 31, 2011
Payment Due Date:
Jan 31, 2011
Receipt Date:
Feb 14, 2011
Filed On:
Feb 14, 2011
Filed By:
- - -
Were any of the Texas employees listed on this report paid wages to another state during 2010?
No

## Wage Report Information

Number of Employees:
Oct 2010:
667
Nov 2010:
667
Dec 2010:
667

TXM00367

000367

Texas County:
BEXAR

# Employee Wage Summary

Texas Total Wages Reported:
$191,425.00
Texas Taxable Wages:
$186,341.00

# Tax Summary

Tax Rate:
3.44%
**Tax = Texas Taxable Wages x Tax Rate**
**Tax:**
$6,410.13
Late Reporting Penalty:
$15.00
Late Payment Interest:
$560.00

---

Report Amount:
$6985.13

TXM00368

000368

# Texas Workforce Commission's Unemployment Tax Services Employer's Quarterly Report - Filed on April 12, 2011

As of September 12, 2012 12:00 PM
The amounts displayed may be different than those submitted when the report was filed, due to transactions that were applied later.
Close this window

## Wage Report - Period Jan Feb Mar 2011

CONFIDENTIAL

TWC Tax Account Number:
11-165277-5
Employer:
LUIS TREVINO
PREFERRED STAFFING
PO BOX 100111
SAN ANTONIO, TX 78201-1411
Report Due Date:
May 02, 2011
Payment Due Date:
May 02, 2011
Receipt Date:
April 12, 2011
Filed On:
April 12, 2011
Filed By:
- - -

FILE COPY

Were any of the Texas employees listed on this report paid wages to another state during 2011?
No

## Wage Report Information

Number of Employees:
Jan 2011:
258
Feb 2011:
258
Mar 2011:
259

TXM00369

000369

Texas County:
- - -

# Employee Wage Summary

Texas Total Wages Reported:
$183,217.00
Texas Taxable Wages:
$183,217.00

# Tax Summary

Tax Rate:
2.99%
**Tax = Texas Taxable Wages x Tax Rate**
**Tax:**
$5,478.19
Late Reporting Penalty:
$0
Late Payment Interest:
$0

Report Amount:
$5,478.19

TXM00370

000370

CONFIDENTIAL

FILE COPY

# Texas Workforce Commission's Unemployment Tax Services Employer's Quarterly Report - Filed on August 14, 2011

As of September 12, 2012 12:08 PM
The amounts displayed may be different than those submitted when the report was filed, due to transactions that were applied later.
Close this window

## Wage Report - Period Apr May Jun 2011

TWC Tax Account Number:
11-165277-5
Employer:
LUIS TREVINO
PREFERRED STAFFING
PO BOX 100111
SAN ANTONIO, TX 78201-1411
Report Due Date:
Aug 01, 2011
Payment Due Date:
Aug 01, 2011
Receipt Date:
Aug 14, 2011
Filed On:
Aug 14, 2011
Filed By:
- - -
Were any of the Texas employees listed on this report paid wages to another state during 2011?
No

## Wage Report Information

Number of Employees:
Apr 2011:
487
May 2011:
487
Jun 2011:
487

TXM00371

000371

Texas County:
BEXAR

# Employee Wage Summary

Texas Total Wages Reported:
$191,864.00
Texas Taxable Wages:
$191,864.00

# Tax Summary

Tax Rate:
2.99%
**Tax = Texas Taxable Wages x Tax Rate**
**Tax:**
$5736.76
Late Reporting Penalty:
$98.00
Late Payment Interest:
$8.01

---

Report Amount:
$5842.77

TXM00372

000372

CONFIDENTIAL

FILE COPY

# Texas Workforce Commission's Unemployment Tax Services Employer's Quarterly Report - Filed on November 21, 2011

As of September 12, 2012 12:25 PM
The amounts displayed may be different than those submitted when the report was filed, due to transactions that were applied later.
Close this window

## Wage Report - Period Jul Aug Sep 2011

**Confirmation Number:**
**7800844**
TWC Tax Account Number:
11-165277-5
Employer:
LUIS TREVINO
PREFERRED STAFFING
PO BOX 100111
SAN ANTONIO, TX 78201-1411
Report Due Date:
Oct 31, 2011
Payment Due Date:
Oct 31, 2011
Receipt Date:
Oct 31, 2011
Filed On:
Nov 21, 2011 10:09 AM
Filed By:
TWC Staff
Were any of the Texas employees listed on this report paid wages to another state during 2011?
No

## Wage Report Information

Number of Employees:
Jul 2011:
387
Aug 2011:
387

TXM00373

000373

Sep 2011:
387
Texas County:
BEXAR

## Employee Wage Summary

Texas Total Wages Reported:
$215,232.68
Texas Taxable Wages:
$215,232.68

## Tax Summary

Tax Rate:
2.99%
**Tax = Texas Taxable Wages x Tax Rate**
**Tax:**
$6,435.46
Late Reporting Penalty:
$0.00
Late Payment Interest:
$449.48

---

Report Amount:
$6,884.94

TXM00374

000374

**NOTEPAD**

**Insured Name:**          PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:**        20110904

**Notes:**

———————————————————
--UW: LINNY D MERLOS Time: 2012-09-14T15:12:21-05:00--

User Comments:  no action taken.  Vk worked this already

From: estela@letteinsuranceagency.com
SendTo: <underwriting@texasmutual.com>
Subject: FW: Customer List PREFERRED STAFFING

---

PLEASE SEND TO JAIME

-----Original Message-----
From: Haydee Gutierrez
[mailto:HaydeeGutierrez@iworkspersonnel.com]
Sent: Monday, September 17, 2012 2:16 PM
To: estela rodriguez
<estela@letteinsuranceagency. com>; Haydee
Gutierrez
Subject: Customer List

Hi Estela,

Can you forward this:

City of San Antonio 5 people
Fresh From Texas 8 people
Aramark 3 to 7 people
City of Brownsville 4 people
DMS 2 people
Bimbo 6 people
Zachry 4 people
Spawglass 4 people
Hill Country 5 people
Sterling bakery 3 people
SMS 5 people
Sheraton 4 people
SPFM 3 people
Fairfield Inn 3 people

TXM00376

000376

City of Alamo Heights 3 people
Aerospace 2

Sent from my iPhone

TXM00377

000377



Premium Audit Department
6210 E. Highway 290
Austin, Texas 78723-1098
1-800-859-5995
FAX 1-512-224-7194

## Appointment Confirmation

**To:** HAYDEE GUTIERREZ, P

**Fax:** 281-298-9352

**Email:** haydeegutierrez@iworkspersonnel.com

**Phone:** 956-459-5109

**RE:** Revision Audit Appointment

**From:** Katherine S. Richter

**Pages:** 1 of 1

**Date:** 10/18/2012

**CC:** ISAIAS BAZAN

**Cell:** 512-963-0484

**Policyholder:** PREFERRED STAFFING COMPANY LLC

**Policy Number:** 0001204473     **Other States Policy #:** --

**Policy Period:** 9/4/2011 to 7/16/2012 at 12:01 A.M. Standard Time

Per our telephone conversation, I am confirming your Revision Audit Appointment.
We plan to have auditor ISAIAS BAZAN, visit you on, Thursday, November 01, 2012, at approximately 01:30 PM at the following location: 3881 OLD HIGHWAY 77, BROWNSVILLE, TX 78520-9401.

As provided in the policy provisions, the estimated premium basis for your Worker's Compensation Insurance coverage is subject to audit. The audit appointment is being scheduled with you to determine proper earned premium for the policy period.

**Please have all records noted below available for examination to facilitate the premium audit process. If any of these items do not pertain to your business, then please disregard.**

- Payrolls - By Employee (Payroll Books, Federal 941, and State Unemployment Reports)
- Subcontractor Payments (Cash Disbursement Journals and other records of payments by cash; Written Contracts, Work Orders and Invoices reflecting payments to subcontractors; Profit and Loss Statements, General Ledgers, Check Registers, Income Statements, etc.)
- Certificates of Insurance for all hired Subcontractors
- Overtime Wages - By Employee and Classification code
- Tips (if applicable)
- Flight Log (if applicable)
- For Staff Leasing, PEO, and Temporary Employment Agencies - Payroll information by client.

**Please contact ISAIAS BAZAN with any audit questions you may have. To ensure prompt receipt of appointment cancellation and reschedule requests, we encourage you to telephone rather than e-mail the Appointment Coordinator.**

Thank You,

Katherine S. Richter, Appointment Coordinator Ext. 3817

REV_PHY_CNF_ENG

TXM00378

000378

**EMLNOTFY**

**Insured Name:** PREFERRED STAFFING COMPANY LLC

**Policy/Quote Number:** 0001204473

**Effective Date:** 20110904

**Notes:**

Letter Type: AUDAPPTS  Date/Time: 2012-10-18T08:49:50.3-05:00  Email: haydeegutierrez@iworkspersonnel.com  Underwriter: KSRICHTE  Recipient:  Insured Name:PREFERRED STAFFING COMPANY LLC

TXM00379

000379

INSURED: PREFERRED STAFFING COMPANY LLC
POLICY NUMBER: 0001204473 09/04/2011

REQUEST NUMBER: 1399958
TYPE: Underwriter Notification

REQUEST GROUP: Underwriting

REASON: 101 PAYMENT CANCEL POLICY

REQUESTED BY: BEBARNO

DEPT: 611

Assigned By: BEBARNO on 10/16/2012 to BEBARNO on 10/16/2012

Payment applied to expired policy and renewal has cancelled          BEBARNO
Payment posted to expired policy 0001204473 eff 09/04/10             BEBARNO
Cash Posted Amt: 1.00                                                BEBARNO
Bank Receipt Date: 10/15/12                                          BEBARNO

Assigned By: BEBARNO on 10/16/2012 to CAGENTRY on 10/24/2012

Assigned By: CAGENTRY on 10/24/2012 to *CLOSE on 10/26/2012

Work Request Archive Print

TXM00380

000380

INSURED: PREFERRED STAFFING COMPANY LLC
POLICY NUMBER: 0001204473 09/04/2011

REQUEST GROUP: Underwriting

REASON: 101 PAYMENT CANCEL POLICY

REQUESTED BY: BEBARNO

REQUEST NUMBER: 1399957
TYPE: Underwriter Notification

DEPT: 611

Assigned By: BEBARNO on 10/16/2012 to BEBARNO on 10/16/2012

Payment applied to expired policy and renewal has cancelled          BEBARNO
Payment posted to expired policy 0001204473 eff 09/04/10             BEBARNO
Cash Posted Amt: 7297.00                                             BEBARNO
Bank Receipt Date: 10/15/12                                          BEBARNO

Assigned By: BEBARNO on 10/16/2012 to CAGENTRY on 10/24/2012

Assigned By: CAGENTRY on 10/24/2012 to *CLOSE on 10/26/2012

Work Request Archive Print

TXM00381

000381

INSURED: PREFERRED STAFFING COMPANY LLC
POLICY NUMBER: 0001204473 09/04/2011

REQUEST NUMBER: 1398285
TYPE: Underwriter Notification

REQUEST GROUP: Underwriting

REASON: 109 REV NONPRO COMPLIANCE

REQUESTED BY: VLKLEIN

DEPT: 630

Assigned By: VLKLEIN on 10/08/2012 to BEBARNO on 10/08/2012

Non Compliant Audit now Compliant                                    VLKLEIN
Final Audit has become compliant for 0001204473 09/04/10            VLKLEIN

Assigned By: BEBARNO on 10/08/2012 to CAGENTRY on 10/10/2012

Assigned By: CAGENTRY on 10/10/2012 to *CLOSE on 10/11/2012

Work Request Archive Print

TXM00382

000382

INSURED: PREFERRED STAFFING COMPANY LLC
POLICY NUMBER: 0001204473 09/04/2011                    REQUEST NUMBER:   1378860
                                                        TYPE:             Underwriter Notification
REQUEST GROUP: Workers Comp Specialist

REASON:        083 OFFICER/PARTNR ENDT

REQUESTED BY:  UCSEOD                                   DEPT:


Assigned By: *SYSTEM on 07/16/2012 to ACSASSMA on 07/16/2012

     Prt/Off/Othrs endorsement changed. Claims exist for Policy.             UCSEOD

Assigned By: ACSASSMA on 07/16/2012 to *CLOSE on 11/07/2012

     REQUEST GLOBALLY REASSIGNED FROM ACSASSMA BY PEMARSZA        PEMARSZA


Work Request Archive Print


TXM00383

000383

INSURED: PREFERRED STAFFING COMPANY LLC
POLICY NUMBER: 0001204473 09/04/2011         REQUEST NUMBER: 1378859
                                                     TYPE: Underwriter Notification

REQUEST GROUP: Workers Comp Specialist

REASON: 083 OFFICER/PARTNR ENDT

REQUESTED BY: UCSEOD                                  DEPT:

Assigned By: *SYSTEM on 07/16/2012 to CEGOFORT on 07/16/2012

    Prt/Off/Othrs endorsement changed. Claims exist for Policy.        UCSEOD

Assigned By: CEGOFORT on 07/16/2012 to *CLOSE on 11/06/2012

    REQUEST GLOBALLY REASSIGNED FROM CEGOFORT BY PEMARSZA        PEMARSZA

Work Request Archive Print

TXM00384

000384



Premium Audit Department
6210 E Highway 290
Austin, Texas 78723-1098
1-800-859-5995
(FAX) 1-512-224-3011

November 12, 2012

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Re: PREFERRED STAFFING COMPANY LLC
STA-0001204473 20110904
09-04-2011 - 09-04-2012

## INCOMPLETE FINAL AUDIT NOTIFICATION

Texas Mutual Insurance Company has been unable to complete the final audit of your policy due to our inability to schedule an audit appointment or obtain requested audit information and/or financial documents. As a result, your final audit has been processed incomplete and your current coverage is scheduled to cancel soon.

To prevent cancellation of your current coverage, please contact the Premium Audit Department promptly, Texas Mutual Insurance Company, will not consider issuing coverage for your business, until the audit has been completed.

We hope to be able to resolve this issue as we value you as a customer. Please contact the Premium Audit Department on our toll free number: 1-800-859-5995

Regards,

Premium Audit Department

cc: LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Fanpremd (05/12/04)

TXM00385

000385



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|
| Statement Date | 11-12-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| 00001 | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 40,492 | 12.71 | 5,147.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 15,246 | 7.61 | 1,160.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 253,467 | 0.27 | 684.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 98,433 | 0.27 | 266.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 1,452,700 | 0.44 | 6,392.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 68,694 | 8.96 | 6,155.00 |
| | | Period Total | 1,961,536 | | 22,698.00 |
| | | Location Total | 1,961,536 | | 22,698.00 |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 454.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 463.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,085.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 23,025.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,447.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,546.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

| | | |
|---|---|---|
| Total Earned Premium | | 43,862.00 |
| Previously Billed | 43,862.00 | |
| Cash Collected | | 43,861.00- |
| Additional Premium | | 1.00 |

VLKLEIN
TXM00386

000386



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

Statement Date: 11-12-2012

**INSURED NAME AND ADDRESS**
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**PRODUCER NAME AND ADDRESS**
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|

FINAL AUDIT: INCOMPLETE/NON-COMPLIANT - UNABLE TO AUDIT

VLKLEIN
TXM00387

000387



November 12, 2012

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Re: PREFERRED STAFFING COMPANY LLC
    STA-0001204473 20110904
    09-04-2011 - 09-04-2012

## INCOMPLETE FINAL AUDIT NOTIFICATION

Texas Mutual Insurance Company has been unable to complete the final audit of your policy due to our inability to schedule an audit appointment or obtain requested audit information and/or financial documents. As a result, your final audit has been processed incomplete and your current coverage is scheduled to cancel soon.

To prevent cancellation of your current coverage, please contact the Premium Audit Department promptly, Texas Mutual Insurance Company, will not consider issuing coverage for your business, until the audit has been completed.

We hope to be able to resolve this issue as we value you as a customer. Please contact the Premium Audit Department on our toll free number: 1-800-859-5995

Regards,

Premium Audit Department

cc: LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

Fanpremd (05/12/04)

TXM00388

000388



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904    00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|
| Statement Date | 11-12-2012 | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| 00001 | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 40,492 | 12.71 | 5,147.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 15,246 | 7.61 | 1,160.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 253,467 | 0.27 | 684.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 98,433 | 0.27 | 266.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 1,452,700 | 0.44 | 6,392.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 68,694 | 8.96 | 6,155.00 |
| | | Period Total | 1,961,536 | | 22,698.00 |
| | | Location Total | 1,961,536 | | 22,698.00 |
| | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 454.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 463.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,085.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 23,025.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,447.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,546.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

| | | |
|---|---|---|
| Total Earned Premium | | 43,862.00 |
| Previously Billed | 43,862.00 | |
| Cash Collected | | 43,861.00- |
| Additional Premium | | 1.00 |

VLKLEIN
TXM00389

000389



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

Statement Date: 11-12-2012

**INSURED NAME AND ADDRESS**
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**PRODUCER NAME AND ADDRESS**
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|

FINAL AUDIT: INCOMPLETE/NON-COMPLIANT - UNABLE TO AUDIT

VLKLEIN
TXM00390

000390



## Appointment Confirmation

**To:** HAYDEE GUTIERREZ, P      **From:** Katherine S. Richter

**Fax:** 281-298-9352      **Pages:** 1 of 1

**Email:** haydeegutierrez@iworkspersonnel.com

**Phone:** 956-459-5109      **Date:** 11/14/2012

**RE:** Revision Audit Appointment      **CC:** ISAIAS BAZAN

     **Cell:** 512-963-0484

**Policyholder:** PREFERRED STAFFING COMPANY LLC

**Policy Number:** 0001204473      **Other States Policy #:** --

**Policy Period:** 9/4/2011 to 7/16/2012 at 12:01 A.M. Standard Time

Per our telephone conversation, I am confirming your Revision Audit Appointment.
We plan to have auditor ISAIAS BAZAN, visit you on, Tuesday, November 20, 2012, at approximately 03:30 PM at the following location: 3881 OLD HIGHWAY 77, BROWNSVILLE, TX 78520-9401.

As provided in the policy provisions, the estimated premium basis for your Worker's Compensation Insurance coverage is subject to audit. The audit appointment is being scheduled with you to determine proper earned premium for the policy period.

**Please have all records noted below available for examination to facilitate the premium audit process. If any of these items do not pertain to your business, then please disregard.**

- Payrolls - By Employee (Payroll Books, Federal 941, and State Unemployment Reports)
- Subcontractor Payments (Cash Disbursement Journals and other records of payments by cash; Written Contracts, Work Orders and Invoices reflecting payments to subcontractors; Profit and Loss Statements, General Ledgers, Check Registers, Income Statements, etc.)
- Certificates of Insurance for all hired Subcontractors
- Overtime Wages - By Employee and Classification code
- Tips (if applicable)
- Flight Log (if applicable)
- For Staff Leasing, PEO, and Temporary Employment Agencies - Payroll information by client.

**Please contact ISAIAS BAZAN with any audit questions you may have. To ensure prompt receipt of appointment cancellation and reschedule requests, we encourage you to telephone rather than e-mail the Appointment Coordinator.**

Thank You,

Katherine S. Richter, Appointment Coordinator Ext. 3817

REV_PHY_CNF_ENG



| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|
| Statement Date | 11-21-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| 00001 | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 6,360 | 12.71 | 808.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 7590 002 | GARBAGE WORKS | 34,132 | 9.57 | 3,266.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 0 | 7.61 | 0.00 |
| | 8033 009 | STORE: SUPERMARKET | 52,726 | 7.04 | 3,712.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.27 | 0.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.27 | 0.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 553,460 | 0.44 | 2,435.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 106,174 | 8.96 | 9,513.00 |
| | | Period Total | 785,356 | | 22,628.00 |
| | | | | | |
| | | Location Total | 785,356 | | 22,628.00 |
| | | | | | |
| | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 453.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 462.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,063.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 22,955.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,427.00- |
| | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,535.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

| | |
|---|---|
| Total Earned Premium | 43,729.00 |
| Previously Billed | 43,862.00 |
| Cash Collected | 43,861.00- |

VLKLEIN
TXM00392

000392



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

| Statement Date | 11-21-2012 |
|---|---|

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | Return Premium | | | 132.00- |

FINAL AUDIT REVISION: REPLACES
INVOICE DATED 11/12/12

VLKLEIN
TXM00393

000393



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|
| Statement Date | 11-21-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC 00001 | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 6,360 | 12.71 | 808.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 7590 002 | GARBAGE WORKS | 34,132 | 9.57 | 3,266.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 0 | 7.61 | 0.00 |
| | 8033 009 | STORE: SUPERMARKET | 52,726 | 7.04 | 3,712.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.27 | 0.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.27 | 0.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 553,460 | 0.44 | 2,435.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 106,174 | 8.96 | 9,513.00 |
| | | Period Total | 785,356 | | 22,628.00 |
| | | Location Total | 785,356 | | 22,628.00 |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 453.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 462.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,063.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 22,955.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,427.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,535.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

Total Earned Premium          43,729.00

Previously Billed        43,862.00

Cash Collected          43,861.00-

VLKLEIN
TXM00394

000394



## FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

Statement Date  11-21-2012

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | Return Premium | | | 132.00- |

FINAL AUDIT REVISION: REPLACES
INVOICE DATED 11/12/12

VLKLEIN
TXM00395

000395

 

6210 E Hwy 290
Austin, Texas 78723-1098
(512) 224-3800
(800) 859-5995
Fax (512) 224-3270
www.texasmutual.com

Policyholder: **Preferred Staffing Company**    Date: 11/26/2012

Policy number: **0001204473**

Re:    Return Premium

Dear Policyholder:

There is a return premium in the amount of $ **133.00** on this policy due to **a final audit.**

The amount of return premium you have actually received is $ **132.00** due to one of the following reasons:

☐    Cash received was different than premiums previously billed:
      Earned premium       **$ 0.00**
      Cash received         **$ 0.00**

☐    An unpaid balance of $ **0.00** on your current Texas policy.  This reduces your balance to $ **0.00.**

☒    An unpaid balance of $ **1.00** on your previous Texas policy.  This reduces your balance to $ **0.00.**

☐    The return premium is below the disbursement threshold amount; therefore, the credit has been transferred to your current policy term, and will be used toward any new activity.

☐    Other:

If you have any questions regarding this change, please contact Shawna Wooten or another Policy Accounting representative at (800) 859-5995 extension 3525.

Thank you,
**TEXAS MUTUAL INSURANCE COMPANY**
Policy Accounting Dept.

11/26/2012 12:21:52 PM

TXM00396

000396

TAB 17

# EXHIBIT
# B

STYLE OF
CASE :   MOSE A. GUILLORY AND MARY GUILLORY

VS.
IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.;
WASTE MANAGEMENT OF TEXAS, INC.; AND
WM RECYCLE AMERICA, LLC

CASE NO. :  2012-61407

PERTAIN TO :  Moses Guillory

FROM :  Lette Insurance Company
145 Boca Chica Blvd.
Brownsville, TX 78520
Any & All Records

DELIVER TO :  Bradford J. Gilde
Gilde Law Firm
55 Waugh Drive, Ste. 850
Houston, TX  77007


IN THE DISTRICT COURT OF


HARRIS COUNTY, TEXAS


113TH JUDICIAL DISTRICT


Order No.  61017.003

No. 2012-61407

| MOSE A. GUILLORY AND MARY GUILLORY | : | IN THE DISTRICT COURT OF |
|---|---|---|
| | : | |
| | : | |
| VS. | : | HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; | : | |
| WASTE MANAGEMENT OF TEXAS, INC.; AND | : | |
| WM RECYCLE AMERICA, LLC | : | 113TH JUDICIAL DISTRICT |

## NOTICE OF DELIVERY

RE: **Lette Insurance Company (Any & All Records)**

I, _Elizabeth Morales_, Notary Public in and for the State of Texas, hereby certify pursuant to the Rule 206, Texas Rules of Civil Procedure,

1.  That this Deposition by Written Questions of the Custodian of Records for the above named is a true and exact duplicate of the records pertaining to **Moses Guillory.**

2.  That the transcript is a true record of the testimony given by the witness;

3.  That $ _76.44_ is the charge for the preparation of the completed Deposition by Written Questions and any copies of exhibits, charged to Attorney for **Plaintiff, Bradford J. Gilde, SBN # 24045941;**

4.  That the deposition transcript was submitted on the _20_ day of _November_, 20 _13_, to the witness for examination, signature and return to the officer by a specified date;

5.  That changes, if any made by the witness, in the transcript and otherwise are attached thereto or incorporated therein;

6.  That the witness returned the transcript;

7.  That the original deposition by Written Questions and a copy thereof, together with copies of all exhibits was delivered to the attorney or party who Noticed the first questions for safekeeping and use at trial;

8.  That pursuant to information made a part of the records at the time said testimony was taken, the following includes all parties of record:

    **Aric J. Garza (Law Office of Aric J. Garza)**
    **B. Lee Wertz, Jr. (Harrison, Bettis, Staff, McFarland & Weems, L.L.P.)**
    **Mr. David N. Anderson (The Anderson Law Firm)**
    **Nicholas A. Homan (Gilde Law Firm)**

and
9.  A copy of this Notice of Delivery was served on all parties shown herein.

GIVEN UNDER MY HAND AND SEAL OF OFFICE ON THIS THE _14_ day of _December_, 20 _13_

Stratos Legal Record Services, LP
4299 San Felipe, Ste. 350
Houston, TX 77027
713-375-0121   Fax 281-200-0830

_Elizabeth Morales_
Notary Public in and for the State of Texas



ELIZABETH MORALES
Notary Public, State of Texas
My Commission Expires
March 18, 2017

Order No. **61017.003**

No. 2012-61407

| | | |
|---|---|---|
| MOSE A. GUILLORY AND MARY GUILLORY | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| VS. | : | HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE | : | |
| MANAGEMENT, INC.; | | |
| WASTE MANAGEMENT OF TEXAS, INC.; AND | : | |
| WM RECYCLE AMERICA, LLC | : | 113TH JUDICIAL DISTRICT |

## NOTICE OF INTENTION
## TO TAKE DEPOSITION BY WRITTEN QUESTIONS

To Defendant by and through their attorney(s) of record: **Aric J. Garza (Law Office of Aric J. Garza), B. Lee Wertz, Jr. (Harrison, Bettis, Staff, McFarland & Weems, L.L.P.) and Mr. David N. Anderson (The Anderson Law Firm)**
To other party/parties by and through their attorney(s) of record: **Bradford J. Gilde (Gilde Law Firm)**

You will please take notice that twenty (20) days from the service of a copy hereof with attached questions, a deposition by written questions will be taken of Custodian of Records for:

**Lette Insurance Company (Any & All Records)**
**145 Boca Chica Blvd.**
**Brownsville, TX 78520**

before a Notary Public for     **Stratos Legal Record Services, LP**
                               **4299 San Felipe, Ste. 350**
                               **Houston, TX 77027**
                               **713-375-0121    Fax 281-200-0830**
or its designated agent, which deposition with attached questions may be used in evidence upon the trial of the above-styled and numbered cause pending in the above named court. Notice is further given that request is hereby made as authorized under Rule 200, Texas Rules of Civil Procedure, to the officer taking this deposition to issue a subpoena duces tecum and cause it to be served on the witness to produce any and all records as described on the attached questions and/or Exhibit(s) and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to:     **See attached Exhibit A**

and to turn all such records over to the officer authorized to take this deposition so that photographic reproductions of the same may be made and attached to said deposition.

**Bradford J. Gilde**
**Gilde Law Firm**
**55 Waugh Drive, Ste. 850**
**Houston, TX 77007**
**281-973-2772    Fax 281-973-2771**
Attorney for Plaintiff
SBA # 24045941

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all Counsel of Record by hand delivery, FAX, and/or certified mail, return receipt requested, on this day.

Dated: _October 14, 2013_                by _Bradford J. Gilde_

Order No.  61017

**EXHIBIT 'A'**

1)      TEXAS MUTUAL INSURANCE COMPANY (hereinafter "Texas Mutual");

2)      LETTE INSURANCE AGENCY (hereinafter "Lette Insurance");

3)      Policy Number: STA-0001204473 20110904;

4)      PREFERRED STAFFING COMPANY, L.L.C. (d/b/a "IWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411;

5)      IWORKS PERSONNEL, INC. (hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213;

6)      MOSE ALBERT GUILLORY and MARY GUILLORY (hereinafter "Plaintiffs");

7)      Defendants IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; WASTE MANAGEMENT OF TEXAS, INC; WM RECYCLE AMERICA, LLC; LUIS TREVINO; HAYDEE GUTIERREZ; and SMX, LLC (f/k/a SEATON CORP.) (hereinafter "Defendants");

8)      The above-captioned cause.

Types of Records to be Produced :

Please produce any and all DOCUMENTS (especially communications) by and between you and/or your company and Policy Number: STA-0001204473 20110904; Preferred Staffing; iWorks; Plaintiffs; and any regulatory or govenmental entities, which includes the employees, agents, or attorneys of same; AND any and all DOCUMENTS (especially communications) regarding WM RECYCLE AMERICA, LLC facility located at 4939 GASMER DR., HOUSTON, TX 77035 ("Facility"); Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between you and Preferred Staffing         and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation.

No. 2012-61407

| | | |
|---|---|---|
| MOSE A. GUILLORY AND MARY GUILLORY | : | IN THE DISTRICT COURT OF |
| | : | |
| | : | |
| VS. | : | HARRIS COUNTY, TEXAS |
| IWORKS PERSONNEL, INC.; WASTE | : | |
| MANAGEMENT, INC.; | | |
| WASTE MANAGEMENT OF TEXAS, INC.; AND | : | |
| WM RECYCLE AMERICA, LLC | : | 113TH JUDICIAL DISTRICT |

## ATTORNEYS OF RECORD:

Aric J. Garza
Law Office of Aric J. Garza
115 East Travis Street, Ste. 1039
San Antonio, TX 78205
210-225-2961   Fax: 210-225-2962

B. Lee Wertz, Jr.
Harrison, Bettis, Staff, McFarland & Weems, L.L.P.
Wedge International Tower
1415 Louisiana, 37th Floor
Houston, TX 77002
713-843-7900   Fax: 713-843-7901

Mr. David N. Anderson
The Anderson Law Firm
4309 Yoakum Street
Houston, TX 77706
(713) 521-6563   Fax: (888) 824-5624

Order No. 61017

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice and written questions has been hand-delivered and/or mailed receipt requested, to the attorneys of record.

Dated: _October 14, 2013_

_[signature]_

Stratos Legal Record Services, LP
4299 San Felipe, Ste. 350
Houston, TX  77027
713-375-0121  Fax 281-200-0830

## SUBPOENA DUCES TECUM

### Deposition Subpoena To Testify Or Produce Documents Or Things

**THE STATE OF TEXAS:**

To any Sheriff or Constable of the State of Texas or other person authorized to serve subpoenas under Rule 176 Of Texas Rules of Civil Procedure. - GREETINGS -

You are hereby commanded to subpoena and summon the following witness(es): Custodian of Records
for: **Lette Insurance Company**
**145 Boca Chica Blvd.**
**Brownsville, TX 78520    (956) 546-7230**
to be and appear before a Notary Public of my designation for:
**Stratos Legal Record Services, LP, 4299 San Felipe, Ste. 350, Houston,TX 77027  713-375-0121** or its designated agent, on the forthwith day of Instanter at the office of the custodian and there under oath to make answers of certain written questions to be propounded to the witness and to bring and produce for inspection and photocopying
**Any and all records as described on the attached Exhibit 'A'**
and any other such record in the possession, custody or control of the said witness, and every such record to which the witness may have access, pertaining to: **See attached Exhibit A**

at any and all times whatsoever, then and there to give evidence at the instance of the **Plaintiff**, represented by **Bradford Gilde**, Attorney of Record, in that Certain Cause No. **2012-61407**, pending on the docket of the **District Court of the 113th Judicial District of Harris County**, Texas.

This Subpoena Duces Tecum is issued under and by virtue of Rule 200 and Notice of Deposition Upon Written Questions on file with the above named court, styled

**MOSE A. GUILLORY AND MARY GUILLORY**

**VS.**
**IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.;**
**WASTE MANAGEMENT OF TEXAS, INC.; AND**
**WM RECYCLE AMERICA, LLC**
and there remain from day to day and time to time until discharged according to law.

TRACI DIONNE HALL
Notary Public, State of Texas
My Commission Expires
July 28, 2015

**WITNESS  MY  HAND,** this 14th day of October, 2013.

*Traci Dionne Hall*

NOTARY PUBLIC

**176.8 Enforcement of Subpoena.** (a) *Contempt.* Failure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena is issued or a district court in the county in which the subpoena is served, and may be punished by fine or confinement, or both.

### OFFICER'S  RETURN

Came to hand this _____ day of _____, 20____, and executed this the _____ day of _____, 20____,

at_____:____ am / pm at _____ , _____, TX; in the following manner:

By delivering to the witness _____ , a true copy hereof.

Returned this _____ day of _____, 20____.

_____
PROCESS SERVER

Order No. 61017.003

| | | |
|---|---|---|
| MOSE A. GUILLORY and MARY GUILLORY, | § § § | IN THE DISTRICT COURT |
| *Plaintiffs* | § § | |
| v. | § § | OF HARRIS COUNTY, TEXAS |
| | § | |
| IWORKS PERSONNEL, INC.; | § | |
| WASTE MANAGEMENT, INC.; | § | |
| WASTE MANAGEMENT OF TEXAS, INC; | § | |
| WM RECYCLE AMERICA, LLC; | § | |
| LUIS TREVINO; | § | |
| HAYDEE GUTIERREZ; and | § | |
| SMX, LLC (f/k/a SEATON CORP.) | § | |
| *Defendants* | § | 113th JUDICIAL DISTRICT |

---

## DIRECT QUESTIONS TO BE PROPOUNDED TO THE WITNESS AND SUBPOENA DUCES TECUM

---

**Person(s) to be Deposed – Custodian of Records and Person Most Knowledgeable For:**

TEXAS MUTUAL INSURANCE COMPANY (hereinafter "Texas Mutual", "You", or "Your company"), 6210 E. Highway 290, Austin, TX 78723-1098; and

LETTE INSURANCE AGENCY (hereinafter referred to "Lette Insurance Agency", "You", or "Your company"), 145 Boca Chica Blvd., Brownsville, TX 78520.

**Date for Deposition:**

Within twenty (20) days from service, per TRCP 199.2(b)(2), 200.1(b).

**Records Pertaining To – Subpoena Duces Tecum:**

1) TEXAS MUTUAL INSURANCE COMPANY (hereinafter "Texas Mutual");

2) LETTE INSURANCE AGENCY (hereinafter "Lette Insurance");

3) Policy Number: STA-0001204473 20110904;

4) PREFERRED STAFFING COMPANY, L.L.C. (d/b/a "IWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411;

5) IWORKS PERSONNEL, INC. (hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213;

1

6)  MOSE ALBERT GUILLORY and MARY GUILLORY (hereinafter "Plaintiffs");

7)  Defendants IWORKS PERSONNEL, INC.; WASTE MANAGEMENT, INC.; WASTE MANAGEMENT OF TEXAS, INC; WM RECYCLE AMERICA, LLC; LUIS TREVINO; HAYDEE GUTIERREZ; and SMX, LLC (f/k/a SEATON CORP.) (hereinafter "Defendants");

8)  The above-captioned cause.


## Types of Records to be Produced – Subpoena Duces Tecum:

Please produce any and all DOCUMENTS[1] (especially communications) by and between you and/or your company and Policy Number: STA-0001204473 20110904; Preferred Staffing; iWorks; Plaintiffs; and any regulatory or govenmental entities, which includes the employees, agents, or attorneys of same; AND any and all DOCUMENTS (especially communications) regarding WM RECYCLE AMERICA, LLC facility located at 4939 GASMER DR., HOUSTON, TX 77035 ("Facility"); Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between you and Preferred Staffing and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation.

---

[1] As used herein, the term "DOCUMENTS" shall be an all-inclusive term that shall be used in its broadest sense and is to include any medium upon which intelligence or information can be recorded or retrieved, and includes, without limitation, the following, whether printed, typewritten, recorded, filmed or reproduced by any mechanical process or written or produced by hand, and whether an original, master or copy, and whether or not claimed to be privileged from discovery, namely: any and all letters, telegrams, teletypes, correspondence, logs, routing and/or transmittal slips, contracts, agreements, instructions, warranties, notes, mortgages, deeds, recordings and/or transcripts thereof, memoranda of telephone and/or in-person conversations, and/or of meetings and/or conferences, minutes, studies, reports, records, analyses, inter-office communications, receipts, canceled checks, instruments, bank statements, worksheets, stocks, bonds and/or other securities and/or evidence of the same, money orders, books of account, journals, ledgers, invoices, specifications, manuals, books, periodicals, pamphlets, publications, raw and refined data, graphs, drawings, notes, advertisements, lists, working papers, transcripts, membership lists, worksheets, agreements, books, records, letters, accounts, notes, summaries, forecasts, appraisals, surveys, estimates, diaries, desk calendars, reports, communications (including intra-agency communications), correspondence, cablegrams, radiograms, facsimiles, printed electronic mail messages (e-mail), telegrams, telexes, memoranda, summaries, notes and records of telephone conversations, meetings and conferences, notes in reference to personal conversations or interviews, ledgers, invoices, contracts, notices, drafts of any document, business records, charts, plans, specifications, drawings, sketches, schedules, diaries, computer printouts, computer stored data, computer tapes or computer disks, microfilm, microfiche, photographs (digital and/or scanned), slides, negatives, motion pictures, video recordings, tape or other voice recordings and transcriptions thereof, data compilations from which information can be obtained or translated, magnetic tapes and/or discs, punch cards, computer printouts, drafts, proposals, submissions, recommendations, bills, and any other transcription and/or data recorded in readable and/or retrievable form, whether typed, handwritten, reproduced, magnetically recorded, coded, and/or in any other way made readable and/or retrievable, in your possession and/or under your control, or known by you to exist, without regard to whether such document was originally prepared by you. The term "DOCUMENT" includes, without limitation, the original, whether or not the original is in your actual or constructive possession, custody or control, and all file copies and other copies that are not identical to the original no matter how (e.g., containing handwritten notations) or by whom prepared, and all drafts prepared in connection with any documents, whether used or not.

2

1. Please state your full name – the person answering.

   Answer: __JAMES LETTE__

2. Please identify your employer and the business's address.

   Answer: __LETTE INSURANCE AGENCY 145 BOCA CHICA BLVD. suite B.__
   __BROWNSVILLE, TEXAS 78520__

3. What is the title of your position or job?

   Answer: __PRESIDENT__

4. Have you been served with a Subpoena Duces Tecum for the production of the DOCUMENTS described above?

   Answer: __YES__

5. Do you understand the Subpoena Duces Tecum requires the release of **_all_** DOCUMENTS pertaining to the above named entities and related to above identified issues and is not limited to documents your office created?

   Answer: __YES__

6. Please hand the original records or copies thereof as requested in the Subpoena Duces Tecum to the Notary Public taking your deposition, for attachment to this deposition. Have you done as requested? If not, why not?

   Answer: __yes__

7. Were these DOCUMENTS made and kept in the regular course of business by your company?

   Answer: __Yes__

8. Are the DOCUMENTS of your company under your care, supervision, direction, custody, and/or control?

   Answer: __YES__

3

9. Was it in the regular course of your company for a person with knowledge of the acts or events to make the DOCUMENTS or to transmit information thereof to be included in such DOCUMENTS?

Answer: _____ Yes _____

10. Were the DOCUMENTS made at or around the time of the acts or events described therein?

Answer: _____ Yes _____

11. Were the DOCUMENTS kept in the regular course of business by your company?

Answer: _____ Yes _____

12. Were the DOCUMENTS you have given to the Notary Public to be attached to this deposition kept as described above?

Answer: _____ Yes _____

13. Has it been suggested to you by anyone (whether lawyer, supervisor, or anyone else) that any part of the DOCUMENTS you have compiled pertaining to FACILITY; Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between your company and Preferred Staffing and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation be withheld or protected for any reason? Please give the name and address of the person who conveyed this information to you, the reason given for withholding, and when such even occurred. Please attach additional sheets of paper for your answer, if necessary.

Answer: _____ No _____

4

14. Are you aware of any DOCUMENTS pertaining to Facility; Plaintiffs; Defendants; the work-related incident and injury involving and suffered by Mose Guillory on August 5, 2012; any policies, contracts, or agreements between your company and Preferred Staffing and/or iWorks; Luis Trevino; Haydee Gutierrez; SMX, LLC (f/k/a SEATON CORP); any insurance coverage belonging to Preferred Staffing and/or iWorks; Policy Number: STA-0001204473 20110904; and/or the above-referenced litigation that have been purged, revised, extracted, removed, or altered from the way said DOCUMENTS were originally created? If so, please explain your knowledge of such occurrences. Please attach additional sheets of paper for your answer, if necessary.

Answer: No

15. Since receiving this Direct Questions to be Propounded to the Witness and Subpoena Duces Tecum, have you or anyone in your company been in contact with any person from or connected to Preferred Staffing; iWorks; Waste Management; Luis Trevino; Haydee Gutierrez; and/or SMX, LLC (f/k/a SEATON CORP); or any person having any connection with the above-referenced litigation in any way? Please attach additional sheets of paper for your answer, if necessary.

Answer: _____ NO _____

6

16. If your answer to question 15 was "YES", explain in detail the form of the contact (e.g. in-person, phone call, email, letter, etc.); who initiated the contact by identifying the name, title, and employer; who received the contact by identifying the name, title, and employer; how long the contact took place; the substance of what was communicated in the contact; whether any recording or document was made of the contact; and why the contact took place. Please attach additional sheets of paper for your answer, if necessary.

Answer: N/A

17. Please fully identify and explain in detail any policies, agreements, or contracts for insurance (hereinafter referred to as "contracts") ever existing between your company and **Preferred Staffing**. As part of this answer, explain the following: when such contracts began; the details of intended and actual coverage; the details of intended and actual exclusions; what specific entities were covered, if any; what specific employees were covered, if any; what specific workers compensation class codes were covered, if any; what specific job sites or locations were covered, if any; what specific activities were covered, if any; whether the identification of specific entities, employees, workers compensation class codes, job sites and locations, and/or activities were required for contracting/coverage; the amount or policy limits of such coverage, if any; and when such contracts or policies ended, expired, or were terminated, if ever. Please attach additional sheets of paper for your answer, if necessary.

Answer: _THERE ARE NONE. Lette INSURANCE AGENCY IS MERELY The AGENT AND THEREFORE HAS NO CONTRACTS OR AGREEMENTS FOR INSURANCE WITH PREFERRED STAFFING OR IWORKS._

8

18. Please fully identify and explain in detail any agreements or contracts for insurance ever existing between your company and iWorks. As part of this answer, explain the following: when such contracts began; the details of intended and actual coverage; the details of intended and actual exclusions; what specific entities were covered, if any; what specific employees were covered, if any; what specific workers compensation class codes were covered, if any; what specific job sites or locations were covered, if any; what specific activities were covered, if any; whether the identification of specific entities, employees, workers compensation class codes, job sites and locations, and/or activities were required for contracting/coverage; the amount or policy limits of such coverage, if any; and when such contracts or policies ended, expired, or were terminated, if ever. Please attach additional sheets of paper for your answer, if necessary.

Answer: THERE ARE NONE. Lotte INSURANCE AGENCY IS MERELY THE AGENT AND THEREFORE HAS NO CONTRACTS OR AGREEMENTS FOR INSURANCE WITH PREFERRED STAFFING OR IWORKS.

9

19. ADMIT or DENY that PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "IWORKS PERSONNEL.") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) is a distinct legal entity to your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: Leffe INSURANCE AGENCY HAS INSUFFICIENT Knowledge of FACTS To BE ABLE To ADMIT or DENY.

20. ADMIT or DENY that IWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) is a distinct legal entity to your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: LETTE INSURANCE AGENCY HAS INSUFFICIENT Knowledge OF THE FACTS TO BE ABLE TO ADMIT OR DENY.

11

21. ADMIT or DENY that PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "IWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) and IWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) are two separate and distinct legal entities from one another to your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: _Lette INSURANCE AGENCY HAS INSUFFICIENT Knowledge_
_OF THE FACTS TO BE ABLE TO ADMIT OR DENY._

22. ADMIT or DENY that your company draws a coverage distinction between the two separately named legal entities PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "IWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) and IWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213). First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: _The INSURANCE AGENCY HAS INSUFFICIENT KNOWLEDGE of THE FACTS To Be ABLE To ADMIT OR DENY._

13

23. ADMIT or DENY that your company draws a coverage distinction between the two separately named legal entities PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "IWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) and IWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) such that a workers compensation policy covering employees of PREFERRED STAFFING COMPANY, L.L.C. *does NOT* include covering employees of IWORKS PERSONNEL, INC. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer: _Le Ho INSURANCE AGENCY HAS INSUFFICIENT Knowledge_
_of the facts to be able to ADMIT or DENY._

14

24. ADMIT or DENY that Policy Number: STA-0001204473 20110904 covered eligible employees of Preferred Staffing *ONLY* and not eligible employees of iWorks. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; identify what eligible employees were covered; how you would reject or deny coverage for an employee of iWorks; whether MOSE A. GUILLORY was covered; whether MOSE A. GUILLORY was covered on August 5, 2012; whether MOSE A. GUILLORY can make a claim for recovery of workers compensation benefits today; and if MOSE A. GUILLORY cannot make a claim for recovery of workers compensation benefits today, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: _Lette INSURANCE AGENCY HAS INSUFFicienT Knowledge_
_OF THE FACTS TO Be ABLE To ADMIT OR DENY._

15

25. ADMIT or DENY that Policy Number: STA-0001204473 20110904 covered eligible employees of **iWorks** *ONLY* and not eligible employees of Preferred Staffing. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; identify what eligible employees were covered; how you would reject or deny coverage for an employee of Preferred Staffing; whether MOSE A. GUILLORY was covered; whether MOSE A. GUILLORY was covered on August 5, 2012; whether MOSE A. GUILLORY can make a claim for recovery of workers compensation benefits today; and if MOSE A. GUILLORY cannot make a claim for recovery of workers compensation benefits today, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: _Leffe INSURANCE AGENCY HAS INSUFFICIENT Knowledge_
_OF THE FACTS To Be ABle To ADMit OR DENY._

16

26. ADMIT or DENY that Policy Number: STA-0001204473 20110904 covered eligible employees of *BOTH* **Preferred Staffing and iWorks.** First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; identify what eligible employees were covered; whether MOSE A. GUILLORY was covered; whether MOSE A. GUILLORY was covered on August 5, 2012; whether MOSE A. GUILLORY can make a claim for recovery of workers compensation benefits today; and if MOSE A. GUILLORY cannot make a claim for recovery of workers compensation benefits today, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: Letho Insurance Agency has insufficient knowledge of the facts to be able to Admit or Deny.

17

27. ADMIT or DENY that Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012.  First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY."  Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; explain how the contract was cancelled; and the effect of cancelation regarding coverage for Preferred Staffing or iWorks to your knowledge.  Please attach additional sheets of paper for your answer, if necessary.

Answer: *Lette INSURANCE AGENCY HAS INSUFFICIENT Knowledge OF THE FACTS TO BE ABLE TO ADMIT OR DENY.*

18

28. ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, **Preferred Staffing was a "nonsubscriber,"** under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer: Leₜₜₑ INSURANCE AGENCY HAS INSUFFICIENT KNowledge OF THE FACTS TO Be ABLe To AM/FoR DENY.

29. ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, iWorks was a "nonsubscriber," under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing or iWorks from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer: _Lette INSURANCE AGENCY HAS INSUFFICIENT KnowLedge OF THE FACTS TO BE ABLE To ADMIT OR DENY._

30. Please fully explain in detail and describe your company's roles, responsibilities, duties, and obligations as it pertains to the contracts or agreements for Workers' Compensation insurance, if any, with Preferred Staffing or iWorks. Please attach additional sheets of paper for your answer, if necessary.

Answer: LETTE INSURANCE AGENCY IS MERELY THE AGENT AND THEREFORE HAS NO CONTRACTS OR AGREEMENTS FOR INSURANCE WITH PREFERRED STAFFING OR IWORKS.

21

31. Has your company fulfilled all of the aforementioned roles, responsibilities, duties, and obligations as it pertains to the contracts with Preferred Staffing or iWorks mentioned above? If "NO," please explain? Please attach additional sheets of paper for your answer, if necessary.

Answer: _____ N/A _____

32. Explain and describe your company's usual or standard practice with respect to workers' compensation insurance policies issued by you to temporary common worker employers. As part of this answer, describe your usual or standard practice with respect to your roles, responsibilities, duties, obligations, extent of coverage, and exclusions from coverage as it pertains to your contract(s) with temporary common worker employers. Please attach additional sheets of paper for your answer, if necessary.

Answer: LETTE INSURANCE AGENCY IS MERELY THE AGENT AND NOT THE INSURER AND THEREFORE DOS NOT ISSUE POLICIES.

23

33. Explain and describe your company's usual or standard practice with respect to workers' compensation insurance policies issued by you to Staff Leasing Services Act employers or employers of "leased" employees. As part of this answer, describe your usual or standard practice with respect to your roles, responsibilities, duties, obligations, extent of coverage, and exclusions from coverage as it pertains to your contract(s) with Staff Leasing Services Act employers or employers of "leased" employees. Please attach additional sheets of paper for your answer, if necessary.

Answer: LETTE INSURANCE AGENCY IS MERELY THE AGENT AND NOT THE INSURER AND THEREFORE DOES NOT ISSUE POLICIES.

34. Explain and describe, in detail, the process by which Preferred Staffing obtained or attempted to obtain any alleged insurance coverage from you or provided by you, including but not limited to Workers' Compensation, to cover labor performed in Texas, if any. This question seeks detail regarding the following—to wit:

    a. vetting, investigation, negotiation, and/or contracting for insurance,
    b. what specific action(s) took place,
    c. when such action(s) took place,
    d. who was involved,
    e. whether/how Texas Mutual or Lette Insurance was involved,
    f. whether/how Preferred Staffing was involved,
    g. whether/how iWorks was involved,
    h. what the parties' agreements and understandings were, and
    i. the ultimate results of same in terms of insurance coverage obtained.

Please attach additional sheets of paper for your answer, if necessary.

Answer: LETTE INSURANCE AGENCY IS MERELY THE AGENT AND NOT THE INSURER AND THEREFORE DOES NOT ISSUE POLICIES.

35. Explain and describe, in detail, the process by which iWorks obtained or attempted to obtain any alleged insurance coverage from you or provided by you, including but not limited to Workers' Compensation, to cover labor performed in Texas, if any. This question seeks detail regarding the following—to wit:
   a. vetting, investigation, negotiation, and/or contracting for insurance,
   b. what specific action(s) took place,
   c. when such action(s) took place,
   d. who was involved,
   e. whether/how Texas Mutual or Lette Insurance was involved,
   f. whether/how Preferred Staffing was involved,
   g. whether/how iWorks was involved,
   h. what the parties' agreements and understandings were, and
   i. the ultimate results of same in terms of insurance coverage obtained.

Please attach additional sheets of paper for your answer, if necessary.

Answer: LETTE INSURANCE AGENCY IS MERELY THE AGENT AND NOT THE INSURER AND THEREFORE DOES NOT ISSUE POLICIES.

26

36. Explain and describe, in detail, the inception, duration, and termination of **Policy Number: STA-0001204473 20110904.** As part of your answer, please describe the following—to wit:

   a. The process by which any alleged insurance coverage was obtained for Policy Number: STA-0001204473 20110904;

   b. The extent of any coverage and exclusions in Policy Number: STA-0001204473 20110904;

   c. What entity or entities, if any, was covered by or under Policy Number: STA-0001204473 20110904 – list all by its/their legal name(s);

   d. Preferred Staffing's obligations under Policy Number: STA-0001204473 20110904 (including the payment of premiums and interest), if any;

   e. iWorks's obligations under Policy Number: STA-0001204473 20110904 (including the payment of premiums and interest), if any;

   f. Your company's obligations under Policy Number: STA-0001204473 20110904 (including the payment of premiums and interest), if any;

   g. The effect that non-compliance with the aforementioned obligations has or had on Policy Number: STA-0001204473 20110904;

   h. Whether and to what extent Preferred Staffing or iWorks failed to comply with their obligtions under Policy Number: STA-0001204473 20110904; and

   i. Describe the ending, cessation, expiration, cancellation, or termination of Policy Number: STA-0001204473 20110904, including when and why same occurred.

Please attach additional sheets of paper for your answer, if necessary.

Answer: Lette INSURANCE AGENCY IS MERELY THE AGENT AND NOT THE INSURER AND THEREFORE DOES NOT ISSUE POLICIES.

27

37. Explain and describe, in detail, the relationship, association, and/or interaction between Texas Mutual and Lette Insurance Agency. In your answer, specifically discuss the interaction and/or differences between Texas Mutual's role and Lette Insurance Agency's role regarding **Policy Number: STA-0001204473 20110904.** Please attach additional sheets of paper for your answer, if necessary.

Answer: LETTE INSURANCE AGENCY SUBMITS APPLICATIONS TO TEXAS MUTUAL FOR Lette's CUSTOMERS.

38. Explain your company's understanding as to whether Preferred Staffing was or is a Staff Leasing Services Act company, explain/describe the basis for such knowledge, and explain/describe your company's roles, responsibilities, duties, and obligations regarding same, if any and if known by you. Please attach additional sheets of paper for your answer, if necessary.

Answer: Lette INSURANCE AGENCY HAS INSUFFICIENT KNOWLEDGE OF THE LEGAL STATUS OF THE INSURED TO BE ABLE TO ANSWER.

Lette WAS TOLD BY THE CUSTOMER THAT IT IS A STAFF LEASING COMPANY.

29

39. Explain your company's understanding as to whether iWorks was or is a Staff Leasing Services Act company, explain/describe the basis for such knowledge, and explain/describe your company's roles, responsibilities, duties, and obligations regarding same, if any and if known by you. Please attach additional sheets of paper for your answer, if necessary.

Answer: Lette INSURANCE AGENCY HAS INSUFFICIENT KNOWLEDGE OF THE LEGAL STATUS OF THE INSURED TO BE ABLE TO ANSWER.

Lette WAS TOLD BY THE CUSTOMER THAT IT IS A STAFF LEASING COMPANY.

40. Have you produced and attached to your answers any and all DOCUMENTS specifically requested and responsive to the questions asked herein? If not, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: _____ Yes _____

41. Have you answered all of the Questions herein fully, completely, truthfully, and based on all available information and DOCUMENTS? If not, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer: _____ Yes _____

FURTHER AFFIANT SAYETH NOT.

_____
WITNESS (Custodian of Records)

I, Ma. Elena Ramirez a Notary Public in the State of Texas do hereby certify that the foregoing answers of the witness were made by the said witness and sworn to and subscribed before me. The records attached hereto are exact duplicates of the original records.

SWORN AND SUBSCRIBED BEFORE ME on this the 20 day of November, 2013 to certify which witness my hand and seal of office.

MARIA ELENA RAMIREZ
Notary Public, State of Texas
My Commission Expires
July 17, 2016

Notary Public in and for the State of TX.

TO: NORA
FAX - 956-542-8754



# TexasMutual®
### Insurance Company
8210 E Highway 290          Austin, Texas 78723-1098
1-800-859-5995

## NOTICE OF CANCELLATION

VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

| TYPE OF POLICY: |
| --- |
| Workers' Compensation and Employers Liability Coverage |
| POLICY NUMBER: |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 | 9-04-2012 |
| | TO |

| DATE OF NOTICE: |
| --- |
| 6-11-2012 |

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| CANCELLATION WILL TAKE EFFECT AT: | |
| --- | --- |
| 7-16-2012 | 12:01 A.M. |
| (DATE) | (HOUR STANDARD TIME) |

## CANCELLATION
You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**REASON FOR CANCELLATION**
NON-COMPLIANCE - PREMIUM AUDIT

**CANCELLATION TERMS**
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 956 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

**LAW OFFICES OF**
# ARIC J. GARZA
PROFESSIONAL LIMITED LIABILITY COMPANY

115 E. Travis St., Suite 1039
San Antonio, Texas 78205
Tel. (210) 225-2961
Fax (210) 225-2962

## FACSIMILE TRANSMITTAL SHEET

| | |
|---|---|
| TO:<br>Ms Velma Vela | FROM:<br>Aric J. Garza, Esq. |
| COMPANY:<br>Texas Mutual Ins. Co. | DATE:<br>August 16, 2013 |
| FAX NUMBER:<br>512-224-3214 | TOTAL NO. OF PAGES INCLUDING COVER:<br>4 |
| PHONE NUMBER:<br>800-859-5995, ext. 8 | SENDER'S REFERENCE NUMBER:<br>WC Policy STA-0001204473 |
| RE:<br>Preferred Staffing LLC (d/b/a iWorks Personnel Inc.); Coverage Issues | |

☒ URGENT    ☐ PLEASE REPLY    ☒ ORIGINAL WILL NOT FOLLOW    ☐ ORIGINAL WILL FOLLOW

NOTES/COMMENTS:

**Copy to:**

Mr. James T. Lette (*via facsimile*)
**Lette Insurance Agency**
145 Boca Chica Blvd.
Brownsville, Texas 78520
Tel. (956) 541-7252
Fax (956) 542-8757

Mr. Luis Trevino (*via email*)
Ms Haydee Gutierrez (*via email*)
**iWorks Personnel Inc.**

**NOTICE CONCERNING PRIVILEGED/CONFIDENTIAL COMMUNICATIONS**
The information contained in this communication is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by phone, fax, or e-mail, and destroy or delete the original message.

000002

**LAW OFFICES OF**
# ARIC J. GARZA
PROFESSIONAL LIMITED LIABILITY COMPANY

115 E. Travis St., Suite 1039
San Antonio, Texas 78205
Tel. (210) 225-2961
Fax (210) 225-2962

August 16, 2013

**VIA FACSIMILE**

Ms Velma Vela
Legal Department
Texas Mutual Insurance Company
6210 E. Highway 290
Austin, Texas 78723-1098

Mr. James T. Lette
Lette Insurance Agency
145 Boca Chica Blvd.
Brownsville, Texas 78520

Re:     Preferred Staffing LLC (d/b/a iWorks Personnel Inc.)
        Workers' Compensation Policy STA-0001204473; Coverage Issues

Dear Ms Vela and Mr. Lette:

This law firm represents Preferred Staffing LLC (d/b/a iWorks Personnel Inc.) in the above-referenced matter.

I am writing to ascertain coverage for my client during the period of September 4, 2011 to September 4, 2012. My client tendered payment for the policy during the time period in question, but according to Texas Mutual, the policy coverage lapsed on or about July 16, 2012.

*This matter is of the highest importance due to litigation having been filed against my client in Harris County, Texas relating to the injury suffered by a worker on August 5, 2012.*

I am writing to determine and confirm: (1) if in fact Workers' Compensation coverage payment was received by Texas Mutual Ins. Co. for the time period specified above, (2) if Workers' Compensation coverage existed between September 4, 2011 to September 4, 2012, and (3) if it did not, the specific reason(s) and a detailed explanation for the lapse in coverage.

000003

I'm enclosing a copy of the Information Page for your reference. Please respond in writing, directing all communications to my office concerning this matter, not later than Monday, August 19, 2013. You may fax my office or email me at aric@sabusinessattorney.com.

Sincerely,

ARIC J. GARZA

AJG/ydg

Enclosure as stated

Cc:   Mr. Luis Trevino (*via email*)
      Ms Haydee Gutierrez (*via email*)
      **iWorks Personnel Inc.**

000004



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|
| Statement Date | 11-12-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC 00001 | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | 9-04-2011 To 7-16-2012 | | | |
| 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 40,492 | 12.71 | 5,147.00 |
| 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| 5403 | 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| 8006 | 004 | GROCERY STORE-RETAIL | 15,246 | 7.61 | 1,160.00 |
| 8044 | 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 253,467 | 0.27 | 684.00 |
| 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 98,433 | 0.27 | 266.00 |
| 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 1,452,700 | 0.44 | 6,392.00 |
| 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 68,694 | 8.96 | 6,155.00 |
| | | Period Total | 1,961,536 | | 22,698.00 |
| | | Location Total | 1,961,536 | | 22,698.00 |
| | | 9-04-2011 To 7-16-2012 | | | |
| 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 454.00 |
| 9812 | 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 463.00 |
| 9898 | 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,085.00 |
| 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 23,025.00 |
| 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,447.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| 0063 | 001 | PREMIUM DISCOUNT | | 0.075 | 3,546.00- |
| 0900 | 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

Total Earned Premium 43,862.00

Previously Billed 43,862.00

Cash Collected 43,861.00-

Additional Premium 1.00

# NORA LARA

**From:** n.lara@letteinsuranceagency.com
**Date:** Monday, August 12, 2013, 3:44pm
**To:** Haydee Gutierrez (HaydeeGutierrez@iworkspersonnel.com)
**Cc:** James Lette (j.lette@letteinsuranceagency.com)
**Subject:** WCOMP AND GEN LIAB

WE RECEIVED A CALL FROM AN ATTORNEY TODAY BY THE NAME OF BETTIS HARRISON 713-843-7900. WE DID NOT RELEASE ANY INFORMATION JUST GAVE HIM THE PHONE NUMBERS FOR THE COMPANIES. JUST LETTING YOU KNOW.


NORA A LARA

LETTE INSURANCE AGENCY

145 BOCA CHICA BLVD

BROWNSVILLE TX 78520

PHONE: 956-541-7252

FAX: 956-542-8757

000006



6210 E Highway 290
Austin, Texas 78723-1098

## INFORMATION PAGE

| | |
|---|---|
| ITEM 1 | PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 |
| INSURED<br>NAME AND<br>ADDRESS | |
| | OTHER WORKPLACES NOT SHOWN ABOVE;<br>see attached schedule of operation.<br>LETTE INS AGCY<br>145 BOCA CHICA BLVD |
| PRODUCER<br>18220 | BROWNSVILLE, TX 78520 |

**POLICY NUMBER**
STA-0001204473 20110904

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

**ITEM 2** The Policy Period is from:   9-04-2011   To:   9-04-2012   12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A.   Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B.   Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C.   Other States Insurance:   Part Three of the policy applies to the states, if any, listed here:  NONE

D.   This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4** The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM                     $          18,335.00

| | |
|---|---|
| WAIVER OF SUBROGATION | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF (   1.30  ) | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF (   1.75  ) | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT (   .12  ) | 5,157.00- |
| DEDUCTIBLE PREMIUM | .00 |
| ADMIRALTY/FELA OR L & H W | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE (   7.30  ) | 2,761.00- |
| EXPENSE CONSTANT CHARGE | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM                     $          35,205.00

MINIMUM PREMIUM          250.00

DEPOSIT PREMIUM        11,618.00          Countersigned by  _Ron Wright_

Issue Date:   8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

000007



**TexasMutual®**
Insurance Company

6210 E Highway 290          Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

| TYPE OF POLICY: |
|---|
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
|---|
| 0001204473 |

| POLICY PERIOD: | |
|---|---|
| 9-04-2011 | 9-04-2012 |
| | to |

| DATE OF NOTICE: |
|---|
| 6-11-2012 |

| CANCELLATION WILL TAKE EFFECT AT: | |
|---|---|
| 7-16-2012 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**REASON FOR CANCELLATION**
NON-COMPLIANCE - PREMIUM AUDIT

**CANCELLATION TERMS**
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 966 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)



**TexasMutual®**
Insurance Company

6210 E Highway 290          Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

    PREFERRED STAFFING COMPANY LLC
    IWORKS PERSONNEL
    PO BOX 100111
    SAN ANTONIO, TX 78201-1411

Provider name and address:

    LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

| TYPE OF POLICY: |
| --- |
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
| --- |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 | 9-04-2012 |
| | to |

| DATE OF NOTICE: |
| --- |
| 6-11-2012 |

| CANCELLATION WILL TAKE EFFECT AT: | |
| --- | --- |
| 7-16-2012 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

**CANCELLATION**

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**REASON FOR CANCELLATION**
NON-COMPLIANCE - PREMIUM AUDIT

**CANCELLATION TERMS**
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 966 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

000008

**Facsimile Transmission**



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:** (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:** June 12, 2012

**To:** LETTE INS AGCY
**ATTN:** ESTELA RODRIGUEZ

**RE:** 0001204473
PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

**Comments:**

**From:** Texas Mutual Insurance Company
(800) 859-5995

Pages: 2   including this cover

000009



TEXAS MUTUAL INSURANCE COMPANY
CORPORATE HEADQUARTERS
AUSTIN, TEXAS  1-800-859-5995
www.texasmutual.com

INVOICE DATE  10/09/2012
INVOICE NUMBER  20262053
POLICY NUMBER  0001204473
PAGE  01 OF 01

| POLICYHOLDER NAME AND ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | LETTE INS AGCY<br>145 BOCA CHICA BLVD<br>BROWNSVILLE, TX 78520 |

| TRANS DATE | ORIGINAL INVOICE NUMBER | ORIGINAL AMOUNT DUE | TRANSACTION DESCRIPTION | OPEN AMOUNT DUE | DUE DATE |
|---|---|---|---|---|---|
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2011 | | | | | |
| 08/23/2012 | 20262053 | 8,310.00 | FINAL AUDIT: CLOSED EVEN: PENDING REVIEW OF BOOKS & RECORDS | 1.00 | 09/07/2012 |
| | | | POLICY YEAR TOTAL | $1.00 | |
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2010 | | | | | |
| 10/08/2012 | 20262053 | 7,296.00 | FINAL AUDIT REVISION: REPLACES INVOICE DATED 06/08/12 | 7,296.00 | 10/23/2012 |
| 11/01/2011 | 20262053 | 18,644.00 | FINAL AUDIT: INCOMPLETE/NON-COMPLIANT - UNABLE TO AUDIT | 1.00 | 11/16/2011 |
| | | | POLICY YEAR TOTAL | $7,297.00 | |
| | | | AMOUNT DUE ON ACCOUNT | $7,298.00 | |

Payments not received by their due dates may result in cancellation of your current coverage.

---

Detach and return this portion with your payment.  Please make checks payable to Texas Mutual Insurance Company at the address below.
Payments not received by their due dates may result in cancellation of your current coverage.

TEXAS MUTUAL INSURANCE COMPANY
P.O. BOX 841843
DALLAS, TX 75284-1843
1-800-859-5995

INVOICE DATE  10/09/2012
INVOICE NUMBER  20262053
POLICY NUMBER  0001204473

AMOUNT DUE ON ACCOUNT    $7,298.00

AMOUNT ENCLOSED: _____

Please write your policy number on your check for prompt handling.
THANK YOU FOR YOUR BUSINESS!

BRSINVC

000010



6210 E Highway 290
Austin, Texas 78723-1098
1-512-224-7194
1-800-859-5995

P.O. Box 841843
Dallas, TX 75284-1843
1-512-224-7194
1-800-859-5995

October 9, 2012

**RECEIVED OCT 1 1 2012**

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

RE: POLICY NUMBER  STA-0001204473 20100904
     FINAL AUDIT INVOICE

Dear policyholder:

Enclosed you will find a copy of your FINAL AUDIT STATEMENT for the policy term referenced above.  Please take a moment to review your final audit statement.

IF PAYMENT IS DUE, A CONSOLIDATED INVOICE HAS BEEN ENCLOSED.  In that event, please detach and return the bottom portion of your invoice with your payment.  Checks must be made payable to Texas Mutual Insurance Company and should include your policy number as noted above.  Our payment mailing address is:

> Texas Mutual Insurance Company
> P.O. Box 841843
> Dallas, TX 75284-1843

**Please remit payment for any amounts due by the due date reflected on your invoice.**

If you need additional information or if we can be of further assistance, please contact the Premium Audit Department at 1-800-859-5995.  We appreciate your business and prompt attention to this matter.

Sincerely,

Premium Audit Department

CC:  PREFERRED STAFFING COMPANY LLC
     DBA: IWORKS PERSONNEL
     PO BOX 100111
     SAN ANTONIO, TX 78201-1411

FACOVR (ED. 10-26-06)

AGENT'S COPY

000011



# TexasMutual®
### Insurance Company

## FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20100904 | 00000 | Policy Period | From 9-04-2010 | To 9-04-2011 |
|---|---|---|---|---|---|
| Statement Date | 10-09-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|---|
| 00001 | | | | | | |
| | | | 9-04-2010 To 11-05-2010 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 5,200 | 12.89 | 670.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 2,149 | 9.60 | 206.00 |
| | 5190 | 001 | ELECTRICAL WIRING & DRIVERS | 918 | 8.64 | 79.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.13 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 0 | 8.13 | 0.00 |
| | 8033 | 009 | STORE: SUPERMARKET | 9,819 | 7.19 | 706.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.30 | 0.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.30 | 0.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 103,299 | 0.51 | 527.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 6,087 | 2.22 | 135.00 |
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 11,998 | 9.29 | 1,115.00 |
| | 9052 | 008 | HOTEL-ALL OTHER EMPLOYEES & DRIVERS | 2,082 | 8.45 | 176.00 |
| | | | Period Total | 141,552 | | 3,614.00 |
| | | | | | | |
| | | | 11-05-2010 To 12-31-2010 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 4,696 | 12.89 | 605.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 1,941 | 9.60 | 186.00 |
| | 5190 | 001 | ELECTRICAL WIRING & DRIVERS | 829 | 8.64 | 72.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.13 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 0 | 8.13 | 0.00 |
| | 8033 | 009 | STORE: SUPERMARKET | 8,869 | 7.19 | 638.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.30 | 0.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.30 | 0.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 93,303 | 0.51 | 476.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 5,498 | 2.22 | 122.00 |
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 10,837 | 9.29 | 1,007.00 |
| | 9052 | 008 | HOTEL-ALL OTHER EMPLOYEES & DRIVERS | 1,880 | 8.45 | 159.00 |
| | | | Period Total | 127,853 | | 3,265.00 |
| | | | | | | |
| | | | 12-31-2010 To 9-04-2011 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 20,714 | 12.89 | 2,670.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 8,559 | 9.60 | 822.00 |
| | 5190 | 001 | ELECTRICAL WIRING & DRIVERS | 3,656 | 8.64 | 316.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.13 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 0 | 8.13 | 0.00 |
| | 8033 | 009 | STORE: SUPERMARKET | 39,118 | 7.19 | 2,813.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.30 | 0.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.30 | 0.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 411,532 | 0.51 | 2,099.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 24,252 | 2.22 | 538.00 |

000012


# TexasMutual®
### Insurance Company

# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20100904 | 00000 | Policy Period | From 9-04-2010 | To 9-04-2011 |
|---|---|---|---|---|---|
| Statement Date | 10-09-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|---|
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 47,800 | 9.29 | 4,441.00 |
| | 9052 | 008 | HOTEL-ALL OTHER EMPLOYEES & DRIVERS | 8,292 | 8.45 | 701.00 |
| | | | Period Total | 563,923 | | 14,400.00 |
| | | | Location Total | 833,328 | | 21,279.00 |
| | | | **9-04-2010 To 11-05-2010** | | | |
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 72.00 |
| | 9807 | 001 | 500/500/500 INCREASED LIMITS | | 0.010 | 37.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 40.00%) | 1.400 | 1,489.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.700 | 3,648.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 1,063.00- |
| | | | **11-05-2010 To 12-31-2010** | | | |
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 66.00 |
| | 9812 | 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 67.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 40.00%) | 1.400 | 1,359.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.700 | 3,329.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 970.00- |
| | | | **12-31-2010 To 9-04-2011** | | | |
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 288.00 |
| | 9812 | 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 294.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 40.00%) | 1.400 | 5,993.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.700 | 14,683.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 4,279.00- |
| | | | **9-04-2010 To 9-04-2011** | | | |
| | 0063 | 001 | PREMIUM DISCOUNT | | 0.075 | 3,472.00- |
| | 0900 | 001 | EXPENSE CONSTANT | | 0.000 | 150.00 |

Total Earned Premium                                     42,969.00

Previously Billed            35,673.00

Cash Collected                                           35,672.00-

~7,297.00

000013



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20100904 | 00000 | Policy Period | From 9-04-2010 | To 9-04-2011 |
|---|---|---|---|---|---|
| Statement Date | 10-09-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | Additional Premium | | | 7,297.00 |

FINAL AUDIT REVISION: REPLACES
INVOICE DATED 06/08/12

000014

**TexasMutual®**
Insurance Company

Premium Audit Department
6210 E. Highway 290
Austin, Texas 78723-1098
1-800-859-5995
FAX 1-512-224-7194

## Appointment Confirmation

**To:** HAYDEE GUTIERREZ, P      **From:** Katherine S. Richter

**Fax:** 281-298-9352      **Pages:** 1 **of** 1

**Email:** haydeegutierrez@iworkspersonnel.com

**Phone:** 956-459-5109      **Date:** 10/18/2012

**RE:** Revision Audit Appointment      **CC:** ISAIAS BAZAN

     **Cell:** 512-963-0484

**Policyholder:** PREFERRED STAFFING COMPANY LLC

**Policy Number:** 0001204473      **Other States Policy #:** --

**Policy Period:** 9/4/2011 to 7/16/2012 at **12:01 A.M. Standard Time**

Per our telephone conversation, I am confirming your Revision Audit Appointment.
We plan to have auditor ISAIAS BAZAN, visit you on, Thursday, November 01, 2012, at approximately 01:30 PM at the following location: 3881 OLD HIGHWAY 77, BROWNSVILLE, TX 78520-9401.

As provided in the policy provisions, the estimated premium basis for your Worker's Compensation Insurance coverage is subject to audit. The audit appointment is being scheduled with you to determine proper earned premium for the policy period.

**Please have all records noted below available for examination to facilitate the premium audit process. If any of these items do not pertain to your business, then please disregard.**

- Payrolls - By Employee (Payroll Books, Federal 941, and State Unemployment Reports)
- Subcontractor Payments (Cash Disbursement Journals and other records of payments by cash; Written Contracts, Work Orders and Invoices reflecting payments to subcontractors; Profit and Loss Statements, General Ledgers, Check Registers, Income Statements, etc.)
- Certificates of Insurance for all hired Subcontractors
- Overtime Wages - By Employee and Classification code
- Tips (if applicable)
- Flight Log (If applicable)
- For Staff Leasing, PEO, and Temporary Employment Agencies - Payroll information by client.

**Please contact ISAIAS BAZAN with any audit questions you may have. To ensure prompt receipt of appointment cancellation and reschedule requests, we encourage you to telephone rather than e-mail the Appointment Coordinator.**

Thank You,

Katherine S. Richter, Appointment Coordinator Ext. 3817

REV_PHY_CNF_ENG

000015



Premium Audit Department
6210 E Highway 290
Austin, Texas 78723-1098
1-800-859-5995
(FAX) 1-512-224-3011

RECEIVED NOV 1 5 2012

November 12, 2012

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Re:  PREFERRED STAFFING COMPANY LLC

Dear Agent,

Enclosed please find a copy of an Incomplete Final Audit Notification being sent to your insured.

Your assistance in helping the insured become compliant with Final Audit Procedures is appreciated. If you have any questions regarding this matter, please call the Texas Mutual Insurance Company at 1-800-859-5995.

Thank you in advance for your help.

Premium Audit Department

Fanpagt (05/01/09)

000016



**Premium Audit Department**

6210 E Highway 290

Austin, Texas 78723-1098

1-800-859-5995

(FAX) 1-512-224-3011

November 12, 2012

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Re: PREFERRED STAFFING COMPANY LLC
STA-0001204473 20110904
09-04-2011 - 09-04-2012

## INCOMPLETE FINAL AUDIT NOTIFICATION

Texas Mutual Insurance Company has been unable to complete the final audit of your policy due to our inability to schedule an audit appointment or obtain requested audit information and/or financial documents. As a result, your final audit has been processed incomplete and your current coverage is scheduled to cancel soon.

To prevent cancellation of your current coverage, please contact the Premium Audit Department promptly, Texas Mutual Insurance Company, will not consider issuing coverage for your business, until the audit has been completed.

We hope to be able to resolve this issue as we value you as a customer. Please contact the Premium Audit Department on our toll free number: 1-800-859-5995

Regards,

Premium Audit Department

cc: LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Fanpremd (05/12/04)

000017



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904          00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|

| Statement Date | 11-12-2012 |
|---|---|

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|

FINAL AUDIT: INCOMPLETE/NON-
COMPLIANT - UNABLE TO AUDIT



| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|
| Statement Date | 11-21-2012 | | | | |

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC 00001 | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 6,360 | 12.71 | 808.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 7590 002 | GARBAGE WORKS | 34,132 | 9.57 | 3,266.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 0 | 7.61 | 0.00 |
| | 8033 009 | STORE: SUPERMARKET | 52,726 | 7.04 | 3,712.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.27 | 0.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.27 | 0.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 553,460 | 0.44 | 2,435.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 106,174 | 8.96 | 9,513.00 |
| | | Period Total | 785,356 | | 22,628.00 |
| | | | | | |
| | | Location Total | 785,356 | | 22,628.00 |
| | | | | | |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 453.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 462.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,063.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 22,955.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,427.00- |
| | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,535.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

|  |  |  |
|---|---|---|
| Total Earned Premium | | 43,729.00 |
| Previously Billed | 43,862.00 | |
| Cash Collected | | 43,861.00- |

000019



| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

| Statement Date | 11-21-2012 |
|---|---|

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | Return Premium | | | 132.00- |

FINAL AUDIT REVISION: REPLACES
INVOICE DATED 11/12/12

ENTERED
COMM. _5%_
CL. & TRAN. _Audit_
CO.# _TMI_
_Mal. 12/10/12_

FASTMT (ED. 12-08-03)

VLKLEIN

000020



# CERTIFICATE OF LIABILITY INSURANCE

PREFST1    OP ID: ER

**DATE (MM/DD/YYYY)** 06/25/12

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | | CONTACT NAME: ESTELA RODRIGUEZ | |
|---|---|---|---|---|
| LETTE INSURANCE AGENCY 145 BOCA CHICA Suite B BROWNSVILLE, TX 78520-7876 | 956-541-7252 956-542-8757 | | PHONE (A/C, No, Ext): 956-541-7252 | FAX (A/C, No): 956-542-8757 |
| | | | E-MAIL ADDRESS: ESTELA@LETTEINSURANCEAGENCY.COM | |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURER A : | Colony Insurance Company | |
| INSURER B : | Evanston Insuranace Company | |
| INSURER C : | | |
| INSURER D : | | |
| INSURER E : | | |
| INSURER F : | | |

**INSURED**
PREFERRED STAFFING LLC
IWORKS PERSONNEL
P.O.BOX 100111
SAN ANTONIO, TX 78201

## COVERAGES     CERTIFICATE NUMBER:     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE ☐ OCCUR | | | GL3757627 | 07/02/11 | 07/02/12 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ EXCLUDED |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☐ LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB ☐ OCCUR EXCESS LIAB ☐ CLAIMS-MADE | | | XOMS172111 | 07/02/11 | 07/02/12 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | | | | ☐ WC STATU-TORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
TEMPORARY STAFFING

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| RED HAWK CONTRACTING 5200 LEONHARDT SAN ANTONIO, TX 78265 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE |

© 1988-2010 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

ACORD 25 (2010/05)

000021

ACORD

# CERTIFICATE OF LIABILITY INSURANCE

PREFST1  OP ID: ER

**DATE (MM/DD/YYYY)** 06/25/12

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | | CONTACT NAME: ESTELA RODRIGUEZ |
|---|---|---|
| LETTE INSURANCE AGENCY 145 BOCA CHICA Suite B BROWNSVILLE, TX 78520-7876 | 956-541-7252 956-542-8757 | PHONE (A/C, No, Ext): 956-541-7252 | FAX (A/C, No): 956-542-8757 |

E-MAIL ADDRESS: ESTELA@LETTEINSURANCEAGENCY.COM

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED PREFERRED STAFFING LLC IWORKS PERSONNEL P.O.BOX 100111 SAN ANTONIO, TX 78201 | INSURER A : Colony Insurance Company | |
| | INSURER B : Evanston Insuranace Company | |
| | INSURER C : | |
| | INSURER D : | |
| | INSURER E : | |
| | INSURER F : | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY ☐ CLAIMS-MADE ☐ OCCUR | | | GL3757627 | 07/02/11 | 07/02/12 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ EXCLUDED |
| | GEN'L AGGREGATE LIMIT APPLIES PER: ☐ POLICY ☐ PROJECT ☐ LOC | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| | | | | | | | | $ |
| | **AUTOMOBILE LIABILITY** ☐ ANY AUTO ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | X UMBRELLA LIAB X OCCUR ☐ EXCESS LIAB ☐ CLAIMS-MADE ☐ DED ☐ RETENTION $ | | | XOMS172111 | 07/02/11 | 07/02/12 | EACH OCCURRENCE | $ 5,000,000 |
| | | | | | | | AGGREGATE | $ 5,000,000 |
| | | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☐ (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ WC STATUTORY LIMITS ☐ OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
TEMPORARY STAFFING

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| SMITHERS MERCHANT BUILDERS LP 21716 HARDY OAK BOULEVARD SAN ANTONIO, TX 78258-4832 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE _James T. Lette_ |

© 1988-2010 ACORD CORPORATION. All rights reserved.
ACORD 25 (2010/05)    The ACORD name and logo are registered marks of ACORD

000022



| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

Statement Date 11-21-2012

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC 00001 | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|
| | | 9-04-2011 To  7-16-2012 | | | |
| | 2003 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 6,360 | 12.71 | 808.00 |
| | 2881 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 7590 002 | GARBAGE WORKS | 34,132 | 9.57 | 3,266.00 |
| | 8006 004 | GROCERY STORE-RETAIL | 0 | 7.61 | 0.00 |
| | 8033 009 | STORE: SUPERMARKET | 52,726 | 7.04 | 3,712.00 |
| | 8044 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 0 | 0.27 | 0.00 |
| | 8803 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 0 | 0.27 | 0.00 |
| | 8810 001 | CLERICAL OFFICE EMPLOYEES NOC | 553,460 | 0.44 | 2,435.00 |
| | 8833 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 001 | AIR CONDITIONING DUCT CLEANING SERV | 106,174 | 8.96 | 9,513.00 |
| | | Period Total | 785,356 | | 22,628.00 |
| | | | | | |
| | | Location Total | 785,356 | | 22,628.00 |
| | | | | | |
| | | | | | |
| | | 9-04-2011 To  7-16-2012 | | | |
| | 0930 001 | WAIVER OF SUBROGATION | | 0.020 | 453.00 |
| | 9812 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 462.00 |
| | 9898 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,063.00 |
| | 9889 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 22,955.00 |
| | 9874 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,427.00- |
| | | 9-04-2011 To  7-16-2012 | | | |
| | 0063 001 | PREMIUM DISCOUNT | | 0.075 | 3,535.00- |
| | 0900 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

Total Earned Premium                                     43,729.00

Previously Billed          43,862.00

Cash Collected                                           43,861.00-



| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
| --- | --- | --- | --- | --- | --- |

Statement Date   11-21-2012

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
| --- | --- | --- | --- | --- | --- |
| | | Return Premium | | | 132.00- |

FINAL AUDIT REVISION: REPLACES
INVOICE DATED 11/12/12

ENTERED
COMM. ___5%___
CL. & TRAN. ___Audit___
CO # ___TMI___
___Nal. 10/10/13___

FASTMT (ED. 12-08-03)

VLKLEIN          000024



**Texas Mutual**®
Insurance Company

September 6, 2011

Preferred Staffing Company LLC
P.O. Box 100111
San Antonio, TX 78201-1411

Re:   **Accident Prevention Plan Requirements**
       Policy Number:        STA0001204473
       Policy Effective Date: 9/4/11

Dear Policyholder:

As you know, your business is required by Texas law to document your occupational injury and illness prevention efforts. That is because you have coverage in our *Start Program* and have a loss history that meets criteria outlined in Article 5.76-3 section 10 of the Texas Insurance Code.

Because you have already completed the basic requirements of developing and implementing an accident prevention plan, the Texas Department of Insurance, Division of Workers' Compensation (DWC) requires a re-inspection of your workplace(s) to verify that you are completing your accident prevention plan requirements. This re-inspection must be completed within 30 days of your policy's effective date or within 30 days after you receive this letter, whichever is later. The re-inspection will document the status of your seven accident prevention plan components and note any new uncontrolled hazards.

Between 90 and 180 days after submission of this documentation, a DWC safety inspector will inspect your workplace to verify you are following the safety procedures in your plan. **DWC is required by HB 1090 to charge a fee to inspect your workplace. For information about the fee call DWC at (512) 440-5665.**

DWC rule 165.7(d) states that if they determine that you have not implemented your accident prevention plan, you may cancel your workers' compensation insurance policy. If you elect to cancel your insurance policy, you must cancel it within 30 days of the receipt of the DWC safety inspector's noncompliance letter. If you do not cancel your policy, Texas Mutual® may cancel it for failure to implement the accident prevention plan. If Texas Mutual® does not cancel your policy, and you do not cancel it, DWC may assess a Class B administrative penalty of up to $5,000 per day for each violation of the accident prevention plan.

One of our loss prevention consultants will call you soon to answer any questions you may have about inspection requirements. We will continue to help you provide a safe

000025

and healthy workplace, and will help you with any safety related filings required by DWC.

Please call our Information Services Center at 1-800-859-599, if you need more information.


Sincerely,


Loss Prevention Services


cc:    Bernadine Barno
cc:    Donna Carr - Texas Dept. of Insurance, Division of Workers' Compensation
cc:    Underwriting File

## estela rodriguez

| | |
|---|---|
| **From:** | estela rodriguez [estela@letteinsuranceagency.com] |
| **Sent:** | Wednesday, August 24, 2011 3:39 PM |
| **To:** | 'Rudy Alba' |
| **Subject:** | preferred staffing |

**Attachments:** Document (128).pdf

Please send these documents to the appropriate underwriter

Thanks

Estela Rodriguez
Insurance Service Rep.
Lette Insurance Agency
145 Boca Chica Blvd Ste-B
Brownsville TX 78520
956-541-7252 Phone
956-542-8757 Fax

No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1392 / Virus Database: 1520/3854 - Release Date: 08/24/11



# WORKE___' COMPENSATION AND
# EMPLOYERS LIABILITY INSURANCE POLICY

RECEIVED AUG 2 2 2011

## INFORMATION PAGE

6210 E Highway 290
Austin, Texas 78723-1098

**ITEM 1**

**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

**PRODUCER**

**18220**

POLICY NUMBER
STA-0001204473 20110904

| | |
|---|---|
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY – 33% |
| Group | |

**ITEM 2**   The Policy Period is from:   9-04-2011   To:   9-04-2012   12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A.   Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B.   Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C.   Other States Insurance:   Part Three of the policy applies to the states, if any, listed here:   NONE

D.   This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**

The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM   $   18,335.00

| | |
|---|---|
| WAIVER OF SUBROGATION | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ) | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ) | 5,157.00- |
| DEDUCTIBLE PREMIUM | .00 |
| ADMIRALTY/FELA OR L & H W | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) | 2,761.00- |
| EXPENSE CONSTANT CHARGE | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM   $   35,205.00

MINIMUM PREMIUM   250.00

DEPOSIT PREMIUM   11,618.00

Countersigned by _Ron Wright_

Issue Date:   8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

000028

# estela rodriguez

**From:** estela rodriguez [estela@letteinsuranceagency.com]
**Sent:** Wednesday, August 31, 2011 10:47 AM
**To:** 'Rudy Alba'
**Subject:** PREFERRED STAFFING STA-0001204473-20110904

AMENDING LIABILITY LIMITS TO READ $1,000,000 IN LIEU OF $500,000

Thanks

Estela Rodriguez
Insurance Service Rep.
Lette Insurance Agency
145 Boca Chica Blvd Ste-B
Brownsville TX 78520
956-541-7252 Phone
956-542-8757 Fax

No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1392 / Virus Database: 1520/3868 - Release Date: 08/30/11

8/31/2011

000029



# TexasMutual
## Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098

**ITEM 1**

**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

**PRODUCER**

**18220**

| POLICY NUMBER | |
|---|---|
| STA-0001204473 | 20110904 |
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

**ITEM 2** The Policy Period is from: 9-04-2011 To: 9-04-2012 12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A. Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B. Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C. Other States Insurance: Part Three of the policy applies to the states, if any, listed here: NONE

D. This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**

The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM :$ 18,335.00

| | | |
|---|---|---|
| WAIVER OF SUBROGATION | : | 367.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS | : | 187.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS | : | 18,889.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.30 ) | : | 5,667.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.75 ) | : | 18,417.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ) | : | 5,157.00- |
| DEDUCTIBLE PREMIUM | : | .00 |
| ADMIRALTY/FELA OR L & H W | : | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 7.30 ) | : | 2,761.00- |
| EXPENSE CONSTANT CHARGE | : | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM :$ 35,205.00

MINIMUM PREMIUM 250.00

DEPOSIT PREMIUM 11,618.00    Countersigned by _Ron Wright_

Issue Date: 8-15-2011

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Texas Department of Insurance, Division of Workers' Compensation, Workplace Safety, at 1-800-687-7080.

WC000001A (ED. 07-11)

000030

# IMPORTANT NOTICE

**To obtain information or make a complaint:**

You may contact your agent.

You may call the Texas Mutual Insurance Company toll-free telephone number for information or to make a complaint at:

### 1-800-859-5995

You may also write to:

> Texas Mutual Insurance Company
> 6210 E Highway 290
> Attn: Information Services Center
> Austin, Texas 78723-1098

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-800-252-3439

You may write the Texas Department of Insurance at:

> P.O. Box 149104
> Austin, TX 78714-9104
> Fax # (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or the company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

## ATTACH THIS NOTICE TO YOUR POLICY:

This notice is for information only and does not become a part or condition of the attached document.

# AVISO IMPORTANTE

**Para obtener informacion o para someter una queja:**

Puede comunicarse con su agente.

Usted puede llamar al numero de telefono gratis del Texas Mutual Insurance Company para informacion o para someter una queja al:

### 1-800-859-5995

Usted tambien puede escribir a:

> Texas Mutual Insurance Company
> 6210 E Highway 290
> Attn: Information Services Center
> Austin, Texas 78723-1098

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

### 1-800-252-3439

Puede escribir al Departamento de Seguros de Texas a:

> P.O. Box 149104
> Austin, TX 78714-9104
> Fax # (512) 475-1771
> Web: http://www.tdi.state.tx.us
> E-mail: ConsumerProtection@tdi.state.tx.us

## DISPUTAS SOBRE PRIMAS O RECLAMOS:
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o la compania primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

## UNA ESTE AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.



## WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

### SCHEDULE OF OPERATIONS

EXTENSION OF INFORMATION PAGE

PAGE  2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br><br>8-15-2011 |

ITEM  4        ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000012003 | | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 000015403 | | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 000015506 | | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 000018810 | | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 000019014 | | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 000018044 | | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 000018803 | | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 000018833 | | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 000018006 | | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY                    MEFOLKER        8-15-2011

000032



EXTENSION OF INFORMATION PAGE

PAGE        3

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br><br>8-15-2011 |

ITEM 4        ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000 | 018803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER- TRAVELING | 197,877.00 | .27 | 534.00 |
| 42 | 000 | 012881 | WOODENWARE MFG NOC & DRIVERS | 12,017.00 | 8.30 | 997.00 |
| | | | Subj to Experience Mod of  1.30 | | | |
| | | | Total Estimated Standard Premium | | | 18,335.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                            at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $                                                                              Endorsement No.

Ron Wright

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY            MEFOLKER        8-15-2011

000033



PAGE 4      EXTENSION OF INFORMATION PAGE

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 4      ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 9807 | INCREASED LIMITS 500/500/500 | .01 | 187.00 |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,761.00- |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,667.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,417.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,157.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 16,870.00 |
| | | Total Estimated Annual Premium | | 35,205.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

_Ron Wright_

**Authorized Representative**



EXTENSION OF INFORMATION PAGE

PAGE 5

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER

STA-0001204473 20110904

ISSUE DATE

8-15-2011

ITEM 1 ** LOCATIONS **

| LOCATION NUMBER | ADDRESS |
| --- | --- |
| 00001 | PREFERRED STAFFING COMPANY LLC<br>5 BOCA CHICA BLVD STE 15B<br>BROWNSVILLE, TX 78520-7863<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011 EXPIRES: 9-04-2012 |
| 00002 | PREFERRED STAFFING COMPANY LLC<br>2501 BANDERA RD<br>SAN ANTONIO, TX 78238-1931<br><br>FEDERAL ID: 76-0797747<br>EFFECTIVE: 9-04-2011 EXPIRES: 9-04-2012 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)

AGENT'S COPY      MEFOLKER    8-15-2011

000035



EXTENSION OF INFORMATION PAGE

PAGE    6

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D        \*\* ENDORSEMENT SCHEDULE \*\*

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00A | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                        at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)        AGENT'S COPY        MEFOLKER    8-15-2011

000036



EXTENSION OF INFORMATION PAGE
PAGE        7

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
8-15-2011

ITEM 3D            **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)            AGENT'S COPY            MEFOLKER        8-15-2011

000037



## LIMITED REIMBURSEMENT FOR TEXAS EMPLOYEES
## INJURED IN OTHER JURISDICTIONS

**IMPORTANT NOTICE!**
**PLEASE READ THIS ENDORSEMENT CAREFULLY**

This policy does not provide "other states" insurance coverage. This endorsement provides reimbursement coverage to you for those Texas employees who are described in the Texas Labor Code §§406.071-.072. Therefore the coverage is for injuries to your Texas employees that occur in another state if (i) the injury would have been compensable had it occurred in Texas and (ii) the employee has significant contacts with Texas or the employment is principally located in Texas. An employee has significant contacts with Texas if the employee was hired or recruited in Texas, and (i) the employee was injured not later than one year after the date of hire; or (ii) has worked in Texas for at least ten working days during the twelve months preceding the date of injury.

Employees hired or recruited by you outside Texas to work in another state are specifically excluded from the terms and provisions of this policy. If you conduct business in states other than Texas, you must comply with those state laws. You must promptly notify your agent before you begin work in any jurisdiction other than Texas. We are **not** authorized to provide workers' compensation insurance in any jurisdiction other than Texas. You are responsible for all of your legal obligations for your failure to comply with, requirements of the workers' compensation laws of any jurisdiction other than Texas.

**Part Three Other States Insurance of the policy is deleted and replaced with the following:**

**I. Limited Reimbursement Provision**

  **A. How this endorsement applies**

  This endorsement will reimburse you after you have made payments for benefits for injuries to your Texas employees required of you in another jurisdiction. This reimbursement provision only applies to bodily injury by accident including death or bodily injury by disease including death incurred by your employee who qualifies for Texas workers' compensation benefits under Sec. 406.071 of the Texas Labor Code.

  1. Bodily injury must arise out of and in the course of the injured employee's temporary employment by you in a state other than Texas.

  2. Bodily injury by accident must occur during the policy period.

  3. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last injurious exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

  4. The employee incurring bodily injury must be eligible for Texas workers' compensation benefits and must make a written election of workers' compensation benefits in the state in which the bodily injury occurred in lieu of Texas workers' compensation benefits. You must send us written notice of such election within 10 days of receiving notice yourself. Failure to provide such notice means any reimbursement will be made in accordance with the Texas Labor Code.

## B. Reimbursement

1. We will reimburse you for the amount you have paid as workers' compensation benefits for employees, as defined above, under the workers' compensation law of any state listed in the schedule.

2. We will deduct from the benefits so reimbursed any amounts we have paid as Texas benefits to the employee for the same injury for which the other jurisdiction's benefits are required.

3. Sections D through G of Part One of the policy will apply to reimbursement provided by this endorsement. Sections A, B, C and H of Part One of the policy will not apply to reimbursement provided by this endorsement.

4. We will reimburse you for reasonable attorney's fees you have paid to defend the injury claim in another jurisdiction.

## II. Exclusions, Limitations and Conditions

The following conditions apply to the reimbursement afforded by this endorsement:

1. Nothing in this endorsement confers jurisdiction in another state or constitutes our doing business in another state.
2. Reimbursement will be made in Texas.
3. Travis County, Texas is the sole venue for any lawsuit involving reimbursement under this endorsement.
4. This endorsement provides reimbursement only in Texas and fully releases and indemnifies us and holds us harmless from any liability arising from your failure to obtain workers' compensation coverage in another jurisdiction.
5. The reimbursement provided by this endorsement excludes:
   a. bodily injury, including death, to an employee while employed in a jurisdiction where you have secured your obligation under the workers' compensation law by other insurance or by self-insurance;
   b. bodily injury, including death, to an employee while employed in a state where you affirmatively rejected the workers' compensation law; or
   c. fines or penalties arising out of your failure to comply with requirements of the workers' compensation law of any state.

## III. Premium

The premium basis and rates for work by Texas employees in jurisdictions other than Texas are the same as if the work had been done in Texas.

## IV. Schedule

Designated States: All states of the United States of America except North Dakota, Ohio, Washington and Wyoming.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: DBA: IWORKS PERSONNEL

Premium: $_____

Endorsement No.

Authorized Representative

TM-LRC-2008

000039



**The named insured ratifies and accepts the terms and conditions of the policy to which this endorsement is attached as well as the terms listed below.**

1. Policies that are on an interim reporting basis may not be financed. Texas Mutual Insurance Company may cancel coverage if it determines that interim reports have been financed in violation of this prohibition.

2. The named insured certifies that the payroll established by classification codes in the application for coverage is a true and reasonable estimate for the period of coverage requested and will promptly report any material change in payroll exposures to Texas Mutual Insurance Company. Texas Mutual Insurance Company may adjust premium for the policy upon receipt of such information.

3. The named insured and its affiliates permit Texas Mutual Insurance Company access to all of their employment information and records filed with the Texas Workforce Commission, and hereby waive the confidentiality of such information and records.

4. All obligations of the named insured are performable in Travis County, Texas and said county will be the legal venue for any suit arising from this contract. Maintenance of an action in Travis County, Texas does not work an injustice to the named insured and is in the interest of the parties, and transfer of the action would work an injustice to the parties. Any suits must be filed in Travis County, Texas.

5. If the insured defaults on payment of any premiums due under any policy issued, then all premiums due and unpaid shall become due and payable at Texas Mutual Insurance Company's offices in Austin, Travis County, Texas.

6. All information supplied to Texas Mutual Insurance Company by the named insured or its agent in the application for insurance or otherwise is true and complete; nothing material regarding its operations has been omitted; and the named insured intended Texas Mutual Insurance Company to rely on such information in issuing this policy. The named insured assumed the duty of full disclosure of such information and that Texas Mutual Insurance Company has no duty to inquire further regarding such information. The named insured is not violating any provision of the Texas Workers' Compensation Act and is not subcontracting any work to a subcontractor with the intent to avoid liability as an employer.

7. The named insured will not cause any certificate of insurance to be issued for the purpose of satisfying the workers' compensation insurance requirements of any third party, including any governmental entity, unless the remuneration paid to the individual workers performing such work is disclosed to Texas Mutual Insurance Company and included in the premium calculation of the named insured. If the named insured causes a certificate of insurance to be issued for the purpose of allowing the employees of a person other than the named insured to perform work at any job site where workers' compensation is required, and such workers are not covered by workers' compensation insurance, such action by the named insured is a material breach of this insurance policy and constitutes fraud upon Texas Mutual Insurance Company.

8. The named insured has appointed the agent whose name appears on the application as its agent in fact and agrees that any representations made on its behalf by that agent are the representations of the named insured, unless there is an express written agreement between Texas Mutual Insurance Company and the agent that the agent acts on behalf of Texas Mutual Insurance Company.

9. Acceptance of this policy with all endorsements and tender of the deposit premium constitute the insured's agreement with all of the terms and conditions thereof, and the insured's acknowledgement of the obligation to pay all premiums due for the policy.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473  20110904         of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC             **Endorsement No.**
     DBA: IWORKS PERSONNEL
Premium $                                            *Ron Wright*
                                            _____
                                            **Authorized Representative**



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

**TM-MV-2001**

## MUTUALS – MEMBERSHIP AND VOTING NOTICE

The insured is notified that by virtue of this policy, he is a member of the Texas Mutual Insurance Company, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office, 6210 E Highway 290, Austin, Texas, on the fourth Tuesday of June in each year, at 1:00 o'clock p.m. each year unless the Board of Directors of Texas Mutual Insurance Company specifies otherwise.

## MUTUALS – PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY

No Contingent Liability: This policy is non-assessable. The policyholder is a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distributions of dividends so fixed and determined.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                          at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

**Authorized Representative**

TM-MV-2001 (ED. 08/20/01)

AGENT'S COPY          MEFOLKER     8-15-2011

000041



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

**TM-TRIPRA-2008**

(Ed. 1-08)

## TEXAS TERRORISM RISK INSURANCE PROGRAM REAUTHORIZATION ACT ENDORSEMENT

This endorsement addresses the requirements of the Terrorism Risk Insurance Act of 2002 as amended and extended by the Terrorism Risk Insurance Program Reauthorization Act of 2007.

**Definitions**

The definitions provided in this endorsement are based on and have the same meaning as the definitions in the Act. If words or phrases not defined in this endorsement are defined in the Act, the definitions in the Act will apply.

"Act" means the Terrorism Risk Insurance Act of 2002, which took effect on November 26, 2002, and any amendments resulting from the Terrorism Risk Insurance Program Reauthorization Act of 2007.

"Act of Terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States as meeting all of the following requirements:

a. The act is an act of terrorism.
b. The act is violent or dangerous to human life, property or infrastructure.
c. The act resulted in damage within the United States, or outside of the United States in the case of the premises of United States missions or certain air carriers or vessels.
d. The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"Insured Loss" means, any loss resulting from an act of terrorism (including an act of war, in the case of workers' compensation) that is covered by primary or excess property and casualty insurance issued by an insurer if the loss occurs in the United States or at the premises of United States missions or to certain air carriers or vessels.

"Insurer Deductible" means, for the period beginning on January 1, 2008, and ending on December 31, 2014, an amount equal to 20% of our direct earned premiums, over the calendar year immediately preceding the applicable Program Year.

"Program Year" refers to each calendar year between January 1, 2008 and December 31, 2014, as applicable.

TM-TRIPRA-2008

AGENT'S COPY

000042

## Limitation of Liability

The Act limits our liability to you under this policy. If aggregate Insured Losses exceed $100,000,000,000 in a Program Year and if we have met our Insurer Deductible, we are not liable for the payment of any portion of the amount of Insured Losses that exceeds $100,000,000,000; and for aggregate Insured Losses up to $100,000,000,000, we will pay only a pro rata share of such Insured Losses as determined by the Secretary of the Treasury.

## Policyholder Disclosure Notice

1. Insured Losses would be partially reimbursed by the United States Government. If the aggregate industry Insured Losses exceeds $100,000,000 in a Program Year, the United States Government would pay 85% of our Insured Losses that exceed our Insurer Deductible.

2. Notwithstanding item 1 above, the United States Government will not make any payment under the Act for any portion of Insured Losses that exceed $100,000,000,000.

3. The premium charged for the coverage for Insured Losses under this policy is included in the amounts shown in Item 4 of the Information Page or in the Schedule in the Texas Terrorism Premium Endorsement. (TM-TPE-2008), attached to this policy.

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:      $_____

Endorsement No.

*Ron Wright*

_____
Authorized Representative

TM-TRIPRA-2008



TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY INSURANCE POLICY

## TM-TPE-2008
(Ed. 1-08)

### TEXAS TERRORISM PREMIUM ENDORSEMENT

This endorsement is notification that your insurance carrier is charging premium for losses that may occur in the event of an act of terrorism.

Your policy provides coverage for workers' compensation losses caused by acts of terrorism, including workers' compensation benefit obligations dictated by state law. Coverage for such losses is still subject to all terms, definitions, exclusions, and conditions in your policy, and any applicable federal and/or state laws, rules, or regulations.

For purposes of this endorsement, an "act of terrorism" is defined as:

    a.  Any act that is violent or dangerous to human life, property or infrastructure; and

    b.  The act has been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The premium charge for the coverage your policy provides for workers' compensation losses caused by an act of terrorism is shown in Item 4 of the Information Page or in the Schedule below.

### Schedule

| State | Rate per $100 of payroll |
|-------|--------------------------|
| Texas | $0.00 |

"© 2006. National Council of Compensation Insurace, Inc. All rights reserved. Reprinted with Permission"

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:      $_____

Endorsement No.

_Ron Wright_

_____
Authorized Representative

TM-TPE-2008

AGENT'S COPY          MEFOLKER      8-15-2011

000044



In return to the payment of the premium and subject to all terms of this policy, we agree with you as follows:

# GENERAL SECTION

## A. The Policy

This policy includes at its effective date the Information Page and all endorsements and schedules listed there. It is a contract of insurance between you (the employer named in Item 1 of the Information Page) and us (the insurer named on the Information Page). The only agreements relating to this insurance are stated in this policy. The terms of this policy may not be changed or waived except by endorsement issued by us to be part of this policy.

## B. Who Is Insured

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership, and if you are one of its partners, you are insured, but only in your capacity as an employer of the partnership's employees.

## C. Workers Compensation Law

Workers Compensation Law means the workers or workmen's compensation law and occupational disease law of each state or territory named in Item 3.A. of the Information Page. It includes any amendments to that law which are in effect during the policy period. It does not include any federal workers or workmen's compensation law, any federal occupational disease law or the provisions of any law that provide nonoccupational disability benefits.

## D. State

State means any state of the United States of America, and the District of Columbia.

## E. Locations

This policy covers all of your workplaces listed in Items 1 or 4 of the Information Page; and it covers all other workplaces in Item 3.A. states unless you have other insurance or are self-insured for such workplaces.

# PART ONE – WORKERS COMPENSATION INSURANCE

## A. How This Insurance Applies

This workers compensation insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1. Bodily injury by accident must occur during the policy period.

2. Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

## B. We Will Pay

We will pay promptly when due the benefits required of you by the workers compensation law.

## C. We Will Defend

We have the right and duty to defend at our expense any claim, proceeding or suit against you for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.

## D. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding or suit we defend:

1. reasonable expenses incurred at our request, but not loss of earnings;

2. premiums for bonds to release attachments and for appeal bonds in bond amounts up to the amount payable under this insurance;

3. litigation costs taxed against you;

4. interest on a judgment as required by law until we offer the amount due under this insurance; and

5. expenses we incur.

## E. Other Insurance

We will not pay more than our share of benefits and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that may apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance will be equal until the loss is paid.

AGENT'S COPY

000045

**F.   Payments You Must Make**

You are responsible for any payments in excess of the benefits regularly provided by the workers compensation law including those required because:

1.   of your serious and willful misconduct;

2.   you knowingly employ an employee in violation of law;

3.   you fail to comply with a health or safety law or regulation; or

4.   you discharge, coerce or otherwise discriminate against any employee in violation of the workers compensation law.

If we make any payments in excess of the benefits regularly provided by the workers compensation law on your behalf, you will reimburse us promptly.

**G.   Recovery From Others**

We have your rights, and the rights of persons entitled to the benefits of this insurance, to recover our payments from anyone liable for the injury. You will do everything necessary to protect those rights for us and to help us enforce them.

**H.   Statutory Provisions**

These statements apply where they are required by law.

1.   As between an injured worker and us, we have notice of the injury when you have notice.

2.   Your default or the bankruptcy or insolvency of you or your estate will not relieve us of our duties under this insurance after an injury occurs.

3.   We are directly and primarily liable to any person entitled to the benefits payable by this insurance. Those persons may enforce our duties; so may an agency authorized by law. Enforcement may be against us or against you and us.

4.   Jurisdiction over you is jurisdiction over us for purposes of the workers compensation law. We are bound by decisions against you under that law, subject to the provisions of this policy that are not in conflict with that law.

5.   This insurance conforms to the parts of the workers compensation law that apply to:

   a.   benefits payable by this insurance;

   b.   special taxes, payments into security or other special funds, and assessments payable by us under that law.

6.   Terms of this insurance that conflict with the workers compensation law are changed by this statement to conform to that law.

Nothing in these paragraphs relieves you of your duties under this policy.

# PART TWO – EMPLOYERS LIABILITY INSURANCE

**A.   How This Insurance Applies**

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. Bodily injury includes resulting death.

1.   The bodily injury must arise out of and in the course of the injured employee's employment by you.

2.   The employment must be necessary or incidental to your work in a state or territory listed in Item 3.A. of the Information Page.

3.   Bodily injury by accident must occur during the policy period.

4.   Bodily injury by disease must be caused or aggravated by the conditions of your employment. The employee's last day of last exposure to the conditions causing or aggravating such bodily injury by disease must occur during the policy period.

5.   If you are sued, the original suit and any related legal actions for damages for bodily injury by accident or by disease must be brought in the United States of America, its territories or possessions, or Canada.

**B.   We Will Pay**

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this employers liability insurance.

The damages we will pay, where recovery is permitted by law, include damages:

1.   For which you are liable to a third party by reason of a claim or suit against you by that third party to recover the damages claimed against such third party as a result of injury to your employee;

2.   For care and loss of services; and

3.   For consequential bodily injury to a spouse, child, parent, brother or sister of the injured employee; provided that these damages are the direct consequence of bodily injury that arises out of and in the course of the injured employee's employment by you; and

4.   Because of bodily injury to your employee that arises out of and in the course of employment, claimed against you in a capacity other than as employer.

AGENT'S COPY

000046

## C. Exclusions

This insurance does not cover:

1. Liability assumed under a contract. This exclusion does not apply to a warranty that your work will be done in a workmanlike manner;

2. Punitive or exemplary damages because of bodily injury to an employee employed in violation of law;

3. Bodily injury to an employee while employed in violation of law with your actual knowledge or the actual knowledge of any of your executive officers;

4. Any obligation imposed by a workers compensation, occupational disease, unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

6. Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America or Canada who is temporarily outside these countries;

7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;

8. Bodily injury to any person in work subject to the Longshore and Harbor Workers' Compensation Act (33 USC Sections 901-950), the Nonappropriated Fund Instrumentalities Act (5 USC Sections 8171-8173), the Outer Continental Shelf Lands Act (43 USC Sections 1331-1356a), the Defense Base Act (42 USC Sections 1651-1654), the Federal Coal Mine Safety and Health Act (30 USC Sections 801-945), any other federal workers or workmen's compensation law or other federal occupational disease law, or any amendments to these laws;

9. Bodily injury to any person in work subject to the Federal Employers' Liability Act (45 USC Sections 51-60), any other federal laws obligating an employer to pay damages to an employee due to bodily injury arising out of or in the course of employment, or any amendments to those laws;

10. Bodily injury to a master or member or the crew of any vessel;

11. Fines or penalties imposed for violation of federal or state law; and

12. Damages payable under the Migrant and Seasonal Agricultural Worker Protection Act (29 USC Sections 1801-1872) and under any other federal law awarding damages for violation of those laws or regulations issued thereunder, and any amendments to those laws.

## D. We Will Defend

We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.

We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have no duty to defend or continue defending after we have paid our applicable limit of liability under this insurance.

## E. We Will Also Pay

We will also pay these costs, in addition to other amounts payable under this insurance, as part of any claim, proceeding, or suit we defend:

1. Reasonable expenses incurred at our request, but not loss of earnings;

2. Premiums for bonds to release attachments and for appeal bonds in bond amounts up to the limit of our liability under this insurance;

3. Litigation costs taxed against you;

4. Interest on a judgment as required by law until we offer the amount due under this insurance; and

5. Expenses we incur.

## F. Other Insurance

We will not pay more than our share of damages and costs covered by this insurance and other insurance or self-insurance. Subject to any limits of liability that apply, all shares will be equal until the loss is paid. If any insurance or self-insurance is exhausted, the shares of all remaining insurance and self-insurance will be equal until the loss is paid.

## G. Limits of Liability

Our liability to pay for damages is limited. Our limits of liability are shown in Item 3.B. of the Information Page. They apply as explained below.

1. Bodily Injury by Accident. The limit shown for "bodily injury by accident each accident" is the most we will pay for all damages covered by this insurance because of bodily injury to one or more employees in any one accident.

   A disease is not bodily injury by accident unless it results directly from bodily injury by accident.

2. Bodily Injury by Disease. The limit shown for "bodily injury by disease policy limit" is the most we will pay for all damages covered by this insurance and arising out of bodily injury by disease, regardless of the number of employees who sustain bodily injury by disease. The limit shown for "bodily injury by disease each employee" is the most we will pay for all damages because of bodily injury by disease to any one employee.

   Bodily injury by disease does not include disease that results directly from a bodily injury by accident.

000047

3. We will not pay any claims for damages after we have paid the applicable limit of our liability under this insurance.

## H. Recovery From Others

We have your rights to recover our payment from anyone liable for an injury covered by this insurance. You will do everything necessary to protect those rights for us and to help us enforce them.

## I. Actions Against Us

There will be no right of action against us under this insurance unless:

1. You have complied with all the terms of this policy; and

2. The amount you owe has been determined with our consent or by actual trial and final judgment.

This insurance does not give anyone the right to add us as a defendant in an action against you to determine your liability.

The bankruptcy or insolvency of you or your estate will not relieve us of our obligations under this Part.

# PART THREE – OTHER STATES INSURANCE

## A. How This Insurance Applies

1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.

2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.

3. We will reimburse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.

4. If you have work on the effective date of this policy in any state not listed in Item 3.A of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.

## B. Notice

Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.

# PART FOUR – YOUR DUTIES IF INJURY OCCURS

Tell us at once if injury occurs that may be covered by this policy. Your other duties are listed here.

1. Provide for immediate medical and other services required by the workers compensation law.

2. Give us or our agent the names and addresses of the injured persons and of witnesses, and other information we may need.

3. Promptly give us all notices, demands and legal papers related to the injury, claim, proceeding or suit.

4. Cooperate with us and assist us, as we may request, in the investigation, settlement or defense of any claim, proceeding or suit.

5. Do nothing after an injury occurs that would interfere with our right to recover from others.

6. Do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

# PART FIVE – PREMIUM

## A. Our Manuals

All premium for this policy will be determined by our manuals of rules, rates, rating plans and classifications. We may change our manuals and apply the changes to this policy if authorized by law or a governmental agency regulating this insurance.

## B. Classifications

Item 4 of the Information Page shows the rate and premium basis for certain business or work classifications. These classifications were assigned based on an estimate of the exposures you would have during the policy period. If your actual exposures are not properly described by those classifications, we will assign proper classifications, rates and premium basis by endorsement to this policy.

## C. Remuneration

Premium for each work classification is determined by multiplying a rate times a premium basis. Remuneration is the most common premium basis. This premium basis includes payroll and all other remuneration paid or payable during the policy period for the services of:

1. all your officers and employees engaged in work covered by this policy; and

2. all other persons engaged in work that could make us liable under Part One (Workers Compensation Insurance) of this policy. If you do not have payroll records for these persons, the contract price for their services and materials may be used as the premium basis. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured their workers compensation obligations.

### D. Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers compensation law is not valid.

### E. Final Premium

The premium shown on the Information Page, schedules, and endorsements is an estimate. The final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy. If the final premium is more than the premium you paid to us, you must pay us the balance. If it is less, we will refund the balance to you. The final premium will not be less than the highest minimum premium for the classifications covered by this policy.

If this policy is cancelled, final premium will be determined in the following way unless our manuals provide otherwise:

1. If we cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

2. If you cancel, final premium will be more than pro rata; it will be based on the time this policy was in force, and increased by our short rate cancellation table and procedure. Final premium will not be less than the minimum premium.

### F. Records

You will keep records of information needed to compute premium. You will provide us with copies of those records when we ask for them.

### G. Audit

You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audits during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

# PART SIX – CONDITIONS

### A. Inspection

We have the right, but are not obliged to inspect your workplaces at any time. Our inspections are not safety inspections. They relate only to the insurability of the workplaces and the premiums to be charged. We may give you reports on the conditions we find. We may also recommend changes. While they may help reduce losses, we do not undertake to perform the duty of any person to provide for the health or safety of your employees or the public. We do not warrant that your workplaces are safe or healthful or that they comply with laws, regulations, codes or standards. Insurance rate service organizations have the same rights we have under this provision.

### B. Long Term Policy

If the policy period is longer than one year and sixteen days, all provisions of this policy will apply as though a new policy were issued on each annual anniversary that this policy is in force.

### C. Transfer of Your Rights and Duties

Your rights or duties under this policy may not be transferred without our written consent.

If you die and we receive notice within thirty days after your death, we will cover your legal representative as insured.

### D. Cancellation

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We must mail or deliver to you not less than ten days advance written notice stating when the cancellation is to take effect. Mailing that notice to you at your mailing address shown in Item 1 of the Information Page will be sufficient to prove notice.

3. The policy period will end on the day and hour stated in the cancellation notice.

4. Any of these provisions that conflicts with a law that controls the cancellation of the insurance in this policy is changed by this statement to comply with the law.

### E. Sole Representative

The insured first named in Item 1 of the Information Page will act on behalf of all insureds to change this policy, receive return premium, and give or receive notice of cancellation.

000049



**TexasMutual**
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 00 03 01**

## ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| CF JORDAN | 77 CF JORDAN DR<br>EL PASO, TX 79912 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                              at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

AGENT'S COPY                     MEFOLKER          8-15-2011

000050



# TexasMutual Insurance Company

## WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

**WC 00 03 01**

### ALTERNATE EMPLOYER ENDORSEMENT

This endorsement applies only with respect to bodily injury to your employees while in the course of special or temporary employment by the alternate employer in the state named in the Schedule. Part One (Workers Compensation Insurance) and Part Two (Employers Liability Insurance) will apply as though the alternate employer is insured.

Under Part One (Workers Compensation Insurance) we will reimburse the alternate employer for the benefits required by the workers compensation law if we are not permitted to pay the benefits directly to the persons entitled to them.

The insurance afforded by this endorsement is not intended to satisfy the alternate employer's duty to secure its obligations under the workers compensation law. We will not file evidence of this insurance on behalf of the alternate employer with any government agency.

We will not ask any other insurer of the alternate employer to share with us a loss covered by this endorsement.

Premium will be charged for your employees while in the course of special or temporary employment by the alternate employer.

The policy may be canceled according to its terms without sending notice to the alternate employer.

Part Four (Your Duties If Injury Occurs) applies to you and the alternate employer. The alternate employer will recognize our right to defend under Parts One and Two and our right to inspect under Part Six.

### Schedule

| Alternate Employer | Address | State of Special or Temporary Employment |
|---|---|---|
| KCG INC REW MATERIALS | VARIOUS LOCATIONS IN TEXAS ANY, TX 99999 | TEXAS |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000301 (ED. 1-94)

AGENT'S COPY      MEFOLKER    8-15-2011

000051



**TexasMutual** Insurance Company

## PREMIUM DISCOUNT ENDORSEMENT

The premium for this policy and the policies, if any, listed in Item 3 of the Schedule may be eligible for a discount. This endorsement shows your estimated discount in Item 1 or 2 of the Schedule. The final calculation of premium discount will be determined by our manuals and your premium basis as determined by audit. Premium subject to retrospective rating is not subject to premium discount.

Schedule

Estimated Eligible Premium

| | | First $5,000 | Next $95,000 | Next $400,000 | Balance |
|---|---|---|---|---|---|
| 1. | State | | | | |
| | TEXAS | 0.00 | 8.40 | 10.50 | 11.00 |

2. Average percentage discount        7.30

3. Other Policies:

4. If there are no entries in Items 1, 2, and 3 of the Schedule see the Premium Discount Endorsement attached to your policy number:

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_
**Authorized Representative**

WC000406 (ED. 1-94)

 
## TEXAS AMENDATORY ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

### GENERAL SECTION

B.   **Who Is Insured** is amended to read:

You are insured if you are an employer named in Item 1 of the Information Page. If that employer is a partnership or joint venture, and if you are one of its partners or members, you are insured, but only in your capacity as an employer of the partnership's or joint venture's employees.

D.   **State** is amended to read:

State means any state or territory of the United States of America, and the District of Columbia.

### PART ONE - WORKERS' COMPENSATION INSURANCE

E.   **Other Insurance** is amended by adding this sentence:

This section only applies if you have other insurance or are self-insured for the same loss.

F.   **Payments You Must Make**

This section is amended by deleting the words "workers' compensation" from number 4.

H.   **Statutory Provisions**

This section is amended by deleting the words "after an injury occurs" from number 2.

### PART TWO - EMPLOYERS LIABILITY INSURANCE

C.   **Exclusions**

Sections 2 and 3 are amended to add:

This exclusion does not apply unless the violation of law caused or contributed to the bodily injury.

Section 6 is amended to read:

6.   Bodily injury occurring outside the United States of America, its territories or possessions, and Canada. This exclusion does not apply to bodily injury to a citizen or resident of the United States of America, Mexico or Canada who is temporarily outside these countries.

D.   **We Will Defend**

This section is amended by deleting the last sentence.

000053

## PART FOUR - YOUR DUTIES IF INJURY OCCURS

Number 6 of this part is amended to read:

6. Texas law allows you to make weekly payments to an injured employee in certain instances. Unless authorized by law, do not voluntarily make payments, assume obligations or incur expenses, except at your own cost.

## PART FIVE - PREMIUM

A. **Our Manuals** are amended by adding the sentence:

In this part, "our manuals" means manuals approved or prescribed by the State Board of Insurance.

C. **Remuneration**

Number 2 is amended to read:

2. All other persons engaged in work that would make us liable under Part One (Workers' Compensation Insurance) of this policy. This paragraph 2 will not apply if you give us proof that the employers of these persons lawfully secured workers' compensation insurance.

E. **Final Premium**

Number 2 is amended to read:

2. If you cancel, final premium will be calculated pro rata based on the time this policy was in force. Final premium will not be less than the pro rata share of the minimum premium.

## PART SIX - CONDITIONS

A. **Inspection** is amended by adding this sentence:

Your failure to comply with the safety recommendations made as a result of an inspection may cause the policy to be canceled by us.

C. **Transfer of Your Rights and Duties** is amended to read:

Your rights and duties under this policy may not be transferred without our written consent. If you die, coverage will be provided for your surviving spouse or your legal representative. This applies only with respect to their acting in the capacity as an employer and only for the workplaces listed in Items 1 and 4 on the Information Page.

D. **Cancellation** is amended to read:

1. You may cancel this policy. You must mail or deliver advance notice to us stating when the cancellation is to take effect.

2. We may cancel this policy. We may also decline to renew it. We must give you written notice of cancellation or nonrenewal. That notice will be sent certified mail or delivered to you in person. A copy of the written notice will be sent to the Texas Workers' Compensation Commission.

3. Notice of cancellation or nonrenewal must be sent to you not later than the 30th day before the date on which the cancellation or nonrenewal become effective, except that we may send the notice not later than the 10th day before the date on which the cancellation or nonrenewal becomes effective if we cancel or do not renew, because of:

   a. Fraud in obtaining coverage;

   b. Misrepresentation of the amount of payroll for purposes of premium calculation;

   c. Failure to pay a premium when payment was due;

000054

d. An increase in the hazard for which you seek coverage that results from an action or omission and that would produce an increase in the rate, including an increase because of failure to comply with reasonable recommendations for loss control or to comply within a reasonable period with recommendations designed to reduce a hazard that is under your control;

e. A determination by the Commissioner of Insurance that the continuation of the policy would place us in violation of the law, or would be hazardous to the interests of subscribers, creditors, or the general public.

4. If another insurance company notifies the Texas Workers' Compensation Commission that it is insuring you as an employer, such notice shall be a cancellation of this policy effective when the other policy starts.

Part Seven has been added as follows:

## PART SEVEN - OUR DUTY TO YOU FOR CLAIM NOTIFICATION

### A. Claims Notification

We are required to notify you of any claim that is filed against your policy. Thereafter we shall notify you of any proposal to settle a claim or, on receipt of a written request from you, of an administrative or judicial proceeding relating to the resolution of a claim, including a benefit review conference conducted by the Texas Workers' Compensation Commission. You may, in writing, elect to waive this notification requirement.

We shall, on the written request from you, provide you with a list of claims charged against your policy, payments made and reserves established on each claim, and a statement explaining the effect of claims on your premium rates. We must furnish the requested information to you in writing no later than the 30th day after the date we receive your request. The information is considered to be provided on the date the information is received by the United States Postal Service or is personally delivered.

**COMPLAINT NOTICE:** SHOULD ANY DISPUTE ARISE ABOUT YOUR PREMIUM OR ABOUT A CLAIM THAT YOU HAVE FILED, CONTACT THE AGENT OR WRITE TO THE COMPANY THAT ISSUED THE POLICY. IF THE PROBLEM IS NOT RESOLVED, YOU MAY ALSO WRITE THE TEXAS DEPARTMENT OF INSURANCE, P.O. BOX 149091, AUSTIN, TEXAS 78714-9091, FAX # (512) 475-1771. THIS NOTICE OF COMPLAINT PROCEDURE IS FOR INFORMATION ONLY AND DOES NOT BECOME A PART OR CONDITION OF THIS POLICY.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                    at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL                                    Endorsement No.
Premium $

_Ron Wright_

WC 42 03 01 F (1 – 01 – 2000)                    Page 3 of 3                    **Authorized Representative**

AGENT'S COPY                    MEFOLKER    8-15-2011                    000055



## PARTNERS, OFFICERS AND OTHERS EXCLUSION ENDORSEMENT

The policy does not cover bodily injury to any person described in the Schedule.

The premium basis for the policy does not include the remuneration of such persons.

You will reimburse us for any payment we must make because of bodily injury to such persons.

Schedule

LUIS TREVINO, PRESIDENT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on

at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL
Premium $

Endorsement No.

_Ron Wright_

Authorized Representative

WC420308 (ED. 1-97)

AGENT'S COPY          MEFOLKER     8-15-2011

000056



**TexasMutual**® Insurance Company

TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

**WC 42 04 03 A**

## TEXAS EXPERIENCE RATING MODIFIER ENDORSEMENT

The premium for the policy will be adjusted by an experience rating modifier, if any, which was not available when the policy was issued. We will issue an endorsement to show the proper factor when it is calculated.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                                    at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to  PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL                                        Endorsement No.

Premium $

_Ron Wright_
**Authorized Representative**

WC420403A (ED. 3-97)

AGENT'S COPY                    MEFOLKER        8-15-2011

000057

 TEXAS WORKERS' COMPENSATION AND
EMPLOYERS LIABILITY POLICY

WC 42 04 07

## TEXAS – AUDIT PREMIUM AND
## RETROSPECTIVE PREMIUM ENDORSEMENT

Section D of Part Five of the policy is replaced by the following provision:

## PART FIVE - PREMIUM

D.    Premium Payments

You will pay all premium when due. You will pay the premium even if part or all of a workers' compensation law is not valid. The billing statement or invoice for audit additional premiums and/or retrospective additional premiums establishes the date that the premium is due.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on

at 12:01 A.M. standard time, forms a part of

Policy No. STA-0001204473 20110904 of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Endorsement No.

Premium $

*Ron Wright*

Authorized Representative

WC420407 (Ed. 3-23-2002)

AGENT'S COPY      MEFOLKER   8-15-2011

000058



# TexasMutual
### Insurance Company

TEXAS WORKERS' COMPENSA▁ON AND
EMPLOYERS LIABILITY POLICY

**WC42 04 08**

## TEXAS HEALTH CARE NETWORK ENDORSEMENT

This endorsement indicates that you have elected under this policy to provide workers' compensation health care services to your injured employees through a certified workers' compensation health care network that we have either established or contracted with, as provided in Chapter 1305 of the Texas Insurance Code and in Title 28, Chapter 10 of the Texas Administrative Code.

We will provide you with information concerning the use of our certified workers' compensation health care network(s) in our service area(s) and your rights and responsibilities as a participant in our network program. This includes information describing the service area(s) applicable to you and your injured employees as required in Rule VI K. of the *Texas Basic Manual of Rules, Classifications and Experience Rating Plan for Workers' Compensation and Employers' Liability Insurance*. In accordance with Chapter 1305 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code, we will also provide you with information that is required to be given to your employees, including an employee's notice of network requirements and an employee acknowledgement form.

Your premium may have been reduced because you have agreed to participate in our certified workers' compensation health care network. The amount of the premium reduction is shown on the Information Page of this policy. The reduction is estimated at the policy inception and adjusted at final audit of the policy. The reduction may be pro-rated if you elect to participate in a certified workers' compensation health care network during the policy year or if you terminate your participation in our certified workers' compensation health care network before the policy expires. The premium reduction you received may be forfeited if we determine that you have failed to provide the notice of network requirements and employee acknowledgement form to your employees in accordance with Chapter 1305.005(d) and 1305.451 Texas Insurance Code and Title 28, Chapter 10 of the Texas Administrative Code.

Minimum premium policies are not eligible for this premium reduction.

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on _____ at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA: DBA:  IWORKS PERSONNEL

Premium:        $_____

Endorsement No.

*Ron Wright*

_____
Authorized Representative

TM-MEDNET-2005A

AGENT'S COPY          MEFOLKER    8-15-2011

000059

 **TexasMutual**
Insurance Company

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 42 03 04 A**

## TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule, but this waiver applies only with respect to bodily injury arising out of the operations described in the Schedule where you are required by a written contract to obtain this waiver from us.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

The premium for this endorsement is shown in the Schedule.

Schedule

1. (   )   Specific Waiver
            Name of person or organization


   ( X )   Blanket Waiver
            Any person or organization for whom the Named Insured has agreed by written contract to furnish this waiver.


2. Operations:   ALL TEXAS OPERATIONS


3. Premium

   The premium charge for this endorsement shall be ___2.00___ percent of the premium developed on payroll in connection with work performed for the above person(s) or organization(s) arising out of the operations described.


4. Advance Premium        INCLUDED, SEE INFORMATION PAGE.


This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on

at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904   of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC
DBA:  IWORKS PERSONNEL                           Endorsement No.
Premium $

_Ron Wright_
_____
                                                 **Authorized Representative**

WC420304A (ED. 1-01-2000)

AGENT: Please forward the Insured's copy
to them immediately.

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

MEFOLKER



TexasMutual®
Insurance Company

# IMPORTANT REMINDER

Please use the following address for all deposits/annual premium payments, endorsements, final audits and financed premium.

**Texas Mutual Insurance Company**
**P.O. Box 841843**
**Dallas, TX 75284-1843**

Please take time now to enter this information into your records.

NOTE: This address pertains ONLY to remittance payments and is not for use for other general correspondence to the Texas Mutual Insurance Company .

NOTE: This address is not to be used for overnight mail. These should be sent to our physical location. We would like to request all payments be sent in a timely manner so the above address may be utilized.

IMPREM (ED. 11-15-04)

000062



**6210 E Highway 290**
Austin, Texas 78723-1098
(512) 224-3800
1-800-859-5995

**P.O. Box 12058**
Austin, Texas 78711-2058
(512) 224-3800
1-800-859-5995

August 15, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

Re:   PREFERRED STAFFING COMPANY LLC
STA-0001204473 20110904

Thank you for placing this account with Texas Mutual Insurance Company.  For your records we are enclosing:

- The policyholder's original copy of the policy

- Claims reporting information and forms

- Your agency copy of the policy

We offer many online services for agents and policyholders at **texasmutual.com**.  Our website allows you to submit applications online, manage your accounts with us, view your clients' claim information, create customized loss reports, and stay up-to-date with *Texas Mutual®* news and events.

As the state's leading provider of workers' compensation insurance, we strive to set the standard in Texas for service, communication, and ease of doing business.  If you have any questions, please email us at **underwriting@texasmutual.com**, or call us at 1-800-859-5995.

Underwriting Department

COVAGENT – 05/12/04

000063



6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
(FAX) 1-512-224-2866

RECEIVED JUL 11 2011
P.O. Box 12058
Austin, Texas 78711-2058
1-800-859-5995
(FAX) 1-800-359-0650

July 6, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

Re: PREFERRED STAFFING COMPANY LLC
    0001204473

    Q003021474

Dear Agent:

This letter is a reminder that the policy referenced above will expire on   9/04/2011. Your business is very important to us, and we look forward to continuing our relationship. So that we may complete our review of this account for the renewal term, please provide us with the following information:

*    Description of any changes in the operations or exposures of the risk.

*    Total projected payrolls and number of employees for the coming year by class code.

*    If there are any changes to locations or employee count, complete the Supplemental Employee Data Worksheet for all locations covered by this policy.  This form can be found at www.texasmutual.com.

*    Currently valued loss runs (other than the Texas Mutual Insurance Company loss runs) for any of the past four years which had open claims at the time we last reviewed the account.

*    If applicable, provide current financial information for deductible options.

We would appreciate receiving this information promptly. If you have any questions, please contact us via the Information Services Center at 1-800-859-5995 .

Thank you,


RUDY ALBA
Underwriting Department


EXPLTRAGT (ED. 12/06)

000064

**TexasMutual**
Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098
(512) 224-3800
(FAX) 1-512-224-2866

RECEIVED JUL 11 2011

P.O. Box 12058
Austin, Texas 78711-2058
1-800-859-5995
(FAX) 1-800-359-0650

July 6, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

<u>VIA CERTIFIED MAIL</u>
7011 0470 0000 1038 9720

Re:      Policy No.    0001204473

Policy Period:    9/04/2010  to   9/04/2011

Quote No.    Q003021474

Dear Policyholder:

As the state's leading provider of workers' compensation insurance, we strive to set the standard in Texas for service, communication, and ease of doing business. It has been our privilege to provide your workers' compensation insurance coverage during the past year.

**Expiration Notification**
Your existing policy with us will end on 9/04/2011 . We are required by law to give you this notice. Texas Mutual Insurance Company values your business and looks forward to issuing you a renewal policy. We have also notified your insurance agent that the insurance coverage is ending and we will be working with them to obtain the necessary information to offer a quote for your renewal. It is important that you assist your agent by providing the information for Texas Mutual Insurance Company to offer a quote for new coverage. Your failure to provide information and pay the renewal premium before your current policy ends will cause a lapse in coverage.

**Loss History**
The Texas Department of Insurance requires us to provide your loss history for the past 12 months. A loss history report will be provided to you under separate cover.

You may verify your loss history by logging on to www.texasmutual.com and clicking "Loss Run and Claim Detail", or by contacting us at 1-800-859-5995.

Thank you again for giving us the opportunity to serve as your workers' compensation company. We look forward to continuing our business relationship. In the meantime, if you have any questions, please contact your agent or call us at 1-800-859-5995.

Sincerely,

RUDY ALBA

Underwriting Department

cc:  PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

\**
\**
\**

EXPIRE-LTR (ED. 12-01-09)

000065



# TexasMutual
## Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098

# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

RECEIVED SEP 2 1 2010

## INFORMATION PAGE

**ITEM 1**

**INSURED NAME AND ADDRESS**

PREFERRED STAFFING COMPANY
PO BOX 10011
SAN ANTONIO, TX 78210-0011

**PRODUCER**
**18220**

OTHER WORKPLACES NOT SHOWN ABOVE:
see attached schedule of operation.
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

ENTERED

COMM.

CL. & TRAN.

| POLICY NUMBER | |
|---|---|
| STA-0001204473 20100904 | |
| Federal Tax ID | 76-0797747 |
| Bureau Number | 421023034 |
| Branch | AUSTIN |
| Renewal of | 0001204473 |
| Entity | LIMITED LIABILI |
| Interim Adjustment | QUARTERLY - 33% |
| Group | |

**ITEM 2**    The Policy Period is from:   9-04-2010   To:   9-04-2011   12:01 A.M. standard time at the insured's mailing address

**ITEM 3**

A.  Workers' Compensation Insurance: Part One of the policy applies to the Workers' Compensation Law of the states listed here: TEXAS

B.  Employers Liability Insurance: Part Two of the policy applies to work in each state listed in item 3A.
The Limits of our Liability under Part Two are:

| | | | |
|---|---|---|---|
| Bodily Injury by Accident | $ | 500,000 | Each Accident |
| Bodily Injury by Disease | $ | 500,000 | Each Employee |
| Bodily Injury by Disease | $ | 500,000 | Policy Limit |

C.  Other States Insurance:  Part Three of the policy applies to the states, if any, listed here: NONE

D.  This policy includes these endorsements and schedules:

See Schedule of Endorsements attached

**ITEM 4**

The premium for this policy will be determined by our manuals of Rules, Classifications, Rates and Rating Plans.
All information required below is subject to verification and change by audit.

TOTAL ESTIMATED STANDARD PREMIUM                    :$        8,262.00

| | | |
|---|---|---|
| WAIVER OF SUBROGATION | : | 165.00 |
| INCREASED EMPLOYERS LIABILITY LIMITS | : | 84.00 |
| TOTAL PREMIUM SUBJECT TO MODIFICATIONS | : | 8,511.00 |
| PREMIUM MODIFIED TO REFLECT EXPERIENCE MOD OF ( 1.40 ) | : | 3,404.00 |
| PREMIUM MODIFIED TO REFLECT SCHEDULE RATING OF ( 1.70 ) | : | 8,341.00 |
| WORKERS' COMP HEALTH CARE NETWORK DISCOUNT ( .12 ) | : | 2,431.00- |
| DEDUCTIBLE PREMIUM | : | .00 |
| ADMIRALTY/FELA OR L & H W | : | .00 |
| PREMIUM DISCOUNT, IF APPLICABLE ( 6.00 ) | : | 1,070.00- |
| EXPENSE CONSTANT CHARGE | : | 150.00 |

TOTAL ESTIMATED ANNUAL PREMIUM                    :$       16,905.00

MINIMUM PREMIUM        250.00

DEPOSIT PREMIUM       5,579.00

Countersigned by    _Ron Wright_

Issue Date:    9-15-2010

The Texas Mutual Insurance Company is required by law to provide its policyholders with certain accident prevention services as required by Texas Labor Code, §411.066, at no additional charge and return-to-work coordination services as required by Texas Labor Code §413.021. If you would like more information, call Texas Mutual Insurance Company's loss control division at 1-800-859-5995 for accident prevention services or 1-800-859-5995 for return-to-work coordination services. If you have any questions about this requirement, call the Division of Workers' Health and Safety, Texas Department of Insurance, Division of Workers' Compensation at 1-800-687-7080.

WC000001 (ED. 08-07)

000066



EXTENSION OF INFORMATION PAGE

PAGE     2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY<br>PO BOX 10011<br>SAN ANTONIO, TX 78210-0011 | STA-0001204473 20100904<br><br>ISSUE DATE<br>9-15-2010 |

ITEM 4          ** SCHEDULE OF OPERATIONS **
                    LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS:<br>TOTAL ESTIMATED<br>ANNUAL<br>REMUNERATION | RATE PER<br>$100 OF<br>REMUNERATION | ESTIMATED<br>ANNUAL<br>PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 00001 | 2003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 12,830.00 | 12.89 | 1,654.00 |
| 42 | 00001 | 8810 | CLERICAL OFFICE EMPLOYEES NOC | 280,919.00 | .51 | 1,433.00 |
| 42 | 00001 | 9014 | AIR CONDITIONING DUCT CLEANING SERVICE | 26,496.00 | 9.29 | 2,461.00 |
| 42 | 00001 | 8803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 47,314.00 | .30 | 142.00 |
| 42 | 00001 | 8833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 62,215.00 | 2.22 | 1,381.00 |
| 42 | 00001 | 8006 | GROCERY STORE-RETAIL | 11,281.00 | 8.13 | 917.00 |
| 42 | 00001 | 8803 | AUDITOR, ACCOUNTANT, OR FACTORY COST OR OFFICE SYSTEMATIZER-TRAVELING | 91,182.00 | .30 | 274.00 |
| 42 | 00001 | 2881 | WOODENWARE MFG NOC & DRIVERS | IF ANY | 9.60 | |

Subj to Experience Mod of  1.40

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                        at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20100904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY

Premium $

Endorsement No.

_Ron Wright_
Authorized Representative

WC000001 (ED. 1-94)

AGENT'S COPY          LMFAVORS     9-15-2010

000067



PAGE     3                    EXTENSION OF INFORMATION PAGE

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY
PO BOX 10011
SAN ANTONIO, TX 78210-0011

POLICY NUMBER

STA-0001204473 20100904

ISSUE DATE

9-15-2010

ITEM 4         ** SCHEDULE OF OPERATIONS **
                  LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|----|-----|--------|----------------|---------------------------------------------------|-------------------------------|--------------------------|
| | | | Total Estimated Standard Premium | | | 8,262.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on

at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20100904     of the Texas Mutual Insurance Company

Issued to     PREFERRED STAFFING COMPANY

Endorsement No.

Premium $

*Ron Wright*

WC000001 (ED. 1-94)                    **Authorized Representative**

AGENT'S COPY                    LMFAVORS        9-15-2010

000068



# WORKERS' COMPENSATION AND EMPLOYERS LIABILITY INSURANCE POLICY

## SCHEDULE OF OPERATIONS - STATE

PAGE 4  EXTENSION OF INFORMATION PAGE  RECEIVED SEP 2 1 2010

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY
PO BOX 10011
SAN ANTONIO, TX 78210-0011

POLICY NUMBER
STA-0001204473 20100904

ISSUE DATE
9-15-2010

ITEM 4   ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|----|--------|-------------|------|---------------------|
| 42 | 9807 | INCREASED LIMITS 500/500/500 | .01 | 84.00 |
| 42 | 0063 | PREMIUM DISCOUNT | .06 | 1,070.00- |
| 42 | 9898 | EXPERIENCE MOD | 1.40 | 3,404.00 |
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 165.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.70 | 8,341.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 2,431.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 8,643.00 |
| | | Total Estimated Annual Premium | | 16,905.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on                                              at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20100904    of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY

Premium $

Endorsement No.

*Ron Wright*

Authorized Representative

WC000001 (ED. 1-94)          AGENT'S COPY          LMFAVORS    9-15-2010

000069



# TexasMutual
### Insurance Company

**INVOICE**
AGENT'S COPY

TEXAS MUTUAL INSURANCE COMPANY
CORPORATE HEADQUARTERS
AUSTIN, TEXAS  1-800-859-5995
www.texasmutual.com

INVOICE DATE  11/02/2011
INVOICE NUMBER  20187636
POLICY NUMBER  0001204473
PAGE  01 OF 01

| POLICYHOLDER NAME AND ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | LETTE INS AGCY<br>145 BOCA CHICA BLVD<br>BROWNSVILLE, TX 78520 |

| TRANS DATE | ORIGINAL INVOICE NUMBER | ORIGINAL AMOUNT DUE | TRANSACTION DESCRIPTION | OPEN AMOUNT DUE | DUE DATE |
|---|---|---|---|---|---|
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2011 | | | | | |
| 10/03/2011 | 20187636 | 115.00 | AMEND EMPLOYERS LIAB. LIMITS | 115.00 | 10/18/2011 |
| | | | POLICY YEAR TOTAL | $115.00 | |
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2010 | | | | | |
| 11/01/2011 | 20187636 | 18,644.00 | FINAL AUDIT: INCOMPLETE/NON-COMPLIANT - UNABLE TO AUDIT | 1.00 | 11/16/2011 |
| | | | POLICY YEAR TOTAL | $1.00 | |
| | | | AMOUNT DUE ON ACCOUNT | $116.00 | |

Payments not received by their due dates may result in cancellation of your current coverage.

..................................................................................................................................................................

Detach and return this portion with your payment.  Please make checks payable to Texas Mutual Insurance Company at the address below.
**Payments not received by their due dates may result in cancellation of your current coverage.**

TEXAS MUTUAL INSURANCE COMPANY
P.O. BOX 841843
DALLAS, TX 75284-1843
1-800-859-5995

INVOICE DATE  11/02/2011
INVOICE NUMBER  20187636
POLICY NUMBER  0001204473

AMOUNT DUE ON ACCOUNT        $116.00

AMOUNT ENCLOSED: _____

**Please write your policy number on your check for prompt handling.**
**THANK YOU FOR YOUR BUSINESS!**

BRSINVC

000070


**Insurance Company**

WORKERS' COMPENSATION AND EMPLOYERS
LIABILITY INSURANCE POLICY

**WC 99 03 01**

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

Added WC420601 (Texas Material Change Endorsement) in favor
of:
HARDIN CONSTRUCTION LLC

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    November 1, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.  STA-0001204473  20110904      of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL                                  Endorsement No.        2

Premium $          0.00

_Ron Wright_

Authorized Representative

WC990301 (ED. 1-94)

AGENT'S COPY            GXRANGEL   11-07-2011

000071



EXTENSION OF INFORMATION PAGE
PAGE        2

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D          **   ENDORSEMENT SCHEDULE   **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | TM-LRC-2008 | LIMITED REIMBURSEMENT COVERAGE | 1-01-2008 |
| 42 | PC-2003 | POLICY CONDITIONS ENDORSEMENT | 3-25-2003 |
| 42 | TM-MV-2001 | MUTUAL ENDORSEMENT FORM | 8-20-2001 |
| 42 | TM-TRIPRA-2008 | TERRORISM RISK INSURANCE PROG | 1-01-2008 |
| 42 | TM-TPE-2008 | TERRORISM PREMIUM ENDORSEMENT | 1-01-2008 |
| 42 | WC00 00 00B | WORKERS COMPENSATION AND EMPLO | 7-01-2011 |
| 42 | WC00 00 01A | WORKERS COMP/EMPLOYERS LIAB | |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 03 01 | ALTERNATE EMPLOYER | 1-01-1994 |
| 42 | WC00 04 06 | PREMIUM DISCOUNT | 1-01-1994 |
| 42 | WC42 03 01F | TEXAS AMENDATORY | 1-01-2000 |
| 42 | WC42 03 08 | PARTNERS/OFFICERS/OTHERS EXCL | 1-01-1997 |
| 42 | WC42 04 03A | TEXAS EXPERIENCE MODIFICATION | 3-01-1997 |
| 42 | WC42 04 07 | AUDIT PREMIUM ENDORSEMENT | 3-23-2002 |
| 42 | WC42 04 08 | NETWORK DISCOUNT | 1-02-2003 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on       **November 1, 2011**            at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $          0.00

Endorsement No.     2

*Ron Wright*

**Authorized Representative**

WC000001A (ED. 7-11)            AGENT'S COPY            GXRANGEL      11-07-2011

000072


EXTENSION OF INFORMATION PAGE
    PAGE    3

NAME AND ADDRESS OF INSURED

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

POLICY NUMBER
STA-0001204473 20110904

ISSUE DATE
11-07-2011

ITEM 3D            **  ENDORSEMENT SCHEDULE  **

| STATE | NUMBER | DESCRIPTION | EDITION DATE |
|-------|--------|-------------|--------------|
| 42 | WC42 06 01 | TX NOTICE OF MATERIA SPEC | 1-01-1994 |
| 42 | WC42 03 04A | TX WAIVER OF RIGHT TO RECOVER | 1-01-2000 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on    **November 1, 2011**            at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473 20110904     of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC
             DBA: IWORKS PERSONNEL

Premium $            0.00

Endorsement No.     2

*Ron Wright*

Authorized Representative

WC000001A (ED. 7-11)          AGENT'S COPY          GXRANGEL     11-07-2011

000073



## TEXAS NOTICE OF MATERIAL CHANGE ENDORSEMENT

This endorsement applies only to the insurance provided by the policy because Texas is shown in Item 3.A. of the Information Page.

In the event of cancellation or other material change of the policy, we will mail advance notice to the person or organization named in the Schedule. The number of days advance notice is shown in the Schedule.

This endorsement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

Schedule

1. Number of days advance notice:       30

2. Notice will be mailed to:

        HARDIN CONSTRUCTION LLC
        3301 WINDY RIDGE PARKWAY SUITE 400
        ATLANTA, GA 30339

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on       November 1, 2011       at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904  of the Texas Mutual Insurance Company

Issued to   PREFERRED STAFFING COMPANY LLC

DBA:  IWORKS PERSONNEL

Premium $       0.00

Endorsement No.       2

Authorized Representative

WC420601 (ED. 1-94)

AGENT'S COPY       GXRANGEL   11-07-2011

000074



RECEIVED NOV 04 2011
**Premium Audit Department**
6210 E Highway 290
Austin, Texas 78723-1098
1-800-859-5995
(FAX) 1-512-224-3011

November 02, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Re:  PREFERRED STAFFING COMPANY LLC

Dear Agent,

Enclosed please find a copy of an Incomplete Final Audit Notification being sent to your insured.

Your assistance in helping the insured become compliant with Final Audit Procedures is appreciated.
If you have any questions regarding this matter, please call the Texas Mutual Insurance Company
at 1-800-859-5995.

Thank you in advance for your help.

Premium Audit Department

Fanpagt (05/01/09)

000075



RECEIVED NOV 04 /011

**Premium Audit Department**
6210 E Highway 290
Austin, Texas 78723-1098
1-800-859-5995
(FAX) 1-512-224-3011

November 02, 2011

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Re: PREFERRED STAFFING COMPANY LLC
STA-0001204473 20100904
09-04-2010 - 09-04-2011

### INCOMPLETE FINAL AUDIT NOTIFICATION

Texas Mutual Insurance Company has been unable to complete the final audit of your policy due to our inability to schedule an audit appointment or obtain requested audit information and/or financial documents. As a result, your final audit has been processed incomplete and your current coverage is scheduled to cancel soon.

To prevent cancellation of your current coverage, please contact the Premium Audit Department promptly, Texas Mutual Insurance Company, will not consider issuing coverage for your business, until the audit has been completed.

We hope to be able to resolve this issue as we value you as a customer. Please contact the Premium Audit Department on our toll free number: 1-800-859-5995

Regards,

Premium Audit Department

cc: LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

Fanpremd (05/12/04)

AGENT'S COPY

000076


### Texas Mutual® Insurance Company

| Policy Number | STA-0001204473 20100904 | 00000 | Policy Period | From 9-04-2010 | To 9-04-2011 |
|---|---|---|---|---|---|

**Statement Date** 11-02-2011

**INSURED NAME AND ADDRESS**
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

**PRODUCER NAME AND ADDRESS**
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|---|
| 00001 | | | | | | |
| | | | 9-04-2010 To 11-05-2010 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 9,228 | 12.89 | 1,189.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 1,510 | 9.60 | 145.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.13 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 7,061 | 8.13 | 574.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 31,819 | 0.30 | 95.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 24,864 | 0.30 | 75.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 34,910 | 0.51 | 178.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 5,312 | 2.22 | 118.00 |
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 6,651 | 9.29 | 618.00 |
| | | | Period Total | 121,355 | | 2,992.00 |
| | | | | | | |
| | | | 11-05-2010 To 12-31-2010 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 8,335 | 12.89 | 1,074.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 1,364 | 9.60 | 131.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.13 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 6,378 | 8.13 | 519.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 28,740 | 0.30 | 86.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 22,458 | 0.30 | 67.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 31,532 | 0.51 | 161.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,798 | 2.22 | 107.00 |
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 6,007 | 9.29 | 558.00 |
| | | | Period Total | 109,612 | | 2,703.00 |
| | | | | | | |
| | | | 12-31-2010 To 9-04-2011 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 36,762 | 12.89 | 4,739.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 6,015 | 9.60 | 577.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.13 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 28,131 | 8.13 | 2,287.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 126,764 | 0.30 | 380.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 99,054 | 0.30 | 297.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 139,078 | 0.51 | 709.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 21,161 | 2.22 | 470.00 |
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 26,496 | 9.29 | 2,461.00 |
| | | | Period Total | 483,461 | | 11,920.00 |
| | | | | | | |
| | | | Location Total | 714,428 | | 17,615.00 |

9-04-2010 To 11-05-2010





# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-000120447320100904 | 00000 | Policy Period | From 9-04-2010 | To 9-04-2011 |
|---|---|---|---|---|---|

| Statement Date | 11-02-2011 |
|---|---|

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|---|
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 60.00 |
| | 9807 | 001 | 500/500/500 INCREASED LIMITS | | 0.010 | 31.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 40.00%) | 1.400 | 1,233.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.700 | 3,021.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 880.00- |
| | | | 11-05-2010 To 12-31-2010 | | | |
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 54.00 |
| | 9812 | 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 55.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 40.00%) | 1.400 | 1,125.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.700 | 2,756.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 803.00- |
| | | | 12-31-2010 To 9-04-2011 | | | |
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 238.00 |
| | 9812 | 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 243.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 40.00%) | 1.400 | 4,961.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.700 | 12,153.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 3,542.00- |
| | | | 9-04-2010 To 9-04-2011 | | | |
| | 0063 | 001 | PREMIUM DISCOUNT | | 0.073 | 2,797.00- |
| | 0900 | 001 | EXPENSE CONSTANT | | 0.000 | 150.00 |

Total Earned Premium                                        35,673.00

Previously Billed            35,672.00

Cash Collected                                              35,672.00-

Additional Premium                                              1.00

FINAL AUDIT: INCOMPLETE/NON-
COMPLIANT - UNABLE TO AUDIT


### TexasMutual
#### Insurance Company

6210 E Highway 290     Austin, Texas 78723-1098
1-800-859-5995

Provider name and address:

    LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

Insured name and address:

    PREFERRED STAFFING COMPANY LLC
    IWORKS PERSONNEL
    PO BOX 100111
    SAN ANTONIO, TX 78201-1411

| TYPE OF POLICY: |
| --- |
| **Workers' Compensation and Employers Liability Coverage** |

| POLICY NUMBER: |
| --- |
| 0001204473 |

| POLICY PERIOD: | |
| --- | --- |
| 9-04-2011 | 9-04-2012 |
| | to |

| DATE OF NOTICE: |
| --- |
| 1-05-2012 |

| REINSTATEMENT WILL TAKE EFFECT AT: | |
| --- | --- |
| **2-06-2012** | **12:01 A.M.** |
| (DATE) | (HOUR-STANDARD TIME) |

---

**REINSTATEMENT**

Please disregard the Notice of Cancellation previously sent to you. Your policy has been reinstated on the date and time shown above.

---

AGENT FAX: 956 542 8757
UCSEOD                              **AGENT'S COPY**

\*\*
   \*\*
\*\*

PANOREIN (ED. 6/11)

000079



TexasMutual® Insurance Company

6210 E Highway 290
Austin, Texas 78723-1098
(FAX) 1-800-359-0650
1-800-859-5995

P.O. Box 12058
Austin, Texas 78711-2058
(FAX) 1-800-359-0650
1-800-859-5995

January 5, 2012

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

RE: STA-0001204473 20110904

# IMPORTANT NOTICE

Dear Policyholder:

Thank you for your recent premium payment. We have reinstated your workers' compensation insurance policy with no lapse in coverage. Your coverage had been cancelled because we had not received your premium payment by the required due date.

To avoid a lapse in coverage in the future, please be sure to send your premium payments on time. Remember, we must *receive* your payment by the due date and postmark dates do not count as the date received.

We reserve the right to cancel a policyholder's coverage at any time for late payment, without reinstating it under the policy's original terms.

Thank you for your cooperation in this matter.

CC: PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Strike1-121202            AGENT'S COPY

000080



**TexasMutual**®
Insurance Company

6210 E Highway 290          Austin, Texas 78723-1098
1-800-859-5995

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

# NOTICE OF CANCELLATION

<u>VIA CERTIFIED MAIL</u>
7011 1570 0000 3106 1779

| TYPE OF POLICY: |
|---|
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
|---|
| 0001204473 |

| POLICY PERIOD: | |
|---|---|
| 9-04-2011  to  9-04-2012 | |

| DATE OF NOTICE: |
|---|
| 12-30-2011 |

| CANCELLATION WILL TAKE EFFECT AT: | |
|---|---|
| 2-06-2012 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**REASON FOR CANCELLATION**
INTERIM AUDIT NON-REPORTING/NON-PAYMENT

**CANCELLATION TERMS**
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 956 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

000081

## Facsimile Transmission



**Underwriting Services**
**PO Box 12058**
**Austin, TX 78711-2058**

**Phone:** (800) 859-5995
**Fax:**    (800) 359-0650
**Email:** underwriting@texasmutual.com

**Date:**  December 31, 2011

**To:**    LETTE INS AGCY          **RE:**    0001204473
**ATTN:** ESTELA RODRIGUEZ                 PREFERRED STAFFING COMPANY LLC

**Fax Number(s):**
9565428757

**Comments:**

**From:**  Texas Mutual Insurance Company
          (800) 859-5995

Pages: 2   including this cover

000082



**REMINDER NOTICE**

March 20, 2012

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

RE:   PREFERRED STAFFING COMPANY LLC
STA-0001204473
Effective  9-04-2011  to  9-04-2012

Dear Policyholder:

As of the date of this letter, our records indicate that your Interim Payroll Report and/or payment have not been received in our office for the audit period of 12-01-2011 to 2-29-2012. Please disregard this notice if you have already submitted your Interim Payroll Report and payment. We thank you for your prompt response.

If you have not had the opportunity to submit the aforementioned report, it is required, along with your payment in our office immediately in order to avoid cancellation of your workers' compensation insurance policy.

Should you have any questions regarding your account, please contact our office at 1-800-859-5995 .

Sincerely,

Premium Audit Department

cc:   PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX  78201-1411

**PROVIDER COPY**

IAREMINDER

000083



**TexasMutual®**
Insurance Company

**REMINDER NOTICE**

December 20, 2011

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX  78520

RE:    PREFERRED STAFFING COMPANY LLC
       STA-0001204473
       Effective  9-04-2011  to  9-04-2012

Dear Policyholder:

As of the date of this letter, our records indicate that your Interim Payroll Report and/or payment have not been received in our office for the audit period of  9-04-2011 to 11-30-2011.  Please  disregard  this  notice  if  you have already submitted your Interim Payroll Report and payment.  We thank you for your prompt response.

If you have not had the opportunity to submit the aforementioned report, it is required, along with your payment in our office immediately in order to avoid cancellation of your workers' compensation insurance policy.

Should you have any questions regarding your account, please contact our office at 1-800-859-5995 .

Sincerely,

Premium Audit Department

cc:    PREFERRED STAFFING COMPANY LLC
       DBA: IWORKS PERSONNEL
       PO BOX 100111
       SAN ANTONIO, TX  78201-1411

**PROVIDER COPY**

IAREMINDER

000084

 **TexasMutual®**
Insurance Company

6210 E Highway 290      Austin, Texas 78723-1098
1-800-859-5995

# REINSTATEMENT NOTICE

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| TYPE OF POLICY: |
|---|
| **Workers' Compensation and Employers Liability Coverage** |
| POLICY NUMBER: |
| 0001204473 |

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

| POLICY PERIOD: | |
|---|---|
| 9-04-2011 | 9-04-2012 |
| | to |

| DATE OF NOTICE: |
|---|
| 11-30-2011 |

| REINSTATEMENT WILL TAKE EFFECT AT: | |
|---|---|
| 12-20-2011 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

---

## REINSTATEMENT

Please disregard the Notice of Cancellation previously sent to you. Your policy has been reinstated on the date and time shown above.

---

AGENT FAX: 956 542 8757
UCSEOD

**AGENT'S COPY**

\*\*
\*\*
\*\*

PANOREIN (ED. 6/11)

000085

## Facsimile Transmission



# TexasMutual®
### Insurance Company

**Underwriting Services**
PO Box 12058
Austin, TX 78711-2058

Ph:     (800) 859-5995
Fax:    (800) 359-0650
Email: underwriting@texasmutual.com

Date:   November 9, 2011

To:     LETTE INS AGCY
ATTN: ESTELA RODRIGUEZ
Fax:    956 542-8757

RE:     0001204473
        PREFERRED STAFFING COMPANY LLC

Comments:

**Enclosed is your copy of the experience modifier calculation for the above-named policyholder.**

_**Please do not reply back to this notice.**_
To send a secure message to TMI, please email underwriting@texasmutual.com or send a fax to 1-800-359-0650.

From:

Pages (including this cover sheet):   5

000086

From:      estela@letteinsuranceagency.com
SendTo:    <underwriting@texasmutual.com>
Subject:   PREFERRED STAFFING STA0001204473

Good Afternoon this is Melissa, Estela is out of the office and I was wondering if you were able to help me get some information for the customer. They are requesting the experience modification anniversary date and a current final experience rating worksheet. If you could please help me locate these I would greatly appreciate it.

Estela Rodriguez

Insurance Service Rep.

Lette Insurance Agency

145 Boca Chica Blvd Ste-B

Brownsville TX78520

956-541-7252 Phone

956-542-8757 Fax

000087

# WORKERS COMPENSATION EXPERIENCE RATING

**Risk Name:** PREFERRED STAFFING LLC

**Risk ID:** 421023034

**Rating Effective Date:** 09/04/2011     **Production Date:** 04/05/2011     **State:** TEXAS

| State | Wt | SRP | Exp Excess Losses | Expected Losses | Exp Prim Losses | Act Exc Losses | Ballast | Act Inc Losses | Act Prim Losses |
|-------|----|-----|-------------------|-----------------|-----------------|----------------|---------|----------------|-----------------|
| TX | .08 | 0 | 5,273 | 7,010 | 1,737 | 132,131 | 7,500 | 168,758 | 36,627 |

| (A) Wt | (B) | (C) Exp Excess Losses (D - E) | (D) Expected Losses | (E) Exp Prim Losses | (F) Act Exc Losses (H - I) | (G) Ballast | (H) Act Inc Losses | (I) Act Prim Losses |
|--------|-----|-------------------------------|---------------------|---------------------|----------------------------|-------------|--------------------|--------------------|
| .08 | | 5,273 | 7,010 | 1,737 | 132,131 | 7,500 | 168,758 | 36,627 |

| | Primary Losses | Stabilizing Value | Ratable Excess | Totals |
|----------|----------------|-------------------|----------------|--------|
| Actual | (I) 36,627 | C * (1 - A) + G  12,351 | (A) * (F)  10,570 | (J) 59,548 |
| Expected | (E) 1,737 | C * (1 - A) + G  12,351 | (A) * (C)  422 | (K) 14,510 |

| | ARAP | FLARAP | SARAP | MAARAP | Exp Mod |
|---------|------|--------|-------|--------|---------|
| Factors | | | | | (J) / (K)  1.30 |

MODIFIER MAY BE CAPPED IF TOTAL EXPECTED LOSSES ARE $15,000 OR LESS

**Carrier:** 29939 - 000   **Policy:** 0001204473       **Eff-Date:** 09/04/2010   **Exp-Date:** 09/04/2011

Copyright 1993-2011, All rights reserved. This experience modification factor is comprised of compilations and information which are the proprietary and exclusive property of the National Council on Compensation Insurance, Inc. (NCCI). No further use, dissemination, sale, transfer, assignment or disposition of this experience rating modification factor or any part thereof may be used without the written consent of NCCI. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever including but not limited to the accuracy of any information, product or service furnished hereunder and, as to NCCI, recipient of this experience rating modification factor subscribes to and utilizes the information service "as is".

# WORKERS COMPENSATION EXPERIENCE RATING

Risk Name: PREFERRED STAFFING LLC

Risk ID: 421023034

Rating Effective Date: 09/04/2011    Production Date: 04/05/2011    State: TEXAS

---

**42-TEXAS**    Firm ID:    Firm Name: PREFERRED STAFFING LLC

Carrier: 29939    Policy No. 0001183688    Eff Date: 09/13/2007    Exp Date: 09/13/2008

| Code | ELR | D-Ratio | Payroll | Expected Losses | Exp Prim Losses | Claim Data | IJ | OF | Act Inc Losses | Act Prim Losses |
|------|-----|---------|---------|-----------------|-----------------|------------|----|----|----------------|-----------------|
| 2003 | 1.82 | .24 | 2,106 | 40 | 10 | 99J0630742 | 4 | F | 10,899 | 5,000 |
| 3681 | .52 | .25 | 5,645 | 29 | 7 | 99H0514950 | 4 | F | 27,501 | 5,000 |
| 4279 | 1.28 | .26 | 12,134 | 155 | 40 | 99J0639931 | 4 | F | 43,009 | 5,000 |
| 4283 | .95 | .25 | 13,723 | 130 | 33 | 99H0511370 | 5 | F | 2,760 | 2,760 |
| 5535 | 1.30 | .25 | 28,326 | 368 | 92 | 99J0519116 | 5 | F | 18,661 | 5,000 |
| 5538 | 3.16 | .24 | 5,129 | 162 | 39 | 99H0513836 | 5 | F | 34,280 | 5,000 |
| 5551 | 4.06 | .24 | 5,016 | 203 | 49 | NO. 3 | 6 | * | 1,216 | 1,216 |
| 8008 | .64 | .25 | 18,900 | 121 | 30 | | | | | |
| 8803 | .04 | .23 | 225,537 | 90 | 21 | | | | | |
| 8810 | .07 | .24 | 345,667 | 242 | 58 | | | | | |
| 9014 | 1.40 | .25 | 84,038 | 1,177 | 294 | | | | | |
| 9079 | .68 | .25 | 10,727 | 73 | 18 | | | | | |
| 9080 | .54 | .25 | 55,341 | 299 | 75 | | | | | |
| Policy Total: | | | 812,288 | Subject Premium: | 25,111 | Total Act Inc Losses: | | | 138,326 | |

---

**42-TEXAS**    Firm ID:    Firm Name: PREFERRED STAFFING LLC

Carrier: 29939    Policy No. 0001195658    Eff Date: 10/23/2008    Exp Date: 07/05/2009

| Code | ELR | D-Ratio | Payroll | Expected Losses | Exp Prim Losses | Claim Data | IJ | OF | Act Inc Losses | Act Prim Losses |
|------|-----|---------|---------|-----------------|-----------------|------------|----|----|----------------|-----------------|
| 1701 | 2.15 | .23 | 4,856 | 104 | 24 | 99K0569725 | 4 | F | 27,781 | 5,000 |
| 3681 | .52 | .25 | 9,760 | 51 | 13 | 99K0557583 | 5 | F | 2,061 | 2,061 |
| 8008 | .64 | .25 | 2,040 | 13 | 3 | | | | | |
| 8810 | .07 | .24 | 158,113 | 111 | 27 | | | | | |
| 9014 | 1.40 | .25 | 123,868 | 1,734 | 434 | | | | | |
| 9080 | .54 | .25 | 43,153 | 233 | 58 | | | | | |
| Policy Total: | | | 341,790 | Subject Premium: | 16,292 | Total Act Inc Losses: | | | 29,842 | |

Copyright 1993-2011. All rights reserved. This experience modification factor is comprised of compilations and information which are the proprietary and exclusive property of the National Council on Compensation Insurance, Inc. (NCCI). No further use, dissemination, sale, transfer, assignment or disposition of this experience rating modification factor or any part thereof may be used without the written consent of NCCI. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever including but not limited to the accuracy of any information, product or service furnished hereunder and, as to NCCI, recipient of this experience rating modification factor subscribes to and utilizes the information service "as is".

* Total by Policy Year of all cases $2000 or less    D Disease Loss    X Ex-Medical Coverage    U USL&HW
C Catastrophic Loss    E Employers Liability Loss    # Limited Loss

000089

# WORKERS COMPENSATION EXPERIENCE RATING

**NCCI** Risk Name: PREFERRED STAFFING LLC

Risk ID: 421023034

Rating Effective Date: 09/04/2011     Production Date: 04/05/2011     State: TEXAS

42-TEXAS     Firm ID:     Firm Name: PREFERRED STAFFING LLC

Carrier: 29939     Policy No. 0001204473     Eff Date: 09/04/2009     Exp Date: 09/04/2010

| Code | ELR | D-Ratio | Payroll | Expected Losses | Exp Prim Losses | Claim Data | IJ | OF | Act Inc Losses | Act Prim Losses |
|------|-----|---------|---------|-----------------|-----------------|------------|-----|-----|----------------|-----------------|
| 2003 | 1.82 | .24 | 1,898 | 36 | 9 | 99L0604422 | 6 | E | 690 | 690 |
| 2003 | 1.92 | .24 | 7,593 | 146 | 35 | | | | | |
| 2881 | 1.31 | .25 | 3,226 | 42 | 11 | | | | | |
| 5190 | 1.29 | .23 | 680 | 9 | 2 | | | | | |
| 5190 | 1.29 | .23 | 2,720 | 35 | 8 | | | | | |
| 5220 | 1.43 | .25 | 5,250 | 75 | 19 | | | | | |
| 5220 | 1.43 | .25 | 21,000 | 300 | 75 | | | | | |
| 8033 | 1.10 | .25 | 2,711 | 30 | 8 | | | | | |
| 8033 | 1.10 | .25 | 10,844 | 119 | 30 | | | | | |
| 8810 | .07 | .24 | 97,141 | 68 | 16 | | | | | |
| 8810 | .07 | .24 | 388,565 | 272 | 65 | | | | | |
| 8833 | .32 | .24 | 10,824 | 35 | 8 | | | | | |
| 8833 | .32 | .24 | 43,298 | 139 | 33 | | | | | |
| 9014 | 1.40 | .25 | 5,274 | 74 | 19 | | | | | |
| 9014 | 1.40 | .25 | 21,096 | 295 | 74 | | | | | |

| Policy Total: | 622,120 | Subject Premium: | 11,624 | Total Act Inc Losses: | 690 |
|---|---|---|---|---|---|

Copyright 1993-2011. All rights reserved. This experience modification factor is comprised of compilations and information which are the proprietary and exclusive property of the National Council on Compensation Insurance, Inc. (NCCI). No further use, dissemination, sale, transfer, assignment or disposition of this experience rating modification factor or any part thereof may be used without the written consent of NCCI. NCCI makes no representation or warranty, expressed or implied, as to any matter whatsoever including but not limited to the accuracy of any information, product or service furnished hereunder and, as to NCCI, recipient of this experience rating modification factor subscribes to and utilizes the information service "as is".

\* Total by Policy Year of all cases $2000 or less     D Disease Loss     X Ex-Medical Coverage     U USL&HW

C Catastrophic Loss     E Employers Liability Loss     # Limited Loss

000090



**TexasMutual®**
Insurance Company

6210 East Highway 290
Austin, TX 78723-1098
(800) 859-5995
FAX (800) 359-0650

## AGENT'S REQUEST FOR ENDORSEMENT

Name of Insured: Preferred Staffing LLC   Policy Number: STA-0001204473

Name of Agency: Lette Insurance Agency   Policy Term From: 9/4/11   To: 9/4/12

Contact: Estela Rodriguez   Effective Date of Change: _____

Telephone: 956-541-7752   Time: _____

Address: 145 Boca Chica Blvd, Brownsville TX 78520

Agent Signature: _Maude S. Lette_   Date: 10/25/11

**Please check any endorsements that need to be added, deleted, or changed for the above policy, and briefly describe the specifics of the change.**

☐ Amend Experience Modifier (Please include latest experience modifier worksheet.) _____

☐ Amend Employer's Limits of Liability _____

☐ Amend Payroll and/or Class Codes _____

☑ Add a Blanket or Specific Waiver of Subrogation (If specific, provide class code & payroll.) _____
Waiver of Subrogation + ADDITIONAL Insured
30 day NOC for Harding Construction Company LLC

☐ Request a Notice of Material Change _____

☐ Amend or add a Named Insured (Include WC-RFI) _____

☐ Add, change, or delete a location (Please provide complete physical address, number of employees, and any applicable payroll for location additions.) _____

☐ Request a LHW, OCS or Maritime Endorsement (Please provide supplemental application(s).) _____

☐ Other Endorsements _____

Return this application to:   **Texas Mutual Insurance Company**
6210 East Highway 290
Austin, TX 78723-1098
(800) 859-5995

64000-006-0108-PC   rev. 09/08

The Insurance is Primary & Non-Contributory, Per Project
Harding Construction Company LLC, Worldwide USA-San Antonio, LP
& owner + owners Representatives is NAMED As ADDItioNAL
Insured or Agency's of the ADDItional Insured or ANY
parties Negligence Job:640409 JOB NAME: EILAN Podium
Unit 1 & Central Plant

000091

## estela rodriguez

**From:** estela rodriguez [estela@letteinsuranceagency.com]

**Sent:** Monday, October 24, 2011 5:24 PM

**To:** 'Rudy Alba'

**Subject:** IWORKS PERSSONEL & PREFERRED STAFFING STA-0001204473

Please endorse policy to add Hardin Construction Company LLC as additional insured with a 30 day Notice

Harding Construction Company LLC, Wereldhave USA-SAN ANTONIO,LP (OWNER0 & OWNERS REPRESENTAIVE IS NAMED AS ADDITIONAL INSURED OR AGENCYS OF THE ADDITIONAL INSURED OR ANY OTHER PARTY'S NEGLIGENCE
JOB: 640409 JOB NAME EILAN PODIUMS, HOTEL & CENTRAL PLANT
THIS INSURANCE IS PRIMARY & NON-CONTRIBUTORY, PER PROJECT.

Estela Rodriguez
Insurance Service Rep.
Lette Insurance Agency
145 Boca Chica Blvd Ste-B
Brownsville TX 78520
956-541-7252 Phone
956-542-8757 Fax

No virus found in this message.
Checked by AVG - www.avg.com
Version: 2012.0.1831 / Virus Database: 2092/4571 - Release Date: 10/24/11

10/25/2011

000092



# TexasMutual
### Insurance Company

RECEIVED OCT 07 2011

WC 99 03 01

## GENERAL CHANGE ENDORSEMENT

The policy to which this endorsement is attached is amended as shown below:

The Employers Liability Limits are amended to:
$1,000,000 each accident
$1,000,000 each employee
$1,000,000 policy limits

This endorsement reflects a net annual premium change of , :        347.00

### THIS POLICY IS SUBJECT TO FINAL AUDIT

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        September 4, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.   STA-0001204473  20110904        of the Texas Mutual Insurance Company

Issued to    PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $        115.00

Endorsement No.        1

Authorized Representative

WC990301 (ED. 1-94)

AGENT'S COPY        GXRANGEL    10-03-2011

000093



EXTENSION OF INFORMATION PAGE

PAGE        2

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br><br>10-03-2011 |

ITEM 4        ** SCHEDULE OF OPERATIONS **
LOCATION INFORMATION

| ST | LOC | CODE # | CLASSIFICATION | PREMIUM BASIS: TOTAL ESTIMATED ANNUAL REMUNERATION | RATE PER $100 OF REMUNERATION | ESTIMATED ANNUAL PREMIUM |
|---|---|---|---|---|---|---|
| 42 | 000 | 012003 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 26,230.00 | 12.71 | 3,334.00 |
| 42 | 000 | 015403 | CARPENTRY NOC & DRIVERS | 7,779.00 | 14.52 | 1,130.00 |
| 42 | 000 | 015506 | STREET OR ROAD CONSTRUCTION-ALL OPERATIONS & DRIVERS | IF ANY | 14.87 | |
| 42 | 000 | 018810 | CLERICAL OFFICE EMPLOYEES NOC | 277,833.00 | .44 | 1,222.00 |
| 42 | 000 | 019014 | AIR CONDITIONING DUCT CLEANING SERVICE | 52,930.00 | 8.96 | 4,743.00 |
| 42 | 000 | 018044 | STORE: FURNITURE: ALL OTHER EMPLOYEES & DRIVERS | 4,326.00 | 13.04 | 564.00 |
| 42 | 000 | 018803 | OFFICE OR FACTORY COST SYSTEMATIZER, ACCOUNTANT OR AUDITOR-TRAVELING | 253,232.00 | .27 | 684.00 |
| 42 | 000 | 018833 | HOSPITAL: PROFESSIONAL EMPLOYEES | 42,272.00 | 2.01 | 850.00 |
| 42 | 000 | 018006 | GROCERY STORE-RETAIL | 56,196.00 | 7.61 | 4,277.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.

(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on        September 4, 2011        at 12:01 A.M. standard time, forms a part of

Policy No.     STA-0001204473 20110904        of the Texas Mutual Insurance Company

Issued to        PREFERRED STAFFING COMPANY LLC

DBA: IWORKS PERSONNEL

Premium $                115.00

Endorsement No.        1

Ron Wright

**Authorized Representative**

WC000001A (ED. 7-11)



EXTENSION OF INFORMATION PAGE

PAGE      4

| NAME AND ADDRESS OF INSURED | POLICY NUMBER |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>DBA: IWORKS PERSONNEL<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | STA-0001204473 20110904<br><br>ISSUE DATE<br>10-03-2011 |

ITEM 4      ** SCHEDULE OF OPERATIONS **
STATE INFORMATION

| ST | CODE # | DESCRIPTION | RATE | PREMIUM ADJUSTMENTS |
|---|---|---|---|---|
| 42 | 0930 | WAIVER OF SUBROGATION | .02 | 367.00 |
| 42 | 9812 | INCREASED LIMITS 1000/1000/1000 | .02 | 374.00 |
| 42 | 9898 | EXPERIENCE MOD | 1.30 | 5,723.00 |
| 42 | 9889 | SCHEDULE RATING MODIFICATION | 1.75 | 18,599.00 |
| 42 | 9874 | HEALTH CARE NETWORK DISCOUNT | .12 | 5,208.00- |
| 42 | 0063 | PREMIUM DISCOUNT | .07 | 2,788.00- |
| 42 | 0900 | EXPENSE CONSTANT | | 150.00 |
| | | Total Premium Adjustments | | 17,217.00 |
| | | Total Estimated Annual Premium | | 35,552.00 |

This endorsement changes the policy to which it is attached effective on the inception date of the policy unless a different date is indicated below.
(The following "attaching clause" need be completed only when this endorsement is issued subsequent to preparation of the policy.)

This endorsement, effective on      September 4, 2011      at 12:01 A.M. standard time, forms a part of

Policy No.    STA-0001204473 20110904      of the Texas Mutual Insurance Company

Issued to      PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL                                Endorsement No.      1
Premium $            115.00

_Ron Wright_
Authorized Representative



TEXAS MUTUAL INSURANCE COMPANY
CORPORATE HEADQUARTERS
AUSTIN, TEXAS  1-800-859-5995
www.texasmutual.com

INVOICE DATE 10/03/2011
INVOICE NUMBER 20182739
POLICY NUMBER 0001204473
PAGE  01 OF 01

| POLICYHOLDER NAME AND ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| PREFERRED STAFFING COMPANY LLC<br>PO BOX 100111<br>SAN ANTONIO, TX 78201-1411 | LETTE INS AGCY<br>145 BOCA CHICA BLVD<br>BROWNSVILLE, TX 78520 |

| TRANS DATE | ORIGINAL INVOICE NUMBER | ORIGINAL AMOUNT DUE | TRANSACTION DESCRIPTION | OPEN AMOUNT DUE | DUE DATE |
|---|---|---|---|---|---|
| POLICY-EFFECTIVE DATE: 0001204473-09/04/2011 | | | | | |
| 10/03/2011 | 20182739 | 115.00 | AMEND EMPLOYERS LIAB. LIMITS | 115.00 | 10/18/2011 |
| | | | POLICY YEAR TOTAL | $115.00 | |
| | | | AMOUNT DUE ON ACCOUNT | $115.00 | |

Payments not received by their due dates may result in cancellation of your current coverage.

......................................................................................................................................................

Detach and return this portion with your payment.  Please make checks payable to Texas Mutual Insurance Company at the address below.
Payments not received by their due dates may result in cancellation of your current coverage.

TEXAS MUTUAL INSURANCE COMPANY
P.O. BOX 841843
DALLAS, TX 75284-1843
1-800-859-5995

INVOICE DATE  10/03/2011
INVOICE NUMBER  20182739
POLICY NUMBER  0001204473

AMOUNT DUE ON ACCOUNT  $115.00

AMOUNT ENCLOSED: _____

Please write your policy number on your check for prompt handling.
THANK YOU FOR YOUR BUSINESS!

3RSINVC

000096



LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

REF: STA-0001204473
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
User ID:

      GXRANGEL

ENDTCOPY (11-15-2004)

000097

**estela rodriguez**

**From:** estela rodriguez [estela@letteinsuranceagency.com]

**Sent:** Wednesday, August 31, 2011 10:47 AM

**To:** 'Rudy Alba'

**Subject:** PREFERRED STAFFING STA-0001204473-20110904

AMENDING LIABILITY LIMITS TO READ $1,000,000 IN LIEU OF $500,000

Thanks

Estela Rodriguez
Insurance Service Rep.
Lette Insurance Agency
145 Boca Chica Blvd Ste-B
Brownsville TX 78520
956-541-7252 Phone
956-542-8757 Fax

No virus found in this message.
Checked by AVG - www.avg.com
Version: 10.0.1392 / Virus Database: 1520/3868 - Release Date: 08/30/11

10/25/2011

000098

TAB 18

# EXHIBIT
# C

## Waste Management National Services, Inc.
## Master Agreement with
## iWorks Personnel

This Master Agreement ("Agreement") is entered into on the 22nd day of September, 2010, between Waste Management National Services, Inc., a Delaware Corporation with offices at 1001 Fannin Street, Houston Texas 77002; and iWorks Personnel, a Texas corporation with offices at 6921 Long Point Houston TX, 77055("Contractor").

1. **Attachments:** The attachments marked below are made part of this agreement and are incorporated herein by reference (collectively the "Agreement)

    a. **Exhibit "A" Rate and Mark-Up**

    b. **Exhibit "B" Drug & Background Screening Terms**

    c. **Exhibit "C" Temporary Service Worker Security/Confidentiality Agreement**

    d. **Exhibit "D" Supplier Diversity Program**

2. **Scope and Term:** Pursuant to the terms of this Agreement, Contractor will provide services as requested from time to time to various entities related to and affiliated with Waste Management National Services, Inc., including subsidiaries of Waste Management, Inc. (collectively "Waste Management"). This Agreement will remain in effect for an initial term expiring <u>December 31, 2010</u>. Thereafter, this Agreement shall automatically be renewed for successive renewal terms of one (1) year each unless terminated (i) pursuant to Section 11hereof; or (ii) by either party upon written notice to the other part at least ninety (90) days prior to the expiration of the initial term or any renewal term (the "Term"). The rates provided in Exhibit "A" shall remain in force for each renewal term unless Contractor notifies Waste Management in writing of its intent to modify its rate, in which case Contractor and Waste Management will promptly engage in negotiations for revisions to Exhibit "A". This Agreement does not guarantee any work to Contractor, nor is it a commitment to be a sole or exclusive supplier or customer by either party.

    **Contractor Responsibilities:** Contractor is in the business of supplying trained and qualified temporary labor ("Personnel") or ("Worker") to perform work as requested by Waste Management. Contractor is solely responsible for performing all hiring, firing, discipline, training and other responsibilities necessary to discharge its legal obligations as the employer of the Personnel supplied to Waste Management. Contractor and Personnel shall be independent contractors in respect of Waste Management, and shall not be employees of Waste Management. Contractor is solely responsible for all payments whatsoever required to be made to or in respect of its Personnel, including,

WMRA 000022

without limitation, all wages, salaries and benefits (including health insurance and/or medical payments), all federal, state and local payroll taxes, and all Workers' Compensation insurance coverage and payments.

4. **Invoicing, Payment, & Rates:** Contractor shall be reimbursed by Waste Management's third party administrator, Staff Management ("Third Party Administrator"), at the rates set forth in Exhibit "A" and under the provisions set forth in the Staff Management Supplier Statement of Work (SSOW) on a weekly basis.

    a. <u>Rates Paid.</u>
        i. <u>Base Pay.</u> Personnel will be paid an hourly wage by Contractor for all "regular hours" worked in any work week (the payment period begins and ends Sundays at 7:00 a.m.). Personnel will be paid at the rate determined in Exhibit "A". "Regular hours" is defined according to State law. In the state of Texas, for example, "regular hours" are those hours worked up to and including forty (40) hours in workweek. Hours worked in Texas in excess of 40 are considered overtime hours and subject to section 4.a.iii below.
        ii. <u>Billing Rate.</u> The Third Party Administrator will pay for the provision of Personnel at an hourly rate as set forth in Exhibit "A".
        iii. <u>Overtime.</u> Contractor will pay Personnel 1.5 times the Base Pay rate for all overtime hours worked in any workweek as required by State law. All overtime billing shall be in accordance with local and state laws.
        iv. Personnel shall only be entitled to the compensation specified in Paragraphs 4.a.i thru 4.a.iii and shall not be eligible for or due any benefit or privilege which is enjoyed by an employee of Waste Management including, but not limited to, employee life and health insurance, pension and savings plans, vacation or holiday pay. Further, Personnel shall not accrue or earn any benefit service credit under any Waste Management retirement or savings plan as a result of the services performed hereunder.

    b. <u>Third Party Administrator Compensation:</u>
        i. In consideration of Third Party Administrators' administrative services in relation to this Agreement, Contractor authorizes Third Party Administrator to deduct fees in the amount of four percent (4%) of Contractor's total billings excluding Contractor's expenses.

5. **Training:** Contractor is obligated to ensure that Personnel supplied to Waste Management are fully qualified and trained for the jobs they are being supplied to perform and that they have been given safety training that meets or exceeds the training Waste Management provides to its employees for the same or similar jobs. Contractor acknowledges and agrees that it is fully familiar with the minimum level of training required by this Agreement as communicated to Contractor by Company's Third Party Administrator. Contractor is required to document completion of all workers training and have each worker's signed acknowledgement that training has been completed. All training documents, certifications, and materials are subject to audit by Waste Management or its Third Party Administrator upon request.

WMRA 000023

TAB 19

the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

18.     Please fully identify and explain in detail any agreements or contracts for insurance ever existing between your company and **iWorks.** As part of this answer, explain the following: when such contracts began; the details of intended and actual coverage; the details of intended and actual exclusions; what specific entities were covered, if any; what specific employees were covered, if any; what specific workers compensation class codes were covered, if any; what specific job sites or locations were covered, if any; what specific activities were covered, if any; whether the identification of specific entities, employees, workers compensation class codes, job sites and locations, and/or activities were required for contracting/coverage; the amount or policy limits of such coverage, if any; and when such contracts or policies ended, expired, or were terminated, if ever. Please attach additional sheets of paper for your answer, if necessary.

Answer:   Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows:   Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012.   The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318).  Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

19.     ADMIT or DENY that PREFERRED STAFFING COMPANY, L.L.C. ((d/b/a "iWORKS PERSONNEL") (hereinafter "Preferred Staffing"); P.O. Box 100111, San Antonio, TX 78201-1411) is a distinct legal entity to your knowledge. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer.

Answer:   Texas Mutual cannot admit or deny the above because Texas Mutual does not know what is meant by a "distinct legal entity."   Furthermore, Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows:   Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012.   The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318).  Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

20.     ADMIT or DENY that iWORKS PERSONNEL, INC. ((hereinafter "iWorks"); P.O. Box 100111, San Antonio, TX 78201-1411 or 3609 West Ave, San Antonio, TX 78213) is a distinct legal entity to

6

foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

27.     ADMIT or DENY that Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer; explain how the contract was cancelled; and the effect of cancelation regarding coverage for Preferred Staffing or iWorks to your knowledge. Please attach additional sheets of paper for your answer, if necessary.

Answer:  Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

28.     ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, **Preferred Staffing** was a **"nonsubscriber,"** under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer:  Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

29.     ADMIT or DENY that *IF* Policy Number: STA-0001204473 20110904 was cancelled prior to August 5, 2012, **iWorks was a "nonsubscriber,"** under Texas law to your knowledge and definition of "nonsubscriber," assuming no other workers compensation policy existed for Preferred Staffing or iWorks from date of cancelation through August 6, 2012. First, please state your answer as "ADMIT", "DENY", or "Cannot ADMIT or DENY." Second, if your answer is "ADMIT", "DENY", or "Cannot ADMIT or DENY", please explain your answer. Please attach additional sheets of paper for your answer, if necessary.

Answer:  Admit. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the

10

Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

30. Please fully explain in detail and describe your company's roles, responsibilities, duties, and obligations as it pertains to the contracts or agreements for Workers' Compensation insurance, if any, with Preferred Staffing or iWorks. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

31. Has your company fulfilled all of the aforementioned roles, responsibilities, duties, and obligations as it pertains to the contracts with Preferred Staffing or iWorks mentioned above? If "NO," please explain? Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows: Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012. The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318). Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

32. Explain and describe your company's usual or standard practice with respect to workers' compensation insurance policies issued by you to temporary common worker employers. As part of this answer, describe your usual or standard practice with respect to your roles, responsibilities, duties, obligations, extent of coverage, and exclusions from coverage as it pertains to your contract(s) with temporary common worker employers. Please attach additional sheets of paper for your answer, if necessary.

Answer: Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response. Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

41.    Have you answered all of the Questions herein fully, completely, truthfully, and based on all available information and DOCUMENTS? If not, why not? Please attach additional sheets of paper for your answer, if necessary.

Answer:   Texas Mutual Insurance Company objects to the foregoing question as overbroad, harassing, vague and ambiguous, and also to the extent that it requires redefinition in order to formulate an appropriate response.  Texas Mutual further objects to the extent that the answers to this question are in the documents produced in response hereto.

Subject to the foregoing objections and without waiving same, Texas Mutual Insurance Company responds as follows:   Texas Mutual insurance policy no. STA-0001244473 20110904 ("The Policy") was issued to Preferred Staffing Company, LLC, d/b/a iWorks Personnel ("Preferred Staffing") for the coverage period 09/04/2011 to 09/04/2012.   The Policy was cancelled, effective 07/16/2012 (See Notice of Cancellation, document Bates No. TXM00318).  Texas Mutual Insurance Company's actions regarding issuance of The Policy and subsequent cancellation were conducted pursuant to and in accordance with the Rules set by the Texas Department of Insurance Division of Workers' Compensation and the Texas Workers' Compensation Act.

_____
Witness (Custodian of Records)


I, Albert Santini, a Notary Public in the State of Texas do hereby certify that the foregoing answers of the witness were made by the said witness and sworn to and subscribed before me.  The records attached hereto are exact duplicates of the original records.

SWORN AND SUBSCRIBED BEFORE ME on this the 31ˢᵗ day of October, 2013 to certify which witness my hand and seal of office.

_____
Notary Public in and for the State of Texas

ALBERT SANTINI
Notary Public, State of Texas
My Commission Expires
January 28, 2017

16



**TexasMutual®**
Insurance Company

6210 E Highway 290          Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Provider name and address:

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

| TYPE OF POLICY |
| Workers' Compensation and Employers Liability Coverage |
| POLICY NUMBER |
| 0001204473 |

| POLICY PERIOD | |
| 9-04-2011 to | 9-04-2012 |
| DATE OF NOTICE | |
| 6-11-2012 | |

| CANCELLATION WILL TAKE EFFECT AT: | |
| 7-16-2012 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

**REASON FOR CANCELLATION**
NON-COMPLIANCE - PREMIUM AUDIT

**CANCELLATION TERMS**
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 956 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

TXM00318

000318



# TexasMutual®
Insurance Company

6210 E Highway 290          Austin, Texas 78723-1098
1-800-859-5995

# NOTICE OF CANCELLATION

Insured name and address:

    PREFERRED STAFFING COMPANY LLC
    IWORKS PERSONNEL
    PO BOX 100111
    SAN ANTONIO, TX 78201-1411

Provider name and address:

    LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

## VIA CERTIFIED MAIL
7011 3500 0000 2660 7987

| TYPE OF POLICY: |
|---|
| Workers' Compensation and Employers Liability Coverage |

| POLICY NUMBER: |
|---|
| 0001204473 |

| POLICY PERIOD: | |
|---|---|
| 9-04-2011 | 9-04-2012 |
| | to |

| DATE OF NOTICE: |
|---|
| 6-11-2012 |

| CANCELLATION WILL TAKE EFFECT AT: | |
|---|---|
| 7-16-2012 | 12:01 A.M. |
| (DATE) | (HOUR-STANDARD TIME) |

## CANCELLATION

You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with law, that your insurance will cease at and from the hour and date mentioned above.

## REASON FOR CANCELLATION
NON-COMPLIANCE - PREMIUM AUDIT

## CANCELLATION TERMS
All funds received after date of this notice shall be retained until completion of the final audit and determination of the earned premium for the policy.

If the full premium has been paid, adjustment will be made as soon as practicable after the cancellation becomes effective and final audit is completed.

If the premium has not been paid, a bill for the premium earned to the time of cancellation will be forwarded in due course.

All outstanding balances due on this policy and the expired policy must be paid in full.

AGENT FAX: 966 542 8757
UCSEOD

PNTC-CANCL- (ED. 06-11)

000008



6210 E Highway 290
Austin, Texas 78723-1098
1-512-224-7194
1-800-859-5995

P.O. Box 841843
Dallas, TX 75284-1843
1-512-224-7194
1-800-859-5995

August 24, 2012

PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

RE: POLICY NUMBER STA-0001204473 20110904
      FINAL AUDIT INVOICE

Dear policyholder:

Enclosed you will find a copy of your FINAL AUDIT STATEMENT for the policy term referenced above. Please take a moment to review your final audit statement.

IF PAYMENT IS DUE, A CONSOLIDATED INVOICE HAS BEEN ENCLOSED. In that event, please detach and return the bottom portion of your invoice with your payment. Checks must be made payable to Texas Mutual Insurance Company and should include your policy number as noted above. Our payment mailing address is:

Texas Mutual Insurance Company
P.O. Box 841843
Dallas, TX 75284-1843

**Please remit payment for any amounts due by the due date reflected on your invoice.**

If you need additional information or if we can be of further assistance, please contact the Premium Audit Department at 1-800-859-5995. We appreciate your business and prompt attention to this matter.

Sincerely,

Premium Audit Department

cc: LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

FACOVR (ED. 10-26-06)

TXM00355

000355

**TexasMutual**®
Insurance Company

Premium Audit Department
6210 E. Highway 290
Austin, Texas 78723-1098
1-800-859-5995
FAX 1-512-224-7194

## Appointment Confirmation

**To:** HAYDEE GUTIERREZ, P           **From:** Katherine S. Richter

**Fax:** 281-298-9352                        **Pages:**    1 **of** 1

**Email:** haydeegutierrez@iworkspersonnel.com

**Phone:** 956-459-5109               **Date:** 10/18/2012

**RE:** Revision Audit Appointment      **CC:**    ISAIAS BAZAN

                                                **Cell:**    512-963-0484

**Policyholder:**      PREFERRED STAFFING COMPANY LLC

**Policy Number:**     0001204473       **Other States Policy #:** --

**Policy Period:**      9/4/2011 to 7/16/2012 **at 12:01 A.M. Standard Time**

Per our telephone conversation, I am confirming your Revision Audit Appointment.
We plan to have auditor ISAIAS BAZAN, visit you on, Thursday, November 01, 2012, at approximately
01:30 PM at the following location: 3881 OLD HIGHWAY 77, BROWNSVILLE, TX 78520-9401.

As provided in the policy provisions, the estimated premium basis for your Worker's Compensation
Insurance coverage is subject to audit. The audit appointment is being scheduled with you to determine
proper earned premium for the policy period.

**Please have all records noted below available for examination to facilitate the premium audit
process. If any of these items do not pertain to your business, then please disregard.**

- Payrolls - By Employee (Payroll Books, Federal 941, and State Unemployment Reports)
- Subcontractor Payments (Cash Disbursement Journals and other records of payments by cash;
  Written Contracts, Work Orders and Invoices reflecting payments to subcontractors; Profit and Loss
  Statements, General Ledgers, Check Registers, Income Statements, etc.)
- Certificates of Insurance for all hired Subcontractors
- Overtime Wages - By Employee and Classification code
- Tips (if applicable)
- Flight Log (If applicable)
- For Staff Leasing, PEO, and Temporary Employment Agencies - Payroll information by client.

**Please contact ISAIAS BAZAN with any audit questions you may have. To ensure prompt receipt
of appointment cancellation and reschedule requests, we encourage you to telephone rather than
e-mail the Appointment Coordinator.**

Thank You,

Katherine S. Richter, Appointment Coordinator Ext. 3817

REV_PHY_CNF_ENG

000015

# TAB 20



# FINAL PREMIUM AUDIT STATEMENT

| Policy Number | STA-0001204473 20110904 | 00000 | Policy Period | From 9-04-2011 | To 7-16-2012 |
|---|---|---|---|---|---|

| Statement Date | 8-24-2012 |
|---|---|

INSURED NAME AND ADDRESS
PREFERRED STAFFING COMPANY LLC
DBA: IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

PRODUCER NAME AND ADDRESS
LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

| LOC | CLASS CODE | | CLASS DESCRIPTION | EXPOSURE | RATE | EARNED PREMIUM |
|---|---|---|---|---|---|---|
| 00001 | | | | | | |
| | | | 9-04-2011 To 7-16-2012 | | | |
| | 2003 | 001 | BAKERY & DRIVERS, ROUTE SUPERVISORS | 40,492 | 12.71 | 5,147.00 |
| | 2881 | 041 | WOODENWARE MFG NOC & DRIVERS | 17,543 | 8.30 | 1,456.00 |
| | 5403 | 001 | CARPENTRY NOC & DRIVERS | 1,642 | 14.52 | 238.00 |
| | 5506 | 001 | STREET OR ROAD CONSTRUCTION-ALL OPE | 0 | 14.87 | 0.00 |
| | 8006 | 004 | GROCERY STORE-RETAIL | 15,246 | 7.61 | 1,160.00 |
| | 8044 | 002 | STORE: FURNITURE: ALL OTHER EMPLOYE | 8,454 | 13.04 | 1,102.00 |
| | 8803 | 002 | OFFICE OR FACTORY COST SYSTEMATIZER | 253,467 | 0.27 | 684.00 |
| | 8803 | 004 | AUDITOR, ACCOUNTANT, OR FACTORY COS | 98,433 | 0.27 | 266.00 |
| | 8810 | 001 | CLERICAL OFFICE EMPLOYEES NOC | 1,452,700 | 0.44 | 6,392.00 |
| | 8833 | 002 | HOSPITAL: PROFESSIONAL EMPLOYEES | 4,865 | 2.01 | 98.00 |
| | 9014 | 001 | AIR CONDITIONING DUCT CLEANING SERV | 68,694 | 8.96 | 6,155.00 |
| | | | Period Total | 1,961,536 | | 22,698.00 |
| | | | Location Total | 1,961,536 | | 22,698.00 |
| | | | 9-04-2011 To 7-16-2012 | | | |
| | 0930 | 001 | WAIVER OF SUBROGATION | | 0.020 | 454.00 |
| | 9812 | 001 | 1000/1000/1000 INCREASED LIMIT | | 0.020 | 463.00 |
| | 9898 | 001 | EXPERIENCE MODIFIER | ( 30.00%) | 1.300 | 7,085.00 |
| | 9889 | 001 | SCHEDULE RATING MODIFICATION | | 1.750 | 23,025.00 |
| | 9874 | 001 | HEALTH CARE NETWORK DISCOUNT | | 0.120 | 6,447.00- |
| | | | 9-04-2011 To 7-16-2012 | | | |
| | 0063 | 001 | PREMIUM DISCOUNT | | 0.075 | 3,546.00- |
| | 0900 | 001 | EXPENSE CONSTANT | | 0.000 | 130.00 |

|  |  |
|---|---|
| Total Earned Premium | 43,862.00 |
| Previously Billed | 43,976.00 |
| Cash Collected | 43,861.00- |
| Additional Premium | 1.00 |

FASTMT (ED. 12-08-03)

1 of 2

VLKLEIN
TXM00356

000356

TAB 21



Premium Audit Department
6210 E Highway 290
Austin, Texas 78723-1098
1-800-859-5995
(FAX) 1-512-224-3011

RECEIVED NOV 1 5 2012

November 12, 2012

LETTE INS AGCY
145 BOCA CHICA BLVD
BROWNSVILLE, TX 78520

Re:  PREFERRED STAFFING COMPANY LLC

Dear Agent,

Enclosed please find a copy of an Incomplete Final Audit Notification being sent to your insured.

Your assistance in helping the insured become compliant with Final Audit Procedures is appreciated. If you have any questions regarding this matter, please call the Texas Mutual Insurance Company at 1-800-859-5995.

Thank you in advance for your help.

Premium Audit Department

Fanpagt (05/01/09)

000016



November 12, 2012

PREFERRED STAFFING COMPANY LLC
IWORKS PERSONNEL
PO BOX 100111
SAN ANTONIO, TX 78201-1411

Re: PREFERRED STAFFING COMPANY LLC
STA-0001204473 20110904
09-04-2011 - 09-04-2012

## INCOMPLETE FINAL AUDIT NOTIFICATION

Texas Mutual Insurance Company has been unable to complete the final audit of your policy due to our inability to schedule an audit appointment or obtain requested audit information and/or financial documents. As a result, your final audit has been processed incomplete and your current coverage is scheduled to cancel soon.

To prevent cancellation of your current coverage, please contact the Premium Audit Department promptly, Texas Mutual Insurance Company, will not consider issuing coverage for your business, until the audit has been completed.

We hope to be able to resolve this issue as we value you as a customer. Please contact the Premium Audit Department on our toll free number: 1-800-859-5995

Regards,

Premium Audit Department

cc: LETTE INS AGCY
    145 BOCA CHICA BLVD
    BROWNSVILLE, TX 78520

Fanpremd (05/12/04)

AGENT'S COPY

000017

TAB 22

APPEAL NO. 030660
FILED APRIL 28, 2003

This appeal arises pursuant to the Texas Workers' Compensation Act, TEX. LAB. CODE ANN. § 401.001 *et seq.* (1989 Act). A contested case hearing was held on November 19, 2002, with the record closing on December 9, 2002. The following issue was certified for resolution: Was (Company 1) or (Company 2) the claimant's employer for purposes of the 1989 Act? The hearing officer determined that Company 1 and Company 2 were coemployers with workers' compensation insurance provided by Company 1 by contract between the employers. The appellant (claimant) appeals, asserting that the employers failed to comply with Staff Lease Services Act (SLSA) and, therefore, are not coemployers. In the alternative, the claimant asserts that Company 1 and Company 2 are not coemployers under a borrowed servant analysis. The carriers urge affirmance. Company 2 also filed a brief in response to the claimant's appeal. Because Company 2 was not a party to the proceeding below, we do not consider its response in arriving at our decision. Texas Workers Compensation Commission Appeal No. 951912, decided December 20, 1995.

DECISION

Affirmed.

The hearing officer did not err in determining that Company 1 and Company 2 were coemployers for purposes of the 1989 Act. We recognize that the SLSA supercedes the common law right-of-control test in determining employer status for workers' compensation coverage purposes. Texas Workers' Compensation Insurance Fund v. DEL Industrial, Inc., (Docket No. 98-0946, decided September 15, 1999). The SLSA, however, applies to persons providing staff leasing services in this state. TEX. LAB CODE ANN. § 91.001, *et seq.* Staff leasing services are defined under the SLSA, in part, as "an arrangement by which employees of a license holder are assigned to work at a client company and in which employment responsibilities are in fact shared by the license holder and the client company, the employee's assignment is intended to be of a long-term or continuing nature, rather than temporary or seasonal in nature, and a majority of the work force at a client company worksite or a specialized group within that work force consists of assigned employees of the [staff leasing services company]." Section 91.001(11). The hearing officer considered the evidence and determined that the SLSA was not applicable in this case because the claimant was a temporary employee who was working out-of-state on the date of injury. Additionally, our review of the evidence does not reveal that a majority of the workforce at Company 2's worksite or a specialized group within that workforce consisted of assigned employees from Company 1. Accordingly, the hearing officer properly applied a borrowed servant analysis in determining employer status for purposes of 1989 Act.

The Appeals Panel has recognized coemployment under a borrowed servant analysis. *See* Texas Workers' Compensation Commission Appeal No. 021580, decided

030660r.doc

1

August 8, 2002; Texas Workers' Compensation Commission Appeal No. 011605, decided August 29, 2001; Texas Workers' Compensation Commission Appeal No. 962340, decided January 2, 1997; *compare* Texas Workers' Compensation Commission Appeal No. 962625, decided February 7, 1997, citing Marshall v. Toys-R-Us Nytex, Inc.,825 S.W.2d 193, 197 (Tex. App.-Houston [14th Dist.] 1992, writ denied). The determination involved a question of fact for the hearing officer to resolve. The hearing officer is the sole judge of the weight and credibility of the evidence (Section 410.165(a)) and, as the trier of fact, resolves the conflicts and inconsistencies in the evidence including the medical evidence (Texas Employers Insurance Association v. Campos, 666 S.W.2d 286 (Tex. App.-Houston [14th Dist.] 1984, no writ)). In view of the evidence presented, we cannot conclude that the hearing officer's determination is so against the great weight and preponderance of the evidence as to be clearly wrong or manifestly unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

The decision and order of the hearing officer are affirmed.

The true corporate name of insurance carrier 1 is **TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION** for **Commercial Compensation Insurance Company, an impaired carrier** and the name and address of its registered agent for service of process is

**MARVIN KELLY**
**TEXAS PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION**
**9120 BURNET ROAD**
**AUSTIN, TEXAS 78758.**

The true corporate name of insurance carrier 2 is **LIBERTY MUTUAL FIRE INSURANCE COMPANY** and the name and address of its registered agent for service of process is

**CT CORPORATION SYSTEMS**
**350 NORTH ST. PAUL, SUITE 2900**
**DALLAS, TEXAS 75201.**

Edward Vilano
Appeals Judge

CONCUR:

Judy L. S. Barnes
Appeals Judge

Thomas A Knapp
Appeals Judge

3

This appeal arises pursuant to the Texas Workers' Compensation Act, TEX. LAB. CODE ANN. § 401.001 *et seq.* (1989 Act). A contested case hearing (CCH) was held on June 5, 2002. The hearing officer resolved the disputed issues by deciding that respondent 2 (claimant) sustained a compensable injury on _____, and that on that date, and at the time of the injury, the claimant's employer for purposes of the 1989 Act was (Employer 1). The appellant (carrier 1), the workers' compensation insurance carrier for (Employer 1), appeals the determination and contends that (Employer 2) was the claimant's employer at the time of the date injury. In its response, respondent 1 (carrier 2), the workers' compensation insurance carrier for (Employer 2), urges affirmance of the hearing officer's decision. The appeal file contains no response from the claimant.

## DECISION

The hearing officer's decision is affirmed.

The evidence reflects that (Employer 2) is a provider of temporary staffing services. Through a placement from (Employer 2), the claimant began working at (Employer 1) several months prior to the date of injury. Although (Employer 2) and (Employer 1) at one point had a written contract for staffing services, it had expired prior to the claimant's date of injury. The claimant testified that he was paid by (Employer 2), but that his work was directed and supervised by (Employer 1), and that at the time of his injury, he had been directed by (Employer 1)'s forklift driver to get onto the pallet on the forks of the forklift, from which he fell. The hearing officer, applying the borrowed servant doctrine, determined that at the time of the injury, the claimant's employer for purposes of the 1989 Act was (Employer 1).

Texas courts have recognized that a general employee of one employer may become the borrowed servant of another employer. The determinative question then becomes which employer had the right of control of the details and manner in which the employee performed the necessary services. Carr v. Carroll Company, 646 S.W.2d 561 (Tex. App.-Dallas 1982, writ ref'd n.r.e.). We note that in Texas Workers' Compensation Insurance Fund v. DEL Industrial, Inc., 35 S.W.3d 591 (Tex. 2000), the court held that the Staff Services Leasing Act (SSLA), Texas Labor Code Chapter 91, supercedes the common law right-of-control test in determining employer status of leased employees for workers' compensation purposes. However, (Employer 2) was not licensed under the SSLA. The hearing officer determined that on the date of injury, (Employer 2) was a licensed provider of temporary common workers under Chapter 92 of the Texas Labor Code, entitled Temporary Common Worker Employers (TCWE). In Richmond v. L. D. Brinkman & Co. (Texas) Inc., 36 S.W.3d 903 (Tex. App.-Dallas 2001, pet. denied), the court determined that the common law right-of-control test is not superceded by Chapter 92 (TCWE) of the Texas Labor Code. The hearing officer is the sole judge of the weight

and credibility of the evidence. Section 410.165(a). We conclude that the hearing officer did not err in applying the right-of-control test and in determining that at the time of the injury, the claimant was the borrowed servant of (Employer 1). The hearing officer's decision is supported by sufficient evidence and is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175 (Tex. 1986).

The hearing officer determined that carrier 1, (Employer 1)'s workers' compensation insurance carrier, is liable for workers' compensation benefits for the claimant's compensable injury. Carrier 1 asserts that this is unfair because (Employer 2) received from (Employer 1) payments for premiums paid to carrier 2 for workers' compensation coverage, but carrier 1 cites to no legal authority to support its assertion that carrier 2 must be the carrier liable for benefits in this borrowed servant case where there are two workers' compensation insurance carriers. Consequently, carrier 1 has not shown that the hearing officer erred as a matter of law in determining that it is liable for workers' compensation benefits under the facts presented.

The carriers did not contend at the CCH that the claimant was not injured in the course and scope of his employment. To the extent that carrier 1's appeal can be construed as an appeal of the determination that the claimant sustained a compensable injury, because of its challenge to Conclusion of Law No. 4, we conclude that the hearing officer's determination that the claimant sustained a compensable injury is supported by sufficient evidence and is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Cain, *supra*.

The hearing officer's decision and order are affirmed.

The true corporate name of the insurance carrier (carrier 1) is **TRAVELERS INDEMNITY COMPANY OF CONNECTICUT** and the name and address of its registered agent for service of process is

**C T CORPORATION**
**350 NORTH ST. PAUL STREET**
**DALLAS, TEXAS 75201.**

2

The true corporate name of the insurance carrier (carrier 2) is **LEGION INSURANCE COMPANY** and the name and address of its registered agent for service of process is

**CORPORATION SERVICE COMPANY**
**800 BRAZOS**
**AUSTIN, TEXAS 78701.**

_____
Robert W. Potts
Appeals Judge

CONCUR:


_____
Elaine M. Chaney
Appeals Judge


_____
Gary L. Kilgore
Appeals Judge

3

APPEAL NO. 101718
FILED MARCH 21, 2011

This appeal arises pursuant to the Texas Workers' Compensation Act, TEX. LAB. CODE ANN. § 401.001 et seq. (1989 Act). A contested case hearing (CCH) was held on October 11, 2010.

The issues before the hearing officer were:

1. Was (Employer 1), (Employer 2), (Employer 3)[1], or (Employer 4), respondent 1's (claimant) employer for purposes of the 1989 Act?

2. Did appellant, Texas Mutual Insurance Company (TMC/Carrier C), respondent 2, Texas Mutual Insurance Company (TMC/Carrier A), respondent 3, Zurich American Insurance Company (Zurich/Carrier B), or respondent 4, American Guarantee and Liability Insurance Company (AG&L/Carrier D) provide workers' compensation insurance for Employer 1, Employer 2, Employer 3, or Employer 4 on (date of injury)? (issue as modified by consent of all parties)

3. Did the claimant sustain a compensable injury on (date of injury)?

4. Did the claimant have disability resulting from an injury sustained on (date of injury), and if so, for what period(s)?

The hearing officer determined that: (1) on (date of injury), the claimant was the employee of Employer 1, Employer 2, and Employer 3 but was not the employee of Employer 4 for purposes of the 1989 Act; (2) TMC/Carrier C provided workers' compensation insurance for Employer 2 and Employer 3 on (date of injury); (3) TMC/Carrier A did not provide workers' compensation for Employer 1 on (date of injury); (4) AG&L/Carrier D did not provide workers' compensation insurance for either Employer 1, Employer 2, Employer 3, or Employer 4 on (date of injury); (5) Zurich/Carrier B provided workers' compensation insurance for Employer 4 on (date of injury); (6) the claimant sustained a compensable injury on (date of injury); and (7) the claimant had disability beginning on August 22, 2009, and continuing through the date of the CCH, October 11, 2010.

TMC/Carrier C appealed the hearing officer's determinations; however, it specifically contended that because the claimant was not an "assigned employee" under the Staff Leasing Services Act (SLSA), the claimant was not covered by Employer 3's workers' compensation policy, and that the claimant was not a borrowed servant of Employer 2. AG&L/Carrier D responded, urging affirmance of the hearing officer's determination that AG&L/Carrier D did not provide workers' compensation insurance coverage for any entity in this claim or any liability in this case. The appeal file does not contain a response from the claimant, TMC/Carrier A, or Zurich/Carrier B to

---

[1] Employer 3 is also known as (name).

101718r.doc

TMC/Carrier C's appeal. The hearing officer's order to dismiss AG&L/Carrier D from the case has not been appealed and has become final pursuant to Section 410.169.

## DECISION

Affirmed in part and reversed and rendered in part.

## FACTUAL SUMMARY

The claimant testified that she was injured at work when she fell through a hole in the floor while cleaning at the (jobsite) on (date of injury). The claimant testified that she was hired and paid by Employer 1, which did Employer 1 hanging. The evidence reflects that the claimant was sent by Employer 1 to do general cleaning at the (jobsite).

The evidence reflects the following relationships between entities on the (jobsite):

1. Employer 4 was the general contractor for the (jobsite);

2. Employer 4 contracted with Employer 2 as an independent contractor to provide services on the project which included drywall hanging;

3. Employer 3 was the license holder under SLSA and contracted with Employer 2, the client company, to provide human resource (HR) services and workers' compensation insurance to the "Staff" of Employer 2 on the (jobsite).

4. By agreement with Employer 2, Employer 3 did not provide workers' compensation insurance for any Employer 2 employee other than those defined as "Staff." Employer 2 understood that it would be responsible for providing workers' compensation insurance for any employees other than "Staff."

5. Employer 2 "Staff" is defined within the contract between Employer 2 and Employer 3 as meaning "those identified by [Employer 2] as employees subject to this Agreement, reported to Employer 3 in writing, and for whom [Employer 2] has reported payroll and supplied the other data required by Employer. Persons who have not been identified to Employer 3 as Staff are not subject to this Agreement. Staff are 'assigned employees' within the meaning of Texas Labor Code 91.001(2)."

6. Employer 2 contracted with Employer 1 for temporary workers for the (jobsite).

2

# EMPLOYMENT RELATIONSHIPS AND COVERAGE

## *EMPLOYER 1 AND TMC/CARRIER A*

That portion of the hearing officer's determination that on (date of injury), the claimant was the employee of Employer 1 is supported by sufficient evidence and is affirmed.

The hearing officer's determination that TMC/Carrier A did not provide workers' compensation insurance for Employer 1, on (date of injury), is supported by sufficient evidence and is affirmed.[2]

## *EMPLOYER 4 AND ZURICH/CARRIER B*

The hearing officer's determination that Zurich/Carrier B provided workers' compensation insurance for Employer 4 on (date of injury), is supported by sufficient evidence and is affirmed.

The hearing officer's determination that on (date of injury), the claimant was not the employee of Employer 4 is supported by sufficient evidence and is affirmed.

## *EMPLOYER 2 AND EMPLOYER 3 AND TMC/CARRIER C*

The hearing officer's determination that TMC/Carrier C provided workers' compensation insurance for Employer 2 and Employer 3 on (date of injury), is supported by sufficient evidence and is affirmed.

(TY), the vice-president of Employer 2, testified that Employer 2 contracted with Employer 1 to provide temporary workers for the (jobsite), which was a big job lasting at least a year. TY testified that the hiring of Employer 1's employees was to supplement Employer 2's employees for this project because they did not have enough people to do all the work.

In evidence is the Subcontract Agreement dated November 14, 2008, between Employer 4, the general contractor, and Employer 2, the independent contractor. Employer 2 agreed in pertinent part with Employer 4 that:

> Employer 2 would furnish all materials, labor, construction equipment, tools, supplies, and/or services to furnish the work and shall carry out all obligations, duties, and responsibilities imposed on Employer 2 by the Agreement Documents.

---

[2] In the Background Information section of the decision and order, the hearing officer stated: "Records show that [Employer 1] obtained workers' compensation insurance from [TMC/Carrier A] and that such insurance was properly terminated as of February 16, 2009."

3

Employer 2 shall provide and maintain, during the term of this Agreement . . . occurrence-based insurance with coverages and limits of liability . . . . Employer 2 shall require each Subcontractor to provide and maintain, during the term of their respective agreements . . . the insurance coverages specified.

Required Coverage includes workers' compensation.

Employer 2 and its Subcontractors shall be independent contractors with respect to the Work, and neither Employer 2 nor its Subcontractors, nor any person employed by any of them shall be deemed to be Employer 4's employees, servants, representatives or agents in any respect.

In evidence is the Customer Service Agreement between Employer 2 and Employer 3, signed on January 21, 2009, and on February 3, 2009, respectively. That agreement specifically provides in pertinent part that:

1. Employer 3 agrees to provide [Employer 2] with the HR support services identified under this Agreement, solely with respect to those employees identified in writing by [Employer 2] to Employer 3 as Staff under the terms of this Agreement. Employer 3 assumes only those responsibilities toward the Staff as specifically required under this Agreement or which are required under Chapter 91 of the Texas Labor Code. In all other respects, [Employer 2] shall continue to have full and sole responsibility with respect to the Staff and with respect to the operation of its business.



6. (a) [Employer 2] is solely responsible for locating, recruiting, evaluating and screening all persons that [Employer 2] intends to designate as Staff under this Agreement. Persons hired by [Employer 2] will become Staff subject to this Agreement only upon [Employer 2's] submission of a completed Employer 3 new employee packet and the assignment of an employee number by Employer 3. Persons hired by [Employer 2] but not disclosed to Employer 3 by [Employer 2] are not Staff under this Agreement, and Employer 3 shall have no responsibility of any kind as to such persons. [Employer 2] understands that only Staff properly identified to Employer 3 under this Agreement will be covered by Employer 3's workers' compensation insurance.

\* \* \* \*

4

8. (e) [Employer 2] shall maintain a policy of standard workers' compensation insurance in order to cover all employees of [Employer 2], other than Staff covered by this Agreement . . . . [Employer 2] understands that Employer 3's workers' compensation insurance will not provide any coverage with respect to any of [Employer 2's] contractors or subcontractors. [Employer 2] shall ensure that all of its contractors or subcontractors hold workers' compensation in compliance with state law. [Employer 2] shall obtain a certificate of insurance from each contractor or subcontractor . . . .

The evidence reflects that Employer 1 furnished to Employer 2 a Certificate of Liability Insurance for workers' compensation coverage provided by TMC/Carrier A for its employees at the (jobsite). Also in evidence is a Notice of Cancellation reflecting that said policy, effective from October 9, 2008, through October 9, 2009, was cancelled effective February 16, 2009. TY testified that he was unaware that Employer 1 no longer had workers' compensation insurance coverage for the claimant's injuries until after her date of injury on (date of injury), and that he was misled by Employer 1 as to workers' compensation insurance coverage.

(AS), the Director of Risk Management for Employer 3, testified that the workers' compensation insurance coverage through TMC/Carrier C did not cover any employees hired by Employer 2 and undisclosed to Employer 3. AS testified that the claimant was not an employee of Employer 2 or of Employer 3. There is no evidence that the claimant completed the new employee packet required by Employer 3 or that Employer 3 issued the claimant a new employee number as set out under the terms of the Agreement with Employer 2 such that the claimant would be identified as "Staff" or an "assigned employee" of Employer 2. AS testified that Employer 2 and Employer 3 would be considered co-employers only as to disclosed employees of Employer 2 and such co-employees would be covered by TMC/Carrier C.

The claimant testified that she reported to the jobsite at (jobsite) and was provided tools to use and directions as to where to work at the jobsite by two foremen employed by Employer 2. Employer 2's foremen, Johnny and Miguel, daily supervised at the jobsite the Employer 1 crew's work of which her cleaning was an integral part of her crew's drywall hanging. Testimony from TY reflected that although Employer 1 initially paid its employees, Employer 2 began paying Employer 1 employees directly after concerns about Employer 1 paying its employees.

The identity of the employer for purpose of workers' compensation was at issue in this case. The starting point in our analysis is the definition of "Employer" under Section 401.011(18). "Employer" means, unless otherwise specified, "a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. The term includes a governmental entity that self-insures, either individually or collectively." Section 401.011(44) defines "Workers' compensation insurance coverage" to mean: "(A) an approved insurance policy to secure the payment of compensation; (B) coverage to secure the payment of

5

compensation through self-insurance as provided by this subtitle; or (C) coverage provided by a governmental entity to secure the payment of compensation." The exclusive remedy provision of the 1989 Act says, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." *See* Section 408.001(a). But if an employer, i.e., "a person who employs one or more employees," elects not to obtain workers' compensation insurance, that employer is subject to common-law negligence claims and may not assert certain defenses, including contributory negligence, assumed risk, or that the injury or death was caused by a fellow employee. *See* Section 406.033.

We note that in Texas Workers' Compensation Insurance Fund v. Del Industrial, Inc., 35 S.W.3d 591 (Tex. 2000), the insurance carrier for Del Industrial was attempting to collect premiums to cover not only workers directly employed by Del Industrial but the employees leased to Del Industrial by a staff leasing company. The staff leasing company had elected not to provide workers' compensation coverage for the employees leased to Del Industrial. The court stated that the insurance carrier in that case contended that the "coemployer" language in subsection (c) means that Del Industrial, the client company, is the "coemployer" of the leased employees for workers' compensation purposes such that the leased workers were covered by Del Industrial's workers' compensation policy. The court went on to say that interpretation of "coemployer" ignores the context in which the word is used and is contrary to the express statutory scheme developed by the Texas Legislature. The court further stated that because the Legislature immediately followed the term "coemployers" with an explicit explanation of the consequences of the staff leasing company's election, it held that the staff leasing company and the client company are "coemployers" only to the extent of the staff leasing company's election. The court stated that the SLSA, Texas Labor Code Chapter 91, statutorily supercedes the common-law right-of-control test in determining employer status of leased employees for workers' compensation purposes.

Under SLSA, Labor Code Chapter 91, Section 91.001(2) defines "Assigned employee" to mean "an employee under a staff leasing services arrangement whose work is performed in this state. The term does not include an employee hired to support or supplement a client company's work force in a special work situation, including: (A) an employee absence; (B) a temporary skill shortage; (C) a seasonal workload; or (D) a special assignment or project.

Section 91.001(14) also defines "Staff leasing services" to mean:

an arrangement by which employees of a license holder are assigned to work at a client company and in which employment responsibilities are in fact shared by the license holder and the client company, the employee's assignment is intended to be of a long-term or continuing nature, rather than temporary or seasonal in nature, and a majority of the work force at a client company worksite or a specialized group within that work force

6

consists of assigned employees of the license holder. The term includes professional employer organization services. The term does not include: (A) temporary help; (B) an independent contractor; (C) the provision of services that otherwise meet the definition of "staff leasing services" by one person solely to other persons who are related to the service provider by common ownership; or (D) a temporary common worker employer as defined by Chapter 92.

Section 91.001(16) defines "Temporary help" to mean:

an arrangement by which an organization hires its own employees and assigns them to a client to support or supplement the client's work force in a special work situation, including: (A) an employee absence; (B) a temporary skill shortage; (C) a seasonal workload; or (D) a special assignment or project.

We must analyze whether the claimant under the facts of this case is covered as an "assigned employee" under the workers' compensation insurance coverage by TMC/Carrier C as provided by the agreement between Employer 2 and Employer 3 under SLSA, Labor Code Chapter 91. The evidence reflects that the claimant was a temporary worker furnished by Employer 1 to Employer 2 in order to supplement its workforce on a special project. Section 91.001(16). The testimony of TY, the vice-president of Employer 2, reflects that Employer 2 and Employer 1 had an agreement that Employer 1 was to provide workers' compensation insurance for its employees, which included the claimant, on the (jobsite), and that Employer 2 did not know that the workers' compensation insurance coverage provided by TMC/Carrier A was cancelled effective February 16, 2009. There is no evidence that Employer 2 provided workers' compensation insurance coverage for any temporary workers on the (jobsite). The evidence reflects that the claimant is not an employee of Employer 2 or of Employer 3 based on the terms of the agreements in evidence as discussed between Employer 2 and Employer 3 and by the testimony of TY and AS, the Director of Risk Management for Employer 3. Accordingly, we hold that on (date of injury), the claimant was not an assigned employee for which workers' compensation insurance coverage was provided by TMC/Carrier C for Employer 2 and Employer 3. Further, because Employer 1's workers' compensation insurance coverage was cancelled by TMC/Carrier A effective on February 16, 2009, prior to the date of the claimant's work injury on (date of injury), the claimant had no "employer" that provided workers' compensation insurance coverage for the claimant's work injury for purposes of the 1989 Act.

Therefore, the hearing officer erred as a matter of law in finding that the claimant was an employee of Employer 3 and/or Employer 2 under a theory of coemployers under SLSA or under a theory that Employer 2 was an "employer" for the purposes of the 1989 Act providing workers' compensation insurance coverage for the claimant, a temporary worker provided by Employer 1. That portion of the hearing officer's determination that on (date of injury), the claimant was the employee of Employer 2 and of Employer 3 for purposes of the 1989 Act is reversed and a new decision rendered

7

that on (date of injury), the claimant was not the employee of Employer 2 or of Employer 3 for purposes of the 1989 Act.

## COMPENSABILITY AND DISABILITY

Section 401.011(10) defines "[c]ompensable injury" to mean "an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle [the 1989 Act]." To be eligible for benefits under the Act, the injured worker must have been an employee of an employer that carries workers' compensation insurance coverage at the time the work-related injury occurred. Section 406.031. Section 401.011(16) defines "[d]isability" to mean "the inability because of a compensable injury to obtain and retain employment at wages equivalent to the pre-injury wage."

Given that we have affirmed that portion of the hearing officer's determination that the claimant was the employee of Employer 1, which did not carry workers' compensation insurance coverage at the time the claimant's work-related injury occurred on (date of injury), and reversed that portion of the hearing officer's determination that the claimant was the employee of Employer 2 and of Employer 3 on (date of injury), and rendered a new decision that the claimant was not an employee of Employer 2 or of Employer 3 on (date of injury), we hold that the claimant was not an employee of an employer that was a subscriber to workers' compensation insurance on (date of injury). Therefore, we reverse the hearing officer's determination that the claimant sustained a compensable injury on (date of injury), and render a new decision that the claimant did not sustain a compensable injury on (date of injury). We further reverse the hearing officer's determination that the claimant had disability beginning on August 22, 2009, and continuing through the date of the CCH, October 11, 2010, and we render a new decision that the claimant did not have disability because there is no compensable injury on (date of injury).

## SUMMARY

We affirm the hearing officer's determination that on (date of injury), the claimant was the employee of Employer 1.

We affirm the hearing officer's determination that TMC/Carrier A did not provide workers' compensation insurance for Employer 1, on (date of injury).

We affirm the hearing officer's determination that on (date of injury), the claimant was not the employee of Employer 4.

We affirm the hearing officer's determination that Zurich/Carrier B provided workers' compensation insurance for Employer 4 on (date of injury).

We affirm the hearing officer's decision that TMC/Carrier C provided workers' compensation insurance for Employer 2 and Employer 3 on (date of injury).

8

We reverse that portion of the hearing officer's decision that on (date of injury), the claimant was the employee of Employer 2 and of Employer 3 for the purposes of the 1989 Act and we render a new decision that on (date of injury), the claimant was not the employee of Employer 2 or of Employer 3 for the purposes of the 1989 Act.

We reverse the hearing officer's determination that the claimant sustained a compensable injury on (date of injury), and we render a new decision that the claimant did not sustain a compensable injury on (date of injury).

We reverse the hearing officer's determination that the claimant had disability beginning on August 22, 2009, and continuing through the date of the CCH, October 11, 2010, and we render a new decision that the claimant did not have disability because there is no compensable injury on (date of injury).

The true corporate name of TMC/Carrier A is **TEXAS MUTUAL INSURANCE COMPANY** and the name and address of its registered agent for service of process is

**RON O. WRIGHT, PRESIDENT
6210 EAST HIGHWAY 290
AUSTIN, TEXAS 78723.**

The true corporate name of Zurich/Carrier B is **ZURICH AMERICAN INSURANCE COMPANY** and the name and address of its registered agent for service of process is

**CORPORATION SERVICE COMPANY
211 EAST 7TH STREET, SUITE 620
AUSTIN, TEXAS 78701-3218.**

The true corporate name of TMC/Carrier C is **TEXAS MUTUAL INSURANCE COMPANY** and the name and address of its registered agent for service of process is

**RON O. WRIGHT, PRESIDENT
6210 EAST HIGHWAY 290
AUSTIN, TEXAS 78723.**

101718r.doc

The true corporate name of AG&L/Carrier D is **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY** and the name and address of its registered agent for service of process is

**CORPORATION SERVICE COMPANY
211 EAST 7TH STREET, SUITE 620
AUSTIN, TEXAS 78701-3218.**

Cynthia A. Brown
Appeals Judge

CONCUR:

Thomas A. Knapp
Appeals Judge

Carisa Space-Beam
Appeals Judge

10

TAB 23

# IN THE SUPREME COURT OF TEXAS

═══════════

No. 14-0256

═══════════

IN RE CRAWFORD & COMPANY, CRAWFORD & COMPANY HEALTHCARE
MANAGEMENT, INC., PATSY HOGAN AND OLD REPUBLIC INSURANCE
COMPANY, RELATORS

═══════════════════════

ON PETITION FOR WRIT OF MANDAMUS

═══════════════════════

**PER CURIAM**

Relators in this mandamus proceeding contend that the trial court abused its discretion when it refused to dismiss claims over which the Division of Workers' Compensation has exclusive jurisdiction. Because all of the claims arise out of relators' investigation, handling, and settling of claims for workers' compensation benefits, we agree.

In 1998, Glenn Johnson suffered traumatic and debilitating injuries while working for ASARCO. The parties do not dispute that Johnson was severely injured or that he is entitled to receive lifetime workers' compensation benefits. Disputes over the details and amounts of those benefits, however, led Johnson to request a benefit review conference in 2008, which led to a contested case hearing the following year. It appears from the parties' briefs that the suit for judicial review of that decision remains pending in the district court.

Meanwhile, separate from the administrative proceedings, Johnson and his wife, Natalie, filed the underlying suit against ASARCO's workers' compensation insurance provider Old Republic Insurance Company; its claims services contractors Crawford & Company and Crawford & Company Healthcare Management, Inc.; and their employee Patsy Hogan (collectively,

Crawford). The Johnsons allege that, over a period of nearly ten years, Crawford engaged in "a battle plan to delay, discourage and deny" benefits that the Johnsons were entitled to receive. Specifically, the Johnsons contend that Crawford (a) wrongfully disputed, denied, and delayed medical benefits, (b) misrepresented which benefits were and were not covered, (c) failed to provide required notices and other information, (d) repeatedly agreed to pay for benefits and services but then refused to do so, (e) performed inadequate and misleading investigations into the Johnsons' claim for benefits, and (f) falsely accused the Johnsons of insurance fraud, leading to their wrongful arrests and a two-year prosecution that ultimately terminated in the Johnsons' favor. In short, the Johnsons allege that, "[r]ather than manage the claim" and adjust it "in a fair and reasonable manner," Crawford "resorted to combat tactics to wreak havoc on Glenn's and Natalie's lives."

Based on these allegations, the Johnsons pled numerous causes of action, some sounding in tort (negligence; gross negligence; negligent, fraudulent, and intentional misrepresentation; fraud; fraud by non-disclosure; fraudulent inducement; intentional infliction of emotional distress; malicious prosecution; and conspiracy); some sounding in contract (breach of contract; quantum meruit; and breach of the common law duty of good faith and fair dealing); and some alleging violations of statutory duties (under the Texas Insurance Code and the Texas Deceptive Trade Practices Act). The Johnsons sought relief in the form of actual damages for physical injuries, mental injuries, loss of income, and loss of reputation; exemplary damages; statutory damages; and injunctive relief prohibiting Crawford from continuing to engage in such "extreme and outrageous" conduct.

The Johnsons specifically pled that the Texas Workers' Compensation Act does not require them to pursue their claims through its administrative procedures or otherwise exhaust

2

administrative remedies because (1) the Act's administrative procedures do not apply to some of their claims; (2) Crawford's "subterfuge" of the workers' compensation system relieves the Johnsons from any duties under that system; and (3) the Johnsons are seeking to recover for "independent injuries . . . that are unrelated to [Glenn's] workers['] compensation injuries and the benefits that he is entitled to under that system." While the Johnsons agree that they must pursue their claims for workers' compensation benefits through the administrative process, they contend that they can pursue these claims for additional, independent, and "unrelated" damages in the courts.

Crawford disagreed and filed a plea to the jurisdiction and motion for summary judgment. Relying primarily on our decision in *Texas Mutual Insurance Co. v. Ruttiger*, 381 S.W.3d 430 (Tex. 2012), Crawford argued that the Texas Department of Insurance Division of Workers' Compensation has exclusive jurisdiction over all of the Johnsons' claims because they arise out of the workers' compensation claims-handling process. Conceding that the claims for malicious prosecution and for intentional infliction of emotional distress could "arguably survive the landmark decision in *Ruttiger*," Crawford alternatively asserted that no evidence supported those claims. The trial court dismissed the Johnsons' claims for breach of the common law duty of good faith and fair dealing and for violations of the Texas Insurance Code but refused to dismiss any of the other claims. The court of appeals denied Crawford's petition for mandamus relief.[1]

---

[1] ___ S.W.3d ___. The court of appeals concluded that Crawford is not entitled to mandamus relief because (1) "one could interpret" Crawford's five-month delay in filing its petition for writ of mandamus, shortly before trial, as an "effort to further hinder the timely adjudication of the Johnsons' claims"; (2) even if the court could review the denial of Crawford's plea to the jurisdiction by mandamus, Crawford has not shown that "unrelated topics appearing in the motion for summary judgment may also be reviewed via the same proceeding"; (3) the Johnsons created a fact issue by certifying through their counsel that they had exhausted all administrative remedies; and (4) "claims of malicious prosecution inherently involve activity or misconduct outside the administrative avenues created by the workers' compensation laws," nothing in the Act "purports to regulate such conduct or remedy . . . damages unrelated to the amount of workers' compensation benefits to which an employee may be entitled," and "because at least one

3

We conclude that the Division of Workers' Compensation has exclusive jurisdiction over the Johnsons' claims and the Workers' Compensation Act provides their exclusive remedies. The Act designates the Department of Insurance as the administrative agency responsible "[for overseeing] the workers' compensation system of this state" and establishes the Division of Workers' Compensation within the Department to "administer and operate" that system. TEX. LAB. CODE § 402.001. It is the Division's duty to "(1) regulate and administer the business of workers' compensation in this state; and (2) ensure that [the Act] and other laws regarding workers' compensation are executed." *Id*. § 402.00114. The Division must monitor insurance carriers, employers, and others "for compliance with commissioner rules, this subtitle, and other laws relating to workers' compensation." *Id.* § 414.002(a). The Division or its commissioner may impose an array of sanctions against those who fail to comply, including a cease-and-desist order and administrative penalties up to $25,000 per day per occurrence. *Id.* § 415.021(a). As we explained in *Ruttiger*, the Act, as substantially revised in 1989, "prescribes detailed, [Division]-supervised, time-compressed processes for carriers to handle claims and for dispute resolution" and "has multiple, sometimes redundant but sometimes additive, penalty and sanction provisions for enforcing compliance with its requirements." 381 S.W.3d at 443.

In light of the Act's comprehensive system for resolving workers' compensation claims[2] and the Division's role in that process, we concluded in *Ruttiger* that the Act provides the exclusive procedures and remedies for claims alleging that a workers' compensation carrier has improperly

cause of action continues to exist, despite *Ruttiger*, we cannot say that the trial court abused its discretion in refusing to dismiss all the causes of action." *Id.* at ___.

[2] *See Liberty Mut. Ins. Co. v. Adcock*, 412 S.W.3d 492, 495 (Tex. 2013) (explaining that "the Legislature devised a comprehensive workers' compensation system, with specific benefits and procedures based on the public policy of the State of Texas. We concluded in *Ruttiger* that the Court should not alter the Act's comprehensive scheme, and we reaffirm that principle today.").

4

investigated, handled, or settled a workers' claim for benefits. Specifically, we held that the worker in that case could not recover against the carrier for violations of section 541.060 of the Texas Insurance Code, which prohibits all insurance carriers generally (not just workers' compensation carriers) from engaging in "unfair settlement practices with respect to a claim by an insured." TEX. INS. CODE § 541.060(a). "Permitting a workers' compensation claimant to additionally recover by simply suing under general provisions of Insurance Code section 541.060," we explained, "would be inconsistent with the structure and detailed processes of the Act." *Ruttiger*, 381 S.W.3d at 443. We concluded that the Act's "provisions for dispute resolution and remedies for failing to comply with those provisions in the workers' compensation context are exclusive of those in section 541.060." *Id*. at 444.[3]

We also held that the claimant in *Ruttiger* could not recover on his claims under section 542.003(a)(3) of the Insurance Code, which requires insurers to "adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies." TEX. INS. CODE § 542.003(a)(3). "[I]n light of the specific substantive and procedural requirements built into the Act," we concluded, "and the detrimental effects on carriers flowing from penalties that can be imposed for failing to comply with those requirements, the Legislature did not intend for workers' compensation claimants to have a cause of action against the carrier under the general provision of section 542.003." *Ruttiger*, 381 S.W.3d at 445.

For the same reasons, we also overruled our precedent that pre-dated the current version of the Act and held that "an injured employee may not assert a common-law claim for breach of the duty of good faith and fair dealing against a workers' compensation carrier." *Id*. at 433 (overruling *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210 (Tex. 1988)). We reasoned that allowing the carrier

---

[3] We likewise held that the claimant could not recover on his DTPA claim because that claim, "as pled and submitted to the jury[,] depended on the validity of his Insurance Code claim[s]." *Ruttiger*, 381 S.W.3d at 446.

to risk common law liability in addition to liability under the Act "distorts the balances struck in the Act and frustrates the Legislature's intent to have disputes resolved quickly and objectively." *Id.* at 451. "Recognizing and respecting the Legislature's prime position in enacting, studying, analyzing, and reforming the system, and its efforts in having done that," we concluded that "[t]he Act effectively eliminates the need for a judicially imposed cause of action outside the administrative processes and other remedies in the Act." *Id.*

We did not hold in *Ruttiger*, however, that the Act bars every statutory and common law claim that can be asserted against a workers' compensation carrier. To the contrary, we concluded that the Act did not bar a claim under section 541.061 of the Insurance Code, which makes it unlawful for an insurer to "misrepresent an insurance policy." *Id.* at 445–46; *see also* TEX. INS. CODE § 541.061. We explained that, "[u]nlike section 541.060," which prohibits unfair settlement practices, "section 541.061 does not specify that it applies in the context of settling claims." *Ruttiger*, 381 S.W.3d at 446. We held that because section 541.061's prohibition against misrepresentation of an insurance policy "does not evidence intent that it be applied in regard to settling claims, it is not at odds with the dispute resolution process of the workers' compensation system." *Id.* We ultimately concluded, however, that there was no evidence to support the section 541.061 claim in that case because there was no evidence of an "untrue statement made by [the insurer] regarding the policy or any statement about the policy that misled [the plaintiff-insured]." *Id.*

In summary, we held in *Ruttiger* that workers' compensation carriers cannot be liable under the Insurance Code for unfair claims settlement practices or for failing to adopt reasonable standards for investigating claims, or under the common law for breach of a duty of good faith and fair dealing, because these claims "simply are not compatible with amended detailed procedural

6

and substantive provisions of the new Act." *Id*. at 456. Although we agreed that "the new Act's language does not purport to preclude all types of claims against workers' compensation insurers," we concluded that, for claims arising out of the claims-settlement process, "the current Act with its definitions, detailed procedures, and dispute resolution process demonstrate[s] legislative intent for there to be no alternative remedies." *Id*. at 444, 456.

In this case, the parties dispute whether and how *Ruttiger* applies to causes of action that we did not specifically address in that case. The court of appeals concluded that it "is not as clear" that we "vitiated the existence of" any other claims in *Ruttiger* because we "said nothing of" them. ___ S.W.3d ___. The court read our *Ruttiger* decision to focus on whether the claims are "inconsistent with the current legislative/administrative workers' compensation scheme," and concluded that neither *Ruttiger* nor Crawford explains how a malicious prosecution claim asserting "baseless criminal proceedings by an insurer against an employee and the amelioration of damages caused by such misconduct fits in the legislative/administrative workers' compensation scheme." *Id*. at ___. The court concluded that a malicious prosecution claim "does not serve to protect, secure or timely resolve disputes involving the availability of workers' compensation benefits due a claimant," and "because at least one cause of action continues to exist, despite *Ruttiger,* [the court could not] say that the trial court abused its discretion in refusing to dismiss all the causes of action." *Id*.

We agree with Crawford that the court of appeals read *Ruttiger* too narrowly. As other courts of appeals have recognized,[4] the rule we applied in *Ruttiger* is that the Act provides the

---

[4] *See, e.g.*, *Davis v. Am. Cas. Co. of Reading, Pa.*, No. 07-13-00190-CV, 2014 WL 2553379, at *2 (Tex. App.—Amarillo June 4, 2014, pet. denied) (holding that *Ruttiger* precludes claims for breach of contract, breach of the duty of good faith and fair dealing, Insurance Code and DTPA violations, and negligence because all claims "arise out of [the carrier's] handling of [the] workers' compensation claim"); *Hopper v. Argonaut Ins. Co.*, No. 03-12-00734-CV, 2013 WL 5853747, at *4 (Tex. App.—Austin Oct. 18, 2013, no pet.) (mem. op.) (holding that *Ruttiger* "eliminates" claims because there is no evidence of any "conduct that does not implicate the claim-settlement process" and all claims "are limited to complaints about delays, claim handling, and disputes regarding entitlement to benefits");

7

exclusive process and remedies for claims arising out of a carrier's investigation, handling, or settling of a claim for workers' compensation benefits. We held that the Act bars claims for breach of the duty of good faith and fair dealing and claims under sections 541.060 and 542.003, not because those are the only claims the Act bars, but because those claims are necessarily based on the investigation and settlement of benefit claims. *Ruttiger*, 381 S.W.3d at 443–45. Similarly, we held that the Act did not bar the claim under section 541.061, not because that is the only claim the Act does not bar, but because that section does not address misrepresentations made "in regard to settling claims" for benefits. *Id*. at 446.

Whether the Act provides the exclusive process and remedies, therefore, does not depend on the label of the cause of action asserted. As we have often explained, claimants may not recast claims to avoid statutory requirements or to qualify for statutory protections. *See Diversicare Gen. Partner*, *Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005) (focusing on the essence of plaintiff's claim and finding it had to meet MLIIA requirements) (citing *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 38 (Tex. 1998); *Gormley v. Stover*, 907 S.W.2d 448, 450 (Tex. 1995) (per curiam) (finding that plaintiff's pleading was an attempt to recast malpractice claim as a DTPA action); *Sorokolit v. Rhodes*, 889 S.W.2d 239, 242 (Tex. 1994) (emphasizing that health care liability claim could not be re-cast as a different claim)). Instead, in assessing whether a claim falls within the Division's exclusive jurisdiction, courts must look at the substance of the claim. *Id.*

---

*Bean v. Tex. Mut. Ins. Co*., No. 09-11-00123-CV, 2012 WL 5450826, at *1 (Tex. App.—Beaumont Nov. 8, 2012, no pet.) (mem. op.) (holding that claims "are within the exclusive jurisdiction of the Texas Department of Insurance" because they "concern[] the claims handling process"); *Carpenter v. Sw. Med. Examination Servs., Inc*., 381 S.W.3d 583, 585–87 (Tex. App.—Eastland 2012, no pet.) (applying *Ruttiger* to hold that the Act precludes claims for common-law bad faith, statutory bad faith, fraud, and conspiracy to commit fraud based on allegations that carrier delayed paying benefits and concealed the nature of its relationship with reviewing doctor because the claims related to "the manner in which the carrier had handled the processing of [the] workers' compensation claim").

8

Nor does the *Ruttiger* rule depend on the nature of the relief the claimant seeks. The Johnsons contend that the Act does not bar their claims because they are seeking damages that are "unrelated" to workers' compensation benefits and based on injuries that are "independent" of harm the Act is intended to prevent. As we noted in *Ruttiger*, however, "the current Act with its definitions, detailed procedures, and dispute resolution process demonstrat[es] legislative intent for there to be no alternative remedies." 381 S.W.3d at 444.

Applying the *Ruttiger* rule to this case, we first conclude that the Act bars the Johnsons' claims for negligence, gross negligence, breach of contract, quantum meruit, breach of the duty of good faith and fair dealing, and statutory violations. In support of these causes of action, the Johnsons allege that Crawford failed to act reasonably in responding to the Johnsons' claims for benefits and made and then breached promises and representations that it would pay certain benefits. Because all of these claims arise out of Crawford's investigation, handling, and settling of the Johnsons' claim for workers' compensation benefits, the Act provides the exclusive procedures and remedies for these claims.

We reach the same conclusion regarding all of the Johnsons' common law and statutory causes of action based on allegations of deception, fraud, and misrepresentation. Because we held in *Ruttiger* that the Act does not necessarily bar a claim for misrepresenting an insurance policy under section 541.061 of the Insurance Code, our analysis on these claims is a bit more complex. The Johnsons contend that our holding in *Ruttiger* confirms that they can pursue all of their claims for misrepresentation and fraud. But we based our holding in *Ruttiger* on the fact that "section 541.061 does not specify that it applies in the context of settling claims." *Ruttiger*, 381 S.W.3d at 446. We held that, because section 541.061 "does not evidence intent that it be applied in regard

9

to settling claims, it is not at odds with the dispute resolution process of the workers' compensation system." *Id*.

This case presents a question we did not expressly address in *Ruttiger*: whether the Division has exclusive jurisdiction over a claim for "misrepresentation of an insurance policy" when the alleged misrepresentation occurs within the claims-settlement context. We hold that it does.[5] The Act specifically addresses and prohibits a carrier from making misrepresentations, including misrepresentations "to an employee" regarding the Act's provisions and "the reason for not paying benefits or terminating or reducing the payment of benefits." TEX. LAB. CODE § 415.002(a)(1), (13). The Act's comprehensive system for resolving workers' compensation claims encompasses prohibitions against fraud and misrepresentations made within the claims-settlement context, and grants the Division authority to regulate and sanction any such conduct. Because all of the Johnsons' misrepresentation-based claims complain of misrepresentations that Crawford allegedly made in connection with its investigation, handling, and settling of the Johnsons' claims for workers' compensation benefits,[6] we hold that the Division had exclusive jurisdiction to address those claims.

---

[5] At least two courts of appeals have reached this same conclusion. *See Hopper*, 2013 WL 5853747, at *1, 4 (holding that carrier was entitled to summary judgment on claim regarding "false statements" that claimants "were not entitled to coverage" because the claim was "limited to complaints about delays, claim handling, and disputes regarding entitlement to benefits"); *Bean*, 2012 WL 5450826, at *1 (holding that misrepresentation claims were within the Division's exclusive jurisdiction because those claims "concern[] the claims handling process," and worker "did not claim that the terms of the insurance policy covering his employer had been misrepresented to his employer"). As the *Hopper* court explained, we stated in *Ruttiger* "that section 541.061 applies to misrepresentations of a policy's terms, not misrepresentations about whether a specific claim is factually within a policy's terms." *Hopper*, 2013 WL 5853747, at *3. The alleged misrepresentations in that case "concerned statements about whether [the worker's] death resulted from a compensable injury and whether the Hoppers were his true beneficiaries," and "[a]lthough *Ruttiger* did not specifically involve common-law claims of fraudulent and negligent misrepresentation or unconscionability, these claims fail in the present case because there is no evidence here of any fraudulent, negligent, or unconscionable conduct that does not implicate the claim-settlement process." *Id*. at *3–*4.

[6] The Johnsons allege, for example, that Crawford "made blatantly false statements to avoid coverage and to avoid paying both income and medical benefits"; made "clearly untrue statements of material facts, including withholding proper home healthcare and paying the injured worker and his spouse directly to arrange and provide necessary care"; and "failed to state and to disclose known material facts that the lifetime income benefits were payable."

10

We now turn to the Johnsons' claims for malicious prosecution and intentional infliction of emotional distress, which are both based on allegations that Crawford falsely reported to a district attorney that the Johnsons committed insurance fraud by requesting mileage reimbursements for travel that had not occurred. We hold that the Division has exclusive jurisdiction over these claims because they also arise out of Crawford's investigation, handling, and settling of the Johnsons' claims for workers' compensation benefits. The mileage reimbursements at issue were part of the Johnsons' medical benefits under the Act, and carriers are required to report suspected fraud to the Department or to an authorized governmental entity as part of their claims-handling responsibilities. TEX. INS. CODE § 701.051(a). If a carrier knowingly and intentionally makes a false or misleading statement with the intent to deny the payment of a benefit, as the Johnsons allege Crawford did in this case, the Act provides the claimant with remedies, including criminal penalties. TEX. LAB. CODE §§ 415.008, 418.001. Because the Johnsons' causes of action for malicious prosecution and intentional infliction of emotional distress arise out of Crawford's investigation, handling, and settling of a workers' compensation claim, we hold that the Division had exclusive jurisdiction over those complaints.[7]

Finally, we turn to the Johnsons' argument that Natalie Johnson is not seeking relief as an ASARCO employee and thus her claims are independent of the Act and therefore not barred by it.

---

[7] Because the Act's grant of exclusive jurisdiction bars the courts from exercising jurisdiction over the claims, we reject the Johnsons' complaints that Crawford waived its argument that the Act bars the claims for malicious prosecution and is judicially estopped from raising them on mandamus. The Johnsons contend that Crawford's counsel "judicially admitted" in the trial court that the malicious prosecution claim "is outside of comp," and "[c]omp has nothing to do with malicious prosecution and we're not arguing that it does." We need not decide whether these statements could constitute a waiver, judicial admission, or the basis for judicial estoppel, because even if they could, such doctrines cannot create subject-matter jurisdiction where it does not otherwise exist. *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001) ("As a general rule, a court cannot acquire subject-matter jurisdiction by estoppel."); *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000) ("[S]ubject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver' . . . .") (quoting *Federal Underwriters Exch. v. Pugh*, 141 Tex. 539, 174 S.W.2d 598, 600 (1943)).

11

Specifically, the Johnsons argue that Natalie "has causes of action for malicious prosecution, intentional infliction of emotional distress, quantum meruit, and breach of contract all of which . . . do not arise under the Act because she was not an employee of ASARCO." But Natalie's claims, like Glenn's, arise out of Crawford's conduct in investigating, handling, and settling Glenn's claim for workers' compensation benefits. Specifically, she complains that Crawford breached promises to pay her to provide services to Glenn and that Crawford maliciously caused her to be prosecuted for insurance fraud. We have held that an employee's spouse cannot bring a separate action alleging claims under the Act. *See Rodriguez v. Naylor Indus., Inc.*, 763 S.W.2d 411, 412 (Tex. 1989) (recognizing that any claims compensable under the Act could not be brought by non-employee spouse except for intentional tort claims). The only noted exception to this rule is if a spouse is pursuing a loss of consortium claim where there is evidence that the employer's intentional tort caused the employee's injury. *Id.* ("Therefore, Mrs. Rodriguez' suit for loss of consortium is barred by the Workers' Compensation Act unless she can establish that the injury caused her husband was intentional."); *see also Reed Tool Co. v. Copelin*, 610 S.W.2d 736, 738–39 (Tex. 1980). We conclude that, even if Natalie Johnson has standing to assert her claims, they fall within the Division's exclusive jurisdiction.

Having concluded that the Division has exclusive jurisdiction over the Johnsons' claims against Crawford, we further conclude that Crawford is entitled to mandamus relief. *In re Sw. Bell Tel. Co., L.P.*, 235 S.W.3d 619, 624 (Tex. 2007) (granting mandamus to require dismissal of claims over which Public Utility Commission had exclusive jurisdiction because "[a]llowing the trial court to proceed if the PUC has exclusive jurisdiction would disrupt the orderly processes of government"); *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex. 2004) (same). Because the Johnsons' claims arise out of Crawford's investigation, handling, and settling of workers'

12

compensation claims, they fall within the Division's exclusive jurisdiction and the Act provides the sole process and remedies for those claims. Because the Johnsons failed to exhaust their administrative remedies under the Act prior to filing this action, the trial court lacked jurisdiction and should have dismissed it. *See City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) ("Absent exhaustion of administrative remedies, a trial court must dismiss the case.").

Pursuant to Texas Rule of Appellate Procedure 52.8(c), without hearing oral arguments, we conditionally grant mandamus relief and direct the 108th District Court to withdraw its order denying Crawford's plea to the jurisdiction and dismiss the Johnsons' claims for lack of subject-matter jurisdiction. Our writ will issue only if the court fails to act in accordance with this opinion.

**Opinion Delivered:** February 27, 2015

TAB 24

<<Prev Rule **Texas Administrative Code** Next Rule>>

| | |
|---|---|
| TITLE 28 | INSURANCE |
| PART 2 | TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION |
| CHAPTER 43 | INSURANCE COVERAGE |
| RULE §43.10 | Termination of Coverage |

(a) Definitions. The following words and terms, when used in this section, shall have the following meanings, unless the context clearly indicates otherwise.

  (1) Termination of coverage--Occurs when either party withdraws from a policy of workers' compensation insurance, either by canceling the policy in the middle of its term, or by declining to renew the policy on its anniversary date.

  (2) Rejection of the workers' compensation system--Occurs when a subscriber terminates coverage and fails or refuses to purchase a policy of workers' compensation insurance.

(b) Carrier's notice to the Industrial Accident Board. The carrier shall notify the board when coverage is terminated by filing Board Form IAB-9, "Cancellation or Non-Renewal Notice." The notice shall be:

  (1) filed in person or by certified mail; and

  (2) filed on or before the effective date of termination.

(c) Carrier's notice to subscriber. The carrier shall notify the subscriber when the carrier terminates coverage. No notice is required when the subscriber terminates coverage. Notice to the subscriber shall be:

  (1) in writing;

  (2) sent by certified mail; and

  (3) mailed no later than the 30th day before the effective date of termination; or

  (4) mailed no later than the 10th day before the effective date of termination if termination is due to:

    (A) fraud in obtaining coverage;

    (B) failure to pay a premium when payment is due;

    (C) an increase in the hazard for which the subscriber seeks coverage that results from an action or omission of the subscriber and that would produce an increase in the rate; or

    (D) a determination by the commissioner of insurance that coverage would be illegal or hazardous to the interests of subscribers, creditors, or the general public.

(d) Effective date of termination of coverage.

  (1) Termination by the carrier shall be effective on the latest of the following dates:

    (A) on the 31st day after the carrier notifies the subscriber as provided in subsection (c) of this section, or, if the termination is due to one of the conditions set out in subsection (c)(4) of this section, on the 11th day after the carrier notifies the subscriber as provided in subsection (c) of this section;

    (B) the day the carrier files notice of termination with the board, as provided in subsection (b) of this section; or

    (C) the actual termination date recited on the notice.

(2) Termination by the subscriber shall be effective on the actual termination date recited on the notice.

(3) Termination shall be deemed effective on the date a subsequent carrier files notice of inception of coverage for the subscriber.

(e) Duties of a subscriber who terminates coverage and rejects the workers' compensation system.

(1) A subscriber who terminates coverage and rejects the workers' compensation system shall, on or before the effective date of termination:

(A) post copies of notice of noncoverage, on a board-prescribed form, in three places around each work site affected; and

(B) file a copy of the notice of noncoverage with the board.

(2) Failure to comply renders the subscriber liable for statutory benefits to injured employees.

**Source Note:** The provisions of this §43.10 adopted to be effective December 21, 1989, 14 TexReg 6419.

[<<Prev Rule](#) **Texas Administrative Code** [Next Rule>>](#)

| | |
|---|---|
| TITLE 28 | INSURANCE |
| PART 2 | TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION |
| CHAPTER 110 | REQUIRED NOTICES OF COVERAGE |
| SUBCHAPTER A | CARRIER NOTICES |
| RULE §110.1 | Requirements for Notifying the Commission of Insurance Coverage |

[Historical](#) [Texas Register](#)

(a) An approved insurance policy, as referenced in Texas Labor Code §401.011(44)(A), includes a binder, which serves as evidence of a temporary agreement that legally provides workers' compensation insurance coverage until the approved insurance policy is issued or the binder is canceled.

(b) As used in this section, "insurance coverage information" includes information regarding whether or not an employer has workers' compensation insurance coverage and, if so, information about the means of insurance coverage used.

(c) This rule applies to employers whose employees are not exempt from coverage under the Workers' Compensation Act (the Act), and to insurance carriers. It does not apply to employers whose only employees are exempt from coverage under the Act. Certified Self Insurers are also subject to requirements specified in Chapter 114 of this title (relating to Self-Insurance).

(d) Employers and insurance carriers shall submit to the commission, or its designee, insurance coverage information in the form and manner prescribed by the commission. The commission may designate and contract with a data collection agency to collect and maintain insurance coverage information.

(e) Employers who do not have workers' compensation insurance coverage are required to provide insurance coverage information in the form of a notice of non-coverage, in accordance with subsection (d) of this section as follows:

  (1) if the employer elects not to be covered by workers' compensation insurance, the earlier of the following:

    (A) 30 days after receiving a commission request for the filing of a notice of non-coverage and annually thereafter on the anniversary date of the original filing;

    (B) 30 days after hiring an employee who is subject to coverage under the Act, and annually thereafter on the anniversary date of the original filing;

  (2) if the employer cancels coverage without purchasing a new policy or becoming a certified self-insurer, within ten days after notifying the insurance carrier and annually thereafter on the anniversary of the cancellation date of the workers' compensation policy; or

(3) if the employer is principally located outside of Texas, within ten days after receiving a written request from the commission for information about the coverage status of its Texas operations.

(f) When an employer elects to cancel coverage, the effective date of that cancellation shall be the later of:

  (1) 30 days after filing the notice of non-coverage with the commission; or

  (2) the cancellation date of the policy.

(g) The workers' compensation insurance coverage shall be extended until the effective date of withdrawal as established in subsection (f) of this section, and the employer is obligated to pay premiums which accrue during this period.

(h) Insurance carriers are required to provide insurance coverage information for insured Texas employers in accordance with subsection (d) of this rule as follows:

  (1) within ten days after the effective date of coverage or endorsement and annually thereafter no later than ten days after the anniversary date of coverage;

  (2) 30 days prior to the date on which cancellation or non-renewal becomes effective if the insurance carrier cancels the workers' compensation insurance coverage, does not renew the workers' compensation insurance coverage on the anniversary date, or cancels a binder before it issues a policy;

  (3) ten days prior to the date on which the cancellation becomes effective if the insurance carrier cancels an employer's workers' compensation coverage in accordance with Texas Labor Code, §406.008(a)(2); or

  (4) within ten days after receiving notice of the effective date of cancellation from the covered employer because the employer switched workers' compensation insurance carriers.

(i) Workers' compensation insurance coverage remains in effect until the later of:

  (1) the end of the policy period, or

  (2) the date the commission and the employer receive the notification from the insurance carrier of coverage cancellation or non-renewal and the later of:

   (A) the date 30 days after receipt of the notice required by Texas Labor Code, §406.008(a)(1);

   (B) the date ten days after receipt of the notice required by Texas Labor Code, §406.008(a)(2); or

   (C) the effective date of the cancellation if later than the date in paragraphs (1) or (2) of this subsection.

(j) "Claim administration contact" as it applies to this chapter is the person responsible for identifying or confirming an employer's coverage information with the commission. Each insurance carrier shall file a notice with the commission of their designated claim administration contact not later than the 10th day after the date on which the coverage or claim administration agreement takes effect. A single administration address for the purpose of identifying or confirming an employer's coverage status shall be provided. If the single claims administration contact address changes, the insurance carrier shall provide the new address to the commission at least 30 days in advance of the change taking effect. This information shall be filed in the form and manner prescribed by the commission.

(k) An insurance carrier may elect to have a servicing agent process and file all coverage information, but the insurance carrier remains responsible for meeting all filing requirements of this rule.

(l) Notwithstanding the other provisions of this section, if an employer switches workers' compensation insurance carriers, the original policy is considered canceled as of the date the new coverage takes effect. Employers shall notify the prior insurance carrier of the cancellation date of the original policy, in writing, within ten days of the effective date.

---

**Source Note:** The provisions of this §110.1 adopted to be effective September 15, 1993, 18 TexReg 5884; amended to be effective March 13, 2000, 25 TexReg 2080; amended to be effective June 5, 2003, 28 TexReg 4284

TAB 25

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 401. GENERAL PROVISIONS


SUBCHAPTER A. SHORT TITLE; APPLICATION OF SUNSET ACT


Sec. 401.001.  SHORT TITLE.  This subtitle may be cited as the Texas Workers' Compensation Act.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 401.003.  ACTIVITIES OF THE STATE AUDITOR.  (a)  The division is subject to audit by the state auditor in accordance with Chapter 321, Government Code.  The state auditor may audit:

(1)  the structure and internal controls of the division;

(2)  the level and quality of service provided by the division to employers, injured employees, insurance carriers, self-insured governmental entities, and other participants;

(3)  the implementation of statutory mandates by the division;

(4)  employee turnover;

(5)  information management systems, including public access to nonconfidential information;

(6)  the adoption and implementation of administrative rules by the commissioner; and

(7)  assessment of administrative violations and the penalties for those violations.

(b)  Nothing in this section limits the authority of the state auditor under Chapter 321, Government Code.

Added by Acts 2001, 77th Leg., ch. 1456, Sec. 7.02, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.002, eff. September 1, 2005.


SUBCHAPTER B. DEFINITIONS


1

Sec. 401.011.  GENERAL DEFINITIONS.  In this subtitle:

(1)  "Adjuster" means a person licensed under Chapter 4101, Insurance Code.

(2)  "Administrative violation" means a violation of this subtitle, a rule adopted under this subtitle, or an order or decision of the commissioner that is subject to penalties and sanctions as provided by this subtitle.

(3)  "Agreement" means the resolution by the parties to a dispute under this subtitle of one or more issues regarding an injury, death, coverage, compensability, or compensation.  The term does not include a settlement.

(4)  "Alien" means a person who is not a citizen of the United States.

(5)  "Benefit" means a medical benefit, an income benefit, a death benefit, or a burial benefit based on a compensable injury.

(5-a)  "Case management" means a collaborative process of assessment, planning, facilitation, and advocacy for options and services to meet an individual's health needs through communication and application of available resources to promote quality, cost-effective outcomes.

(6)  "Certified self-insurer" means a private employer granted a certificate of authority to self-insure, as authorized by this subtitle, for the payment of compensation.

(7)  "Child" means a son or daughter.  The term includes an adopted child or a stepchild who is a dependent of the employee.

(8)  "Commissioner" means the commissioner of workers' compensation.

(9)  "Commute" means to pay in a lump sum.

(10)  "Compensable injury" means an injury that arises out of and in the course and scope of employment for which compensation is payable under this subtitle.

(11)  "Compensation" means payment of a benefit.

(12)  "Course and scope of employment" means an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer and that

is performed by an employee while engaged in or about the furtherance of the affairs or business of the employer. The term includes an activity conducted on the premises of the employer or at other locations. The term does not include:

(A) transportation to and from the place of employment unless:

(i) the transportation is furnished as a part of the contract of employment or is paid for by the employer;

(ii) the means of the transportation are under the control of the employer; or

(iii) the employee is directed in the employee's employment to proceed from one place to another place; or

(B) travel by the employee in the furtherance of the affairs or business of the employer if the travel is also in furtherance of personal or private affairs of the employee unless:

(i) the travel to the place of occurrence of the injury would have been made even had there been no personal or private affairs of the employee to be furthered by the travel; and

(ii) the travel would not have been made had there been no affairs or business of the employer to be furthered by the travel.

(12-a) "Credentialing" has the meaning assigned by Chapter 1305, Insurance Code.

(13) "Death benefit" means a payment made under this subtitle to a legal beneficiary because of the death of an employee.

(13-a) "Department" means the Texas Department of Insurance.

(14) "Dependent" means an individual who receives a regular or recurring economic benefit that contributes substantially to the individual's welfare and livelihood if the individual is eligible for distribution of benefits under Chapter 408.

(15) "Designated doctor" means a doctor appointed by mutual agreement of the parties or by the division to recommend a resolution of a dispute as to the medical condition of an injured employee.

3

(16)  "Disability" means the inability because of a compensable injury to obtain and retain employment at wages equivalent to the preinjury wage.

(16-a)  "Division" means the division of workers' compensation of the department.

(17)  "Doctor" means a doctor of medicine, osteopathic medicine, optometry, dentistry, podiatry, or chiropractic who is licensed and authorized to practice.

(18)  "Employer" means, unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage.  The term includes a governmental entity that self-insures, either individually or collectively.

(18-a)  "Evidence-based medicine" means the use of current best quality scientific and medical evidence formulated from credible scientific studies, including peer-reviewed medical literature and other current scientifically based texts, and treatment and practice guidelines in making decisions about the care of individual patients.

(19)  "Health care" includes all reasonable and necessary medical aid, medical examinations, medical treatments, medical diagnoses, medical evaluations, and medical services.  The term does not include vocational rehabilitation. The term includes:

(A)  medical, surgical, chiropractic, podiatric, optometric, dental, nursing, and physical therapy services provided by or at the direction of a doctor;

(B)  physical rehabilitation services performed by a licensed occupational therapist provided by or at the direction of a doctor;

(C)  psychological services prescribed by a doctor;

(D)  the services of a hospital or other health care facility;

(E)  a prescription drug, medicine, or other remedy; and

(F)  a medical or surgical supply, appliance,

brace, artificial member, or prosthetic or orthotic device, including the fitting of, change or repair to, or training in the use of the appliance, brace, member, or device.

(20)  "Health care facility" means a hospital, emergency clinic, outpatient clinic, or other facility providing health care.

(21)  "Health care practitioner" means:

(A)  an individual who is licensed to provide or render and provides or renders health care;  or

(B)  a nonlicensed individual who provides or renders health care under the direction or supervision of a doctor.

(22)  "Health care provider" means a health care facility or health care practitioner.

(22-a)  "Health care reasonably required" means health care that is clinically appropriate and considered effective for the injured employee's injury and provided in accordance with best practices consistent with:

(A)  evidence-based medicine; or

(B)  if that evidence is not available, generally accepted standards of medical practice recognized in the medical community.

(23)  "Impairment" means any anatomic or functional abnormality or loss existing after maximum medical improvement that results from a compensable injury and is reasonably presumed to be permanent.

(24)  "Impairment rating" means the percentage of permanent impairment of the whole body resulting from a compensable injury.

(25)  "Income benefit" means a payment made to an employee for a compensable injury.  The term does not include a medical benefit, death benefit, or burial benefit.

(25-a)  "Independent review organization" has the same meaning as in Section 1305.004(a)(11), Insurance Code.

(26)  "Injury" means damage or harm to the physical structure of the body and a disease or infection naturally resulting from the damage or harm.  The term includes an occupational disease.

5

(27)  "Insurance carrier" means:

(A)  an insurance company;

(B)  a certified self-insurer for workers' compensation insurance;

(C)  a certified self-insurance group under Chapter 407A;  or

(D)  a governmental entity that self-insures, either individually or collectively.

(28)  "Insurance company" means a person authorized and admitted by the Texas Department of Insurance to do insurance business in this state under a certificate of authority that includes authorization to write workers' compensation insurance.

(29)  "Legal beneficiary" means a person entitled to receive a death benefit under this subtitle.

(30)  "Maximum medical improvement" means the earlier of:

(A)  the earliest date after which, based on reasonable medical probability, further material recovery from or lasting improvement to an injury can no longer reasonably be anticipated;

(B)  the expiration of 104 weeks from the date on which income benefits begin to accrue;  or

(C)  the date determined as provided by Section 408.104.

(31)  "Medical benefit" means payment for health care reasonably required by the nature of a compensable injury and intended to:

(A)  cure or relieve the effects naturally resulting from the compensable injury, including reasonable expenses incurred by the employee for necessary treatment to cure and relieve the employee from the effects of an occupational disease before and after the employee knew or should have known the nature of the disability and its relationship to the employment;

(B)  promote recovery;  or

(C)  enhance the ability of the employee to return to or retain employment.

(31-a)  "Network" or "workers' compensation health care

network" means an organization that is:

(A)  formed as a health care provider network to provide health care services to injured employees;

(B)  certified in accordance with Chapter 1305, Insurance Code, and rules of the commissioner of insurance; and

(C)  established by, or operates under contract with, an insurance carrier.

(32)  "Objective" means independently verifiable or confirmable results that are based on recognized laboratory or diagnostic tests, or signs confirmable by physical examination.

(33)  "Objective clinical or laboratory finding" means a medical finding of impairment resulting from a compensable injury, based on competent objective medical evidence, that is independently confirmable by a doctor, including a designated doctor, without reliance on the subjective symptoms perceived by the employee.

(34)  "Occupational disease" means a disease arising out of and in the course of employment that causes damage or harm to the physical structure of the body, including a repetitive trauma injury.  The term includes a disease or infection that naturally results from the work-related disease.  The term does not include an ordinary disease of life to which the general public is exposed outside of employment, unless that disease is an incident to a compensable injury or occupational disease.

(34-a)  "Orthotic device" means a custom-fitted or custom-fabricated medical device that is applied to a part of the human body to correct a deformity, improve function, or relieve symptoms related to a compensable injury or occupational disease.

(35)  "Penalty" means a fine established by this subtitle.

(35-a)  "Prosthetic device" means an artificial device designed to replace, wholly or partly, an arm or leg.

(36)  "Repetitive trauma injury" means damage or harm to the physical structure of the body occurring as the result of repetitious, physically traumatic activities that occur over time and arise out of and in the course and scope of employment.

(37)  "Representative" means a person, including an

7

attorney, authorized by the commissioner to assist or represent an employee, a person claiming a death benefit, or an insurance carrier in a matter arising under this subtitle that relates to the payment of compensation.

(38)  "Research center" means the research functions of the Texas Department of Insurance required under Chapter 405.

(38-a)  "Retrospective review" means the utilization review process of reviewing the medical necessity and reasonableness of health care that has been provided to an injured employee.

(39)  "Sanction" means a penalty or other punitive action or remedy imposed by the commissioner on an insurance carrier, representative, employee, employer, or health care provider for an act or omission in violation of this subtitle or a rule, order, or decision of the commissioner.

(40)  "Settlement" means a final resolution of all the issues in a workers' compensation claim that are permitted to be resolved under the terms of this subtitle.

(41)  "Subjective" means perceivable only by an employee and not independently verifiable or confirmable by recognized laboratory or diagnostic tests or signs observable by physical examination.

(42)  "Treating doctor" means the doctor who is primarily responsible for the employee's health care for an injury.

(42-a)  "Utilization review" has the meaning assigned by Chapter 4201, Insurance Code.

(42-b)  "Utilization review agent" has the meaning assigned by Chapter 4201, Insurance Code.

(42-c)  "Violation" means an administrative violation subject to penalties and sanctions as provided by this subtitle.

(43)  "Wages" includes all forms of remuneration payable for a given period to an employee for personal services. The term includes the market value of board, lodging, laundry, fuel, and any other advantage that can be estimated in money that the employee receives from the employer as part of the employee's remuneration.

(44)  "Workers' compensation insurance coverage"

means:

(A)  an approved insurance policy to secure the payment of compensation;

(B)  coverage to secure the payment of compensation through self-insurance as provided by this subtitle; or

(C)  coverage provided by a governmental entity to secure the payment of compensation.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 1443, Sec. 1, eff. Sept. 1, 1997;  Acts 2003, 78th Leg., ch. 275, Sec. 2, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.003, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 133 (H.B. 1003), Sec. 1, eff. September 1, 2007.

Acts 2007, 80th Leg., R.S., Ch. 134 (H.B. 1006), Sec. 1, eff. September 1, 2007.

Acts 2007, 80th Leg., R.S., Ch. 147 (S.B. 458), Sec. 1, eff. September 1, 2007.

Acts 2009, 81st Leg., R.S., Ch. 1330 (H.B. 4290), Sec. 13, eff. September 1, 2009.


Sec. 401.012.  DEFINITION OF EMPLOYEE.  (a)  In this subtitle, "employee" means each person in the service of another under a contract of hire, whether express or implied, or oral or written.

(b)  The term "employee" includes:

(1)  an employee employed in the usual course and scope of the employer's business who is directed by the employer temporarily to perform services outside the usual course and scope of the employer's business;

(2)  a person, other than an independent contractor or the employee of an independent contractor, who is engaged in construction, remodeling, or repair work for the employer at the premises of the employer;  and

(3)  a person who is a trainee under the Texans Work

program established under Chapter 308.

(c) The term "employee" does not include:

(1) a master of or a seaman on a vessel engaged in interstate or foreign commerce; or

(2) a person whose employment is not in the usual course and scope of the employer's business.

(d) A person who is an employee for the purposes of this subtitle and engaged in work that otherwise may be legally performed is an employee despite:

(1) a license, permit, or certificate violation arising under state law or municipal ordinance; or

(2) a violation of a law regulating wages, hours, or work on Sunday.

(e) This section may not be construed to relieve from fine or imprisonment any individual, firm, or corporation employing or performing work or a service prohibited by a statute of this state or a municipal ordinance.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 456, Sec. 6, eff. Sept. 1, 1997.


Sec. 401.013. DEFINITION OF INTOXICATION. (a) In this subtitle, "intoxication" means the state of:

(1) having an alcohol concentration to qualify as intoxicated under Section 49.01(2), Penal Code; or

(2) not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of:

(A) an alcoholic beverage, as defined by Section 1.04, Alcoholic Beverage Code;

(B) a controlled substance or controlled substance analogue, as defined by Section 481.002, Health and Safety Code;

(C) a dangerous drug, as defined by Section 483.001, Health and Safety Code;

(D) an abusable glue or aerosol paint, as defined by Section 485.001, Health and Safety Code; or

(E) any similar substance, the use of which is

10

regulated under state law.

(b)  The term "intoxication" does not include the loss of normal use of mental or physical faculties resulting from the introduction into the body of a substance:

(1)  taken under and in accordance with a prescription written for the employee by the employee's doctor;  or

(2)  listed under Subsection (a) by inhalation or absorption incidental to the employee's work.

(c)  On the voluntary introduction into the body of any substance listed under Subsection (a)(2)(B), based on a blood test or urinalysis, it is a rebuttable presumption that a person is intoxicated and does not have the normal use of mental or physical faculties.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 14.48, eff. Sept. 1, 1995; Acts 1999, 76th Leg., ch. 1426, Sec. 1, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.004, eff. September 1, 2005.


SUBCHAPTER C. MISCELLANEOUS PROVISIONS


Sec.  401.021.  APPLICATION  OF  OTHER  ACTS.  Except  as otherwise provided by this subtitle:

(1)  a  proceeding,  hearing,  judicial  review,  or enforcement of a commissioner order, decision, or rule is governed by the following subchapters and sections of Chapter 2001, Government Code:

(A)  Subchapters A, B, D, E, G, and H, excluding Sections 2001.004(3) and 2001.005;

(B)  Sections 2001.051, 2001.052, and 2001.053;

(C)  Sections 2001.056 through 2001.062; and

(D)  Section 2001.141(c);

(2)  a  proceeding,  hearing,  judicial  review,  or enforcement of a commissioner order, decision, or rule is governed by Subchapters A and B, Chapter 2002, Government Code, excluding Sections 2002.001(3) and 2002.023;

(3)  Chapter 551, Government Code, applies to a proceeding under this subtitle, other than:

(A)  a benefit review conference;

(B)  a contested case hearing;

(C)  a proceeding of the appeals panel;

(D)  arbitration; or

(E)  another proceeding involving a determination on a workers' compensation claim; and

(4)  Chapter 552, Government Code, applies to a workers' compensation record of the division, the department, or the office of injured employee counsel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.92, 5.95(82), (88), eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.005, eff. September 1, 2005.


Sec. 401.022.  DISCRIMINATION PROHIBITED.  (a)  This subtitle may not be applied to discriminate because of race, sex, national origin, or religion.

(b)  This section does not prohibit consideration of an anatomical difference in application of the impairment guidelines under Chapter 408 in rating an injury or a disease such as, but not limited to, breast cancer or an inguinal hernia.  If an impairment rating assigns different values to the same injury for males and females, the higher value shall be applied.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 401.023.  INTEREST OR DISCOUNT RATE. (a)  Interest or a discount under this subtitle shall be computed at the rate provided by this section.

(b)  The division shall compute and publish the interest and discount rate quarterly, using the treasury constant maturity rate for one-year treasury bills issued by the United States government, as published by the Federal Reserve Board on the 15th day preceding the first day of the calendar quarter for which the rate is to be

effective, plus 3.5 percent.  For this purpose, calendar quarters begin January 1, April 1, July 1, and October 1.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 2, eff. Oct. 1, 1999;  Acts 2001, 77th Leg., ch. 1456, Sec. 15.01, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.006, eff. September 1, 2005.


Sec. 401.024.  TRANSMISSION OF INFORMATION.  (a)  In this section, "electronic transmission" means the transmission of information by facsimile, electronic mail, electronic data interchange, or any other similar method.

(b)  Notwithstanding another provision of this subtitle that specifies the form, manner, or procedure for the transmission of specified information, the commissioner by rule may permit or require the use of an electronic transmission instead of the specified form, manner, or procedure. If the electronic transmission of information is not authorized or permitted by rule, the transmission of that information is governed by any applicable statute or rule that prescribes the form, manner, or procedure for the transmission, including standards adopted by the Department of Information Resources.

(c)  The commissioner may designate and contract with one or more data collection agents to fulfill the data collection requirements of this subtitle.  To qualify as a data collection agent, an organization must demonstrate at least five years of experience in data collection, data maintenance, data quality control, accounting, and related areas.

(d)  The commissioner may prescribe the form, manner, and procedure for transmitting any authorized or required electronic transmission, including requirements related to security, confidentiality, accuracy, and accountability.

(e)  A data collection agent may collect from a reporting insurance carrier, other than a governmental entity, any fees necessary for the agent to recover the necessary and reasonable costs of collecting data from that reporting insurance carrier.

(f) A reporting insurance carrier, other than a governmental entity, shall pay the fee to the data collection agent for the data collection services provided by the data collection agent.

(g) The commissioner may adopt rules necessary to implement this section.

Added by Acts 1999, 76th Leg., ch. 954, Sec. 1, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.007, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 410 (S.B. 800), Sec. 1, eff. June 17, 2011.


Sec. 401.025. REFERENCES TO COMMISSION AND EXECUTIVE DIRECTOR. (a) A reference in this code or other law to the Texas Workers' Compensation Commission or the executive director of that commission means the division or the commissioner as consistent with the respective duties of the commissioner and the division under this code and other workers' compensation laws of this state.

(b) A reference in this code or other law to the executive director of the Texas Workers' Compensation Commission means the commissioner.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.008, eff. September 1, 2005.

TAB 26

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 402.  OPERATION AND ADMINISTRATION OF WORKERS' COMPENSATION SYSTEM

SUBCHAPTER A.  GENERAL ADMINISTRATION OF SYSTEM; WORKERS' COMPENSATION DIVISION

Sec. 402.001.  ADMINISTRATION OF SYSTEM:  TEXAS DEPARTMENT OF INSURANCE; WORKERS' COMPENSATION DIVISION.  (a)  Except as provided by Section 402.002, the Texas Department of Insurance is the state agency designated to oversee the workers' compensation system of this state.

(b)  The division of workers' compensation is established as a division within the Texas Department of Insurance to administer and operate the workers' compensation system of this state as provided by this title.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.02, eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.003, eff. September 1, 2005.

Sec.  402.00111.  RELATIONSHIP  BETWEEN  COMMISSIONER  OF INSURANCE AND COMMISSIONER OF WORKERS' COMPENSATION; SEPARATION OF AUTHORITY; RULEMAKING.  (a)  The division is administered by the commissioner of workers' compensation as provided by this subchapter. Except as otherwise provided by this title, the commissioner of workers' compensation shall exercise all executive authority, including rulemaking authority, under this title.

(b)  The commissioner of insurance may delegate to the commissioner of workers' compensation or to that person's designee and may redact any delegation, and the commissioner of workers' compensation may delegate to the commissioner of insurance or to that person's designee, any power or duty regarding workers' compensation imposed on the commissioner of insurance or the

1

commissioner of workers' compensation under this title, including the authority to make final orders or decisions. A delegation made under this subsection must be made in writing.

(c) The commissioner of insurance shall develop and implement policies that clearly separate the respective responsibilities of the department and the division.

(d) The commissioner of insurance may provide advice, research, and comment regarding the adoption of rules by the commissioner of workers' compensation under this subtitle.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00112. INVESTIGATION OF DIVISION. The department shall investigate the conduct of the work of the division. For that purpose, the department shall have access at any time to all division books and records and may require an officer or employee of the division to furnish written or oral information.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00113. ADMINISTRATIVE ATTACHMENT TO DEPARTMENT. (a) The division of workers' compensation is administratively attached to the department.

(b) The department shall provide the staff and facilities necessary to enable the division to perform the duties of the division under this title, including:

(1) administrative assistance and services to the division, including budget planning and purchasing;

(2) personnel and financial services; and

(3) computer equipment and support.

(c) The commissioner of workers' compensation and the commissioner of insurance may enter into agreements as necessary to implement this title.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00114. DUTIES OF DIVISION; SINGLE POINT OF

CONTACT.  (a)  In addition to other duties required under this title, the division shall:

(1)  regulate and administer the business of workers' compensation in this state; and

(2)  ensure that this title and other laws regarding workers' compensation are executed.

(b)  To the extent determined feasible by the commissioner, the division shall establish a single point of contact for injured employees receiving services from the division.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00115.  COMPOSITION OF DIVISION.  The division is composed of the commissioner of workers' compensation and other officers and employees as required to efficiently implement:

(1)  this title;

(2)  other workers' compensation laws of this state; and

(3)  other laws granting jurisdiction or applicable to the division or the commissioner.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00116.  CHIEF EXECUTIVE.  (a)  The commissioner of workers' compensation is the division's chief executive and administrative officer.  The commissioner shall administer and enforce this title, other workers' compensation laws of this state, and other laws granting jurisdiction to or applicable to the division or the commissioner.  Except as otherwise specifically provided by this title, a reference in this title to the "commissioner" means the commissioner of workers' compensation.

(b)  The commissioner has the powers and duties vested in the division by this title and other workers' compensation laws of this state.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00117.  APPOINTMENT; TERM. (a) The governor, with the advice and consent of the senate, shall appoint the commissioner. The commissioner serves a two-year term that expires on February 1 of each odd-numbered year.

(b)  The governor shall appoint the commissioner without regard to the race, color, disability, sex, religion, age, or national origin of the appointee.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00118.  QUALIFICATIONS. The commissioner must:

(1)  be a competent and experienced administrator;

(2)  be well-informed and qualified in the field of workers' compensation; and

(3)  have at least five years of experience as an executive in the administration of business or government or as a practicing attorney, physician, or certified public accountant.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00119.  INELIGIBILITY FOR PUBLIC OFFICE.  The commissioner is ineligible to be a candidate for a public elective office in this state unless the commissioner has resigned and the governor has accepted the resignation.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00120.  COMPENSATION. The commissioner is entitled to compensation as provided by the General Appropriations Act.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00121.  GROUNDS FOR REMOVAL. (a) It is a ground for removal from office that the commissioner:

(1)  does not have at the time of appointment the qualifications required by Section 402.00118;

(2)  does not maintain during service as commissioner

the qualifications required by Section 402.00118;

(3) violates a prohibition established by Section 402.00122, 402.00124, 402.00125, or 402.00126; or

(4) cannot because of illness or incapacity discharge the commissioner's duties for a substantial part of the commissioner's term.

(b) The validity of an action of the commissioner or the division is not affected by the fact that it is taken when a ground for removal of the commissioner exists.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00122. PROHIBITED GIFTS; ADMINISTRATIVE VIOLATION. (a) The commissioner or an employee of the division may not accept a gift, a gratuity, or entertainment from a person having an interest in a matter or proceeding pending before the division.

(b) A violation of Subsection (a) is an administrative violation and constitutes a ground for removal from office or termination of employment.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00123. CIVIL LIABILITY OF COMMISSIONER. The commissioner is not liable in a civil action for an act performed in good faith in the execution of duties as commissioner.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.

Sec. 402.00124. CONFLICT OF INTEREST. (a) In this section, "Texas trade association" means a cooperative and voluntarily joined statewide association of business or professional competitors in this state designed to assist its members and its industry or profession in dealing with mutual business or professional problems and in promoting their common interest.

(b) A person may not be the commissioner and may not be a division employee employed in a "bona fide executive, administrative, or professional capacity" as that phrase is used

5

for purposes of establishing an exemption to the overtime provisions of the federal Fair Labor Standards Act of 1938 (29 U.S.C. Section 201 et seq.) if:

(1)  the person is an officer, employee, or paid consultant of a Texas trade association in the field of workers' compensation; or

(2)  the person's spouse is an officer, manager, or paid consultant of a Texas trade association in the field of workers' compensation.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00125.  PROHIBITION ON CERTAIN EMPLOYMENT OR REPRESENTATION.  (a)  A former commissioner or former employee of the division involved in hearing cases under this title may not:

(1)  be employed by an insurance carrier that was subject to the scope of the commissioner's or employee's official responsibility while the commissioner or employee was associated with the division; or

(2)  represent a person before the division or a court in a matter:

(A)  in which the commissioner or employee was personally involved while associated with the division; or

(B)  that was within the commissioner's or employee's official responsibilities while the commissioner or employee was associated with the division.

(b)  The prohibition under Subsection (a)(1) applies until the:

(1)  second anniversary of the date the commissioner ceases to serve as the commissioner; and

(2)  first anniversary of the date the employee's employment with the division ceases.

(c)  The prohibition under Subsection (a)(2) applies to a current commissioner or employee of the division while the commissioner or employee is involved in hearing cases under this title and at any time thereafter.

(d)  A person commits an offense if the person violates this

section.  An offense under this section is a Class A misdemeanor.
Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00126.  LOBBYING ACTIVITIES.  A person may not serve as commissioner or act as general counsel to the commissioner if the person is required to register as a lobbyist under Chapter 305, Government Code, because of the person's activities for compensation related to the operation of the department or the division.
Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00127.  TRAINING PROGRAM FOR COMMISSIONER.  (a) Not later than the 90th day after the date on which the commissioner takes office, the commissioner shall complete a training program that complies with this section.

(b)  The training program must provide the commissioner with information regarding:

(1)  the legislation that created the division;

(2)  the programs operated by the division;

(3)  the role and functions of the division;

(4)  the rules of the commissioner of insurance relating to the division, with an emphasis on the rules that relate to disciplinary and investigatory authority;

(5)  the current budget for the division;

(6)  the results of the most recent formal audit of the division;

(7)  the requirements of:

(A)  the open meetings law, Chapter 551, Government Code;

(B)  the public information law, Chapter 552, Government Code;

(C)  the administrative procedure law, Chapter 2001, Government Code; and

(D)  other laws relating to public officials, including conflict-of-interest laws; and

(8)AAany applicable ethics policies adopted by the division or the Texas Ethics Commission.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.00128.AAGENERAL POWERS AND DUTIES OF COMMISSIONER. (a)AAThe commissioner shall conduct the daily operations of the division and otherwise implement division policy.

(b)AAThe commissioner or the commissioner 's designee may:

(1)AAinvestigate misconduct;

(2)AAhold hearings;

(3)AAissue subpoenas to compel the attendance of witnesses and the production of documents;

(4)AAadminister oaths;

(5)AAtake testimony directly or by deposition or interrogatory;

(6)AAassess and enforce penalties established under this title;

(7)AAenter appropriate orders as authorized by this title;

(8)AAinstitute an action in the division 's name to enjoin the violation of this title;

(9)AAinitiate an action under Section 410.254 to intervene in a judicial proceeding;

(10)AAprescribe the form, manner, and procedure for the transmission of information to the division;

(11)AAcorrect clerical errors in the entry of orders; and

(12)AAexercise other powers and perform other duties as necessary to implement and enforce this title.

(c)AAThe commissioner is the agent for service of process on out-of-state employers.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.004, eff. September 1, 2005.


Sec. 402.002.AAADMINISTRATION OF SYSTEM:AAOFFICE OF INJURED EMPLOYEE COUNSEL.AAThe office of injured employee counsel

established under Chapter 404 shall perform the functions regarding the provision of workers' compensation benefits in this state designated by this subtitle as under the authority of that office. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 1170, Sec. 47.01, eff. Sept. 1, 2003. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.005, eff. September 1, 2005.


SUBCHAPTER B.  SYSTEM GOALS; GENERAL ADMINISTRATION OF SYSTEM


Sec. 402.021.  GOALS; LEGISLATIVE INTENT; GENERAL WORKERS' COMPENSATION MISSION OF DEPARTMENT.  (a)  The basic goals of the workers' compensation system of this state are as follows:

(1)  each employee shall be treated with dignity and respect when injured on the job;

(2)  each injured employee shall have access to a fair and accessible dispute resolution process;

(3)  each injured employee shall have access to prompt, high-quality medical care within the framework established by this subtitle; and

(4)  each injured employee shall receive services to facilitate the employee's return to employment as soon as it is considered safe and appropriate by the employee's health care provider.

(b) It is the intent of the legislature that, in implementing the goals described by Subsection (a), the workers' compensation system of this state must:

(1)  promote safe and healthy workplaces through appropriate incentives, education, and other actions;

(2)  encourage the safe and timely return of injured employees to productive roles in the workplace;

(3)  provide appropriate income benefits and medical benefits in a manner that is timely and cost-effective;

(4)  provide timely, appropriate, and high-quality medical care supporting restoration of the injured employee's physical condition and earning capacity;

9

(5)  minimize the likelihood of disputes and resolve them promptly and fairly when identified;

(6)  promote compliance with this subtitle and rules adopted under this subtitle through performance-based incentives;

(7)  promptly detect and appropriately address acts or practices of noncompliance with this subtitle and rules adopted under this subtitle;

(8)  effectively educate and clearly inform each person who participates in the system as a claimant, employer, insurance carrier, health care provider, or other participant of the person's rights and responsibilities under the system and how to appropriately interact within the system; and

(9)  take maximum advantage of technological advances to provide the highest levels of service possible to system participants and to promote communication among system participants.

(c)  This section may not be construed as:

(1)  creating a cause of action; or

(2)  establishing an entitlement to benefits to which a claimant is not otherwise entitled by this subtitle.

(d)  As provided by this subtitle, the division shall work to promote and help ensure the safe and timely return of injured employees to productive roles in the workforce.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 1098, Sec. 7, eff. Sept. 1, 1997. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.0065, eff. September 1, 2005.


Sec.  402.0215.  REFERENCE TO COMMISSION DIVISIONS.  A reference in this title or any other law to the division of workers' health and safety, the division of medical review, the division of compliance and practices, the division of hearings, and the division of self-insurance regulation of the former Texas Workers' Compensation Commission means the division of workers' compensation of the Texas Department of Insurance.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.001, eff.

September 1, 2005.

Sec. 402.022. PUBLIC INTEREST INFORMATION. (a) The commissioner shall prepare information of public interest describing the functions of the division and the procedures by which complaints are filed with and resolved by the division.

(b) The commissioner shall make the information available to the public and appropriate state agencies.

(c) The commissioner by rule shall ensure that each division form, standard letter, and brochure under this subtitle:

(1) is written in plain language;

(2) is in a readable and understandable format; and

(3) complies with all applicable requirements relating to minimum readability requirements.

(d) The division shall make informational materials described by this section available in English and Spanish.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.002, eff. September 1, 2005.

Sec. 402.023. COMPLAINT INFORMATION. (a) The commissioner shall:

(1) adopt rules regarding the filing of a complaint under this subtitle against an individual or entity subject to regulation under this subtitle; and

(2) ensure that information regarding the complaint process is available on the division's Internet website.

(b) The rules adopted under this section must, at a minimum:

(1) ensure that the division clearly defines in rule the method for filing a complaint; and

(2) define what constitutes a frivolous complaint under this subtitle.

(c) The division shall develop and post on the division's Internet website:

(1) a simple standardized form for filing complaints under this subtitle; and

11

(2)AAinformationAAregardingAAtheAAcomplaintAAfiling process.

(c-1)AAThe division shall adopt a policy outlining the division's complaint process from receipt of the initial complaint to the complaint's disposition.

(d)AAThe division shall keep an information file about each written complaint filed with the division under this subtitle that is unrelated to a specific workers' compensation claim, including a complaintAAregardingAAtheAAadministrationAAofAAtheAAworkers' compensation system.AAThe information must include:

(1)AAthe date the complaint is received;

(2)AAthe name of the complainant;

(3)AAthe subject matter of the complaint;

(4)AAa record of all persons contacted in relation to the complaint;

(5)AAaAAsummaryAAofAAtheAAresultsAAofAAtheAAreviewAAor investigation of the complaint; and

(6)AAfor complaints for which the division took no action, an explanation of the reason the complaint was closed without action.

(e)AAForAAeachAAwrittenAAcomplaintAAthatAAisAAunrelatedAAtoAAa specificAAworkers'AAcompensationAAclaimAAthatAAtheAAdivisionAAhas authority to resolve, the division shall provide to the person filing the complaint and the person about whom the complaint is made information about the division's policies and procedures under this subtitle relating to complaint investigation and resolution.AAThe division, at least quarterly and until final disposition of the complaint, shall notify those persons about the status of the complaintAAunlessAAtheAAnoticeAAwouldAAjeopardizeAAanAAundercover investigation.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.AAAmended by Acts 1995, 74th Leg., ch. 980, Sec. 1.08, eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.003, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 6, eff. September 1, 2011.

Sec. 402.0231. DOCUMENTATION AND ANALYSIS OF COMPLAINTS.
(a)  The division shall develop procedures to formally document and analyze complaints received by the division.

(b)  The division shall compile detailed statistics on all complaints received and analyze complaint information trends, including:

(1)  the number of complaints;

(2)  the source of each complaint;

(3)  the types of complaints;

(4)  the length of time from the receipt of the complaint to its disposition; and

(5)  the disposition of complaints.

(c)  The division shall further analyze the information compiled under Subsection (b) by field office and by program.

(d)  The division shall report the information compiled and analyzed under Subsections (b) and (c) to the commissioner at regular intervals.

Added by Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 7, eff. September 1, 2011.


Sec. 402.0235. PRIORITIES FOR COMPLAINT INVESTIGATIONS.
(a)  The division shall assign priorities to complaint investigations under this subtitle based on risk.  In developing priorities under this section, the division shall develop a formal, risk-based complaint investigation system that considers:

(1)  the severity of the alleged violation;

(2)  whether the alleged violator showed continued or wilful noncompliance; and

(3)  whether a commissioner order has been violated.

(b)  The commissioner may develop additional risk-based criteria as determined necessary.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.003, eff. September 1, 2005.


Sec. 402.024. PUBLIC PARTICIPATION. (a) The commissioner shall develop and implement policies that provide the public with a

reasonable opportunity to appear before the division and to speak on issues under the general jurisdiction of the division.

(b)  The division shall comply with federal and state laws related to program and facility accessibility.

(c)  In addition to compliance with Subsection (a), the commissioner shall prepare and maintain a written plan that describes how a person who does not speak English may be provided reasonable access to the division's programs and services.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.09, eff. Sept. 1, 1995.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.004, eff. September 1, 2005.


SUBCHAPTER C.  PERSONNEL


Sec. 402.041.  APPOINTMENTS.  (a)  Subject to the General Appropriations Act or other law, the commissioner shall appoint deputies, assistants, and other personnel as necessary to carry out the powers and duties of the commissioner and the division under this title, other workers' compensation laws of this state, and other laws granting jurisdiction or applicable to the division or the commissioner.

(b)  A person appointed under this section must have the professional, administrative, and workers' compensation experience necessary to qualify the person for the position to which the person is appointed.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.10, eff. Sept. 1, 1995.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.007, eff. September 1, 2005.


Sec. 402.042.  DIVISION OF RESPONSIBILITIES.  The commissioner shall develop and implement policies that clearly define the respective responsibilities of the commissioner and the staff of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.007, eff. September 1, 2005.


Sec. 402.043. CAREER LADDER; ANNUAL PERFORMANCE EVALUATIONS. (a) The commissioner or the commissioner's designee shall develop an intra-agency career ladder program that addresses opportunities for mobility and advancement for employees within the division. The program shall require intra-agency postings of all positions concurrently with any public posting.

(b) The commissioner or the commissioner's designee shall develop a system of annual performance evaluations that are based on documented employee performance. All merit pay for division employees must be based on the system established under this subsection.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.007, eff. September 1, 2005.


Sec. 402.044. EQUAL EMPLOYMENT OPPORTUNITY POLICY STATEMENT. (a) The commissioner or the commissioner's designee shall prepare and maintain a written policy statement to ensure implementation of a program of equal employment opportunity under which all personnel transactions are made without regard to race, color, disability, sex, religion, age, or national origin. The policy statement must include:

(1) personnel policies, including policies related to recruitment, evaluation, selection, appointment, training, and promotion of personnel that are in compliance with the requirements of Chapter 21;

(2) a comprehensive analysis of the division work force that meets federal and state guidelines;

(3) procedures by which a determination can be made of significant underuse in the division work force of all persons for whom federal or state guidelines encourage a more equitable

balance; and

(4)  reasonable methods to appropriately address those areas of underuse.

(b)  A policy statement prepared under this section must:

(1)  cover an annual period;

(2)  be updated annually;

(3)  be reviewed by the civil rights division of the Texas Workforce Commission for compliance with Subsection (a)(1); and

(4)  be filed with the Texas Workforce Commission.

(c)  The Texas Workforce Commission shall deliver a biennial report to the legislature based on the information received under Subsection (b).  The report may be made separately or as part of other biennial reports made to the legislature.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.11, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 1.007, eff. September 1, 2005.


SUBCHAPTER D.  GENERAL POWERS AND DUTIES OF DIVISION AND
COMMISSIONER


Sec. 402.061.  ADOPTION OF RULES.  The commissioner shall adopt rules as necessary for the implementation and enforcement of this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.006, eff. September 1, 2005.


Sec. 402.062.  ACCEPTANCE OF GIFTS, GRANTS, AND DONATIONS. (a) The division may accept gifts, grants, or donations as provided by rules adopted by the commissioner.

(b)  Repealed by Acts 2005, 79th Leg., Ch. 265, Sec. 7.01(15), eff. September 1, 2005.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended

by Acts 1999, 76th Leg., ch. 1426, Sec. 4, eff. Sept. 1, 1999;  Acts 2001, 77th Leg., ch. 1195, Sec. 2.08, eff. Sept. 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.007, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 7.01(15), eff. September 1, 2005.


Sec. 402.064.  FEES.  In addition to fees established by this subtitle, the commissioner shall set reasonable fees for services provided  to  persons  requesting  services  from  the  division, including services provided under Subchapter E.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.008, eff. September 1, 2005.


Sec.  402.065.  EMPLOYMENT  OF  COUNSEL.   Notwithstanding Article 1.09-1, Insurance Code, or any other law, the commissioner may employ counsel to represent the division in any legal action the division is authorized to initiate.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.009, eff. September 1, 2005.


Sec. 402.066.  RECOMMENDATIONS TO LEGISLATURE.  (a)  The commissioner  shall  consider  and  recommend  to  the  legislature changes to this subtitle, including any statutory changes required by an evaluation conducted under Section 402.074.

(b)  The commissioner shall forward the recommended changes to the legislature not later than December 1 of each even-numbered year.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.010, eff. September 1, 2005.

Sec. 402.0665.  LEGISLATIVE OVERSIGHT.  The legislature may adopt requirements relating to legislative oversight of the division and the workers' compensation system of this state.  The division shall comply with any requirements adopted by the legislature under this section.

Added by Acts 1995, 74th Leg., ch. 980, Sec. 1.13, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.011, eff. September 1, 2005.


Sec. 402.067.  ADVISORY COMMITTEES.  The commissioner may appoint advisory committees as the commissioner considers necessary.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.012, eff. September 1, 2005.


Sec. 402.068.  DELEGATION OF RIGHTS AND DUTIES.  Except as expressly provided by this subtitle, the division may not delegate rights and duties imposed on it by this subchapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.14, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.013, eff. September 1, 2005.


Sec. 402.069.  QUALIFICATIONS AND STANDARDS OF CONDUCT INFORMATION.  The commissioner or the commissioner's designee shall provide to division employees, as often as necessary, information regarding their:

(1)  qualifications for office or employment under this subtitle; and

(2)  responsibilities under applicable law relating to standards of conduct for state officers or employees.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.15, eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.014, eff. September 1, 2005.


Sec. 402.071.  REPRESENTATIVES. (a)  The commissioner shall establish qualifications for a representative and shall adopt rules establishing procedures for authorization of representatives.

(b)  A representative may receive a fee for providing representation under this subtitle only if the representative is:

(1)  an adjuster representing an insurance carrier;  or

(2)  licensed to practice law.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.015, eff. September 1, 2005.


Sec. 402.073.  COOPERATION WITH STATE OFFICE OF ADMINISTRATIVE HEARINGS.  (a)  The commissioner and the chief administrative law judge of the State Office of Administrative Hearings shall adopt a memorandum of understanding governing administrative procedure law hearings under this subtitle conducted by the State Office of Administrative Hearings in the manner provided for a contested case hearing under Chapter 2001, Government Code.  The memorandum of understanding must address the payment of costs by parties to a medical fee dispute under Section 413.0312.

(b)  In a case in which a hearing is conducted by the State Office of Administrative Hearings under Section 413.031 or 413.055, the administrative law judge who conducts the hearing for the State Office of Administrative Hearings shall enter the final decision in the case after completion of the hearing.

(c)  In a case in which a hearing is conducted in conjunction with Section 402.072, 407.046, 408.023, or 415.034, and in other cases under this subtitle that are not subject to Subsection (b), the administrative law judge who conducts the hearing for the State

Office of Administrative Hearings shall propose a decision to the commissioner for final consideration and decision by the commissioner.

(d)  The notice of the commissioner's order must include a statement of the right of the person to judicial review of the order.

(e)  In issuing an order under this section, the commissioner shall comply with the requirements applicable to a state agency under Section 2001.058, Government Code.

Added by Acts 1995, 74th Leg., ch. 980, Sec. 1.17, eff. Sept. 1, 1995.  Amended by Acts 1999, 76th Leg., ch. 955, Sec. 1, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.017, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1007 (H.B. 724), Sec. 3, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 8, eff. September 1, 2011.


Sec.  402.074.  STRATEGIC MANAGEMENT; EVALUATION.  The commissioner shall implement a strategic management plan that:

(1)  requires the division to evaluate and analyze the effectiveness of the division in implementing:

(A)  the statutory goals adopted under Section 402.021, particularly goals established to encourage the safe and timely return of injured employees to productive work roles; and

(B)  the other standards and requirements adopted under this code, the Insurance Code, and other applicable laws of this state; and

(2)  modifies the organizational structure and programs of the division as necessary to address shortfalls in the performance of the workers' compensation system of this state.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.018, eff. September 1, 2005.


Sec. 402.075.  INCENTIVES; PERFORMANCE-BASED OVERSIGHT. (a)

The commissioner by rule shall adopt requirements that:

(1) provide incentives for overall compliance in the workers' compensation system of this state; and

(2) emphasize performance-based oversight linked to regulatory outcomes.

(b) The commissioner shall develop key regulatory goals to be used in assessing the performance of insurance carriers and health care providers. The goals adopted under this subsection must align with the general regulatory goals of the division under this subtitle, such as improving workplace safety and return-to-work outcomes, in addition to goals that support timely payment of benefits and increased communication.

(c) At least biennially, the division shall assess the performance of insurance carriers and health care providers in meeting the key regulatory goals. The division shall examine overall compliance records and dispute resolution and complaint resolution practices to identify insurance carriers and health care providers who adversely impact the workers' compensation system and who may require enhanced regulatory oversight. The division shall conduct the assessment through analysis of data maintained by the division and through self-reporting by insurance carriers and health care providers.

(d) Based on the performance assessment, the division shall develop regulatory tiers that distinguish among insurance carriers and health care providers who are poor performers, who generally are average performers, and who are consistently high performers. The division shall focus its regulatory oversight on insurance carriers and health care providers identified as poor performers.

(e) The commissioner by rule shall develop incentives within each tier under Subsection (d) that promote greater overall compliance and performance. The regulatory incentives may include modified penalties, self-audits, or flexibility based on performance.

(f) The division shall:

(1) ensure that high-performing entities are publicly recognized; and

(2) allow those entities to use that designation as a

marketing tool.

(g)  In conjunction with the division's accident prevention services under Subchapter E, Chapter 411, the division shall conduct audits of accident prevention services offered by insurance carriers based on the comprehensive risk assessment. The division shall periodically review those services, but may provide incentives for less regulation of carriers based on performance. Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.018, eff. September 1, 2005.

Sec. 402.076.  GENERAL DUTIES; FUNDING.  (a)  The division shall perform the workforce education and safety functions of the workers' compensation system of this state.

(b)  The operations of the division under this section are funded through the maintenance tax assessed under Section 403.002. Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.018, eff. September 1, 2005.

Sec. 402.077.  EDUCATIONAL PROGRAMS. (a) The division shall provide education on best practices for return-to-work programs and workplace safety.

(b)  The division shall evaluate and develop the most efficient, cost-effective procedures for implementing this section.
Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.018, eff. September 1, 2005.

Sec.  402.078.  REGIONAL OFFICES.  The department shall operate regional offices throughout this state as necessary to implement the duties of the division and the department under this subtitle.
Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.018, eff. September 1, 2005.

SUBCHAPTER E. RECORDS AND EMPLOYEE INFORMATION

Sec. 402.081.  DIVISION RECORDS.  (a)  The commissioner is

the custodian of the division's records and shall perform the duties of a custodian required by law, including providing copies and the certification of records.

(b)  The division shall comply with records retention schedules as provided by Chapter 441.185, Government Code.

(c)  A record maintained by the division may be preserved in any format permitted by Chapter 441, Government Code, and rules adopted by the Texas State Library and Archives Commission under that chapter.

(d)  The division may charge a reasonable fee for making available for inspection any of its information that contains confidential information that must be redacted before the information is made available. However, when a request for information is for the inspection of 10 or fewer pages, and a copy of the information is not requested, the division may charge only the cost of making a copy of the page from which confidential information must be redacted. The fee for access to information under Chapter 552, Government Code, shall be in accord with the rules of the attorney general that prescribe the method for computing the charge for copies under that chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 1270, Sec. 1 eff. June 20, 1997.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.019, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 329 (S.B. 727), Sec. 13, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 716 (S.B. 452), Sec. 11, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 921 (H.B. 3167), Sec. 10.003, eff. September 1, 2007.

Sec. 402.082.  INJURY INFORMATION MAINTAINED BY DIVISION. (a)  The division shall maintain information on every compensable injury as to the:

(1)  race, ethnicity, and sex of the claimant;

(2)  classification of the injury;

(3)   identification   of   whether   the   claimant   is receiving medical care through a workers' compensation health care network certified under Chapter 1305, Insurance Code;

(4)   amount of wages earned by the claimant before the injury; and

(5)   amount of compensation received by the claimant.

(b)   On request from the office of injured employee counsel, the division shall provide to the office the identity, claim number, and contact information of claimants receiving assistance from the office.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.020, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 289 (H.B. 1774), Sec. 5, eff. September 1, 2011.


Sec. 402.083.   CONFIDENTIALITY OF INJURY INFORMATION.   (a) Information in or derived from a claim file regarding an employee is confidential and may not be disclosed by the division except as provided by this subtitle or other law.

(b)   Information concerning an employee who has been finally adjudicated of wrongfully obtaining payment under Section 415.008 is not confidential.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.42, 14.49, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.021, eff. September 1, 2005.


Sec. 402.084.   RECORD CHECK;   RELEASE OF INFORMATION.   (a) The division shall perform and release a record check on an employee, including current or prior injury information, to the parties listed in Subsection (b) if:

(1)   the claim is:

(A)   open or pending before the division;

24

(B)  on  appeal  to  a  court  of  competent jurisdiction; or

(C)  the subject of a subsequent suit in which the insurance carrier or the subsequent injury fund is subrogated to the rights of the named claimant; and

(2)  the  requesting  party  requests  the  release  on  a form prescribed by the division for this purpose and provides all required information.

(b)  Information on a claim may be released as provided by Subsection (a) to:

(1)  the employee or the employee's legal beneficiary;

(2)  the  employee's  or  the  legal  beneficiary's representative;

(3)  the employer at the time of injury;

(4)  the insurance carrier;

(5)  the  Texas  Certified  Self-Insurer  Guaranty Association established under Subchapter G, Chapter 407, if that association has assumed the obligations of an impaired employer;

(6)  the Texas Property and Casualty Insurance Guaranty Association, if that association has assumed the obligations of an impaired insurance company;

(7)  a third-party litigant in a lawsuit in which the cause of action arises from the incident that gave rise to the injury; or

(8)  with regard to information described by Subsection (c-3), an insurance carrier that has adopted an antifraud plan under Subchapter B, Chapter 704, Insurance Code, or the authorized representative of such an insurance carrier.

(c)  The requirements of Subsection (a)(1) do not apply to a request from a third-party litigant described by Subsection (b)(7).

(c-1)  For  purposes  of  this  section  only,  "insurance carrier" means:

(1)  a certified self-insurer; or

(2)  an entity authorized under the Insurance Code or another insurance law of this state that provides health insurance coverage or health benefits in this state, including:

(A)  an insurance company, including an insurance

25

company that holds a certificate of authority issued by the commissioner of insurance to engage in the business of workers' compensation insurance in this state;

(B)  a group hospital service corporation under Chapter 842, Insurance Code;

(C)  a health maintenance organization under Chapter 843, Insurance Code;

(D)  a stipulated premium company under Chapter 884, Insurance Code;

(E)  a fully self-insured plan, as described by the Employee Retirement Income Security Act of 1974 (29 U.S.C. Section 1001 et seq.);

(F)  a governmental plan, as defined by Section 3(32), Employee Retirement Income Security Act of 1974 (29 U.S.C. Section 1002(32));

(G)  an employee welfare benefit plan, as defined by Section 3(1), Employee Retirement Income Security Act of 1974 (29 U.S.C. Section 1002(1)); and

(H)  an insurer authorized by the Texas Department of Insurance to offer disability insurance in this state.

(c-2)  An insurance carrier is not required to demonstrate that a subclaim exists in order to obtain information under Subsection (b)(8).

(c-3)  An insurance carrier described by Subsection (b)(8) or an authorized representative of the insurance carrier may submit to the commission on a monthly basis a written request for claims information.  The request must contain a list of the names of persons about whom claims information is requested.  The insurance carrier must certify in the carrier's request that each person listed is, or has been, an insured under the carrier's insurance program.  The commission shall examine the commission's records to identify all claims related to the listed persons.  If a claims record exists for a listed person, the commission promptly shall provide information on each workers' compensation claim filed by that person to the carrier or the carrier's representative in an electronic format.  The information provided under this subsection must include, if available:

(1) the full name of the workers' compensation claimant;

(2) the social security number of the workers' compensation claimant;

(3) the date of birth of the workers' compensation claimant;

(4) the name of the employer of the workers' compensation claimant;

(5) the date of the injury;

(6) a description of the type of injury or the body part affected, including the workers' compensation claimant's description of how the injury occurred;

(7) the name of the treating doctor;

(8) the name, address, and claim number of the insurance carrier handling the claim;

(9) the name of the insurance adjustor handling the claim; and

(10) the identifying number assigned to the claim by the commission and the commission field office handling the claim.

(c-4) A potential subclaim identified by an insurance carrier described by Subsection (b)(8) or an authorized representative of the insurance carrier may form the basis for the identification and filing of a subclaim against an insurance carrier under this subtitle.

(c-5) Information received under this section by an insurance carrier described by Subsection (b)(8) or an authorized representative of the insurance carrier remains subject to confidentiality requirements of this subtitle while in the possession of the insurance carrier or representative. However, the following laws do not prohibit the commission from disclosing full information regarding a claim as necessary to determine if a valid subclaim exists:

(1) Chapter 552, Government Code;

(2) Chapter 159, Occupations Code; or

(3) any other analogous law restricting disclosure of health care information.

(c-6) The commission may not redact claims records produced

in an electronic data format under a request made under this section.

(c-7) An insurance carrier and its authorized representative may request full claims data under Subsection (b)(8), and the records shall be produced once each month. For purposes of this subsection, "full claims data" means an electronic download or tape in an electronic data format of the information listed in Subsection (c-3) on all cases relating to the workers' compensation claimants listed as insureds of the requesting insurance carrier.

(d) The commissioner by rule may establish a reasonable fee, not to exceed five cents for each claimant listed in an information request, for all information requested by an insurance carrier described by Subsection (b)(8) or an authorized representative of the insurance carrier in an electronic data format. The commissioner shall adopt rules under Section 401.024(d) to establish:

(1) reasonable security parameters for all transfers of information requested under this section in electronic data format; and

(2) requirements regarding the maintenance of electronic data in the possession of an insurance carrier described by Subsection (b)(8) or an authorized representative of the insurance carrier.

(e) The insurance carrier or the carrier's authorized representative must execute a written agreement with the commission before submitting the carrier's first request under Subsection (c-3). The agreement must contain a provision by which the carrier and the representative agree to comply with the commission's rules governing security parameters applicable to the transfer of information under Subsection (d)(1) and the maintenance of electronic data under Subsection (d)(2).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1033, Sec. 5, eff. Sept. 1, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.022, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 728 (H.B. 2018), Sec. 11.132, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 1190 (H.B. 251), Sec. 1, eff. June 18, 2005.

Sec. 402.085. EXCEPTIONS TO CONFIDENTIALITY. (a) The division shall release information on a claim to:

(1) the Texas Department of Insurance for any statutory or regulatory purpose, including a research purpose under Chapter 405;

(2) a legislative committee for legislative purposes;

(3) a state or federal elected official requested in writing to provide assistance by a constituent who qualifies to obtain injury information under Section 402.084(b), if the request for assistance is provided to the division;

(4) the attorney general or another entity that provides child support services under Part D, Title IV, Social Security Act (42 U.S.C. Section 651 et seq.), relating to:

(A) establishing, modifying, or enforcing a child support or medical support obligation; or

(B) locating an absent parent; or

(5) the office of injured employee counsel for any statutory or regulatory purpose that relates to a duty of that office as provided by Section 404.111(a).

(b) The division may release information on a claim to a governmental agency, political subdivision, or regulatory body to use to:

(1) investigate an allegation of a criminal offense or licensing or regulatory violation;

(2) provide:

(A) unemployment compensation benefits;

(B) crime victims compensation benefits;

(C) vocational rehabilitation services; or

(D) health care benefits;

(3) investigate occupational safety or health violations;

(4) verify income on an application for benefits under

an income-based state or federal assistance program; or

(5)  assess financial resources in an action, including an administrative action, to:

(A)  establish, modify, or enforce a child support or medical support obligation;

(B)  establish paternity;

(C)  locate an absent parent; or

(D)  cooperate with another state in an action authorized under Part D, Title IV, Social Security Act (42 U.S.C. Section 651 et seq.), or Chapter 231, Family Code.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.43(a), eff. Sept. 1, 1995; Acts 1999, 76th Leg., ch. 1426, Sec. 5, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.023, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 289 (H.B. 1774), Sec. 6, eff. September 1, 2011.


Sec. 402.086.  TRANSFER  OF  CONFIDENTIALITY.  (a) Information relating to a claim that is confidential under this subtitle remains confidential when released to any person, except when used in court for the purposes of an appeal.

(b)  This  section  does  not  prohibit  an  employer  from releasing information about a former employee to another employer with  whom  the  employee  has  applied  for  employment,  if  that information  was  lawfully  acquired  by  the  employer  releasing  the information.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 402.087.  INFORMATION  AVAILABLE  TO  PROSPECTIVE EMPLOYERS.  (a)  A  prospective  employer  who  has  workers' compensation  insurance  coverage  and  who  complies  with  this subchapter is entitled to obtain information on the prior injuries of  an  applicant  for  employment  if  the  employer  obtains  written authorization from the applicant before making the request.

(b)  The employer must make the request by telephone or file

the request in writing not later than the 14th day after the date on which the application for employment is made.

(c)  The request must include the applicant's name, address, and social security number.

(d)  If the request is made in writing, the authorization must be filed simultaneously.  If the request is made by telephone, the employer must file the authorization not later than the 10th day after the date on which the request is made.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 402.088.  REPORT OF PRIOR INJURY.  (a)  On receipt of a valid request made under and complying with Section 402.087, the division shall review its records.

(b)  If the division finds that the applicant has made two or more general injury claims in the preceding five years, the division shall release the date and description of each injury to the employer.

(c)  The information may be released in writing or by telephone.

(d)  If the employer requests information on three or more applicants at the same time, the division may refuse to release information until it receives the written authorization from each applicant.

(e)  In this section, "general injury" means an injury other than an injury limited to one or more of the following:

(1)  an injury to a digit, limb, or member;

(2)  an inguinal hernia;  or

(3)  vision or hearing loss.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.024, eff. September 1, 2005.


Sec. 402.089.  FAILURE TO FILE AUTHORIZATION.  An employer who receives information by telephone from the division under Section 402.088 and who fails to file the necessary authorization in accordance with Section 402.087 commits an administrative

31

violation.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.025, eff. September 1, 2005.


Sec. 402.090. STATISTICAL INFORMATION. The division, the Texas Department of Insurance, or any other governmental agency may prepare and release statistical information if the identity of an employee is not explicitly or implicitly disclosed.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.026, eff. September 1, 2005.


Sec. 402.091. FAILURE TO MAINTAIN CONFIDENTIALITY; OFFENSE; PENALTY. (a) A person commits an offense if the person knowingly, intentionally, or recklessly publishes, discloses, or distributes information that is confidential under this subchapter to a person not authorized to receive the information directly from the division.

(b) A person commits an offense if the person knowingly, intentionally, or recklessly receives information that is confidential under this subchapter and that the person is not authorized to receive.

(c) An offense under this section is a Class A misdemeanor.

(d) An offense under this section may be prosecuted in a court in the county where the information was unlawfully received, published, disclosed, or distributed.

(e) A district court in Travis County has jurisdiction to enjoin the use, publication, disclosure, or distribution of confidential information under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.18, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.027, eff. September 1, 2005.

Sec. 402.092.  INVESTIGATION FILES CONFIDENTIAL; DISCLOSURE OF CERTAIN INFORMATION.  (a)  In this section, "investigation file" means any information compiled or maintained by the division with respect to a division investigation authorized under this subtitle or other workers' compensation law.  The term does not include information or material acquired by the division that is relevant to an investigation by the insurance fraud unit and subject to Section 701.151, Insurance Code.

(b)  Information maintained in the investigation files of the division is confidential and may not be disclosed except:

(1)  in a criminal proceeding;

(2)  in a hearing conducted by the division;

(3)  on a judicial determination of good cause;

(4)  to a governmental agency, political subdivision, or regulatory body if the disclosure is necessary or proper for the enforcement of the laws of this or another state or of the United States; or

(5)  to an insurance carrier if the investigation file relates directly to a felony regarding workers' compensation or to a claim in which restitution is required to be paid to the insurance carrier.

(c)  Division investigation files are not open records for purposes of Chapter 552, Government Code.

(d)  Information in an investigation file that is information in or derived from a claim file, or an employer injury report or occupational disease report, is governed by the confidentiality provisions relating to that information.

(e)  The division, upon request, shall disclose the identity of a complainant under this section if the division finds:

(1)  the complaint was groundless or made in bad faith;

(2)  the complaint lacks any basis in fact or evidence;

(3)  the complaint is frivolous; or

(4)  the complaint is done specifically for competitive or economic advantage.

(f)  Upon completion of an investigation in which the division determines a complaint is described by Subsection (e), the

division shall notify the person who was the subject of the complaint of its finding and the identity of the complainant.

Added by Acts 1995, 74th Leg., ch. 980, Sec. 1.19, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.028, eff. September 1, 2005.


SUBCHAPTER F.  COOPERATION WITH OFFICE OF INJURED EMPLOYEE COUNSEL


Sec. 402.251.  COOPERATION; FACILITIES. (a) The department and the division shall cooperate with the office of injured employee counsel in providing services to claimants under this subtitle.

(b)  The department shall provide facilities to the office of injured employee counsel in each regional office operated to administer the duties of the division under this subtitle.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 2.029, eff. September 1, 2005.

TAB 27

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 406. WORKERS' COMPENSATION INSURANCE COVERAGE


SUBCHAPTER A. COVERAGE ELECTION;  SECURITY PROCEDURES


Sec. 406.001.  DEFINITION.  In this subchapter, "employer" means a person who employs one or more employees.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.002.  COVERAGE GENERALLY ELECTIVE.  (a)  Except for public employers and as otherwise provided by law, an employer may elect to obtain workers' compensation insurance coverage.

(b)  An employer who elects to obtain coverage is subject to this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.003.  METHODS OF OBTAINING COVERAGE.  An employer may obtain workers' compensation insurance coverage through a licensed insurance company or through self-insurance as provided by this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.004.  EMPLOYER NOTICE TO DIVISION. (a)  An employer who does not obtain workers' compensation insurance coverage shall notify the division in writing, in the time and as prescribed by commissioner rule, that the employer elects not to obtain coverage.

(b)  The commissioner shall prescribe forms to be used for the employer notification and shall require the employer to provide reasonable information to the division about the employer's business.

(c)  The division may contract with the Texas Workforce Commission or the comptroller for assistance in collecting the notification required under this section.  Those agencies shall cooperate with the division in enforcing this section.

(d)  The employer notification filing required under this

1

section shall be filed with the division in accordance with Section 406.009.

(e)  An employer commits an administrative violation if the employer fails to comply with this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.47(a), eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.023, eff. September 1, 2005.


Sec. 406.005.  EMPLOYER NOTICE TO EMPLOYEES; ADMINISTRATIVE VIOLATION.  (a)  An employer shall notify each employee as provided by this section whether or not the employer has workers' compensation insurance coverage.

(b)  The employer shall notify a new employee of the existence or absence of workers' compensation insurance coverage at the time the employee is hired.

(c)  Each employer shall post a notice of whether the employer has workers' compensation insurance coverage at conspicuous locations at the employer's place of business as necessary to provide reasonable notice to the employees.  The commissioner may adopt rules relating to the form and content of the notice.  The employer shall revise the notice when the information contained in the notice is changed.

(d)  An employer who obtains workers' compensation insurance coverage or whose coverage is terminated or canceled shall notify each employee that the coverage has been obtained, terminated, or canceled not later than the 15th day after the date on which the coverage, or the termination or cancellation of the coverage, takes effect.

(e)  An employer commits an administrative violation if the employer fails to comply with this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.024, eff. September 1, 2005.

Sec. 406.006.  INSURANCE COVERAGE AND CLAIM ADMINISTRATION REPORTING REQUIREMENTS;  ADMINISTRATIVE VIOLATION.  (a)  An insurance company from which an employer has obtained workers' compensation insurance coverage, a certified self-insurer, a workers' compensation self-insurance group under Chapter 407A, and a political subdivision shall file notice of the coverage and claim administration contact information with the division not later than the 10th day after the date on which the coverage or claim administration agreement takes effect, unless the commissioner adopts a rule establishing a later date for filing.  Coverage takes effect on the date on which a binder is issued, a later date and time agreed to by the parties, on the date provided by the certificate of self-insurance, or on the date provided in an interlocal agreement that provides for self-insurance.  The commissioner may adopt rules that establish the coverage and claim administration contact information required under this subsection.

(b)  The notice required under this section shall be filed with the division in accordance with Section 406.009.

(c)  An insurance company, a certified self-insurer, a workers' compensation self-insurance group under Chapter 407A, or a political subdivision commits an administrative violation if the person fails to file notice with the division as provided by this section.

(d)  In this section, "political subdivision" has the meaning assigned by Section 504.001.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.48(a), eff. Sept. 1, 1995; Acts 1999, 76th Leg., ch. 954, Sec. 2.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.025, eff. September 1, 2005.


Sec. 406.007.  TERMINATION OF COVERAGE BY EMPLOYER;  NOTICE. (a)  An employer who terminates workers' compensation insurance coverage obtained under this subtitle shall file a written notice with the division by certified mail not later than the 10th day after the date on which the employer notified the insurance carrier

to terminate the coverage. The notice must include a statement certifying the date that notice was provided or will be provided to affected employees under Section 406.005.

(b)  The notice required under this section shall be filed with the division in accordance with Section 406.009.

(c)  Termination of coverage takes effect on the later of:

(1)  the 30th day after the date of filing of notice with the division under Subsection (a); or

(2)  the cancellation date of the policy.

(d)  The coverage shall be extended until the date on which the termination of coverage takes effect, and the employer is obligated for premiums due for that period.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.49(a), eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.026, eff. September 1, 2005.


Sec. 406.008.  CANCELLATION OR NONRENEWAL OF COVERAGE BY INSURANCE COMPANY; NOTICE. (a)  An insurance company that cancels a policy of workers' compensation insurance or that does not renew the policy by the anniversary date of the policy shall deliver notice of the cancellation or nonrenewal by certified mail or in person to the employer and the division not later than:

(1)  the 30th day before the date on which the cancellation or nonrenewal takes effect; or

(2)  the 10th day before the date on which the cancellation or nonrenewal takes effect if the insurance company cancels or does not renew because of:

(A)  fraud in obtaining coverage;

(B)  misrepresentation of the amount of payroll for purposes of premium calculation;

(C)  failure to pay a premium when due;

(D)  an increase in the hazard for which the employer seeks coverage that results from an act or omission of the employer and that would produce an increase in the rate, including an increase because of a failure to comply with:

4

(i) reasonable recommendations for loss control; or

(ii) recommendations designed to reduce a hazard under the employer's control within a reasonable period; or

(E) a determination made by the commissioner of insurance that the continuation of the policy would place the insurer in violation of the law or would be hazardous to the interest of subscribers, creditors, or the general public.

(b) The notice required under this section shall be filed with the division.

(c) Failure of the insurance company to give notice as required by this section extends the policy until the date on which the required notice is provided to the employer and the division. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.50(a), eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.027, eff. September 1, 2005.


Sec. 406.009. COLLECTING AND MAINTAINING INFORMATION; MONITORING AND ENFORCING COMPLIANCE. (a) The division shall collect and maintain the information required under this subchapter and shall monitor compliance with the requirements of this subchapter.

(b) The commissioner may adopt rules as necessary to enforce this subchapter.

(c) The commissioner may designate a data collection agent, implement an electronic reporting and public information access program, and adopt rules as necessary to implement the data collection requirements of this subchapter. The commissioner may establish the form, manner, and procedure for the transmission of information to the division. A data collection agent designated under this subsection must be qualified and may collect fees in the manner described by Section 401.024.

(d) The division may require an employer or insurance carrier subject to this subtitle to identify or confirm an employer's coverage status and claim administration contact

information as necessary to achieve the purposes of this subtitle.

(e) An employer or insurance carrier commits an administrative violation if that person fails to comply with Subsection (d).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.51(a), eff. Sept. 1, 1995; Acts 1999, 76th Leg., ch. 954, Sec. 3, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.028, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 410 (S.B. 800), Sec. 2, eff. June 17, 2011.


Sec. 406.010.  CLAIMS SERVICE;  ADMINISTRATIVE VIOLATION. (a) An insurance carrier shall provide claims service:

(1)  through offices of the insurance carrier located in this state;  or

(2)  by other resident representatives with full power to act for the insurance carrier.

(b) Each insurance carrier shall designate persons to provide claims service in sufficient numbers and at appropriate locations to reasonably service policies written by the carrier.  If an insurance carrier uses the services of a person required to hold a certificate of authority under Chapter 4151, Insurance Code, the carrier must comply with the requirements of that chapter.

(c) The commissioner by rule shall further specify the requirements of this section.

(d) A person commits an administrative violation if the person violates a rule adopted under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.029, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1176 (H.B. 472), Sec. 3.01, eff. September 1, 2007.

Sec. 406.011. AUSTIN REPRESENTATIVE; ADMINISTRATIVE VIOLATION. (a) The commissioner by rule may require an insurance carrier to designate a representative in Austin to act as the insurance carrier's agent before the division in Austin. Notice to the designated agent constitutes notice to the insurance carrier.

(b) A person commits an administrative violation if the person violates a rule adopted under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.030, eff. September 1, 2005.


Sec. 406.012. ENFORCEMENT OF SUBCHAPTER. The commission shall enforce the administrative penalties established under this subchapter in accordance with Chapter 415.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER B. COVERAGE REQUIREMENTS


Sec. 406.031. LIABILITY FOR COMPENSATION. (a) An insurance carrier is liable for compensation for an employee's injury without regard to fault or negligence if:

(1) at the time of injury, the employee is subject to this subtitle; and

(2) the injury arises out of and in the course and scope of employment.

(b) If an injury is an occupational disease, the employer in whose employ the employee was last injuriously exposed to the hazards of the disease is considered to be the employer of the employee under this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.032. EXCEPTIONS. An insurance carrier is not liable for compensation if:

(1) the injury:

(A) occurred while the employee was in a state of intoxication;

7

(B)  was caused by the employee's wilful attempt to injure himself or to unlawfully injure another person;

(C)  arose out of an act of a third person intended to injure the employee because of a personal reason and not directed at the employee as an employee or because of the employment;

(D)  arose out of voluntary participation in an off-duty recreational, social, or athletic activity that did not constitute part of the employee's work-related duties, unless the activity is a reasonable expectancy of or is expressly or impliedly required by the employment;  or

(E)  arose out of an act of God, unless the employment exposes the employee to a greater risk of injury from an act of God than ordinarily applies to the general public;  or

(2)  the employee's horseplay was a producing cause of the injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.033.  COMMON-LAW DEFENSES;  BURDEN OF PROOF. (a)  In an action against an employer by or on behalf of an employee who is not covered by workers' compensation insurance obtained in the manner authorized by Section 406.003 to recover damages for personal injuries or death sustained by an employee in the course and scope of the employment, it is not a defense that:

(1)  the employee was guilty of contributory negligence;

(2)  the employee assumed the risk of injury or death;  or

(3)  the injury or death was caused by the negligence of a fellow employee.

(b)  This section does not reinstate or otherwise affect the availability of defenses at common law, including the defenses described by Subsection (a).

(c)  The employer may defend the action on the ground that the injury was caused:

(1)  by an act of the employee intended to bring about the injury;  or

(2)  while the employee was in a state of intoxication.

(d)AAIn an action described by Subsection (a), the plaintiff must prove negligence of the employer or of an agent or servant of the employer acting within the general scope of the agent's or servant's employment.

(e)AAA cause of action described in Subsection (a) may not be waived by an employee before the employee's injury or death.AAAny agreement by an employee to waive a cause of action or any right described in Subsection (a) before the employee's injury or death is void and unenforceable.

(f)AAA cause of action described by Subsection (a) may not be waived by an employee after the employee's injury unless:

(1)AAthe employee voluntarily enters into the waiver with knowledge of the waiver's effect;

(2)AAthe waiver is entered into not earlier than the 10th business day after the date of the initial report of injury;

(3)AAthe employee, before signing the waiver, has received a medical evaluation from a nonemergency care doctor; and

(4)AAthe waiver is in a writing under which the true intent of the parties is specifically stated in the document.

(g)AAThe waiver provisions required under Subsection (f) must be conspicuous and appear on the face of the agreement.AATo be conspicuous, the waiver provisions must appear in a type larger than the type contained in the body of the agreement or in contrasting colors.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.AAAmended by Acts 2001, 77th Leg., ch. 1456, Sec. 16.01, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.031, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1108 (S.B. 1714), Sec. 1, eff. September 1, 2011.


Sec. 406.034.AAEMPLOYEE ELECTION.AA(a)AAExcept as otherwise provided by law, unless the employee gives notice as provided by Subsection (b), an employee of an employer waives the employee's right of action at common law or under a statute of this state to recover damages for personal injuries or death sustained in the

course and scope of the employment.

(b)  An employee who desires to retain the common-law right of action to recover damages for personal injuries or death shall notify the employer in writing that the employee waives coverage under this subtitle and retains all rights of action under common law.  The employee must notify the employer not later than the fifth day after the date on which the employee:

(1)  begins the employment;  or

(2)  receives written notice from the employer that the employer has obtained workers' compensation insurance coverage if the employer is not a covered employer at the time of the employment but later obtains the coverage.

(c)  An employer may not require an employee to retain common-law rights under this section as a condition of employment.

(d)  An employee who elects to retain the right of action or a legal beneficiary of that employee may bring a cause of action for damages for injuries sustained in the course and scope of the employment under common law or under a statute of this state.  Notwithstanding Section 406.033, the cause of action is subject to all defenses available under common law and the statutes of this state unless the employee has waived coverage in connection with an agreement with the employer.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2011, 82nd Leg., R.S., Ch. 1108 (S.B. 1714), Sec. 2, eff. September 1, 2011.


Sec. 406.035.  WAIVER OF COMPENSATION PROHIBITED.  Except as provided by this subtitle, an agreement by an employee to waive the employee's right to compensation is void.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER C. COVERAGE THROUGH COMMERCIAL INSURANCE


Sec. 406.051.  SECURITY BY COMMERCIAL INSURANCE.  (a)  An insurance company may contract to secure an employer's liability and obligations and to pay compensation by issuing a workers'

compensation insurance policy under this subchapter.

(b)  The contract for coverage must be written on a policy and endorsements approved by the Texas Department of Insurance.

(c)  The employer may not transfer:

(1)  the obligation to accept a report of injury under Section 409.001;

(2)  the obligation to maintain records of injuries under Section 409.006;

(3)  the obligation to report injuries to the insurance carrier under Section 409.005;

(4)  liability for a violation of Section 415.006 or 415.008 or of Chapter 451; or

(5)  the obligation to comply with a commissioner order.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 954, Sec. 4, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.032, eff. September 1, 2005.


Sec. 406.052.  EFFECT OF OTHER INSURANCE COVERAGE.  (a)  A contract entered into to indemnify an employer from loss or damage resulting from an injury sustained by an employee that is compensable under this subtitle is void unless the contract also covers liability for payment of compensation under this subtitle.

(b)  This section does not prohibit an employer who is not required to have workers' compensation insurance coverage and who has elected not to obtain workers' compensation insurance coverage from obtaining insurance coverage on the employer's employees if the insurance is not represented to any person as providing workers' compensation insurance coverage authorized under this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.053.  ALL STATES COVERAGE.  The Texas Department of Insurance shall coordinate with the appropriate agencies of other states to:

(1) share information regarding an employer who obtains all states coverage; and

(2) ensure that the department has knowledge of an employer who obtains all states coverage in another state but fails to file notice with the department.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER D. EXTRATERRITORIAL COVERAGE


Sec. 406.071. EXTRATERRITORIAL COVERAGE. (a) An employee who is injured while working in another jurisdiction or the employee's legal beneficiary is entitled to all rights and remedies under this subtitle if:

(1) the injury would be compensable if it had occurred in this state; and

(2) the employee has significant contacts with this state or the employment is principally located in this state.

(b) An employee has significant contacts with this state if the employee was hired or recruited in this state and the employee:

(1) was injured not later than one year after the date of hire; or

(2) has worked in this state for at least 10 working days during the 12 months preceding the date of injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.072. PRINCIPAL LOCATION. The principal location of a person's employment is where:

(1) the employer has a place of business at or from which the employee regularly works; or

(2) the employee resides and spends a substantial part of the employee's working time.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.073. AGREEMENT ON PRINCIPAL LOCATION; ADMINISTRATIVE VIOLATION. (a) An employee whose work requires regular travel between this state and at least one other jurisdiction may agree in writing with the employer on the

principal location of the employment.

(b)  The employer shall file the agreement with the division on request.

(c)  A person commits an administrative violation if the person violates Subsection (b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.033, eff. September 1, 2005.


Sec. 406.074.  INTERJURISDICTIONAL AGREEMENTS.  (a)  The commissioner may enter into an agreement with an appropriate agency of another jurisdiction with respect to:

(1)  conflicts of jurisdiction;

(2)  assumption of jurisdiction in a case in which the contract of employment arises in one state and the injury is incurred in another;

(3)  procedures for proceeding against a foreign employer who fails to comply with this subtitle; and

(4)  procedures for the appropriate agency to use to proceed against an employer of this state who fails to comply with the workers' compensation laws of the other jurisdiction.

(b)  An executed agreement that has been adopted as a rule by the commissioner binds all subject employers and employees.

(c)  In this section, "appropriate agency" means an agency of another jurisdiction that administers the workers' compensation laws of that jurisdiction.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.034, eff. September 1, 2005.


Sec. 406.075.  EFFECT OF COMPENSATION PAID IN OTHER JURISDICTION.  (a)  An injured employee who elects to pursue the employee's remedy under the workers' compensation laws of another jurisdiction and who recovers benefits under those laws may not recover under this subtitle.

(b)  The amount of benefits accepted under the laws of the other jurisdiction without an election under Subsection (a) shall be credited against the benefits that the employee would have received had the claim been made under this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER E. APPLICATION OF COVERAGE TO CERTAIN EMPLOYEES


Sec. 406.091.  EXEMPT EMPLOYEES;  VOLUNTARY COVERAGE.  (a) The following employees are not subject to this subtitle:

(1)  a person employed as a domestic worker or a casual worker engaged in employment incidental to a personal residence;

(2)  a person covered by a method of compensation established under federal law;  or

(3)  except as provided by Subchapter H, a farm or ranch employee.

(b)  An employer may elect to obtain workers' compensation insurance coverage for an employee or classification of employees exempted from coverage under Subsection (a)(1) or (a)(3). Obtaining that coverage constitutes acceptance by the employer of the rights and responsibilities imposed under this subtitle as of the effective date of the coverage for as long as the coverage remains in effect.

(c)  An employer who does not obtain coverage for exempt employees is not deprived of the common-law defenses described by Section 406.033, but this section does not reinstate or otherwise affect the availability of those or other defenses at common law.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.092.  ALIEN EMPLOYEES AND BENEFICIARIES.  (a) A resident or nonresident alien employee or legal beneficiary is entitled to compensation under this subtitle.

(b)  A nonresident alien employee or legal beneficiary, at the election of the employee or legal beneficiary, may be represented officially by a consular officer of the country of which the employee or legal beneficiary is a citizen.  That officer may receive benefit payments for distribution to the employee or

legal beneficiary. The receipt of the payments constitutes full discharge of the insurance carrier's liability for those payments.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.093. LEGALLY INCOMPETENT EMPLOYEES. (a) The guardian of an injured employee who is a minor or is otherwise legally incompetent may exercise on the employee's behalf the rights and privileges granted to the employee under this subtitle.

(b) The commissioner by rule shall adopt procedures relating to the method of payment of benefits to legally incompetent employees.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.035, eff. September 1, 2005.


Sec. 406.094. CERTAIN PERSONS LICENSED BY TEXAS REAL ESTATE COMMISSION. (a) An employer who elects to provide workers' compensation insurance coverage may include in the coverage a real estate salesperson or broker who is:

(1) licensed under Chapter 1101, Occupations Code; and

(2) compensated solely by commissions.

(b) If coverage is elected by the employer, the insurance policy must specifically name the salesperson or broker. The coverage continues while the policy is in effect and the named salesperson or broker is endorsed on the policy.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 1276, Sec. 14A.788, eff. Sept. 1, 2003.


Sec. 406.095. CERTAIN PROFESSIONAL ATHLETES. (a) A professional athlete employed under a contract for hire or a collective bargaining agreement who is entitled to benefits for medical care and weekly benefits that are equal to or greater than the benefits provided under this subtitle may not receive benefits under this subtitle and the equivalent benefits under the contract or collective bargaining agreement. An athlete covered by such a

contract or agreement who sustains an injury in the course and scope of the athlete's employment shall elect to receive either the benefits available under this subtitle or the benefits under the contract or agreement.

(b)  The commissioner by rule shall establish the procedures and requirements for an election under this section.

(c)  In this section, "professional athlete" means a person employed as a professional athlete by a franchise of:

(1)  the National Football League;

(2)  the National Basketball Association;

(3)  the American League of Professional Baseball Clubs;

(4)  the National League of Professional Baseball Clubs;

(5)  the International Hockey League;

(6)  the National Hockey League; or

(7)  the Central Hockey League.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 668, Sec. 1, eff. Sept. 1, 1995.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.036, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 815 (S.B. 742), Sec. 1, eff. September 1, 2005.


Sec. 406.096.  REQUIRED COVERAGE FOR CERTAIN BUILDING OR CONSTRUCTION CONTRACTORS.  (a)  A governmental entity that enters into a building or construction contract shall require the contractor to certify in writing that the contractor provides workers' compensation insurance coverage for each employee of the contractor employed on the public project.

(b)  Each subcontractor on the public project shall provide such a certificate relating to coverage of the subcontractor's employees to the general contractor, who shall provide the subcontractor's certificate to the governmental entity.

(c)  A contractor who has a contract that requires workers' compensation insurance coverage may provide the coverage through a

group plan or other method satisfactory to the governing body of the governmental entity.

(d)  The employment of a maintenance employee by an employer who is not engaging in building or construction as the employer's primary business does not constitute engaging in building or construction.

(e)  In this section:

(1)  "Building or construction" includes:

(A)  erecting or preparing to erect a structure, including a building, bridge, roadway, public utility facility, or related appurtenance;

(B)  remodeling, extending, repairing, or demolishing a structure;  or

(C)  otherwise improving real property or an appurtenance to real property through similar activities.

(2)  "Governmental entity" means this state or a political subdivision of this state.  The term includes a municipality.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.097.  EXECUTIVE EMPLOYEES OF CERTAIN BUSINESS ENTITIES.  (a)  A sole proprietor, partner, or corporate executive officer of a business entity that elects to provide workers' compensation insurance coverage is entitled to benefits under that coverage as an employee unless the sole proprietor, partner, or corporate executive officer is specifically excluded from coverage through an endorsement to the insurance policy or certificate of authority to self-insure.

(b)  The dual capacity doctrine does not apply to a corporate executive officer with an equity ownership in the covered business entity of at least 25 percent and will not invalidate the exclusion of such a corporate executive officer from coverage under Subsection (a).

(c)  A sole proprietor or partner of a covered business entity or a corporate officer with an equity ownership in a covered business entity of at least 25 percent may be excluded from coverage under this section notwithstanding Section 406.096.

17

Added by Acts 1995, 74th Leg., ch. 980, Sec. 1.20, eff. Sept. 1, 1995.

Sec. 406.098. VOLUNTEER EMERGENCY SERVICE MEMBERS AND PERSONNEL. (a) An emergency service organization which is not a political subdivision or which is separate from any political subdivision may elect to obtain workers' compensation insurance coverage for its named volunteer members who participate in the normal functions of the organization. A person covered under this subsection is entitled to full medical benefits and the minimum compensation payments under the law.

(b) In this section, unless a different meaning is plainly required by law:

(1) "Emergency service organization" means any organization established to provide for the general public:

(A) fire prevention and suppression;

(B) hazardous materials response operations; or

(C) emergency medical services.

(2) "Volunteer members" means individuals who are carried on the membership list of the organization as active participants and who receive no remuneration for their services.

(3) "Normal functions" means any response to, participation in, or departure from an incident scene; training; meetings; performance of equipment maintenance; or organizational functions.

(4) "Political subdivision" means a county, municipality, special district, school district, junior college district, housing authority, community center for mental health and mental retardation services established under Subchapter A, Chapter 534, Health and Safety Code, or any other legally constituted political subdivision of the state.

(c) The commissioner of insurance shall adopt rules governing the method of calculating premiums for workers' compensation insurance coverage for volunteer members who are covered pursuant to this section.

Added by Acts 1995, 74th Leg., ch. 849, Sec. 1, eff. Aug. 28, 1995. Renumbered from Labor Code Sec. 406.097 by Acts 1997, 75th Leg., ch.

165, Sec. 31.01(63), eff. Sept. 1, 1997.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.037, eff. September 1, 2005.


SUBCHAPTER F. COVERAGE OF CERTAIN INDEPENDENT CONTRACTORS

Sec. 406.121. DEFINITIONS. In this subchapter:

(1) "General contractor" means a person who undertakes to procure the performance of work or a service, either separately or through the use of subcontractors. The term includes a "principal contractor," "original contractor," "prime contractor," or other analogous term. The term does not include a motor carrier that provides a transportation service through the use of an owner operator.

(2) "Independent contractor" means a person who contracts to perform work or provide a service for the benefit of another and who ordinarily:

(A) acts as the employer of any employee of the contractor by paying wages, directing activities, and performing other similar functions characteristic of an employer-employee relationship;

(B) is free to determine the manner in which the work or service is performed, including the hours of labor of or method of payment to any employee;

(C) is required to furnish or to have employees, if any, furnish necessary tools, supplies, or materials to perform the work or service; and

(D) possesses the skills required for the specific work or service.

(3) "Motor carrier" means a person who operates a motor vehicle over a public highway in this state to provide a transportation service or who contracts to provide that service.

(4) "Owner operator" means a person who provides transportation services under contract for a motor carrier. An owner operator is an independent contractor.

(5) "Subcontractor" means a person who contracts with

19

a general contractor to perform all or part of the work or services that the general contractor has undertaken to perform.

          (6)  "Transportation service" means providing a motor vehicle, with a driver under contract, to transport passengers or property.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


     Sec. 406.122.  STATUS AS EMPLOYEE.  (a)  For purposes of workers' compensation insurance coverage, a person who performs work or provides a service for a general contractor or motor carrier who is an employer under this subtitle is an employee of that general contractor or motor carrier, unless the person is:

          (1)  operating as an independent contractor;  or

          (2)  hired to perform the work or provide the service as an employee of a person operating as an independent contractor.

     (b)  A subcontractor and the subcontractor's employees are not employees of the general contractor for purposes of this subtitle if the subcontractor:

          (1)  is operating as an independent contractor;  and

          (2)  has entered into a written agreement with the general contractor that evidences a relationship in which the subcontractor assumes the responsibilities of an employer for the performance of work.

     (c)  An owner operator and the owner operator's employees are not employees of a motor carrier for the purposes of this subtitle if the owner operator has entered into a written agreement with the motor carrier that evidences a relationship in which the owner operator assumes the responsibilities of an employer for the performance of work.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


     Sec. 406.123.  ELECTION TO PROVIDE COVERAGE;  ADMINISTRATIVE VIOLATION.  (a)  A general contractor and a subcontractor may enter into a written agreement under which the general contractor provides workers' compensation insurance coverage to the subcontractor and the employees of the subcontractor.

     (b)  If a general contractor has workers' compensation

insurance to protect the general contractor's employees and if, in the course and scope of the general contractor's business, the general contractor enters into a contract with a subcontractor who does not have employees, the general contractor shall be treated as the employer of the subcontractor for the purposes of this subtitle and may enter into an agreement for the deduction of premiums paid in accordance with Subsection (d).

(c)  A motor carrier and an owner operator may enter into a written agreement under which the motor carrier provides workers' compensation insurance coverage to the owner operator and the employees of the owner operator.

(d)  If a general contractor or a motor carrier elects to provide coverage under Subsection (a) or (c), then, notwithstanding Section 415.006, the actual premiums, based on payroll, that are paid or incurred by the general contractor or motor carrier for the coverage may be deducted from the contract price or other amount owed to the subcontractor or owner operator by the general contractor or motor carrier.

(e)  An agreement under this section makes the general contractor the employer of the subcontractor and the subcontractor's employees only for purposes of the workers' compensation laws of this state.

(f)  A general contractor shall file a copy of an agreement entered into under this section with the general contractor's workers' compensation insurance carrier not later than the 10th day after the date on which the contract is executed.  If the general contractor is a certified self-insurer, the copy must be filed with the division.

(g)  A general contractor who enters into an agreement with a subcontractor under this section commits an administrative violation if the contractor fails to file a copy of the agreement as required by Subsection (f).

(h)  Notwithstanding Subsection (b), a person who performs work or provides a service for an oil or gas well operator and who is an independent contractor that has no employees shall be treated in the same manner as an independent contractor with employees and is not entitled to coverage under the general contractor's workers'

21

compensation insurance policy unless the independent contractor and the general contractor enter into an agreement under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1997, 75th Leg., ch. 88, Sec. 1, eff. Sept. 1, 1997.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.038, eff. September 1, 2005.


Sec. 406.124.  CAUSE OF ACTION.  If a person who has workers' compensation insurance coverage subcontracts all or part of the work to be performed by the person to a subcontractor with the intent to avoid liability as an employer under this subtitle, an employee of the subcontractor who sustains a compensable injury in the course and scope of the employment shall be treated as an employee of the person for purposes of workers' compensation and shall have a separate right of action against the subcontractor. The right of action against the subcontractor does not affect the employee's right to compensation under this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.125.  RESTRICTION  OF  UNSAFE  WORK  PRACTICES UNAFFECTED.  This subchapter does not prevent a general contractor from directing a subcontractor or the employees of a subcontractor to stop or change an unsafe work practice.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.126.  EXEMPTION.  This subchapter does not apply to farm or ranch employees.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.127.  EFFECT OF CERTAIN CONTRACTS OF HIRE.  An insurance company may not demand an insurance premium from an employer for coverage of an independent contractor or an employee of an independent contractor if the independent contractor is under a contract of hire with the employer.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

SUBCHAPTER G. COVERAGE OF CERTAIN BUILDING AND CONSTRUCTION WORKERS

Sec. 406.141. DEFINITIONS. In this subchapter:

(1) "Hiring contractor" means a general contractor or subcontractor who, in the course of regular business, subcontracts all or part of the work to be performed to other persons.

(2) "Independent contractor" means a person who contracts to perform work or provide a service for the benefit of another and who:

(A) is paid by the job and not by the hour or some other time-measured basis;

(B) is free to hire as many helpers as desired and may determine the pay of each helper; and

(C) is free to, while under contract to the hiring contractor, work for other contractors or is free to send helpers to work for other contractors.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 406.142. APPLICATION. This subchapter applies only to contractors and workers preparing to construct, constructing, altering, repairing, extending, or demolishing:

(1) a residential structure;

(2) a commercial structure that does not exceed three stories in height or 20,000 square feet in area; or

(3) an appurtenance to a structure described by Subdivision (1) or (2).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 406.143. PROVISION OF WORKERS' COMPENSATION INSURANCE; INDEPENDENT CONTRACTOR WITHOUT EMPLOYEES. (a) Unless the independent contractor and hiring contractor enter into an agreement under Section 406.144, the independent contractor is responsible for any workers' compensation insurance coverage provided to an employee of the independent contractor, and the independent contractor's employees are not entitled to workers' compensation insurance coverage from the hiring contractor.

(b)  An independent contractor without employees shall be treated in the same manner as an independent contractor with employees and is not entitled to coverage under the hiring contractor's workers' compensation insurance policy unless the independent contractor and hiring contractor enter into an agreement under Section 406.144.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 406.144.  ELECTION TO PROVIDE COVERAGE;  AGREEMENT. (a)  Except as provided by this section, a hiring contractor is not responsible for providing workers' compensation insurance coverage for an independent contractor or the independent contractor's employee, helper, or subcontractor.  An independent contractor and a hiring contractor may enter into a written agreement under which the independent contractor agrees that the hiring contractor may withhold the cost of workers' compensation insurance coverage from the contract price and that, for the purpose of providing workers' compensation insurance coverage, the hiring contractor is the employer of the independent contractor and the independent contractor's employees.

(b)  A hiring contractor and independent contractor may enter into an agreement under Subsection (a) even if the independent contractor does not have an employee.

(c)  An agreement under this section shall be filed with the division either by personal delivery or by registered or certified mail and is considered filed on receipt by the division.

(d)  The hiring contractor shall send a copy of an agreement under this section to the hiring contractor's workers' compensation insurance carrier on filing of the agreement with the division.

(e)  An agreement under this section makes the hiring contractor the employer of the independent contractor and the independent contractor's employees only for the purposes of the workers' compensation laws of this state.

(f)  The deduction of the cost of the workers' compensation insurance coverage from the independent contractor's contract price is permitted notwithstanding Section 415.006.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

24

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.039, eff. September 1, 2005.


Sec. 406.145. JOINT AGREEMENT. (a) A hiring contractor and an independent subcontractor may make a joint agreement declaring that the subcontractor is an independent contractor as defined in Section 406.141(2) and that the subcontractor is not the employee of the hiring contractor. If the joint agreement is signed by both the hiring contractor and the subcontractor and filed with the division, the subcontractor, as a matter of law, is an independent contractor and not an employee, and is not entitled to workers' compensation insurance coverage through the hiring contractor unless an agreement is entered into under Section 406.144 to provide workers' compensation insurance coverage. The commissioner shall prescribe forms for the joint agreement.

(b) A joint agreement shall be delivered to the division by personal delivery or registered or certified mail and is considered filed on receipt by the division.

(c) The hiring contractor shall send a copy of a joint agreement signed under this section to the hiring contractor's workers' compensation insurance carrier on filing of the joint agreement with the division.

(d) The division shall maintain a system for accepting and maintaining the joint agreements.

(e) A joint agreement signed under this section applies to each hiring agreement between the hiring contractor and the independent contractor until the first anniversary of its filing date, unless a subsequent hiring agreement expressly states that the joint agreement does not apply.

(f) If a subsequent hiring agreement is made to which the joint agreement does not apply, the hiring contractor and independent contractor shall notify the division and the hiring contractor's workers' compensation insurance carrier in writing.

(g) If a hiring contractor and an independent contractor have filed a joint agreement under this section, an insurance company may not require the payment of an insurance premium by a

hiring contractor for coverage of an independent contractor or an independent contractor's employee, helper, or subcontractor other than under an agreement entered into in compliance with Section 406.144.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.040, eff. September 1, 2005.


Sec. 406.146. WRONGFUL INDUCEMENT PROHIBITED. (a) A hiring contractor may not:

(1) wrongfully induce an employee to enter into a joint agreement under Section 406.145 stating that the employee is an independent contractor; or

(2) exert controls over an independent contractor or an employee of an independent contractor sufficient to make that person an employee under common-law tests.

(b) A hiring contractor does not exert employer-like controls over an independent contractor or an independent contractor's employee solely because of:

(1) controlling the hours of labor, if that control is exercised only to:

(A) establish the deadline for the completion of the work called for by the contract;

(B) schedule work to occur in a logical sequence and to avoid delays or interference with the work of other contractors; or

(C) schedule work to avoid disturbing neighbors during night or early morning hours or at other times when the independent contractor's activities would unreasonably disturb activities in the neighborhood; or

(2) stopping or directing work solely to prevent or correct an unsafe work practice or condition or to control work to ensure that the end product is in compliance with the contracted for result.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

SUBCHAPTER H. COVERAGE OF FARM AND RANCH EMPLOYEES

Sec. 406.161. DEFINITIONS. In this subchapter:

(1) "Agricultural labor" means the planting, cultivating, or harvesting of an agricultural or horticultural commodity in its unmanufactured state.

(2) "Family" means persons related within the third degree by consanguinity or affinity.

(3) "Labor agent" means a person who:

(A) is a farm labor contractor for purposes of the Migrant and Seasonal Agricultural Worker Protection Act (29 U.S.C. Section 1801 et seq.); or

(B) otherwise recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers who work for the benefit of a third party.

(4) "Migrant worker" means an individual who is:

(A) employed in agricultural labor of a seasonal or temporary nature; and

(B) required to be absent overnight from the worker's permanent place of residence.

(5) "Seasonal worker" means an individual who is:

(A) employed in agricultural or ranch labor of a seasonal or temporary nature; and

(B) not required to be absent overnight from the worker's permanent place of residence.

(6) "Truck farm" means a farm on which fruits, garden vegetables for human consumption, potatoes, sugar beets, or vegetable seeds are produced for market. The term includes a farm primarily devoted to one of those crops that also has incidental acreage of other crops.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.162. SCOPE. (a) This subtitle applies to an action to recover damages for personal injuries or death sustained by a farm or ranch employee who is:

(1) a migrant worker;

(2) a seasonal worker:

(A) employed on a truck farm, orchard, or vineyard;

(B) employed by a person with a gross annual payroll for the preceding year in an amount not less than the greater of the required payroll for the year preceding that year, adjusted for inflation, or $25,000; or

(C) working for a farmer, ranch operator, or labor agent who employs a migrant worker and doing the same work at the same time and location as the migrant worker; or

(3) an employee, other than a migrant or seasonal worker:

(A) for years before 1991, employed by a person with a gross annual payroll for the preceding year of at least $50,000; and

(B) for 1991 and subsequent years, employed by a person:

(i) with a gross annual payroll in an amount required for coverage of seasonal workers under Subdivision (2)(B); or

(ii) who employs three or more farm or ranch employees other than migrant or seasonal workers.

(b) The comptroller shall prepare a consumer price index for this state and shall certify the applicable index factor to the division before October 1 of each year. The division shall adjust the gross annual payroll requirement under Subsection (a)(2)(B) accordingly.

(c) For the purposes of this section, the gross annual payroll of a person includes any amount paid by the person to a labor agent for the agent's services and for the services of migrant or seasonal workers but does not include wages paid to:

(1) the person or a member of the person's family, if the person is a sole proprietor;

(2) a partner in a partnership or a member of the partner's family; or

(3) a shareholder of a corporation in which all shareholders are family members or a member of the shareholder's family.

(d)  This subchapter does not affect the application or interpretation of this subtitle as it relates to persons engaged in activities determined before January 1, 1985, not to be farm or ranch labor.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.041, eff. September 1, 2005.


Sec. 406.163.  LIABILITY OF LABOR AGENT;  JOINT AND SEVERAL LIABILITY.  (a)  A labor agent who furnishes a migrant or seasonal worker is liable under this subtitle as if the labor agent were the employer of the worker, without regard to the right of control or other factors used to determine an employer-employee relationship.

(b)  If the labor agent does not have workers' compensation insurance coverage, the person with whom the labor agent contracts for the services of the migrant or seasonal worker is jointly and severally liable with the labor agent in an action to recover damages for personal injuries or death suffered by the migrant or seasonal worker as provided by this subtitle, and, for that purpose, the migrant or seasonal worker is considered the employee of the person with whom the labor agent contracts and that person may obtain workers' compensation insurance coverage for that worker as provided by this subtitle.  If a migrant or seasonal worker is covered by workers' compensation insurance coverage, the person with whom the labor agent contracts is not liable in a separate action for injury or death except to the extent provided by this subtitle.

(c)  A labor agent shall notify each person with whom the agent contracts of whether the agent has workers' compensation insurance coverage.  If the agent does have workers' compensation insurance coverage, the agent shall present evidence of the coverage to each person with whom the agent contracts.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.164.  ELECTIVE COVERAGE OF EMPLOYER AND FAMILY MEMBERS.  (a)  A person who purchases a workers' compensation

insurance policy covering farm or ranch employees may cover the person, a partner, a corporate officer, or a family member in that policy. The insurance policy must specifically name the individual to be covered.

(b)  The elective coverage continues while the policy is in effect and the named individual is endorsed on the policy.

(c)  A member of an employer's family is exempt from coverage under the policy unless an election for that coverage is made under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 406.165.  NOT APPLICABLE TO INDEPENDENT CONTRACTORS. (a)  A farm or ranch employee who performs work or provides a service for a farm or ranch employer subject to this subchapter is an employee of that employer unless the employee is hired to perform the work or provide the service as an employee of an independent contractor.

(b)  In this section, "independent contractor" means a person, other than a labor agent, who contracts with a farm or ranch employer to perform work or provide a service for the benefit of the employer and who ordinarily:

(1)  acts as the employer of the employee by paying wages, directing activities, and performing other similar functions characteristic of an employer-employee relationship;

(2)  is free to determine the manner in which the work or service is performed, including the hours of labor or the method of payment;

(3)  is required to furnish necessary tools, supplies, or materials to perform the work or service;  and

(4)  possesses skills required for the specific work or service.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

TAB 28

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 408. WORKERS' COMPENSATION BENEFITS


SUBCHAPTER A. GENERAL PROVISIONS


Sec. 408.001. EXCLUSIVE REMEDY; EXEMPLARY DAMAGES. (a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

(b) This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

(c) In this section, "gross negligence" has the meaning assigned by Section 41.001, Civil Practice and Remedies Code.

(d) A determination under Section 406.032, 409.002, or 409.004 that a work-related injury is noncompensable does not adversely affect the exclusive remedy provisions under Subsection (a).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.077, eff. September 1, 2005.


Sec. 408.002. SURVIVAL OF CAUSE OF ACTION. A right of action survives in a case based on a compensable injury that results in the employee's death.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1991.


Sec. 408.003. REIMBURSABLE EMPLOYER PAYMENTS; SALARY CONTINUATION; OFFSET AGAINST INCOME BENEFITS; LIMITS. (a) After an injury, an employer may:

(1) initiate benefit payments, including medical

1

benefits; or

(2) on the written request or agreement of the employee, supplement income benefits paid by the insurance carrier by an amount that does not exceed the amount computed by subtracting the amount of the income benefit payments from the employee's net preinjury wages.

(b) If an injury is found to be compensable and an insurance carrier initiates compensation, the insurance carrier shall reimburse the employer for the amount of benefits paid by the employer to which the employee was entitled under this subtitle. Payments that are not reimbursed or reimbursable under this section may be reimbursed under Section 408.127.

(c) The employer shall notify the division and the insurance carrier on forms prescribed by the commissioner of the initiation of and amount of payments made under this section.

(d) Employer payments made under this section:

(1) may not be construed as an admission of compensability; and

(2) do not affect the payment of benefits from another source.

(e) If an employer does not notify the insurance carrier of the injury in compliance with Section 409.005, the employer waives the right to reimbursement under this section.

(f) Salary continuation payments made by an employer for an employee's disability resulting from a compensable injury shall be considered payment of income benefits for the purpose of determining the accrual date of any subsequent income benefits under this subtitle.

(g) If an employer is subject to a contractual obligation with an employee or group of employees, such as a collective bargaining agreement or a written agreement or policy, under which the employer is required to make salary continuation payments, the employer is not eligible for reimbursement under this section for those payments.

(h) Payments made as salary continuation or salary supplementation do not affect the exclusive remedy provisions of Section 408.001.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 954, Sec. 5, eff. Sept. 1, 1999;  Acts 1999, 76th Leg., ch. 1003, Sec. 1, 2, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.078, eff. September 1, 2005.


Sec. 408.004.  REQUIRED MEDICAL EXAMINATIONS; ADMINISTRATIVE VIOLATION.  (a)  The commissioner may require an employee to submit to medical examinations to resolve any question about the appropriateness of the health care received by the employee.

(a-1)  A doctor, other than a chiropractor, who performs a required medical examination under this section is subject to Section 408.0043.  A chiropractor who performs a required medical examination under this section is subject to Section 408.0045.

(b)  The commissioner may require an employee to submit to a medical examination at the request of the insurance carrier, but only after the insurance carrier has attempted and failed to receive the permission and concurrence of the employee for the examination.  Except as otherwise provided by this subsection, the insurance carrier is entitled to the examination only once in a 180-day period.  The commissioner may adopt rules that require an employee to submit to not more than three medical examinations in a 180-day period under specified circumstances, including to determine whether there has been a change in the employee's condition and whether it is necessary to change the employee's diagnosis.  The commissioner by rule shall adopt a system for monitoring requests made under this subsection by insurance carriers.  That system must ensure that good cause exists for any additional medical examination allowed under this subsection that is not requested by the employee.  A subsequent examination must be performed by the same doctor unless otherwise approved by the commissioner.

(c)  The insurance carrier shall pay for:

(1)  an examination required under Subsection (a) or (b); and

(2)  the reasonable expenses incident to the employee in submitting to the examination.

(d)  An injured employee is entitled to have a doctor of the employee's choice present at an examination required by the division at the request of an insurance carrier.  The insurance carrier shall pay a fee set by the commissioner to the doctor selected by the employee.

(e)  An employee who, without good cause as determined by the commissioner, fails or refuses to appear at the time scheduled for an examination under Subsection (a) or (b) commits an administrative violation.  The commissioner by rule shall ensure that an employee receives reasonable notice of an examination and that the employee is provided a reasonable opportunity to reschedule an examination missed by the employee for good cause.

(f)  This section does not apply to health care provided through a workers' compensation health care network established under Chapter 1305, Insurance Code.

(g)  An insurance carrier who makes a frivolous request for a medical examination under Subsection (b), as determined by the commissioner, commits an administrative violation.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 1133, Sec. 1, 2, eff. Sept. 1, 1999; Acts 1999, 76th Leg., ch. 1426, Sec. 8, eff. Jan. 1, 2000;  Acts 2001, 77th Leg., ch. 1456, Sec. 5.01, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.079, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 2, eff. September 1, 2007.


Sec. 408.0041.  DESIGNATED DOCTOR EXAMINATION.  (a)  At the request of an insurance carrier or an employee, or on the commissioner's own order, the commissioner may order a medical examination to resolve any question about:

(1)  the impairment caused by the compensable injury;

(2)  the attainment of maximum medical improvement;

(3)  the extent of the employee's compensable injury;

4

(4)  whether the injured employee's disability is a direct result of the work-related injury;

(5)  the ability of the employee to return to work; or

(6)  issues similar to those described by Subdivisions (1)-(5).

(b)  Except as provided by Section 408.1225(f), a medical examination requested under Subsection (a) shall be performed by the next available doctor on the division's list of certified designated doctors whose credentials are appropriate for the area of the body affected by the injury and the injured employee's diagnosis as determined by commissioner rule.  The division shall assign a designated doctor not later than the 10th day after the date on which the request under Subsection (a) is approved, and the examination must be conducted not later than the 21st day after the date on which the commissioner issues the order under Subsection (a).  An examination under this section may not be conducted more frequently than every 60 days, unless good cause for more frequent examinations exists, as defined by commissioner rules.

(b-1)  A designated doctor, other than a chiropractor, is subject to Section 408.0043.  A designated doctor who is a chiropractor is subject to Section 408.0045.  To the extent of a conflict between this section and Section 408.0043 or 408.0045, this section controls.

(c)  The treating doctor and the insurance carrier are both responsible for sending to the designated doctor all of the injured employee's medical records relating to the issue to be evaluated by the designated doctor that are in their possession.  The treating doctor and insurance carrier may send the records without a signed release from the employee.  The designated doctor is authorized to receive the employee's confidential medical records to assist in the resolution of disputes.  The treating doctor and insurance carrier may also send the designated doctor an analysis of the injured employee's medical condition, functional abilities, and return-to-work opportunities.

(d)  To avoid undue influence on a person selected as a designated doctor under this section, and except as provided by Subsection (c), only the injured employee or an appropriate member

5

of the division's staff may communicate with the designated doctor about the case regarding the injured employee's medical condition or history before the examination of the injured employee by the designated doctor. After that examination is completed, communication with the designated doctor regarding the injured employee's medical condition or history may be made only through appropriate division staff members. The designated doctor may initiate communication with any doctor or health care provider who has previously treated or examined the injured employee for the work-related injury or with peer reviewers identified by the insurance carrier.

(e) The designated doctor shall report to the division. The report of the designated doctor has presumptive weight unless the preponderance of the evidence is to the contrary. An employer may make a bona fide offer of employment subject to Sections 408.103(e) and 408.144(c) based on the designated doctor's report.

(f) Unless otherwise ordered by the commissioner, the insurance carrier shall pay benefits based on the opinion of the designated doctor during the pendency of any dispute. If an insurance carrier is not satisfied with the opinion rendered by a designated doctor under this section, the insurance carrier may request the commissioner to order an employee to attend an examination by a doctor selected by the insurance carrier.

(f-1) The subsequent injury fund shall reimburse an insurance carrier for any overpayment of benefits made by the insurance carrier under Subsection (f) based on an opinion rendered by a designated doctor if that opinion is reversed or modified by a final arbitration award or a final order or decision of the commissioner or a court. The commissioner shall adopt rules to provide for a periodic reimbursement schedule, providing reimbursement at least annually.

(f-2) An employee required to be examined by a designated doctor may request a medical examination to determine maximum medical improvement and the employee's impairment rating from the treating doctor or from another doctor to whom the employee is referred by the treating doctor if:

(1)  the designated doctor's opinion is the employee's first evaluation of maximum medical improvement and impairment rating; and

(2)  the employee is not satisfied with the designated doctor's opinion.

(f-3)  The commissioner shall provide the insurance carrier and the employee with reasonable time to obtain and present the opinion of a doctor selected under Subsection (f) or (f-2) before the commissioner makes a decision on the merits of the issue.

(f-4)  The commissioner by rule shall adopt guidelines prescribing the circumstances under which an examination by the employee's treating doctor or another doctor to whom the employee is referred by the treating doctor to determine any issue under Subsection (a), other than an examination under Subsection (f-2), may be appropriate.

(g)  Except as otherwise provided by this subsection, an injured employee is entitled to have a doctor of the employee's choice present at an examination requested by an insurance carrier under Subsection (f).  The insurance carrier shall pay a fee set by the commissioner to the doctor selected by the employee.  If the injured employee is subject to a workers' compensation health care network under Chapter 1305, Insurance Code, the doctor must be the employee's treating doctor.

(h)  The insurance carrier shall pay for:

(1)  an examination required under Subsection (a), (f), or (f-2), unless otherwise prohibited by this subtitle or by an order or rule of the commissioner; and

(2)  the reasonable expenses incident to the employee in submitting to the examination.

(i)  An employee who, without good cause as determined by the commissioner, fails or refuses to appear at the time scheduled for an examination under Subsection (a) or (f) commits an administrative violation.  An injured employee may not be fined more than $10,000 for a violation of this subsection.

(j)  An employee is not entitled to temporary income benefits, and an insurance carrier is authorized to suspend the payment of temporary income benefits, during and for a period in

which the employee fails to submit to an examination required by Subsection (a) or (f) unless the commissioner determines that the employee had good cause for the failure to submit to the examination.  The commissioner may order temporary income benefits to be paid for the period for which the commissioner determined that the employee had good cause.  The commissioner by rule shall ensure that:

(1)  an employee receives reasonable notice of an examination and the insurance carrier's basis for suspension; and

(2)  the employee is provided a reasonable opportunity to reschedule an examination for good cause.

(k)  If the report of a designated doctor indicates that an employee has reached maximum medical improvement or is otherwise able to return to work immediately, the insurance carrier may suspend or reduce the payment of temporary income benefits immediately.

(l)  A person who makes a frivolous request for a medical examination under Subsection (a) or (f), as determined by the commissioner, commits an administrative violation.

Added by Acts 2001, 77th Leg., ch. 1456, Sec. 5.02, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.080, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 1, eff. September 1, 2007.

Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 3, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 11, eff. September 1, 2011.


Sec. 408.0042.  MEDICAL EXAMINATION BY TREATING DOCTOR TO DEFINE COMPENSABLE INJURY.  (a)  The division shall require an injured employee to submit to a single medical examination to define the compensable injury on request by the insurance carrier.

(b)  A medical examination under this section shall be performed by the employee's treating doctor.  The insurance

carrier shall pay the costs of the examination.

(c)  After the medical examination is performed, the treating doctor shall submit to the insurance carrier a report that details all injuries and diagnoses related to the compensable injury, on receipt of which the insurance carrier shall:

(1)  accept all injuries and diagnoses as related to the compensable injury; or

(2)  dispute the determination of specific injuries and diagnoses.

(d)  Any treatment for an injury or diagnosis that is not accepted by the insurance carrier under Subsection (c) as compensable at the time of the medical examination under Subsection (a) must be preauthorized before treatment is rendered. If the insurance carrier denies preauthorization because the treatment is for an injury or diagnosis unrelated to the compensable injury, the injured employee or affected health care provider may file an extent of injury dispute.

(e)  Any treatment for an injury or diagnosis that is accepted by the insurance carrier under Subsection (c) as compensable at the time of the medical examination under Subsection (a) may not be reviewed for compensability, but may be reviewed for medical necessity.

(f)  The commissioner may adopt rules relating to requirements for a report under this section, including requirements regarding the contents of a report.

(g)  This section does not limit an injured employee or insurance carrier's ability to request an examination under Section 408.004 or 408.0041, as provided by those sections.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.0805, eff. September 1, 2005.


Sec.  408.0043.  PROFESSIONAL SPECIALTY CERTIFICATION REQUIRED FOR CERTAIN REVIEW.  (a)  This section applies to a person, other than a chiropractor or a dentist, who performs health care services under this title as:

(1)  a doctor performing peer review;

(2)  a doctor performing a utilization review of a

9

health care service provided to an injured employee;

    (3)  a doctor performing an independent review of a health care service provided to an injured employee;

    (4)  a designated doctor;

    (5)  a doctor performing a required medical examination; or

    (6)  a doctor serving as a member of the medical quality review panel.

  (b)  A person described by Subsection (a) who reviews a specific workers' compensation case must hold a professional certification in a health care specialty appropriate to the type of health care that the injured employee is receiving.

Added by Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 1, eff. September 1, 2007.

Amended by:

    Acts 2009, 81st Leg., R.S., Ch. 1330 (H.B. 4290), Sec. 14, eff. September 1, 2009.


  Sec. 408.0044.  REVIEW OF DENTAL SERVICES. (a)  This section applies to a dentist who performs dental services under this title as:

    (1)  a doctor performing peer review of dental services;

    (2)  a doctor performing a utilization review of a dental service provided to an injured employee;

    (3)  a doctor performing an independent review of a dental service provided to an injured employee; or

    (4)  a doctor performing a required dental examination.

  (b)  A person described by Subsection (a) who reviews a dental service provided in conjunction with a specific workers' compensation case must be licensed to practice dentistry.

Added by Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 1, eff. September 1, 2007.

Amended by:

    Acts 2009, 81st Leg., R.S., Ch. 1330 (H.B. 4290), Sec. 15, eff. September 1, 2009.

Sec. 408.0045.  REVIEW OF CHIROPRACTIC SERVICES.  (a)  This section applies to a chiropractor who performs chiropractic services under this title as:

          (1)  a doctor performing peer review of chiropractic services;

          (2)  a doctor performing a utilization review of a chiropractic service provided to an injured employee;

          (3)  a doctor performing an independent review of a chiropractic service provided to an injured employee;

          (4)  a designated doctor providing chiropractic services;

          (5)  a doctor performing a required medical examination; or

          (6)  a chiropractor serving as a member of the medical quality review panel.

     (b)  A person described by Subsection (a) who reviews a chiropractic service provided in conjunction with a specific workers' compensation case must be licensed to engage in the practice of chiropractic.
Added by Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 1, eff. September 1, 2007.
Amended by:
     Acts 2009, 81st Leg., R.S., Ch. 1330 (H.B. 4290), Sec. 16, eff. September 1, 2009.


Sec. 408.0046.  RULES.  The commissioner may adopt rules as necessary to determine which professional health practitioner specialties are appropriate for treatment of certain compensable injuries.  The rules adopted under this section must require an entity requesting a peer review to obtain and provide to the doctor providing peer review services all relevant and updated medical records.
Added by Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 1, eff. September 1, 2007.


Sec. 408.005.  SETTLEMENTS AND AGREEMENTS.  (a)  A settlement may not provide for payment of benefits in a lump sum

11

except as provided by Section 408.128.

(b) An employee's right to medical benefits as provided by Section 408.021 may not be limited or terminated.

(c) A settlement or agreement resolving an issue of impairment:

(1) may not be made before the employee reaches maximum medical improvement; and

(2) must adopt an impairment rating using the impairment rating guidelines described by Section 408.124.

(d) A settlement must be signed by the commissioner and all parties to the dispute.

(e) The commissioner shall approve a settlement if the commissioner is satisfied that:

(1) the settlement accurately reflects the agreement between the parties;

(2) the settlement reflects adherence to all appropriate provisions of law and the policies of the division; and

(3) under the law and facts, the settlement is in the best interest of the claimant.

(f) A settlement that is not approved or rejected before the 16th day after the date the settlement is submitted to the commissioner is considered to be approved by the commissioner on that date.

(g) A settlement takes effect on the date it is approved by the commissioner.

(h) A party to a settlement may withdraw acceptance of the settlement at any time before its effective date.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.081, eff. September 1, 2005.


Sec. 408.006. MENTAL TRAUMA INJURIES. (a) It is the express intent of the legislature that nothing in this subtitle shall be construed to limit or expand recovery in cases of mental trauma injuries.

(b) A mental or emotional injury that arises principally

from a legitimate personnel action, including a transfer, promotion, demotion, or termination, is not a compensable injury under this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.007.  DATE OF INJURY FOR OCCUPATIONAL DISEASE.  For purposes of this subtitle, the date of injury for an occupational disease is the date on which the employee knew or should have known that the disease may be related to the employment.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.008.  COMPENSABILITY OF HEART ATTACKS.  A heart attack is a compensable injury under this subtitle only if:

(1)  the attack can be identified as:

(A)  occurring at a definite time and place;  and

(B)  caused by a specific event occurring in the course and scope of the employee's employment;

(2)  the preponderance of the medical evidence regarding the attack indicates that the employee's work rather than the natural progression of a preexisting heart condition or disease was a substantial contributing factor of the attack;  and

(3)  the attack was not triggered solely by emotional or mental stress factors, unless it was precipitated by a sudden stimulus.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER B. MEDICAL BENEFITS


Sec. 408.021.  ENTITLEMENT TO MEDICAL BENEFITS.  (a)  An employee who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed.  The employee is specifically entitled to health care that:

(1)  cures or relieves the effects naturally resulting from the compensable injury;

(2)  promotes recovery;  or

(3)  enhances the ability of the employee to return to

or retain employment.

(b)  Medical benefits are payable from the date of the compensable injury.

(c)  Except in an emergency, all health care must be approved or recommended by the employee's treating doctor.

(d)  An insurance carrier's liability for medical benefits may not be limited or terminated by agreement or settlement. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.022.  SELECTION OF DOCTOR.  (a)  Except in an emergency, the division shall require an employee to receive medical treatment from a doctor chosen from a list of doctors approved by the commissioner.  A doctor may perform only those procedures that are within the scope of the practice for which the doctor is licensed.  The employee is entitled to the employee's initial choice of a doctor from the division's list.

(b)  If an employee is dissatisfied with the initial choice of a doctor from the division's list, the employee may notify the division and request authority to select an alternate doctor.  The notification must be in writing stating the reasons for the change, except notification may be by telephone when a medical necessity exists for immediate change.

(c)  The commissioner shall prescribe criteria to be used by the division in granting the employee authority to select an alternate doctor.  The criteria may include:

(1)  whether treatment by the current doctor is medically inappropriate;

(2)  the professional reputation of the doctor;

(3)  whether the employee is receiving appropriate medical care to reach maximum medical improvement; and

(4)  whether a conflict exists between the employee and the doctor to the extent that the doctor-patient relationship is jeopardized or impaired.

(d)  A change of doctor may not be made to secure a new impairment rating or medical report.

(e)  For purposes of this section, the following is not a selection of an alternate doctor:

(1) a referral made by the doctor chosen by the employee if the referral is medically reasonable and necessary;

(2) the receipt of services ancillary to surgery;

(3) the obtaining of a second or subsequent opinion only on the appropriateness of the diagnosis or treatment;

(4) the selection of a doctor because the original doctor:

(A) dies;

(B) retires; or

(C) becomes unavailable or unable to provide medical care to the employee; or

(5) a change of doctors required because of a change of residence by the employee.

(f) This section does not apply to requirements regarding the selection of a doctor under a workers' compensation health care network established under Chapter 1305, Insurance Code, except as provided by that chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.082, eff. September 1, 2005.


Sec. 408.0221. REQUEST FOR DESCRIPTION OF EMPLOYMENT. (a) This section applies only to an employee of an employer who has 10 or more employees.

(b) To facilitate an injured employee's return to employment as soon as it is considered safe and appropriate by the injured employee's treating doctor, the treating doctor may request that the injured employee's employer provide the treating doctor with the information described by Subsection (d) on the form adopted under that subsection.

(c) Information provided to a treating doctor under Subsection (b) does not constitute:

(1) a request by the employer that the injured employee return to the employment;

(2) an offer of employment by the employer for the injured employee to return to employment; or

15

(3)AAan admission of the compensability of the injury of the employee.

(d)AAThe commissioner shall prescribe a form to provide information from an employer to a treating doctor concerning the functions and physical responsibilities of an injured employee's job.AATo the extent possible, the form prescribed under this subsection shall be one page, use a check box format as appropriate, and be compatible with electronic mail.AAThe form must include:

(1)AAthe name and address of the employer and the contact information and availability of the individual representing the employer who has knowledge of the injured employee's job;

(2)AAthe scope of the injured employee's employment, including any specific tasks, job duties, or work activities that the injured employee was required to perform at the time the employee sustained the injury; and

(3)AAan area for additional comments or informationAAby the employer or individual representing the employer concerning:

(A)AAthe injured employee's job; or

(B)AAthe availability, if any, of other jobs that the employer may have that the employer would like the treating doctor to consider in determining whether an injured employee is able to return to work.

(e)AAThe commissioner may adopt rules as necessary to implement this section and to facilitate communication between the employer and the treating doctor regarding return-to-work opportunities.

Added by Acts 2009, 81st Leg., R.S., Ch. 456 (H.B. 2547), Sec. 1, eff. September 1, 2009.


Sec.A408.023.AALIST OF APPROVED DOCTORS; DUTIES OF TREATING DOCTORS.AA(a)AAThe division shall develop a list of doctors licensed in this state who are approved to provide health care services under this subtitle. A doctor is eligible to be included on the division's list of approved doctors if the doctor:

(1)AAregisters with the division in the manner prescribed by commissioner rules; and

16

(2) complies with the requirements adopted by the commissioner under this section.

(b) The commissioner by rule shall establish reasonable requirements for training for doctors as a prerequisite for inclusion on the list. Except as otherwise provided by this section, the requirements adopted under this subsection apply to doctors and other health care providers who:

(1) provide health care services as treating doctors;

(2) provide health care services as authorized by this chapter;

(3) perform medical peer review under this subtitle;

(4) perform utilization review of medical benefits provided under this subtitle; or

(5) provide health care services on referral from a treating doctor, as provided by commissioner rule.

(c) The division shall issue to a doctor who is approved by the commissioner a certificate of registration. In determining whether to issue a certificate of registration, the commissioner may consider and condition approval on any practice restrictions applicable to the applicant that are relevant to services provided under this subtitle. The commissioner may also consider the practice restrictions of an applicant when determining appropriate sanctions under Section 408.0231.

(d) A certificate of registration issued under this section is valid, unless revoked, suspended, or revised, for the period provided by commissioner rule and may be renewed on application to the division. The division shall provide notice to each doctor on the approved doctor list of the pending expiration of the doctor's certificate of registration not later than the 60th day before the date of expiration of the certificate.

(e) Notwithstanding other provisions of this section, a doctor not licensed in this state but licensed in another state or jurisdiction who treats employees or performs utilization review of health care for an insurance carrier may apply for a certificate of registration under this section to be included on the division's list of approved doctors.

(f) Except in an emergency or for immediate post-injury

medical care as defined by commissioner rule, or as provided by Subsection (h), (i), or (j), each doctor who performs functions under this subtitle, including examinations under this chapter, must hold a certificate of registration and be on the division's list of approved doctors in order to perform services or receive payment for those services.

(g)  The commissioner by rule shall modify registration and training requirements for doctors who infrequently provide health care or who perform utilization review or peer review functions for insurance carriers as necessary to ensure that those doctors are informed of the regulations that affect health care benefit delivery under this subtitle.

(h)  Notwithstanding Section 4201.152, Insurance Code, a utilization review agent or an insurance carrier that uses doctors to perform reviews of health care services provided under this subtitle, including utilization review, may only use doctors licensed to practice in this state.

(i)  The commissioner may grant exceptions to the requirement imposed under Subsection (f) as necessary to ensure that:

(1)  employees have access to health care; and

(2)  insurance carriers have access to evaluations of an employee's health care and income benefit eligibility as provided by this subtitle.

(j)  A doctor who contracts with a workers' compensation health care network certified under Chapter 1305, Insurance Code, is not subject to the registration requirements of Subsections (a)-(i) for the purpose of providing health care services under that network contract.  The doctor is subject to the requirements of Subsections (l)-(p), and Subsection (q) applies to health care services and functions provided by a doctor who contracts with a certified workers' compensation health care network.

(k)  The requirements of Subsections (a)-(g) and Subsection (i) expire September 1, 2007.  Before that date, the commissioner may waive the application of the provisions of Subsections (a)-(g) and Subsection (i) that require doctors to hold a certificate of registration and to be on the list of approved doctors if the

commissioner determines that:

(1) injured employees have adequate access to health care providers who are willing to treat injured employees for compensable injuries through workers' compensation health care networks certified under Chapter 1305, Insurance Code; or

(2) injured employees who are not covered by a workers' compensation health care network certified under Chapter 1305, Insurance Code, do not have adequate access to health care providers who are willing to treat injured employees for compensable injuries.

(l) The injured employee's treating doctor is responsible for the efficient management of medical care as required by Section 408.025(c) and commissioner rules. The division shall collect information regarding:

(1) return-to-work outcomes;

(2) patient satisfaction; and

(3) cost and utilization of health care provided or authorized by a treating doctor on the list of approved doctors.

(m) The commissioner may adopt rules to define the role of the treating doctor and to specify outcome information to be collected for a treating doctor.

(n) The commissioner by rule shall establish reasonable requirements for doctors, and health care providers financially related to those doctors, regarding training, impairment rating testing, and disclosure of financial interests as required by Section 413.041, and for monitoring of those doctors and health care providers as provided by Sections 408.0231, 413.0511, and 413.0512.

(o) A doctor, including a doctor who contracts with a workers' compensation health care network, shall:

(1) comply with the requirements established by commissioner rule under Subsections (l) and (m) and with Section 413.041 regarding the disclosure of financial interests; and

(2) if the doctor intends to provide certifications of maximum medical improvement or assign impairment ratings, comply with the impairment rating training and testing requirements established by commissioner rule under Subsection (n).

19

(p)AAA person required to comply with Subsection (o), including a doctor who contracts with a workers' compensation health care network, who does not comply with that section commits an administrative violation.

(q)AAAn insurance carrier may not use, for the purpose of suspending temporary income benefits or computing impairment income benefits, a certification of maximum medical improvement or an impairment rating assigned by a doctor, including a doctor who contracts with a workers' compensation health care network certified under Chapter 1305, Insurance Code, who fails to comply with Subsection (o)(2).

(r)AAANotwithstanding the waiver or expiration of Subsections (a)-(g) and (i), there may be no direct or indirect provision of health care under this subtitle and rules adopted under this subtitle, and no direct or indirect receipt of remuneration under this subtitle and rules adopted under this subtitle by a doctor who:

(1)AAbefore September 1, 2007:

(A)AAwas removed or deleted from the list of approved doctors either by action of the Texas Workers' Compensation Commission or the division or by agreement with the doctor;

(B)AAwas not admitted to the list of approved doctors either by action of the Texas Workers' Compensation Commission or the division or by agreement with the doctor;

(C)AAwas suspended from the list of approved doctors either by action of the Texas Workers' Compensation Commission or the division or by agreement with the doctor; or

(D)AAhad the doctor's license to practice suspended by the appropriate licensing agency, including a suspension that was stayed, deferred, or probated, or voluntarily relinquished the license to practice; and

(2)AAwas not reinstated or restored by the Texas Workers' Compensation Commission or the division to the list of approved doctors before September 1, 2007.

(s)AAThe waiver or expiration of Subsections (a)-(g) and (i) do not limit the division's ability to impose sanctions as provided by this subtitle and commissioner rules.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.25, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1456, Sec. 1.01, eff. Sept. 1, 2001. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.083, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 134 (H.B. 1006), Sec. 2, eff. September 1, 2007.

Acts 2009, 81st Leg., R.S., Ch. 1330 (H.B. 4290), Sec. 17, eff. September 1, 2009.


Sec. 408.0231. MAINTENANCE OF LIST OF APPROVED DOCTORS; SANCTIONS AND PRIVILEGES RELATING TO HEALTH CARE. (a) The commissioner shall delete from the list of approved doctors a doctor:

(1) who fails to register with the division as provided by this chapter and commissioner rules;

(2) who is deceased;

(3) whose license to practice in this state is revoked, suspended, or not renewed by the appropriate licensing authority; or

(4) who requests to be removed from the list.

(b) The commissioner by rule shall establish criteria for:

(1) deleting or suspending a doctor from the list of approved doctors;

(2) imposing sanctions on a doctor or an insurance carrier as provided by this section;

(3) monitoring of utilization review agents, as provided by a memorandum of understanding between the division and the Texas Department of Insurance; and

(4) authorizing increased or reduced utilization review and preauthorization controls on a doctor.

(c) Rules adopted under Subsection (b) are in addition to, and do not affect, the rules adopted under Section 415.023(b). The criteria for deleting a doctor from the list or for recommending or imposing sanctions may include anything the commissioner considers relevant, including:

(1)AAAa sanction of the doctor by the commissioner for a violation of Chapter 413 or Chapter 415;

(2)AAAa sanction by the Medicare or Medicaid program for:

(A)AAAsubstandard medical care;

(B)AAAovercharging;

(C)AAAoverutilization of medical services; or

(D)AAAany other substantive noncompliance with requirements of those programs regarding professional practice or billing;

(3)AAAevidence from the division's medical records that the applicable insurance carrier's utilization review practices or the doctor's charges, fees, diagnoses, treatments, evaluations, or impairment ratings are substantially different from those the commissioner finds to be fair and reasonable based on either a single determination or a pattern of practice;

(4)AAAa suspension or other relevant practice restriction of the doctor's license by an appropriate licensing authority;

(5)AAAprofessional failure to practice medicine or provide health care, including chiropractic care, in an acceptable manner consistent with the public health, safety, and welfare;

(6)AAAfindings of fact and conclusions of law made by a court, an administrative law judge of the State Office of Administrative Hearings, or a licensing or regulatory authority; or

(7)AAAa criminal conviction.

(d)AAAThe commissioner by rule shall establish procedures under which a doctor may apply for:

(1)AAAreinstatement to the list of approved doctors; or

(2)AAArestoration of doctor practice privileges removed by the commissioner based on sanctions imposed under this section.

(e)AAAThe commissioner shall act on a recommendation by the medical advisor selected under Section 413.0511 and, after notice and the opportunity for a hearing, may impose sanctions under this section on a doctor or an insurance carrier or may recommend action regarding a utilization review agent. The commissioner and the commissioner of insurance shall enter into a memorandum of

understanding to coordinate the regulation of insurance carriers and utilization review agents as necessary to ensure:

(1)AAcompliance with applicable regulations; and

(2)AAthat appropriate health care decisions are reached under this subtitle and under Chapter 4201, Insurance Code.

(f)AAThe sanctions the commissioner may recommend or impose under this section include:

(1)AAreduction of allowable reimbursement;

(2)AAmandatory preauthorization of all or certain health care services;

(3)AArequired peer review monitoring, reporting, and audit;

(4)AAdeletion or suspension from the approved doctor list and the designated doctor list;

(5)AArestrictions on appointment under this chapter;

(6)AAconditions or restrictions on an insurance carrier regarding actions by insurance carriers under this subtitle in accordance with the memorandum of understanding adopted under Subsection (e); and

(7)AAmandatory participation in training classes or other courses as established or certified by the division.

(g)AAThe commissioner shall adopt rules regarding doctors who perform peer review functions for insurance carriers. Those rules may include standards for peer review, imposition of sanctions on doctors performing peer review functions, including restriction, suspension, or removal of the doctor's ability to perform peer review on behalf of insurance carriers in the workers' compensation system, and other issues important to the quality of peer review, as determined by the commissioner. A doctor who performs peer review under this subtitle must hold the appropriate professional license issued by this state. A doctor, other than a chiropractor or a dentist, who performs peer review is subject to Section 408.0043. A dentist who performs a peer review of a dental service provided to an injured employee is subject to Section 408.0044. A chiropractor who performs a peer review of a chiropractic service provided to an injured employee is subject to Section 408.0045.

23

Added by Acts 2001, 77th Leg., ch. 1456, Sec. 1.01, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.084, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 134 (H.B. 1006), Sec. 3, eff. September 1, 2007.

Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 4, eff. September 1, 2007.


Sec. 408.024. NONCOMPLIANCE WITH SELECTION REQUIREMENTS. Except as otherwise provided, and after notice and an opportunity for hearing, the commissioner may relieve an insurance carrier of liability for health care that is furnished by a health care provider or another person selected in a manner inconsistent with the requirements of this subchapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.085, eff. September 1, 2005.


Sec. 408.025. REPORTS AND RECORDS REQUIRED FROM HEALTH CARE PROVIDERS. (a) The commissioner by rule shall adopt requirements for reports and records that are required to be filed with the division or provided to the injured employee, the employee's attorney, or the insurance carrier by a health care provider.

(b) The commissioner by rule shall adopt requirements for reports and records that are to be made available by a health care provider to another health care provider to prevent unnecessary duplication of tests and examinations.

(c) The treating doctor is responsible for maintaining efficient utilization of health care.

(d) On the request of an injured employee, the employee's attorney, or the insurance carrier, a health care provider shall furnish records relating to treatment or hospitalization for which compensation is being sought. The division may regulate the charge for furnishing a report or record, but the charge may not be less

24

than the fair and reasonable charge for furnishing the report or record. A health care provider may disclose to the insurance carrier of an affected employer records relating to the diagnosis or treatment of the injured employee without the authorization of the injured employee to determine the amount of payment or the entitlement to payment.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 9, eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.086, eff. September 1, 2005.


Sec. 408.0251. ELECTRONIC BILLING REQUIREMENTS. (a) The commissioner, by rule and in cooperation with the commissioner of insurance, shall adopt rules regarding the electronic submission and processing of medical bills by health care providers to insurance carriers.

(b) Insurance carriers shall accept medical bills submitted electronically by health care providers in accordance with commissioner rule.

(c) The commissioner shall by rule establish criteria for granting exceptions to insurance carriers and health care providers who are unable to submit or accept medical bills electronically.

(d) On or after January 1, 2008, the commissioner may adopt rules regarding the electronic payment of medical bills by insurance carriers to health care providers.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.087, eff. September 1, 2005.


Sec. 408.0252. UNDERSERVED AREAS. The commissioner by rule may identify areas of this state in which access to health care providers is less available and may adopt appropriate standards, guidelines, and rules regarding the delivery of health care in those areas.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.087, eff. September 1, 2005.

Sec. 408.026. SPINAL SURGERY. Except in a medical emergency, an insurance carrier is liable for medical costs related to spinal surgery only as provided by Section 413.014 and commissioner rules.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 4.01, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.088, eff. September 1, 2005.


Sec. 408.027. PAYMENT OF HEALTH CARE PROVIDER. (a) A health care provider shall submit a claim for payment to the insurance carrier not later than the 95th day after the date on which the health care services are provided to the injured employee. Failure by the health care provider to timely submit a claim for payment constitutes a forfeiture of the provider's right to reimbursement for that claim for payment.

(b) The insurance carrier must pay, reduce, deny, or determine to audit the health care provider's claim not later than the 45th day after the date of receipt by the carrier of the provider's claim. The carrier may request additional documentation necessary to clarify the provider's charges at any time during the 45-day period. If the insurance carrier requests additional documentation under this subsection, the health care provider must provide the requested documentation not later than the 15th day after the date of receipt of the carrier's request. If the insurance carrier elects to audit the claim, the carrier must complete the audit not later than the 160th day after the date of receipt by the carrier of the health care provider's claim, and, not later than the 160th day after the receipt of the claim, must make a determination regarding the relationship of the health care services provided to the compensable injury, the extent of the injury, and the medical necessity of the services provided. If the insurance carrier chooses to audit the claim, the insurance carrier must pay to the health care provider not later than the 45th day after the date of receipt by the carrier of the provider's claim 85 percent of:

(1)  the amount for the health care service established under the fee guidelines authorized under this subtitle if the health care service is not provided through a workers' compensation health care network under Chapter 1305, Insurance Code; or

(2)  the amount of the contracted rate for that health care service if the health care service is provided through a workers' compensation health care network under Chapter 1305, Insurance Code.

(c)  If the health care services provided are determined to be appropriate, the insurance carrier shall pay the health care provider the remaining 15 percent of the claim not later than the 160th day after the date of receipt by the carrier of the health care provider's documentation of the claim.  An insurance carrier commits an administrative violation if the carrier, in violation of Subsection (b), fails to:

(1)  pay, reduce, deny, or notify the health care provider of the intent to audit the claim by the 45th day after the date of receipt by the carrier of the health care provider's claim; or

(2)  pay, reduce, or deny an audited claim by the 160th day after the date of receipt of the claim.

(d)  If an insurance carrier contests the compensability of an injury and the injury is determined not to be compensable, the carrier may recover the amounts paid for health care services from the employee's accident or health benefit plan, or any other person who may be obligated for the cost of the health care services.  If an accident or health insurance carrier or other person obligated for the cost of health care services has paid for health care services for an employee for an injury for which a workers' compensation insurance carrier denies compensability, and the injury is later determined to be compensable, the accident or health insurance carrier or other person may recover the amounts paid for such services from the workers' compensation insurance carrier.  If an accident or health insurance carrier or other person obligated for the cost of health care services has paid for health care services for an employee for an injury for which the workers' compensation insurance carrier or the employer has not

27

disputed compensability, the accident or health insurance carrier or other person may recover reimbursement from the insurance carrier in the manner described by Section 409.009 or 409.0091, as applicable.

(e)  If an insurance carrier disputes the amount of payment or the health care provider's entitlement to payment, the insurance carrier shall send to the division, the health care provider, and the injured employee a report that sufficiently explains the reasons for the reduction or denial of payment for health care services provided to the employee. The insurance carrier is entitled to a hearing as provided by Section 413.031(d).

(f)  Except as provided by Section 408.0281 or 408.0284, any payment made by an insurance carrier under this section shall be in accordance with the fee guidelines authorized under this subtitle if the health care service is not provided through a workers' compensation health care network under Chapter 1305, Insurance Code, or at a contracted rate for that health care service if the health care service is provided through a workers' compensation health care network under Chapter 1305, Insurance Code.

(g)  Notwithstanding any other provision in this subtitle or Chapter 1305, Insurance Code, this section and Section 408.0271 apply to health care provided through a workers' compensation health care network established under Chapter 1305, Insurance Code.  The commissioner shall adopt rules as necessary to implement the provisions of this section and Section 408.0271.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 10, eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.089, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1007 (H.B. 724), Sec. 4, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 705 (H.B. 528), Sec. 1, eff. June 17, 2011.

Acts 2013, 83rd Leg., R.S., Ch. 1202 (S.B. 1322), Sec. 1, eff. September 1, 2013.

Sec. 408.0271.  REIMBURSEMENT BY HEALTH CARE PROVIDER.  (a) If the health care services provided to an injured employee are determined by the insurance carrier to be inappropriate, the insurance carrier shall:

(1)  notify the health care provider in writing of the carrier's decision; and

(2)  demand a refund by the health care provider of the portion of payment on the claim that was received by the health care provider for the inappropriate services.

(b)  The health care provider may appeal the insurance carrier's determination under Subsection (a).  The health care provider must file an appeal under this subsection with the insurance carrier not later than the 45th day after the date of the insurance carrier's request for the refund.  The insurance carrier must act on the appeal not later than the 45th day after the date on which the provider files the appeal.

(c)  A health care provider shall reimburse the insurance carrier for payments received by the provider for inappropriate charges not later than the 45th day after the date of the carrier's notice.  The failure by the health care provider to timely remit payment to the carrier constitutes an administrative violation. Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.0895, eff. September 1, 2005.

Sec. 408.0272.  CERTAIN EXCEPTIONS FOR UNTIMELY SUBMISSION OF CLAIM.  (a)  In this section:

(1)  "Group accident and health insurance" has the meaning assigned by Chapter 1251, Insurance Code.

(2)  "Health maintenance organization" has the meaning assigned by Chapter 843, Insurance Code.

(b)  Notwithstanding Section 408.027, a health care provider who fails to timely submit a claim for payment to the insurance carrier under Section 408.027(a) does not forfeit the provider's right to reimbursement for that claim for payment solely for failure to submit a timely claim if:

(1)  the provider submits proof satisfactory to the commissioner that the provider, within the period prescribed by

Section 408.027(a), erroneously filed for reimbursement with:

(A) an insurer that issues a policy of group accident and health insurance under which the injured employee is a covered insured;

(B) a health maintenance organization that issues an evidence of coverage under which the injured employee is a covered enrollee; or

(C) a workers' compensation insurance carrier other than the insurance carrier liable for the payment of benefits under this title; or

(2) the commissioner determines that the failure resulted from a catastrophic event that substantially interfered with the normal business operations of the provider.

(c) Notwithstanding Subsection (b), a health care provider who erroneously submits a claim for payment to an entity described by Subdivision (1) of that subsection forfeits the provider's right to reimbursement for that claim if the provider fails to submit the claim to the correct workers' compensation insurance carrier within 95 days after the date the provider is notified of the provider's erroneous submission of the claim.

(d) Notwithstanding any other provision of this section or Section 408.027, the period for submitting a claim for payment may be extended by agreement of the parties.

Added by Acts 2007, 80th Leg., R.S., Ch. 459 (H.B. 1005), Sec. 1, eff. September 1, 2007.


Sec. 408.028. PHARMACEUTICAL SERVICES. (a) A physician providing care to an employee under this subchapter shall prescribe for the employee any necessary prescription drugs, and order over-the-counter alternatives to prescription medications as clinically appropriate and applicable, in accordance with applicable state law and as provided by Subsection (b). A doctor providing care may order over-the-counter alternatives to prescription medications, when clinically appropriate, in accordance with applicable state law and as provided by Subsection (b).

(b) The commissioner by rule shall require the use of

30

generic pharmaceutical medications and clinically appropriate over-the-counter alternatives to prescription medications unless otherwise specified by the prescribing doctor, in accordance with applicable state law. The commissioner by rule shall adopt a closed formulary under Section 413.011. Rules adopted by the commissioner shall allow an appeals process for claims in which a treating doctor determines and documents that a drug not included in the formulary is necessary to treat an injured employee's compensable injury.

(c) Except as otherwise provided by this subtitle, an insurance carrier may not require an employee to use pharmaceutical services designated by the carrier.

(d) The commissioner shall adopt rules to allow an employee to purchase over-the-counter alternatives to prescription medications prescribed or ordered under Subsection (a) or (b) and to obtain reimbursement from the insurance carrier for those medications.

(e) Notwithstanding Subsection (b), the commissioner by rule shall allow an employee to purchase a brand name drug rather than a generic pharmaceutical medication or over-the-counter alternative to a prescription medication if a health care provider prescribes a generic pharmaceutical medication or an over-the-counter alternative to a prescription medication. The employee shall be responsible for paying the difference between the cost of the brand name drug and the cost of the generic pharmaceutical medication or of an over-the-counter alternative to a prescription medication. The employee may not seek reimbursement for the difference in cost from an insurance carrier and is not entitled to use the medical dispute resolution provisions of Chapter 413 with regard to the prescription. A payment described by this subsection by an employee to a health care provider does not violate Section 413.042. This subsection does not affect the duty of a health care provider to comply with the requirements of Subsection (b) when prescribing medications or ordering over-the-counter alternatives to prescription medications.

(f) Notwithstanding any other provision of this title, the

31

commissioner by rule shall adopt a fee schedule for pharmacy and pharmaceutical services that will:

(1)  provide reimbursement rates that are fair and reasonable;

(2)  assure adequate access to medications and services for injured workers;

(3)  minimize costs to employees and insurance carriers; and

(4)  take into consideration the increased security of payment afforded by this subtitle.

(g)  Section 413.011(d) and the rules adopted to implement that subsection do not apply to the fee schedule adopted by the commissioner under Subsection (f).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 6.01, eff. June 17, 2001; Acts 2003, 78th Leg., ch. 468, Sec. 1, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.090, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 705 (H.B. 528), Sec. 2, eff. June 17, 2011.

Sec. 408.0281.  REIMBURSEMENT FOR PHARMACEUTICAL SERVICES; ADMINISTRATIVE VIOLATION. (a)  In this section:

(1)  "Informal network" means a network that:

(A)  is established under a contract between an insurance carrier or an insurance carrier's authorized agent and a health care provider for the provision of pharmaceutical services; and

(B)  includes a specific fee schedule.

(2)  "Voluntary network" means a voluntary workers' compensation health care delivery network established under former Section 408.0223, as that section existed before repeal by Chapter 265 (H.B. 7), Acts of the 79th Legislature, Regular Session, 2005, by an insurance carrier for the provision of pharmaceutical services.

(b) Notwithstanding any provision of Chapter 1305,

Insurance Code, or Section 504.053 of this code, prescription medication or services, as defined by Section 401.011(19)(E):

(1)  may be reimbursed in accordance with the fee guidelines adopted by the commissioner or at a contract rate in accordance with this section; and

(2)  may not be delivered through:

(A)  a workers' compensation health care network under Chapter 1305, Insurance Code; or

(B)  a contract described by Section 504.053(b)(2).

(c)  Notwithstanding any other provision of this title, including Section 408.028(f), or any provision of Chapter 1305, Insurance Code, an insurance carrier may pay a health care provider fees for pharmaceutical services that are inconsistent with the fee guidelines adopted by the commissioner only if the carrier has a contract with the health care provider and that contract includes a specific fee schedule. An insurance carrier or the carrier's authorized agent may use an informal or voluntary network to obtain a contractual agreement that provides for fees different from the fees authorized under the fee guidelines adopted by the commissioner for pharmaceutical services. If a carrier or the carrier's authorized agent chooses to use an informal or voluntary network to obtain a contractual fee arrangement, there must be a contractual arrangement between:

(1)  the carrier or authorized agent and the informal or voluntary network that authorizes the network to contract with health care providers for pharmaceutical services on the carrier's behalf; and

(2)  the informal or voluntary network and the health care provider that includes a specific fee schedule and complies with the notice requirements of this section.

(d)  An informal or voluntary network, or the carrier or the carrier's authorized agent, as appropriate, shall, at least quarterly, notify each health care provider of any person, other than an injured employee, to which the network's contractual fee arrangements with the health care provider are sold, leased, transferred, or conveyed. Notice to each health care provider:

33

(1)  must include:

(A)  the contact information for the network, including the name, physical address, and toll-free telephone number at which a health care provider with which the network has a contract may contact the network; and

(B)  in the body of the notice:

(i)  the name, physical address, and telephone number of any person, other than an injured employee, to which the network's contractual fee arrangement with the health care provider is sold, leased, transferred, or conveyed; and

(ii)  the start date and any end date of the period during which any person, other than an injured employee, to which the network's contractual fee arrangement with the health care provider is sold, leased, transferred, or conveyed; and

(2)  may be provided:

(A)  in an electronic format, if a paper version is available on request by the division; and

(B)  through an Internet website link, but only if the website:

(i)  contains the information described by Subdivision (1); and

(ii)  is updated at least monthly with current and correct information.

(e)  An informal or voluntary network, or the carrier or the carrier's authorized agent, as appropriate, shall document the delivery of the notice required under Subsection (d), including the method of delivery, to whom the notice was delivered, and the date of delivery. For purposes of Subsection (d), a notice is considered to be delivered on, as applicable:

(1)  the fifth day after the date the notice is mailed via United States Postal Service; or

(2)  the date the notice is faxed or electronically delivered.

(f)  An insurance carrier, or the carrier's authorized agent or an informal or voluntary network at the carrier's request, shall provide copies of each contract described by Subsection (c) to the division on the request of the division.  Information included in a

34

contract under Subsection (c) is confidential and is not subject to disclosure under Chapter 552, Government Code. Notwithstanding Subsection (c), the insurance carrier may be required to pay fees in accordance with the division's fee guidelines if:

(1)  the contract:

(A)  is not provided to the division on the division's request;

(B)  does not include a specific fee schedule consistent with Subsection (c); or

(C)  does not clearly state that the contractual fee arrangement is between the health care provider and the named insurance carrier or the carrier's authorized agent; or

(2)  the carrier or the carrier's authorized agent does not comply with the notice requirements under Subsection (d).

(g)  Failure to provide documentation described by Subsection (e) to the division on the request of the division or failure to provide notice as required under Subsection (d) creates a rebuttable presumption in an enforcement action under this subtitle and in a medical fee dispute under Chapter 413 that a health care provider did not receive the notice.

(h)  An insurance carrier or the carrier's authorized agent commits an administrative violation if the carrier or agent violates any provision of this section. Any administrative penalty assessed under this subsection shall be assessed against the carrier, regardless of whether the carrier or agent committed the violation.

(i)  Notwithstanding Section 1305.003(b), Insurance Code, in the event of a conflict between this section and Section 413.016 or any other provision of Chapter 413 of this code or Chapter 1305, Insurance Code, this section prevails.
Added by Acts 2011, 82nd Leg., R.S., Ch. 705 (H.B. 528), Sec. 3, eff. June 17, 2011.


Sec.  408.0282.  REQUIREMENTS FOR CERTAIN INFORMAL OR VOLUNTARY NETWORKS.  (a)  Each informal or voluntary network described by Section 408.0281 or 408.0284 shall, not later than the 30th day after the date the network is established, report the

35

following information to the division:

		(1)  the name of the informal or voluntary network and federal employer identification number;

		(2)  an executive contact for official correspondence for the informal or voluntary network;

		(3)  a toll-free telephone number by which a health care provider may contact the informal or voluntary network;

		(4)  a list of each insurance carrier with whom the informal or voluntary network contracts, including the carrier's federal employer identification number; and

		(5)  a list of, and contact information for, each entity with which the informal or voluntary network has a contract or other business relationship that benefits or is entered into on behalf of an insurance carrier, including an insurance carrier's authorized agent or a subsidiary or other affiliate of the network.

	(b)  Each informal or voluntary network shall report any changes to the information provided under Subsection (a) to the division not later than the 30th day after the effective date of the change.

	(c)  An informal or voluntary network shall submit a report required under this section, including a report of changes required under Subsection (b), to the division through the division's online reporting system available through the division's Internet website.

	(d)  An informal or voluntary network commits an administrative violation if the informal or voluntary network violates any provision of this section.

Added by Acts 2011, 82nd Leg., R.S., Ch. 705 (H.B. 528), Sec. 3, eff. June 17, 2011.

Amended by:

	Acts 2013, 83rd Leg., R.S., Ch. 1202 (S.B. 1322), Sec. 2, eff. September 1, 2013.


	Sec. 408.0284.  REIMBURSEMENT FOR DURABLE MEDICAL EQUIPMENT AND HOME HEALTH CARE SERVICES; ADMINISTRATIVE VIOLATION.  (a)  In this section:

		(1)  "Durable medical equipment" includes prosthetics

36

and orthotic devices and related medical equipment and supplies. The term does not include:

(A) an object or device that is surgically implanted, embedded, inserted, or otherwise applied;

(B) related equipment necessary to operate, program, or recharge the object or device described by Paragraph (A); or

(C) an intrathecal pump.

(2) "Informal network" means a network that:

(A) is established under a contract between an insurance carrier or an insurance carrier's authorized agent and a health care provider for the provision of durable medical equipment or home health care services; and

(B) includes a specific fee schedule.

(3) "Voluntary network" means a voluntary workers' compensation health care delivery network established under former Section 408.0223, as that section existed before repeal by Chapter 265 (House Bill No. 7), Acts of the 79th Legislature, Regular Session, 2005, by an insurance carrier for the provision of durable medical equipment or home health care services.

(b) Notwithstanding any provision of Chapter 1305, Insurance Code, or Section 504.053 of this code, durable medical equipment and home health care services may be reimbursed in accordance with the fee guidelines adopted by the commissioner or at a voluntarily negotiated contract rate in accordance with this section.

(c) Notwithstanding any other provision of this title or any provision of Chapter 1305, Insurance Code, an insurance carrier may pay a health care provider fees for durable medical equipment or home health care services that are inconsistent with the fee guidelines adopted by the commissioner only if the carrier or the carrier's authorized agent has a contract with the health care provider and that contract includes a specific fee schedule. An insurance carrier or the carrier's authorized agent may use an informal or voluntary network to obtain a contractual agreement that provides for fees different from the fees authorized under the fee guidelines adopted by the commissioner for durable medical

equipment or home health care services. If a carrier or the carrier's authorized agent chooses to use an informal or voluntary network to obtain a contractual fee arrangement, there must be a contractual arrangement between:

(1)  the carrier or authorized agent and the informal or voluntary network that authorizes the network to contract with health care providers for durable medical equipment or home health care services on the carrier's behalf; and

(2)  the informal or voluntary network and the health care provider that includes a specific fee schedule and complies with the notice requirements of this section.

(d)  An informal or voluntary network, or the carrier or the carrier's authorized agent shall, at least quarterly, notify each health care provider of any person, other than an injured employee, to which the network's contractual fee arrangements with the health care provider are sold, leased, transferred, or conveyed.  Notice to each health care provider:

(1)  must include:

(A)  the contact information for the network, including the name, physical address, and toll-free telephone number at which a health care provider with which the network has a contract may contact the network; and

(B)  in the body of the notice:

(i)  the name, physical address, and telephone number of any person, other than an injured employee, to which the network's contractual fee arrangement with the health care provider is sold, leased, transferred, or conveyed; and

(ii)  the start date and any end date of the period during which the network's contractual fee arrangement with the health care provider is sold, leased, transferred, or conveyed; and

(2)  may be provided:

(A)  in an electronic format, if a paper version is available on request by the division; and

(B)  through an Internet website link, but only if the website:

(i)  contains the information described by

38

Subdivision (1); and

(ii) is updated at least monthly with current and correct information.

(e) An informal or voluntary network, or the carrier or the carrier's authorized agent, as appropriate, shall document the delivery of the notice required under Subsection (d), including the method of delivery, to whom the notice was delivered, and the date of delivery. For purposes of Subsection (d), a notice is considered to be delivered on, as applicable:

(1) the fifth day after the date the notice is mailed via United States Postal Service; or

(2) the date the notice is faxed or electronically delivered.

(f) An insurance carrier, or the carrier's authorized agent or an informal or voluntary network at the carrier's request, shall provide copies of each contract described by Subsection (c) to the division on the request of the division. Information included in a contract under Subsection (c) is confidential and is not subject to disclosure under Chapter 552, Government Code. Notwithstanding Subsection (c), the insurance carrier may be required to pay fees in accordance with the division's fee guidelines if:

(1) the contract:

(A) is not provided to the division on the division's request;

(B) does not include a specific fee schedule consistent with Subsection (c); or

(C) does not clearly state that the contractual fee arrangement is between the health care provider and the named insurance carrier or the carrier's authorized agent; or

(2) the carrier or the carrier's authorized agent does not comply with the notice requirements under Subsection (d).

(g) Failure to provide documentation described by Subsection (e) to the division on the request of the division or failure to provide notice as required under Subsection (d) creates a rebuttable presumption in an enforcement action under this subtitle and in a medical fee dispute under Chapter 413 that a health care provider did not receive the notice.

(h)  An insurance carrier or the carrier's authorized agent commits an administrative violation if the carrier or agent violates any provision of this section. Any administrative penalty assessed under this subsection shall be assessed against the carrier, regardless of whether the carrier or agent committed the violation.

(i)  Notwithstanding Section 1305.003(b), Insurance Code, in the event of a conflict between this section and Section 413.016 or any other provision of Chapter 413 of this code or Chapter 1305, Insurance Code, this section prevails.
Added by Acts 2013, 83rd Leg., R.S., Ch. 1202 (S.B. 1322), Sec. 3, eff. September 1, 2013.


Sec. 408.029.  NURSE FIRST ASSISTANT SERVICES.  An insurance carrier may not refuse to reimburse a health care practitioner solely because that practitioner is a nurse first assistant, as defined by Section 301.1525, Occupations Code, for a covered service that a physician providing health care services under this subtitle has requested the nurse first assistant to perform.
Added by Acts 2001, 77th Leg., ch. 812, Sec. 9, eff. Sept. 1, 2001.


Sec. 408.030.  REPORTS OF PHYSICIAN VIOLATIONS.  If the division discovers an act or omission by a physician that may constitute a felony, a misdemeanor involving moral turpitude, a violation of a state or federal narcotics or controlled substance law, an offense involving fraud or abuse under the Medicare or Medicaid program, or a violation of this subtitle, the division shall immediately report that act or omission to the Texas State Board of Medical Examiners.
Added by Acts 2003, 78th Leg., ch. 202, Sec. 38, eff. June 10, 2003.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.091, eff. September 1, 2005.


Sec. 408.031.  WORKERS' COMPENSATION HEALTH CARE NETWORKS. (a)  Notwithstanding any other provision of this chapter, an injured employee may receive benefits under a workers' compensation

health care network established under Chapter 1305, Insurance Code, in the manner provided by that chapter.

(b)  In the event of a conflict between this title and Chapter 1305, Insurance Code, as to the provision of medical benefits for injured employees, the establishment and regulation of fees for medical treatments and services, the time frames for payment of medical bills, the operation and regulation of workers' compensation health care networks, the regulation of the health care providers who contract with those networks, or the resolution of disputes regarding medical benefits provided through those networks, Chapter 1305, Insurance Code, prevails.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.092, eff. September 1, 2005.

Sec.  408.032.  STUDY ON INTERDISCIPLINARY PAIN REHABILITATION PROGRAM AND FACILITY ACCREDITATION REQUIREMENT. The division shall study the issue of required accreditation of interdisciplinary pain rehabilitation programs or interdisciplinary pain rehabilitation treatment facilities that provide services to injured employees and shall report to the legislature regarding any statutory changes that the division considers necessary to require that accreditation.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.093, eff. September 1, 2005.

SUBCHAPTER C. COMPUTATION OF AVERAGE WEEKLY WAGE

Sec. 408.041.  AVERAGE WEEKLY WAGE. (a) Except as otherwise provided by this subtitle, the average weekly wage of an employee who has worked for the employer for at least the 13 consecutive weeks immediately preceding an injury is computed by dividing the sum of the wages paid in the 13 consecutive weeks immediately preceding the date of the injury by 13.

(b)  The average weekly wage of an employee whose wage at the time of injury has not been fixed or cannot be determined or who has worked for the employer for less than the 13 weeks immediately preceding the injury equals:

41

(1)  the usual wage that the employer pays a similar employee for similar services;  or

(2)  if a similar employee does not exist, the usual wage paid in that vicinity for the same or similar services provided for remuneration.

(c)  If Subsection (a) or (b) cannot reasonably be applied because the employee's employment has been irregular or because the employee has lost time from work during the 13-week period immediately preceding the injury because of illness, weather, or another cause beyond the control of the employee, the commissioner may determine the employee's average weekly wage by any method that the commissioner considers fair, just, and reasonable to all parties and consistent with the methods established under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.094, eff. September 1, 2005.


Sec. 408.042.  AVERAGE WEEKLY WAGE FOR PART-TIME EMPLOYEE OR EMPLOYEE WITH MULTIPLE EMPLOYMENT.  (a)  The average weekly wage of a part-time employee who limits the employee's work to less than a full-time workweek as a regular course of that employee's conduct is computed as provided by Section 408.041.

(b)  For part-time employees not covered by Subsection (a), the average weekly wage:

(1)  for determining temporary income benefits is computed as provided by Section 408.041;  and

(2)  for determining impairment income benefits, supplemental income benefits, lifetime income benefits, and death benefits is computed as follows:

(A)  if the employee has worked for the employer for at least the 13 weeks immediately preceding the date of the injury, the average weekly wage is computed by dividing the sum of the wages paid in the 13 consecutive weeks immediately preceding the date of the injury by 13 and adjusting that amount to the weekly wage level the employee would have attained by working a full-time

42

workweek at the same rate of pay;  or

(B)  if the employee has worked for the employer for less than 13 weeks immediately preceding the date of the injury, the average weekly wage is equal to:

(i)  the weekly wage that the employer pays a similar employee for similar services based on a full-time workweek;  or

(ii)  if a similar employee does not exist, the usual wage paid in that vicinity for the same or similar services based on a full-time workweek.

(c)  For employees with multiple employment, the average weekly wage for determining temporary income benefits, impairment income benefits, supplemental income benefits, lifetime income benefits, and death benefits, is computed as follows:

(1)  the average weekly wage for an employee with multiple employment is equal to the sum of the average weekly wages computed under Subdivisions (2) and (3);

(2)  for each of the employers for whom the employee has worked for at least the 13 weeks immediately preceding the date of injury, the average weekly wage is equal to the sum of the wages paid by that employer to the employee in the 13 weeks immediately preceding the injury divided by 13;

(3)  for each of the employers for whom the employee has worked for less than the 13 weeks immediately preceding the date of the injury, the average weekly wage is equal to:

(A)  the weekly wage that employer pays similar employees for similar services;  or

(B)  if a similar employee does not exist, the usual weekly wage paid in that vicinity for the same or similar services;  and

(4)  the average weekly wage of an employee with multiple employment who limits the employee's work to less than a full-time workweek, but does not do so as a regular course of that employee's conduct, is adjusted to the weekly wage level the employee would have attained by working a full-time workweek at the employee's average rate of pay.

(d)  The commissioner shall:

43

(1)  prescribe a form to collect information regarding the wages of employees with multiple employment; and

(2)  by rule, determine the manner by which the division collects and distributes wage information to implement this section.

(e)  For an employee with multiple employment, only the employee's wages that are reportable for federal income tax purposes may be considered.  The employee shall document and verify wage payments subject to this section.

(f)  If the commissioner determines that computing the average weekly wage for an employee as provided by Subsection (c) is impractical or unreasonable, the commissioner shall set the average weekly wage in a manner that more fairly reflects the employee's average weekly wage and that is fair and just to both parties or is in the manner agreed to by the parties.  The commissioner by rule may define methods to determine a fair and just average weekly wage consistent with this section.

(g)  An insurance carrier is entitled to apply for and receive reimbursement at least annually from the subsequent injury fund for the amount of income and death benefits paid to a worker under this section that are based on employment other than the employment during which the compensable injury occurred.  The commissioner may adopt rules that govern the documentation, application process, and other administrative requirements necessary to implement this subsection.

(h)  In this section:

(1)  "Employee with multiple employment" means an employee who has more than one employer.

(2)  "Full-time workweek" means a 40-hour workweek.

(3)  "Part-time employee" means an employee who, at the time of the injury, was working less than a full-time workweek for the employer for whom the employee was working when the compensable injury occurred.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 10.03, eff. June 17, 2001.  Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.095, eff.

September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 2, eff. September 1, 2007.


Sec. 408.043.  AVERAGE WEEKLY WAGE FOR SEASONAL EMPLOYEE. (a)  For determining the amount of temporary income benefits of a seasonal employee, the average weekly wage of the employee is computed as provided by Section 408.041 and is adjusted as often as necessary to reflect the wages the employee could reasonably have expected to earn during the period that temporary income benefits are paid.

(b)  For determining the amount of impairment income benefits, supplemental income benefits, lifetime income benefits, or death benefits of a seasonal employee, the average weekly wage of the employee is computed by dividing the amount of total wages earned by the employee during the 12 months immediately preceding the date of the injury by 50.

(c)  If, for good reason, the commissioner determines that computing the average weekly wage for a seasonal employee as provided by this section is impractical, the commissioner shall compute the average weekly wage as of the time of the injury in a manner that is fair and just to both parties.

(d)  In this section, "seasonal employee" means an employee who, as a regular course of the employee's conduct, engages in seasonal or cyclical employment that does not continue throughout the entire year.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.096, eff. September 1, 2005.


Sec. 408.044.  AVERAGE WEEKLY WAGE FOR MINOR, APPRENTICE, TRAINEE, OR STUDENT.  (a)  For computing impairment income benefits, supplemental income benefits, lifetime income benefits, or death benefits, the average weekly wage of an employee shall be adjusted to reflect the level of expected wages during the period that the benefits are payable if:

45

(1)  the employee is a minor, apprentice, trainee, or student at the time of the injury;

(2)  the employee's employment or earnings at the time of the injury are limited primarily because of apprenticeship, continuing formal training, or education intended to enhance the employee's future wages;  and

(3)  the employee's wages would reasonably be expected to change because of a change of employment during that period.

(b)  An adjustment under Subsection (a) may not consider expected wage levels for a period occurring after the third anniversary of the date of the injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.0445.  AVERAGE WEEKLY WAGE FOR MEMBERS OF STATE MILITARY FORCES AND TEXAS TASK FORCE 1.  (a)  For purposes of computing income benefits or death benefits under Section 437.227, Government Code, the average weekly wage of a member of the state military forces as defined by Section 437.001, Government Code, who is engaged in authorized training or duty is an amount equal to the sum of the member's regular weekly wage at any employment the member holds in addition to serving as a member of the state military forces, disregarding any period during which the member is not fully compensated for that employment because the member is engaged in authorized military training or duty, and the member's regular weekly wage as a member of the state military forces, except that the amount may not exceed 100 percent of the state average weekly wage as determined under Section 408.047.

(b)  For purposes of computing income benefits or death benefits under Section 88.303, Education Code, the average weekly wage of a Texas Task Force 1 member, as defined by Section 88.301, Education Code, who is engaged in authorized training or duty is an amount equal to the sum of the member's regular weekly wage at any employment, including self-employment, that the member holds in addition to serving as a member of Texas Task Force 1, except that the amount may not exceed 100 percent of the state average weekly wage as determined under Section 408.047.  A member for whom an average weekly wage cannot be computed shall be paid the minimum

weekly benefit established by the division.

Added by Acts 1999, 76th Leg., ch. 1205, Sec. 4, eff. Sept. 1, 1999.

Amended by Acts 2003, 78th Leg., ch. 644, Sec. 2, eff. June 20, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.097, eff. September 1, 2005.

Acts 2013, 83rd Leg., R.S., Ch. 1217 (S.B. 1536), Sec. 3.14, eff. September 1, 2013.


Sec. 408.0446. AVERAGE WEEKLY WAGE; SCHOOL DISTRICT EMPLOYEE. (a) For determining the amount of temporary income benefits of a school district employee under Chapter 504, the average weekly wage is computed on the basis of wages earned in a week rather than on the basis of wages paid in a week. The wages earned in any given week are equal to the amount that would be deducted from an employee's salary if the employee were absent from work for one week and the employee did not have personal leave available to compensate the employee for lost wages for that week.

(b) An insurance carrier may adjust a school district employee's average weekly wage as often as necessary to reflect the wages the employee reasonably could expect to earn during the period for which temporary income benefits are paid. In adjusting a school district employee's average weekly wage under this subsection, the insurance carrier may consider any evidence of the employee's reasonable expectation of earnings.

(c) For determining the amount of impairment income benefits, supplemental income benefits, lifetime income benefits, or death benefits of a school district employee under Chapter 504, the average weekly wage of the employee is computed by dividing the total amount of wages earned by the employee during the 12 months immediately preceding the date of the injury by 50.

(d) If the commissioner determines that computing the average weekly wage of a school district employee as provided by this section is impractical because the employee did not earn wages during the 12 months immediately preceding the date of the injury, the commissioner shall compute the average weekly wage in a manner

47

that is fair and just to both parties.

(e)  The commissioner shall adopt rules as necessary to implement this section.

Added by Acts 2001, 77th Leg., ch. 1456, Sec. 10.04, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.098, eff. September 1, 2005.


Sec. 408.045.  NONPECUNIARY WAGES.  The division may not include nonpecuniary wages in computing an employee's average weekly wage during a period in which the employer continues to provide the nonpecuniary wages.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.099, eff. September 1, 2005.


Sec. 408.046.  SIMILAR EMPLOYEES, SERVICES, OR EMPLOYMENT. For purposes of this subchapter and Subchapter D, the determination as to whether employees, services, or employment are the same or similar must include consideration of:

(1)  the training and experience of the employees;

(2)  the nature of the work;  and

(3)  the number of hours normally worked.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.047.  STATE AVERAGE WEEKLY WAGE. (a)  On and after October 1, 2006, the state average weekly wage is equal to 88 percent of the average weekly wage in covered employment computed by the Texas Workforce Commission under Section 207.002(c).

(b) Expired.

(c)  Notwithstanding Subsection (a), the commissioner by rule may increase the state average weekly wage to an amount not to exceed 100 percent of the average weekly wage in covered employment computed by the Texas Workforce Commission under Section 207.002(c).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 963, Sec. 6, eff. June 20, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.100, eff. September 1, 2005.


SUBCHAPTER D. COMPUTATION OF BENEFITS


Sec. 408.061.  MAXIMUM WEEKLY BENEFIT.  (a)  A weekly temporary income benefit may not exceed 100 percent of the state average weekly wage under Section 408.047 rounded to the nearest whole dollar.

(b)  A weekly impairment income benefit may not exceed 70 percent of the state average weekly wage rounded to the nearest whole dollar.

(c)  A weekly supplemental income benefit may not exceed 70 percent of the state average weekly wage rounded to the nearest whole dollar.

(d)  A weekly death benefit may not exceed 100 percent of the state average weekly wage rounded to the nearest whole dollar.

(e)  A weekly lifetime income benefit may not exceed 100 percent of the state average weekly wage rounded to the nearest whole dollar.

(f)  The division shall compute the maximum weekly income benefits for each state fiscal year not later than October 1 of each year.

(g)  The maximum weekly income benefit in effect on the date of injury is applicable for the entire time that the benefit is payable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.101, eff. September 1, 2005.


Sec. 408.062.  MINIMUM WEEKLY INCOME BENEFIT. (a)  The minimum weekly income benefit is 15 percent of the state average weekly wage as determined under Section 408.047, rounded to the

nearest whole dollar.

(b)  The division shall compute the minimum weekly income benefit for each state fiscal year not later than October 1 of each year.

(c)  The minimum weekly income benefit in effect on the date of injury is applicable for the entire time that income benefits are payable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.102, eff. September 1, 2005.


Sec. 408.063.  WAGE    PRESUMPTIONS;    ADMINISTRATIVE VIOLATION.  (a)  To expedite the payment of income benefits, the commissioner  may  by  rule  establish  reasonable  presumptions relating  to  the  wages  earned  by  an  employee,  including  the presumption that an employee's last paycheck accurately reflects the employee's usual wage.

(b)  Not later than the 30th day after the date the employer receives notice of an injury to the employee, the employer shall file a wage statement showing the amount of all wages paid to the employee.

(c)  An employer who fails to file a wage statement in accordance  with  Subsection  (b)  commits  an  administrative violation.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.103, eff. September 1, 2005.


Sec. 408.064.  INTEREST ON ACCRUED BENEFITS.  (a)  An order to pay income or death benefits accrued but unpaid must include interest on the amount of compensation due at the rate provided by Section 401.023.

(b)  Accrued but unpaid compensation and interest shall be paid in a lump sum.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 408.081. INCOME BENEFITS. (a) An employee is entitled to timely and accurate income benefits as provided in this chapter.

(b) Except as otherwise provided by this section or this subtitle, income benefits shall be paid weekly as and when they accrue without order from the commissioner. Interest on accrued but unpaid benefits shall be paid, without order of the commissioner, at the time the accrued benefits are paid.

(c) The commissioner by rule shall establish requirements for agreements under which income benefits may be paid monthly. Income benefits may be paid monthly only:

(1) on the request of the employee and the agreement of the employee and the insurance carrier; and

(2) in compliance with the requirements adopted by the commissioner.

(d) An employee's entitlement to income benefits under this chapter terminates on the death of the employee. An interest in future income benefits does not survive after the employee's death. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 11, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.104, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1153 (H.B. 2089), Sec. 1, eff. September 1, 2011.

Sec. 408.0815. RESOLUTION OF OVERPAYMENT OR UNDERPAYMENT OF INCOME BENEFITS. (a) The commissioner by rule shall establish a procedure by which an insurance carrier:

(1) may recoup an overpayment of income benefits from future income benefit payments that are not reimbursable under Section 410.209; and

(2) shall pay an underpayment of income benefits, including interest on accrued but unpaid benefits, in accordance

with this subtitle.

(b)  The procedure under Subsection (a) must include:

(1)  a process by which an injured employee may notify the insurance carrier of an underpayment;

(2)  the time frame and methodology by which an insurance carrier shall pay to an injured employee an underpayment;

(3)  a process by which an insurance carrier shall notify an injured employee of an overpayment of income benefits;

(4)  the time frame and methodology by which an insurance carrier may recoup an overpayment through the reduction of a future income benefit payment; and

(5)  a method for coordinating overpayments that may be recouped from future income benefits and reimbursements described by Section 410.209.

(c)  The procedure for recouping overpayments under Subsection (a)(1) must take into consideration the cause of the overpayment and minimize the financial hardship to the injured employee.

Added by Acts 2011, 82nd Leg., R.S., Ch. 1153 (H.B. 2089), Sec. 2, eff. September 1, 2011.


Sec. 408.082.  ACCRUAL OF RIGHT TO INCOME BENEFITS.  (a) Income benefits may not be paid under this subtitle for an injury that does not result in disability for at least one week.

(b)  If the disability continues for longer than one week, weekly income benefits begin to accrue on the eighth day after the date of the injury.  If the disability does not begin at once after the injury occurs or within eight days of the occurrence but does result subsequently, weekly income benefits accrue on the eighth day after the date on which the disability began.

(c)  If the disability continues for two weeks or longer after the date it begins, compensation shall be computed from the date the disability begins.

(d)  This section does not preclude the recovery of medical benefits as provided by Subchapter B.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.105, eff. September 1, 2005.

Sec. 408.083. TERMINATION OF RIGHT TO TEMPORARY INCOME, IMPAIRMENT INCOME, AND SUPPLEMENTAL INCOME BENEFITS. (a) Except as provided by Subsection (b), an employee's eligibility for temporary income benefits, impairment income benefits, and supplemental income benefits terminates on the expiration of 401 weeks after the date of injury.

(b) If an employee incurs an occupational disease, the employee's eligibility for temporary income benefits, impairment income benefits, and supplemental income benefits terminates on the expiration of 401 weeks after the date on which benefits began to accrue.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.26, eff. Sept. 1, 1995.

Sec. 408.084. CONTRIBUTING INJURY. (a) At the request of the insurance carrier, the commissioner may order that impairment income benefits and supplemental income benefits be reduced in a proportion equal to the proportion of a documented impairment that resulted from earlier compensable injuries.

(b) The commissioner shall consider the cumulative impact of the compensable injuries on the employee's overall impairment in determining a reduction under this section.

(c) If the combination of the compensable injuries results in an injury compensable under Section 408.161, the benefits for that injury shall be paid as provided by Section 408.162.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.106, eff. September 1, 2005.

Sec. 408.085. ADVANCE OF BENEFITS FOR HARDSHIP. (a) If there is a likelihood that income benefits will be paid, the commissioner may grant an employee suffering financial hardship advances as provided by this subtitle against the amount of income

benefits to which the employee may be entitled.  An advance may be ordered before or after the employee attains maximum medical improvement.  An insurance carrier shall pay the advance ordered.

(b)  An employee must apply to the division for an advance on a form prescribed by the commissioner. The application must describe the hardship that is the grounds for the advance.

(c)  An advance under this section may not exceed an amount equal to four times the maximum weekly benefit for temporary income benefits as computed in Section 408.061.  The commissioner may not grant more than three advances to a particular employee based on the same injury.

(d)  The commissioner may not grant an advance to an employee who is receiving, on the date of the application under Subsection (b), at least 90 percent of the employee's net preinjury wages under Section 408.003 or 408.129.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.107, eff. September 1, 2005.


Sec.  408.086.  DIVISION DETERMINATION OF EXTENDED UNEMPLOYMENT OR UNDEREMPLOYMENT.  (a)  During the period that impairment income benefits or supplemental income benefits are being paid to an employee, the commissioner shall determine at least annually whether any extended unemployment or underemployment is a direct result of the employee's impairment.

(b)  To make this determination, the commissioner may require periodic reports from the employee and the insurance carrier and, at the insurance carrier's expense, may require physical or other examinations, vocational assessments, or other tests or diagnoses necessary to perform the commissioner's duty under this section and Subchapter H.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.108, eff. September 1, 2005.

## SUBCHAPTER F. TEMPORARY INCOME BENEFITS

Sec. 408.101. TEMPORARY INCOME BENEFITS. (a) An employee is entitled to temporary income benefits if the employee has a disability and has not attained maximum medical improvement.

(b) On the initiation of compensation as provided by Section 409.021, the insurance carrier shall pay temporary income benefits as provided by this subchapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.102. DURATION OF TEMPORARY INCOME BENEFITS. (a) Temporary income benefits continue until the employee reaches maximum medical improvement.

(b) The commissioner by rule shall establish a presumption that maximum medical improvement has been reached based on a lack of medical improvement in the employee's condition.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.109, eff. September 1, 2005.


Sec. 408.103. AMOUNT OF TEMPORARY INCOME BENEFITS. (a) Subject to Sections 408.061 and 408.062, the amount of a temporary income benefit is equal to:

(1) 70 percent of the amount computed by subtracting the employee's weekly earnings after the injury from the employee's average weekly wage; or

(2) for the first 26 weeks, 75 percent of the amount computed by subtracting the employee's weekly earnings after the injury from the employee's average weekly wage if the employee earns less than $8.50 an hour.

(b) A temporary income benefit under Subsection (a)(2) may not exceed the employee's actual earnings for the previous year. It is presumed that the employee's actual earnings for the previous year are equal to:

(1) the sum of the employee's wages as reported in the most recent four quarterly wage reports to the Texas Workforce

Commission divided by 52;

(2)  the employee's wages in the single quarter of the most recent four quarters in which the employee's earnings were highest, divided by 13, if the commissioner finds that the employee's most recent four quarters' earnings reported in the Texas Workforce Commission wage reports are not representative of the employee's usual earnings; or

(3)  the amount the commissioner determines from other credible evidence to be the actual earnings for the previous year if the Texas Workforce Commission does not have a wage report reflecting at least one quarter's earnings because the employee worked outside the state during the previous year.

(c)  A presumption under Subsection (b) may be rebutted by other credible evidence of the employee's actual earnings.

(d)  The Texas Employment Commission shall provide information required under this section in the manner most efficient for transferring the information.

(e)  For purposes of Subsection (a), if an employee is offered a bona fide position of employment that the employee is reasonably capable of performing, given the physical condition of the employee and the geographic accessibility of the position to the employee, the employee's weekly earnings after the injury are equal to the weekly wage for the position offered to the employee.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.110, eff. September 1, 2005.


Sec. 408.104.  MAXIMUM MEDICAL IMPROVEMENT AFTER SPINAL SURGERY.  (a)  On application by either the employee or the insurance carrier, the commissioner by order may extend the 104-week period described by Section 401.011(30)(B) if the employee has had spinal surgery, or has been approved for spinal surgery under Section 408.026 and commissioner rules, within 12 weeks before the expiration of the 104-week period.  If an order is issued under this section, the order shall extend the statutory period for maximum medical improvement to a date certain, based on

medical evidence presented to the commissioner.

(b)  Either the employee or the insurance carrier may dispute an application for extension made under this section.  A dispute under this subsection is subject to Chapter 410.

(c)  The commissioner shall adopt rules to implement this section, including rules establishing procedures for requesting and disputing an extension.

Added by Acts 1997, 75th Leg., ch. 1443, Sec. 5, eff. Jan. 1, 1998. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.111, eff. September 1, 2005.


Sec. 408.105.  SALARY CONTINUATION IN LIEU OF TEMPORARY INCOME BENEFITS.  (a)  In lieu of payment of temporary income benefits under this subchapter, an employer may continue to pay the salary of an employee who sustains a compensable injury under a contractual obligation between the employer and employee, such as a collective bargaining agreement, written agreement, or policy.

(b)  Salary continuation may include wage supplementation if:

(1)  employer reimbursement is not sought from the carrier as provided by Section 408.127;  and

(2)  the supplementation does not affect the employee's eligibility for any future income benefits.

Added by Acts 1999, 76th Leg., ch. 1003, Sec. 3, eff. Sept. 1, 1999.


SUBCHAPTER G. IMPAIRMENT INCOME BENEFITS


Sec. 408.121.  IMPAIRMENT INCOME BENEFITS.  (a)  An employee's entitlement to impairment income benefits begins on the day after the date the employee reaches maximum medical improvement and ends on the earlier of:

(1)  the date of expiration of a period computed at the rate of three weeks for each percentage point of impairment;  or

(2)  the date of the employee's death.

(b)  The insurance carrier shall begin to pay impairment income benefits not later than the fifth day after the date on which

the insurance carrier receives the doctor's report certifying maximum medical improvement.  Impairment income benefits shall be paid for a period based on the impairment rating, unless that rating is disputed under Subsection (c).

(c)  If the insurance carrier disputes the impairment rating used under Subsection (a), the carrier shall pay the employee impairment income benefits for a period based on the carrier's reasonable assessment of the correct rating.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.122.  ELIGIBILITY FOR IMPAIRMENT INCOME BENEFITS. A claimant may not recover impairment income benefits unless evidence of impairment based on an objective clinical or laboratory finding exists.  If the finding of impairment is made by a doctor chosen by the claimant and the finding is contested, a designated doctor or a doctor selected by the insurance carrier must be able to confirm the objective clinical or laboratory finding on which the finding of impairment is based.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.27, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1456, Sec. 5.03, eff. June 17, 2001. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.112, eff. September 1, 2005.


Sec. 408.1225.  DESIGNATED DOCTOR.  (a)  To be eligible to serve as a designated doctor, a doctor must maintain an active certification by the division.

(a-1)  The commissioner by rule shall develop a process for the certification of a designated doctor.

(a-2)  The rules adopted by the commissioner under Subsection (a-1) must:

(1)  require the division to evaluate the qualification of designated doctors for certification using eligibility requirements, including:

(A)  educational experience;

(B)  previous training; and

58

(C)  demonstrated ability to perform the specific designated doctor duties described by Section 408.0041; and

(2)  require standard training and testing to be completed in accordance with policies and guidelines developed by the division.

(a-3)  The division shall develop guidelines for certification training programs for certification of a designated doctor under Subsection (a-1) to ensure a designated doctor's competency and continued competency in providing assessments, including:

(1)  a standard curriculum;

(2)  standard course materials; and

(3)  testing criteria.

(a-4)  The division shall develop and implement a procedure to periodically review and update the guidelines developed under Subsection (a-3).

(a-5)  The division may authorize an independent training and testing provider to conduct the certification program for the division under the guidelines developed under Subsection (a-3).

(b)  The commissioner shall ensure the quality of designated doctor decisions and reviews through active monitoring of the decisions and reviews, and may take action as necessary to:

(1)  restrict the participation of a designated doctor;

(2)  deny renewal of a designated doctor's certification; or

(3)  revoke a designated doctor's certification under Section 413.044.

(c)  The report of the designated doctor has presumptive weight, and the division shall base its determination of whether the employee has reached maximum medical improvement on the report unless the preponderance of the other medical evidence is to the contrary.

(d)  The commissioner shall develop rules to ensure that a designated doctor called on to conduct an examination under Section 408.0041 has no conflict of interest in serving as a designated doctor in performing any examination.

(e)  A designated doctor, other than a chiropractor, is

subject to Section 408.0043. A designated doctor who is a chiropractor is subject to Section 408.0045. To the extent of a conflict between this section and Section 408.0043 or 408.0045, this section controls.

(f) A designated doctor shall continue providing services related to a case assigned to the designated doctor, including performing subsequent examinations or acting as a resource for division disputes, unless the division authorizes the designated doctor to discontinue providing services. The commissioner by rule shall prescribe the circumstances under which a designated doctor is permitted to discontinue providing services, including:

(1) the doctor decides to stop practicing in the workers' compensation system; or

(2) the doctor relocates the doctor's residence or practice.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.112, eff. September 1, 2005.

Amended by:

Acts 2007, 80th Leg., R.S., Ch. 1218 (H.B. 2004), Sec. 5, eff. September 1, 2007.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 12, eff. September 1, 2011.


Sec. 408.123. CERTIFICATION OF MAXIMUM MEDICAL IMPROVEMENT; EVALUATION OF IMPAIRMENT RATING. (a) After an employee has been certified by a doctor as having reached maximum medical improvement, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating using the impairment rating guidelines described by Section 408.124. If the certification and evaluation are performed by a doctor other than the employee's treating doctor, the certification and evaluation shall be submitted to the treating doctor, and the treating doctor shall indicate agreement or disagreement with the certification and evaluation.

(b) A certifying doctor shall issue a written report certifying that maximum medical improvement has been reached, stating the employee's impairment rating, and providing any other

information required by the commissioner to:

(1) the division;

(2) the employee; and

(3) the insurance carrier.

(c) The commissioner shall adopt a rule that provides that, at the conclusion of any examination in which maximum medical improvement is certified and any impairment rating is assigned by the treating doctor, written notice shall be given to the employee that the employee may dispute the certification of maximum medical improvement and assigned impairment rating. The notice to the employee must state how to dispute the certification of maximum medical improvement and impairment rating.

(d) If an employee is not certified as having reached maximum medical improvement before the expiration of 102 weeks after the date income benefits begin to accrue, the division shall notify the treating doctor of the requirements of this subchapter.

(e) Except as otherwise provided by this section, an employee's first valid certification of maximum medical improvement and first valid assignment of an impairment rating is final if the certification or assignment is not disputed before the 91st day after the date written notification of the certification or assignment is provided to the employee and the carrier by verifiable means.

(f) An employee's first certification of maximum medical improvement or assignment of an impairment rating may be disputed after the period described by Subsection (e) if:

(1) compelling medical evidence exists of:

(A) a significant error by the certifying doctor in applying the appropriate American Medical Association guidelines or in calculating the impairment rating;

(B) a clearly mistaken diagnosis or a previously undiagnosed medical condition; or

(C) improper or inadequate treatment of the injury before the date of the certification or assignment that would render the certification or assignment invalid; or

(2) other compelling circumstances exist as prescribed by commissioner rule.

61

(g)  If an employee has not been certified as having reached maximum medical improvement before the expiration of 104 weeks after the date income benefits begin to accrue or the expiration date of any extension of benefits under Section 408.104, the impairment rating assigned after the expiration of either of those periods is final if the impairment rating is not disputed before the 91st day after the date written notification of the certification or assignment is provided to the employee and the carrier by verifiable means.  A certification or assignment may be disputed after the 90th day only as provided by Subsection (f).

(h)  If an employee's disputed certification of maximum medical improvement or assignment of impairment rating is finally modified, overturned, or withdrawn, the first certification or assignment made after the date of the modification, overturning, or withdrawal becomes final if the certification or assignment is not disputed before the 91st day after the date notification of the certification or assignment is provided to the employee and the carrier by verifiable means.  A certification or assignment may be disputed after the 90th day only as provided by Subsection (f).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 278, Sec. 1, eff. June 18, 2003;  Acts 2003, 78th Leg., ch. 1190, Sec. 1, eff. June 20, 2003;  Acts 2003, 78th Leg., ch. 1323, Sec. 2, eff. June 21, 2003.

Reenacted and amended by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.113, eff. September 1, 2005.


Sec. 408.124.  IMPAIRMENT RATING GUIDELINES.  (a)  An award of an impairment income benefit, whether by the commissioner or a court, must be based on an impairment rating determined using the impairment rating guidelines described by this section.

(b)  For determining the existence and degree of an employee's impairment, the division shall use "Guides to the Evaluation of Permanent Impairment," third edition, second printing, dated February 1989, published by the American Medical Association.

(c)  Notwithstanding Subsection (b), the commissioner by rule may adopt the fourth edition of the "Guides to the Evaluation

of Permanent Impairment," published by the American Medical Association, or a subsequent edition of those guides, for determining the existence and degree of an employee's impairment.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 12, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.114, eff. September 1, 2005.


Sec. 408.125.  DISPUTE AS TO IMPAIRMENT RATING. (a)  If an impairment rating is disputed, the commissioner shall direct the employee to the next available doctor on the division's list of designated doctors, as provided by Section 408.0041.

(b)  The designated doctor shall report in writing to the division.

(c)  The report of the designated doctor shall have presumptive weight, and the division shall base the impairment rating on that report unless the preponderance of the other medical evidence is to the contrary.  If the preponderance of the medical evidence contradicts the impairment rating contained in the report of the designated doctor chosen by the division, the division shall adopt the impairment rating of one of the other doctors.

(d)  To avoid undue influence on a person selected as a designated doctor under this section, only the injured employee or an appropriate member of the staff of the division may communicate with the designated doctor about the case regarding the injured employee's medical condition or history before the examination of the injured employee by the designated doctor. After that examination is completed, communication with the designated doctor regarding the injured employee's medical condition or history may be made only through appropriate division staff members.  The designated doctor may initiate communication with any doctor who has previously treated or examined the injured employee for the work-related injury.

(e)  Notwithstanding Subsection (d), the treating doctor and the insurance carrier are both responsible for sending to the designated doctor all the injured employee's medical records that

are in their possession and that relate to the issue to be evaluated by the designated doctor. The treating doctor and the insurance carrier may send the records without a signed release from the employee. The designated doctor is authorized to receive the employee's confidential medical records to assist in the resolution of disputes. The treating doctor and the insurance carrier may also send the designated doctor an analysis of the injured employee's medical condition, functional abilities, and return-to-work opportunities.

(f) A violation of Subsection (d) is an administrative violation.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.28, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1456, Sec. 5.04, eff. June 17, 2001.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.115, eff. September 1, 2005.


Sec. 408.126. AMOUNT OF IMPAIRMENT INCOME BENEFITS. Subject to Sections 408.061 and 408.062, an impairment income benefit is equal to 70 percent of the employee's average weekly wage.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.127. REDUCTION OF IMPAIRMENT INCOME BENEFITS. (a) An insurance carrier shall reduce impairment income benefits to an employee by an amount equal to employer payments made under Section 408.003 that are not reimbursed or reimbursable under that section.

(b) The insurance carrier shall remit the amount of a reduction under this section to the employer who made the payments.

(c) The commissioner shall adopt rules and forms to ensure the full reporting and the accuracy of reductions and reimbursements made under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.116, eff. September 1, 2005.

Sec. 408.128.  COMMUTATION OF IMPAIRMENT INCOME BENEFITS. (a)  An employee may elect to commute the remainder of the impairment income benefits to which the employee is entitled if the employee has returned to work for at least three months, earning at least 80 percent of the employee's average weekly wage.

(b)  An employee who elects to commute impairment income benefits is not entitled to additional income benefits for the compensable injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.129.  ACCELERATION OF IMPAIRMENT INCOME BENEFITS. (a)  On approval by the commissioner of a written request received from an employee, an insurance carrier shall accelerate the payment of impairment income benefits to the employee.  The accelerated payment may not exceed a rate of payment equal to that of the employee's net preinjury wage.

(b)  The commissioner shall approve the request and order the acceleration of the benefits if the commissioner determines that the acceleration is:

(1)  required to relieve hardship; and

(2)  in the overall best interest of the employee.

(c)  The duration of the impairment income benefits to which the employee is entitled shall be reduced to offset the increased payments caused by the acceleration taking into consideration the discount for present payment computed at the rate provided under Section 401.023.

(d)  The commissioner may prescribe forms necessary to implement this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.117, eff. September 1, 2005.


SUBCHAPTER H. SUPPLEMENTAL INCOME BENEFITS


Sec. 408.141.  AWARD OF SUPPLEMENTAL INCOME BENEFITS.  An

award of a supplemental income benefit, whether by the commissioner or a court, shall be made in accordance with this subchapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.118, eff. September 1, 2005.


Sec. 408.1415.  WORK SEARCH COMPLIANCE STANDARDS.  (a)  The commissioner by rule shall adopt compliance standards for supplemental income benefit recipients that require each recipient to demonstrate an active effort to obtain employment.  To be eligible to receive supplemental income benefits under this chapter, a recipient must provide evidence satisfactory to the division of:

(1)  active participation in a vocational rehabilitation program conducted by the Department of Assistive and Rehabilitative Services or a private vocational rehabilitation provider;

(2)  active participation in work search efforts conducted through the Texas Workforce Commission; or

(3)  active work search efforts documented by job applications submitted by the recipient.

(b)  In adopting rules under this section, the commissioner shall:

(1)  establish the level of activity that a recipient should have with the Texas Workforce Commission and the Department of Assistive and Rehabilitative Services;

(2)  define the number of job applications required to be submitted by a recipient to satisfy the work search requirements; and

(3)  consider factors affecting the availability of employment, including recognition of access to employment in rural areas, economic conditions, and other appropriate employment availability factors.

(c)  The commissioner may consult with the Texas Workforce Commission, the Department of Assistive and Rehabilitative Services, and other appropriate entities in adopting rules under

this section.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.119, eff. September 1, 2005.


Sec. 408.142.  SUPPLEMENTAL INCOME BENEFITS.  (a)  An employee is entitled to supplemental income benefits if on the expiration of the impairment income benefit period computed under Section 408.121(a)(1) the employee:

(1)  has an impairment rating of 15 percent or more as determined by this subtitle from the compensable injury;

(2)  has not returned to work or has returned to work earning less than 80 percent of the employee's average weekly wage as a direct result of the employee's impairment;

(3)  has not elected to commute a portion of the impairment income benefit under Section 408.128; and

(4)  has complied with the requirements adopted under Section 408.1415.

(b)  If an employee is not entitled to supplemental income benefits at the time of payment of the final impairment income benefit because the employee is earning at least 80 percent of the employee's average weekly wage, the employee may become entitled to supplemental income benefits at any time within one year after the date the impairment income benefit period ends if:

(1)  the employee earns wages for at least 90 days that are less than 80 percent of the employee's average weekly wage;

(2)  the employee meets the requirements of Subsections (a)(1), (3), and (4);  and

(3)  the decrease in earnings is a direct result of the employee's impairment from the compensable injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.1195, eff. September 1, 2005.


Sec. 408.143.  EMPLOYEE STATEMENT.  (a)  After the commissioner's initial determination of supplemental income benefits, the employee must file a statement with the insurance

67

carrier stating:

(1) that the employee has earned less than 80 percent of the employee's average weekly wage as a direct result of the employee's impairment;

(2) the amount of wages the employee earned in the filing period provided by Subsection (b); and

(3) that the employee has complied with the requirements adopted under Section 408.1415.

(b) The statement required under this section must be filed quarterly on a form and in the manner provided by the commissioner. The commissioner may modify the filing period as appropriate to an individual case.

(c) Failure to file a statement under this section relieves the insurance carrier of liability for supplemental income benefits for the period during which a statement is not filed.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.120, eff. September 1, 2005.


Sec. 408.144. COMPUTATION OF SUPPLEMENTAL INCOME BENEFITS. (a) Supplemental income benefits are calculated quarterly and paid monthly.

(b) Subject to Section 408.061, the amount of a supplemental income benefit for a week is equal to 80 percent of the amount computed by subtracting the weekly wage the employee earned during the reporting period provided by Section 408.143(b) from 80 percent of the employee's average weekly wage determined under Section 408.041, 408.042, 408.043, 408.044, 408.0445, or 408.0446.

(c) For the purposes of this subchapter, if an employee is offered a bona fide position of employment that the employee is capable of performing, given the physical condition of the employee and the geographic accessibility of the position to the employee, the employee's weekly wages are considered to be equal to the weekly wages for the position offered to the employee.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.1205, eff. September 1, 2005.


Sec. 408.145. PAYMENT OF SUPPLEMENTAL INCOME BENEFITS. An insurance carrier shall pay supplemental income benefits beginning not later than the seventh day after the expiration date of the employee's impairment income benefit period and shall continue to pay the benefits in a timely manner.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.146. TERMINATION OF SUPPLEMENTAL INCOME BENEFITS; REINITIATION. (a) If an employee earns wages that are at least 80 percent of the employee's average weekly wage for at least 90 days during a time that the employee receives supplemental income benefits, the employee ceases to be entitled to supplemental income benefits for the filing period.

(b) Supplemental income benefits terminated under this section shall be reinitiated when the employee:

(1) satisfies the conditions of Section 408.142(b); and

(2) files the statement required under Section 408.143.

(c) Notwithstanding any other provision of this section, an employee who is not entitled to supplemental income benefits for 12 consecutive months ceases to be entitled to any additional income benefits for the compensable injury.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.147. CONTEST OF SUPPLEMENTAL INCOME BENEFITS BY INSURANCE CARRIER; ATTORNEY'S FEES. (a) An insurance carrier may request a benefit review conference to contest an employee's entitlement to supplemental income benefits or the amount of supplemental income benefits.

(b) If an insurance carrier fails to make a request for a benefit review conference within 10 days after the date of the expiration of the impairment income benefit period or within 10 days after receipt of the employee's statement, the insurance

carrier waives the right to contest entitlement to supplemental income benefits and the amount of supplemental income benefits for that period of supplemental income benefits.

(c) If an insurance carrier disputes the commissioner's determination that an employee is entitled to supplemental income benefits or the amount of supplemental income benefits due and the employee prevails on any disputed issue, the insurance carrier is liable for reasonable and necessary attorney's fees incurred by the employee as a result of the insurance carrier's dispute and for supplemental income benefits accrued but not paid and interest on that amount, according to Section 408.064. Attorney's fees awarded under this subsection are not subject to Sections 408.221(b), (f), and (i).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 9.53, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1456, Sec. 8.02, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.121, eff. September 1, 2005.


Sec. 408.148.  EMPLOYEE DISCHARGE AFTER TERMINATION.  The commissioner may reinstate supplemental income benefits to an employee who is discharged within 12 months of the date of losing entitlement to supplemental income benefits under Section 408.146(c) if the commissioner finds that the employee was discharged at that time with the intent to deprive the employee of supplemental income benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.122, eff. September 1, 2005.


Sec. 408.149.  STATUS REVIEW; BENEFIT REVIEW CONFERENCE. (a)  Not more than once in each period of 12 calendar months, an employee and an insurance carrier each may request the commissioner to review the status of the employee and determine whether the employee's unemployment or underemployment is a direct result of

impairment from the compensable injury.

(b)  Either party may request a benefit review conference to contest a determination of the commissioner at any time, subject only to the limits placed on the insurance carrier by Section 408.147.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.123, eff. September 1, 2005.


Sec. 408.150.  VOCATIONAL REHABILITATION. (a) The division shall refer an employee to the Department of Assistive and Rehabilitative Services with a recommendation for appropriate services if the division determines that an employee could be materially assisted by vocational rehabilitation or training in returning to employment or returning to employment more nearly approximating the employee's preinjury employment. The division shall also notify insurance carriers of the need for vocational rehabilitation or training services. The insurance carrier may provide services through a private provider of vocational rehabilitation services under Section 409.012.

(b)  An employee who refuses services or refuses to cooperate with services provided under this section by the Department of Assistive and Rehabilitative Services or a private provider loses entitlement to supplemental income benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 956, Sec. 1, eff. Sept. 1, 1999;  Acts 1999, 76th Leg., ch. 1426, Sec. 13, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.124, eff. September 1, 2005.


Sec. 408.151.  MEDICAL EXAMINATIONS FOR SUPPLEMENTAL INCOME BENEFITS. (a) On or after the second anniversary of the date the commissioner makes the initial award of supplemental income benefits, an insurance carrier may not require an employee who is receiving supplemental income benefits to submit to a medical

examination more than annually if, in the preceding year, the employee's medical condition resulting from the compensable injury has not improved sufficiently to allow the employee to return to work.

(b)  If a dispute exists as to whether the employee's medical condition has improved sufficiently to allow the employee to return to work, the commissioner shall direct the employee to be examined by a designated doctor chosen by the division.  The designated doctor shall report to the division.  The report of the designated doctor has presumptive weight, and the division shall base its determination of whether the employee's medical condition has improved sufficiently to allow the employee to return to work on that report unless the preponderance of the other medical evidence is to the contrary.

Added by Acts 1999, 76th Leg., ch. 850, Sec. 1, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.125, eff. September 1, 2005.


SUBCHAPTER I. LIFETIME INCOME BENEFITS


Sec. 408.161.  LIFETIME INCOME BENEFITS.  (a)  Lifetime income benefits are paid until the death of the employee for:

(1)  total and permanent loss of sight in both eyes;

(2)  loss of both feet at or above the ankle;

(3)  loss of both hands at or above the wrist;

(4)  loss of one foot at or above the ankle and the loss of one hand at or above the wrist;

(5)  an injury to the spine that results in permanent and complete paralysis of both arms, both legs, or one arm and one leg;

(6)  a physically traumatic injury to the brain resulting in incurable insanity or imbecility;  or

(7)  third degree burns that cover at least 40 percent of the body and require grafting, or third degree burns covering the majority of either both hands or one hand and the face.

(b)  For purposes of Subsection (a), the total and permanent

72

loss of use of a body part is the loss of that body part.

(c)  Subject  to  Section  408.061,  the  amount  of  lifetime income benefits is equal to 75 percent of the employee's average weekly wage.  Benefits being paid shall be increased at a rate of three percent a year notwithstanding Section 408.061.

(d)  An insurance carrier may pay lifetime income benefits through an annuity if the annuity agreement meets the terms and conditions for annuity agreements adopted by the commissioner by rule.  The establishment of an annuity under this subsection does not relieve the insurance carrier of the liability under this title for ensuring that the lifetime income benefits are paid.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 1443, Sec. 7, eff. Sept. 1, 1997;  Acts 1999, 76th Leg., ch. 1426, Sec. 14, eff. Sept. 1, 1999;  Acts 2001, 77th Leg., ch. 1456, Sec. 9.01, eff. June 17, 2001.

Amended by:

Acts  2005,  79th  Leg.,  Ch.  265  (H.B.  7),  Sec.  3.126,  eff. September 1, 2005.


Sec.  408.162.   SUBSEQUENT INJURY FUND BENEFITS.   (a)   If a subsequent  compensable  injury,  with  the  effects  of  a  previous injury,  results  in  a  condition  for  which  the  injured  employee  is entitled  to  lifetime  income  benefits,  the  insurance  carrier  is liable for the payment of benefits for the subsequent injury only to the  extent  that  the  subsequent  injury  would  have  entitled  the employee to benefits had the previous injury not existed.

(b)  The  subsequent  injury  fund  shall  compensate  the employee for the remainder of the lifetime income benefits to which the employee is entitled.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER J. DEATH AND BURIAL BENEFITS


Sec.  408.181.   DEATH BENEFITS.   (a)   An insurance carrier shall pay death benefits to the legal beneficiary if a compensable injury to the employee results in death.

(b)  Subject  to  Section  408.061,  the  amount  of  a  death

benefit is equal to 75 percent of the employee's average weekly wage.

(c)  The commissioner by rule shall establish requirements for agreements under which death benefits may be paid monthly.  Death benefits may be paid monthly only:

(1)  on the request of the legal beneficiary and the agreement of the legal beneficiary and the insurance carrier; and

(2)  in compliance with the requirements adopted by the commissioner.

(d)  An insurance carrier may pay death benefits through an annuity if the annuity agreement meets the terms and conditions for annuity agreements adopted by the commissioner by rule.  The establishment of an annuity under this subsection does not relieve the insurance carrier of the liability under this title for ensuring that the death benefits are paid.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 15, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.127, eff. September 1, 2005.


Sec. 408.182.  DISTRIBUTION OF DEATH BENEFITS. (a) If there is an eligible child or grandchild and an eligible spouse, half of the death benefits shall be paid to the eligible spouse and half shall be paid in equal shares to the eligible children.  If an eligible child has predeceased the employee, death benefits that would have been paid to that child shall be paid in equal shares per stirpes to the children of the deceased child.

(b)  If there is an eligible spouse and no eligible child or grandchild, all the death benefits shall be paid to the eligible spouse.

(c)  If there is an eligible child or grandchild and no eligible spouse, the death benefits shall be paid to the eligible children or grandchildren.

(d)  If there is no eligible spouse, no eligible child, and no eligible grandchild, the death benefits shall be paid in equal shares to surviving dependents of the deceased employee who are

parents, stepparents, siblings, or grandparents of the deceased.

(d-1)  If there is no eligible spouse, no eligible child, and no eligible grandchild, and there are no surviving dependents of the deceased employee who are parents, siblings, or grandparents of the deceased, the death benefits shall be paid in equal shares to surviving eligible parents of the deceased.  A payment of death benefits made under this subsection may not exceed one payment per household.  Total payments under this section may not exceed 104 weeks regardless of the number of surviving eligible parents.

(d-2)  Except as otherwise provided by this subsection,  to be eligible to receive death benefits under Subsection (d-1), an eligible parent must file with the division a claim for those benefits not later than the first anniversary of the date of the injured employee's death from the compensable injury.  The claim must designate all eligible parents and necessary information for payment to the eligible parents.  The insurance carrier is not liable for payment to any eligible parent not designated on the claim.  Failure to file a claim in the time required bars the claim unless good cause exists for the failure to file a claim under this section.

(e)  If an employee is not survived by legal beneficiaries or eligible parents, the death benefits shall be paid to the subsequent injury fund under Section 403.007.

(f)  In this section:

(1)  "Eligible child" means a child of a deceased employee if the child is:

(A)  a minor;

(B)  enrolled as a full-time student in an accredited educational institution and is less than 25 years of age; or

(C)  a dependent of the deceased employee at the time of the employee's death.

(2)  "Eligible grandchild" means a grandchild of a deceased employee who is a dependent of the deceased employee and whose parent is not an eligible child.

(3)  "Eligible spouse" means the surviving spouse of a deceased employee unless the spouse abandoned the employee for

longer than the year immediately preceding the death without good cause, as determined by the division.

(4) "Eligible parent" means the mother or the father of a deceased employee, including an adoptive parent or a stepparent. The term does not include a parent whose parental rights have been terminated.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.128, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1007 (H.B. 724), Sec. 5, eff. September 1, 2007.

Acts 2007, 80th Leg., R.S., Ch. 1007 (H.B. 724), Sec. 6, eff. September 1, 2007.

Acts 2009, 81st Leg., R.S., Ch. 344 (H.B. 1058), Sec. 1, eff. September 1, 2009.


Sec. 408.183.  DURATION OF DEATH BENEFITS. (a) Entitlement to death benefits begins on the day after the date of an employee's death.

(b) An eligible spouse is entitled to receive death benefits for life or until remarriage. On remarriage, the eligible spouse is entitled to receive 104 weeks of death benefits, commuted as provided by commissioner rule.

(c) A child who is eligible for death benefits because the child is a minor on the date of the employee's death is entitled to receive benefits until the child attains the age of 18.

(d) A child eligible for death benefits under Subsection (c) who at age 18 is enrolled as a full-time student in an accredited educational institution or a child who is eligible for death benefits because on the date of the employee's death the child is enrolled as a full-time student in an accredited educational institution is entitled to receive or to continue to receive, as appropriate, benefits until the earliest of:

(1) the date the child ceases, for a second consecutive semester, to be enrolled as a full-time student in an accredited educational institution;

(2)  the date the child attains the age of 25;  or

(3)  the date the child dies.

(e)  A child who is eligible for death benefits because the child is a dependent of the deceased employee on the date of the employee's death is entitled to receive benefits until the earlier of:

(1)  the date the child dies;  or

(2)  if the child is dependent:

(A)  because the child is an individual with a physical or mental disability, the date the child no longer has the disability;  or

(B)  because of a reason other than a physical or mental disability, the date of the expiration of 364 weeks of death benefit payments.

(f)  An eligible grandchild is entitled to receive death benefits until the earlier of:

(1)  the date the grandchild dies;  or

(2)  if the grandchild is:

(A)  a minor at the time of the employee's death, the date the grandchild ceases to be a minor;  or

(B)  not a minor at the time of the employee's death, the date of the expiration of 364 weeks of death benefit payments.

(f-1)  An eligible parent who is not a surviving dependent of the deceased employee is entitled to receive death benefits until the earlier of:

(1)  the date the eligible parent dies; or

(2)  the date of the expiration of 104 weeks of death benefit payments.

(g)  Any other person entitled to death benefits is entitled to receive death benefits until the earlier of:

(1)  the date the person dies;  or

(2)  the date of the expiration of 364 weeks of death benefit payments.

(h)  Section 401.011(16) does not apply to the use of the term "disability" in this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.129, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1007 (H.B. 724), Sec. 7, eff. September 1, 2007.

Sec. 408.184.  REDISTRIBUTION OF DEATH BENEFITS.  (a)  If a legal beneficiary dies or otherwise becomes ineligible for death benefits, benefits shall be redistributed to the remaining legal beneficiaries as provided by Sections 408.182 and 408.183.

(b)  If a spouse ceases to be eligible because of remarriage, the benefits payable to the remaining legal beneficiaries remain constant for 104 weeks.  After the 104th week, the spouse's share of benefits shall be redistributed as provided by Sections 408.182 and 408.183.

(c)  If all legal beneficiaries, other than the subsequent injury fund, cease to be eligible and the insurance carrier has not made 364 weeks of full death benefit payments, including the remarriage payment, the insurance carrier shall pay to the subsequent injury fund an amount computed by subtracting the total amount paid from the amount that would be paid for 364 weeks of death benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 408.185.  EFFECT OF BENEFICIARY DISPUTE;  ATTORNEY'S FEES.  On settlement of a case in which the insurance carrier admits liability for death benefits but a dispute exists as to the proper beneficiary or beneficiaries, the settlement shall be paid in periodic payments as provided by law, with a reasonable attorney's fee not to exceed 25 percent of the settlement, paid periodically, and based on time and expenses.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 408.186.  BURIAL BENEFITS.  (a)  If the death of an employee results from a compensable injury, the insurance carrier shall pay to the person who incurred liability for the costs of burial the lesser of:

(1)  the actual costs incurred for reasonable burial expenses; or

(2)  $6,000.

(b)  If the employee died away from the employee's usual place of employment, the insurance carrier shall pay the reasonable cost of transporting the body, not to exceed the cost of transporting the body to the employee's usual place of employment.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 1426, Sec. 16, eff. Sept. 1, 1999.


Sec. 408.187.  AUTOPSY.  (a)  If in a claim for death benefits based on an occupational disease an autopsy is necessary to determine the cause of death, the commission may, after opportunity for hearing, order the legal beneficiaries of a deceased employee to permit an autopsy.

(b)  A legal beneficiary is entitled to have a representative present at an autopsy ordered under this section.

(c)  The commissioner shall require the insurance carrier to pay the costs of a procedure ordered under this section.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.130, eff. September 1, 2005.


SUBCHAPTER K. PROTECTION OF RIGHTS TO BENEFITS


Sec. 408.201.  BENEFITS EXEMPT FROM LEGAL PROCESS.  Benefits are exempt from:

(1)  garnishment;

(2)  attachment;

(3)  judgment;  and

(4)  other actions or claims.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 408.202.  ASSIGNABILITY OF BENEFITS.  Benefits are not assignable, except a legal beneficiary may, with the commissioner's approval, assign the right to death benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.131, eff. September 1, 2005.


Sec. 408.203.  ALLOWABLE LIENS.  (a)  An income or death benefit is subject only to the following lien or claim, to the extent the benefit is unpaid on the date the insurance carrier receives written notice of the lien or claim, in the following order of priority:

(1)  an attorney's fee for representing an employee or legal beneficiary in a matter arising under this subtitle;

(2)  court-ordered child support;  or

(3)  a subrogation interest established under this subtitle.

(b)  A benefit that is subject to a lien or claim for payment of court-ordered child support shall be paid as required by an order or writ of income withholding under Chapter 158, Family Code.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 165, Sec. 7.53, eff. Sept. 1, 1997; Acts 2003, 78th Leg., ch. 610, Sec. 22, eff. Sept. 1, 2003.


SUBCHAPTER L. ATTORNEY'S FEES IN WORKERS' COMPENSATION BENEFIT MATTERS


Sec. 408.221.  ATTORNEY'S FEES PAID TO CLAIMANT'S COUNSEL. (a)  An attorney's fee, including a contingency fee, for representing a claimant before the division or court under this subtitle must be approved by the commissioner or court.

(b)  Except as otherwise provided, an attorney's fee under this section is based on the attorney's time and expenses according to written evidence presented to the division or court.  Except as provided by Subsection (c) or Section 408.147(c), the attorney's fee shall be paid from the claimant's recovery.

(c)  An insurance carrier that seeks judicial review under Subchapter G, Chapter 410, of a final decision of the appeals panel regarding compensability or eligibility for, or the amount of,

income or death benefits is liable for reasonable and necessary attorney's fees as provided by Subsection (d) incurred by the claimant as a result of the insurance carrier's appeal if the claimant prevails on an issue on which judicial review is sought by the insurance carrier in accordance with the limitation of issues contained in Section 410.302. If the carrier appeals multiple issues and the claimant prevails on some, but not all, of the issues appealed, the court shall apportion and award fees to the claimant's attorney only for the issues on which the claimant prevails. In making that apportionment, the court shall consider the factors prescribed by Subsection (d). This subsection does not apply to attorney's fees for which an insurance carrier may be liable under Section 408.147. An award of attorney's fees under this subsection is not subject to commissioner rules adopted under Subsection (f).

(d) In approving an attorney's fee under this section, the commissioner or court shall consider:

(1) the time and labor required;

(2) the novelty and difficulty of the questions involved;

(3) the skill required to perform the legal services properly;

(4) the fee customarily charged in the locality for similar legal services;

(5) the amount involved in the controversy;

(6) the benefits to the claimant that the attorney is responsible for securing; and

(7) the experience and ability of the attorney performing the services.

(e) The commissioner by rule or the court may provide for the commutation of an attorney's fee, except that the attorney's fee shall be paid in periodic payments in a claim involving death benefits if the only dispute is as to the proper beneficiary or beneficiaries.

(f) The commissioner by rule shall provide guidelines for maximum attorney's fees for specific services in accordance with this section.

(g)  An attorney's fee may not be allowed in a case involving a fatal injury or lifetime income benefit if the insurance carrier admits liability on all issues and tenders payment of maximum benefits in writing under this subtitle while the claim is pending before the division.

(h)  An attorney's fee shall be paid to the attorney by separate draft.

(i)  Except as provided by Subsection (c) or Section 408. 147(c), an attorney's fee may not exceed 25 percent of the claimant's recovery.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 8.01, eff. June 17, 2001.  Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.132, eff. September 1, 2005.


Sec. 408.222.  ATTORNEY'S FEES PAID TO DEFENSE COUNSEL.  (a) The amount of an attorney's fee for defending an insurance carrier in a workers' compensation action brought under this subtitle must be approved by the division or court and determined by the division or court to be reasonable and necessary.

(b)  In determining whether a fee is reasonable under this section, the division or court shall consider issues analogous to those listed under Section 408.221(d).  The defense counsel shall present written evidence to the division or court relating to:

(1)  the time spent and expenses incurred in defending the case; and

(2)  other evidence considered necessary by the division or court in making a determination under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 8.03, eff. June 17, 2001.  Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.133, eff. September 1, 2005.

TAB 29

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 409. COMPENSATION PROCEDURES


SUBCHAPTER A. INJURY REPORTS, CLAIMS, AND RECORDS


Sec. 409.001. NOTICE OF INJURY TO EMPLOYER. (a) An employee or a person acting on the employee's behalf shall notify the employer of the employee of an injury not later than the 30th day after the date on which:

(1)  the injury occurs; or

(2)  if the injury is an occupational disease, the employee knew or should have known that the injury may be related to the employment.

(b)  The notice required under Subsection (a) may be given to:

(1)  the employer; or

(2)  an employee of the employer who holds a supervisory or management position.

(c)  If the injury is an occupational disease, for purposes of this section, the employer is the person who employed the employee on the date of last injurious exposure to the hazards of the disease.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 409.002. FAILURE TO FILE NOTICE OF INJURY. Failure to notify an employer as required by Section 409.001(a) relieves the employer and the employer's insurance carrier of liability under this subtitle unless:

(1)  the employer, a person eligible to receive notice under Section 409.001(b), or the employer's insurance carrier has actual knowledge of the employee's injury;

(2)  the division determines that good cause exists for failure to provide notice in a timely manner; or

(3)  the employer or the employer's insurance carrier does not contest the claim.

1

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.134, eff. September 1, 2005.


Sec. 409.003.  CLAIM FOR COMPENSATION.  An employee or a person acting on the employee's behalf shall file with the division a claim for compensation for an injury not later than one year after the date on which:

(1)  the injury occurred; or

(2)  if the injury is an occupational disease, the employee knew or should have known that the disease was related to the employee's employment.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.135, eff. September 1, 2005.


Sec. 409.004.  EFFECT OF FAILURE TO FILE CLAIM FOR COMPENSATION.  Failure to file a claim for compensation with the division as required under Section 409.003 relieves the employer and the employer's insurance carrier of liability under this subtitle unless:

(1)  good cause exists for failure to file a claim in a timely manner; or

(2)  the employer or the employer's insurance carrier does not contest the claim.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.136, eff. September 1, 2005.


Sec. 409.005.  REPORT OF INJURY;  MODIFIED DUTY PROGRAM NOTICE; ADMINISTRATIVE VIOLATION. (a) An employer shall report to the employer's insurance carrier if:

(1)  an injury results in the absence of an employee of that employer from work for more than one day;  or

(2)  an employee of the employer notifies that employer of an occupational disease under Section 409.001.

(b)  The report under Subsection (a) must be made not later than the eighth day after:

(1)  the employee's absence from work for more than one day due to an injury;  or

(2)  the day on which the employer receives notice under Section 409.001 that the employee has contracted an occupational disease.

(c)  The employer shall deliver a written copy of the report under Subsection (a) to the injured employee at the time that the report is made to the insurance carrier.

(d)  The insurance carrier shall file the report of the injury on behalf of the policyholder.  Except as provided by Subsection (e), the insurance carrier must electronically file the report with the division not later than the seventh day after the date on which the carrier receives the report from the employer.

(e)  The commissioner may waive the electronic filing requirement under Subsection (d) and allow an insurance carrier to mail or deliver the report to the division not later than the seventh day after the date on which the carrier receives the report from the employer.

(f)  A report required under this section may not be considered to be an admission by or evidence against an employer or an insurance carrier in a proceeding before the division or a court in which the facts set out in the report are contradicted by the employer or insurance carrier.

(g)  In addition to any information required under Subsection (h), the report provided to the injured employee under Subsection (c) must contain a summary written in plain language of the employee's statutory rights and responsibilities under this subtitle.

(h)  The commissioner may adopt rules relating to:

(1)  the information that must be contained in a report required under this section, including the summary of rights and responsibilities required under Subsection (g); and

(2)  the development and implementation of an

3

electronic filing system for injury reports under this section.

(i)  An employer and insurance carrier shall file subsequent reports as required by commissioner rule.

(j)  The employer shall, on the written request of the employee, a doctor, the insurance carrier, or the division, notify the employee, the employee's treating doctor if known to the employer, and the insurance carrier of the existence or absence of opportunities for modified duty or a modified duty return-to-work program available through the employer.  If those opportunities or that program exists, the employer shall identify the employer's contact person and provide other information to assist the doctor, the employee, and the insurance carrier to assess modified duty or return-to-work options.

(k)  This section does not prohibit the commissioner from imposing requirements relating to return-to-work under other authority granted to the division in this subtitle.

(l)  A person commits an administrative violation if the person fails to comply with this section unless good cause exists. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.29, eff. Sept. 1, 1995; Acts 2001, 77th Leg., ch. 1456, Sec. 3.01, eff. June 17, 2001. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.137, eff. September 1, 2005.


Sec. 409.006.  RECORD  OF  INJURIES;  ADMINISTRATIVE VIOLATION.  (a)  An employer shall maintain a record of each employee injury as reported by an employee or otherwise made known to the employer.

(b)  The record shall be available to the division at reasonable times and under conditions prescribed by the commissioner.

(c)  The commissioner may adopt rules relating to the information that must be contained in an employer record under this section.

(d)  Information contained in a record maintained under this section is not an admission by the employer that:

(1)  the injury did in fact occur;  or

(2)  a fact maintained in the record is true.

(e)  A person commits an administrative violation if the person fails to comply with this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.138, eff. September 1, 2005.


Sec. 409.007.  DEATH BENEFIT CLAIMS. (a)  A person must file a claim for death benefits with the division not later than the first anniversary of the date of the employee's death.

(b)  Failure to file in the time required by Subsection (a) bars the claim unless:

(1)  the person is a minor or incompetent;  or

(2)  good cause exists for the failure to file a claim under this section.

(c)  A separate claim must be filed for each legal beneficiary unless the claim expressly includes or is made on behalf of another person.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.139, eff. September 1, 2005.


Sec. 409.008.  FAILURE TO FILE EMPLOYER REPORT OF INJURY; LIMITATIONS TOLLED.  If an employer or the employer's insurance carrier has been given notice or has knowledge of an injury to or the death of an employee and the employer or insurance carrier fails, neglects, or refuses to file the report under Section 409.005, the period for filing a claim for compensation under Sections 409.003 and 409.007 does not begin to run against the claim of an injured employee or a legal beneficiary until the day on which the report required under Section 409.005 has been furnished.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 409.009.  SUBCLAIMS.  A person may file a written claim

with the division as a subclaimant if the person has:

(1) provided compensation, including health care provided by a health care insurer, directly or indirectly, to or for an employee or legal beneficiary; and

(2) sought and been refused reimbursement from the insurance carrier.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.140, eff. September 1, 2005.


Sec. 409.0091. REIMBURSEMENT PROCEDURES FOR CERTAIN ENTITIES. (a) In this section, "health care insurer" means an insurance carrier and an authorized representative of an insurance carrier, as described by Section 402.084(c-1).

(b) This section applies only to a request for reimbursement by a health care insurer.

(c) Health care paid by a health care insurer may be reimbursable as a medical benefit.

(d) Except as provided by Subsection (e), this section does not prohibit or limit a substantive defense by a workers' compensation insurance carrier that the health care paid for by the health care insurer was not a medical benefit or not a correct payment. A subclaimant may not be reimbursed for payment for any health care that was previously denied by a workers' compensation insurance carrier under:

(1) a preauthorization review of the specific service or medical procedure; or

(2) a medical necessity review that determined the service was not medically necessary for the treatment of a compensable injury.

(e) It is not a defense to a subclaim by a health care insurer that:

(1) the subclaimant has not sought reimbursement from a health care provider or the subclaimant's insured;

(2) the subclaimant or the health care provider did not request preauthorization under Section 413.014 or rules adopted

under that section; or

        (3)   the health care provider did not bill the workers' compensation insurance carrier, as provided by Section 408.027, before the 95th day after the date the health care for which the subclaimant paid was provided.

    (f)  Subject to the time limits under Subsection (n), the health care insurer shall provide, with any reimbursement request, the tax identification number of the health care insurer and the following to the workers' compensation insurance carrier, in a form prescribed by the division:

        (1)   information identifying the workers' compensation case, including:

            (A)   the division claim number;

            (B)   the name of the patient or claimant;

            (C)   the social security number of the patient or claimant; and

            (D)   the date of the injury; and

        (2)   information describing the health care paid by the health care insurer, including:

            (A)   the name of the health care provider;

            (B)   the tax identification number of the health care provider;

            (C)   the date of service;

            (D)   the place of service;

            (E)   the ICD-9 code;

            (F)   the CPT, HCPCS, NDC, or revenue code;

            (G)   the amount charged by the health care provider; and

            (H)   the amount paid by the health care insurer.

    (g)  The workers' compensation insurance carrier shall reduce the amount of the reimbursable subclaim by any payments the workers' compensation insurance carrier previously made to the same health care provider for the provision of the same health care on the same dates of service. In making such a reduction in reimbursement to the subclaimant, the workers' compensation insurance carrier shall provide evidence of the previous payments made to the provider.

(h)  For  each  medical  benefit  paid,  the  workers'
compensation insurance carrier shall pay to the health care insurer
the lesser of the amount payable under the applicable fee guideline
as of the date of service or the actual amount paid by the health
care insurer.  In the absence of a fee guideline for a specific
service paid, the amount per service paid by the health care insurer
shall be considered in determining a fair and reasonable payment
under rules under this subtitle defining fair and reasonable
medical reimbursement.  The health care insurer may not recover
interest as a part of the subclaim.

(i)  On receipt of a request for reimbursement under this
section, the workers' compensation insurance carrier shall respond
to the request in writing not later than the 90th day after the date
on which the request is received.  If additional information is
requested under Subsection (j), the workers' compensation
insurance carrier shall respond not later than the 120th day unless
the time is extended under Subsection (j).

(j)  If the workers' compensation insurance carrier requires
additional information from the health care insurer, the workers'
compensation insurance carrier shall send notice to the health care
insurer requesting the additional information. The health care
insurer shall have 30 days to provide the requested
information.  The workers' compensation insurance carrier and the
health care insurer may establish additional periods for compliance
with this subsection by written mutual agreement.

(k)  Unless the parties have agreed to an extension of time
under Subsection (j), the health care insurer must file a written
subclaim under this section not later than the 120th day after:

(1)  the workers' compensation insurance carrier fails
to respond to a request for reimbursement; or

(2)  receipt of the workers' compensation insurance
carrier's notice of denial to pay or reduction in reimbursement.

(l)  Any dispute that arises from a failure to respond to or a
reduction or denial of a request for reimbursement of services that
form the basis of the subclaim must go through the appropriate
dispute resolution process under this subtitle and division
rules.  The commissioner of insurance and the commissioner of

workers' compensation shall modify rules under this subtitle as necessary to allow the health care insurer access as a subclaimant to the appropriate dispute resolution process. Rules adopted or amended by the commissioner of insurance and the commissioner of workers' compensation must recognize the status of a subclaimant as a party to the dispute. Rules modified or adopted under this section should ensure that the workers' compensation insurance carrier is not penalized, including not being held responsible for costs of obtaining the additional information, if the workers' compensation insurance carrier denies payment in order to move to dispute resolution to obtain additional information to process the request.

(m) In a dispute filed under Chapter 410 that arises from a subclaim under this section, a hearing officer may issue an order regarding compensability or eligibility for benefits and order the workers' compensation insurance carrier to reimburse health care services paid by the health care insurer as appropriate under this subtitle. Any dispute over the amount of medical benefits owed under this section, including medical necessity issues, shall be determined by medical dispute resolution under Sections 413.031 and 413.032.

(n) Except as provided by Subsection (s), a health care insurer must file a request for reimbursement with the workers' compensation insurance carrier not later than six months after the date on which the health care insurer received information under Section 402.084(c-3) and not later than 18 months after the health care insurer paid for the health care service.

(o) The commissioner and the commissioner of insurance shall amend or adopt rules to specify the process by which an employee who has paid for health care services described by Section 408.027(d) may seek reimbursement.

(p) Until September 1, 2011, a workers' compensation insurance carrier is exempt from any department and division data reporting requirements affected by a lack of information caused by reimbursement requests or subclaims under this section. If data reporting is required after that date, the requirement is prospective only and may not require any data to be reported between

September 1, 2007, and the date required reporting is reinstated. The department and the division may make legislative recommendations to the 82nd Legislature for the collection of reimbursement request and subclaim data.

(q) An action or failure to act by a workers' compensation insurance carrier under this section may not serve as the basis for an examination or administrative action by the department or the division, or for any cause of action by any person, except for judicial review under this subtitle.

(r) The commissioner of insurance and the commissioner of workers' compensation may adopt additional rules to clarify the processes required by, fulfill the purpose of, or assist the parties in the proper adjudication of subclaims under this section.

(s) On or after September 1, 2007, from information provided to a health care insurer before January 1, 2007, under Section 402.084(c-3), the health care insurer may file not later than March 1, 2008:

(1) a subclaim with the division under Subsection (l) if a request for reimbursement has been presented and denied by a workers' compensation insurance carrier; or

(2) a request for reimbursement under Subsection (f) if a request for reimbursement has not previously been presented and denied by the workers' compensation insurance carrier.

Added by Acts 2007, 80th Leg., R.S., Ch. 1007 (H.B. 724), Sec. 8, eff. September 1, 2007.


Sec. 409.010. INFORMATION PROVIDED TO EMPLOYEE OR LEGAL BENEFICIARY. Immediately on receiving notice of an injury or death from any person, the division shall mail to the employee or legal beneficiary a clear and concise description of:

(1) the services provided by:

(A) the division; and

(B) the office of injured employee counsel, including the services of the ombudsman program;

(2) the division's procedures; and

(3) the person's rights and responsibilities under this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.141, eff. September 1, 2005.


Sec. 409.011. INFORMATION PROVIDED TO EMPLOYER; EMPLOYER'S RIGHTS. (a) Immediately on receiving notice of an injury or death from any person, the division shall mail to the employer a description of:

(1) the services provided by the division and the office of injured employee counsel;

(2) the division's procedures; and

(3) the employer's rights and responsibilities under this subtitle.

(b) The information must include a clear statement of the following rights of the employer:

(1) the right to be present at all administrative proceedings relating to an employee's claim;

(2) the right to present relevant evidence relating to an employee's claim at any proceeding;

(3) the right to report suspected fraud;

(4) the right to contest the compensability of an injury if the insurance carrier accepts liability for the payment of benefits;

(5) the right to receive notice, after making a written request to the insurance carrier, of:

(A) a proposal to settle a claim; or

(B) an administrative or a judicial proceeding relating to the resolution of a claim; and

(6) the right to contest the failure of the insurance carrier to provide accident prevention services under Subchapter E, Chapter 411.

(c) The division is not required to provide the information to an employer more than once during a calendar year.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.142, eff.

September 1, 2005.

Sec. 409.012.  VOCATIONAL REHABILITATION INFORMATION.  (a) The division shall analyze each report of injury received from an employer under this chapter to determine whether the injured employee would be assisted by vocational rehabilitation.

(b)  If the division determines that an injured employee would be assisted by vocational rehabilitation, the division shall notify:

(1)  the injured employee in writing of the services and facilities available through the Department of Assistive and Rehabilitative Services and private providers of vocational rehabilitation; and

(2)  the Department of Assistive and Rehabilitative Services and the affected insurance carrier that the injured employee has been identified as one who could be assisted by vocational rehabilitation.

(c)  The division shall cooperate with the office of injured employee counsel, the Department of Assistive and Rehabilitative Services, and private providers of vocational rehabilitation in the provision of services and facilities to employees by the Department of Assistive and Rehabilitative Services.

(d)  A private provider of vocational rehabilitation services may register with the division.

(e)  The commissioner by rule may require that a private provider of vocational rehabilitation services maintain certain credentials and qualifications in order to provide services in connection with a workers' compensation insurance claim.

(f)  Repealed by Acts 2011, 82nd Leg., R.S., Ch. 1083, Sec. 25(127), eff. June 17, 2011.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 956, Sec. 2, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.143, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1083 (S.B. 1179), Sec. 25(127), eff. June 17, 2011.

Sec. 409.013.  PLAIN LANGUAGE INFORMATION; NOTIFICATION OF INJURED EMPLOYEE.  (a)  The division shall develop information for public dissemination about the benefit process and the compensation procedures established under this chapter.  The information must be written in plain language and must be available in English and Spanish.

(b)  On receipt of a report under Section 409.005, the division shall contact the affected employee by mail or by telephone and shall provide the information required under Subsection (a) to that employee, together with any other information that may be prepared by the office of injured employee counsel or the division for public dissemination that relates to the employee's situation, such as information relating to back injuries or occupational diseases.

Added by Acts 1995, 74th Leg., ch. 980, Sec. 1.30, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.144, eff. September 1, 2005.


SUBCHAPTER B. PAYMENT OF BENEFITS


Sec. 409.021.  INITIATION OF BENEFITS;  INSURANCE CARRIER'S REFUSAL;  ADMINISTRATIVE VIOLATION.  (a)  An insurance carrier shall initiate compensation under this subtitle promptly.  Not later than the 15th day after the date on which an insurance carrier receives written notice of an injury, the insurance carrier shall:

(1)  begin the payment of benefits as required by this subtitle; or

(2)  notify the division and the employee in writing of its refusal to pay and advise the employee of:

(A)  the right to request a benefit review conference; and

(B)  the means to obtain additional information from the division.

(a-1)  An insurance carrier that fails to comply with

13

Subsection (a) does not waive the carrier's right to contest the compensability of the injury as provided by Subsection (c) but commits an administrative violation subject to Subsection (e).

(a-2)  An insurance carrier is not required to comply with Subsection (a) if the insurance carrier has accepted the claim as a compensable injury and income or death benefits have not yet accrued but will be paid by the insurance carrier when the benefits accrue and are due.

(b)  An insurance carrier shall notify the division in writing of the initiation of income or death benefit payments in the manner prescribed by commissioner rules.

(c)  If an insurance carrier does not contest the compensability of an injury on or before the 60th day after the date on which the insurance carrier is notified of the injury, the insurance carrier waives its right to contest compensability.  The initiation of payments by an insurance carrier does not affect the right of the insurance carrier to continue to investigate or deny the compensability of an injury during the 60-day period.

(d)  An insurance carrier may reopen the issue of the compensability of an injury if there is a finding of evidence that could not reasonably have been discovered earlier.

(e)  An insurance carrier commits an administrative violation if the insurance carrier does not initiate payments or file a notice of refusal as required by this section.

Text of subsec. (f) as added by Acts 2003, 78th Leg., ch. 939, Sec. 1

(f)  For purposes of this section, "written notice" to a certified self-insurer occurs only on written notice to the qualified claims servicing contractor designated by the certified self-insurer under Section 407.061(c).

Text of subsec. (f) as added by Acts 2003, 78th Leg., ch. 1100, Sec. 1

(f)  For purposes of this section:
        (1)  a certified self-insurer receives notice on the

14

date the qualified claims servicing contractor designated by the certified self-insurer under Section 407.061(c) receives notice; and

(2)  a political subdivision that self-insures under Section 504.011, either individually or through an interlocal agreement with other political subdivisions, receives notice on the date the intergovernmental risk pool or other entity responsible for administering the claim for the political subdivision receives notice.

(j)  Each insurance carrier shall establish a single point of contact in the carrier's office for an injured employee for whom the carrier receives a notice of injury.

Added by Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 939, Sec. 1, eff. Sept. 1, 2003;  Acts 2003, 78th Leg., ch. 1100, Sec. 1, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.145, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 13, eff. September 1, 2011.


Sec. 409.022.  REFUSAL   TO   PAY   BENEFITS;   NOTICE; ADMINISTRATIVE VIOLATION.  (a)  An insurance carrier's notice of refusal to pay benefits under Section 409.021 must specify the grounds for the refusal.

(b)  The grounds for the refusal specified in the notice constitute the only basis for the insurance carrier's defense on the issue of compensability in a subsequent proceeding, unless the defense is based on newly discovered evidence that could not reasonably have been discovered at an earlier date.

(c)  An  insurance  carrier  commits  an  administrative violation if the insurance carrier does not have reasonable grounds for a refusal to pay benefits, as determined by the commissioner.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.146, eff. September 1, 2005.

Sec. 409.023. PAYMENT OF BENEFITS; ADMINISTRATIVE VIOLATION. (a) An insurance carrier shall continue to pay benefits promptly as and when the benefits accrue without a final decision, order, or other action of the commissioner, except as otherwise provided.

(b) Benefits shall be paid solely to the order of the employee or the employee's legal beneficiary.

(c) An insurance carrier commits an administrative violation if the insurance carrier fails to comply with this section.

(d) An insurance carrier that commits multiple violations of this section commits an additional administrative violation and is subject to:

(1) the sanctions provided under Section 415.023; and

(2) revocation of the right to do business under the workers' compensation laws of this state.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.147, eff. September 1, 2005.


Sec. 409.0231. PAYMENT BY ELECTRONIC FUNDS TRANSFER. (a) An insurance carrier shall offer employees entitled to the payment of benefits for a period of sufficient duration the option of receiving the payments by electronic funds transfer. The insurance carrier shall provide the necessary forms to an employee who requests that benefits be paid by electronic funds transfer.

(b) The commissioner shall adopt rules in consultation with the Texas Department of Information Resources as necessary to implement this section, including rules prescribing a period of benefits that is of sufficient duration to allow payment by electronic funds transfer.

Added by Acts 1999, 76th Leg., ch. 690, Sec. 1, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.148, eff. September 1, 2005.

Sec. 409.0232.  TIMELINESS OF PAYMENTS.   An insurance carrier is considered to have paid benefits in a timely manner if a payment:

(1)  is made by electronic funds transfer and is deposited in the employee's account on or before the benefit payment due date;

(2)  is made by mail and is mailed in time for the payment to be postmarked on or before the benefit payment due date; or

(3)  is to be picked up by the employee and the payment is made available to the employee during regular business hours not later than the opening of business on the benefit payment due date. Added by Acts 1999, 76th Leg., ch. 690, Sec. 1, eff. June 18, 1999.


Sec. 409.024.  TERMINATION OR REDUCTION OF BENEFITS; NOTICE; ADMINISTRATIVE VIOLATION.  (a)  An insurance carrier shall file with the division a notice of termination or reduction of benefits, including the reasons for the termination or reduction, not later than the 10th day after the date on which benefits are terminated or reduced.

(b)  An insurance carrier commits an administrative violation if the insurance carrier does not have reasonable grounds to terminate or reduce benefits, as determined by the commissioner. Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.149, eff. September 1, 2005.

17

TAB 30

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 410. ADJUDICATION OF DISPUTES


SUBCHAPTER A. GENERAL PROVISIONS


Sec. 410.002. LAW GOVERNING LIABILITY PROCEEDINGS. A proceeding before the division to determine the liability of an insurance carrier for compensation for an injury or death under this subtitle is governed by this chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.150, eff. September 1, 2005.


Sec. 410.003. APPLICATION OF ADMINISTRATIVE PROCEDURE AND TEXAS REGISTER ACT. Except as otherwise provided by this chapter, Chapter 2001, Government Code does not apply to a proceeding under this chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(49), eff. Sept. 1, 1995.


Sec. 410.005. VENUE FOR ADMINISTRATIVE PROCEEDINGS. (a) Unless the division determines that good cause exists for the selection of a different location, a benefit review conference or a contested case hearing may not be conducted at a site more than 75 miles from the claimant's residence at the time of the injury.

(b) Unless the assigned arbitrator determines that good cause exists for the selection of a different location, arbitration may not be conducted at a site more than 75 miles from the claimant's residence at the time of the injury.

(c) All appeals panel proceedings shall be conducted in Travis County.

(d) Notwithstanding Subsection (a), the division may conduct a benefit review conference telephonically on agreement by the injured employee.

1

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.151, eff. September 1, 2005.


Sec. 410.006.  REPRESENTATION AT ADMINISTRATIVE PROCEEDINGS.  (a)  A claimant may be represented at a benefit review conference, a contested case hearing, or arbitration by an attorney or may be assisted by an individual of the claimant's choice who does not work for an attorney or receive a fee.  An employee of an attorney may represent a claimant if that employee:

(1)  is a relative of the claimant;  and

(2)  does not receive a fee.

(b)  An insurance carrier may be represented by an attorney or adjuster.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.007.  INFORMATION LIST.  (a)  The division shall determine the type of information that is most useful to parties to help resolve disputes regarding income benefits. That information may include:

(1)  reports regarding the compensable injury;

(2)  medical information regarding the injured employee; and

(3)  wage records.

(b)  The division shall publish a list developed from the information described under Subsection (a) in appropriate media, including the division's Internet website, to provide guidance to a party to a dispute regarding the type of information the party should have available at a benefit review conference or a contested case hearing.

(c)  At the time a benefit review conference or contested case hearing is scheduled, the division shall make available a copy of the list developed under Subsection (b) to each party to the dispute.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.152, eff. September 1, 2005.

SUBCHAPTER B. BENEFIT REVIEW CONFERENCE

Sec. 410.021. PURPOSE. A benefit review conference is a nonadversarial, informal dispute resolution proceeding designed to:

(1) explain, orally and in writing, the rights of the respective parties to a workers' compensation claim and the procedures necessary to protect those rights;

(2) discuss the facts of the claim, review available information in order to evaluate the claim, and delineate the disputed issues; and

(3) mediate and resolve disputed issues by agreement of the parties in accordance with this subtitle and the policies of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.153, eff. September 1, 2005.

Sec. 410.022. BENEFIT REVIEW OFFICERS; QUALIFICATIONS. (a) A benefit review officer shall conduct a benefit review conference.

(b) A benefit review officer must:

(1) be an employee of the division;

(2) be trained in the principles and procedures of dispute mediation; and

(3) have documentation satisfactory to the commissioner that evidences the completion by the officer of at least 40 classroom hours of training in dispute resolution techniques from an alternative dispute resolution organization recognized by the commissioner.

(c) The division shall institute and maintain an education and training program for benefit review officers and shall consult or contract with the Federal Mediation and Conciliation Service or other appropriate organizations for this purpose.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.154, eff. September 1, 2005.


Sec. 410.023.  REQUEST FOR BENEFIT REVIEW CONFERENCE.  (a) On receipt of a request from a party or on its own motion, the division may direct the parties to a disputed workers' compensation claim to meet in a benefit review conference to attempt to reach agreement on disputed issues involved in the claim.

(b)  The division shall require the party requesting the benefit review conference to provide documentation of efforts made to resolve the disputed issues before the request was submitted.

(c)  The commissioner by rule shall:

(1)  adopt guidelines regarding the type of information necessary to satisfy the requirements of Subsection (b); and

(2)  establish a process through which the division evaluates the sufficiency of the documentation provided under Subsection (b).

(d)  The division may deny a request for a benefit review conference if the party requesting the benefit review conference does not provide the documentation required under Subsection (b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.155, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 14, eff. September 1, 2011.


Sec. 410.024.  BENEFIT REVIEW CONFERENCE AS PREREQUISITE TO FURTHER PROCEEDINGS ON CERTAIN CLAIMS.  (a)  Except as otherwise provided by law or commissioner rule, the parties to a disputed compensation claim are not entitled to a contested case hearing or arbitration on the claim unless a benefit review conference is conducted as provided by this subchapter.

(b)  The commissioner by rule shall adopt guidelines relating to claims that do not require a benefit review conference and may proceed directly to a contested case hearing or

arbitration.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.156, eff. September 1, 2005.


Sec. 410.025.  SCHEDULING OF BENEFIT REVIEW CONFERENCE; NOTICE.  (a)  The commissioner by rule shall prescribe the time within which a benefit review conference must be scheduled.

(b)  The division shall schedule a contested case hearing to be held not later than the 60th day after the date of the benefit review conference if the disputed issues are not resolved at the benefit review conference.

(c)  The division shall send written notice of the benefit review conference to the parties to the claim and the employer.

(d)  The commissioner by rule shall provide for expedited proceedings in cases in which compensability or liability for essential medical treatment is in dispute.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.157, eff. September 1, 2005.


Sec. 410.026.  POWERS AND DUTIES OF BENEFIT REVIEW OFFICER. (a) A benefit review officer shall:

(1)  mediate disputes between the parties and assist in the adjustment of the claim consistent with this subtitle and the policies of the division;

(2)  thoroughly inform all parties of their rights and responsibilities under this subtitle, especially in a case in which the employee is not represented by an attorney or other representative;

(3)  ensure that all documents and information relating to the employee's wages, medical condition, and any other information pertinent to the resolution of disputed issues are contained in the claim file at the conference, especially in a case in which the employee is not represented by an attorney or other

representative; and

(4) prepare a written report that details each issue that is not resolved at the benefit review conference, as required under Section 410.031, including any issue raised for the first time at the conclusion of an additional benefit review conference conducted under Subsection (b).

(b) A benefit review officer may schedule an additional benefit review conference if:

(1) the benefit review officer determines that any available information pertinent to the resolution of disputed issues was not produced at the initial benefit review conference; and

(2) a second benefit review conference has not already been conducted.

(c) A benefit review officer may not take testimony but may direct questions to an employee, an employer, or a representative of an insurance carrier to supplement or clarify information in a claim file.

(d) A benefit review officer may not make a formal record.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.158, eff. September 1, 2005.


Sec. 410.027. RULES. (a) The commissioner shall adopt rules for conducting benefit review conferences.

(b) A benefit review conference is not subject to common law or statutory rules of evidence or procedure.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.159, eff. September 1, 2005.


Sec. 410.028. FAILURE TO ATTEND; ADMINISTRATIVE VIOLATION. (a) A scheduled benefit review conference shall be conducted even though a party fails to attend unless the benefit review officer determines that good cause, as defined by commissioner rule, exists

to reschedule the conference.

(b)  If a party to a benefit review conference under Section 410.023 requests that the benefit review conference be rescheduled under this section, the party must submit a request in the same manner as an initial request under Section 410.023.  The division shall evaluate a request for a rescheduled benefit review conference received under this section in the same manner as an initial request received under Section 410.023.

(c)  If a party fails to request that a benefit review conference be rescheduled in the time required by commissioner rule or fails to attend a benefit review conference without good cause as defined by commissioner rule, the party forfeits the party's entitlement to attend a benefit review conference on the issue in dispute, unless a benefit review officer is authorized to schedule an additional benefit review conference under Section 410.026(b).

(d)  The commissioner shall adopt rules necessary to implement and enforce this section, including rules that:

(1)  define good cause; and

(2)  establish deadlines for requesting that a benefit review conference be rescheduled under Subsection (b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.160, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 15, eff. September 1, 2011.


Sec. 410.029.  RESOLUTION AT BENEFIT REVIEW CONFERENCE; WRITTEN AGREEMENT.  (a)  A dispute may be resolved either in whole or in part at a benefit review conference.

(b)  If the conference results in the resolution of some disputed issues by agreement or in a settlement, the benefit review officer shall reduce the agreement or the settlement to writing. The benefit review officer and each party or the designated representative of the party shall sign the agreement or settlement.

(c)  A settlement takes effect on the date it is approved by the director in accordance with Section 408.005.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.030. BINDING EFFECT OF AGREEMENT. (a) An agreement signed in accordance with Section 410.029 is binding on the insurance carrier through the conclusion of all matters relating to the claim, unless the division or a court, on a finding of fraud, newly discovered evidence, or other good and sufficient cause, relieves the insurance carrier of the effect of the agreement.

(b) The agreement is binding on the claimant, if represented by an attorney, to the same extent as on the insurance carrier. If the claimant is not represented by an attorney, the agreement is binding on the claimant through the conclusion of all matters relating to the claim while the claim is pending before the division, unless the commissioner for good cause relieves the claimant of the effect of the agreement.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.161, eff. September 1, 2005.

Sec. 410.031. INCOMPLETE RESOLUTION; REPORT. (a) If a dispute is not entirely resolved at a benefit review conference, the benefit review officer shall prepare a written report that details each issue that is not resolved at the conference.

(b) The report must also include:

(1) a statement of each resolved issue;

(2) a statement of each issue raised but not resolved;

(3) a statement of the position of the parties regarding each unresolved issue;

(4) a statement of the procedures required to request a contested case hearing or arbitration and a complete explanation of the differences in those proceedings and the rights of the parties to subsequent review of the determinations made in those proceedings; and

(5) the date of the contested case hearing scheduled in accordance with Section 410.025(b).

8

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.162, eff. September 1, 2005.


Text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1177 (H.B. 473), Sec. 1

For text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 4, see other Sec. 410.032.

Sec. 410.032. PAYMENT OF BENEFITS UNDER INTERLOCUTORY ORDER. (a) The benefit review officer who presides at the benefit review conference shall consider a request for an interlocutory order and shall give the opposing party the opportunity to respond before issuing an interlocutory order.

(b) The interlocutory order may address the payment or suspension of accrued benefits, future benefits, or both accrued benefits and future benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 955, Sec. 2, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.162, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1177 (H.B. 473), Sec. 1, eff. September 1, 2007.


Text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 4

For text of section as amended by Acts 2007, 80th Leg., R.S., Ch. 1177 (H.B. 473), Sec. 1, see other Sec. 410.032.

Sec. 410.032. PAYMENT OF BENEFITS UNDER INTERLOCUTORY ORDER. (a) The benefit review officer who presides at the benefit review conference shall:

(1) consider a written or verbal request for an interlocutory order for the payment of benefits; and

(2) if the benefit review officer determines that issuance of an interlocutory order is appropriate, issue the interlocutory order not later than the third day after the date of

9

receipt of the request under Subdivision (1).

(b) The interlocutory order may address accrued benefits, future benefits, or both accrued benefits and future benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 955, Sec. 2, eff. Sept. 1, 1999.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.162, eff. September 1, 2005.

Acts 2007, 80th Leg., R.S., Ch. 1150 (S.B. 1169), Sec. 4, eff. September 1, 2007.


Sec. 410.033. MULTIPLE CARRIERS. (a) If there is a dispute as to which of two or more insurance carriers is liable for compensation for one or more compensable injuries, the commissioner may issue an interlocutory order directing each insurance carrier to pay a proportionate share of benefits due pending a final decision on liability. The proportionate share is computed by dividing the compensation due by the number of insurance carriers involved.

(b) On final determination of liability, an insurance carrier determined to be not liable for the payment of benefits is entitled to reimbursement for the share paid by the insurance carrier from any insurance carrier determined to be liable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.163, eff. September 1, 2005.


Sec. 410.034. FILING OF AGREEMENT AND REPORT. (a) The benefit review officer shall file the signed agreement and the report with the division.

(b) The commissioner by rule shall prescribe the times within which the agreement and report must be filed.

(c) The division shall furnish a copy of the file-stamped report to:

(1) the claimant;

(2) the employer; and

(3)  the insurance carrier.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.164, eff. September 1, 2005.


SUBCHAPTER C. ARBITRATION


Sec. 410.101.  PURPOSE.  The purpose of arbitration is to:

(1)  enter into formal, binding stipulations on issues on which the parties agree;

(2)  resolve issues on which the parties disagree;  and

(3)  render a final award with respect to all issues in dispute.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.102.  ARBITRATORS;  QUALIFICATIONS.  (a)  An arbitrator must be an employee of the division, except that the division may contract with qualified arbitrators on a determination of special need.

(b)  An arbitrator must:

(1)  be a member of the National Academy of Arbitrators;

(2)  be on an approved list of the American Arbitration Association or Federal Mediation and Conciliation Service; or

(3)  meet qualifications established by the commissioner by rule.

(c)  The division shall require that each arbitrator have appropriate training in the workers' compensation laws of this state.  The commissioner shall establish procedures to carry out this subsection.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.165, eff. September 1, 2005.


Sec. 410.103.  DUTIES OF ARBITRATOR.  An arbitrator shall:

(1)  protect the interests of all parties;

(2)  ensure that all relevant evidence has been disclosed to the arbitrator and to all parties; and

(3)  render an award consistent with this subtitle and the policies of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.166, eff. September 1, 2005.


Sec. 410.104.  ELECTION OF ARBITRATION;  EFFECT. (a)  If issues remain unresolved after a benefit review conference, the parties, by agreement, may elect to engage in arbitration in the manner provided by this subchapter.  Arbitration may be used only to resolve disputed benefit issues and is an alternative to a contested case hearing.  A contested case hearing scheduled under Section 410.025(b) is canceled by an election under this subchapter.

(b)  To elect arbitration, the parties must file the election with the division not later than the 20th day after the last day of the benefit review conference.  The commissioner shall prescribe a form for that purpose.

(c)  An election to engage in arbitration under this subchapter is irrevocable and binding on all parties for the resolution of all disputes arising out of the claims that are under the jurisdiction of the division.

(d)  An agreement to elect arbitration binds the parties to the provisions of Chapter 408 relating to benefits, and any award, agreement, or settlement after arbitration is elected must comply with that chapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.167, eff. September 1, 2005.


Sec. 410.105.  LISTS OF ARBITRATORS. (a)  The division shall establish regional lists of arbitrators who meet the qualifications

prescribed under Sections 410.102(a) and (b).  Each regional list shall be initially prepared in a random name order, and subsequent additions to a list shall be added chronologically.

(b)  The commissioner shall review the lists of arbitrators annually and determine if each arbitrator is fair and impartial and makes awards that are consistent with and in accordance with this subtitle and the rules of the commissioner.  The commissioner shall remove an arbitrator if, after the review, the commissioner determines that the arbitrator is not fair and impartial or does not make awards consistent with this subtitle and commissioner rules.

(c)  The division's lists are confidential and are not subject to disclosure under Chapter 552, Government Code.  The lists may not be revealed by any division employee to any person who is not a division employee.  The lists are exempt from discovery in civil litigation unless the party seeking the discovery establishes reasonable cause to believe that a violation of the requirements of this section or Section 410.106, 410.107, 410.108, or 410.109(b) occurred and that the violation is relevant to the issues in dispute.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(88), eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.168, eff. September 1, 2005.


Sec. 410.106.  SELECTION OF ARBITRATOR.  The division shall assign the arbitrator for a particular case by selecting the next name after the previous case's selection in consecutive order.  The division may not change the order of names once the order is established under this subchapter, except that once each arbitrator on the list has been assigned to a case, the names shall be randomly reordered.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.169, eff. September 1, 2005.

Sec. 410.107.  ASSIGNMENT OF ARBITRATOR.  (a)  The division shall assign an arbitrator to a pending case not later than the 30th day after the date on which the election for arbitration is filed with the division.

(b)  When an arbitrator has been assigned to a case under Subsection (a), the parties shall be notified immediately.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.170, eff. September 1, 2005.


Sec. 410.108.  REJECTION OF ARBITRATOR.  (a)  Each party is entitled, in its sole discretion, to one rejection of the arbitrator in each case.  If a party rejects the arbitrator, the division shall assign another arbitrator as provided by Section 410.106.

(b)  A rejection must be made not later than the third day after the date of notification of the arbitrator's assignment.

(c)  When all parties have exercised their right of rejection or if no rejection is registered, the assignment is final.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.171, eff. September 1, 2005.


Sec. 410.109.  SCHEDULING OF ARBITRATION.  (a)  The arbitrator shall schedule arbitration to be held not later than the 30th day after the date of the arbitrator's assignment and shall notify the parties and the division of the scheduled date.

(b)  If an arbitrator is unable to schedule arbitration in accordance with Subsection (a), the division shall appoint the next arbitrator on the applicable list. Each party is entitled to reject the arbitrator appointed under this subsection in the manner provided under Section 410.108.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.172, eff.

September 1, 2005.

Sec. 410.110.  CONTINUANCE.  (a)  A request by a party for a continuance of the arbitration to another date must be directed to the director.  The director may grant a continuance only if the director determines, giving due regard to the availability of the arbitrator, that good cause for the continuance exists.

(b)  If the director grants a continuance under this section, the rescheduled date may not be later than the 30th day after the original date of the arbitration.

(c)  Without regard to whether good cause exists, the director may not grant more than one continuance to each party.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.111.  RULES.  The commissioner shall adopt rules for arbitration consistent with generally recognized arbitration principles and procedures.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.173, eff. September 1, 2005.

Sec. 410.112.  EXCHANGE  AND  FILING  OF  INFORMATION; ADMINISTRATIVE VIOLATION.  (a)  Not later than the seventh day before the first day of arbitration, the parties shall exchange and file with the arbitrator:

(1)  all medical reports and other documentary evidence not previously exchanged or filed that are pertinent to the resolution of the claim;  and

(2)  information relating to their proposed resolution of the disputed issues.

(b)  A party commits an administrative violation if the party, without good cause as determined by the arbitrator, fails to comply with Subsection (a).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.174, eff.

15

September 1, 2005.

Sec. 410.113. DUTIES OF PARTIES AT ARBITRATION; ATTENDANCE; ADMINISTRATIVE VIOLATION. (a) Each party shall attend the arbitration prepared to set forth in detail its position on unresolved issues and the issues on which it is prepared to stipulate.

(b) A party commits an administrative violation if the party does not attend the arbitration unless the arbitrator determines that the party had good cause not to attend.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.175, eff. September 1, 2005.

Sec. 410.114. TESTIMONY; RECORD. (a) The arbitrator may require witnesses to testify under oath and shall require testimony under oath if requested by a party.

(b) The division shall make an electronic recording of the proceeding.

(c) An official stenographic record is not required, but any party may at the party's expense make a stenographic record of the proceeding.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.176, eff. September 1, 2005.

Sec. 410.115. EVIDENCE. (a) The parties may offer evidence as they desire and shall produce additional evidence as the arbitrator considers necessary to an understanding and determination of the dispute.

(b) The arbitrator is the judge of the relevance and materiality of the evidence offered. Conformity to legal rules of evidence is not required.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

16

Sec. 410.116.  CLOSING STATEMENTS; BRIEFS.  The parties may present closing statements as they desire, but the record may not remain open for written briefs unless requested by the arbitrator.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.117.  EX PARTE CONTACTS PROHIBITED.  A party and an arbitrator may not communicate outside the arbitration unless the communication is in writing with copies provided to all parties or relates to procedural matters.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.118.  AWARD.  (a)  The arbitrator shall enter the arbitrator's award not later than the seventh day after the last day of arbitration.

(b)  The arbitrator shall base the award on the facts established at arbitration, including stipulations of the parties, and on the law as properly applied to those facts.

(c)  The award must:

(1)  be in writing;

(2)  be signed and dated by the arbitrator;  and

(3)  include a statement of the arbitrator's decision on the contested issues and the parties' stipulations on uncontested issues.

(d)  The arbitrator shall file a copy of the award as part of the permanent claim file at the division and shall notify the parties in writing of the decision.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.177, eff. September 1, 2005.

Sec. 410.119.  EFFECT OF AWARD.  (a)  An arbitrator's award is final and binding on all parties.  Except as provided by Section 410.121, there is no right to appeal.

(b)  An arbitrator's award is a final order of the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.178, eff. September 1, 2005.

Sec. 410.120.  CLERICAL ERROR.  For the purpose of correcting a clerical error, an arbitrator retains jurisdiction of the award for 20 days after the date of the award.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.121.  COURT VACATING AWARD.  (a) On application of an aggrieved party, a court of competent jurisdiction shall vacate an arbitrator's award on a finding that:

(1)  the award was procured by corruption, fraud, or misrepresentation;

(2)  the decision of the arbitrator was arbitrary and capricious; or

(3)  the award was outside the jurisdiction of the division.

(b)  If an award is vacated, the case shall be remanded to the division for another arbitration proceeding.

(c)  A suit to vacate an award must be filed not later than the 30th day after:

(1)  the date of the award;  or

(2)  the date the appealing party knew or should have known of a basis for suit under this section, but in no event later than 12 months after an order denying compensation or after the expiration of the income or death benefit period.

(d)  Venue for a suit to vacate an award is in the county in which the arbitration was conducted.

(e)  In a suit to vacate an arbitrator's award, only the court may make determinations, including findings of fact or conclusions of law.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.179, eff. September 1, 2005.

SUBCHAPTER D. CONTESTED CASE HEARING

18

Sec. 410.151. CONTESTED CASE HEARING; SCOPE. (a) If arbitration is not elected under Section 410.104, a party to a claim for which a benefit review conference is held or a party eligible to proceed directly to a contested case hearing as provided by Section 410.024 is entitled to a contested case hearing.

(b) An issue that was not raised at a benefit review conference or that was resolved at a benefit review conference may not be considered unless:

(1) the parties consent; or

(2) if the issue was not raised, the commissioner determines that good cause existed for not raising the issue at the conference.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.180, eff. September 1, 2005.


Sec. 410.152. HEARING OFFICERS; QUALIFICATIONS. (a) A hearing officer shall conduct a contested case hearing.

(b) A hearing officer must be licensed to practice law in this state.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.153. APPLICATION OF ADMINISTRATIVE PROCEDURE ACT. Chapter 2001, Government Code, applies to a contested case hearing to the extent that the commissioner finds appropriate, except that the following do not apply:

(1) Section 2001.054;

(2) Sections 2001.061 and 2001.062;

(3) Section 2001.202; and

(4) Subchapters F, G, I, and Z, except for Section 2001.141(c).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.93, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.181, eff.

September 1, 2005.

Sec. 410.154.  SCHEDULING OF HEARING.  The division shall schedule a contested case hearing in accordance with Section 410.024 or 410.025(b).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.182, eff. September 1, 2005.

Sec. 410.155.  CONTINUANCE.  (a)  A written request by a party for a continuance of a contested case hearing to another date must be directed to the division.

(b)  The division may grant a continuance only if the division determines that there is good cause for the continuance.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.183, eff. September 1, 2005.

Sec. 410.156.  ATTENDANCE  REQUIRED;  ADMINISTRATIVE VIOLATION.  (a)  Each party shall attend a contested case hearing.

(b)  A party commits an administrative violation if the party, without good cause as determined by the hearing officer, does not attend a contested case hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.184, eff. September 1, 2005.

Sec. 410.157.  RULES.  The commissioner shall adopt rules governing procedures under which contested case hearings are conducted.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.185, eff. September 1, 2005.

Sec. 410.158. DISCOVERY. (a) Except as provided by Section 410.162, discovery is limited to:

(1)  depositions on written questions to any health care provider;

(2)  depositions of other witnesses as permitted by the hearing officer for good cause shown; and

(3)  interrogatories as prescribed by the commissioner.

(b)  Discovery under Subsection (a) may not seek information that may readily be derived from documentary evidence described in Section 410.160.  Answers to discovery under Subsection (a) need not duplicate information that may readily be derived from documentary evidence described in Section 410.160.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.186, eff. September 1, 2005.


Sec. 410.159. STANDARD INTERROGATORIES. (a) The commissioner by rule shall prescribe standard form sets of interrogatories to elicit information from claimants and insurance carriers.

(b)  Standard interrogatories shall be answered by each party and served on the opposing party within the time prescribed by commissioner rule, unless the parties agree otherwise.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.187, eff. September 1, 2005.


Sec. 410.160. EXCHANGE OF INFORMATION. Within the time prescribed by commissioner rule, the parties shall exchange:

(1)  all medical reports and reports of expert witnesses who will be called to testify at the hearing;

(2)  all medical records;

(3)  any witness statements;

(4)  the identity and location of any witness known to the parties to have knowledge of relevant facts; and

(5)  all photographs or other documents that a party intends to offer into evidence at the hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.188, eff. September 1, 2005.

Sec. 410.161.  FAILURE TO DISCLOSE INFORMATION.  A party who fails to disclose information known to the party or documents that are in the party's possession, custody, or control at the time disclosure is required by Sections 410.158-410.160 may not introduce the evidence at any subsequent proceeding before the division or in court on the claim unless good cause is shown for not having disclosed the information or documents under those sections.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.189, eff. September 1, 2005.

Sec. 410.162.  ADDITIONAL DISCOVERY.  For good cause shown, a party may obtain permission from the hearing officer to conduct additional discovery as necessary.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.163.  POWERS AND DUTIES OF HEARING OFFICER.  (a)  At a contested case hearing the hearing officer shall:

(1)  swear witnesses;

(2)  receive testimony;

(3)  allow examination and cross-examination of witnesses;

(4)  accept documents and other tangible evidence;  and

(5)  allow the presentation of evidence by affidavit.

(b)  A hearing officer shall ensure the preservation of the rights of the parties and the full development of facts required for the determinations to be made.  A hearing officer may permit the use

22

of summary procedures, if appropriate, including witness statements, summaries, and similar measures to expedite the proceedings.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.164. RECORD. (a) The proceedings of a contested case hearing shall be recorded electronically. A party may request a transcript of the proceeding and shall pay the reasonable cost of the transcription.

(b) A party may request that the proceedings of the contested case hearing be recorded by a court reporter. The party making the request shall bear the cost.

(c) At each contested case hearing, as applicable, the insurance carrier shall file with the hearing officer and shall deliver to the claimant a single document stating the true corporate name of the insurance carrier and the name and address of the insurance carrier's registered agent for service of process. The document is part of the record of the contested case hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 11.01, eff. June 17, 2001.


Sec. 410.165. EVIDENCE. (a) The hearing officer is the sole judge of the relevance and materiality of the evidence offered and of the weight and credibility to be given to the evidence. Conformity to legal rules of evidence is not necessary.

(b) A hearing officer may accept a written statement signed by a witness and shall accept all written reports signed by a health care provider.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.166. STIPULATIONS. A written stipulation or agreement of the parties that is filed in the record or an oral stipulation or agreement of the parties that is preserved in the record is final and binding.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.167. EX PARTE CONTACTS PROHIBITED. A party and a

hearing officer may not communicate outside the contested case hearing unless the communication is in writing with copies provided to all parties or relates to procedural matters.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.168. DECISION. (a) The hearing officer shall issue a written decision that includes:

(1) findings of fact and conclusions of law;

(2) a determination of whether benefits are due; and

(3) an award of benefits due.

(b) The decision may address accrued benefits, future benefits, or both accrued benefits and future benefits.

(c) The hearing officer may enter an interlocutory order for the payment of all or part of medical benefits or income benefits. The order may address accrued benefits, future benefits, or both accrued benefits and future benefits. The order is binding during the pendency of an appeal to the appeals panel.

(d) On a form that the commissioner by rule prescribes, the hearing officer shall issue a separate written decision regarding attorney's fees and any matter related to attorney's fees. The decision regarding attorney's fees and the form may not be made known to a jury in a judicial review of an award, including an appeal.

(e) The commissioner by rule shall prescribe the times within which the hearing officer must file the decisions with the division.

(f) The division shall send a copy of the decision to each party.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1999, 76th Leg., ch. 955, Sec. 3, eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.190, eff. September 1, 2005.


Sec. 410.169. EFFECT OF DECISION. A decision of a hearing officer regarding benefits is final in the absence of a timely appeal by a party and is binding during the pendency of an appeal to

the appeals panel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


SUBCHAPTER E. APPEALS PANEL


Sec. 410.201. APPEALS JUDGES; QUALIFICATIONS. (a) Appeals judges, in a three-member panel, shall conduct administrative appeals proceedings.

(b) An appeals judge must be licensed to practice law in this state.

(c) An appeals judge may not conduct a benefit review conference or a contested case hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.191, eff. September 1, 2005.


Sec. 410.202. REQUEST FOR APPEAL; RESPONSE. (a) To appeal the decision of a hearing officer, a party shall file a written request for appeal with the appeals panel not later than the 15th day after the date on which the decision of the hearing officer is received from the division and shall on the same date serve a copy of the request for appeal on the other party.

(b) The respondent shall file a written response with the appeals panel not later than the 15th day after the date on which the copy of the request for appeal is served and shall on the same date serve a copy of the response on the appellant.

(c) A request for appeal or a response must clearly and concisely rebut or support the decision of the hearing officer on each issue on which review is sought.

(d) Saturdays and Sundays and holidays listed in Section 662.003, Government Code, are not included in the computation of the time in which a request for an appeal under Subsection (a) or a response under Subsection (b) must be filed.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 12.01, eff. June 17, 2001.

Sec. 410.203.  POWERS AND DUTIES OF APPEALS PANEL; PRIORITY OF HEARING ON REMAND.  (a)  The appeals panel shall consider:

(1)  the record developed at the contested case hearing; and

(2)  the written request for appeal and response filed with the appeals panel.

(b)  The appeals panel may:

(1)  reverse the decision of the hearings officer and render a new decision;

(2)  reverse the decision of the hearings officer and remand the case to the hearing officer for further consideration and development of evidence; or

(3)  affirm the decision of the hearings officer in a case described by Section 410.204(a-1).

(c)  The appeals panel may not remand a case under Subsection (b)(2) more than once.

(d)  A hearing on remand shall be accelerated and the commissioner shall adopt rules to give priority to the hearing over other proceedings.

(e)  The appeals panel shall issue and maintain a precedent manual.  The precedent manual shall be composed of precedent-establishing decisions and may include other information as identified by the appeals panel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.192, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 16, eff. September 1, 2011.


Sec. 410.204.  DECISION.  (a)  The appeals panel shall review each request and issue a written decision on each reversed or remanded case.  The appeals panel may issue a written decision on an affirmed case as described by Subsection (a-1). The decision must be in writing and shall be issued not later than the 45th day after the date on which the written response to the request for appeal is filed.  The appeals panel shall file a copy of the

decision with the commissioner.

(a-1)  An appeals panel may only issue a written decision in a case in which the panel affirms the decision of a hearings officer if the case:

(1)  is a case of first impression;

(2)  involves a recent change in law; or

(3)  involves errors at the contested case hearing that require correction but do not affect the outcome of the hearing, including:

(A)  findings of fact for which insufficient evidence exists;

(B)  incorrect conclusions of law;

(C)  findings of fact or conclusions of law regarding matters that were not properly before the hearings officer; and

(D)  legal errors not otherwise described by this subdivision.

(b)  A copy of the decision of the appeals panel shall be sent to each party not later than the seventh day after the date the decision is filed with the division.

(c)  If the appeals panel does not issue a decision in accordance with this section, the decision of the hearing officer becomes final and is the final decision of the appeals panel.

(d)  Each final decision of the appeals panel shall conclude with a separate paragraph stating:  "The true corporate name of the insurance carrier is (NAME IN BOLD PRINT) and the name and address of its registered agent for service of process is (NAME AND ADDRESS IN BOLD PRINT)."

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 11.02, eff. June 17, 2001. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.193, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 17, eff. September 1, 2011.


Sec. 410.205.  EFFECT OF DECISION.  (a)  A decision of the

appeals panel regarding benefits is final in the absence of a timely appeal for judicial review.

(b)  The decision of the appeals panel regarding benefits is binding during the pendency of an appeal under Subchapter F or G.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1999, 76th Leg., ch. 955, Sec. 4, eff. Sept. 1, 1999.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.194, eff. September 1, 2005.


Sec. 410.206.  CLERICAL ERROR.  The division may revise a decision in a contested case hearing on a finding of clerical error.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.195, eff. September 1, 2005.


Sec.  410.207.  CONTINUATION  OF  DIVISION  JURISDICTION. During judicial review of the appeals panel decision on any disputed issue relating to a workers' compensation claim, the division retains jurisdiction of all other issues related to the claim.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.196, eff. September 1, 2005.


Sec. 410.208.  JUDICIAL ENFORCEMENT OF ORDER OR DECISION; ADMINISTRATIVE VIOLATION.  (a)  If a person refuses or fails to comply with an interlocutory order, final order, or decision of the commissioner, the division may bring suit in Travis County to enforce the order or decision.

(b)  If an insurance carrier refuses or fails to comply with an interlocutory order, a final order, or a decision of the commissioner, the claimant may bring suit in the county of the claimant's residence at the time of the injury, or death if the employee is deceased, or, in the case of an occupational disease, in

the county in which the employee resided on the date disability began or any county agreed to by the parties.

(c) If the division brings suit to enforce an interlocutory order, final order, or decision of the commissioner, the division is entitled to reasonable attorney's fees and costs for the prosecution and collection of the claim, in addition to a judgment enforcing the order or decision and any other remedy provided by law.

(d) A claimant who brings suit to enforce an interlocutory order, final order, or decision of the commissioner is entitled to a penalty equal to 12 percent of the amount of benefits recovered in the judgment, interest, and reasonable attorney's fees for the prosecution and collection of the claim, in addition to a judgment enforcing the order or decision.

(e) A person commits an administrative violation if the person fails or refuses to comply with an interlocutory order, final order, or decision of the commissioner within 20 days after the date the order or decision becomes final.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 397, Sec. 1, eff. Sept. 1, 2003. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.197, eff. September 1, 2005.


Sec. 410.209. REIMBURSEMENT FOR OVERPAYMENT. The subsequent injury fund shall reimburse an insurance carrier for any overpayments of benefits made under an interlocutory order or decision if that order or decision is reversed or modified by final arbitration, order, or decision of the commissioner or a court. The commissioner shall adopt rules to provide for a periodic reimbursement schedule, providing for reimbursement at least annually.

Added by Acts 1999, 76th Leg., ch. 955, Sec. 5, eff. Sept. 1, 1999. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.198, eff. September 1, 2005.

Sec. 410.251.  EXHAUSTION OF REMEDIES.  A party that has exhausted its administrative remedies under this subtitle and that is aggrieved by a final decision of the appeals panel may seek judicial review under this subchapter and Subchapter G, if applicable.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.252.  TIME FOR FILING PETITION;  VENUE.  (a)  A party may seek judicial review by filing suit not later than the 45th day after the date on which the division mailed the party the decision of the appeals panel.  For purposes of this section, the mailing date is considered to be the fifth day after the date the decision of the appeals panel was filed with the division.

(b)  The party bringing suit to appeal the decision must file a petition with the appropriate court in:

(1)  the county where the employee resided at the time of the injury or death, if the employee is deceased;  or

(2)  in the case of an occupational disease, in the county where the employee resided on the date disability began or any county agreed to by the parties.

(c)  If a suit under this section is filed in a county other than the county described by Subsection (b), the court, on determining that it does not have jurisdiction to render judgment on the merits of the suit, shall transfer the case to a proper court in a county described by Subsection (b).  Notice of the transfer of a suit shall be given to the parties.  A suit transferred under this subsection shall be considered for all purposes the same as if originally filed in the court to which it is transferred.

(d)  If a suit is initially filed within the 45-day period in Subsection (a), and is transferred under Subsection (c), the suit is considered to be timely filed in the court to which it is transferred.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 663, Sec. 1, eff. Sept. 1, 2003.
Amended by:

Acts 2009, 81st Leg., R.S., Ch. 1200 (H.B. 4545), Sec. 1, eff. September 1, 2009.

Acts 2011, 82nd Leg., R.S., Ch. 1066 (S.B. 809), Sec. 1, eff. September 1, 2011.


Sec. 410.253.  SERVICE; NOTICE.  (a)  A party seeking judicial review shall simultaneously:

(1)  file a copy of the party's petition with the court;

(2)  serve any opposing party to the suit; and

(3)  provide written notice of the suit or notice of appeal to the division.

(b)  A party may not seek judicial review under Section 410.251 unless the party has provided written notice of the suit to the division as required by this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2003, 78th Leg., ch. 397, Sec. 2, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.199, eff. September 1, 2005.


Sec. 410.254.  INTERVENTION.  On timely motion initiated by the commissioner, the division shall be permitted to intervene in any judicial proceeding under this subchapter or Subchapter G.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.200, eff. September 1, 2005.


Sec. 410.255.  JUDICIAL REVIEW OF ISSUES OTHER THAN COMPENSABILITY OR INCOME OR DEATH BENEFITS.  (a)  For all issues other than those covered under Section 410.301(a), judicial review shall be conducted in the manner provided for judicial review of a contested case under Subchapter G, Chapter 2001, Government Code.

(b)  Judicial review conducted under this section is governed by the substantial evidence rule.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(53), eff. Sept. 1, 1995.

Sec. 410.256.  COURT APPROVAL OF SETTLEMENT. (a) A claim or issue may not be settled contrary to the provisions of the appeals panel decision issued on the claim or issue unless a party to the proceeding has filed for judicial review under this subchapter or Subchapter G.  The trial court must approve a settlement made by the parties after judicial review of an award is sought and before the court enters judgment.

(b)  The court may not approve a settlement except on a finding that:

(1)  the settlement accurately reflects the agreement between the parties;

(2)  the settlement adheres to all appropriate provisions of the law;  and

(3)  under the law and facts, the settlement is in the best interest of the claimant.

(c)  A settlement may not provide for:

(1)  payment of any benefits in a lump sum except as provided by Section 408.128;  or

(2)  limitation or termination of the claimant's right to medical benefits under Section 408.021.

(d)  A settlement or agreement that resolves an issue of impairment may not be made before the claimant reaches maximum medical improvement and must adopt one of the impairment ratings under Subchapter G, Chapter 408.

(e)  A party proposing a settlement before judgment is entered by the trial court may petition the court orally or in writing for approval of the settlement.

(f)  Settlement of a claim or issue under this section does not constitute a modification or reversal of the decision awarding benefits for the purpose of Section 410.209.

(g)  Settlement of a claim or issue must be in compliance with all appropriate provisions of the law, including this section and Section 410.258 of this subchapter.  A settlement which on its face does not comply with this section is void.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1997, 75th Leg., ch. 1267, Sec. 1, eff. Sept. 1, 1997;  Acts

2003, 78th Leg., ch. 397, Sec. 3, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.2001, eff. September 1, 2005.


Sec. 410.257. JUDGMENT AFTER JUDICIAL REVIEW. (a) A judgment entered by a court on judicial review of the appeals panel decision under this subchapter or Subchapter G must comply with all appropriate provisions of the law.

(b) A judgment under this section may not provide for:

(1) payment of benefits in a lump sum except as provided by Section 408.128; or

(2) the limitation or termination of the claimant's right to medical benefits under Section 408.021.

(c) A judgment that resolves an issue of impairment may not be entered before the date the claimant reaches maximum medical improvement. The judgment must adopt an impairment rating under Subchapter G, Chapter 408, except to the extent Section 410.307 applies.

(d) A judgment under this section may not order reimbursement from the subsequent injury fund.

(e) A judgment under this section based on default or on an agreement of the parties does not constitute a modification or reversal of a decision awarding benefits for the purpose of Section 410. 209.

(f) A judgment that on its face does not comply with this section is void.

Added by Acts 1997, 75th Leg., ch. 1267, Sec. 2, eff. Sept. 1, 1997. Amended by Acts 2003, 78th Leg., ch. 397, Sec. 4, eff. Sept. 1, 2003.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.2002, eff. September 1, 2005.


Sec. 410.258. NOTIFICATION OF DIVISION OF PROPOSED JUDGMENTS AND SETTLEMENTS; RIGHT TO INTERVENE. (a) The party who initiated a proceeding under this subchapter or Subchapter G must

file any proposed judgment or settlement made by the parties to the proceeding, including a proposed default judgment, with the division not later than the 30th day before the date on which the court is scheduled to enter the judgment or approve the settlement.  The proposed judgment or settlement must be mailed to the division by certified mail, return receipt requested.

(b)  The division may intervene in a proceeding under Subsection (a) not later than the 30th day after the date of receipt of the proposed judgment or settlement.

(c)  The commissioner shall review the proposed judgment or settlement to determine compliance with all appropriate provisions of the law.  If the commissioner determines that the proposal is not in compliance with the law, the division may intervene as a matter of right in the proceeding not later than the 30th day after the date of receipt of the proposed judgment or settlement.  The court may limit the extent of the division's intervention to providing the information described by Subsection (e).

(d)  If the division does not intervene before the 31st day after the date of receipt of the proposed judgment or settlement, the court shall enter the judgment or approve the settlement if the court determines that the proposed judgment or settlement is in compliance with all appropriate provisions of the law.

(e)  If the division intervenes in the proceeding, the commissioner shall inform the court of each reason the commissioner believes the proposed judgment or settlement is not in compliance with the law.  The court shall give full consideration to the information provided by the commissioner before entering a judgment or approving a settlement.

(f)  A judgment entered or settlement approved without complying with the requirements of this section is void.
Added by Acts 1997, 75th Leg., ch. 1267, Sec. 2, eff. Sept. 1, 1997.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.201, eff. September 1, 2005.

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.202, eff. September 1, 2005.

SUBCHAPTER G. JUDICIAL REVIEW OF ISSUES REGARDING COMPENSABILITY OR INCOME OR DEATH BENEFITS

Sec. 410.301. JUDICIAL REVIEW OF ISSUES REGARDING COMPENSABILITY OR INCOME OR DEATH BENEFITS. (a) Judicial review of a final decision of the appeals panel regarding compensability or eligibility for or the amount of income or death benefits shall be conducted as provided by this subchapter.

(b) A determination of benefits before a court shall be in accordance with this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.203, eff. September 1, 2005.

Sec. 410.302. ADMISSIBILITY OF RECORDS; LIMITATION OF ISSUES. (a) The records of a contested case hearing conducted under this chapter are admissible in a trial under this subchapter in accordance with the Texas Rules of Evidence.

(b) A trial under this subchapter is limited to issues decided by the appeals panel and on which judicial review is sought. The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.204, eff. September 1, 2005.

Sec. 410.303. BURDEN OF PROOF. The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Sec. 410.304. CONSIDERATION OF APPEALS PANEL DECISION. (a) In a jury trial, the court, before submitting the case to the jury, shall inform the jury in the court's instructions, charge, or

questions to the jury of the appeals panel decision on each disputed issue described by Section 410.301(a) that is submitted to the jury.

(b) In a trial to the court without a jury, the court in rendering its judgment on an issue described by Section 410.301(a) shall consider the decision of the appeals panel.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.205, eff. September 1, 2005.


Sec. 410.305. CONFLICT WITH RULES OF CIVIL PROCEDURE. (a) To the extent that this subchapter conflicts with the Texas Rules of Civil Procedure or any other rules adopted by the supreme court, this subchapter controls.

(b) Notwithstanding Section 22.004, Government Code, or any other law, the supreme court may not adopt rules in conflict with or inconsistent with this subchapter.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 410.306. EVIDENCE. (a) Evidence shall be adduced as in other civil trials.

(b) The division on payment of a reasonable fee shall make available to the parties a certified copy of the division's record. All facts and evidence the record contains are admissible to the extent allowed under the Texas Rules of Evidence.

(c) Except as provided by Section 410.307, evidence of extent of impairment shall be limited to that presented to the division. The court or jury, in its determination of the extent of impairment, shall adopt one of the impairment ratings under Subchapter G, Chapter 408.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.206, eff. September 1, 2005.


Sec. 410.307. SUBSTANTIAL CHANGE OF CONDITION. (a)

Evidence of the extent of impairment is not limited to that presented to the division if the court, after a hearing, finds that there is a substantial change of condition. The court's finding of a substantial change of condition may be based only on:

(1)  medical evidence from the same doctor or doctors whose testimony or opinion was presented to the division;

(2)  evidence that has come to the party's knowledge since the contested case hearing;

(3)  evidence that could not have been discovered earlier with due diligence by the party; and

(4)  evidence that would probably produce a different result if it is admitted into evidence at the trial.

(b)  If substantial change of condition is disputed, the court shall require the designated doctor in the case to verify the substantial change of condition, if any. The findings of the designated doctor shall be presumed to be correct, and the court shall base its finding on the medical evidence presented by the designated doctor in regard to substantial change of condition unless the preponderance of the other medical evidence is to the contrary.

(c)  The substantial change of condition must be confirmable by recognized laboratory or diagnostic tests or signs confirmable by physical examination.

(d)  If the court finds a substantial change of condition under this section, new medical evidence of the extent of impairment must be from and is limited to the same doctor or doctors who made impairment ratings before the division under Section 408.123.

(e)  The court's finding of a substantial change of condition may not be made known to the jury.

(f)  The court or jury in its determination of the extent of impairment shall adopt one of the impairment ratings made under this section.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.207, eff. September 1, 2005.

Sec. 410.308. CERTIFIED COPY OF NOTICE SECURING COMPENSATION. (a) The division shall furnish any interested party in the claim with a certified copy of the notice of the employer securing compensation with the insurance carrier, filed with the division.

(b) The certified copy of the notice is admissible in evidence on trial of the claim pending and is prima facie proof of the facts stated in the notice unless the facts are denied under oath by the opposing party.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.208, eff. September 1, 2005.

TAB 31
LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 414.  ENFORCEMENT OF COMPLIANCE AND PRACTICE REQUIREMENTS

Sec. 414.002.  MONITORING DUTIES.  (a)  The division shall monitor for compliance with commissioner rules, this subtitle, and other laws relating to workers' compensation the conduct of persons subject to this subtitle.  Persons to be monitored include:

(1)   persons claiming benefits under this subtitle;

(2)   employers;

(3)   insurance carriers;

(4)   attorneys and other representatives of parties; and

(5)   health care providers.

(b)  The division shall monitor conduct described by Sections 415.001, 415.002, and 415.003 and refer persons engaging in that conduct to the division of hearings.

(c)  The division shall monitor payments made to health care providers on behalf of workers' compensation claimants who receive medical services to ensure that the payments are made on time as required by Section 408.027.
Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.260, eff. September 1, 2005.

Sec. 414.003.  COMPILATION AND USE OF INFORMATION. (a)  The division shall compile and maintain statistical and other information as necessary to detect practices or patterns of conduct by persons subject to monitoring under this chapter that:

(1)   violate this subtitle, commissioner rules, or a commissioner order or decision; or

(2)  otherwise adversely affect the workers' compensation system of this state.

(b)  The commissioner shall use the information compiled under this section to impose appropriate penalties and other

1

sanctions under Chapters 415 and 416.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.261, eff. September 1, 2005.


Sec. 414.004. PERFORMANCE REVIEW OF INSURANCE CARRIERS. (a) The division shall review regularly the workers' compensation records of insurance carriers as required to ensure compliance with this subtitle.

(b) Each insurance carrier, the carrier's agents, and those with whom the carrier has contracted to provide, review, or monitor services under this subtitle shall:

(1) cooperate with the division;

(2) make available to the division any records or other necessary information; and

(3) allow the division access to the information at reasonable times at the person's offices.

(c) The insurance carrier, other than a governmental entity, shall pay the reasonable expenses, including travel expenses, of an auditor who audits the workers' compensation records at the office of the insurance carrier.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.


Sec. 414.005. INVESTIGATION UNIT. (a) The division shall maintain an investigation unit to conduct investigations relating to alleged violations of this subtitle, commissioner rules, or a commissioner order or decision, with particular emphasis on violations of Chapters 415 and 416.

(b) As often as the commissioner considers necessary, the commissioner or the investigation unit may review the operations of a person regulated by the division, including an agent of the person performing functions regulated by the division, to determine compliance with this subtitle.

(c) The review described by Subsection (b) may include on-site visits to the person's premises. The commissioner is not required to announce an on-site visit in advance.

2

(d)  During an on-site visit, a person regulated by the division shall make available to the division all records relating to the person's participation in the workers' compensation system.

(e)  The commissioner by rule shall prescribe the procedures to be used for both announced and unannounced on-site visits authorized under this section, including specifying the types of records subject to inspection.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.262, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 26, eff. September 1, 2011.

Sec. 414.006.  REFERRAL TO OTHER AUTHORITIES.  For further investigation or the institution of appropriate proceedings, the division may refer the persons involved in a case subject to an investigation to other appropriate authorities, including licensing agencies, district and county attorneys, or the attorney general.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.263, eff. September 1, 2005.

Sec. 414.007.  MEDICAL REVIEW.  The division shall review information concerning alleged violations of this subtitle regarding the provision of medical benefits, commissioner rules, or a commissioner order or decision, and, under Sections 414.005 and 414.006 and Chapters 415 and 416, may conduct investigations, make referrals to other authorities, and initiate administrative violation proceedings.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.264, eff. September 1, 2005.

TAB 32

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 415. ADMINISTRATIVE VIOLATIONS


SUBCHAPTER A. PROHIBITED ACTS


Sec. 415.001. ADMINISTRATIVE VIOLATION BY REPRESENTATIVE OF EMPLOYEE OR LEGAL BENEFICIARY. A representative of an employee or legal beneficiary commits an administrative violation if the person:

(1) fails without good cause to attend a dispute resolution proceeding within the division;

(2) attends a dispute resolution proceeding within the division without complete authority or fails to exercise authority to effectuate an agreement or settlement;

(3) commits an act of barratry under Section 38.12, Penal Code;

(4) withholds from the employee's or legal beneficiary's weekly benefits or from advances amounts not authorized to be withheld by the division;

(5) enters into a settlement or agreement without the knowledge, consent, and signature of the employee or legal beneficiary;

(6) takes a fee or withholds expenses in excess of the amounts authorized by the division;

(7) refuses or fails to make prompt delivery to the employee or legal beneficiary of funds belonging to the employee or legal beneficiary as a result of a settlement, agreement, order, or award;

(8) violates the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas;

(9) misrepresents the provisions of this subtitle to an employee, an employer, a health care provider, or a legal beneficiary;

(10) violates a commissioner rule; or

(11) fails to comply with this subtitle.

1

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.265, eff. September 1, 2005.

Sec. 415.002. ADMINISTRATIVE VIOLATION BY INSURANCE CARRIER. (a) An insurance carrier or its representative commits an administrative violation if that person:

(1) misrepresents a provision of this subtitle to an employee, an employer, a health care provider, or a legal beneficiary;

(2) terminates or reduces benefits without substantiating evidence that the action is reasonable and authorized by law;

(3) instructs an employer not to file a document required to be filed with the division;

(4) instructs or encourages an employer to violate a claimant's right to medical benefits under this subtitle;

(5) fails to tender promptly full death benefits if a legitimate dispute does not exist as to the liability of the insurance carrier;

(6) allows an employer, other than a self-insured employer, to dictate the methods by which and the terms on which a claim is handled and settled;

(7) fails to confirm medical benefits coverage to a person or facility providing medical treatment to a claimant if a legitimate dispute does not exist as to the liability of the insurance carrier;

(8) fails, without good cause, to attend a dispute resolution proceeding within the division;

(9) attends a dispute resolution proceeding within the division without complete authority or fails to exercise authority to effectuate agreement or settlement;

(10) adjusts a workers' compensation claim in a manner contrary to license requirements for an insurance adjuster, including the requirements of Chapter 4101, Insurance Code, or the rules of the commissioner of insurance;

(11)  fails to process claims promptly in a reasonable and prudent manner;

(12)  fails to initiate or reinstate benefits when due if a legitimate dispute does not exist as to the liability of the insurance carrier;

(13)  misrepresents the reason for not paying benefits or terminating or reducing the payment of benefits;

(14)  dates documents to misrepresent the actual date of the initiation of benefits;

(15)  makes a notation on a draft or other instrument indicating that the draft or instrument represents a final settlement of a claim if the claim is still open and pending before the division;

(16)  fails or refuses to pay benefits from week to week as and when due directly to the person entitled to the benefits;

(17)  fails to pay an order awarding benefits;

(18)  controverts a claim if the evidence clearly indicates liability;

(19)  unreasonably disputes the reasonableness and necessity of health care;

(20)  violates a commissioner rule;

(21)  makes a statement denying all future medical care for a compensable injury; or

(22)  fails to comply with a provision of this subtitle.

(b)  An insurance carrier or its representative does not commit an administrative violation under Subsection (a)(6) by allowing an employer to:

(1)  freely discuss a claim;

(2)  assist in the investigation and evaluation of a claim; or

(3)  attend a proceeding of the division and participate at the proceeding in accordance with this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.45, eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.266, eff.

September 1, 2005.

Sec.  415.003.  ADMINISTRATIVE VIOLATION BY HEALTH CARE PROVIDER.  A health care provider commits an administrative violation if the person:

(1)  submits a charge for health care that was not furnished;

(2)  administers improper, unreasonable, or medically unnecessary treatment or services;

(3)  makes an unnecessary referral;

(4)  violates the division's fee and treatment guidelines;

(5)  violates a commissioner rule; or

(6)  fails to comply with a provision of this subtitle.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 1995, 74th Leg., ch. 980, Sec. 1.45, eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.267, eff. September 1, 2005.


Sec.  415.0035.  ADDITIONAL VIOLATIONS BY INSURANCE CARRIER OR HEALTH CARE PROVIDER.  (a)  An insurance carrier or its representative commits an administrative violation if that person:

(1)  fails to submit to the division a settlement or agreement of the parties;

(2)  fails to timely notify the division of the termination or reduction of benefits and the reason for that action; or

(3)  denies preauthorization in a manner that is not in accordance with rules adopted by the commissioner under Section 413.014.

(b)  A health care provider commits an administrative violation if that person:

(1)  fails or refuses to timely file required reports or records; or

(2)  fails to file with the division the annual disclosure statement required by Section 413.041.

4

(c) Repealed by Acts 2011, 82nd Leg., R.S., Ch. 1162, Sec. 37(2), eff. September 1, 2011.

(d) Repealed by Acts 2011, 82nd Leg., R.S., Ch. 1162, Sec. 37(2), eff. September 1, 2011.

(e) A person regulated by the division under this title commits an administrative violation if the person violates this subtitle or a rule, order, or decision of the commissioner.

(f) Repealed by Acts 2011, 82nd Leg., R.S., Ch. 1162, Sec. 37(2), eff. September 1, 2011.

Added by Acts 1995, 74th Leg., ch. 980, Sec. 1.45, eff. Sept. 1, 1995.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 6.06, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.268, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 27, eff. September 1, 2011.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 37(2), eff. September 1, 2011.


Sec. 415.0036. ADMINISTRATIVE VIOLATION BY PERSON PERFORMING CERTAIN CLAIM SERVICES. (a) This section applies to an insurance adjuster, case manager, or other person who has authority under this title to request the performance of a service affecting the delivery of benefits to an injured employee or who actually performs such a service, including peer reviews, performance of required medical examinations, or case management.

(b) A person described by Subsection (a) commits an administrative violation if the person offers to pay, pays, solicits, or receives an improper inducement relating to the delivery of benefits to an injured employee or improperly attempts to influence the delivery of benefits to an injured employee, including through the making of improper threats. This section applies to each person described by Subsection (a) who is a participant in the workers' compensation system of this state and to an agent of such a person.

(c) Repealed by Acts 2011, 82nd Leg., R.S., Ch. 1162, Sec.

37(3), eff. September 1, 2011.

Added by Acts 2007, 80th Leg., R.S., Ch. 198 (H.B. 34), Sec. 1, eff. September 1, 2007.

Amended by:

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 37(3), eff. September 1, 2011.


Sec. 415.005. OVERCHARGING BY HEALTH CARE PROVIDERS PROHIBITED; ADMINISTRATIVE VIOLATION. (a) A health care provider commits a violation if the person charges an insurance carrier an amount greater than that normally charged for similar treatment to a payor outside the workers' compensation system, except for mandated or negotiated charges.

(b) A violation under this section is an administrative violation. A health care provider may be liable for an administrative penalty regardless of whether a criminal action is initiated under Section 413.043.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.269, eff. September 1, 2005.


Sec. 415.006. EMPLOYER CHARGEBACKS PROHIBITED; ADMINISTRATIVE VIOLATION. (a) An employer may not collect from an employee, directly or indirectly, a premium or other fee paid by the employer to obtain workers' compensation insurance coverage, except as provided by Sections 406.123 and 406.144.

(b) An employee or legal beneficiary of an employee has a right of action to recover damages against an employer who violates Subsection (a).

(c) A person commits an administrative violation if the person violates Subsection (a).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.270, eff. September 1, 2005.

Sec. 415.007.  LOANS BY ATTORNEYS PROHIBITED.  (a)  An attorney who represents a claimant before the division may not lend money to the claimant during the pendency of the workers' compensation claim.

(b)  The attorney may assist the claimant in obtaining financial assistance from another source if the attorney is not personally liable for the credit extended to the claimant.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.271, eff. September 1, 2005.


Sec. 415.008.  FRAUDULENTLY OBTAINING OR DENYING BENEFITS; ADMINISTRATIVE VIOLATION.  (a)  A person commits an administrative violation if the person, to obtain or deny a payment of a workers' compensation benefit or the provision of a benefit for the person or another, knowingly or intentionally:

(1)  makes a false or misleading statement;

(2)  misrepresents or conceals a material fact;

(3)  fabricates, alters, conceals, or destroys a document; or

(4)  conspires to commit an act described by Subdivision (1), (2), or (3).

(b)  Repealed by Acts 2011, 82nd Leg., R.S., Ch. 1162, Sec. 37(5), eff. September 1, 2011.

(c)  A person who has obtained an excess payment in violation of this section is liable for full repayment plus interest computed at the rate prescribed by Section 401.023.  If the person is an employee or person claiming death benefits, the repayment may be redeemed from future income or death benefits to which the person is otherwise entitled.

(d)  An employer who has committed an act described by Subsection (a) that results in denial of payments is liable for the past benefit payments that would otherwise have been payable by the insurance carrier during the period of denial, plus interest computed at the rate prescribed by Section 401.023.  The insurance carrier is not liable for benefit payments during the period of

7

denial.

(e)  If an administrative violation proceeding is pending under this section against an employee or person claiming death benefits, the division may not take final action on the person's benefits.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.272, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 28, eff. September 1, 2011.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 37(5), eff. September 1, 2011.


Sec.  415.009.  FRIVOLOUS  ACTIONS;  ADMINISTRATIVE VIOLATION.  A person commits an administrative violation if the person brings, prosecutes, or defends an action for benefits under this subtitle or requests initiation of an administrative violation proceeding that does not have a basis in fact or is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.273, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 29, eff. September 1, 2011.


Sec.  415.010.  BREACH  OF  AGREEMENT;  ADMINISTRATIVE VIOLATION.  A party to an agreement approved by the division commits an administrative violation if the person breaches a provision of the agreement.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.274, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 29,

eff. September 1, 2011.

Sec. 415.011. NOTICE OF PROFESSIONAL EMPLOYER ORGANIZATION WORKERS' COMPENSATION CLAIM AND PAYMENT INFORMATION; ADMINISTRATIVE VIOLATION.  (a)  In this section, "license holder" has the meaning assigned by Section 91.001.

(a-1)  Except as provided by Subsection (c), a license holder commits a violation if the license holder fails to provide the information required by Sections 91.042(g) and (h).

(b)  A violation under Subsection (a) is an administrative violation.

(c)  A license holder does not commit an administrative violation under this section if the license holder requested the information required by Sections 91.042(g) and (h) from the license holder's workers' compensation insurance provider and the provider does not provide the information to the license holder within the required time.  A license holder shall notify the Texas Department of Insurance of a provider's failure to comply with the requirements of Section 2051.151, Insurance Code.
Added by Acts 2011, 82nd Leg., R.S., Ch. 477 (H.B. 625), Sec. 3, eff. September 1, 2011.
Amended by:

Acts 2013, 83rd Leg., R.S., Ch. 117 (S.B. 1286), Sec. 20, eff. September 1, 2013.

Acts 2013, 83rd Leg., R.S., Ch. 117 (S.B. 1286), Sec. 21, eff. September 1, 2013.


SUBCHAPTER B.  SANCTIONS


Sec. 415.021.  ASSESSMENT OF ADMINISTRATIVE PENALTIES. (a)  In addition to any other provisions in this subtitle relating to violations, a person commits an administrative violation if the person violates, fails to comply with, or refuses to comply with this subtitle or a rule, order, or decision of the commissioner, including an emergency cease and desist order issued under Section 415.0211.  In addition to any sanctions, administrative penalty, or other remedy authorized by this subtitle, the commissioner may

assess an administrative penalty against a person who commits an administrative violation. The administrative penalty shall not exceed $25,000 per day per occurrence. Each day of noncompliance constitutes a separate violation. The commissioner's authority under this chapter is in addition to any other authority to enforce a sanction, penalty, fine, forfeiture, denial, suspension, or revocation otherwise authorized by law.

(b) The commissioner may enter a cease and desist order against a person who:

(1) commits repeated administrative violations;

(2) allows, as a business practice, the commission of repeated administrative violations; or

(3) violates an order or decision of the commissioner.

(c) In assessing an administrative penalty:

(1) the commissioner shall consider:

(A) the seriousness of the violation, including the nature, circumstances, consequences, extent, and gravity of the prohibited act;

(B) the history and extent of previous administrative violations;

(C) the demonstrated good faith of the violator, including actions taken to rectify the consequences of the prohibited act;

(D) the penalty necessary to deter future violations; and

(E) other matters that justice may require; and

(2) the commissioner shall, to the extent reasonable, consider the economic benefit resulting from the prohibited act.

(d) A penalty may be assessed only after the person charged with an administrative violation has been given an opportunity for a hearing under Subchapter C.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 6.07, eff. June 17, 2001. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.275, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 31,

eff. September 1, 2011.

Sec. 415.0211. EMERGENCY CEASE AND DESIST ORDER. (a) The commissioner ex parte may issue an emergency cease and desist order if:

(1) the commissioner believes a person regulated by the division under this title is engaging in conduct violating a law, rule, or order; and

(2) the commissioner believes that the alleged conduct under Subdivision (1) will result in harm to the health, safety, or welfare of another person.

(b) On issuance of an order under Subsection (a), the commissioner shall serve on the affected person an order that contains a statement of the charges and requires the person immediately to cease and desist from the acts, methods, or practices stated in the order. The commissioner shall serve the order by registered or certified mail, return receipt requested, to the affected person's last known address. The order is final on the 31st day after the date the affected person receives the order, unless the affected person requests a hearing under Subsection (c).

(c) A person affected by an order is entitled to request a hearing to contest the order. The affected person must request the hearing not later than the 30th day after the date the person receives the order required by Subsection (b). A request to contest an order must:

(1) be in writing;

(2) be directed to the commissioner; and

(3) state the grounds for the request to set aside or modify the order.

(d) On receiving a request for a hearing, the commissioner shall serve notice of the time and place of the hearing. The hearing is subject to the procedures for a contested case under Chapter 2001, Government Code. The hearing shall be held not later than the 10th day after the date the commissioner receives the request for a hearing unless the parties mutually agree to a later hearing date. At the hearing, the person requesting the hearing is entitled to show cause why the order should not be

affirmed.  Following receipt of the proposal for decision from the State Office of Administrative Hearings regarding the hearing, the commissioner shall wholly or partly affirm, modify, or set aside the order.

(e)  Pending a hearing under this section, an order continues in effect unless the order is stayed by the commissioner.

Added by Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 32, eff. September 1, 2011.


Sec. 415.0215.  SANCTIONS.  (a)  The division may impose sanctions against any person regulated by the division under this subtitle.

(b)  Only the commissioner may impose:

(1)  a sanction that deprives a person of the right to practice before the division or of the right to receive remuneration under this subtitle for a period exceeding 30 days; or

(2)  another sanction suspending for more than 30 days or revoking a license, certification, or permit required for practice in the field of workers' compensation.

(c)  A sanction imposed by the division is binding pending appeal.

Transferred and redesignated from Labor Code, Section 402.072 by Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 33, eff. September 1, 2011.


Sec. 415.023.  COMMISSION OF WRONGFUL ACT AS MATTER OF PRACTICE; ADMINISTRATIVE VIOLATION.  (a)  A person who commits an administrative violation under Section 415.001, 415.002, 415.003, or 415.0035 as a matter of practice is subject to an applicable rule adopted under Subsection (b) in addition to the penalty assessed for the violation.

(b)  The commissioner may adopt rules providing for:

(1)  a reduction or denial of fees;

(2)  public or private reprimand by the commissioner;

(3)  suspension from practice before the division;

(4)  restriction, suspension, or revocation of the right to receive reimbursement under this subtitle; or

(5)　referral and petition to the appropriate licensing authority for appropriate disciplinary action, including the restriction, suspension, or revocation of the person's license.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.  Amended by Acts 2001, 77th Leg., ch. 1456, Sec. 6.08, eff. June 17, 2001.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.276, eff. September 1, 2005.


Sec.　415.024. BREACH　OF　SETTLEMENT　AGREEMENT; ADMINISTRATIVE VIOLATION.  A material and substantial breach of a settlement agreement that establishes a compliance plan is an administrative violation.  In determining the amount of the penalty, the commissioner shall consider the total volume of claims handled by the insurance carrier.

Added by Acts 1997, 75th Leg., ch. 1443, Sec. 9, eff. Sept. 1, 1997.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.277, eff. September 1, 2005.


Sec.　415.025. REFERENCES　TO　A　CLASS　OF　VIOLATION　OR PENALTY.  A reference in this code or other law, or in rules of the former Texas Workers' Compensation Commission or the commissioner, to a particular class of violation, administrative violation, or penalty shall be construed as a reference to an administrative penalty.  An administrative penalty may not exceed $25,000 per day per occurrence.  Each day of noncompliance constitutes a separate violation.

Added by Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.278, eff. September 1, 2005.

Amended by:

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 34, eff. September 1, 2011.


SUBCHAPTER C. PROCEDURES


Sec.　415.031. INITIATION　OF　ADMINISTRATIVE　VIOLATION

13

PROCEEDINGS. Any person may request the initiation of administrative violation proceedings by filing a written allegation with the division.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.279, eff. September 1, 2005.


Sec. 415.032. NOTICE OF POSSIBLE ADMINISTRATIVE VIOLATION; RESPONSE. (a) If investigation by the division indicates that an administrative violation has occurred, the division shall notify the person alleged to have committed the violation in writing of:

(1) the charge;

(2) the proposed sanction;

(3) the right to consent to the charge and the sanction; and

(4) the right to request a hearing.

(b) Not later than the 20th day after the date on which notice is received, the charged party shall:

(1) remit the amount of the sanction to the division or otherwise consent to the imposed sanction; or

(2) submit to the division a written request for a hearing.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.280, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 34, eff. September 1, 2011.


Sec. 415.033. FAILURE TO RESPOND. If, without good cause, a charged party fails to respond as required under Section 415.032, the division shall initiate enforcement proceedings.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.281, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 34, eff. September 1, 2011.

Sec. 415.034. HEARING PROCEDURES. On the request of the charged party or the commissioner, the State Office of Administrative Hearings shall set a hearing. The hearing shall be conducted in the manner provided for a contested case under Chapter 2001, Government Code (the administrative procedure law).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(49), eff. Sept. 1, 1995; Acts 1995, 74th Leg., ch. 980, Sec. 1.46, eff. Sept. 1, 1995. Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.282, eff. September 1, 2005.

Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 34, eff. September 1, 2011.

Sec. 415.035. JUDICIAL REVIEW. (a) A decision under Section 415.034 is subject to judicial review in the manner provided for judicial review under Chapter 2001, Government Code.

(b) If an administrative penalty is assessed, the person charged shall:

(1) forward the amount of the penalty to the division for deposit in an escrow account; or

(2) post with the division a bond for the amount of the penalty, effective until all judicial review of the determination is final.

(c) Failure to comply with Subsection (b) results in a waiver of all legal rights to contest the violation or the amount of the penalty.

(d) If the court determines that the penalty should not have been assessed or reduces the amount of the penalty, the division shall:

(1) remit the appropriate amount, plus accrued interest, if the administrative penalty was paid; or

(2) release the bond.

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993. Amended

by Acts 1995, 74th Leg., ch. 76, Sec. 5.95(49), eff. Sept. 1, 1995.

Amended by:

Acts 2005, 79th Leg., Ch. 265 (H.B. 7), Sec. 3.283, eff. September 1, 2005.


Sec. 415.036.  STANDARD OF JUDICIAL REVIEW OF COMMISSIONER'S ORDER.  An order of the commissioner is subject to judicial review under the substantial evidence rule.

Added by Acts 2011, 82nd Leg., R.S., Ch. 1162 (H.B. 2605), Sec. 35, eff. September 1, 2011.